*UNITED STATES DISTRICT COURT*
*DISTRICT COURT OF COLUMBIA*
1)-Case No ["*24-cv-02049*"]

|  |  |
|---|---|
| **a)-MANETIRONY CLERVRAIN**, et al | * |
|  | * |
|  | * |
|  | * |
| VS. | *   2)-FOIA No [………………….. ] |
|  | * |
|  | * |
| **b)-OFFICE OF THE FEDERAL REGISTER** et al | * |
|  | * |

|------------------------------------------------------------------------|

**MOTION FOR ["*MATTERS FACTORS ACT*"], (MFA)"*], ["*NATIONAL DEBATE
ACT*"]("NDA")  BY THE ["*UNIFORM FUNCTIONS FORMS ACT*"] (UFFA)**

|------------------------------------------------------------------------|

**A. COMES NOW**, the plaintiff a)-[""*Manetirony Clervrain*""], Pro-Se, or ( "*The

Activist*"), or ("*The ANT*") and for the purpose of defining words and terms in the ("INA") for the

benefits of the 1) ["*Deportable Alien*"], and 2) ["*First –Time Offenders*"] ("*FTO*"),or 3) ["*Non-

Violent Offenders*"] ("*NVO*"), or b) [**"*Decipher Concern Act*"**] ("DCA"), they are suffered from

officials abuse of power   and similarly situated individuals suffered legal wrong because of the

agencies actions, or adversely affected or aggrieved by agencies employees within the meaning of

a relevant statutes in questioned, he respectfully moves this Honorable courts within his motions

for supplemental to National relief (s) and the disposition for issues of material of genuine fact

against the agencies and their officials and individual capacities by persuading for investigation

that the plaintiff has been a victim of crimes of qualifying criminal activities the the agencies while

in custody by illegal contracts , and he is likely to be helpful to the investigation proceeding or the

prosecution of the various criminal activities in the ["*Prison Industry*"] by abusing immigrants for

**RECEIVED**
SEPT 23 2024
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

1

the sake of abusing power or in violation of their contact obligation or The ["***Federal Arbitration Act***"] ("*FAA*") under 9 U. S. C 1, et seq, and under subsection 2 of the Act or Violation of the [" *Racketeer Influenced Corrupt Organizations ("RICO") Act*,"], and *["The Sherman Act"], 15 U.S.C. 1, et,seq, and  ["The Clayton Act"],and* ["*The Patent Act*""], 35 U.S.C 1, et Seq and ["The Copyright Act"], 17 U.S.C. 1 *et seq* ……and  For the need to resolve the controversies ...which congress intent under the ("INA") by Ratifying the; *["Immigration and Nationality Act"] ("INA"), 66 Stat. 163, as amended, 8 U.S.C. 1101 et seq f*or which the plaintiff is a victim of illegal contracts or in violation of the constitutions or a writing provision …in a contract evidencing of transaction involving commerce to settle by arbitration or a controversies thereafter arising out of such contract or transaction….shall be invalid, irrevocable and enforceable , save upon the ground as exist at law or in equity for the revocation of any contracts. 9. U.S.C 2 and 28 U.S.C 2101(e), and 28 U.S.C 1491-1509, and 28 U.S.C 1715; 8 U.S.C 1332; 28 U.S.C. 2284, 28 U.S.C 2241; 28 U.S.C. 1331; 1343; 1346; that he is seeking declaratory relief under 28 U.S.C. 2201; 28 U.S.C 2202; 28 U.S.C 2072; 28 U.S.C 1390; and further states that he asserts claims for declaratory relief under 28 U.S.C 2283; 28 U.S.C 2284 ; 28 U.S.C 3771; 34 U.S.C 10101, et Seq; 20 U.S.C 3401 as well as Fed.R.Civ.P. 15; 19; 20; 24; 26; 35; 37; 38; 41(b); 44;  45; ; 59; 54;  60; 65 83 and Fed. R. App. P. 8;  15;  21;  23;  34, 35;  40   Of course, for the enactment of ["***The   Nationality Act***"] (TANA), or ["***The Tenth Act***"] (TTA) in conjunction with uniform law, even though the law may operate differently from state to state by invoking the ["***Universal Nationality Character Act***"]

("UNCA"), with the challenge that defendants are anticipating in a conspiracy against ("LPR), or

the plaintiff is a victim of *injustice* by means of *secretive practice* that is the evidence  for the

claims, that the (INA) is promoting crimes of apartheid as his injuries in fact that must be justified,

although there is very little case law on the matters, we think that this construction of the

uniformity requirement also applies to nationality claims which dealt with a portion of the (INA)

that provided that individual could be deemed to have a "good moral character" if he had been

convicted of two or more violations by the state laws implementing the United States obligations

under conventions;

1) Under the laws by this ["***Motion for Settlement Agreement(s) Against Secretive***

***Criminals By invoking the National Regulatory Treaties Act***"] ("NIRTA") or by regulations and

by  protections;

2) That is for the rules of criminal habeas expanded further to account for a growing

number of recognized constitutional and statutory rights and for managing the operation for

mitigating crimes;

3) The sheer number of petitions coursing through the federal courts guaranteeing certain

rights to crime victims in habeas proceedings or domestic criminal defendants is highly suspected

for predication;

4) On his case [17-CV-00452-TH], this case for questioning *Forcible Transferred, and Relevant Conducts Act (RCA), or Issues by the Concern(s) on Retaliation Reform Act (CORRA),*as injuries in facts;

5) The protected class against ["**_Apartheid_**"] that was form within the ("INA"), and he is inquiring for ["**_Abolishing_**"] it, which is effecting the ["**_Nations_**"] at whole  or by determining the outcome effect;

a) The plaintiff made a prima facie case of the ["**_The Movement Act_**"] or ["*TAMA*"]or to prove that one being victim of  disparate-impact liability requires courts to look at whether for protected claims;

b) Of Victim are disproportionately affected by the challenged policies, and this is so because in disparate-impact cases, effect of  motivation is a question of fact subject to the substantial risks;

i) From the evidence standard**,** in which the appellate courts must questioning the (BIA) determination as long as it is supported by reasonable, substantial, and probative evidence on the records entirely;

ii) As a whole in immigration law proceedings, and It is the touchstone because a thoughtless housing practice can be as unfair to minority rights as a willful scheme of unjust classifications;

iii) Which deportable alien exposed to the various unnecessary; conditions of confinement if they are not violent criminals; that should have applied to for repeat offenders by the further prioritizing one;

iv) Under the laws for ["***Treatment Movement Protective Act***"] ("*TMPA*"), and individuals must be similarly situated individual as the plaintiff in such criteria explained in the cases, such as being victimized;

v) Of retaliation or malicious prosecution and housed the private institution in contract with the above federal agencies or even states correctional institutions, moreover the member of them are not limited;

vi) Under the ["***Family Effect Treatment Act***"] ("FETA") will allow any victims of qualified from ("*TMPA*") to petition for their family if they had a previous deported, or that individual has family Unity ties;

vii) Under the proposed laws, and such qualification applied only to immediate family members as described by the ("INA") definition for right aggravation Act that is the question for controversy claims;

viii) Under ("TACA") also known as ["***TAMA***"] as more specific for selective members such those with the plaintiff(s) in the movement in the abolishing apartheid, the member is requesting reliefs;

1) As well as  where the plaintiff was incarcerated, and being victimized by the defendants actions or inaction or the action of congress in the form of a concurrent resolution which constituted rights;

e) For the enactment of [**_The Ant Ratification Act_** "] (*"TAPA"*) , which will effect Nationwide, and not to excluded all the veterans that have been deported since 1996, and it will retroactive effect;

f)  By referring to ("DACA") it is certainly unconstitutional laws or  an exercise of original lawmaking authority agency interpretations of their statutes are only arguably conceding that they are enforcing laws; ;

1) Of course the plaintiff is arguing for majority opinion on these claims to stop mass deportation against children arriving for better protection within the application states laws if that really necessary;

2) if whether or not his claim can be prevail if education is part of the (INA) by promoting civil affairs that if every man is presumed to know everything that he can learn upon inquiry for level of authority;

a) Thus, ["**_Mr. McComas_**"] who is the Director of General Operation without Medical licence by interfering with the plaintiff even his Medical records or restricted to question medical staff members;

b) of course he certainly must provided the information requested on the grievances, which he failed to provide for additional evidence that (MDC) had their intent by abused immigrants just like their partners;

c) Those evidence on the record will prevail to questioned all of the (MDC) as well as other contractors with the agencies contract obligation is presenting to the courts against serious criminals activities;

1) Thus, it is true that, ["**_Mr. Clervrain_**"] who is the inventor against serious criminals, or those such as the defendants was not a prisoner, ["20-CV-00182"], or for which he is currently challenging laws;

2) That is because the defendants imposed restriction against Civilian, that is not the first time, they have involved in such criminal misconducts, they are aware of the crimes, but failed to legally corrected;

3) They are abusing their ["**_Official Powers_**"], or their failure to ["**_Ratify_**"] the various laws, is the proximate of the public injuries in facts, then the courts should not be in position to protect serious criminals;

a) To that extent any allegations by the above court in Illinois, as well the officials is presenting with evidence to inform the public concerning widespread illegal practice, which difference cases;

## <u>RATIFICATION PUNITICE ACTS ("TRA")</u>

**I.**The primary inducement to conferring the power in question upon the Executive is, to enable him to defend himself; the secondary one is to increase the chances in favor of the community against passing  bad laws; they are representative of the people just as the members of the public interest;

A………………..["***Universal  Rights Mandatory Act***"] (URMA)………………..**<u>433-605</u>**

   i)………………………..["***Alaska Republican Parties***"]…………………….["**<u>7(b)</u>**"]

      1)…………………………Ann Brown………………………………..7 (c) (3)

      2)………………………Craig Campbell………………………………7 (c) (3)

      3)………………………Mike Tauriainen……………………………..7 (c) (3)

      4)………………………Cynthia Henry………………………………..7 (c) (3)

      5)………………………Chris Carter…………………………………..7 (c) (3)

      6)………………………Rhonda Boyles………………………………..7 (c) (3)

      7)………………………Shiela Cernich………………………………..7 (c) (3)

      8)………………………Berni Bradley………………………………..7 (c) (3)

      9)………………………Jason Warfield………………………………..7 (c) (3)

   ii)…………………….. ….["***Alaska Elected Officials***"]………………………["**<u>7(b)</u>**"]

      1)…………………………..Lisa Murkowski…………………………..7 (c) (3)

      2)……………………………Dan Sullivan……………………………..7 (c) (3)

      3)……………………………Don Young……………………………….7 (c) (3)

      4)…………………………..Mike Dunleavy…………………………..7 (c) (3)

      5)……………………………Kevin Meyer……………………………..7 (c) (3)

6)…………………………Robert Myers……………………………7 (c) (3)

7)………………………..Click Bishop………………………….7 (c) (3)

8)………………………….David Wilson………………………7 (c) (3)

9)………………………..Mike Shower……………………………7 (c) (3)

10)…………………………Shelley Hughes…………………………7 (c) (3)

11)…………………………Lora Reinbold………………………………7 (c) (3)

12)…………………………Mia Costello……………………………7 (c) (3)

13)…………………………Natasha von Imhof………………………7 (c) (3)

14)…………………………Josh Revak…………………………7 (c) (3)

15)…………………………Roger Holland………………………..7 (c) (3)

16)…………………………Peter Micciche…………………………7 (c) (3)

17)…………………………Gary Stevens……………………………7 (c) (3)

18)…………………………Bert Stedman……………………………7 (c) (3)

19)…………………………Barton LeBon…………………………7 (c) (3)

20)…………………………Steve Thompson………………………7 (c) (3)

21)………………………...Mike Prax……………………………7 (c) (3)

22)………………………...Mike Cronk…………………………..7 (c) (3)

23)…………………………Christopher Kurka………………………7 (c) (3)

24)…………………………Kevin McCabe……………………..7 (c) (3)

25)………………………..George Rauscher……………………..7 (c) (3)

26)………………………..David Eastman………………………7 (c) (3)

27)…………………………Delena Johnson………………………7 (c) (3)

28)…………………………Cathy Tilton…………………………7 (c) (3)

29)…………………………….Ken McCarty………………………….7 (c) (3)

30)…………………………….Kelly Merrick………………………..7 (c) (3)

31)…………………………….David Nelson………………………….7 (c) (3)

32)…………………………..Sara Rasmussen………………………7 (c) (3)

33)…………………………..Tom McKay………………………….7 (c) (3)

34)…………………………….Laddie Shaw………………………….7 (c) (3)

35)…………………………….James Kaufman………………………7 (c) (3)

36)…………………………….Ben Carpenter………………………….7 (c) (3)

37)…………………………….Ron Gillham………………………….7 (c) (3)

38)…………………………….Sarah Vance………………………….7 (c) (3)

39)…………………………..Louise Stutes………………………….7 (c) (3)

iii)…………………………….[*"**Alaska Elected Officials**"*]…………………..["**7(b)**"]

1)…………………………….Ann Brown…………………………….7 (c) (3)

2)…………………………..Craig Campbell………………………….7 (c) (3)

3)…………………………..Mike Tauriainen………………………….7 (c) (3)

4)…………………………..Cynthia Henry…………………………….7 (c) (3)

5)…………………………..Rhonda Boyles………………………….7 (c) (3)

6)…………………………Davis Pruhs………………………………7 (c) (3)

7)…………………………..Ron Johnson………………………….7 (c) (3)

8)…………………………..Spencer Moore………………………7 (c) (3)

9)…………………………..Steve Strait………………………….7 (c) (3)

10)………………………..Christine Hill………………………….7 (c) (3)

11)……………………….Christine Hutchison……………………..7 (c) (3)

12).…………………………Susan Stone…………………………7 (c) (3)

13).…………………………Jason Warfield………………………7 (c) (3)

B …………………..[" ***Detainees Issues Freedom Tretament Act***"] (DIFTA)………446-498

I.…………………………..[" ***Alabama Leadership Committees***"]…………………..[" **7(b)**"]

a).………………………………[" ***John Wahl, Chairman***"]…………………..[" **211 (e) (5)**"]

1).……………………..*John Skipper, Senior Vice Chairman*...………………7 (c) (3)

2).……………………*Sallie Bryant, Treasurer*……………………………7 (c) (3)

3).…………………………Carol Jahns, Secretary……………………………7 (c) (3)

4).…………………..Joan Reynolds, Finance Chairman……………………7 (c) (3)

5).………………..Vicki Drummond, National Committeewoman……………7 (c) (3)

6).…………………..Paul Reynolds, National Committeeman………………7 (c) (3)

7).…………………………Bill Harris…………………………………7 (c) (3)

8).…………………………Pat Wilson…………………………………7 (c) (3)

9).…………………………Josh Dodd…………………………………7 (c) (3)

10).…………………………Matt Simpson………………………………7 (c) (3)

11).…………………………William Rayborn……………………………..7 (c) (3)

12).…………………………Lance Bell…………………………………7 (c) (3)

14).…………………………Bonnie Sachs………………………………7 (c) (3)

15).…………………………Elbert Peters………………………………7 (c) (3)

16).…………………………Renee Powers……………………………..7 (c) (3)

17).…………………………Pierce Boyd…………………………………7 (c) (3)

18).…………………………Britney Garner……………………………7 (c) (3)

19).…………………………Phillip Brown…………………………………7 (c) (3)

20)…………………………….Dalton Dismukes………………………….7 (c) (3)

b)……………………………………[*"**Clint Reid**"*]………………………["***211 (e) (5)***"]

II…………………………….["***Alabama Officials Elected***"]………………………["**7(b)**"]

a)………………………………["***Richard Shelby***"]………………………["**211 (e) (5)**"]

1……………………………..Tommy Tuberville…………………………7 (c) (3)

2)…………………………….Jerry Carl………………………………..7 (c) (3)

3)…………………………..…Barry Moore…………………………….7 (c) (3)

4)…………………………….Mike Rogers……………………………..7 (c) (3)

5)…………………………….Robert Aderholt…………………………7 (c) (3)

6)…………………………..…Mo Brooks………………………………7 (c) (3)

7)…………………………….Gary Palmer……………………………7 (c) (3)

8)…………………………….Kay Ivery………………………………7 (c) (3)

9)…………………………….Will Ainsworth…………………………7 (c) (3)

10)……………………………Steve Marshall………………………..7 (c) (3)

11)……………………………Jhon Merill……………………………7 (c) (3)

12)……………………………Rick Pate……………………………..7 (c) (3)

13)……………………………Chip Beeker…………………………..7 (c) (3)

14)………………………..…Twinkle Andress Cavanaugh……………………7 (c) (3)

15)……………………………Jeremy Oden……………………………7 (c) (3)

16)……………………………John McMillan………………………….7 (c) (3)

17)……………………………Jim Zeigler……………………………7 (c) (3)

18)……………………………Greg Reed…………………………….7 (c) (3)

b)……………………………………["**Mac McCutcheon**"]………………………211 (e) (5)

III……………………[*"**<u>Minor(s) Treatment Character Act</u>**"*] (MTCA)…………[*"**<u>446-448</u>**"*]

a)………………………[*"**<u>Arkansas GOP Leadership</u>**"*]……………………………[*"**<u>7(b)</u>**"*]

    1)……………………*Jonelle Fulmer*…………………………..7 (c) (3)

    2)……………………………*John Parke*…………………………..7 (c) (3)

    3)……………………*Sharon Brooks*…………………………7 (c) (3)

    4)……………………*Alisha Curtis*…………………………7 (c) (3)

    5)……………………*Julie Harris*…………………………7 (c) (3)

    6)……………………*Sarah Dunkin*…………………………..7 (c) (3)

    7)……………………*Melonate Guillick*…………………………7 (c) (3)

    8)……………………………*Susan Gessler*…………………………7 (c) (3)

    9)……………………………*Eddie Arnold*…………………………..7 (c) (3)

b)………………………[*"**<u>Arkansas Staff Management</u>**"*]………………………..[*"**<u>7(b)</u>**"*]

    1)……………………*Sarah Joe Reynolds*…………………………7 (c) (3)

    2)…………………..……*Ashley Wells*…………………………7 (c) (3)

    3)……………………*Julie Williams*……………………………7 (c) (3)

    4)……………………*Tyler Jordon*…………………………..7 (c) (3)

IV…………………………[*"**<u>Treaties Movement Protective Act</u>**"*] (TMPA)……..[*"**<u>446-605</u>**"*]

a)…………………………[*"**<u>Arizona Congressional District</u>**"*]……………………..[*"**<u>7(b)</u>**"*]

    1)……………………Tom O'Halleran…………………………..7 (c) (3)

    2)……………………Ann Kirkpatrick…………………………7 (c) (3)

    3)……………………Raúl Grijalva…………………………..7 (c) (3)

    4)……………………Paul Gosar…………………………7 (c) (3)

    5)……………………Andy Biggs…………………………7 (c) (3)

6)…………………………..David Schweikert……………………………7 (c) (3)

7)……………………………Ruben Gallego…………………………..7 (c) (3)

8)…………………………Debbie Lesko……………………………7 (c) (3)

9)…………………………..Greg Stanton…………………………7 (c) (3)

10)…………………………Mary Fallin…………………………7 (c) (3)

11)…………………………John Bassaro……………………………7 (c) (3)

b)………………………………["***Virginia Foxx***"]…………………………["**<u>7(b)</u>**"]

V)……………["***Universal Liability For Investigation Act***"] ( ULFIA)…………["**<u>446-605</u>**"]

VI)……………………………["***California Republic Party***"]………………………["**<u>7(b)</u>**"]

a)…………………………["***Vice Chairman - Peter Kuo***"]……………………["**<u>211 (e)</u>**"]

1)………………………Randy Berholtz……………………………………7 (c) (3)

2)………………………Gregory Gandrud………………………………..7 (c) (3)

3)………………………Francis Barraza…………………………………7 (c) (3)

4)………………………..Howard Hakes………………………………..7 (c) (3)

5)………………………..Matt Heath………………………………..7 (c) (3)

6)………………………Jonathan Madison………………………………7 (c) (3)

7)……………………… …Corrin Rankin………………………………..7 (c) (3)

8)…………………………..Robert Rego………………………………7 (c) (3)

9)………………….. ……Lindsey Stetson………………………………7 (c) (3)

10)………………. ……..Laurie Wallace………………………………7 (c) (3)

11)………………. ………..Hon. Jim Brulte………………………………7 (c) (3)

12)…………………………Harmeet Dhillon……………………………7 (c) (3)

13)……………………………Shawn Steel…………………………..7 (c) (3)

14)……………………………Mario Guerra…………………………… 7 (c) (3)

15)…………………………… Lani Kane…………………………… 7 (c) (3)

16)…………………………….. Hon. Ted Gaines………………………7 (c) (3)

17)……………………………..Hon. Scott Wilk…………………………7 (c) (3)

18)………………………..Hon. Marie Waldron………………………7 (c) (3)

19)…………………………Congress - Hon. Doug LaMalfa…………………7 (c) (3)

20)………………………Thomas McKernan………………………7 (c) (3)

21……………………Jessica Millan Patterson………………………7 (c) (3)

b)………………………………[" ***Ashlee Titus***"]………………………………["**211 (e) (5)**"]

4)……………………..[" ***Systematic Attack Prohibition  Act***"] (SAPA)………..["**446-605**"]

a)………………….…["***Colorado Republic Party Officers***"]………………………["**7(b)**"]

i)……………………………["***Kristi Burton Brown***"]………………………["***211 (e) (5)***"]

1)…………………………Priscilla Rahn……………………………………….7 (c) (3)

2)………………………Marilyn Harris………………………………….7 (c) (3)

3)………………………Richard Elsner………………………………………7 (c) (3)

4)………………………Vera Ortegon………………………………………7 (c) (3)

5)………………………Randy Corporon…………………………………7 (c) (3)

6)………………………Joe Jackson……………………………………..7 (c) (3)

ii)………………………………[" ***Brielle Mueller***"]………………………………["***211 (e) (5)***"]

ii)-U*nder a)-[* **"MOCMA"**]*, amended, the Intellect express is intent, clearer now, so the courts must be aware of their violations, and , that the defendants were excluded him to the various procedures without any causes of actions, prejudice and bias then he asking  for b)-["***Justification***"],  if whether or not  the issues concerned, or if whether an award of 1)-[**"Lifetime Damages , and  Fees"**] under the 2)-[**"Equal Access to Justice Act**"] ("EAJA") (28 U.S.C. § 2412[d][1][B] [1982]), is 3)-["**Timely**"]. Clervrain v. Sessions Civil Action No. 17-1858 (UNA) (D.D.C. Dec. 21, 2017)*

5)…………………….[“***Massive Issues Genocide Reform Act***”] (MIGRA)……[“**446-498**”]

a)…………………….[“***Connecticut Republic Party***”]………………………..[“**7(b)**”]

   i)……………………….[“***Ben Proto***”]…………………………[“**211 (e) (5)**”]

      1)………………………..Mary Ann Turner……………………………7 (c) (3)

      2)………………………..Warner "Chuck" Pyne………………………7 (c) (3)

      3)………………………..Rebecca Terricciano………………………7 (c) (3)

      4)………………………..John H. Frey…………………………………7 (c) (3)

      5)………………………..Leora Levy……………………………………7 (c) (3)

   ii)……………………….[“***Connecticut Senate Republican***”]………………….[“**7(b)**”]

b)…………......................[“***Kevin Kelly***”]…………………………[“**211 (e) (5)**”]

   1)………………………..Paul Cicarella…………………………………7 (c) (3)

   2)………………………..Tony Hwang……………………………………..7 (c) (3)

   3)………………………..Henri Martin…………………………………7 (c) (3)

   4)………………………..Rob Sampson…………………………………7 (c) (3)

   5)………………………..Kevin Witkos…………………………………7 (c) (3)

   6)………………………..Paul Formica…………………………………7 (c) (3)

   7)………………………..Dan Champagne…………………………………7 (c) (3)

   8)………………………..Ryan Fazio……………………………………..7 (c) (3)

   9)………………………..John A. Kissel…………………………………7 (c) (3)

   10)……………………………Craig Miner…………………………………7 (c) (3)

c)……………………………[“***Heather Somers***”]……………………………[“**211 (e) (5)**”]

6)  …………………………..["***Movement Union Treaties Act***"] (MUTA)…………446-498

i)………………………..["***District of Columbia Board of Elections***"]……………["***7 (b)***"]

    1)…………………….Monica Holman Evans……………………………..7 (c) (3)

    2)…………………………Terri D. Stroud…………………………………7 (c) (3)

    3)……………………...Sylvia Goldsberry-Adams…………………………..7 (c) (3)

    4)………………………...Karen F. Brooks…………………………………7 (c) (3)

    5)………………………Michael Bennett…………………………………7 (c) (3)

    6)………………………..Mike Gill…………………………………………7 (c) (3)

ii)……………………………….["***Karyn Greenfield***"]……………………["**211 (e) (5)**"]

7)………………..["***Treaties Educative Danger Management Act***"] (TEDMA)…["**446-499**"]

a)………………………["***Delaware Executive Team***"]……………………………["**7(b)**"]

    1)…………………….Jane Brady……………………………………….221 (E)

    2)……………………...Pam Bakarian……………………………………221 (E)

    3)……………………...Julia Pillsbury………………………………………221 (E)

    4)……………………...Hank McCann…………………………………...221 (E)

    5)………………….....Mary MacCrossan………………………………..221 (E)

    6)………………………Denis Cini………………………………………221 (E)

    7)………………………George Rotsch…………………………………..221 (E)

    8)……………………...Paula Manalakos……………………………………..221 (E)

b)………………………[*__Delaware State Officials__*]………………………[*__7(b)__*]

i)…………………………[*__John Cardney__*]………………………………..211 (e) (5)

    1)………………Bethany Hall-Long………………………………………221 (E)

    2)…………………Kathy Jennings………………………………………221 (E)

    3)………………Kathleen McGuiness……………………………………..221 (E)

    4)…………………Trinidad Navarro………………………………………221 (E)

    5)…………………..Colleen Davis…………………………………………221 (E)

    6)……………………Colin Bonini…………………………………………221 (E)

    7)…………………..Darius Brown…………………………………………221 (E)

    8)……………………..Bruce Ennis…………………………………………221 (E)

    9)……………………Ernesto Lopez………………………………………221 (E)

    10)……………………Kyle Evans Gay………………………………………221 (E)

    11)……………..……Gerald Hocker………………………………………221 (E)

    12)…………………..Dave Lawson………………………………………221 (E)

    13)………………Elizabeth Lockman……………………………………..223 (E)

    14)………………..Spiros Matzavinos……………………………………..221 (E)

    15)………………..Sarah Mcbridge………………………………………221 (E)

    16)…………………Trey Paradee………………………………………221 (E)

    17)…………………Brian Petty Jhon………………………………………221 (E)

    18)…………………Marie Pinkney………………………………………221 (E)

*iii)*-Under this case a)-[*__21-CV-02918__*"], then we asking if 1)-[*__"Chase," "JPMorgan," "JPMorgan Chase,"__*], among the other banks across the country , would approved the loan b)-[*__"Brandako,Inc__*"] for 2)-[*__"$ 600 Billion Dollars__*"] for for the first step of the inventions, and for c)-[*__"Hiring Process__*"] that is  pending for additional funding when needed, if required by each of the agencies, or if only the courts must proved the 3)-[*__"Certification of Trust__*"], this documents must release in less than 30 day to remove him from c)-[*__"Roode Baseman__*"], 4)-[*__"Pauperis Status__*"].Greaser v. State of Mo., Dep't of Corrections, 145 F.3d 979, 985 (8th Cir. 1998). d)-[*__"Exhibit III (A-B"__*]) (citing Attwood v. Singletary, 105 F.3d 610, 612 (11th Cir. 1997)).

ii)……………………………["***Nicole Poore***"]……………………………………["**17 (a)**"]

    1)………………………Bryant Richardson…………………………………..221 (E)

    2)……………………..David Sokola…………………………………………221 (E)

    3)………………….Laura Sturgeon………………………………………221 (E)

    4)………………….Bryan Townsend……………………………………221 (E)

    5)…………………..Jack Walsh……………………………………………221 (E)

    6)…………………..David L Wilson………………………………………221 (E)

8)……………["***Treaties Educative Technology Correctional Act***"] (TETCA)….["**446-499**"]

a)…………………………["***Florida Party Officials***"]……………………………["**7(b)**"]

    1)…………………………Joe Gruters………………………………………221 (E)

    2)……………………..Christian Ziegler…………………………………..221 (E)

    3)…………………….Kristy Banks…………………………………………221 (E)

    4)……………………..Mike Moberly……………………………………….221 (E)

    5)……………………..Jeremy Evans………………………………………221 (E)

    6)………………………..Clint Pate……………………………………………221 (E)

    7)……………………..Peter Feaman…………………………………………221 (E)

b)……………………………["***Kathleen King***"]……………………………["**211 (e) (5)**"]

9)…………………….["***Model Union Parental Training Act***"] (MUPTA)………["**446-498**"]

i)……………….…………["***Georgia GOP Leadership***"]………………………………["**7(b)**"]

    1)……………………………David Shafer,…………………………………..221 (E)

    2)……………………………Jason Thompson,……………………………….221 (E)

    3)…………………………….Ginger Howard,……………………………….221 (E)

    4)…………………………..BJ Van Gundy, ……………………………….221 (E)

ii)…………………..[“***Brant Frost, Second Vice-Chairman***”]……………………221 (E)

    1)………………...Michael Welsh, Secretary…………………………..221 (E)

    2)………………Ken Carroll, Assistant Secretary…………………………221 (E)

    3)………………Joseph Brannan, Treasurer……………………………221 (E)

    4)…………..Vikki Consiglio, Assistant Treasurer……………………..221 (E)

    5)………………Alton Russell, Over 80K Chair…………………………221 (E)

    6)………………Ashley Giles, Under 80K Chair…………………………221 (E)

iii)…………………………..[“***Georgia GOP Staffs***”]……………………….[“**7(b)**”]

    1)……………………Brandon Moye………………………… ………221 (E)

    2)…………………Karen Hentschel……………………………………221 (E)

    3)………………..Anna Caroline Soldan………………………………221 (E)

    4)………………Hampton Mills……………………………………..221 (E)

    5)…………………Madilyn Cox…………………………………221 (E)

a)………………………[“***Georgia District Chairman***”]……………………….[“**7 (b)**”]

    1)………………….Clint Day……………………………221 (E)

    2)…………………Brandon Phillips…………………………………..221 (E)

    3)………………….Mike Crane……………………………………..223 (E)

    4)………………………...Rachel Little…………………………………221 (E)

    5)…………………Brandon Seigler…………………………………221 (E)

    6)………………………Nathan Porter…………………………………..221 (E)

*a)-That is also to inform i)-[“**Public Interest**”], that for Any courts of the United States, or to confer Jurisdiction on this cases involved 1)-[“**Controversies**”] against defendants 2)-[“**Systematic Attacks**”], so this one is also amending ii)-[“**TALA**''], at page, 24 (c) (3), or if the courts are difficult to understand the wording, which the senators are admitted 3)-[“**Alien**”], then 4)-[“**Pauperis Status**”] that for the first step in the 5)-[“**Development Process**”] on federal court to review agencies actions against the various laws. Califano v. Sanders 430 U.S. 99 (1977).*

b)…………………………………[“***Joel Natt***”]……………………………..[“**7 (b)**”]

    1)………………………Bethany Ballard……………………………..221 (E)

    2)………………………Rebecca Yardley……………………………..221 (E)

    3)………………………James Cooper……………………………..221 (E)

    4)………………………Brad Carver……………………………221 (E)

    5)………………………Michael Wiltse……………………………221 (E)

    6)………………………Bob Hinton……………………………………221 (E)

    7)………………………Denise Burns……………………………..221 (E)

I.………………………[“***Massive Issues Reform First Act***”] (MIRFA)………[“**446-499**”]

a)………………………[“***Hawaii Elected officials***”]………………………..[“**7(b)**”]

    1)……………………Val Okimoto…………………………………221 (E)

    2)……………………Lauren Matsumoto…………………………221 (E)

    3)……………………Gene Ward…………………………………221 (E)

    4)……………………Bob McDermott……………………………..221 (E)

    5)……………………Kurt Fevella………………………………221 (E)

b)……………………[“***Hawaii States Executive Members***”]………………[“**7(b)**”]

    1)………………………Lynn Finnegan………………………………221 (E)

    2)………………………Male Songson………………………………221 (E)

    3)………………………Diamond Garcia………………………………221 (E)

    4)………………………Tiana Elisara………………………………221 (E)

    5)………………………Jeffrey Coakley………………………………221 (E)

    6)………………………Henry Vincent III……………………………221 (E)

    7)………………………Steve Holck………………………………221 (E)

II……………["***Nations Educative Treatment On Poverty Act***"] (NETOPA)…..["**446-498**"]

a)……………………………..["***Illinois GoP Party***"]……………………………..["**7(b)**"]

    1)………………………...Dan McConchie……………………………………221 (E)

    2)…………………………….Jim Durkin……………………………………221 (E)

    3)…………………………Ronna McDaniel………………………………..221 (E)

    4)…………………………Richard Porter…………………………………221 (E)

    5)………………………Demetra DeMonte……………………………..221 (E)

    6)………………………...Mike Bost……………………………………...221 (E)

    7)…………………………Rodney Davis…………………………………221 (E)

    8)………………………...Mary Miller…………………………………...221 (E)

    9)………………………Adam Kinzinger……………………………...221 (E)

    10)………………………Darin LaHood……………………………….221 (E)

b)……………………….["***Illinois Republican State Committees***"]………………..["**7(b)**"]

i)………………………….. Shaun Murphy……………………………………...221 (E)

    1)…………………..Judy Diekelman………………………………….221 (E)

    2)………………….. Sean Morrison…………………………………221 (E)

    3)……………………… Jay Reyes……………………………………..221 (E)

    4)……………………… Jack Dorgan……………………………………221 (E)

    5)………………………...Bob Grogan……………………………………221 (E)

    6)……………………... Mark Hosty……………………………………221 (E)

    7)……………………... Nimish Jani…………………………………..221 (E)

    8)………………………Char Foss-Eggmann…………………………….221 (E)

    9)……………………… Mark Shaw……………………………………..221 (E)

ii)……………………………["*__Roger Claar__*"]……………………………..22 (b)

    1)………………….Barb Viviano…………………………………221 (E)

    2)………………….Avery Bourne…………………………………221 (E)

    3)………………… Laura Pollastrini……………………………221 (E)

    4)…………………Chapin Rose…………………………………221 (E)

    5)………………….John McGlasson………………………………221 (E)

    6)…………………Jan Weber……………………………………221 (E)

    7)…………………Michael Bigger………………………………221 (E)

iii)…["*__Criminal Offenders Ratification Imminent Danger Act__*"] (*CORIDA*)……["__446-499__"]

a)…………………["*__Indiana Initiatives Leaderships__*"]…………………["__7(b)__"]

    1)………………………Suzanne Crouch…………………………..221 (E)

    2)…………………………Holli Sulivan…………………………..221 (E)

    3)……………………..Todd Rokita…………………………..221 (E)

    4)……………….……Tera Klutz…………………………221 (E)

    5)…………………..Kelly Mitchell………………………..221 (E)

    6)…………………….Rodric Bray…………………………221 (E)

    7)……………………..Todd Huston…………………………221 (E)

    8)………………….Todd Young………………………...221 (E)

    9)……………………..Mike Braun…………………………221 (E)

    10)………………….Jackie Walorski……………………221 (E)

    11)………………….Jim Banks…………………………221 (E)

    12)……………………Jim Baird…………………………221 (E)

    13)…………………Victoria Spartz………………………221 (E)

14)…………………………..Greg Pence……………………………………221 (E)

15)………………………….Larry Bucshon……………………………..221 (E)

16)………………………..Trey Hollingsworth………………………………221 (E)

b)………………………["***Indiana Diversity Leaderships***"]………………["**7(b)**"]

i)……………………………["***Kyle Hupfer***"]…………………………221 (E)

1)…………………………..Whitley Yates……………………………….221 (E)

2)…………………………..Jillean Battle………………………………221 (E)

3)…………………………..Stephanie Bibbs…………………………221 (E)

4)…………………………Shawn Carruthers…………………………221 (E)

5)………………………….Brandon Clifton…………………………….221 (E)

6)………………………..Terry Dove-Pittman…………………………221 (E)

7)…………………………Danny Lopez……………………………….221 (E)

8)…………………………..David Olivencia…………………………..221 (E)

9)…………………………….Tony Pearson…………………………….221 (E)

10)………………………….Jamal L. Smith………………………….221 (E)

11)…………………………Alfonso R. Vidal…………………………221 (E)

12)………………………….Tinisha Weigelt…………………………221 (E)

13)…………………………..Aaron Williams…………………………221 (E)

b)-Under the applicable laws, rules, and regulations, at 1)-["***MOCMA'***], 60 (II). previous one, then we are amending for more clarification which the i)-["**Revolutionist**"], or ii)-["**Nationalist**"] is informing the agencies that they are punitive laws, to question the agencies actions, or their failure, or that is is to challenged all illegal laws, be included the 2)-["**Medicaid Act**"], to be developed. iii)-["CRJA"], or for compelling the agencies action, so to be clearer, which we are questioning their records, Finding federal right to reasonably prompt provision of assistance under § 1396a of the 3)-["**Medicaid Act**"] enforceable under § 1983. Alexander v. Choate,469 U.S. 287 (1985).

A………………………["***Comprehensive Justice Reform Act***"] (CJRA)………..['**306 (D)**"]

i)…………………………["***Kansas Party Leadership***"]…………………………["**7(b)**"]

    1)………………………Sue Schlapp…………………………………………..221 (E)

    2)………………...Mike Kuckelman ………………………………………221 (E)

    3)………………………Emily Wellman………………………………………221 (E)

    4)………………………Chery Renolds………………………………………221 (E)

    5)………………………Mark Karks………………………………… …...221 (E)

    6)………………………Kim Borchers………………………………………221 (E)

    7)………………………Laura Tawater………………………………………221 (E)

    8)………………………Jacob Swisher………………………………...221 (E)

    9)…………………..…..Debbie Luper………………………………………221 (E)

ii)…………………………["***Kansas Elected Officials***"]……………………………["**7(b)**"]

    1)……………………Dr. Roger Marshall…………………………………221 (E)

    2)……………………….Tracey Mann………………………………………221 (E)

    3)………………………Ron Estes………………………………………...223 (E)

    4)………………Derek Schmidt…………………………………221 (E)

    5)………………………..Jerry Moran………………………………………223 (E)

    6)…………………………Jake Laturner………………………………………221 (E)

    7)………………………Scott Schwab………………………………………221 (E)

    8)………………………Vicki Schmidt…………………………………221 (E)

*c)-Here, the 1)-["**Inventor**"] has been victimized by judicial 2)-["**control theory**"], or by illegalities, when they failed to considered this one. ["**Abused of Process**"], or imposing illegal discretion with the meaning of illegal laws,i)- ["**PLRA**"], ["**20-CV-00182**"], ii)-["**Dkt 12**"] at page 2, and most courts are listed, under the federal Judicial District Covered By the U.S Trustee Program.iii)-["**https://www.justice.gov/ust/credit-counseling-federal-judicial-districts**"] that is for trust process, and to remove the allegation of a)-["**Bamboozle**"] courts by federal officials b)-["**bias**"], or discriminatory by challenged African decent intellect intent, so we are asking the agencies actions. Arlington Heights v. Metropolitan Housing Corp. 429 U.S. 252 (1977)*

B…………………………["***Uniform Fees Waiver Act***"] (UFWA)…………..["**306 (D)"**]

i)………………………..["***Iowa Party Leadership***"]…………………………………..["**7(b)**"]

   1)……………………….*Jeff Kaufman*………………………………………..221 (E)

   2)……………………….Linda Upmeyer…………………………………………221 (E).

   3)……………………….Steve Scheffler…………………………………………221 (E)

ii)………..………………..["***Iowa State Committees***"]………………………………["**7(b)**"]

a)……………………………["***Chelle Adkins***"]…………………………..["**211 (e) (5)**"]

   1)…………………………Tim Busch………………………………………..221 (E)

   2)………………………...Edward Hayes…………………………………221 (E)

   3)……………………….Jennifer Smith…………………………………………221 (E)

   4)………………………...David Barker…………………………………………223 (E)

   5)……………………….David Barker…………………………………………221 (E)

   6)…………………………Trudy Caviness…………………………………221 (E)

   7)………………………...Carol Crain………………………………………..223 (E)

   8)……………………….Jarad Klein…………………………………………..221 (E)

   9)……………………….Paul Dykstra………………………………………..221 (E)

b)…………………………….["***William Gustoff***"]…………………………………["**26 (II)**"]

   1)………………………...John Strathman……………………………………221 (E)

   2)………………………...Cheryl Weisheit……………………………………..221 (E)

   3)……………………….Kevin Brown…………………………………………221 (E)

   4)…………………….Barbara Hovland…………………………………………221 (E)

ii)………………………..……["***Andy Cable***"]……………………………..["**26 (II)**"]

C…………………………….[" ***Ratification Punitive Act***"] (RPA)……………………306 (D)

i)………………………...["***Idaho Politician Committee***"]…………………………..["**7(b)**"]

ii)………………………….[" ***Tom Luna***"]…………………………………["***211 (e) (5)***"]

1)…………………….Machele Hamilton…………………………………221 (E)

2)…………………...Mike Mathews………………………………………..221 (E)

3)…………………...Damond Watkins……………………………………221 (E)

4)…………………..Cindy Siddoway…………………………………………221 (E)

5)…………………...Marla Lawson……………………………………………221 (E)

6)……………………. Stephen Parrott………………………………………..221 (E)

7)…………………….Bjorn Hande………………………………………221 (E)

8)………………… Clinton Daniel…………………………………………221 (E)

9)……………………...Viki Purdy…………………………………………221 (E)

10) ………………….Ed Humphreys……………………………………221 (E)

11)………………………..Wayne Hurst……………………………………..221 (E)

12)………………………Terrell Tovey……………………………………221 (E)

13)…………………………Ann Rydalch………………………………………221 (E)

14)………………………Melinda Smyser……………………………………221 (E)

15)…………………………Daniel Silver………………………………………..221 (E)

16)…………………………Shirlayne Corder……………………………………221 (E)

17)……………………...Garrett Peterson……………………………………..221 (E)

iv)-At, page, 1)-[**" 2**'] quoted by the district courts of Indiana, 2)-["**20-CV-00182**"], at a)-["**Dkt 12**"] that is for the courts to consider all factors, b)-["**Continue Matters**"], or both c)-["**Bamboozle**"], or i)-["**Jabberwocky**"] appears to be very clearer, upon reliefs can be granted. ii)-["**Unreasonable Classification**"], or evidence for iii)-["**Group libel**"], or also known as the defendants could be involved d)-["**Hate Speech laws**"]", which the courts referred him to the same as the e)-["**Animal**"] so the agencies, or the defendants must answered all claims or iv)-["**Alien status**"] with no 3)-["**Competency**"],that is for the courts,a nd the agencies to consider all factor by advocate concerns or 4)-["**Racial Discriminatory Intent**"] by judicial officials against African descents with common sense, or violation of his freedom of speech by the applicable to litigate facts. *Coral Ridge Ministries Media v. Amazon.com, Inc.* 406 F. Supp. 3d 1258 (M.D. Ala. 2019)

D……………………..["***Media On Politicians  Act***"] (MOPA)…………………..["**306 (D)**"]

i)………………………["***Kentucky Officials & Candidate***"]………………………["**7(b)**"]

    1)……………………Julie Raque Adams………………………………………221 (E)

    2)………………………Michael Adams……………………………………..221 (E)

    3)………………………Ralph Alvarado……………………………………221 (E)

    4)………………………Shane Baker…………………………………………221 (E)

    5)………………………Allison Ball…………………………………………221 (E)

    6)………………………Kim Banta……………………………………………..221 (E)

    7)………………………..Andy Barr……………………………………………..221 (E)

    6)………………………Lynn Bechler………………………………………..221 (E)

    8)………………………Danny Bentley………………………………………221 (E)

    9)………………………John Blanton…………………………………………221 (E)

    10)………………………Adam Bowling………………………………………221 (E)

    11)………………………Josh Branscum……………………………………..221 (E)

    12)………………………Kevin D. Bratcher…………………………………221 (E)

    13)……………………………Josh Bray……………………………………..221 (E)

    14)……………………………Randy Bridges………………………………221 (E)

    15)………………………Josh Calloway………………………………….....221 (E)

    16)………………………Daniel Cameron…………………………………..221 (E)

    17)………………………Jared Carpenter…………………………………..221 (E)

    18)………………………Danny Carroll……………………………………221 (E)

    19)………………………..Matt Castlen…………………………………………221 (E)

a)………………………………….["*__James Comer__*"]………………………………..28 (i)

1)…………………………..Jennifer Decker………………………………..221 (E)

2)…………………………..Jonathan Dixon………………………………..221 (E)

3)………………………….Myron Dosett………………………………….221 (E)

4)………………………….Ryan Dotson………………………………….221 (E)

5)…………………………Donald Douglas………………………………221 (E)

6)…………………………..Daniel Elliot………………………………..221 (E)

7)………………………….C.B Embry Jr………………………………221 (E)

8)…………………………..Joe Fisher………………………………221 (E)

9)………………………………Daniel Fisher……………………………221 (E)

10)…………………………Patrick Flannery………………………….221 (E)

11)………………………….Ken Fleming………………………….221 (E)

12)…………………………..Deanna Frazier……………………………221 (E)

13)………………………….Christ Freeland………………………….221 (E)

14)………………………….Christ Fugate…………………………..221 (E)

15)………………………..Melinda Gibbons Prunty……………………221 (E)

16)…………………………Rick Girler…………………………….221 (E)

17)…………………………David Givens…………………………….221 (E)

18)………………………….Jim Gooch Jr……………………………..221 (E)

*1)-This court ["__Clervrain v. Lee__ *No.: 3:20-CV-548-TAV-DCP (E.D. Tenn. Jan. 14, 2021)*"] failed to certify the cases under i)-["__Article III standing__"] to sue the b)-["__Criminals__"]. Or failed to remove his injuries in facts, caused by the defendants actions c)-["__Pauperis Status__"] that he his entitle for 1)-["__Equitable Relief__"] for his First __Amendment Rights__, to engage in ii)-["__Expressive Activities__"], should control the novel facts in this situation for additional funding afterward, or additional equity is demands by laws, 2)-["__$ 600 Billions Dollars__"] as matter to improve 3)-["__Injustice__"], or to give 4)-["__judicial officials__"] they are not above the 5)-["__Laws__"] by abusing their own laws, or upon reliefs can be granted. 6)-["__Legal Process__"]. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)*

b)…………………………..[*"**_Brett Guthrie_**"*]…………………………[*"**28 (i)**"*]

1)…………………………David Hale………………………………221 (E)

2)…………………………Mike Harmon………………………………..221 (E)

3)…………………………Mark Hart………………………………221 (E)

4)…………………………Richard Health………………………………221 (E)

5)…………………………Samara Heavin………………………………221 (E)

6)…………………………..Jimmy Higdon………………………….…221 (E)

7)…………………………Paul Hornback………………………………221 (E)

8)…………………………..Jason Howell………………………………221 (E)

9)…………………………Regina Huff………………………………221 (E)

10)…………………………Thomas Huff………………………………221 (E)

11)…………………………Mary Beth Imes…………………………221 (E)

12)………………………Brandon Jackson Storm………………………221 (E)

13)…………………………DJ Johnson………………………………221 (E)

14)………………………..Alice Forgy Kerr…………………………..221 (E)

15)………………………..Kim King…………………………………..221 (E)

16)…………………………Norma Kirk McCormick……………………221 (E)

17)…………………………Matt Koch………………………………..221 (E)

18)…………………………Adam Koenig………………………………..221 (E)

19)……………………………William Lawrence…………………………221 (E)

*2)-These principles may give notice to officers, in particularly, ["**_20-CV-00132; and 21-CV-00326_**"] provided that the decisions clearly apply to the situation at hand, a)-["**_NIRTA_**"], pending for amending at page 16-21 , ,refer to ("MOCMA"), and 32-40 are very i)-["**_Complex Situation_**"] to question the defendants to answer concerning all claims, or upon relief can be granted as a matter of facts. ii)-["**_Viable Contracts_**"] and b)-["**_Fictional Claims_**"] against c)-["**_Extremist Officials_**"], or part of the settlement, for additional d)-["**_$ 600 Billions Dollars_**"] that is also to inform them that they are e)-["**_Racist by Nature_**"] to prove by the defendants are anticipating in the alleged f)-["**_Hate crim_**es"], those  evidence  is for group libel doctrine can be justified by witness of the cases, to inform all judges of their criminal misconducts. Arcand v. Evening Call Pub. Co.567 F.2d 1163 (1st Cir. 1977)*

c)………………………………["***Derek Lewis***"]………………………..["**_28 (i)_**"]

1)…………………………Scott Lewis……………………………221 (E)

2)………………………..Scott Lewis………………………………221 (E)

3)…………………………..Matt Lockett……………………………221 (E)

4)…………………………Savannah Maddox…………………………221 (E)

5)………………………….C.Ed Massey…………………………221 (E)

6)………………………..Thomas Massie……………………………221 (E)

7)………………………..Mitch McConnel………………………….221 (E)

8)…………………………Bobby McCool……………………………221 (E)

9)……………………………Chad McCoy…………………………..221 (E)

10)………………………Christian McDaniel…………………………221 (E)

11)………………………Shawn Mcpherson………………………….221 (E)

12)…………………………Dacvid Meade…………………………….221 (E)

13)………………………..Stephen Meridith…………………………221 (E)

14)…………………………Michael Meridith………………………..221 (E)

15)…………………………..Suzanne Miles…………………………221 (E)

16)………………………….Jerry Miller……………………………221 (E)

17)…………………………Robby Mills……………………………221 (E)

18)………………………….Kim Moser……………………………221 (E)

19)…………………………Jason Nemes……………………………221 (E)

20)…………………………Mike Nemes…………………………..221 (E)

d)……………………………………[“***Tom O' Dell Smith***”]………………………………28 (i)

1)……………………………………David Osborne……………………………..221 (E)

2)……………………………………Rand Paul…………………………………..221 (E)

3)……………………………………Jason Petrie……………………………..221 (E)

4)……………………………………..Sarge Pollock……………………………221 (E)

5)……………………………………..Phillip Pratt……………………………221 (E)

6)…………………………………Ryan F. Quarles……………………………221 (E)

7)……………………………………Felicia Rabourn…………………………221 (E)

8)…………………………………Brandon Reed………………………………221 (E)

9)……………………………………Steve Riley………………………………221 (E)

10)…………………………………Hal Rogers………………………………221 (E)

11)……………………………………Bart Rowland…………………………221 (E)

12)……………………………………Steven Ruby……………………………221 (E)

13)……………………………………Sal Santoro……………………………221 (E)

14)……………………………………Jhon Schickel…………………………221 (E)

15)……………………………………Wil Schroder……………………………221 (E)

16)……………………………………Scott Sharp……………………………221 (E)

17)……………………………………Steven Sheldon…………………………221 (E)

18)……………………………………Brandon Smith…………………………221 (E)

19)…………………………………Adrienne Southworth………………………221 (E)

*3)-Under i)-[“**MOCMA**”], at page 60 (I), also known ii)-[“**NEFRA**”'], then the case in the eastern district of Oklahoma had giving the activist access to a)-[“**Email Filling**”], which the courts was dismissed by the various courts, or by b)-[“**Control Theory**”] and c)-[“**Conspiracy Theory**”] against illegal judgments, that have been denied, most recently on October, 28 2021, indeed, they are related matter to question judicial performance, or fantastic government manipulation of their will or mind or supernatural intervention, but they are against public interest, so we are asking the judges, if d)-[“**CJRA**”] will make a big different to protect public interest. Best v. Kelly, 39 F.3d 328 (D.C. Cir. 1994)*

e)………………………….["***Robert Stivers, II***"]………………………["**211 (e)**"]

    1)………………………….Nancy Tate………………………………..221 (E)

    2)………………………….Damon Thayer…………………………….221 (E)

    3)………………………….Walker Thomas…………………………….221 (E)

    4)………………………….Killian Timoney……………………………221 (E)

    5)………………………….James Tipton……………………………..221 (E)

    6)………………………….Timmy Truett……………………………..221 (E)

    7)………………………….Jhonnie Turner…………………………..221 (E)

    8)………………………….Ken Upchurch…………………………….221 (E)

    9)………………………….Rusell Webber……………………………221 (E)

    10)………………………….Billy Wesley……………………………..221 (E)

    11)………………………….Steve West……………………………….221 (E)

    12)……………………..Whitney Westerfield………………………..221 (E)

    13)……………………..Phillip Wheeler……………………………221 (E)

    14)………………………….Richard White……………………………..221 (E)

    15)………………………….Mike Wilson……………………………..221 (E)

    16)………………………….Mike Wise………………………………..221 (E)

I………………………….["***Family Effect Treatment Act***"] (FETA)…………..["**306 (D)**"]

a)………………………….["***Louisiana Executive Committee***"]……………………..["**7(b)**"]

    1)…………….…………Louis Church…………………………………..221 (E)

    2)…………………… …Bery Amedec……………………………………221 (E)

    3)………………………..Roger F. Villere, Jr………………………………221 (E)

    4)………………………..Lenar Whitney……………………………….221 (E)

5)……………….……Mike Bayham……………………………………..221 (E)

6)……………………..Dexter Duhon……………………………………..221 (E)

7)…………………………Gena Gore…………………………………………221 (E)

II………………………[“***Anti-Family Genocide Act***”] (“AFGA”)…………[“**306 (D)**”]

a)…………………………[“***Massachusetts Elected Officials***”]…………………….[“**7(b)**”]

1)……………………Charlie Baker………………………………………221 (E)

2)……………………Karyan Polito………………………………………221 (E)

3)……………………Ryan Fattman………………………………………221 (E)

4)…………………..Sen. Patrick O'Connor…………………………………221 (E)

5)………………….Rep. Jay Barrows……………………………………221 (E)

6)……………………Rep. Paul Frost……………………………………221 (E)

7)…………………..Rep. Joseph McKenna………………………………221 (E)

8)………………..Rep. Timothy Whelan……………………………221 (E)

9)………………..Rep. Donald Berthiaume ……………………………221 (E)

10)…………………..Rep. Susan Gifford……………………………..……221 (E)

11)…………………..Rep. Leonard Mirra…………………………………..221 (E)

12)…………………Rep. Donald Wong…………………………………221 (E)

13)………………..Rep. Nicolas Boldyga…………………………..221 (E)

14)………………..Rep. Sheila Harrington……………………………221 (E).

15)………………….Rep. Mathew Muratore………………………..221 (E)

16)…………………Rep. William Crocker……………………………221 (E)

17)………………………Rep. Bradford Hill……………………………221 (E)

18)…………………….Rep. Norman Orrall……………………………221 (E)

b)…………………………[" ***Rep. Angelo D'Emilia***"]……………………………[" **34 (a)**"]

    1)……………………Rep. Steven Howitt……………………………………221 (E)

    2)…………………Rep. Elizabeth Poirier……………………………..…221 (E)

    3)……………………Rep. David DeCoste…………………………………221 (E)

    4)………………….Rep. Randy Hunt……………………………………221 (E)

    5)……………………Rep. Todd Smola…………………………………..221 (E)

    6)…………………Rep. Shawn Dooley…………………………………221 (E)

    7)……………………Rep. Hannah  Kane…………………………………221 (E)

    8)………………….Rep. Mike Soter……………………………………221 (E)

    9)…………………Rep. Peter Durant…………………………………221 (E)

    10)…………………Rep. James Kelcourse……………………………221 (E)

    11)…………………Rep. Alyson Sullivan…………………………………221 (E)

    12)………………Rep. Kimberly Ferguson…………………………..221 (E)

    13)…………………Rep. Marc Lombardo………………………………221 (E)

    14)…………………Rep. David Vieira……………………………………221 (E)

III………………[" ***Service Advocate Treatment Model Act***"] (SATMA)…..[" **68 (D)  (3)**"]

a)……………………[" ***Maryland General Assembly***"]……………………………[" **7(b)**"]

    1)………………………Andy Harris……………………………………221 (E)

    2)……………………..Larry Hogan…………………………………...221 (E)

    3)……………………Boyd Rutherford…………………………………..221 (E)

    4)…………………..Danielle Kornberg…………………………………221 (E)

    5)………………………Barry Glassman…………………………………221 (E)

    6)………………………John Psota……………………………………221 (E)

b)………………………..["***Maryland Party Leadership***"]…………………..["**7(b)**"]

   1)……………………………..Dirk Haine……………………………..221 (E)

   2)……………………………..David Bossie…………………………..221 (E)

   3)……………………………..Nicolee Ambrose………………………...221 (E)

   4)…………………………..Nicole Bennett………………………….221 (E)

   5)………………………..Al mendelsohn…………………………221 (E)

   6)……………………Christopher Tomlinson……………………..221 (E)

   7)…………………………Mark Uncapher……………………………221 (E)

   8)…………………………Chris Rosenthal……………………………221 (E)

   9)………………………K.Edward Raleigh………………………..221 (E)

   10)…………………………Barry Donadio…………………………...221 (E)

   11)………………………Dwight Patel………………………….221 (E)

   12)………………………..Marcus Alzona………………………….221 (E)

   13)……………………………Reid Novotny………………………221 (E)

IV………………………["***Family Treatment Principal Act***"] (FTPA)…………..["**323 (v)**"]

  a)……………………………["***Maine GOP Leadership***"]…………………..["**7(b)**"]

   1)………………………Dr. Demil Kouzounas………………………..221 (E)

   2)…………………………Shane Reitze………………………….221 (E)

   3)…………………………Ben Lombard……………………………221 (E)

   4)…………………………Barbara Harvey………………………….221 (E)

   5)………………………..Hon Josh Tardy………………………….221 (E)

   6)…………………………Hon Ellie Espling………………………….221 (E)

b)……………………..……[“***Maine Executive Leaders***”]………………..[“**7(b)**”]

   1)…………………………..Jason Savage……………………………221 (E)

   2)………………………………Justin Davis…………………………..221 (E)

   3)…………………………….Sharon Benis…………………………221 (E)

   4)…………………………..Mellissa Reitze…………………………221 (E)

V…………………[“***Parental Educative Role Model Act***”] (PERMA)…………..[“**323 (iv)**”]

a)……………………………[“***Michigan GOP Leaders***”]………………… [“**7(b)**”]

b)………………………………..[“***Ron Weiser***”]……………………………..221 (E)

   1)………………………Meshawn Maddock…………………………223 (E)

   2)…………………………..Kathy Berden……………………………221 (E)

   3)…………………………Dr. Rob Steele……………………………221 (E)

   4)…………………………Diane Schindbelk………………………221 (E)

   5)…………………………..Marian Sheridan…………………………221 (E)

   6)……………………………Tyrell Bundy…………………………….221 (E)

   7)……………………………Paul Stephens……………………………221 (E)

   8)…………………………….Tami Carlone…………………………..221 (E)

c)………………………………[“***Michigan District Chair***”]………………….[“**7(b)**”]

   1)………………………….Steve Yoder…………………………….221 (E)

   2)………………………Kent Vanderwood…………………………221 (E)

   3)……………………………Mike Hewitt…………………………….221 (E)

   4)……………………………..Judy Rapanos…………………………221 (E)

   5)……………………………Dave Roberson…………………………221 (E)

i)……………………………………..["***Scott Mcgraw***"]…………………….["**211 (e)**"]

   1)…………………………………….Julie Games…………………………..221 (E)

   2)………………………………….Norms Shinkle…………………………..221 (E)

   3)…………………………………..Michelle Smith…………………………..221 (E)

   4)……………………………………Stanley Grot…………………………..221 (E)

   5)…………………………………..Shane Trejo…………………………..221 (E)

   6)……………………………….Micheal Strother………………………..221 (E)

   7)…………………………….David Dudenhoefer………………………221 (E)

   8)………………….………..William Rauwerdink………………………221 (E)

ii)……………………………………["***Paul Cordes***"]……………………..["**211 (e)** "]

   1)………………………………….John Inhulsen…………………………...221 (E)

   2)………………………………….Sarah Anderson………………………….221 (E)

   3)………………………………Andrea Pollock…………………………..221 (E)

   4)………………………….……..Dean Cleary…………………………..221 (E)

   5)……………………………….Stu Foster…………………………..221 (E)

   6)……………………………….Brittany Love………………………….221 (E)

   7)…………………………...Madison Miller…………………………..221 (E)

*4)- Then the a)-["**_Inventor_**"] who is also be called,  b)-["**_Prolific Litigant_**"], so the plaintiff is by his name, to which to be recognized by records c)-["**_Mr. Clervrain_**"] for Honorary degrees , who is classified as i)-["**_Alien Status_**"], or related matters are for judicial functions.d)-["**_Bamboozle_**"], profiling process, ii)-["**_Jabberwocky_**"] they are question if whether the courts must initiated e)-["**_Criminal Investigation_**"] against the various agencies across the country, it clear that must be filling to improve justice against Human Rights violations, they are for additional damages, lifetime damages can be proving with their administrative records to be considered, and  by applicable laws pending defendants responses <u>Arce v. Garcia</u>, 434 F.3d 1254 (11th Cir. 2006)*

VI……………………………["***The Reform Act***"] (TARA)……………["**69 (A) (I) (23)**"]

    a)…………………../["***Manetirony Clervrain V. Kirsten Nielsen***"]……....["**76 (II)**"]

["20-CV-00603"]

       1)…………………..*Manetirony Clervrain V. Willbur L Ross*………3 (A) (1)

["20-CV-00119"]

       2)……………*Manetirony Clervrain V. Steven Nejen*………………3 (A) (1)

["20-CV-00134"]

       3)………… *Manetirony Clervrain V. David Bernhart*…………… 3 (A) (1)

["21-CV-00075"]

    b)………………["***Manetirony Clervrain V. Michael Pompeo***"]…………["**76 (II)**"]

["20-CV-00555"]

VII……………………………["***Revoked Alien Status Act***"] (RASA)……………["**211 (e)**"]

    a)……………………………["***Minnesota GOP Leaders***"]…………………["**7(b)**"]

       1)…………….………………David Hann………………………………221 (E)

       2)…………………………...Barbara Sutter……………………………221 (E)

       3)………………………………..Max Rymer……………………………221 (E)

       4)………………………………Donna Bergstrom …………………………221 (E)

       5)……………………………..Dave Pascoe……………………………221 (E)

    b)……………………………["***Minnesota State Senate***"]…………………["**7(b)**"]

       1)………………………………Paul Gazelka…………………………221 (E)

       2)………………………………Mark Johnson…………………………221 (E)

       3)……………………………..Sen. Paul Utke…………………………221 (E)

4)……………………………Sen. Justin Eichorn………………………..221 (E)

5)…………………..………..Bill lingebrigtsen…………………………221 (E)

6)…………………………….Paul E. Gazelka……………………………221 (E)

7)…………………………..Carrie Ruud……………………………….221 (E)

8)………………………………Jason Rarick……………………………221 (E)

c)…………………………….["***Sen. Torrey N. Westrom***"]………………["**39 (B)**"]

1)……………………………Sen. Jeff Howe………………………….…..221 (E)

2)………………………………Sen. Jerry Relph………………………..221 (E)

3)………………………...Sen. Andrew Mathews………………………221 (E)

4)………………………..Sen. Gary H. Dahms……………………...221 (E)

5)………………………….Sen. Andrew Lang…………………………221 (E)

6)………………………….Sen. Scott J. Newman…………………….221 (E)

7)……………………….Sen. Rich Draheim………………………….221 (E)

8)………………………..Sen. Michael P. Goggin……………………221 (E)

9)……………………..Sen. Bill Weber…………………………221 (E)

10)………………………Sen. Julie A. Rosen…………………………221 (E)

11)………………………Sen. John R. Jasinski……………………221 (E)

12)……………………..Sen. David H. Senjem………………………221 (E)

13)………………………Sen. Carla J. Nelson……………………221 (E)

14)………………………Sen. Jeremy R. Miller……………………221 (E)

15)……………………Sen. Bruce D. Anderson……………………221 (E)

16)………………………Sen. Mary Kiffmeyer………………………221 (E).

17)……………………Sen. Michelle R. Benson………………………221 (E)

18)………………………...Sen. Mark W. Koran…………………………221 (E)

19)………………………Sen. David J. Osmek………………………221 (E)

20)………………………Sen. Warren Limmer………………………221 (E)

21)………………………...Sen. Jim Abeler……………………………221 (E)

D.………………………..["***Judicial Perfomance Mitigating Act***"] (JPMA)…………["**67-68**"]

2)………………………*Northern District of Texas*………………………211 (e) (3)

3)…………………………..*District of Columbia*..………………………211 (e) (3)

I.…………………………….["***The Ant(s) Punitive Act***"] (TAPA)……….["**68 (A) (I) (14)**"]

a)………………["***Manetirony Clervrain V. J.B Pritzer***"*]*………………["**76 (II)**"]

["20-CV-013040"]

1)……………*Manetirony Clervrain V. Phill Scott*…………………3 (A) (1)

["--------------------"]

2)……………*Manetirony Clervrain V. Bill Lee*……………………3 (A) (1)

["20-CV-00548"]

3)……………..*Manetirony Clervrain V. Henry McMaster*…………3 (A) (1)

["21-CV-00021"]

b)………………..["***Manetirony Clervrain V. Gina Rairondo***"]………….["**76 (II)**"]

["20-CV-00535"]

II…………………………..["***Jidicial Issues Communities Act***"] (JICA)…………["**76 (IV)**"]

1)…………………………*District of Maine*……………………………..211 (e)

2)……………………………*District of Delaware*………………………211 (e)

3)……………………………*District of Hawaii*……………………………..211 (e)

4)……………………….…..*District of Idaho*……………………………..211 (e)

5)…………………………*District of New-Mexico*…………………………211 (e)

III………………………["***Security Issues Grievous Mgt Act***"] (SIGMA)………["**76 (IV)**"]

A……………………………["***Misouri Leaders Proud to Serve***"]…………………["**7(b)**"]

    1…………………………………..Roy Blunt………………………………221 (E)

    2)………………………………………Josh Hawley…………………………221 (E)

    3)………………………………………Mike Parson…………………………221 (E)

    4)………………………………………..Mike Kehoe………………………221 (E)

    5)………………………………………Jay Ashcroft…………………………221 (E)

    6)………………………………………Eric Schmitt…………………………221 (E)

    7)………………………………………..Ann Wagner……………………221 (E)

    8)………………………………………Blaine Luetkemeyer…………………221 (E)

    9)………………………………………Vicky Hartzler……………………..221 (E)

    10)………………………………………Sam Graves…………………………221 (E)

    11)………………………………………Jason Smith…………………………221 (E)

B………………………………..["***Missouri Senate Leadership***"]…………………["**7(b)**"]

    1)………………………………………*Dave Schatz*………………………221 (E)

    2)………………………………..*Caleb Rowden*…………………………221 (E)

    3)………………………………………*Bill White*…………………………221 (E)

    4)………………………………………*Dan Hegeman*……………………221 (E)

    5)………………………………………*Jeanie Riddle*……………………221 (E)

    6)………………………………..*Tony Luetkemeyer*……………………221 (E)

C..............................................["***Missouri House Leadership***"]...................["**7(b)**"]

    1).............................................*Rob Vescovo*...............................223 (E)

    2)..............................................*John Wiemann*................................221 (E)

    3)..............................................*Dean Plocher*................................221 (E)

    5).............................................*Hannah Kelly*...............................221 (E)

    6).............................................*Allen Andrews*..............................221 (E)

    7)..............................................*Sara Walsh*...............................221 (E)

    9).............................................*Ann Kelley*................................221 (E)

D.........................["***Treaties  Mitigating Poverty Act***"] (TMPA)............["**76 (IV)**"]

    i)...........................["***Mississippi Elected Officials***"].......................["**7(b)**"]

        1)...............................*Tate Reeves*................................ 221 (E)

        2)............................Delbert Hosemann............................221 (E)

        3)...........................…Micheal Watson..............................221 (E)

        4)..............................Lynn Fitch.................................221 (E)

        5).............................Shad White................................221 (E)

        6)............................David Mcrae................................223 (E)

        7)...........................…Andy Gipson................................221 (E)

        8)............................Mike Chaney...............................221 (E)

    *5)-Therefore, a)-["**Mr.Clervrain**"] who is proving his i)-["**Intellect Intent**"] by inspiration,or by the meaning  of words, or ii)-["**In God I put my Trust**"], should not be exclude to express his religious right, or judicial rights, neither no courts should have the power to restrict to file his motions electronically because he does not licence of Attorney, 1)-[20-CV-00182], Dkt, 12"] to express his 2)-["**Freedom of Speech**"] , or to inform the public he is a 3)-["**Son of God**"], or inspired by 4)-["**Term And Art**"] (TAA),when they responded, they must publicly inform the laws are 5)-["**Ambiguous**"], or participating  imposed 6)-["**Unjust Laws**"], and the first question is for qualification as  7)-["**U.S Citizen**"] and, for adjudication of his 8)-["**Nationality Claim**"], they are matter to evaluate controversies , and for 9)-["**Additional Damages**"] against the officials within their jurisdiction, so that is for financial rights. 10)-["**MTPA'**], and for the enactment of proposed laws, they are the new rules for cancellation of illegal removal pending for retroactive effect. <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520 (1993)*

ii)……………………….[“***Mississippi US Senate and House***”]………………[“**7(b)**”]

   1)………………………….Cindy Hype-Smith……………………….221 (E)

   2)……………………………..Roger Wicker………………………….221 (E)

   3)…………………….………Michael Guest…………………………221 (E)

   4)…………………………………Trent Kelly……………………………221 (E)

   5)………………………….Kevin Blackwell……………………….221 (E)

   6)…………………………Jenifer Branning…………………………221 (E)

   7)……………………….……Joel Carter…………………………….221 (E)

   8)………………………………Chris Caughman………………………221 (E)

   9)…………………………Lydia Graves Chassaniol……………………221 (E)

   10)…………………….………Kathy Chism…………………………221 (E)

   11)…………………………….Dennis Debar………………………….221 (E)

   12)…………………………..Scott Delano………………………….221 (E)

   13)…………………………….Sally Doty…………………………….221 (E)

   14)………………………….Jeremy England………………………….221 (E)

   15)…………………………Joey Fillingane………………………….221 (E)

   16)……………………………Josh Harkins………………………….221 (E)

   17)…………………………Angela Burks Hill………………………..221 (E)

   18)…………………………W. Briggs Hopson III……………………..221 (E)

   19)……………………………Gary Jackson………………………….221 (E)

   20)…………………………..Chris Johnson…………………………..221 (E)

   21)……………………………Dean Kirby……………………………..221 (E)

   22)…………………………Tyler McCaughn………………………….221 (E)

23)……………………………Chris McDaniel…………………………221 (E)

24)………………………Michael W Mclendon………………………221 (E)

25)…………………………..Chad McMahan…………………………221 (E)

26)…………………………J. Walter Michel………………………221 (E)

27)……………………………Phillip Moran……………………………221 (E)

28)………………………..David Parker……………………………221 (E)

29)……………………………Rita Potts Parks…………………………221 (E)

30)………………………………John A Polk………………………………221 (E)

31)…………………………Joseph M. Seymour………………………221 (E)

32)……………………………..Melanie Sejourner…………………………221 (E)

33)……………………………Dantel Sparks……………………………221 (E)

34)……………………………Ben Suber……………………………221 (E)

35)……………………………Jeff Tate………………………………221 (E)

36)………………………………Mike Thompson…………………………221 (E)

37)……………………………Neil S Whaley…………………………..221 (E)

38)……………………………Brice Wiggins……………………………221 (E)

39)………………………..Charles Younger…………………………221 (E)

*6)-The second question if for the 1)-["__Executive Branches__"] to perform their duties, under ("NIRTA"), at page 16-21 (II) ,they are for 2)-["__Settlement Agreement__"], or for development process by the 3)-["__World Educative Science Association__"] ("WEDSA"), also 4)-["""__WESA__"""], or Under a)-["__TAA__"] or The Answer Motions, at page, 10, or for b)-["__Extension__"] for expert to evaluate b)-["__Construction Costs__"], at least additional c)-["__$ 600,000,000,000 Billions__"], or for questioning each courts, and this one d)-["__21-CV-01209__"] to correct their e)-["__Docket Statements__"], or 5)-["__Demands__"] that is for ii)-["__$ 260 Billion Dollars__"] for iii)-["__Hiring process__"] , and additional funding for abolishing the defendants practices. f)-["__Culture Shocking__"] will be provided to the g)-["__Combatants__"] injustice by the applicable laws that need to be release in 30 days as requested within the motions for the defendants inform the public concerning their illegal laws or amendment . __Doi v. Halekulani Corp.__ 276 F.3d 1131 (9th Cir. 2002)*

iii)…………………………………["***Shane Aguirre***"]………………["**211 (e) (5)**"]

1)………………………………Brant Anderson…………………………221 (E)

2)………………………………William Tracy Arnold…………………..221 (E)

3)………………………………Nick Bain……………………………221 (E)

4)………………………………Mark Baker…………………………221 (E)

5)………………………………Shane Barnett…………………………221 (E)

6)………………………………Manly Barton…………………………221 (E)

7)………………………………Charles Jim Beckett………………………221 (E)

8)………………………………Donnie Bell…………………………221 (E)

9)………………………………Richard Bennett………………………221 (E)

10)……………………………Joel Bomgar…………………………221 (E)

11)……………………………C.Scott Bounds…………………………221 (E)

12)……………………………Randy P Boyd…………………………221 (E)

13)……………………………Chris Brown…………………………221 (E)

14)……………………………Charles Busby…………………………..221 (E)

15)……………………………Larry Byrd……………………………221 (E)

16)……………………………Billy Adam Calvert………………………221 (E)

17)……………………………Lester Carpenter…………………………221 (E)

18)……………………………Gary Chrism…………………………221 (E)

19)……………………………Caralyn Crawford………………………221 (E)

20)……………………………Sam J. Creekmore………………………221 (E)

21)……………………………Dana Criswell…………………………221 (E)

22)……………………………Dan Eubanks…………………………221 (E)

23)...................................Casey Eure...................................221 (E)

24)...................................Kevin Felsher...............................221 (E)

25)...................................Jill Ford....................................221 (E)

26)...................................Kevin Ford..................................221 (E)

27)...................................Dale Goodin................................221 (E)

28)...................................Jeffrey S Guice............................221 (E)

29)...................................Philip Gunn................................221 (E)

30)...................................Jeff Hale...................................221 (E)

31)...................................Greg Haney.................................221 (E)

32)...................................Joey Hood..................................221 (E)

33)...................................Steven Hopkins.............................221 (E)

34)...................................Stephen Home..............................221 (E)

35)...................................Mac Huddleston............................221 (E)

36)...................................Bill Kinkade................................221 (E)

37)...................................Timmy Ladner..............................221 (E)

38)...................................Jihn Thomas Lamar.........................221 (E)

39)...................................Vince Mangold..............................221 (E)

40)...................................Steve Massengill...........................221 (E)

41)...................................Kent McCarty...............................221 (E)

42)...................................Jay McKnight...............................221 (E)

43)...................................Dana Underwood............................221 (E)

44)...................................Doug Mcleod................................221 (E)

45)...................................Sam C Mims................................221 (E)

46).............................Ken Morgan....................................221 (E)

47)..........................Gene Newman...................................221 (E)

48).............................Karl Oliver...................................221 (E)

49).............................Jansen Owen..................................221 (E)

50).............................Randall Patterson.............................221 (E)

51)..............................Bill Pigott....................................221 (E)

52).............................Brent Power..................................221 (E)

53)......................... …Jhon Read..................................221 (E)

54).........................…Jerry R. Turner.................................221 (E)

55)..........................Price Wallace.................................221 (E)

I......................["***National Organization Bar Labor Act***"] (NOBLA).........["**76 (IV)**"]

  a)..............................["***Montana GOP Statewide***"].......................["**7(b)**"]

  b)...............................["***Steve Daines***"]..............................["**211 (e)**"]

  1)..........................Matt Rosendale...................................221 (E)

  2)........................…Elsie Arntzen.................................221 (E)

  3)..............................Troy Downing................................221 (E)

  4)..............................Greg Gianforte................................221 (E)

  5)..........................Christi Jacobsen................................221 (E)

  6)..............................Austin Knudsen..............................221 (E)

*7)-By ruling that the parent must stand in a a)-["**Parental " Role**"] for the exception to apply, or message to his first Daughter, b)-["**The Man Downstairs**"] who is not a c)-["**Parasite**"], so the d)-["**Mother**"] must look to the dictionary before spoken, if congress not clearer that is the end of the matters, that what? we are proposing within the meaning of each wordings  1)-["**Humanitarian**"] so e)-["**She**"] must explain by laws,  her behavior will prove that woman are doing in this country, abused. 1)-[**Brief (s)**"], that is because the Agencies decisions are not comport with the 2)-["**Statutory Scheme**"] alleged, or 3)-["**Interpretation of laws**"],  that is for the courts and themselves to follow man with 4)-["**Common sense**"], not 5)-["**Narcissism**"] or they are in practice of violated due process, or the plaintiff is proving clear and convincing evidence to be classified them. Daniels v. Williams, 474 U.S. 327, **329 (1986)***

c)................................["***Montana State Senate***"].......................["**7(b)**"]

1).............................Duane Ankney................................221 (E)

2)................................Mark Blasdel................................221 (E)

3)...............................Kenneth Bogner................................221 (E)

4)...............................Bob Brown................................221 (E)

5)..............................Mike Cuffe................................221 (E)

6)...........................Jason Ellsworth................................221 (E)

7)............................Jhon Esp................................221 (E)

8)..............................Steve Fritzpatrick................................221 (E)

9)..............................Chris Friedel................................221 (E)

10)...........................Terry Cauthier................................221 (E)

11)...........................Bruce Gillespie................................221 (E)

12)............................Carl Glimm................................221 (E)

13)...........................Greg Hertz................................221 (E)

14)..........................Steve Hinebauch................................221 (E)

15)...........................Brian Hoven................................221 (E)

16)..........................David Howard................................221 (E)

17)...........................Doug Kary................................221 (E)

18)............................Bob Keenan................................221 (E)

19)............................Mike Lang................................221 (E)

20)..........................Theresa Manzella................................221 (E)

23)..........................Tom McGillvray................................221 (E)

24).............................Brad Molnar................................221 (E)

25)………………………Ryan Osmundson……………………………221 (E)

26)……………………Keith Regier…………………………221 (E)

27)…………………….Walt Sales…………………………..221 (E)

28)………………….....Dan Salomon…………………………221 (E)

29)…………………….Jason Small………………………….221 (E)

30)…………………....Cary Smith……………………………221 (E)

31)…………………….Rusell Tempel………………………221 (E)

32)…………………....Gordon Vance……………………………221 (E)

33)…………………….Jeff Welborn……………………………221 (E)

II……………………...[" ***Union Mission Control Act***"] (UMCA)……………[" **76 (IV)**"]

   a)…………………[" ***North-Carolina National Leadership***"]……………[" **7(b)**"]

     1)……………………Ronna McDaniel……………………………221 (E)

     2)…………………....Thomas Hicks, Jr……………………………221 (E)

     3)………………….....Ron Kaufman……………………………221 (E)

     4)…………………….Vicki Drummond…………………………221 (E)

     5)……………………Kyle Hupfer……………………………221 (E)

   b)……………………[" ***North-Carolina Party officers***"]…………………[" **7(b)**"]

     1)………………….Michel Whatley………………………………221 (E)

     2)……………………Susan Mills…………………………221 (E)

     3)…………………....Ed Broyhill………………………………221 (E)

     4)………………….Kyshia Lineberger…………………………221 (E)

c)………………………..["***North-Caroline GOP Staffs***"]…………………….["**7(b)**"]

   1)……………………………*Jason Simmons*……………………………221 (E)

   2)……………………………*Philip Thomas*……………………………..221 (E)

   3)……………………………..*Sarah Newby*………………………………221 (E)

   4)……………………………*Greg Fornshell*……………………………221 (E)

   5)……………………………*Joseph Buckner*……………………………221 (E)

   6)…………………………..*Reagan Taylor*……………………………221 (E)

   7)…………………………*Nzinga Jhonson*……………………………221 (E)

   8)…………………………….*Josh Fritz*………………………………221 (E)

   9)…………………………*Derrick Nipper*……………………………221 (E)

   10)…………………………….*Matt Judge*……………………………..221 (E)

   11)…………………………*Jeffrey Moore*……………………………221 (E)

III……………………………....["***The  Treatment Act***"] ("TTA")…….["**69 (A) (I) (26)**"]

a)……………..["***Manetirony Clervrain V. Derek Benner***"]…………….["**76 (II)**"]

   ["20-CV-00513"]

   1)………………*Manetirony Clervrain V. Paul Hunter*…………….3 (A) (1)

   ["20-CV-02939"]

   2)………………*Manetirony Clervrain V. Taci Barrera*…………….3 (A) (1)

   ["20-CV-02404"]

   3)……………*Manetirony Clervrain V. Tony H Pham*………………3 (A) (1)

   ["20-CV-00805"]

b)……………..["***Manetirony Clervrain V. Alysa D. Erich(s)***"]………….["**76 (II)**"]

   ["20-FP-01188"]

IV………………………….[“***Uniform Public Protection  Act***”] (UPPA)………….[“**1-605**”]

   a)………………………[“***North-Dakota GOP Leadership***”]………………[“**7(b)**”]

      1)…………………………*Doug Burgum*………………………7 (c) (3)

      2)…………………………*John Hoeven*………………………7 (c) (3)

      3)………………………..*Kevin Cramer*………………………7 (c) (3)

      4)…………………………*Kelly Armstrong*…………………………7 (c) (3)

      5)……………………………*Brant Sanford*…………………………..7 (c) (3)

      6)……………………………*Wayne Stenehjem*…………………………7 (c) (3)

      7)…………………………..*Al Jaeger*………………………………7 (c) (3)

      8)……………………………*Thomas Beadle*………………………….7 (c) (3)

      9)……………………………*Josh Gallion*………………………7 (c) (3)

   b)…………………….[“***North Dakota State Community***”]………………[“**7(b)**”]

      1)…………………….*Perrie Schafer*..………………………7 (c) (3)

      2)…………………….*Shane Goettle*………………………7 (c) (3)

      3)…………………*Chuck Walen*………………………7 (c) (3)

      4)…………………*John Odermann*………………………7 (c) (3)

      5)……………………*Lori Hinz*………………………7 (c) (3)

      6)……………………Bruce Gjovig………………………7 (c) (3)

      7)……………………Carma Hanson………………………7 (c) (3)

      8)……………………Jacob Strinden………………………7 (c) (3)

      9)……………………Erika Kenner………………………7 (c) (3)

      10)…………………….Rich Wardner………………………7 (c) (3)

      11)…………………..Claus Lembke………………………7 (c) (3)

      12)…………………….*Nick Hacker*………………………7 (c) (3)

      13)…………………….*Chet Pollert*………………………..7 (c) (3).

IV………………………["***The Nationality Act***"] ("TANA")………["**68 (A) (I) (2)**"]

a)…………….["***Manetirony Clervrain V. Rossana Rossado***"]…………["**76 (II)**"]

["20-CV-000389"]

1)……………*Manetirony Clervrain V. Alejendro Alex Padilla*…….3 (A) (1)

["20-CV-00925"]

3)……………*Manetirony Clervrain V. Tre Haget*…………………3 (A) (1)

["20-CV-02944"]

4)……………*Manetirony Clervrain V. Asa Huthison*……………..3 (A) (1)

["20-CV-00369"]

b)…………..["***Manetirony Clervrain V. Connie Lawson***"]……………["**76 (II)**"]

["20-CV-01306"]

V……………………["***Public Union Concern Community Act***"] (PUCCA)……["**76 (IV)**"]

a)…………………………["***Nebraska GOP Leadership***"]……………………["**7(b)**"]

1)………………………*Pete Ricketts*………………………………7 (c) (3)

2)………………………*Deb Fisher*………………………………..7 (c) (3)

3)………………………*Ben Sasse*………………………………..7 (c) (3)

4)………………………*Jeff Fortenberry*………………………………..7 (c) (3)

5)………………………*Don Bacon*………………………………7 (c) (3)

6)………………………*Adrian Smith*………………………………7 (c) (3)

7)………………………*Mike Foley*………………………………7 (c) (3)

8)………………………*Doug Petterson*………………………………7 (c) (3)

9)………………………..*Bob Evnen*………………………………7 (c) (3)

10)………………………John Murante………………………………7 (c) (3)

11)………………………..Charlie Janssen………………………………7 (c) (3)

12)………………………..*Ryan Hamilton*…………………………7 (c) (3)

13)………………………*Tyson Shepard*…………………………7 (c) (3)

A…………………………["***Anti-Violence Community Act***"] (AVCA)…………..["**51 (III)**"]

i)……………………["***New-Hamshire Republican Party***"]…………………["**7(b)**"]

ii)………………………………["***Stephen Stepanek***"]……………………["**211 (e) (5)**"]

1)…………………………*Pam Tucker*…………………………………7 (c) (3)

2)…………………..*Juliana Bergeron*………………………………7 (c) (3)

3)…………………………*Chris Ager*…………………………………7 (c) (3)

4)…………………….*Alan Glassman*…………………………………7 (c) (3)

5)……………………..*Jim MacEachern*…………………………………7 (c) (3)

6)………………………..Jane Lane…………………………………7 (c) (3)

7)………………………..Elliot Gault…………………………………7 (c) (3)

8)………………………..Kate Day…………………………………7 (c) (3)

9)…………………….Tanya Donnelly…………………………………7 (c) (3)

10)…………………….Ray Chadwick…………………………………7 (c) (3)

11)…………………….Marilyn Huston…………………………………7 (c) (3)

12)……………………..Jade Wood…………………………………7 (c) (3)

13)…………………………*Norman Silber*…………………………………7 (c) (3)

14)…………………….*Wendy Richardson*…………………………………7 (c) (3)

15)……………………..*Richard Merkt*…………………………………7 (c) (3)

16)……………………..*Eli Clemmer*…………………………………7 (c) (3)

17)……………………..*Bruce Perlo*…………………………………7 (c) (3)

18)……………………..*Chris Ager*…………………………………7 (c) (3)

19)…………………….Scott Maltzie…………………………………7 (c) (3)

20)…………………………*Jason Grosky*…………………………………7 (c) (3)

21)……………………*Seamus Casey*…………………………7 (c) (3)

22)……………………*Michael Aron*…………………………7 (c) (3)

23)…………………*Andrew Georgevits*…………………….7 (c) (3)

24)…………………*William Infantine*…………………………7 (c) (3)

iii)………………………………..["***Chris Buda***"]…………………....…["**54 (i)**"]

1)…………………………*Chris Buda*………………………7 (c) (3)

2)…………………………*Jim MacEachern*…………………………7 (c) (3)

3)…………………………*Elizabeth Girard*…………………..7 (c) (3)

4)…………………………*Joseph Alexander*…………………..7 (c) (3)

5)……………………………*Matt Denaro*………………………7 (c) (3)

6)…………………………*Chris Sununu*………………………7 (c) (3)

7)…………………………*Janet Stevens*..………………………7 (c) (3)

8)……………………………Chuck Morse………………………7 (c) (3)

9)…………………………*Sherm Packard*…………………………7 (c) (3)

10)……………………………..*Joe Sweeney*…………………………7 (c) (3)

11)……………………………*DJ Burke*………………………7 (c) (3)

12)…………………………*Maya Harvey*………………………7 (c) (3)

B…………………………["***National  Flight Risk Act***"] ( NFRA)……………...["**69 (A)**"]

i)………………………["***New-Jersey Republican Party***"]…………………["**7(b)**"]

ii)………………………………["***Tom Kean***"]…………………………["**211 (e)**"]

1)…………………………Jon Bramnick…………………………221 (E)

2)…………………………Bob Hugin…………………………221 (E)

3)…………………………Jeff Van Drew……………………………221 (E)

4)…………………………Christopher Smith…………………………221 (E)

5)………………………...Michael Testa………………………………221 (E)

6)…………………………Chris Connors………………………………221 (E)

7)………………………...Jim Holzapfel………………………………221 (E)

8)…………………………Sam Thompson………………………………221 (E)

9)…………………………Declan O'Scanlan…………………………221 (E)

10)…………………………Kip Bateman……………………………221 (E)

11)………………………...Tom Kean………………………………221 (E)

12)…………………………Mike Doherty…………………………..221 (E)

13)…………………………Steve Oroho………………………………221 (E)

14)…………………………Anthony Bucco…………………………..221 (E)

15)…………………………Joe Pennacchio…………………………221 (E)

16)…………………………Bob Singer………………………………221 (E)

17)……………………...*Holly Schepisi*..…………………………221 (E)

18)……………………...Kristin Corrado………………………………221 (E)

iii)……………………...["***New-Jersey County Leadership***"]………………["**7(b)**"]

1)…………………………*Hon. Keith A. Davis*…………………………221 (E)

2)…………………………*Hon. Jack Zisa*…………………………221 (E)

3)……………………...*Hon. Sean Earlen*………………………………221 (E)

4)……………………...*Hon. Richard Ambrosino*……………………221 (E)

5)……………………...*Hon. Michael Donohue*……………………221 (E)

6)…………………………*Hon. Michael Testa, Jr*……………………221 (E)

7)…………………………*Hon. Al Barlas*……………………………221 (E)

8)………………………..Hon. Jacci Vigilante………………………221 (E)

9)………………………..Hon. Jose Arango………………………221 (E)

10)………………………Hon. Gabe Plummer……………………221 (E)

11)……………………..Hon. Lisa Richford………………………221 (E)

12)…………………...Hon. Robert Bengivenga Jr…………………221 (E)

13)……………………Hon. Shaun Golden……………………..221 (E)

14)………………………..Hon. Laura Ali………………………..221 (E)

15)……………………Hon. Frank Holman……………………221 (E)

16)………………………*Hon. Peter Murphy*……………………221 (E)

17)………………………*Hon. Linda DuBois*……………………221 (E)

18)………………………..Hon. Tim Howes………………………221 (E)

19)……………………Hon. Jerry Scanlan………………………221 (E)

20)……………………*Hon. Glenn Mortimer*……………………221 (E)

21)……………………*Hon. Doug Steinhardt*……………………221 (E)

C…………………………[*"**Families Your's  Choice Act**"*] (FYCA)…………..[*"**53 (IV)**"*]

i)……………………[*"**Republican Party of New-Mexico**"*]…………………[*"**7(b)**"*]

1)…………………………..Steve Pearce………………………221 (E)

2)…………………………Robert J Aragon……………………………..221 (E)

3)……………………………..*Bob Graham*………………………………221 (E)

4)……………………………*David Chavez*……………………………221 (E)

5)…………………….*Mari Trujillo Spinwelli*………………………221 (E)

6)……………………….…………*Amy Barela*…………………………221 (E)

7)………………………….Anita Statman……………………………221 (E)

ii)…………………………[*"**Jim Townsend**"*]…………………………………221 (E)

D.……………………….["***National Electronic Filling Act***"] (NEFA)……………………

I.……………………….["***Kimberly Skaggs***"]…………………….["**58 (i)**"]

1.…………………….["*.Mike Curtis*"]…………………………….221 (E)

2)……………………*Victor Torres*……………………………221 (E)

3)………………*Maureen Tarbox*……………………………221 (E)

4)………………………*Ashely Soular*……………………………..221 (E)

5)…………………*Norma Bojorquez*……………………………221 (E)

6)………………………*Mateo Cuellar*……………………………221 (E)

*8)-We are questioning what the seventh circuit alleged here, a)-["**22-01262**"]ORDER re: 1. Motion for their all agencies to review claims. b)-["**Right Venue Act**"], i)-["**Be**"] ii)-["**Clear Consolidated Act**"] by Victim of Crimes Against Various Officials Apartheid. 2. Motion for iii)-["**Serving Agencies**"] to 1)-["**Reopen**"] all cases, then we are asking all factors to be considered .2)-["**Question of Laws**"], or Facts to 3)-["**The Redaction Act**"] ("**TRA**") by 4)-["**Professional Act**"] (P.A.). Because it is unclear exactly what relief the appellant seeks, the motions will be filed without court action. The appellant is reminded that he must either pay the $505.00 appellate filing fees in the district court or file a motion for leave to proceed on appeal in forma pauperis with this court by 03/30/2022. CMD [14] [7224746] [22-1262] (MM), the court failed to prove what is 5)-["**Unclear**"], then asking them if that is the laws, their restrictions, by imposing against the revolutionist, they certainly liable for all claims concerning the matters for controversies, those are for General Damages. Estelle v. Gamble 429 U.S. 97, 104 (1976)*

D…………………………[“***Matters  Your's  Choice Act***”] (MYCA)…………..[“**53 (IV)**”]

　i)…………………………[“***Nevada Gop Leadership***”]………………………[“**7(b)**”]

　　1)…………………………..*Michael J. McDonald*…………………………221 (E)

　　2)…………………………*Jim Degraffenreid*…………………………..221 (E)

　　3)…………………………*Michele Fiore*……………………………..221 (E)

　　4)…………………………...*Jim Hindle*……………………………221 (E)

　　5)…………………………*Michael Bertrant*…………………………221 (E)

　　6)…………………………*Barbara Hawn*……………………………221 (E)

　　7)…………………………*Jessica Hanson*……………………………221 (E)

　　8)…………………………..*Alida Benson*……………………………221 (E)

IV………………………[“***Visionary Identity Provision Act***”] (“VIPA”)……[“**68-69**”]

　a)………[“***Manetirony Clervrain V. United States Of America"]***……[“**143-147**”]

　　　　[“21-CV-03078”]

　　1)………………*Manetirony Clervrain V. Kele Kupfer*…………128 (A)-126

　　　　　[“21-CV-00471”]

　　2)……………*Manetirony Clervrain V. Kilolo Kijakazi*………..128 (A)-126

　　　　　[“21-CV-03036”]

　　3)……………*Manetirony Clervrain V. Geg Treat*……………..128 (A)-126

　　　　　[“21-CV-00365”]

　b)…………………[“***Manetirony Clervrain V. Jamie Dimon"]***………..[“**143-147**”]

　　　　　[“21-CV-02918”]

I …………………..["***Union Public Protective Invention Act***"] (UPPIA)…………["**8 (A)**"]

II…………………………..["***The Ant(s) Library Act***"] ("TALA")…….["**68 ( A ) )(I) (6)**"]

   a)…………["***Manetirony Clervrain V. Kelly Thomson Mercer***"]……...["**76 (II)**"]

              ["20-CV-00645"]

      1)………………*Manetirony Clervrain V. Herbert C. Hoover*……..3 (A) (3)

                ["20-CV-00078"]

      2)…………*Manetirony Clervrain V. Alison Lundergan Grimes*……3 (A) (3)

                ["21-CV-00400"]

      3)………………*Manetirony Clervrain V. Paul Hunter*……………3 (A) (3)

                ["20-CV-02939"]

   b)………………["***Manetirony Clervrain V. Richard Scott***"]……………["**76 (II)**"]

                ["18-CV-3041"]

III………………["***Families  Children  Movements Act***"] (FCMA)……. .["**163 (B) (1)**"]

IV…………………..["***Families Children Protected Act***"] (FCPA)……  ["**168 (III)**"]

V……………………["***Humanity Workers  Choice Act***"] (HWCA)………. .["**182 (A)**"]

VI…………………["***Secure E- Resources Technology Act***"] (SERTA)……["**192 (B)**"]

   a)…………………………["***New-York Gop Leadership***"]………………["**7(b)**"]

      1)…………………………..*Nick Langworth*…………………………221 (E)

      2)……………………………Randy Bashwinger………………………221 (E)

      3)……………………………Dwight Mike Healy…………………………221 (E)

      4)……………………………Mike Rendino…………………………221 (E)

      5)……………………………Bijoy Datta……………………………221 (E)

      6)……………………………Robert Keis……………………………221 (E)

   b)………………………………["***Roberta Massarini***"]………………["**211 (e) (5)**"]

VII……………………………["***Anti-Youth Deporation Act"***] (AYDA)……………150 (A)

1)………………………*Schooling Control National Act* (SCNA)……………201 (C)

2)………………………*Promissory Oath Provision Act* (POPA)……………214 (D)

3)……………………..*National Selective Registration Act* (NSRA)………275 (A)

VIII………………………………["***The Victims  Act***"] ("TAVMA")……………..["**1-605**"]

A………………………["***Right Aggravated Provision Act***"] (RAPA)…["**68 (A) (I) (9)**"]

i)……………..["***Manetirony Clervrain V. Lori R Swason"***]……………["**76 (II)**"]

["19-CV-00965"]

1)……………*Manetirony Clervrain V. Derek Schidt*………………3 (A) (1)

["19-CV-03040"]

2)……………..*Manetirony Clervrain V. Andre G Beshear*…………3 (A) (1)

["19-CV-00019"

3)………………*Manetirony Clervrain V. Brad Schimel*……………3 (A) (1)

["19-CV-00503"]

ii)……………..["***Manetirony Clervrain V. Cynthia H Coffman***"]………["**76 (II)**"]

["19-CV-00695"]

B…………………………..["***Right Issues Treament Act***"] ("RITA")…..["**68 (A) (I) (4)**"]

i)……………["***Manetirony Clervrain V. Erick T Scheiderman"***]………["**76 (II)**"]

["19-CV-03625"]

1)…………*Manetirony Clervrain V. Edmund J Brown Jr*…………3 (A) (1)

["19-CV-01219"]

2)…………*Manetirony Clervrain V. Dannell P Malloy*……………3 (A) (1)

["20-CV-02939"]

3)…………*Manetirony Clervrain V. Pamela J Bondi*………………3 (A) (1)

["19-CV-00099"]

ii)………………..["***Manetirony Clervrain V. Brian E Frosh"***]…………..["**76 (II)**"]

["19-CV-00805"]

C……………[“***Detainees Union Fundamental Mariage Act***”] (DUFMA)……..[“**306 (D)**”]

i)……………………………[“***Ohio Republican Party***”]……………………[“**7(b)**”]

    1)………………………………*Justin Bis*………………………………..221 (E)

    2)…………………………*Tricia Mclaughlin*……………………………221 (E)

    3)…………………………..*Garett Arnold*………………………………..221 (E)

    4)………………………………*Laura Bates*……………………………221 (E)

    5)………………………*Robert A Paduchick*…………………………221 (E)

ii)……………………………[“***Ohio County Chairs***”]………………………[“**7(b)**”]

    1)……………………*Harty Wallingford*………………………..221 (E)

    2)……………………………*Keith Cheney*……………………………..221 (E)

    3)…………………………*Chris Tunnell*………………………………221 (E)

    4)……………………………*Charlie Frye*…………………………………221 (E)

    5)…………………………...*Pete Couladis*………………………………221 (E)

    6)…………………………*John Bergman*………………………………221 (E)

    7)…………………………*David Jones*………………………………221 (E)

    8)…………………………...*Greg Lang*…………………………………221 (E)

    9)…………………………*Todd Hall*…………………………………221 (E)

    10)……………………….Jeff Mangun…………………………………221 (E)

    11)……………………..Robert Pollock……………………………..221 (E)

    12)………………………Dan Harkins…………………………………221 (E)

    13)……………………..Greg Simpson………………………………221 (E)

    14)………………………Tim Inwood…………………………………221 (E)

15)…………………..David Johnson……………………………221 (E)

16)………………………Steve Hall……………………………221 (E)

17)………………………John Volk……………………………221 (E)

18)………………………Lisa Stickan……………………………223 (E)

19)…………………..Katie DeLand……………………………221 (E)

20)………………………Ian Webber……………………………221 (E)

21)………………………Steve Cuckler……………………………221 (E)

22)………………………Caleb Stidham……………………………221 (E)

iii)………………………………[" ***Jeff Fix***"]……………………………[" **7 (b)**"]

1)………………………Martha Cooper……………………………221 (E)
2)………………………Josh Jaffe……………………………221 (E)
3)………………………Brett Kolb……………………………221 (E)
4)………………………Mike Daines……………………………221 (E)
5)………………………Nancy McArthur……………………………221 (E)
6)………………………Jon Caupp……………………………221 (E)
7)………………………Darrel Fawcett……………………………221 (E)
8)………………………Alex Triantafilou……………………………221 (E)
9)………………………Bill Johns……………………………221 (E)
10)………………………Rob Radway……………………………221 (E)

D.…………………………[" ***Judicial Treatment Genocide Act***"] (JTGA)………[" **68 (D) (1)**"]

1)…………………….. *Southern District of Illinois*……………………..209 (e) (3)
2)…………………………*District of Vermont*……………………209 (e) (3)
3)…………………………*Eastern District of Tennessee*……………………209 (e) (3)
4)…………………………*Southern District of South Carolina*…………………209 (e) (3)
5)…………………………*District of Rhode Island*……………………..209 (e) (3)
5)…………………………*Eastern District of New-York*……………………209 (e) (3)

E…………………….…..[“***National Good Character Act***”] (NGCA)………[“**67 (D) (2)**”]

VI.………………………..[“***Judicial Mitigating Danger Act***”] (JMDA)…….[“**66-72 (A-E)**”]

    1)....……………………*District of Nebraska*……………………………209 (e) (3)

    2)......…………………..*Northern District of Illinois*………………………209 (e) (3)

    3)....………………*Middle District of Pennsylvania*................................209 (e) (3)

    4)....…………………*District of New New-Hamsphire*..........................209 (e) (3)

    5)......…………………*Western District of West Virginia*...............................209 (e) (3)

    6)……………………...*District of Columbia*…………………………209 (e) (3)

    7) ……………………*Northern District of Western Virginia*……………..209 (e) (3)

VI.………………………[“***Juvenile  For Recidivism Act***”] (JFRA)…………..[“**61 (VII)**”]

VII.…………………………….[“***The  Reform Act***”] (“TRA”)…………..[“**68 (A) (I) (16)**”]

    a)………..………..[“***Manetirony Clervrain V. Mark Gordon***”]……….[“**256 (II)**”]
        [“21-CV-00132”]

        1)………………*Manetirony Clervrain V. Mike Dunleavy*  …………3 (A) (1)
            [“20-CV-00279”]

        2)…………………*Manetirony Clervrain V. Brian Kemp*………….3 (A) (1)
            [“20-CV-00421”]

        3)…………*Manetirony Clervrain V. Waldermar Rodriguez*………3 (A) (1)
            [“20-CV-00538”]

    b)……………………[“***Manetirony Clervrain V. Garry Herbert***”]……..[“**256 (II)**”]
        [“20-CV-00880”]

VII.……………………[“***Judicial Mitigating Scheme Act***”] (JMSA)…………[“**256 (II)**”]

    1)……………………*Southern District of California*……………………..209 (e) (3)

    2)………………………*District of Arizona*………………………………..209 (e) (3)

    3)……………………*Eastern District of Michigan*..………………………209 (e) (3)

    4)………………………*District of New Jersey*…………………………209 (e) (3)

    5)…………………………*District of Oregon*………………………………209 (e) (3)

    6)………………………*Eastern District of Missouri*………………………209 (e) (3)

VIII…………………[*"**Treatment Performance Victim Act**"*] (TPVA)…….["**68 (A) (I) (2)**"]

1)………………..,,*Manetirony Clervrain V. Laura M. Lee*………………3 (A) (1)

["20-MC-00108"]

2)…………………*Manetirony Clervrain V. Claude Dora.* …………………3 (A) (1)

["5D21-2146"]

3)…………………*Manetirony Clervrain V. Karen E.Rushing*……………3 (A) (1)

["22-CV-00044"]

IX……………………………["*__Florida Supreme Court__*"]…………………["**256 (II)**"]

X………………………[*"__National  Advocate Treament Act__*"] (NATA)………["**273 (D)**"]

1)……………………..*Western District of Tennessee*………………………209 (e) (3)
2)…………………..*Southern District of Ohio*…………………………209 (e) (3)
3)………………………*Eastern District of Arkansas*………………………209 (e) (3)
4)……………………..*Southern District of Indiana*………………………209 (e) (3)
5)………………………*Central District of Illinois*………………………209 (e) (3)
6)………………………*Southern District of Mississipi*……………………209 (e) (3)
7)………………………*Western District f Missouri*……………………...209 (e) (3)

A……………………………..[*"__The  Liability Act__*"] ("TFA")…………["**68 (A) (I) (7)**"]

1)………………*Manetirony Clervrain V. United states Of American*………3 (A) (1)

["17-CV-03194"]

2)………………*Manetirony Clervrain V. United States of America*………..3 (A) (1)

["17-CV-00313"]

3)………………*Manetirony Clervrain V. United States of America* ………3 (A) (1)

["17-CV-00132"]

B......................["***National Immigration Reform Chance Act***"] (NIRCA)........["**4 (a)**"]

C................................["***The Practices Act***"] ("TAFPA")................["**256 (II)**"]

    1.............*Manetirony Clervrain V. United states Of American*............3 (A) (1)

    ["21-CV-62266"]

    2)..............*Manetirony Clervrain V. United States of America*.............3 (A) (1)

    ["19-07842"]

    3)..............*Manetirony Clervrain V. United States of America* ...........3 (A) (1)

    ["22-MC-01002."]

    4)....................*Manetirony Clervrain V. United States of America* ......3 (A) (1)

    ["21-CV-01919"]

D....................................["***The  Burdens Act***"] ("TAFBA")..............["**256 (II)**"]

    1...................*Manetirony Clervrain V. United states Of American*........3 (A) (1)

    ["20-CV-04175"]

    2)................*Manetirony Clervrain V. United States of America*.........3 (A) (1)

    ["21-CV-00699"]

    3)....................*Manetirony Clervrain V. United States of America* ......3 (A) (1)

    ["21-CV-01865"]

E................................["***The Mitigating Act***"] ("TMA...............["**273-283**"]

1.............................["***Movement On Protective Act***"] ("MOPA")................1-7

2).........................["***Multiplicity Victim Reform Act***"] ("MVRA")..............8-142

    I..................["***Mass Deportation Prohibition Act***"] ("MDPA").........143-147

    II..................["***Mass Incarceration Prohibition Act***"] ("MIPA").......148-152

    III............["***Market Issues Manipulations   Act***"] ("MIPA")..............153-160

3)…………………………[" ***Additional Trustee Team to be Included*** "]……………[" **68-69** "]

I……………………………[" ***Kaity Borgella*** "]……………………[" **5 (viii)** "]

    1)……………………… *Marvens Blanchard* ……………………………4 (A) (5)

    2)……………… ………… *Rose Stéphanie  Clervrain* ………………………4 (A) (5)

    3)……………………… *Maria Mélissa Clervrain* ………………………4 (A) (5)

    4)……………………… *Georgia Michèle Clervrain* ………………………4 (A) (5)

    5)…………………………… *Kerveens Blanchard* …………………………4 (A) (5)

    6)…………………………… *Nickenly Blanchard* …………………………4 (A) (5)

    II……………………………[" ***Fabrice Thomas*** "]………………………[" **5 (viii)** "]

4………………….[" ***National Electronic Filling Reform Act*** "] ("NEFRA")………[" **1-83"**]

A………………………………[" ***Manetirony Clervrain*** "]………………………[" **1-1499** "]

I………………………………[" ***Francis Osei-Fosu*** "]…………………………[" **5 (vi)** "]

    1)……………………… .. *Abel Paul* ……………………………………4 (A) (5)

    2)……………………….. …. *Medgine Sarah Jean* ……………………………4 (A) (5)

    3)……………………… *Ashley Carmelle Dorsainville* ………………………4 (A) (5)

    4)……………………….. *Shakira Sherlandy Joseph* ………………………4 (A) (5)

    5)…………………… *Marie Natalie Jean Baptist Clervrain* ………………4 (A) (5)

    6)…………………………… *Dafcar Maisoneuve* …………………………..4 (A) (5)

    7)…………………………… *Niva Guerrier* ……………………………………4 (A) (5)

    8)……………………… *Jennifer Alexis* ……………………………4 (A) (5)

    9)……………………… *Delz Regarte Cinues* …………………………4 (A) (5)

    10)………………………… *Emmanuel Benjoassaint* ………………………4 (A) (5)

    11)………………………… *Joanis Normil* ……………………………4 (A) (5)

12)………………………………..*Wislene Casir*………………………………4 (A) (5)

13)…………………………*Jonathan Volcy*………………………..4 (A) (5)

14)…………………………*Fridelyne Maisoneuve*………………………4 (A) (5)

15)…………………………..*Nyesha Favor*………………………………4 (A) (5)

16)…………………………*Alex Felix*………………………………4 (A) (5)

17)…………………………*Mackenson Jean*…………………………4 (A) (5)

18)…………………………..*Wideline Veillard*………………………4 (A) (5)

19)…………………………..*Joanna Jea*n…………………………4 (A) (5)

20)………………………….Woodny Lormil………………………4 (A) (5)

21)………………………*Joanne Deborah Jean Jacques Delva*…………..4 (A) (5)

22)…………………………*Mohammed Amin Mustapha*……………4 (A) (5)

23)…………………………*Mischael Smith*…………………………4 (A) (5)

24)…………………………*Ronaldo Jean*……………………4 (A) (5)

25)………………………….*Evans Delva*………………………4 (A) (5)

26)………………………..*Wesner Compere*………………………4 (A) (5)

27)…………………………*Edith Jean Jacques*……………………4 (A) (5)

28)…………………………*Marie Emmanuelle Volcy*…………..4 (A) (5)

29)…………………………..*Nikerland Blanchard*……………………4 (A) (5)

30)…………………………*Jhim Francois*……………………… 4 (A) (5)

31)…………………………*Angomery Jean Charles*…………………… 4 (A) (5)

32)…………………………*Princeton Asare-Bediako*…………………4 (A) (5)

33)…………………………*Alou Clervrain*………………………4 (A) (5)

34)…………………………*Samuel Clervrain*……………………4 (A) (5)

35)……………………………*Theresa Bredjhyne Clervrain*……………4 (A) (5)

36)…………………………..*Jerry Dorval*………………………..4 (A) (5)

37)………………………*Keslyne Dorsainville Clervrain*…………..4 (A) (5)

38)…………………………..*Marline Clervrain*……………………4 (A) (5)

39)…………………………*Kharie Michelle Auguste*…………………4 (A) (5)

40)…………………………..*Hussein Smith Chery*……………………4 (A) (5)

41)…………………………………*Ronald Lahens*………………………4 (A) (5)

II…………………………………..["***Roode A Clervrain***"]…………………["**5 (vi)**"]

B……………………………..["***The Witness Act***"] ("TAWA")………….["**68 (A) (I) (3)**"]

I………………………….["***Manetirony Clervrain V. Christopher Way***"]………["**256 (II)**"]

["20-CV-0540"]

1)……………………*Manetirony Clervrain V. Mark Brnovich*……………3 (A) (1)

["21-CV-00150"]

2)……………………..*Manetirony Clervrain V. Dennis Richardson*………3 (A) (1)

["20-CV-00367"]

3)…………………..*Manetirony Clervrain V. William D Schuette*…………3 (A) (1)

["20-CV-13446"]

II……………………["***Manetirony Clervrain V. Christopher S Porrino***"]…….["**256 (II)**"]

["20-CV-05462"]

C………………………………..["***The Movement Act***"] ("TAMA")………**68 (A) (I) (1)**

I………………………["***Manetirony Clervrain V. Kathleen Hawk Sawyer***"]….["**256 (II)**"]

["20-CV-00348"]

1)…………………*Manetirony Clervrain V. Tracey Toutman*………………3 (A) (1)

["20-MC-00028"]

2)………………… *Manetirony Clervrain V. Racquel Wilson*…………….3 (A) (1)

["20-CV-02061"]

3)………………… *Manetirony Clervrain V. Esther Alcocer Koploqitz*……3 (A) (1)

["20-CV-00358"]

II………………………[*"__Manetirony Clervrain V. Maura Healey__"]*…………[*"__256 (II)__"*]

["19-CV-10371"]

6)………………… *Manetirony Clervrain V. Joshua Stein*…………………3 (A) (1)

["19-CT-03056"]

III……………………………[*"__Oregon Republican Leadership__*"]…………………  [*"__7(b)__*"]

1)………………………………*..Dallas Heard*…………………………………221 (E)

2)………………………….*..Herman Beartshiger*…………………………221 (E)

3)………………………………Becky Mitts………………………………….221 (E)

4)………………………..Dennis Linthicum……………………………221 (E)

5)…………………………….Tracy Honl………………………………….221 (E)

IV……………………………[*"__Oregon Congressional District__*"]………………….[*"__7(b)__*"]

1)……………………………...*Kevin Hoar*…………………………………..221 (E)

2)…………………………Christian Honl…………………………………221 (E)

3)………………………………Larry Ericksen…………………………….221 (E)

4)…………………………….Lisa Lamping……………………………….221 (E)

5)…………………………….Dick Courter………………………………..221 (E)

6)………………………Suzan Ellis Jones………………………….221 (E)

7)………………………………..Larry Moore……………………………….221 (E)

8)…………………………Colleen MacLeod……………………………221 (E)

9)……………………………Rick Brown………………………………….221 (E)

10)……………………………Deborah Lee…………………………………..221 (E)

11)………………………………Pati Horton………………………………221 (E)

12)………………………………..Kevin M……………………………………221 (E)

13)………………………………John Lee…………………………………..221 (E)

14)……………………………Kristy Ives………………………………….221 (E)

V……………………………………[*"__Lucas Nelson__*"]…………………………….[*"__7(b)__*"]

1)…………………………..Kathey Linn…………………………………221 (E)

2)…………………………..Mellissa Bernard………………………………221 (E)

3)…………………………..Mary Schilling…………………………………221 (E)

4)……………………………Cal Linn……………………………………221 (E)

5)……………………………Jeff Heyen…………………………………221 (E)

6)…………………………Jessica Davidson………………………………221 (E)

7)……………………………Bill Guthridge…………………………………221 (E)

8)……………………………Les Poole…………………………………221 (E)

9)…………………………Jessica Snook……………………………221 (E)

10)………………………..Ron Mitts…………………………………221 (E)

VI……………………………["***Oregon Congress Representative***"]…………………["**7(b)**"]

1)……………………………Fred Girod…………………………………221 (E)

2)……………………………Art Robison……………………………… 221 (E)

3)……………………………Dick Anderson…………………………221 (E)

4)……………………………Kim Thatcher…………………………221 (E)

5)……………………………Bill Kennemer…………………………221 (E)

6)……………………………Chuck Thomsen…………………………221 (E)

7)……………………………Tim Knopp…………………………………221 (E)

8)……………………………Dennis Linthicum………………………221 (E)

9)……………………………Bill Hansell…………………………………221 (E)

10)…………………………Lynn Findley…………………………..221 (E)

VII……………………………["***Oregon State House***"]…………………………["**7(b)**"]

1)……………………………Christine Drazan………………………………221 (E)

2)…………………………David Brock Smith………………………………221 (E)

3)……………………………Christine Goodwin………………………221 (E)

4)……………………………Lilly Morgan…………………………………221 (E)

5)……………………………Duane Stark…………………………………221 (E)

6)……………………………Kim Wallen…………………………………221 (E)

7)……………………………Cedric Hayden………………………………221 (E)

8)……………………………Boomer Wright…………………………221 (E)

9)……………………………Shelly Boshart Davis…………………………221 (E)

10)..................................Jami Cate..........................................221 (E)

11)...............................Rick Lewis................................221 (E)

12)........................Raquel Moore Green...............................221 (E)

13)..............................Ann Scharf.......................................221 (E)

14)...............................Ron Noble.......................................221 (E)

15)....................................Bill Post...........................................221 (E)

16) ............................Suzanne Weber.....................................221 (E)

17)................................Jack Zika...................................221 (E)

18)..............................Vikki Breese.....................................221 (E)

19)........................E. Werner Reschke................................221 (E)

20)..........................Greg Smith.................................221 (E)

21)..............................Bobby Levy.....................................221 (E)

22)..........................Daniel Donhan......................................221 (E)

D............................["***<u>Habitual Drunkard Treatment Act</u>***"] (HDTA)......["**<u>4 (b)</u>**"]

E.......................................["***<u>The Conflict Act</u>***"] ("TCA")..............["**<u>68 (A) (I) (8)</u>**"]

I.............................["***<u>Manetirony Clervrain V. Rachel Chapa</u>***"]............["**<u>75( IV)</u>**"]

["17-CV-00452"]

2).........................*Manetirony Clervrain V. Charles Samuel*...............3 (A) (1)

["18-CV-00468"]

3).........................*Manetirony Clervrain V. Sara M Revell*..................3 (A) (1)

["18-CV-03166"]

II............................["***<u>Manetirony Clervrain V. Jamie Dimon</u>***"]............["**<u>75( IV)</u>**"]

["21-CV-02918"]

III..................................["***<u>Right Issues Provision Act</u>***"] (RIPA).........["**<u>68 (II)</u>**"]

A............................["***<u>Manetirony Clervrain V. John Coraway</u>***"].........["**<u>75( IV)</u>**"]

["18-CV-00819"]

1).........................*Manetirony Clervrain V. Mary M Mitchell*.........3 (A) (1)

["18-CV-01716"]

2).........................*Manetirony Clervrain V. Michael Carvajal*............3 (A) (1)

["18-CV-01514"]

3)………………………*Manetirony Clervrain V. J.A Keller*………………3 (A) (1)

["18-CV-01854"]

B……………………………["***Manetirony Clervrain V. Angela Dunbar"]***……["**75( IV)**"]

["18-CV-01205"]

IV…………["***National Issues Concerns Benefits Act"***] ("NICBA……["**68 (A) (I) (19)**"]

A……………………["***Manetirony Clervrain V. Duston J. Slinkard"***]………["**75( IV)**"]

["……………….."]

1)………………*Manetirony Clervrain V. Steven W Brookreson II*…………3 (A) (1)

["………………"]

2)………………..*Manetirony Clervrain V. Christopher Allman*……………3 (A) (1)

["……………….."]

3)………………*Manetirony Clervrain V. Arimentha R. Walkins*…………..3 (A) (1)

["………………"]

B………………………["***Manetirony Clervrain V. Carlos Javier Raurell"***]……["**75( IV)**"]

["…………………"]

V………………………["***Judicial Issues For Prosecuting Act***"] (JIFPA)……..["**175-226**"]

a)………………………["***Southern District of Florida***"]………………["**177 (iii)**"]

1)…………………Northern District of Alabama…………………209 (e) (3)

2)…………………District of New-Jersey……………………...209 (e) (3)

3)…………………Eastern District of Michigan…………………..209 (e) (3)

b)……………………………["***District of Kansas***"]……………………["**177 (iii)**"]

VI………………["***The Treatment Act ("TAA"), or The Treaty Act***"] ("TTA")…..["**1-497**"]

a)………["***Negligence Attorney Conflict Issues Contract Act***"] (NACICA)…….66 (A)

b)………["***Negligence Attorney Privatization Access False Act***"] (NAPAFA)….66 (B)

c)…………["***Negligence Attorney Treatment Tortuous Act***"] (NATTA)……….66 (D)

A...............["***Negligence Attorney Right Issues Principal Act***"] (NARIPA)…["**1-496**"]

    i)...........................["***Central District of California***"]..................["**177 (iii)**"]

        1)....................Northern District of Oklahoma....................209 (e) (3)

        2)........................District of New-Mexico..........................209 (e) (3)

        3)....................Eastern District of Pennsylvania...................209 (e) (3)

    ii)..........................["***Middle District of Florida***"]....................["**177 (iii)**"]

    iii)..............................["***District of Columbia***"].......................["**177 (iii)**"]

        1)........................District of Maryland...........................209 (e) (3)

        2)........................Eastern District of Missouri.................209 (e) (3)

        3)....................Eastern District of New-York....................209 (e) (3)

    iv)........................["***Northern District of West Virginia***"]............["**177 (iii)**"]

    v)................................["***District of Kansas***"]........................["**177 (iii)**"]

        1)....................Eastern District of Virginia....................209 (e) (3).

        2)....................Northern District of Texas.......................209 (e) (3)

        3)....................Southern District of Florida....................209 (e) (3)

    vi)..........................["***Southern District of Indiana***"]................["**177 (iii)**"]

    vi)..............................["***District Court of Guam***"]....................["**177 (iii)**"]

        1)..............District of Northern Mariana Island....................209 (e) (3)

        2)....................District Court of Puerto Rico......................209 (e) (3)

        3)....................District of Virgin Island..........................209 (e) (3)

    vii)..............................["***District of Arizona***"]......................["**177 (iii)**"]

    viii)........................["***Northern District Of Indiana***"]...............["**177 (iii)**"]

D…………………………..["***The Ant(s) Benefits Act***"] ("TABA")………["**68 -69 (I-II)**"]

I…………………………["***Manetirony Clervrain V. Andrew Saul***"] ………["**256 (II)**"]

["20-CV-00111"]

1)……………………..*Manetirony Clervrain V. Jose Castanade*…………3 (A) (1)

["19-CV-00046"]

2)……………………*Manetirony Clervrain V. David Barkebile* …………3 (A) (1)

["17-CV-00089"]

3)……………………..*Manetirony Clervrain V. Randolph D Tex Alex*……3 (A) (1)

["20-CV-00132"]

II………………………["***Manetirony Clervrain V. James W McCament***"]…..["**256 (II)**"]

["20-CV-00122"]

E…………..["***The Ant(s) Prohibition Degrading Act***"] ("TAPDA")……["**68 (A) (I) (10)**"]

I………………………..["***Manetirony Clervrain V. Tracey Jhon***"]……………["**256 (II)**"]

["18-CV-00038"]

1)………………… *Manetirony Clervrain V. Ronald Martinez*……………3 (A) (1)

["18-CV-00018"]

2)……………………*Manetirony Clervrain V. S. Julian*……………………3 (A) (1)

["18-CV-00051"]

3)……………………..*Manetirony Clervrain V. Stacey Stone*………………3 (A) (1)

["18-CV-00028"]

II…………………………..["***Manetirony Clervrain V. Sean M.Kuta***"]……….["**256 (II)**"]

["18-CV-00083"]

F…………………………..["***The Demurrer Act***"] ("TADA")……['**68 (A) (I) (12)**"]

I…………………………["***Manetirony Clervrain V. Gretchen Whitme"]***……["**256 (II)**"]

["20-CV-13431"]

1)…………………*Manetirony Clervrain V. Doug Burgum*………………3 (A) (1)

["21-CV-00146"]

2)……………………*Manetirony Clervrain V. Eric T Schneider*…………3 (A) (1)

["----------------------"]

3)……………………*Manetirony Clervrain V. Elaine F Marshall*…………3 (A) (1)

["21-CV-00316"]

II………………………["***Manetirony Clervrain V. Mark A Yancer"]***………["**256 (II)**"]

["-------------------------"]

G………………["***The Ant(s) Right(s) Litigation Act***"] ("TARLA")……..["**68 (A) (I) (17)**"]

I……………………………["***Manetirony Clervrain V. Stanley W Crocket"]***….["**256 (II)**"]

["20-CV-01420"]

1)……………………*Manetirony Clervrain V. Robert Dawn*……………..3 (A) (1)

["20-CV-00922"]

2)……………………*Manetirony Clervrain V. Donald Washington*………3 (A) (1)

["20-CV-05706"]

3)……………………..*Manetirony Clervrain V. Quicy L Booth*……………3 (A) (1)

["20-CV-10046"]

II)………………………["***Manetirony Clervrain V. Adam Paul Laxalt"]***……...["**256 (II)**"]

["21-CV-00275"]

H...........................["***The Ant(s) Community Act***"] ("TACA")......["**68 (A) (I) (13)**"]

I..........................["***Manetirony Clervrain V. Dianna J Duran***"]............["**256 (II)**"]

["20-CV-01329"]

1)....................*Manetirony Clervrain V. Matthew Dunlap*................3 (A) (1)

["20-CV-00404"]

2)....................*Manetirony Clervrain V. Jeffrey W Bullock* ...............3 (A) (1)

["20-CV-01729"]

3)....................*Manetirony Clervrain V. Adam Paul Laxalt* ...............3 (A) (1)

["21-CV-00274"]

II....................["***Manetirony Clervrain V. Lawrence G Wasden***"]............["**256 (II)**"]

["20-CV-00571"]

III..................["***The Ant(s) Secretive Reform Act***"] ("TASRA").........["**69 (A) (I) (22)**"]

A.......................["***Manetirony Clervrain V. Joseph Eldow***"] ...............["**256 (II)**"]

["20-CV-00182"]

1)..............*Manetirony Clervrain V. Matthew T Albence*...................3 (A) (1)

["20-CV-03105"]

3)..............*Manetirony Clervrain V. Kenneth T Cuccinelli*..................3 (A) (1)

["20-CV-00989"]

4)..................*Manetirony Clervrain V. Francis Cissna*.....................3 (A) (1)

["20-CV-02197"]

B.......…..........["***Francis Cobbina Osei Fosu  V. Merrick B. Garland***"]...........["**256 (II)**"]

["20-CV-00297"]

IV…………………………[“***The Ant(s) Freedom Act***”] (“TAFA”)………[“**68 (A) (I) (7)**”]

A………………………[“***Manetirony Clervrain V. Chantel Kreb(s)”]***………..[“**256 (II)**”]

[“-------------------”]

1)…………………*Manetirony Clervrain V.Ruth R. Hugh(s)* ……………… 3 (A) (1)

[“20-CV-04285”]

2)…………………*Manetirony Clervrain V. Steve Sisolak*…………………..3 (A) (1)

[“21-CV-00011”]

3)…………………*Manetirony Clervrain V. Kim Wayman Cera*……………3 (A) (1)

[“---------------------”]

B………………………[“***Manetirony Clervrain V. Daniel Cameron***”]………..[“**256 (II)**”]

[“21-CV-00394”]

V……………………………[“***The Ant(s) Victim Act***”] (“TAVA”)………[“**69 (A) (I) (24)**”]

A………………………[“***Manetirony Clervrain V. Xavier Becera***”]…………..[“**256 (II)**”]

[“21-CV-05371”]

1)…………………*Manetirony Clervrain V. Richard Michael Dewine*……3 (A) (1)

[“21-CV-01303”]

2)……………………..*Manetirony Clervrain V. Tim Fox*…………………3 (A) (1)

[“20-CV-00189”]

3)……………………*Manetirony Clervrain V. Steven Troy Marshall*………3 (A) (1)

[“20-CV-01024”]

B………………………[“***Manetirony Clervrain V. Delbert Hoseman***”]………[“**256 (II)**”]

[“21-CV-00147”]

VI.………………………….[" ***The Ant(s) Secretive Act*** "] ("TASA")…………[" **68 (I)** "]

A.…………………[" ***Manetirony Clervrain V. Charles Adkins Branch*** "]……[" **256 (II)** "]

["20-CV-00226"]

1.………………*Manetirony Clervrain V. David Ferriero*…………………3 (A) (1)

["20-CV-00136"]

2).…………………*Manetirony Clervrain V. Charles P Rettig*………………3 (A) (1)

["20-CV-00402"]

3).…………………*Manetirony Clervrain V. Jeff Sessions*…………………3 (A) (1)

["17-CV-01858"]

B.……………………[" ***Manetirony Clervrain V. Charles Samuel Jr*** "]…………[" **256 (II)** "]

["14-CV-00107"]

VII.……………..[" ***The Ant(s) Systematic Treaties Act*** "] ("TASTA")…[" **68 (A) (I) (5)** "]

A.………………………..[" ***Manetirony Clervrain V. Jose Santana*** "]…………..[" **256 (II)** "]

["19-CV-01118"]

1).……………………*Manetirony Clervrain V. Donna Mellendick* ………..3 (A) (1)

["18-CV-01087"]

2).…………………*Manetirony Clervrain V. Mattherw Mellady*……………3 (A) (1)

["18-CV-03014"]

3).……………………*Manetirony Clervrain V. Eric H Holder* ……………3 (A) (1)

["19-CV-00890"]

B.…………………………[" ***Manetirony Clervrain V. Jeff Sessions*** "]……….[" **256 (II)** "]

["18-CV-03039"]

VIII…………………………..["***Master Hearing for Illegal Convictions***"]……….["**66 (B)**"]

A…………………..["***United State of America V. Manetirony Clervrain***"]………**256 (II)**

["12-CV-61943-JIC"]

1)………………..["*United State of America V. Mackenzie Alexis*"]…..67 (E) (1) (II)

["07-CR-20193"]

2)………………["*United State of America V. Gregory Alexis*"]………67 (E) (1) (II)

["07-CR-20193"]

3)………………..["*United State of America V. James Deris*"]……….67 (E) (1) (II)

["11-CR-20074"]

4)…………..["*United State of America V. Jean Gardy Gedeon*"]……… ["**39 (VII)**"]

["12-CR-00212"]

5)…………….["*United State of America V. Hussein S Chery*"]…………..**39 (VII)**

["12-CR-00120"]

6)………………..["*United State of America V. Paul Abel*"]………………**39 (VII)**

["07-CR-20193"]

7)………["*United State of America V. Francis Cobbina Osei-Fosu*"]…….**39 (VII)**

["GLR-1-14-CR-00600-004"]

8)………………["*United State of America V. Shamback Francois*"]…67 (E) (1) (II)

["16-CR-00334"]

9)………………..["*United State of America V. Theophilus Akwei*"]………**39 (VII)**

["11-CR-00199"]

10)………………["_United State of America V. Guilmene Altidore"]_………**39 (VII)**

["………………………"]

11)………………["_United State of America V. Hans Armos Pierre"]_……**39 (VII)**

["17-CV-00043"]

12)………………["_United State of America V. Doudge N Francois"]_……..**39 (VII)**

["17-CV-00043"]

13)………………["_United State of America V. Andrew J. Danzel"]_………..**39 (VII)**

["Andrew J.Danzell"]

14)………………["_United State of America V. Blanc Perterson"]_…………**39 (VII)**

[""17-CV-00043"]

15)………………["_United State of America V. Ronald Lehans"]_…………**39 (VII)**

["11-CR-00318"]

16)………………["_United State of America V. Boznai Romelus"]_…………**39 (VII)**

["11-CR-60087"]

17)………["_United State of America V. Gerald Joseph Cleef Rood"]_………**39 (VII)**

["…………………"]

18)………………["_United State of America V. Frank Mensah"]_…………**39 (VII)**

["…………………"]

19)………………["_State of New-York V. Andy Borgella"]_……………67 (E) (1) (II)

["2017–11728 Ind. No. 3492/14"]

20)………………["_State of New-York V. Andy Borgella"]_……………67 (E) (1) (II)

["2019-039-547]

21)………………[*"United State of America V. Theophilus Akwei"]*………**39 (VII)**

["14-CV-00622"]

22)………*["United State of America V. Francis Cobbina Osei-Fosu"]*……**39 (VII)**

["18-CV-05454"]

23)………………[*"United State of America V. Danniel Monville"]*………**39 (VII)**

[""17-CV-00043"]

24)…………[*"United State of America V. Oliver Moises"]*………………**39 (VII)**

["17-CV-00043""]

B………………….[*"**United State of America V. Josette Jean Jacques**"]*…………..**256 (II)**

["07-CR-20193"] ["96-05166"]

IX……………………..[*"**National Issues Performance Act**"]* ("NIPA")……..["**288 (G)**"]

1)…………...[*"Manetirony Clervrain  V. United States of America"]*……["**300(H)**"]

["21--CV-01919"]

2)………………..[*"Manetirony Clervrain V. Quincy L Booth"]*………..["***199 (III)***"]

["21-2134"]

A………………….[*"**Pennsylvania GOP Leadership**"]*………………….["**7(b)**"]

1)……………………….Lawrence Tabas……………………….221 (E)

2)……………………….Bernadette Comfort………………………..221 (E)

3)………………….Elizabeth Preate Havey……………………….221 (E)

4)………………………….Mike Baker……………………….221 (E)

5)……………………….Calvin Tucker……………………….221 (E)

6)………………………..Andy Reilly……………………….221 (E)

7)……………………….Christine J. Toretti……………………….221 (E)

B………………………………..["***Puerto Rico GoP Leaders***"]………………………["**7(b)**"]

   1)…………………………Jenniffer González-Colón..........................................221 (E)

   2)............................ ……….Hon. Luis Fortuno……………………………221 (E)

   3)…………………………..Zoraida Fonalledas……………………………221 (E)

C…………..["***Development  Academic Status Character Act***"] (DASCA)……..["**82 (VIII)**"]

   i)……………………..["***South-Carolina Election Commission***"]……………["**7(b)**"]

   ii)…………………………..["***John Wells, Chair***"]………………………………

      1)………………………..JoAnne Day……………………………..221 (E)

      2)………………………Clifford J. Edler…………………………221 (E)

      3)………………………Linda McCall……………………………..221 (E)

      4)………………………..Scott Moseley…………………………221 (E)

      5)……………………..Howard M. Knapp……………………………221 (E)

      6)……………………………..Chris Whitmire………………………..221 (E)

D…………………["***Class Issues Rehabilitation Treaty Act***"] (CIRTA)……["**82-83 (I-II)**"]

   i)………………………["***South Dakota GOP Leader***"]………………………["**7(b)**"]

      1)………………………..Dan Lederman………………………………221 (E)

      2)…………………………Linda Rausch………………………………221 (E)

      3)…………………………Reid Holien……………………………..221 (E)

      4)………………………..Sandye Kading…………………………221 (E)

      5)………………………..Marylyn Oakes………………………………221 (E)

      6)…………………………..Justin Bell……………………………..221 (E)

ii)……………………….[“***South Dakota Regional Directors***”]……………….[“**<u>7(b)</u>**”]

    1)…………………………….Jim Stalzer…………………………………221 (E)

    2)…………………………….Roger Meyer……………………………….221 (E)

    3)…………………………….Brock Brown……………………………….221 (E)

    4)…………………………….David Wheeler…………………………….221 (E)

    5)…………………………….Jason Williams……………………………221 (E)

iii)………………………[“***South-Dakota Senate Leaders***”]……………….[“**<u>7(b)</u>**”]

    1)…………………………….Lee Schoenbeck…………………………..221 (E)

    2)…………………………….Gary Cammack…………………………….221 (E)

    3)…………………………….Mike Diedrich…………………………….221 (E)

    4)……………………………..Jim Bolin…………………………………221 (E)

    5)……………………………..Casey Crabtree………………………….221 (E)

    6)…………………………….Helene Duhamel…………………………..221 (E)

    7)…………………………..Kyle Schoenfish………………………….221 (E)

iv)………………………[“***South-Dakota House Leadership***”]……………[“**<u>7(b)</u>**”]

    1)…………………………..Spencer Gosh……………………………..221 (E)

    2)……………………………..Arch Beal……………………………….221 (E)

    3)………………………...Herman Otten………………………………221 (E)

    4)…………………………….Michael Rohl…………………………….221 (E)

    5)…………………………….Jim Stalzer……………………………..221 (E)

    6)……………………………..Blake Curd………………………………221 (E)

    7)…………………………….Larry Kikmund……………………………221 (E)

    8)……………………………..Jim Bolin……………………………….221 (E)

9)………………………………Art Rusch………………………………221 (E)

10)…………………………Al Novstrup………………………………221 (E)

11)…………………………Julie Fryer -Mueller……………………..221 (E)

12)…………………………Timothy Jhons…………………………221 (E)

13)…………………………Helene Duhamel………………………221 (E)

14)…………………………David Jhonson………………………..221 (E)

15)…………………………Jessica Castlebery………………………221 (E)

16)…………………………Lee Schoenbeck………………………221 (E)

17)………………………………Vj Smith…………………………221 (E)

18)………………………..Wayne Steinhauer………………………221 (E)

19)…………………………Becky Drury…………………………221 (E)

20)…………………………Bethany Soye………………………...221 (E)

vi)…………………………[“**_Bryan Breirtling_**”]………………………………

1)………………………..Carl Perry……………………………221 (E)

2)…………………………Joshua Klumb…………………………221 (E)

3)…………………………..John Wiik…………………………….221 (E)

4)………………………..Margarett Sutton…………………………221 (E)

5)………………………Charlie Hoffman…………………………221 (E)

6)………………………………Chris Karr………………………..221 (E)

7)…………………………David Wheeler………………………..221 (E)

8)…………………………Dean Wink…………………………221 (E)

9)…………………………Doug Barthel…………………………221 (E)

10)………………………..Drew Dennert…………………………221 (E)

11).............................Erin Tobin...............................221 (E)

12).............................Fred Deutsch..............................221 (E)

13).............................Greg Jamison..............................221 (E)

14).............................Tamara St. John...........................221 (E)

15)..........................David Anderson..............................221 (E)

16)...........................Kevin Jensen...............................221 (E)

17).............................Kent Perterson...........................221 (E)

18)...........................Marty Overweg.............................221 (E)

19)............................Lance Koth................................221 (E)

20)...........................Paul Miskimins............................221 (E)

21)............................Caleb Finck..............................221 (E)

22)...........................Rocky Blare...............................221 (E)

Vii).....................................["***Tim Goodwin***"].......................................

1)...........................Chris Jhonson..............................221 (E)

2)..........................Phil Jensen................................221 (E)

3)..........................Taffy Howard...............................221 (E)

4)..............................Jess Olson.................................221 (E)

5)...........................Michael Diedrich...........................221 (E)

6)...........................Tina Mulally...............................221 (E)

7)..........................Tony Randolph..............................221 (E)

8)..........................Aaron Ayward...............................221 (E).

9)..........................Ernie Otten, Jr...........................221 (E)

10)..........................Hugh Bartels...............................221 (E)

11)…………………………..Jack Kolbeck………………………………221 (E)

12)…………………………..Jhon Mills……………………………….221 (E)

13)…………………………..Kaleb Weis……………………………….221 (E)

14)…………………………..Lana Greenfield……………………………221 (E)

15)…………………………..Lary Tidemann…………………………221 (E)

16)…………………………..Liz May…………………………………221 (E)

17)…………………………..Mark Willadsen…………………………221 (E)

18)…………………………..Marli Wiese……………………………221 (E)

viii)……………………………………..["***Marsha Symens***"]………………..["**7 (b)**"]

1)………………………………..Mary Fritzgerald………………………221 (E)

2)…………………………………Mike Derby…………………………221 (E)

3)………………………………….Mike Stevens…………………………221 (E)

4)…………………………………Mike Weisgram………………………221 (E)

5)………………………………….Nancy York…………………………221 (E)

6)………………………………..Randy Gross…………………………..221 (E)

7)……………………………….Rhonda Milstead………………………221 (E)

8)……………………………….Richard Thomason……………………..221 (E)

9)……………………………….Richard Vasgaard………………………221 (E)

10)…………………………………Jean Hunoff…………………………221 (E)

11)……………………………….Scott Odenbach………………………..221 (E)

12)……………………………….Steven Haugaard………………………221 (E)

13)……………………………….Sue Peterson……………………………221 (E)

14)……………………………….Sydney Davis………………………….221 (E)

15)…………………………………Taylor Rehfeldt…………………………221 (E)

16)………………………………Tim Reed………………………………221 (E)

17)………………………………...Trish Ladner…………………………221 (E)

18)………………………………Will Mortenson………………………221 (E)

E……………...[“***Gambling Activities Treaty Programs Act***”] (GATRA)………[“**101 (F)**”]

   i)………………………..[“***Tennessee Republic Party***”]………………………[“**7(b)**”]

      1)………………………Scott Golden………………………………..221 (E)

      2)………………………Jennifer Little…………………………………221 (E)

      3)………………………..Pat Allen……………………………………221 (E)

      4)………………………..Shannon Haynes………………………221 (E)

      5)…………………….Beth Scott Clayton Amos………………………221 (E)

      6)………………………..Oscar Brock………………………………221 (E).

      7)………………………Beth Campbell…………………………221 (E)

   ii)…………………[“***Tennessee Executive Committee***”]…………………[“**7(b)**”]

      1)………………………Paul Chapman………………………………221 (E)

      2)………………………Nancy Wilson………………………………221 (E)

      3)………………………..Rob Ailley…………………………………221 (E)

      4)………………………..Cindy Hatcher………………………………221 (E)

      5)………………………Todd Fowler………………………………221 (E)

      6)………………………Anita Taylor………………………………221 (E)

      7)………………Matthew Johnson………………………221 (E)

      8)………………………Linda D. Buckles…………………………..221 (E)

      9)…………………………Scott Smith………………………………221 (E)

10)……………………………Amy Jones………………………………221 (E)

11)……………………………Brian Hornback………………………221 (E)

12)……………………………Lanna Smith…………………………221 (E)

a)……………………………["***James Corcoran***"]………………………221 (E)

1)……………………………Jane Chedester………………………..221 (E)

2)……………………………David Bishop…………………………221 (E)

3)……………………………Betty Fain……………………………221 (E)

4)……………………………John Stanbery………………………221 (E)

5)……………………………Julia Atchley-Pace……………………221 (E)

6)……………………………Emile Beaty…………………………..221 (E)

7)……………………………Ken Meyer……………………………221 (E)

8)……………………………Tina Benkiser………………………..221 (E)

9)……………………………Boddy Wood…………………………221 (E)

10)……………………………Randy Ellis……………………………221 (E)

11)……………………………Liz Holiway…………………………221 (E)

12)……………………………Patti Saliba……………………………221 (E)

13)……………………………Adam Coggin…………………………221 (E)

14)……………………………Lynne Davis……………………………221 (E)

15)……………………………Jim Sandman…………………………221 (E)

16)……………………………Bett Cox………………………………221 (E)

17)……………………………Mike Callahan…………………………221 (E)

18)……………………………Dr. Jerry Anderson……………………221 (E)

19)……………………………Joanne Davis…………………………221 (E)

20)…………………………Jerry Beavers………………………………221 (E)

b)………………………………["**_Terri Nicholson_**"]……………………………["**7 (b)**"]

1)…………………………Maria Stewart…………………………………221 (E)

2)…………………………Chris Hughes…………………………………221 (E)

3)…………………………Karen Bennett………………………………..221 (E)

4)………………………..Chase Montgomery……………………………221 (E)

5)…………………………Michelle Fireman……………………………221 (E)

6)…………………………Ron Mcdow…………………………………221 (E)

7)……………………….Beverly Knight-Hurley…………………………221 (E)

8)…………………………Chuck Grimes…………………………………221 (E)

9)………………………..Joel Wallace…………………………………221 (E)

10)…………………………Pat Allen……………………………………221 (E)

11)…………………………Steve Allbrooks…………………………221 (E)

12)…………………………Cyndi Miller……………………………221 (E)

13)…………………………Rebecca Griffey……………………………221 (E)

14)………………………..Gary Kee……………………………………221 (E)

15)…………………………Larry Hillis…………………………………221 (E)

16)…………………………Mary Ann Parks……………………………221 (E)

17)………………………..Kathryn Bryson……………………………221 (E)

18)…………………………Johnny Bellis………………………………221 (E)

19)…………………………Shannon Haynes……………………………221 (E)

20)………………………..Jim Looney…………………………………..221 (E)

21)…………………………Angie McClanahan………………………221 (E)

c)………………………………[“***Tina McElravey***”]…………………………221 (E)

1)……………………………..Terry Roland……………………………221 (E)

2)………………………………Michael Gilroy………………………….221 (E)

3)………………………………Jessica Robinson………………………..221 (E)

4)………………………………Frank Colvwett, Jr………………………221 (E)

5)………………………………Peggy Larkin……………………………221 (E)

6)………………………………Lee Mills……………………………221 (E)

7)………………………….…Charlette Kelly………………………221 (E)

8)………………………………Chris Bird……………………………221 (E)

9)……………………………Charlotte Bergmann………………………221 (E)

1………………………………[“***False Issues Benefits Treaties Act***”] (FIBTA)…….[“**171 (e)**”]

a)……………………………[“***Texas National-Legislative***”]…………………[“**7(b)**”]

1)………………………………Jhon Cornyn………………………………..221 (E)

2)………………………………Ted Cruz…………………………………221 (E)

3)………………………………Louie Gohmert, Jr………………………221 (E)

4)……………………………Dan Crenshaw…………………………..221 (E)

5)………………………………Vam Taylor……………………………221 (E)

6)……………………………John Ratcliffe…………………………..221 (E)

7)………………………………Lance Gooden…………………………221 (E)

8)………………………………Ron Wright…………………………221 (E)

9)………………………………Kevin Brady………………………221 (E)

10)……………………………Michael McCaul……………………221 (E)

11)……………………………..K. Conaway………………………221 (E)

b)………………………………[“**_Kay Granger_**”]…………………………[“**7(b)**”]

    1)…………………………..Mac Thornberry…………………………221 (E)

    2)………………………………Randy Weber…………………………..221 (E)

    3)………………………………….Bill Flores………………………………221 (E)

    4)…………………………….Jodey Arrington…………………………221 (E)

    5)………………………………….Chip Roy……………………………..221 (E)

    6)………………………………Pete Olson…………………………….221 (E)

    7)……………………………...Will Hurd………………………………221 (E)

    8)………………………………Kenny Marchant…………………………221 (E)

    9)………………………………Roger Williams…………………………221 (E)

    10)…………………………….Michael Burgess…………………………221 (E)

    11)……………………………...Michael Cloud…………………………221 (E)

    12)…………………………...John Carter…………………………….221 (E)

    13)…………………………….Brian Babin…………………………….221 (E)

c)…………………………………[“**_Texas States Officials_**”]……………….[“**7(b)**”]

  i)……………………...[“**_The Statewide officials_**”]…………………[“**7(b)**”]

    1)……………………...Greg Abbott…………………………221 (E)

    2)……………………….Dan Patrick…………………………….221 (E)

    3)………………….     Ken Paxton…………………………….221 (E)

    4)……………….….Glenn Hegar…………………………221 (E)

    5)……………………...Geroge P Bush………………………..221 (E)

ii)………………………………….[“***Sid Miller***”]…………………………….221 (E)

    1)………………………Wayne Christian………………………….221 (E)

    2)………………………Christi Craddick………………………..221 (E)

    3)………………………….Ryan Sitton…………………………221 (E)

d)…………………………………..[“***Texas Supreme Court***”]…………………….[“**7(b)**”]

    1)……………………………….Nathan Hecht……………………………221 (E)

    2)………………………………Jimmy Blacklock………………………….221 (E)

    3)……………………………….Debra Lehrmann……………………….221 (E)

    4)……………………………...Jhon P Devine………………………….221 (E)

    5)……………………………….Paul W Green………………………..221 (E)

    6)……………………………….Jane Bland………………………….221 (E)

    7)……………………………….Jeff Boyd……………………………221 (E)

    8)……………………………….Brett Busby…………………………..221 (E)

    7)……………………………….Eva Guzman………………………….221 (E)

i)………………………...[“***Texas Court Criminal of Appeals***”]……………..[“**7(b)**”]

    1)……………………………...Sharon Keller…………………………..221 (E)

    2)……………………………….Mary Lou Keel………………………221 (E)

    3)……………………………….Bert Richardson………………………….221 (E)

    4)……………………………….Kevin Yearly…………………………221 (E)

    5)……………………………….Sott Walker…………………………..221 (E)

    6)……………………………….Michael E. Keasler…………………….221 (E)

    7)…………………………...Barbara Parker Hervey…………………221 (E)

    8)……………………………….Michelle Slaughter……………………..221 (E)

9)……………………………..David Newell…………………………221 (E)

ii)…………………………………[“***Texas State Senate***”]……………………[“**7(b)**”]

1)………………………………Bryan Hughs………………………221 (E)

2)………………………………………Bob Hall…………………………221 (E)

3)…………………………………Robert Nichols……………………221 (E)

4)………………………………Brandon Creighton……………………221 (E)

5)…………………………………Charles Schwertner……………………221 (E)

6)………………………………..Paul Bettencourt……………………..221 (E)

7)………………………………Angela Paxton……………………..221 (E)

8)……………………………..Kelly Hancock………………………221 (E)

9)………………………………Larry Taylor………………………..221 (E)

10)…………………………………Jane Nelson………………………221 (E)

11)……………………………Joan Huffman…………………………221 (E)

12)……………………………Lois Kolkhorst………………………221 (E)

13)…………………………………Pete Flores…………………………221 (E)

14)………………………………Brian Birdwell………………………221 (E)

15)…………………………Dr. Dawn Buckingham…………………221 (E)

16)……………………………Donna Campbell………………………221 (E)

17)………………………………Charles Perry…………………………221 (E)

18)…………………………………Pat Fallon…………………………..221 (E)

19)………………………………..Kel Seliger………………………..221 (E)

iii)…………………………["***Texas House of Representative***"]………………["**7(b)**"]

1)………………………………Gary Vandeaver………………………..221 (E)

2)………………………………Bryan Slaton………………………………221 (E)

3)………………………………Cecil Bell Jr………………………………221 (E)

4)………………………………Keith Bell……………………………………221 (E)

5)………………………………Cole Hefner…………………………………221 (E)

6)………………………………Matt Schrieffer………………………………221 (E)

7)………………………………Jay Dean……………………………………221 (E)

8)………………………………Cody Harris…………………………………221 (E)

9)………………………………Chris Paddie………………………………221 (E)

10)…………………………Jhon Wray………………………………………221 (E)

11)…………………………Travis Clardy…………………………………221 (E)

12)…………………………Kyle Kacall……………………………………221 (E)

13)…………………………Ben Leman……………………………………221 (E)

14)……………………… Jhon Baney………………………………………221 (E)

15)…………………………Steve Toth……………………………………221 (E)

16)…………………………Will Metcalf…………………………………221 (E)

17)…………………………Jhon Cyrier……………………………………221 (E)

18)…………………………Ernest Bailes…………………………………221 (E)

19)…………………………James White……………………………………221 (E)

20)…………………………Terry Wilson…………………………………221 (E)

21)…………………………Dade Phelan………………………………….. 221 (E)

22)…………………………Mayes Middleton………………………221 (E)

a)…………………………………[“***Greg Bonnen***”]…………………………………

    1)………………………………Dennis Bonnen…………………………221 (E)

    2…………………………………Rick Miller……………………………221 (E)

    3)………………………………Gary Gates……………………………221 (E)

    4)………………………...Ed Thompson……………………………221 (E)

    5)……………………….Geanie Morrison………………………221 (E)

    6)……………………….Todd Hunter…………………………..221 (E)

    7)……………………….Justin Holland………………………221 (E)

    8)……………………….. J.M Lozano……………………………221 (E)

    9)……………………...John Kuempel…………………………221 (E)

b)……………………………….[“***Andrew Murr***”]…………………………………

    1)………………………...Brad Buckely…………………………221 (E)

    2)………………………Hugh D. Shine…………………………221 (E)

    3)…………………………Trent Ashy……………………………221 (E)

    4)………………………...Dewayne Burns…………………………221 (E)

    5)………………………J.D Sheffield……………………………221 (E)

    6)………………………Mike Lang……………………………221 (E)

    7)………………………...Phil King…………………………..221 (E)

    8)………………………Reggie Smith……………………………221 (E)

    9)………………………Tan Parker……………………………221 (E)

    10)…………………………Lynn Stucky……………………………221 (E)

    11)…………………….Matt Shaheen……………………………221 (E)

    12)…………………………Jeff Leach……………………………..221 (E)

Iv)………………………..[*"__Texas State Board Education__"*]…………………………[*"__7(b)__"*]

   a)……………………………[*"__Ken Mercer__"*]………………………………………

      1)…………………….Donna Bahorich………………………………221 (E)

      2)……………………...Matt Robinson…………………………………..221 (E)

      3)…………………….Barbara Cargill…………………………………221 (E)

      4)……………………….Keven Ellis……………………………………221 (E)

      5)…………………….Tom Maynard…………………………………..221 (E)

      6)………………………..Patricia Hardy………………………………...221 (E)

      7)……………………….Palm Little…………………………………….221 (E)

      8)………………………….Sue Melton……………………………………221 (E)

   b)…………………………..[*"__Marty Rowley__"*]…………………………………

v)……………………………[*"__Texas Party Officials__"*]……………………[*"__7(b)__"*]

   a)………………………[*"__Elected Party Officials__"*]……………………[*"__7(b)__"*]

      1)………………………Matt Rinaldi…………………………………221 (E)

      2)…………………………Cat Parks…………………………………….221 (E)

      3)…………………………Vergel Cruz………………………………….221 (E)

      4)………………………Dr. Robin Armstron…………………………221 (E)

      5)…………………………Rachel Hooper……………………………….221 (E)

      6)…………………………Richard Hayes……………………………….221 (E)

      7)………………………Toni Anne Dashiell…………………………221 (E)

      8)…………………………Mike Robertson……………………………..221 (E)

      9)…………………………Fred Tate……………………………………..221 (E)

      10)…………………..Mayes Middleton……………………………..221 (E)

11).............................Rich Stoglin...................................221 (E)

12)...........................Dr. Tim Westley..............................221 (E)

b)........................["***Texas Republican Executive Committee***"]............["**7(b)**"]

1).............................Rhonda Ansderson.............................221 (E)

2).........................Dr. Charles Blankenship...........................221 (E)

3)...............................Jerry Fisher....................................221 (E)

4)..............................Stephen Stanley..............................221 (E)

5)................................Janis Holt...................................221 (E)

6)..............................David Covey.................................221 (E)

7)...........................Gwendolyn Withrow............................221 (E)

8)..............................Walter West..................................221 (E)

9)................................Jo' Miller...................................221 (E)

10)...........................Bill Fairborther.............................221 (E)

11).............................Dawn McDonald............................221 (E)

12)..............................Chris McDonald.............................221 (E)

13)..............................Deborah Kelting...........................  221 (E)

14)................................Tom Nobis.................................221 (E)

15)...............................Margat Whitt.............................221 (E)

16).............................Abraham George...........................221 (E)

17)..............................Anne Gebhart..............................221 (E)

18)..............................Steve Atwell..............................221 (E)

19)................................Susan Wright.............................221 (E)

20)............................Warren Norried............................221 (E)

21)……………………..Tanya Robertson…………………………..221 (E)

22)…………………………..Peter Lauzon……………………………221 (E)

23)……………………………Jill Glover……………………………..221 (E)

24)…………………………David Wylie………………………………221 (E)

25)………………………….Dawn Elliott…………………………221 (E)

26)……………………………..Roy Morales………………………….221 (E)

27)…………………………….Olgha Lasher…………………………221 (E)

28)…………………………..Fernando Trevino………………………221 (E)

29)…………………………Gail Stanart……………………………221 (E)

2………………["***National Aggregate Treaties Control Act***"] (NATCA)….["**144 (II) (14)**"]

F………………..["***Class offenders Deportable Relief Act***"] (CODRA)………["**75 (III) (a)**"]

   1)……………..Treaty Academic Nationality Provision Act (TANPA)……66 (a) (1)

   2)……………..Treaty Educative Criminal Removal Act (TECRA)………..66 (a) (2)

   3)……………..Treaty issues Prosecutorial Limitation Act (TIPLA)………66 (a) (3)

G………………["***Value Educative Programs Training Act***"] (VEPTA)……["**75 (III) (b)**"]

I………………["***Massive Issues Reform  Guideline Act"***] (MIRGA)…….["**144 (II) (14)**"]

   a)……………………..["***Oklahoma GOP Leadership***"]…………………… ["**7(b)**"]

   b)……………………………..["***John Bennett***"]…………………………221 (E)

      1)…………………………..Brian Hobbs……………………………221 (E)

      2)……………………….Dwaine Shroyer……………………………..221 (E)

      3)……………………….Leslie NesSmith……………………………..221 (E)

      4)…………………………Miles Rahimi……………………………221 (E)

      5)………………………..Rex Duncan……………………………………221 (E)

6)…………………………Jonathan Krems………………………………221 (E)

7)……………………………Brian Hobbs…………………………………221 (E)

III………………………["***United States Sentence Guideline***"] (USSG)……..["**144 (II) (14)**"]

1)………………Genuine Issues for Civilians Act (GIFCA)…………………75 (IV)

2)……………Genuine Issues Criminal Detainees Act (GICDA)………………75 (IV)

IV…………………["***United States Immigration Guideline***"] (USIG)……..["**144 (II) (14)**"]

1)………………Aggravated Felony Scheme Act (AFSA)……………………75 (IV)

2)………………Serious Issues for Gambling Act (SIFGA)…………………..75 (IV)

3)……………Genuine Issues For Rehabilitation Act (GIFRA)………………75 (IV)

D………………………["***Drug Trafficking Guideline Act***"] (DTGA)………["**144 (II) (14)**"]

1)……………..Benefits Illicit Trafficking  First Act (BITFA)…………………75 (IV)

2)……………..Supervision Illicit Recidivism Chance Act (SIRCA)…………75 (IV)

E……………………..["***Treaties Issues  White Collar  Act***"] (TIWCA)……..["**144 (II) (14)**"]

1)……………Bribery Offenders removal Reliefs Act (BORRA)……………75 (IV)

2)…………...Counterfeit Offenders Criminal relief Act (COCRA)………….75 (IV)

3)…………..Disposition offenders Removal Relief Act (DORRA)…………..75 (IV)

F…………………..["***Fraud Offenders Removal Relief Act***"] (FORRA)…..["**144 (II) (14)**"]

1)……………..Monetary offenders Removal Benefits Act (MORBA)………75 (IV)

2)…………….Theft Offenders Removal Benefits Act (TORBA)……………75 (IV)

3)…………..Smuggling Offenders Removal Benefits Act (SORBA)…………75 (IV)

4)…………..Perjury Offenders Removal Benefits Act (PORBA)……………75 (IV)

5)……………Related Offenses Removal Benefits Act (RORBA)……………75 (IV)

G………………..["***Conspiracy Offenders Second Chance Act***"] (COSCA)……….75 (IV)

H.………………["***Prohibition Illegal Massive Detention Act***"] (PIMDA)…["**144 (II) (14)**"]

    1)……………Crimes Enforcement States Deportable Act (CESDA)…………75 (IV)

    2)…………States Universal Removal  Guideline Act ( SURGA)……………75 (IV)

IX.………["* **Masive Issue Right Aggravation  Treaties Act***"] (MIRATA)….["**144 (II) (14)**"]

A.…………………["***Right Immigration Clear and Convincing Ac***"](RICCA)….["**227 (I)**"]

B.………………………….["***Right Aggravation Provision Act***" ] (RAPA)………["**244 (a)**"]

    1)……………Abduction Serious criminal Act (ASCA)………………………75 (IV)

    2)…………….Abusive Sexual Contract Victim Act (ASCVA)………………75 (IV)

    3)………………Being In Held Hostage Act (BIHHA)………………………75 (IV)

    4)…………Blackmail Aggravation Violence Act (BAVA)…………………..75 (IV)

    5)………….Domestic Aggravation Violence Victim Act (VAVVA)………..75 (IV)

    6)…………Victim Extortion Serious Criminal Act (VESCA)………………..75 (IV)

    7)…………False Imprisonment Serious Criminal Act (FISCA)………………75 (IV)

    8)…………Felonious Assault Prohibition Criminal Act (FAPCA)…………..75 (IV)

    9)……………..Female Assault serious Violence Act (FASVA)………………75 (IV)

    10)……………Female Aggregation Genial Multilation Act (FAGMA)……..75 (IV)

    11)………………Fraud in Foreign Labor Act (FIFLA)………………………75 (IV)

    12)……………Incest Provision Serious Crimes Act (IPSCA)………………75 (IV)

    13)…………….Kidnapping Aggravation By mean Act (KABMA)…………75 (IV)

    14)………………Manslaughter Aggravation By Means Act (MABMA)……75 (IV)

    15)……………..Murder Aggravation Victim Criminals Act (MAVCA)……..75 (IV)

    16)……………Obstruction of justice Serious Criminal Act (OJSCA)………..75 (IV)

    18)……………Prostitution Aggravation Victim Serious Act (PAVSA)………75 (IV)

19)……………Perjury Evidence Clear convincing Act (PECCA)……………75 (IV)

20)………………Rape Aggravation By mean Act (RABMA)………………75 (IV)

21)…………Sexual Assault By Serious Act (SABSA)………………………..75 (IV)

22)…………….Slave Aggravation Punishment Mandatory Act (SAPMA)……75 (IV)

23)…………….Solicitation Involvement By criminal Act (SIBCA)…………..75 (IV)

24)…………Stalking Aggravation Serious Punishment Act (SASPA)………75 (IV)

25)…….…..Peonage individuals Names Crimes Act (PINCA)…………….75 (IV)

26)…………..Torture Individuals Names Crimes Act  (TINCA)……………..75 (IV)

27)…………….Trafficking Aggravation Provision Serious Act (TAPSA)……75 (IV)

28)…………….Unlawful Criminal restraint practice Act (UCRPA)…………75 (IV)

29)…………….Witness Aggravation Tampering Criminal Act (WATCA)…75 (IV)

C……….["***Classification Unjust Mandatory Reliefs Act***"] (CUMRA)……["**144 (II) (15)**"]

D……………….["***Classification Unjust Strikes Treaties Act***"] (CASTA)………["**163 (B)**"]

1)………………Drug Illicit trafficking  Strikes Act (DITSA)………………..153 (B)

2)…………Marijuana Accumulating Strikes Punishment Act (MASPA)……180 (I)

3)………………Career offenders Drugs Exile Act (CODEA)………………..175 (B)

E…………….["***Classification Exclusion Strikes Guideline Act***"] (CESGA)……["**190 (II)**"]

F………….["***Monetary Offenses Convincing Guideline Act***"] (MOCGA)…["**144 (II) (16)**"]

1)…………….Bribery offenders Removal Guideline Act (BORGA)…………75 (IV)

2)…………..Counterfeit Offenses Removal Guideline Act (CORGA)………75 (IV)

3)…………..Disposition offenders Removal Guideline Act (DORGA)………75 (IV)

4)…………..Perjury Offenders Removal Guideline Act  (PORGA)…………75 (IV)

G………………..["***Monetary Offenders Removal Guideline Ac****t*"]……….["**202 (f) (7)**"]

I………………["***Monetary Educative Second Step Act***"] (MESSA)……..["**199 (III) (1)**"]

    1)…………Monetary Educative detention Punishment Act (MEDPA)………75 (IV)

    2)………….Monetary educative Related Punishment Act (MERPA)…………75 (IV)

II………………………["***Fraud Offenders Training step Act***"]………………["**148 (A)**"]

    1………………Treaties  Issues Theft Reform  Act (PITRA)………………75 (IV)

    2…………Smuggling Offenders Programs Recidivism Act (SOPRA)………75 (IV)

H………………..["***Fraud Educative Family Rehabilitation Act***"] (FEFRA)……["**148 (A)**"]

    1)………….Second Offenses Punishment Community Act (SOPCA)……....75 (IV)

    2)…………..Third Offenses Family Rehabilitation Act (TOFRA)……………75 (IV).

    3)…………Fourth Offenses Removal Procedures Act (FORPA)……………75 (IV)

E………………..["***Victim Aggravation Scheme Provision Act***"] (VASPA)……["**148 (A)**"]

    1) ………Prohibition Assumption Victim Convincing Act (PAVCA)………...75 (IV)

    2)…………..Physical Issues Clear convicting Act (PICCA)…………………75 (IV)

    3)………...Mental Issues Clear convincing Act (MICCA)…………………….75 (IV)

F………………..["***General Assumption Victim Prohibition Act***"] (GAVPA)……["**148 (A)**"]

I………………..["***Driving Under The influence Scheme Act***"] (DUTISA)……...["**148 (A)**"]

    1)……………Driving Under Strikes Removal Act (DUSRA)………………75 (IV)

    2)………………Driving Under fraud Similarity Act (DUFSA)……………..75 (IV)

II…………………["***Fraud Under Victim Scheme Ac****t*"] (FUVSA)……………["**148 (A)**"]

    1) ……………First offense Benefits Victim Act (FOBVA)………………..75 (IV)

    2)………….Violent Offenders Exclusion Victim Act (VOEVA)……………75 (IV)

G………………["***Informative Reform Comprehensive Act***"] (IRCA)…………["**148 (A)**"]

I…………………["***National Issues Provision Malpractice Act***"] (NIPMA)……["**148 (A)**"]

    1)…………Rating Effect Counsel Reporting Act (RECRA)………………75 (IV)

    2)……….Attorney Client Relationship Mandatory Act (ACRMA)………75 (IV)

    3)………Right Attorney Grievous Union Act (RAGUA)…………………...75 (IV)

    4)……..Score Electronic Malpractice Strikes Act (SEMSA)………………..75 (IV)

    5)…………Prohibition Extortion Practice Criminal Act (PEPCA)…………75 (IV)

    6)…………Attorney Discipline Punishment Act (ADPA)…………………75 (IV)

II………………………["***National Treatment Principal Act***"] (NTPA)………["**153-160**"]

A………………………..["***Judicial Issues Prohibition Act***"] (JIPA)………………**8 ( I)**

    1)………………………Central District of Illinois………………………209 (e) (3)

    2)………………………Western District of Wisconsin…………………..209 (e) (3)

    3)……………………… District of Alaska…………………………………..209 (e) (3)

    4)………………………Middle District of Georgia………………………209 (e) (3)

    5)………………………Eastern District of Oklahoma…………………209 (e) (3)

    6)………………………..Middle District of Florida………………..209 (e) (3).

    7)…………………Eastern District of Washington……………………209 (e) (3)

    8)……………………..Western District of Louisiana……………………209 (e) (3)

    9)………………Southern District of IOwa…………………………209 (e) (3)

    10)……………………Eastern District of Washington …………………209 (e) (3)

    11)……………………Central District of California……………………209 (e) (3)

    12) ………………..Western District of Arkansas……………………209 (e) (3)

    13)………………………Middle District of Tennessee…………………209 (e) (3)

14)……………………Northern District of Indiana……………………209 (e) (3)

B………………………..["***Judicial Crimes Treaties Act*** "] (JCTA)……………………**8 ( I )**

III………………………["***Judicial Reform Protective Act***"] (JRPA)……………………**8 ( I )**

1)……………………Eastern District of Virginia…………………………209 (e) (3)

2)……………………Northern District of Alabama…………………………209 (e) (3)

3)……………………Western District of Michigan………………………209 (e) (3)

4)……………………Southern District of California………………………209 (e) (3)

5)……………………Eastern District of Texas……………………………209 (e) (3)

A………………………["***Judicial Evaluating Mitigating Act***"] (JEMA)…………..["**8 ( I )**"]

B…………………["***Judicial Issues Combatting Secretive Act***]…………………["**8 ( I )**"]

C…………………………["***Treatment Judicial Panel Act***"] (TJPA)………………["**8 ( I )**"]

1)………………………..District of Kansas……………………………209 (e) (3)

2)……………………Eastern District of Wisconsin……………………209 (e) (3)

3)………………………District of Maryland………………………………209 (e) (3)

4)………………………..District of Minnesota……………………………..209 (e) (3)

5)………………………District of Colorado………………………………209 (e) (3)

6)………………………Eastern District of New-York……………………209 (e) (3)

7)………………...Northern District of North Carolina…………………209 (e) (3)

8)………………………Northern District of California………………………209 (e) (3)

9)………………..District of Massachusetts……………………………209 (e) (3)

10)………………………Northern District of Florida………………………209 (e) (3)

11)………………………District of Connecticut…………………………209 (e) (3)

12)……………………..Eastern District of Kentucky………………………209 (e) (3)

13)…………………….Eastern District of Oklahoma…………………..209 (e) (3)

VI…………………………["***Massive Issues Reform Act***"] (MIRA)………………["**8 ( I**"]

A…………………["***Classification Offenders Federal Mgt Act***"] (COFMA)…["**166 (i) (3)**"]

1)………….Campus Educative Treatment Rehabilitation Act (CETRA)……..178 (c)

2)…………..Domestic Offenders Treatment Release Act (DOTRA)…………..178 (c)

3)…………..Massive Issues Domestic Terrorism Act ( MIDTA)………………178 (c)

4)……………National Offenders Maximum Confinement Act (NOMCA)……178 (c)

5)…………….Treatment Educative Rehabilitation Act (TERA)………………178 (c)

6)……………..National Offenders Penal Restrictive Act (NOPRA)…………178 (c)

7)………………….National Offenders Classification Act (NOCA)……………178 (c)

B…....["***Nation(s) Union Voting  Educative Treaties  Act***"] (NUVETA)……["**82-84 (I-II)**"]

I………………...["***Countries Affairs Treaties Function Act ***"](CATFA)……….["**221 ( C)**"]

A………………[***National Untion Report Development Act***"] (NURDA)…..["**133-139 (II)**"]

B………………["***Material Union Performance Treaties Act"]***(MUPTA)………["**76 (A)**"]

1)......………………International Court Of Justice (ICJ)...................................3 (A) (1)

2)...........………………..United Nations (UN)...............................................3 (A) (1)

3)..............………….International Criminal Police Org (ICPO)...............……3 (A) (1)

4)...............…………………WIPO.......................................………………3 (A) (1)

5)...............………………..UNHCR..............................................................3 (A) (1)

6) …………………….United States Supreme Court………………………….3 (A) (1)

*To response the courts appeals procedures is matter of right, but it is ["**premature**"], or to ["**serve**"] the defendants before ["**appealing process**"] will be in the ["**interest of justice**"], or otherwise  must be applicable in the ["**Northern district of Indiana**"], or that because the defendants are different in the first placed, or its for any court in the untied States to prevent the ["**Scientific Man**"], or proving his intellect concern, from one of his literaries, or the  ["**Books**"], ["**The Man Downstairs,**'] to be published as a reminder to the first child   to prove that judicial officials are interfering with his revolution rights, <u>Borough of Duryea v. Guarnieri</u> 564 U.S. 379 (2011)*

C.........................["***Nation(s) Union  Treaties Act***"] (NUTA)…..............["**273 (D)**"]

I................["***National Informativ  Public Grievous Ass***"] (NIPGA) ……["**304 (IV) (2)**"]

    1)..................["*Pro-Se Litigation Bar Ass*"] (PSLBA)....................144 (II) (21)

    2)..............."*International Bar Standard Ass*"] (IBSA)....................144 (II) (21)

    3)..........."*Foundation International Award Science*"] (FIAS)…..........144 (II) (21)

II...........................["***World Educative Science Ass***"] (WESA)............["**304 (IV) (3)**"]

A……["***Community Educative Leaders Development Organization***"] (CELDO)…["**272 (b)**"]

D......................…...["***Trademark Software Invention  Act***"] (TSIA).........["**212 (IV)**"]

    1)...............Dictionary Defining Words Act (DDWA)..................272 (a)

    2)...............Dictionary Technology Intergrating Act (DTIA)..........272 (a)

    3)............*Technology Educative Integration Act* (TEIA)..........272 (a)

I..........................["***Chevron Doctrine Justification Act***"] (CDJA)…....["**144 (II) (23)**"]

    1)..................["*Thomson Reuters Corporation*"] (TRC)..................248 (c) (2)

    2)......................["*Merriam Webster's Inc*"]..............................248 (c) (2)

    3)...........................["*Relx Group Inc*"]..................................248 (c) (2)

II......................["***Prison Auditing National Treatment Act***"] (PANTA).........["**381-430**"]

    1)......................American Bar Association (ABA)..............................66 (A)

    2)......................American Correctional Association (ACA)....................66 (A)

    3)....................Uniform Law Commission (ULC)..............................66 (A)

    4)...................Interstate Commerce Commission (ICC)........................66 (A)

    5)................................United Nations.........................................66 (A)

    6)...........................United States Senate (USS)...............................66 (A)

    7).................United States House Representative (USHR)......................66 (A)

8)…………………Office of Educative Sentence Practice (OESP)…………...66 (A)

9)………..Office of Juvenile Justice  and Deliquency Prevention (OJJDP)…….66 (A)

10)………………Government Accountability Office (GAO)…………………66 (A)

11)……………United States Commission on Civil Rights (USCCR)…………..66 (A)

13)………………..Democratic National Committees (DNC)………………..66 (A)

14)…………………Republican National Committees (RNC)…………………66 (A)

III…………………[" ***World educative Science Association***"](WEDSA)……[" **144 (II) (22)**"]

1)  ..……………………………University  Harvard………………………………66 (A)

2)………………………………University  Quisqueya………………………66 (A)

3)……………………………………University  Cap Town……………………… 66 (A)

4)………………………………University  Monash……………………………66 (A)

5)……………………National  Autonomous University of Honduras…………66 (A)

6)………………………………..University of  Havana…………………………66 (A)

7)………………………………..University  Addis Abeba……………………66 (A)

8)………………………………..University  McGill…………………………66 (A)

9)………………………………University of  Sao Paulo………………………66 (A)

10)………………………………University of Oxford………………………66 (A)

11)……………………………….. University of  Barcelona…………………..66 (A)

12)……………………………...University Nsukka………………………66 (A)

13)………………………………University of Dschang………………………66 (A)

14)………………………………..University  Mogadishu……………………66 (A)

15)…………………………….The University of  Auckland…………………66 (A)

16)…………………...National  Autonomous University of Nicaragua…………66 (A)

17)………………………University of San Carlos of Guatemala……………66 (A)

18)…………………………Universite of The Gambia…………………66 (A)

19)…………………………..University of The West Indies…………………66 (A)

20)………………………National Autonomous University of Mexico………66 (A)

21)…………………………………University of Delhi………………………66 (A)

A……………………………….["**_Nations Treatment Act_**"] (NTA)………["**180 (I) (a)**"]

1)……………………………University of Agostinho Neto……………………66 (A)

2)………………….University of The West Indies Bahamas Campus…………66 (A)

3)…………………………..University Ghent……………………………..66 (A)

4)……………………………..University of Belize…………………………66 (A)

5)……………………………University of Copenhagen………………………66 (A)

6)……………………………..University Tsinghua…………………………66 (A)

7)………………………………University Sorbonne………………………66 (A)

8)……………………………Sapienza University of Rome…………………66 (A)

9)……………………………University of Nairobi…………………………66 (A)

10)……………………………Hebrew University of Jerusalem………………66 (A)

11)……………………………Technical University of Munich………………66 (A)

12)…………………………National University of Ireland in Galway…………66 (A)

13)………………………………Cairo University………………………66 (A)

14)……………………………..St. Petersburg State University………………66 (A)

15)………………………………University of Oslo……………………66 (A)

16)………………………………University of Lisbon……………………66 (A)

17)………………………………..University of Zurich………………..66 (A)

18)…………………………………University Stockholm……………………66 (A)

19)…………………………..Central University of Venezuela………………66 (A)

20)…………………………………University of Amsterdam………………..66 (A)

21)………………………………ORT  Uruguay University…………………66 (A)

22)…………………………………University of Chile……………………66 (A)

B……………………[“***Mitigation Issues For Dander Act***”] (MIFDA)……[“**180 (I) (a)**”]

1)…………………………………Austral University………………………66 (A)

2)………………………………Epoka University………………………66 (A)

3)………………………..University of Health Sciences Antigua……………66 (A)

4)…………………………..Yerevan State Medical University………………66 (A)

5)………………………………..University of  Innsbruck……………………66 (A)

6)………………………………Khazar University………………………66 (A)

7)…………………………..Belarusian State Medical University……………..66 (A)

8)…………………………University of Abomey- Calavi…………………66 (A)

9) ………………………..University San Francisco Xavier………………… 66 (A)

10)…………………………..International University of Sarajevo……………..66 (A)

11) ………………………Sophia University St.Kliment Ohridski……………66 (A)

C………………………[“***Prevention Terrorism Secretive Act***”] (PTSA)…[“**180 (I) (a)**”]

1)…………………………..………University of Ouagadougou…………………66 (A)

2)………………………………University of Burundi…………………….66 (A)

3)………………………………The University of Cambodia…………………66 (A)

4)……………………………..University of Cape Verde…………………..66 (A)

5)…………………………………University of Bangui………………………66 (A)

6)………………………………..University of N'Djamena……………………66 (A)

7)…………………………University of Los Andes Colombia………………..66 (A)

8)…………………………………University of Kinshasa…………………..66 (A)

9)…………………………………University of Costa Rica……………………66 (A)

10)…………………………………University of Zagreb………………………66 (A)

11)…………………………………..University of Cyprus……………………66 (A)

I.………………..["***Media Issues Publication Provision Act***"] (MIPPA)……["**180 (I) (a)**"]

1)…………………………Charles University of Prague…………………66 (A)

2)…………………………University of Djibouti…………………………66 (A)

3)………………………………Ross University……………………………66 (A)

4)……………………..Salesian Polytechnic University…………………66 (A)

5)………………….Central American University Jose Simeon Canas…… 66 (A)

6)…………………..National University of Equatorial Guinea…………..66 (A)

7)…………………………University of Tartu…………………………66 (A)

8)…………………….University of The South Pacific………………66 (A)

9)……………………………..University of Helsinki…………………..66 (A)

10)…………………………..Omar Bongo University…………………..66 (A)

11)………………………National Technical University of Athens………66 (A)

12)……………………………University Kofi Annan…………………66 (A)

13)……………………………..Semmelweis University………………..66 (A)

14)……………………………University Amilcar Cabral………………..66 (A)

II……………….["***Prevention On Genocide Nationality Act***"] (POGNA)……["**180 (I) (a)**"]

1)……………………………University of Iceland………………………..66 (A)

2)……………………….The University of Tokyo…………………….66 (A)

2)……………………Al-Farabi Kazakh Nayional University…………..66 (A)

3)……………………….Korea University……………………….66 (A)

4)………………………..University of Latvia…………………………66 (A)

5)…………………….National University of Lesotho……………….66 (A)

6)……………………….University of Liberia………………………..66 (A)

7)…………………….Liechtenstein University………………………66 (A)

8)…………………….Vilnius University………………………….66 (A)

9)……………………….University of Luxembourg…………………66 (A)

10)…………………St Ciryl and Methodius University Skopje…………66 (A)

11)…………………………University of Antananarivo………………..66 (A)

III……………….["***Family Union Treaties Criminal Act***"] (FUTCA)…..["**180 (I) (a)**"]

1)………………………University of Malawi…………………………66 (A)

2)……………Bamako University of Science and Technology…………..66 (A)

3)…………………….. University of Malta………………………..66 (A)

4)……………University of Science ,Technology and Medicine…………66 (A)

5)……………………….Moldo State University…………………66 (A)

6)……………………….University of Montenegro…………………66 (A)

7)……………………….Mohammed V University………………… 66 (A)

8)…………………….Eduardo Mondlane University…………………66 (A)

9)……………………….The University of Zambia…………………66 (A)

10)…………………University of The South Pacific ,Nauru Campus……66 (A)

11)…………………………Islamic University of Say……………………66 (A)

12)………………………………University of Panama………………………66 (A)

13)……………………The University of Papua New Guinea……………..66 (A)

14)…………………………Autonomous University of Asuncion………66 (A)

15)………………………Pontifical Catholic University of Peru………… 66 (A)

16)………………………University of the Philippiunes System…………66 (A)

17)……………………………Jagiellonian University…………………… 66 (A)

18)…………………………University of Bucharest……………………66 (A)

19)………………………………University of Kigali………………………66 (A)

20)………………………Windsor University School of Medicine…………66 (A)

21)……………………………..Trinity School of Medicine…………………66 (A)

22)…………………………..National University of Samoa……………… 66 (A)

23)………………….Lusiad Universityof sao Tome and Principe…………66 (A)

24)…………………………University Cheikh Anta Diop………………66 (A)

25)………………………………University of Belgrade………………… 66 (A)

26)……………………………..University of Seychelles……………………66 (A)

27)……………………………..Njala University Campus…………………66 (A)

*These courts [**22-CV-00111**"] failed on his illegal ["__MEMORANDUM AND ORDER__"] : The complaint is DISMISSED pursuant to 28 U.S.C.§1915(e)(2)(B). Plaintiffs Motion to proceed in forma pauperis (ECF No. 3) is DENIED as ["__Moot__"]. The Court further ["__CERTIFIES that an appeal would not be taken in good faith__"], and therefore, shoul Plaintiff seek leave to appeal in forma pauperis permission is DENIED. 28 U.S.C. §1915(a)(3). So Ordered by District Judge Mary S. McElroy on 3/24/2022. (Potter, Carrie), we have proving pattern of misconducts by the judicial officials, and these appeals are taking in good faith, or by laws,or against widespread.  Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987)*

IV………………["***Treaties On Widespread Crimes Act***"] ("TONWA")……["**180 (I) (a)**"]

1)…………………………Comenius University………………………66 (A)

2)……………………….University of Ljubljana……………………..66 (A)

3)………………………Solomon Islands national University………… 66 (A)

4)………………..Sudan University of Science and Technology…………66 (A)

5)………………………Avicenna tajik State Medical University…………66 (A)

6)………………………Sokoine University of Agriculture……………..66 (A)

7)……………………..Timor Lorosa'e National University……………66 (A)

8)…………………….University of the West  Indies at St Augustine……66 (A)

9)…………………………The University of Tunis El Manar……………66 (A)

10)……………………………Bilkent University………………………66 (A)

11)………………………Turkmen State Medical University…………….66 (A)

V………………["***Treaties Educative Crimes Scene Act***"] (TECSA)…..["**180 (I) (a)**"]

1)…………………….The University of the South Pacific Tuvalu………..66 (A)

2)………………………….Makerere University……………………… 66 (A)

3)……………………….Sana'a University Old Campus………………66 (A)

4)……………………….The University of Zambia…………………66 (A)

5)………………………..King Abdulaziz University…………………… 66 (A)

6)…………………………Kabul University………………………66 (A)

7)……………………………University of Tehran…………………… 66 (A)

8)……………………….North South University……………………66 (A)

9)………………………..University of Bahrain……………………66 (A)

10)………………………Jigme Namgyel Engineering College……………66 (A)

A………………………………["***University of Brunei Darussalam***"]…………["**8 (I)**"]

    1)………………………………University of the Comoros………………… 66 (A)

    2)……………National Polytechnic Institute Felix Houphouet-Boigny…….66 (A)

    3)………………………………Ross University………………………66 (A)

    4)………………………………..United Arab Emirates University…………..66 (A)

    5)………………………………..University of Georgia……………………66 (A)

    6)………………………………….Univerity of Ghana………………….66 (A)

    7)………………………………….St George's University…………………66 (A)

    8)………………………………..University of Guyana…………………66 (A)

    9)………………………………University of Mauritius……………………66 (A)

    10)……………………………..College of the Marshall Island……………66 (A)

    11)………………………………..University of Babylon………………… 66 (A)

B…………………………………..["***The University of Jordan***"]………………["**8 (I)**"]

    1)…………………………..Kiribati Institute of Technology………………66 (A)

    2)………………………...The American University in Kosovo……………66 (A)

    3)………………………………….Kuwait University………………………..66 (A)

    4)………………………………..National University of Laos………………..66 (A)

    5)……………………………American University of Beirut……………… 66 (A)

    6)……………………………….University of Tripoli………………….. 66 (A)

    7)………………………………….College of Micronesia…………………66 (A)

    8)…………………..Namibia University of Science and Technology……… 66 (A)

    9)………………………………..University of Lagos……………………66 (A)

    10)…………………………….Sultan Qaboos University………………66 (A)

C…………………………………[*"**_National University of Uzbekistan_**"*]………[*"**8 (I)**"*]

    1)………………………………..Qatar University……………………66 (A)

    2)………………………………University of San Marino………………….66 (A)

    3)………………………National University of Singapore…………….66 (A)

    4)……………………………………University of Juba……………………66 (A)

    5)…………………………………University of Colombo…………………66 (A)

    6)……………………………Aton de Kom University of Suriname……………66 (A)

    7)…………………College of Business and Economics Halhale…………66 (A)

    8)……………………………University of Eswatini………………………66 (A)

    9)………………………………..Damascus University………………………66 (A)

    10)…………………………..National Taiwan University…………………66 (A)

    11)………………………….Vietnam National University ,Hanoi……………66 (A)

D……………………………[*"**_Vanuatu Institute of Technology_**"*]……………[*"**8 (I)**"*]

    1)……………………………….Atenisi Institute………………………..66 (A)

    2)………………..Pyongyang University of Science and Technology……..66 (A)

    3)…………………………..Tribhuvan University…………………………..66 (A)

    4)…………………………..St.Clements University………………………..66 (A)

    5)………………………Pontifical Gregorian University…………………66 (A)

    6)…………………………..University of Zimbabwe……………………66 (A)

*["Section 8 - "Person", "human being", "child", and "individual" as including born-alive infant, man, and woman from ["**1 U.S.C. § 8; 1 U.S.C. § 1**"], from each country listed Under Settlement Agreement motion, ("NIRTA), page 41-49, or to evaluate Human Right Violations, or by  ["**controlling theory**"] , or evidence for culture shocking  is prevailed against ["**Masses**"] or ["**Genocide**"]. then we asking the defendants if the word ["**Alien**"] must be excluded, and if the ["**Ambassadors**"] from each country must released ["**Them**"], the person that has been deported before 1992, indeed extending conspiracy claims, and for the court to reopen this case ["**11-MJ-02879**"], against certain defendants to remove their prolificing status by applicable laws, or controversial, or will justified ["**we have the Dreams"**].  McAndrew v. Lockheed Martin Corp.206 F.3d 1031, **1035** (11th Cir. 2000)*

E……………………[“***National Informative Public Grievous Ass***”] (NIPGA)………[“**221 (C)**”]

I…………………………..[“***Removal Public Safety Act***”] (RPSA)…………………[“**228 (a)**”]

II……………………[“***Adam County False Correctional Practices***”]……………[“**75 (III)**”]

  1)………………..Allegation for Privatization scheme………………………8-66; 70-118

  2)…………………Rico Violation against the Directors…………………….8-66; 70-118

  3)…………………Related Claims against The Directors………………………76 (A) (vi)

  4)…………………..Failure to Consider Serious Crimes………………………76 (A) (vi)

  5)………………Failure to Consider Non-Duplicate Claims……………………76 (A) (vi)

  6)……………..Official Misconducts or Criminal Practices……………………76 (A) (vi)

  7)………………..Situation for Violation of Sherman Act………………………76 (A) (vi)

  8)……………Extensive Conspiracy for Criminal Misconducts…………………76 (A) (vi)

  9)………………Additional Defendants to be Included…………………………76 (A) (vi)

  10)…………………..Please Stop the Abuse Practices…………………………76 (A) (vi)

  11)……………Law Library- Access Reference Material………………………76 (A) (vi)

  12)………………The Defendants Failure to Answer Crimes…………………76 (A) (vi)

  13)…………………Allegations for Fraudulent Enterprises……………………76 (A) (vi)

  14)………………..The Defendants Widespread Practices……………………..76 (A) (vi)

  15)………………………Early Release Program………………………………76 (A) (vi)

III……………………[“***Failure to perform Duties against privatization***”]…………[“**75 (III)**”]

  i)…………………………Extensive Price Gauging……………………………76 (A) (vi)

  ii)…………………..Improperly Handle Special Mails…………………………76 (A) (vi)

  iii)………………..What is ? Untimely Means in this Situation…………………76 (A) (vi)

IV………………………..[“***The Word [“Care”] is being Questioned?***”]……………[“**75 (III)**”]

1)………………....Illegal Misconducts by Staff Members……………………76 (A) (vi)

2)………………………Double Bunking Violations…………………………76 (A) (vi)

3)………………….Violation of the Telecommunication Act………………76 (A) (vi)

4)………………………Mother Nature illegal Misconducts……………………76 (A) (vi)

5)……………………Evidence for Emotional Distress………………………76 (A) (vi)

6)………………………The CCA or Corecivic Concerns………………………76 (A) (vi)

7)…………………...Law-Library Restriction theory…………………………76 (A) (vi)

8)……………………Evidence not Appealable to the (BOP)………………....76 (A) (vi)

9)………………………Continuation of Pauperis Status………………………76 (A) (vi)

10)…………………Unlawful Access to Stored Communication………………76 (A) (vi)

11)……………………Trulincs Illegal Computer System………………………76 (A) (vi)

12)…………………...Clothing to be mail in Certain Circumstances……………76 (A) (vi)

13)…………………………Illegal Business Operations………………………76 (A) (vi)

14)……………………Facially Neutral in their Illegal Treatment………………76 (A) (vi)

15)…………………………Intellect intent to promote Care……………………76 (A) (vi)

16)…………………Causing fear and delay Access to Federal Courts…………76 (A) (vi)

17)……………………Illegal Retaliation or Retaliation Means…………………76 (A) (vi)

V……………………..[“***Improper rejection or Malicious Misconducts***”]……………[“**75 (III)**”]

1)……………Delay Process or idled Against Revolution Act (TARA)………76 (A) (vi)

2)………………...Failure to demonstrate Respect and integrity………………76 (A) (vi)

3)…………Mislead or Mishandling Outgoing Mail for Personal Interest……76 (A) (vi)

4)………………...Evidence or intent to Exclude to Procedures………………76 (A) (vi)

5)……………..Allegations or Attempt to Hinder Revolution Right…………76 (A) (vi)

6)……….Evidence for exceptional Circumstances against Serious Criminals…76 (A) (vi)

7)…………………….Illegal Code, 307, 316 for Facially Neutral……………..76 (A) (vi)

8)………………..Degrading Treatment Should be Punishable………………76 (A) (vi)

9)…………………Illegal Memo or Evidence for Intent to Punish……………..76 (A) (vi)

10)…………………Profane, UDC or Due process violations…………………76 (A) (vi)

11)……………The (PLRA) is being Questioned for relevant Matters…………76 (A) (vi)

12)……………………Due Process Violation by punishment………………… 76 (A) (vi)

A………………["***Disability concerns for Proper Care Act, The Care Act***"] (TCA)…["**75 (III)**"]

1)……………………..Movement against Illegal Restitution…………………76 (A) (vi)

2)…………………Pain, Stress and Headache by Their Actions………………76 (A) (vi)

3)………………Personality Disorder for Disability Claims………………… 76 (A) (vi)

I……………………..["***Attempt to restrict the inventor by illegal theory***"]………… ["**75 (III)**"]

1)…………………….Other institution Illegal Programs………………………76 (A) (vi)

2)……………………..Central Office Illegal restrictions………………………76 (A) (vi)

3)……………UDC Illegal Actions or Discriminatory Theory………………76 (A) (vi)

4)………………The Defendants failure to Provide Staff Memo………………76 (A) (vi)

5)………………………Failure to Serve National Meals………………………76 (A) (vi)

6)………………Commissary Concerns, Untimely for Investigation……………76 (A) (vi)

7)……………………..Other Illegal Classifications…………………………76 (A) (vi)

8)…………………Questioning Illegal Transferred for Crimes………………76 (A) (vi)

9)…………………..Questioning Practice of Systematic Attack………………76 (A) (vi)

10)………………………..Unreasonable Programs Reviews……………………76 (A) (vi)

11)……………………..Marriage Against Controlling theory…………………76 (A) (vi)

12)………………….…..Trulincs or Exclusion to Programs……………………76 (A) (vi)

13)…………………The Appeals were restricted not untimely…………………76 (A) (vi)

14)…………………Illegal commissary Services or Privatization………………76 (A) (vi)

II…………………..["***Illegal Transferred to Pecos, or Mental Cruelty***"]…………… ["**75 (III)**"]

1)………………Other Operation or Evidence for Apartheid…………………76 (A) (vi)

2)…………………Recreation , leisure Illegal Activities………………………76 (A) (vi)

3)……………Continuation of Alleged Untimely, or failure to Act……………76 (A) (vi)

4)…………………Other Operation , constitutional Challenged………………..76 (A) (vi)

5)……………Commissary Illegal Products & Operation………………………76 (A) (vi)

6)………………Other Operation to Question Danger theory…………………76 (A) (vi)

7)………………..Institution Clothing and Services…………………………76 (A) (vi)

8)……………………..Detainees, Production on Writ…………………………76 (A) (vi)

9)………………..Illegal transferred by other means………………………76 (A) (vi)

10)…………………UDC National Concerns to Compel………………………76 (A) (vi)

11)……………………The Inventor Can not be Untimely………………………76 (A) (vi)

12)………………Other Mail restriction or Untimely Circumstances…………76 (A) (vi)

III…………………..["***The Interest of the Lawsuits, or Article III Standing***"]………["**75 (III)**"]

1)……………………Illegal Rejection or Denial to enforce……………………76 (A) (vi)

2)…………………Frustrating to benefits White Color crimes…………………76 (A) (vi)

3)………………Greeting card Directly from Immediate Families……………76 (A) (vi)

4)…………………Other Classification Matters, or intent to punish……………76 (A) (vi)

5)………………………False Allegations by the officials………………………76 (A) (vi)

6)…………………Dishonesty, immorality and illegality by Unjust……………76 (A) (vi)

7)………………………..Evidence to justify indigent Status……………………76 (A) (vi)

A.………………["***Mislead and Handling outgoing Mail for Personal Interest***"]……["**75 (III)**"]

1)………………….Evidence or intent to exclude to Procedures……………….76 (A) (vi)

2)……………...Allegations or Attempt to Hinder revolution Right……………76 (A) (vi)

3)…………….Evidence exception Circumstances Against Serious……………76 (A) (vi)

4)………………….Illegal Code, 307, 316 for Facially Neutral…………………76 (A) (vi)

5)…………….Degrading  Treatment Should be Punishable……………………76 (A) (vi)

6)…………….Illegal Memo Or Evidence for Intent To punish…………………76 (A) (vi)

7)…………………Profane UDC Or Due process Violations…………………76 (A) (vi)

8)…………..The (PLRA) is being questioned for relevant Matters……………76 (A) (vi)

9)……………..Improper Rejection or Malicious Misconducts…………………76 (A) (vi)

10)…………Delay Process or Idle Against Revolution Act (TARA)…………..76 (A) (vi)

11)……………….Failure to demonstrate Respect and Integrity……………76 (A) (vi)

12)………………Illegal Sanction Violated Due Process Clauses ………………76 (A) (vi)

13)………………Intent to Retaliated by  Illegal Means………………………76 (A) (vi)

B.………………….["***Informal Attempt or Exposure to Risk Factors***"]…………["**75 (III)**"]

1)……………………………..Illegal Business Affair…………………………76 (A) (vi)

2)………………………Deportable Alien Exposure to Programs………………76 (A) (vi)

3)……………….Electronic Law Library for Non-Violent Criminals…………..76 (A) (vi)

4)…………………Lack of resources to reduce Illegal Sentenced………………76 (A) (vi)

5)……………….Psychologist failure to Consider Factors……………………76 (A) (vi)

6)…………….Refused to Accept Legal Mail (s) or Without Justification………76 (A) (vi)

7)………………………….Evidence for Malicious intent………………………76 (A) (vi)

8)…………………………..Exposure to lack of Sanitation………………………76 (A) (vi)

9)…………………………Failure to release Previous Policies……………………76 (A) (vi)

10)………………Additional evidence to Support Constitutional claims………76 (A) (vi)

11)…………………..The Practices Of Double and Triple Bunking……………76 (A) (vi)

C……………["***Questioning Not Applicable to ("BOP") or Concerning Rights***"]…["**75 (III)**"]

1)………………January 9, 2017 Concur With PMB Responses………………76 (A) (vi)

2)……………………Failure to provide Electrical Power………………………76 (A) (vi)

3)………………..Mail Management Manual Being Questioned………………..76 (A) (vi)

4)………………………Spoilation of Direct Evidence…………………………76 (A) (vi)

5)………………Attorney General Performance Against Retaliation……………76 (A) (vi)

6)…………………Retaliation and refuse to Accept Legal Mails………………76 (A) (vi)

7)……………………Tampering Legal against the Activist……………………76 (A) (vi)

8)…………………Question for allowing by the Defendants Actions…………76 (A) (vi)

D……………………………["***Duplicate Privatization Schemed***"]………………["**75 (III)**"]

1)………………The Good Faith Exception and Straight Forward……………76 (A) (vi)

2)……………………..Other Special Housing Unit Matters……………………76 (A) (vi)

3)…………………..November 16, 2017 Special Legal Mail…………………76 (A) (vi)

4)………………… …..Education Material Inside the Shu……………………76 (A) (vi)

5)…………………Other Complaint Against Staff Members…………………76 (A) (vi)

6)…………………FBI Concern In Privatization Scheme……………………76 (A) (vi)

7)…………………Commissary Account or Posting Funds………………… 76 (A) (vi)

8)………………Illegal Practices , or Untimely against the Staffs………………76 (A) (vi)

9)………………Restrictive Law Library in the Privatization Prisons…………76 (A) (vi)

10)…………………Failure To reprimanded Staff Members…………………76 (A) (vi)

11)………..Misled and Mishandling Outgoing Mail for Personnel Interest……76 (A) (vi)

12)……………..Evidence or intent to Exclude to Procedures…………………76 (A) (vi)

13)……………Allegation  or Attempt to Hinder Revolution Rights…………76 (A) (vi).

14)…Evidence for Exceptional Circumstances against Serious Criminals………76 (A) (vi)

E………………….[**_Judicial Officials Disability Imposed Misconducts_**"]…………["**_75 (III)_**"]

1)………………Tort Allegation against Judicial  Officials Pending…………76 (A) (vi)

2)………………..Evidence for [**_Mandela Blood_**"] or Consistency……………76 (A) (vi)

3)………………The Activist is Questioning Illegal Operations………………76 (A) (vi)

4)…………………The Inventor Is Questioning Performance…………………76 (A) (vi)

I…………………..[**_The Grievance (s) and Evidence for Additional Facts_**"]………["**_75 (III)_**"]

II…………………..[**_Evidence to Support Social Security Failure to Act_**"]…………["**_75 (III)_**"]

1)………………...McCrae Medical Question to inform………………………76 (A) (vi)

2)………………Adams County To Evaluate Exposure to Death………………..76 (A) (vi)

3)……………To Compel Additional Medical Record by Agencies……………76 (A) (vi)

III…………………..[**_Evidence to Question Chase Account Closure_**"]………………["**_75 (III)_**"]

F……………….. ….[**_National Educative Bar Association_**"] (NEDBAS)……………["**_8 (I)_**"]

I……………………………….[**_Lawrence S.Bacow_**"]……………………………………….

1)………………………….."Jacky Lumarque "…………………………………109 (C)

2)……………………………Sidney Van Heerden……………………………………109 (C)

2)……………………………Margaret Gardner Ac……………………………………109 (C)

3)…………………………….Olvin Rodriguez…………………………………109 (C)

4)…………………………Gustavo Cobreiro Suarez……………………………..109 (C)

5)………………………………Admasu Tsegaye…………………………………109 (C)

6)………………………………Suzanne Fortier…………………………………..109 (C)

7)………………………………Vahan Agopyan………………………………… 109 (C)

8)………………………………..Chris Patten………………………………… 109 (C)

9)…………………………….Ferran Sancho Pifarre……………………………109 (C)

10)…………………………….Etsu Yahaya Abubakar……………………………109 (C)

11)……………………………Roger Mondoue……………………………………109 (C)

12)…………………………….Ali Sheikh Ahmed………………………………..109 (C)

13)………………………………Scott St John……………………………………109 (C)

14)………………………………..Octavio Guevara………………………………109 (C)

15)…………………………….Murphy Paiz……………………………… 109 (C)

16)……………………………Faqir Muhammad Anjun……………………………109 (C)

17)…………………………….Fred Reno……………………………………109 (C)

18)………………………..Enrique Graue Wiechers………………………………109 (C)

19)………………………….Mohammad Hamid Ansari………………………….109 (C)

II………………………………..["***Pedro Magalhaes***"]…………………………………["**8 (I)**"]

1)…………………………Kitiboni Rolle Adderley…………………………………109 (C)

2)……………………………Anne De Paepe…………………………………..109 (C)

3)……………………………..Harrison Pelerin……………………………………109 (C)

4)……………………………..Ralf Hemmingsen………………………………109 (C)

5)……………………………..Qiu Yong………………………………………109 (C)

6)……………………………Jean Chambaz……………………………………109 (C)

7)…………………………….Antonella Polimeni………………………………109 (C)

8)………………………………John P.N Simba………………………………………109 (C)

9)………………………………..Menachem Ben-Sasson………………………………109 (C)

10)…………………………….Thomas Hofmann……………………………………109 (C)

11)…………………………….Ciaron O Hogartaigh………………………………..109 (C)

12)………………Mohamed Osman Elkhosht ,Gaber Gad Nassar………………109 (C)

13)……………………………Lioudmila Verbitskaia……………………………….109 (C)

14)……………………………..Svein Stolen………………………………………109 (C)

15)……………………………Antonio Da Cruz Serra………………………………109 (C)

16)……………………………Michael O Hengartner………………………………109 (C)

17)……………………………Astrid Soderbergh Widding……………………………109 (C)

18)……………………………Cecilia Garcia Arocha………………………………..109 (C)

19)……………………………Geert Ten Dam………………………………………109 (C)

20)……………………………Dr Jorge Grunberg…………………………………109 (C)

21)……………………………..Ennio Vivaldi………………………………………109 (C)

III………………………….……..[“***Julian Rodriguez***”]……………………………..[“**8 (I)**”]

1)…………………………………Ahmet Oztas………………………………………109 (C)

2)…………………………………Adedayo Akande……………………………………..109 (C)

3)…………………………………Armen A.Muradyan……………………………………109 (C)

4)…………………………………Karlheinz Tochterle………………………………..109 (C)

5)………………………………..John Ryder…………………………………… ……..109 (C)

6)………………………………Rubnikovitch Serguei Petrovitch……………………..109 (C)

7)…………………………………Maxime De Cruz……………………………………109 (C)

8)………………………………..Jaime Barron Poveda……………………109 (C)

9)………………………………Ahmet Yildirim……………………………109 (C)

10)…………………………Anastas Guerdjikov…………………………109 (C)

A………………………………………["***Rabiou Cisse***"]…………………………109 (C)

1)………………………………..Gaspard Banyankimbona……………………109 (C)

2)………………………………..Kao Kim Hourn…………………………109 (C)

3)…………………………………Iderlindo Pina……………………………109 (C)

4)……………………………Georgette Florence Koyt-deballe…………………109 (C)

5)……………………………Mahamat Saleh Daoussa Haggar………………109 (C)

6)………………………………………Alejandro Gaviria………………………109 (C)

7)………………………………Jean-Marie Kayembe Ntumba………………109 (C)

8)………………………………Carlos Araya Leandro…………………… 109 (C)

9)………………………………..Damir Boras…………………………109 (C)

10)…………………………..Tassos  Christofides………………………109 (C)

B…………………………………..["***Tomas Zima***"]……………………………………

1)……………………Dr.Djama Mohamed Hassan………………………109 (C)

2)……………………………Heidi Chumley……………………………..109 (C)

3)………………………..P.Javier Herran………………………………109 (C)

4)………………………Andreu Olivia S.J…………………………109 (C)

5)………………………Filiberto Ntutumu Nguema………………………109 (C)

6)………………………..Toomas Asser……………………………… 109 (C)

7)…………………………Rajesh Chandra………………………………109 (C)

8)……………………………Jari Niemela………………………………109 (C)

9)…………………………Soumaho Mesmin-Noel………………………109 (C)

10)………………….Meletios Athasnasios Dimopoulos…………………109 (C)

11)…………………………….Ousmane Kaba…………………………109 (C)

12)…………………………..Bela Merkely……………………………..109 (C)

13)………………………Timoteo Saba M'bunde…………………………109 (C)

C……………………………..["***Jon Atli Benediktsson***"]……………………109 (C)

1)………………………………Teruo Fujii……………………………109 (C)

2)………………………Mutanov Galimkair Mutanovich…………………..109 (C)

3)………………………………Jaeho Yeom……………………………109 (C)

4)…………………………….Indrikis Muiznieks…………………………109 (C)

5)…………………………….Mothassi Maope………………………….109 (C)

6)…………………………….Dr.Julius JS Nelson Jr………………………..109 (C)

7)…………………………..Markus Jager…………………………….109 (C)

8)…………………………..Rimvydas Petrauskas………………………109 (C)

9)………………………………Stephane Pallage…………………………109 (C)

10)……………………………..Nikola Jankulovski……………………….109 (C)

11)…………………………..Pr.Mamy Raoul Ravelomanana……………109 (C)

D………………………………….["***John Saka***"]…………………………["**8 (I)**"]

1)………………………….Abdel Karim Koumare……………………….. 109 (C)

2)…………………………..Alfred J.Vella……………………………. 109 (C)

3)…………………………..Gheorghe Ciocanu………………………….109 (C)

4)…………………………..Dr.Vladimir Bozovic……………………….109 (C)

5)…………………………..Mohammed Rhachi……………………………109 (C)

6)………………………….Orlando Antonio Quilambo…………………….109 (C)

7)………………………………..Luke Evuta Mumba………………………109 (C)

8)………………………………..Pal Ahlunalia………………………………109 (C)

9)………………………………..Jamel Ben Tahar…………………………... 109 (C)

10)………………………………Eduardo Flores Castro………………………109 (C)

11)………………………………Frank Griffin………………………………109 (C)

12)………………………………Marcial Rubio Correa………………………109 (C)

13)…………………………….Danilo Concepcion………………………… 109 (C)

14)………………………………Jacek Popiel………………………………109 (C)

15)……………………………..Marian Preda………………………………109 (C)

16)……………………………..Manasse Nshuti…………………………109 (C)

17)……………………………..Srinivas Gaddam………………………… 109 (C)

18)……………………………..Frances Purcell…………………………..109 (C)

19)…………………………….Aiono Alee Ekeroma……………………109 (C)

20)……………………….Ayres Bruzaca de Menezes………………………109 (C)

21)……………………….Ibrahima Thioub……………………………109 (C)

22)……………………….Ivanka Popovic…………………………………109 (C)

23)……………………….Abdulai Mansaray………………………………109 (C)

E…………………………………[“***Marek Stevcek***”]………………………….[“**8 (I)**”]

1)……………………………Gregor Majdic………………………………109 (C)

2)………………………..Mohamed Chande Othman……………………… 109 (C)

3)…………………………Joao Soares Martins………………………… ..109 (C)

4)…………………………Robert Bermudez………………………………109 (C)

5)…………………………Abdelhafidh Gharbi……………………………109 (C)

6)…………………………...Abdullah Atalar………………………………109 (C)

7)………………………...Nargozel Myratnazarova………………………109 (C)

I.…………………………………...["***Ezra Suruma***"]………………………….."**8 (I)**"]

1)…………………………...Faozi Alsagheer…………………………109 (C)

2)………………………….Ngwira Lackson……………………………109 (C)

3)……………………...Abdulrahman O beid Al-Youbi…………………...109 (C)

4)…………………………Mohamed Achraf Ghairat……………………109 (C)

5)…………………………...Mohammad Moghimi………………………109 (C)

6)…………………………….Abdul Hamid…………………………109 (C)

7)…………………………...Riyad Hamzah…………………………...109 (C)

8)………………...Jigme Khesar Namgyel Wangchuck………………...109 (C)

9)…………………………...Sultan Hassanal Bolkiah………………………...109 (C)

10)………………………...Nadjat Ali Mchangama………………………109 (C)

11)……………………………...Koffi N'Guessan…………………………109 (C)

12)……………………………..Heidi Chumley…………………………..109 (C).

13)……………………………...Zaki Nusseibeh…………………………109 (C)

14)…………………………..Jere W. Morehead………………………...109 (C)

15)…………………………….Sophie Akuffo…………………………...109 (C)

16)………………………….Charles R. Modica………………………...109 (C)

17)………………………….Edward Greene…………………………109 (C)

18)………………………...Louis Jean Claude Autrey………………...109 (C)

19)………………………………Irene Taafaki…………………………109 (C)

20)…………………………...Nabil-Al-Araji…………………………109 (C)

21).....................................Adnan Badran.................................109 (C)

22)....................................Richard S. Lukaj............................109 (C)

23)...........................Abdullatif Ahmad Al-Bader.........................109 (C)

24)..................................Somsy Gnophanxay............................109 (C)

25)....................................Fadlo R. Khuri................................109 (C)

26)....................................Hani Shaarani................................109 (C)

27)...................................James Spensin................................109 (C)

28)...................................Peter Katjavivi..............................109 (C)

29)...................................Alhaji Abubakar..............................109 (C)

30).......................Sayyid Dr Fahad Bin Al Julanda Al Said............109 (C)

31)...............................Madjidov Inom Urishevich....................109 (C)

32)................................Hassan Rashid Al Derham....................109 (C)

33)....................................Corrado Petrocelli.........................109 (C)

34)......................................Tan Eng Chye............................109 (C)

35)......................................John Akec.............................109 (C)

36)......................................Oswald Gomis..........................109 (C)

37)....................................Jack Menke................................109 (C)

38).............................Estifanos Hailemariam..........................109 (C)

39)....................................Mswati III................................109 (C)

40)...................................Wael Mualla................................109 (C)

41)....................................Yang Pan-Chyr.............................109 (C)

42)....................................Le Quan...................................109 (C)

43)....................................Futa Helu.................................109 (C)

44).……………………………Dr James Chin-Kyung Kim…………………109 (C)

45).………………………………Gerard Toffin………………………..109 (C)

46).……………………………Hon Kupa Magatogia………………………109 (C)

47).………………………………Nuno da Silva Goncalves…………………109 (C)

48).……………………………...Emmerson Mnangagwa…………………109 (C)

II.......…………[“***Media Auditing Reporting Winger Act***”] (MARWA)........[“**212 (IV)**”]

a).…………………………[“***USA Today Newspapers***”]………………[“**8-118**”]

1).………………………Le Nouvellisite………………………144 (II) (28)

2).………………………Daily Sun…………………………144 (II) (28)

3).…………………..Sydney Morning Herald…………………144 (II) (28)

4).………………………El Caribe…………………………144 (II) (28)

5).………………………Granma……………………………144 (II) (28)

6).…………………Addis Standard………………………144 (II) (28)

7).…………………The Globe and Mail……………………144 (II) (28)

7).…………………Folha de S.Paulo………………………144 (II) (28)

8).………………………The Sun…………………………144 (II) (28)

9).………………………El Pais……………………………144 (II) (28)

10).………………………The Guardian………………………144 (II) (28)

11).………………………Le Messager………………………144 (II) (28)

12).…………………..Mareeg Media………………………144 (II) (28)

13).…………………..The New Zealand Herald……………144 (II) (28)

14).………………………Confidencial………………………144 (II) (28)

15).………………………Prensa Libre………………………144 (II) (28)

16)………………………….The  Point…………………………...144 (II) (28)

17)…………………….The Royal Gazette…………………..144 (II) (28)

18)………………………El Universal………………………144 (II) (28)

19)…………………….The Times of India…………………..144 (II) (28)

20)………………………Journal de Angola…………………144 (II) (28)

b)……………………………….[“***Nasha Niva***”]………………………[“**8-118**”]

1)…………………….La Voix du Dahomey…………………144 (II) (28)

2)…………………….Bolivia (Newspaper)…………………144 (II) (28)

3)………………………Dnevni Avaz………………………144 (II) (28)

4)…………………………… Chasa…………………………144 (II) (28)

5)…………………….Le Pays (Newspaper)…………………144 (II) (28)

6)…………………….Iwacu English News…………………144 (II) (28)

7)…………………………Khemer Times………………………144 (II) (28)

8)………………………Expresso Das Ilhas…………………144 (II) (28)

9)…………………….La Cronica del Quindio………………144 (II) (28)

10)………………………………L'Avenir…………………….. 144 (II) (28)

11)……………………………La Nacion………………………144 (II) (28)

12)……………………… Sata (Croatia)…………………….144 (II) (28)

13)………………………..Alithia…………………………144 (II) (28)

14)…………………………Blesk…………………………...144 (II) (28)

15)……………………..El Universo………………………144 (II) (28)

16)…………………………El Faro…………………………...144 (II) (28)

17)……………………………Aripaev………………………144 (II) (28)

18)………………………..The Fiji Times………………………144 (II) (28)

19)……………………….Aamulehti…………………………144 (II) (28)

20)………………………….L'union…………………………144 (II) (28)

c)……………………….["***Efimerida Ton Syntakton***"]……………………["**8-118**"]

1)……………………….Magyar Nemzet………………………..144 (II) (28)

2)……………………….Frettebladid…………………………144 (II) (28)

3)…………………..The Chosun Ilbo…………………………144 (II) (28)

4)……………………….Verslo Zinois………………………144 (II) (28)

5)…………………..Letzebuerger Journal……………………144 (II) (28)

7)……………………….Nova Makedonija………………………144 (II) (28)

8)………………..The Daily Times (Malawi)…………………144 (II) (28)

9)……………………….L'orizzont……………………………144 (II) (28)

10)……………………….Le Militant…………………………144 (II) (28)

11)………………………..Contrafort…………………………  144 (II) (28)

12)……………………….Probjeda……………………………144 (II) (28)

13)…………………..Morocco World News…………………..144 (II) (28)

14)……………………..Mwebantu…………………………144 (II) (28)

15)…………………..Daily Times (Nigeria)…………………..144 (II) (28)

16)…………………..El Siglo (Panama)……………………144 (II) (28)

17)……………………..El comercio Peru……………………144 (II) (28)

18)……………………….Business Mirroir……………………144 (II) (28)

19)………………………….Fakt……………………………144 (II) (28)

20)……………………….Adevarul………………………144 (II) (28)

21)…………………………Igihe……………………………144 (II) (28)

d)……………………..["***The Saint Kitts-Nevis Observer***"]……………["**8-118**"]

1)……………………..The Samoa Observer…………………144 (II) (28)

2)……………………Le Quotidien (Senegal)…………………144 (II) (28)

3)……………………Informer (newspaper)…………………144 (II) (28)

4)…………………………Dennik N………………………144 (II) (28)

5)……………………………Delo………………………………144 (II) (28)

6)………………………..The Vigilant………………………144 (II) (28)

7)……………………Daily News (Tanzania)………………144 (II) (28)

8)………………..Trinidad and Tobago Newsday……………144 (II) (28)

9)………………………Le Reveil Juif……………………144 (II) (28)

10)………………………Hurriyet………………………144 (II) (28)

11)……………………..Balcan Gazeti………………………144 (II) (28)

12)…………………………Fhuf……………………………144 (II) (28)

13)………………………New Vision………………………144 (II) (28)

14)……………………..Jng……………………………144 (II) (28)

15)……………………..Njg……………………………144 (II) (28)

16)…………………………Okaz……………………………144 (II) (28)

17)……………………..Tatobay…………………………144 (II) (28)

18)…………………………Alik (Daily)……………………144 (II) (28)

19)………………………Bangladesh Pratidin…………………144 (II) (28)

20)……………………..Akhbar Al Khaleej…………………144 (II) (28)

21)………………………The Bhutanese……………………144 (II) (28)

A. ....……………..["**_Media Electronic Support Grievous Act_**"] (MESGA)............["**39 (VI)**"]

    i)………………………["**_Het Belang Van Limburg_**"]………………… ["**8-118**"]

        1)……………………Amandala…………………………144 (II) (28)

        2)……………………Azhizhi………………………………144 (II) (28)

        3)……………………Berlingski………………………144 (II) (28)

        4)……………………Global Times………………………144 (II) (28)

        5)……………………Les Echos…………………………144 (II) (28)

        6)……………………La republica………………………144 (II) (28)

        7)……………………B'Sheva………………………144 (II) (28)

        8)……………………Suddeutsche Zeitung…………………144 (II) (28)

        9)……………………The Sun (united Kingdom)…………144 (II) (28)

        10)……………………………Youm 7……………………144 (II) (28)

        11)……………………Izvestia…………………………144 (II) (28)

        12)……………………Adresseavisen…………………144 (II) (28)

        13)……………………A Bola………………………144 (II) (28)

        14)……………………Luzerner Zeitung…………………144 (II) (28)

        15)……………………Dagens Nyheter……………………144 (II) (28)

        16)……………………Correo del Orinoco………………144 (II) (28)

        17)……………………De Telegraaf……………………144 (II) (28)

        18)……………………The montevideo Times………………144 (II) (28)

B.......………………[“***Media Publication Provision Act***”] (MPPA)..........[“**41 (D) (I)**”]

    i)………………………..[“***The Brunei Times***”]…………………………[“**8-118**”]

        1)……………………*Notre Voie*...……………………144 (II) (28)

        2)………………………Gulf News……………………144 (II) (28)

        3)…………….The Atlanta Journal Constitution……………144 (II) (28)

        4)…………………Daily Guide (Ghana)……………………144 (II) (28)

        5)……………………Stabroek News…………………………144 (II) (28)

        6)…………………….News on Sunday…………………………144 (II) (28)

        7)…………………Marshall Islands Journal…………………144 (II) (28)

        8)……………………………..Xebat……………………………144 (II) (28)

        9)…………………Al Ra'I (Jordanian Newspaper)…………144 (II) (28)

        10)…………………………Koha Ditore ……………………144 (II) (28)

        11)………………………..Arab Times………………………144 (II) (28)

        12)…………………….Pasaxon (Lao)………………………144 (II) (28)

        13)………………………..Ad-Diyar…………………………144 (II) (28)

        14)……………………..Libya Al Jadida………………………144 (II) (28)

        15)…………………...The Kaselehlie Press……………………144 (II) (28)

        16)………………………The Namibian………………………144 (II) (28)

        17)………………………..The Guardian……………………..144 (II) (28)

        18)………………………..Times of Oman……………………144 (II) (28)

        19)…………………………Khalq Sozi………………………144 (II) (28)

ii)……………………………………..[“**_Gulf times_**”]…………………… [“**8-118**”]

    1)……………………………Italica…………………………144 (II) (28)

    2)………………………...The Straits Times…………………..144 (II) (28)

    3)……………………………The Juba Post…………………….144 (II) (28)

    4)………………………..Ceylon Today……………………144 (II) (28)

    5)………………………Times of Suriname………………144 (II) (28)

    6)…………………………..Dyhf………………………144 (II) (28)

    7)……………………………Hugj………………………144 (II) (28)

    8)………………………Al-Thawra (Newspaper)…………144 (II) (28)

    9)…………………………Taipei Times…………………144 (II) (28)

    10)……………………….Viet Nam News………………144 (II) (28)

    11)………………………Pentecost Star………………144 (II) (28)

    12)………………………Times of Tonga………………144 (II) (28)

    13)……………………..Rodongja Sinmun………………144 (II) (28)

    14)……………………The Himalayan Times……………144 (II) (28)

    15)…………………………..Niue Star……………………144 (II) (28)

    16)………………………L'Osservatore Romano……………144 (II) (28)

    17)………………………The Herald …………………144 (II) (28)

    18)………………………..El Mercurio………………144 (II) (28)

    19)…………………………Buenos Aires Herald…………144 (II) (28)

*The same rationale applies here, other circumstances as heretofore to be discussed for [“**publication**”] of the article may reflect upon the [“**publisher's intent**”], or his intellect intent and purpose to [“**publicly disseminate**”] the article by controversy cases, or Just as the possible political consequences of disclosure might undermine predecisional communication within the Executive Branch, see <u>NLRB v. Sears, Roebuck Co.</u>, 421 U.S. 132, 151 (1975)*

A…………………….["***National Detainees Custody Mgt Act***"] (NDCMA)…….["**189 (b)**"]

    1)……………Universal Detainees Community Act ( UDCA)………………..8 (A)

    2)…………….Classification Strikes Guideline Act (CSGA)………………….8 (A)

    3)………………General  Prohibition Classification Act (GPCA)…………….8 (A)

    4)………………Detainees Issues Classification Act (DICA)…………………..8 (A)

    5)………………Mandatory Resources Litigation Act (MRLA)………………8 (A)

    6)……………..Detainees Telecommunication Resources Act (DTRA)………..8 (A)

    7) …………….Classification Detention Punishment Act (CDPA)……………..8 (A)

    8)…………..Preventing Illegal Terrorism Secretive Act  (PITSA)……………8 (A)

    9)………………..Anti-Family Segregation Act (AFSA)………………………8 (A)

    10)………………Fraud offenders Training Step Act (FOTSA)………………8 (A)

B……………..["***Minor Extenuation Conviction Nationality Act***"] (MECNA)….["**189 (b)"**]

    1)……………National Arrival Children Character Act (NACCA)……………8 (A)

    2)…………..Military Enrollment Character Patriot Act (MECPA)……………8 (A)

    3)……….Movement Educative Combating Character Act (MECCA)………..8 (A)

    4)……..  …Massive Issues Reform Guideline Act (MIRGA)………………….8 (A)

    5)…………Classification Offenders Deportable Reliefs Act (CODRA)………8 (A)

C......……………["***Informative Civil Right Provision Act"] (ICRPA***)........["**119-125 (E)**"]

    1)……………Immigration Concerns And Promulgating Act (ICPA)……144 (II) (20)

    2)……………….Public Issues Financial Burden Act" (PIFBA)…………144 (II) (21)

    3)…………………Informative Common Sense Act (ICSA)……………..144 (II) (22)

    4)…………………Informative Common Design Act (ICDA)…………..144 (II) (23)

    5)…………………Informative Common Calling Act (ICCA)…………………8 (A)

6)…………………Informative Character Requirement Act (ICRA)………….8 (A)

I.………..["***Development Educative Recidivism Participation Act***"] (DERPA)…["**189 (b)"**]

1)……………..Training Educative Special Housing Act (TESHA)………….8 (A)

2)…… ………Training Educative Disciplinary reform Act (TEDRA)………8 (A)

3)…………..Concerns On Retaliation Recidivism Act (CORRA)…………..8 (A)

II…………….["***Right Educative Treaty On Disciplinary Act***"] (RETODA)…….["**189 (b)'**]

1) ….………….Promissory  Verification Status Act (PVSA)………………..8 (A)

2) ….……….National Issues Serious Criminal Act (NISCA)………………..8 (A)

3) ….…………Strikes Issues Service Reporting Act (SISRA)………………..8 (A)

4) ….…………Fee Educative Waiver Act (FEWA)……………………………8 (A)

5) ….…………Reform Issues Values Misconducts Act (RIVMA)…………..8 (A)

6) ….……….Force Issues Benefits Access Treaty Act (FIBATA)…………..8 (A)

7) ….…………Judicial Issues Transcript Control Act (JITCA)……………..8 (A)

8) ….………..Fair Issues Filling Treaty Act (FIFTA)………………………8 (A)

9) ….…………….Universal Video Hearing Act (UVHA)............................8 (A)

10)…...……………Universal Control Reporting Claims Act (UCRCA)............8 (A)

11)…...……………Universal Grievous Procedures Act (UGPA).........................8 (A)

12)…...……………Informative Pro-Se Registration Act (IPSRA)....................8 (A)

13)............………..Bono Indigence Waiver Act (BIWA)...............................8 (A)

*This is  to say that,  the requirements for a meritorious independent action have been met here, or against the ["__Punitive Laws__"], Under ("MOCMA"), at page 60 (II), which the Judges failed to ["__Intervene__"] when?  kindly requested, at, page 1, they are certainly acted in ["__Bad Faith__"] , or maliciously intended to classified him as prolific litigant or as ["__Remark__"], or to support administrative crimes, when they should have known his intent against the ("INA"), or among the other punitive laws, they are liable.Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000)*

D………....……..…….["***Judicial officials Performance Act***" (JOPA)....................["**75 (V)**"]

    1)...……………Judicial  Disciplinary Misconducts Act" (JDMA)..................…175 (B)

    2)......…………Judicial Immigration Malpractice Act (JIMA).........................……175 (B)

    3)....……………,.….Chief Appointed Justice  Act (CAJA)...........................……175 (B)

    4)...........…… ..Board Issues Review Performance Act (BIRPA)......................175 (B)

E.......…………………..["***Treaties Union Circuit Judicial Act***"] (TUCJA)...........["**143 (II)**"]

I………………………….["***Judicial Adjudicating Victims Act***"] (JAVA)………["**75 (V)**"]

    1)…………………..United States Federal Circuit (USFC)…………………175 (B)

    2)……………………..United States Federal Claim (USFC)………………..175 (B)

II…………………………["***Treatment Judicial Panel Act***"] (TJPA)……………["**75 (V)**"]

    1)…………………United States Second Circuit (USSC)…………………175 (B)

    2)…………………United States Fourth Circuit (USFC)……………………175 (B)

    3)………………..United States Sixth Circuit (USSCI)……………………175 (B)

    4)……………………United States Eight Circuit (USEC)…………………..175 (B)

    5)………………………United States Tenth Circuit (USTC)…………………..175 (B)

    6)………………………District Of Columbia Circuit (DOCC)………………175 (B)

B…………………………..["***Treatment Federal Circuit Act***"] (TFCA)………..["**75 (V)**"]

    1)………………………United States First Circuit (USFC)…………………175 (B)

    2)………………………United States Third Circuit (USTC)………………..175 (B)

    3)………………………United States Fifth Circuit (USFC)…………………175 (B)

    4)…………………………United States seventh Circuit (USSC)………………175 (B)

    5)……………………..United States Ninth Circuit (USNC)………………..175 (B)

    6)………………………United States Eleventh Circuit (USEC)……………175 (B)

## JUDICIAL ISSUES PROHIBITION ACT ("JIPA")

**II**.The Court says its duty is to avoid a constitutional question, It deems the duty performed by interpreting a statute in obvious disregard of congressional intent; curing the resulting gap by writing a statutory amendment of its own; committing its own grave constitutional error by arrogating facts;

1)…………………….*Bowen v. Mich Acad. Of* , 476 U.S. 667,  (1986)………………1-636

2)……………………..*Plessy v. Ferguson*, 163 U.S. 537, (1896)……………………..1-636

3)…………*Free Enter. Fund v. Pub. Co.  Oversight Bd.*, 561 U.S. 477, (2010)………1-636

4)……………………*N.L.R.B. v. Noel Canning*, 573 U.S. 513,  (2014)………………1-636

5)……………………*Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, (1984)………………1-636

6)……………………..*Baker v. Carr*, 369 U.S. 186,  (1962)…………………………1-636

7)…………………*Burns v. Exxon Corp.,* 158 F.3d 336, 343 (5th Cir. 1998)………..1-636

 8)……………..…*Kerr v. United States Dist. Court*, 426 U.S. 394, 402,  (1976)………1-636

9)………………….*Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003)…………1-636

11)…..…….*Arnold v. United Artists, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994)……1-636

12)…..………………*Warth* v. *Seldin*, 422 U. S. 490, 499,  (1975)………………1-636

9)-That stands for the rule that when a a)-["**Trustee**"] sues in the trustee's name, or b)-["**Brankado, Inc**"] is the representative of the above individuals,or c)-["**Manetirony Clervrain**"] is the i)-["**Advocate**"], and his ii)-["**Assistant**"], are not required to be an  ii)-["**Attorney**"] In the circumstance of the  1)-["**Records**"] to be 2)-["**Admitted**"] without additional restrictions, and granted him the authorities by goodness, or intellectualism does not required  3)-["**Bar Numbe**r"] by each states to by evaluate his 4)- ["**Competency**"], that  is for representing all, person, or the citizenship of the trustee is used for the purpose of establishing diversity jurisdiction, so if  the advocate is proving his burden that is the end of the matters as representative.  5)-["**NCBE Number: N10667285**"**].**  that is for housing of counsel. *("The burden is on a plaintiff to allege and invoke jurisdiction .").* *Getty Oil Corp., Div. of Texaco, Inc. v. Insurance Co. of North Am.*, 841 F.2d 1254, 1258-59 (5th Cir. 1988)

13)…………………………_Rushen v. Spain_, 464 U.S. 114,  (1983)……………………………

14)………………._Harper v. Virginia Dept. of Taxation_, 509 U.S. 86 (1993)……………..

15)…………._In re Microsoft Corporation,_ 333 F.3d 517 (4th Cir. 2003)………………

16)…………_Graham v. Broglin_, 922 F.2d 379, 381 (7th Cir. 1991)……………77 (D) (3)

17)…………_Merritt v. Old Dominion_, 601 F.3d 289 (4th Cir. 2010)…………106 (II) (A-B)

18)……………._Cardenas v. Massey_, 269 F.3d 251 (3d Cir. 2001)………….108 (VI) (A)

19)………………._Beecham v. United States_, 511 U.S. 368 (1994)…………………108 (B)

20)……………………Mistretta v. United States, 488 U.S. 361 (1989)……………….

21)……………_...Park 'N Fly, Inc. v. Dollar Park & Fly, Inc_, 469 U.S. 189 (1985)…………

22)…………………_River Runners v. Martin_, 593 F.3d 1064 (9th Cir. 2010)…………………

23)……_Fleming Companies, Inc. v. U.S. Dept,_ 322 F. Supp. 2d 744 (E.D. Tex. 2004)………

24)………_In re American Airlines, Inc_, 972 F.2d 605, 608 (5th Cir. 1992)……….119 (II) (3)

25)…………_Firestone Tire Rubber Co. v. Risjord,_ 449 U.S. 368, 377 (1981)…..119 (II) (4)

26)…………_Grundy Mining Co. v. Flynn_, 353 F.3d 467, 471 (6th Cir. 2003)……119 (II) (5)

27)………………………_Tollett v. Henderson_, 411 U.S. 258 (1973)……………119 (II) (6)

28)……………………._Nebraska Press Assn. v. Stuart_, 427 U.S. 539 (1976)……………1-499

*Under the facts of the present case would, in effect, sanction ["**De Facto Respondeat superior liability**"] against each of the defendants across the country, at page ["**119-125**"] or they are additional evidence pending to file, at trial, ruled on jurisdictional issue based on affidavits and without holding an evidentiary hearing, plaintiff need only make a prima facie showing that we was victimized by the illegal actions.. _AT&T v. Compagnie Bruxelles Lambert_ 94 F.3d 586 (9th Cir. 1996)*

29)……………..*Garcia v. Atty. Gen. of U.S.*, 462 F.3d 287 (3d Cir. 2006)……………..1-499

30)……………………*Chambers v. Nasco, Inc*.501 U.S. 32 (1991)……………………1-499

31…………………………*Univ. of Pa. v. EEOC, 493 U.S. 182, 194*"],..................……1-499

32)……………*Exxon Mobil Corp. v. Allapattah Servs., Inc*., 545 U.S. 546, 568, 1…….1-499

33)………………..*Delgadillo v. Carmichael*, 332 U. S. 388, 391, ...........................……1-499

34)……………..*United States v. Morrison*, 529 U.S. 598, 607,..............................……1-499

35)………………..*United States* v. *Stanley,* 483 U.S. 669, 684,...........................………1-499

36) ……………*Chilling v. Rogers*, 363 U.S. 666, 677,  ........................................………1-499

37)…………………W*ong Hai Chew v. Colding*, 344 U.S. 590, 596 n. 5, .............……1-499

38)………………*FCC v. Beach Commc'ns, Inc*., 508 U.S. 307, 313,..............…........1-499

39)………………*Albright* v. *Oliver*, 510 U.S. 266, 275, .....................................…….1-499

40) ………..*Hatley v. Dep't of Navy*, 164 F.3d 602, 604-05 (Fed. Cir. 1998).………1-499

41)………….………*Troxel* v.*Granville*, 530 U.S. 57, 65,.....................................………1-499

42)……………… *Graham v. Connor,* 490 U.S. 386, 392 n.6, ....................…........1-499

43) ……………*Miller v. Johnson*, 515 U.S. 900, 913, .....................................………1-499

44)………*Personnel Administrator of Mass.* v.*Feeney*, 442 U.S. 256, 279,.………1-499

15)…………...*Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 669,*...........1-499

16)…………………..*Davis* v. *Passman*, 442 U. S. 228,................................1-499

17)…… …… …… .....*Lambrix v. Singletary*, 520 U.S. 518, 527-528,................1-499

18)……………….*Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 494,.......1-499

19)……………………….*Reichle* v. *Howards*, 566 U. S. 658, 664,............1-499

20)…………*Associated Industries of Mo.* v. *Lohman*, 511 U.S. 641, 653,….1-499

21)…………*Department of Agriculture* v. *Moreno*, 413 U. S. 528, 534, .....1-499

22) …………*Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111, 121, ..1-499

23)………………………*Winter* v. *NRDC, Inc.*, 555 U. S. 7, 32, ...............1-499

24)……*Sebelius* v. *Auburn Regional Medical Center,* 568 U. S. 145, 153,....1-499

25)……………. *Long Island Care at Home, Ltd.* v. *Coke*, 551 U. S. 158,….1-499

26)……...*Hoffman Estates* v. *Flipside, Hoffman* ., 455 U.S. 489, 498,..........1-499

27) …………….*Chevron U.S.A. Inc.* v. *NRDC*, 467 U.S. 837, 843,...............1-499

28)……………………. ..*Tennessee v. Garner*, 471 U.S. 1, ..............................1-499

29)……………*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20,.…….1-499

30) …………*Steward Machine Co. v. Davis*, 301 U.S. 548, 590,..................1-499

31) …………………*United States* v. *Virginia*, 518 U.S. 515, 524,…………1-499

32)…………………*Bell* v. *Wolfish*, 441 U. S. 520, 535-539, …………………1-499

33)………..*People v. Borgella*, 133 N.Y.S.3d 443 (N.Y. App. Div. 2020)…..21 (I)

34)……………………*N.A.A.C.P. v. Button*, 371 U.S. 415 (1963)…………1-449

35)…………*Schware v. Board of Bar Examiners, 353 U.S. 232 (1957)……1-449*

36)……………….*N. A. A. C. P. v. Alabama*, 357 U.S. 449, 460 (1958)……1-499

37)……………………*Near v. Minnesota*, 283 U.S. 697 (1931)…………..1-499

38)…………..*Communications Assn. v. Douds*, 339 U.S. 382, 401 (1950)…1-499

39)…………*Wallace Corp. v. Labor Board*, 323 U.S. 248, 254 (1944)……1-499

40)………………*Steele v. L. N.R. Co*., 323 U.S. 192 (1944)………………1-499

41)………….*Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995)….1-499

42)……..*Reebok . v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995)…….1-499

43)…………………..*United States v. Stuart*, 489 U.S. 353 (1989)………..1-499

44)……………… *United States* v. *Bisceglia*, 420 U.S. 141, 146 (1975)……1-499

*At this point the plaintiff is asking the Fifth Circuit page, 5 (II), or from this particular [*"**Brief**"] or [*"**The Books Act**"] ("TBA"), [*"**The Beneficiary Act**"] ("TBA") or [*"**Brandako, Inc**"] must published factual Allegations , pending to file the others, if whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."Environmental Ins. Declaratory Judgment Actions 149 N.J. 278 (N.J. 1997)*

## <u>INNOCENT FAMILY INTERGRITY ACT ("IFIA")</u>

**A**. By Stating facts and words protecting the family interest, and public interest the integrity of their fundamental rights, and the due process is flexible, and it calls for such procedural protections as the particular situation demands, and the Supreme Court has established the balancing test;

1) For determining how much process is due in such circumstances administrative proceedings in particular must be carefully assessed to determine what process is due given by the specification;

2) From the plaintiff is currently preparing this motion, entitle, ["***<u>Motion for intervention and establishing Innocent family integrity against malicious Act</u>*** "](IFIA), with the challenge that his traffic violations;

3) That he should not be excluded from ["***<u>Public Ceremony</u>***"] and to protect the ["***<u>Minor Criminals</u>***"] for future ["***<u>Ineffective Assistance</u>***"] and ["***<u>Arbitration Misconducts</u>***"] by the agencies illegal concerns;

4) The proposition by the immigration court and the ("ICE") officials for Mandatory detention until the evidence of the procedures would create additional hardship upon himself and his family unity;

5) Whom has been For many waiting for years, and while the plaintiff is in the administrative procedures, would certainly have benefited from the courts for consideration of the evidence issues;

6) Whether or not any ruling, to the contrary would suffer hardship if he deported; the request for [**_National Reliefs_**"] and [**_"Cancellation of Removal"_**] is in the interest of justice for their protection;

7) As well as to maintain [**_Family Unity_**"] including by imposing electronic monitoring if necessary and detained family together as it is appropriate for Non-Violent offenders for the family interest matters;

8) By the provision of the ("INA") waiver regulations were indented to safeguard the situation presenting in these courts as a [**_Fundamental Rights_**"] and thus create a procedural rights to consider;

9) For such privileges upon filling the appropriate forms for relief's, which the plaintiff had filed in the records; another word we question if whether congress has other intent immediate family concerns;

10) Moreover, Form I-601, required that the plaintiff to show his extreme hardship to his family will be based upon the separation of his wife and children, and mandatory detention would be met prejudicial;

11) By the inability to complete the procedures of the cases in courts to resolve the controversies, and; further detention will impede him the ability to concentrate because the practice ;

12) By the agencies illegal contract consistent of act of torture when he is being restricted to everywhere without any cause, even prisoners do not have such restrictions or to explain his claims by ruling;

13) There is question that he is qualify for relief's, and being in detention of the practice of bureaucracy that their intention is to withheld innocents people in concentration camps for the capital gain;

a) That infer and intent to punish, these courts may order the officials for release him from illegal detention on a personal recognizance basis, it can imposed injunctive reliefs while the proceedings;

b) By the courts in process, or any combinations of those factors; even if plaintiff was qualify under what should have been called ["***aggravation***"] for which being conflicting to resolve complexity issues;

c) However, , this court should not order ["***Them***"] to issued monetary bond against the plaintiff that has met the standard under section 212 (a) (4) of the (INA), which congress mandate for consideration;

d) As such the plaintiff is using the word ["**_Them_**"] to identify to the courts that he is entitle

for additional reliefs by requiring ``that final injunction relief or *corresponding* declaratory relief

be appropriately ;

14) That is with the respecting the class as a whole, and the Immigration court at the

hearing alleging that ["**_Bond Matter_**"] is subject to the discretion of ("ICE") officials and their

statement violation;

a) Of section 1003.1 of the ("INA") , as another evidence by the judge bad faith intent, or

evidence for arbitration misconducts here, Section 212 (d) (5) grants the Attorney General

discretionary right;

b) For temporally parole any individual that are not serious criminal or posed any danger to

the community and the evidence of these cases are substantial to the abused against him; and;  It is

indisputable;

c) That his wife and children are all American citizens, thus his I-130 form or intent to file

the alone, that is to say that congress recognized the desirability of maintaining or foster the unity

of his family, and;

d) While adjusting of his ["**_U.S National_**"] under section 316 of the ("INA") is premature

until the agencies and the courts proved the reason that they should not adjudicated his application

to public ceremony,

e) By which is pending in the courts for reviewed, and for both the courts and ("BIA") to remand this case to ("USCIS") with instruction to consider the evidence that the immigration court had failed to act;

f) To consider his claims as well as a matter of due process, which must be evaluated in light of the circumstances of his detention is similarly, so far as we can tell, to those in many prisons and jails;

1) For some reason has better treatment when evaluating (MDC) practice, and the evidence will prove that  the conditions of his detention is inappropriately that typically give rise to reasonable suspicion;

2) By determining whether a favorable exercise of discretion is warranted, the agencies must considers the totality of the mistreatment was politically motivated by the defendants retaliations by custody practice;

a) if the practice is not a crime then the definition of generic crime is questionable in light of the circumstances for protecting the class against widespread corruption and governmental ineffectiveness;

b) We are refereeing to the evidence on the records at whole that is most natural understanding is that the illegal act must have somehow contributed to the obtaining of price gauging practice;

## **VOLUNTARY EXPATRIOTISM PATRIOT ACT ("VEPA")**

**B**. The presumption that legislation operates only prospectively is nearly as old as the common law. Indeed, the presumption is sometimes said to inherent in the very meaning of the "legislative powers" the framers assigned to Congress in U.S. Const. art. I. Retrospective laws by according facts;

1) On his pending ["***Motion For Mitigating Genocide of Writ of Certiori for wrongful Act and for the Ratification Punitive Acts By congress***"] (RPA), with the challenge the defendants actions;

2) Failure to promulgated laws or contract law in the ("INA") is the proximate cause of his injuries in facts, and it is a question for each states across the country for mitigating secretive criminals conducts;

3)That sound to be legislation with the fundamental principles of the social compact underlying formation of a sovereign state, and the basis of a democratic state is liberty , or due process of law;

4) On or about May 6, 2014 the plaintiff file a request for declaration under section 1503 (a) to the secretary of States ["***Mr.Jhon Kerry***"], by claiming that or demanding for his certification of National Status;

5) In accordance with 8 U.S.C 1452 (b) of the Act, or the Court has subject matter jurisdiction over any of plaintiff's claims or requests for reliefs because the plaintiff filed his requests before;

6) The removal procedures it appears that the secretary has not responded his request, and the plaintiff also attached at the time a copy of his ["***Selective Service***"] and evidence for Promissory Oath;

7) As other evidence to him to make appropriate decision because his traffic violation certainly can not exclude him to such request; and; the ("DOS") is liable, but the entire executive branch officials,

8) They failed to perform their duties by violated their own laws, which the plaintiff must filed in every states across the country at least the current administration at ("DOS") might be intervened here;

i) Because his legal material at ("BSFF") required him to states all claims which has been deprived because he always in the SHU, and the ("BOP") also established other restrictive policies for questioning;

ii) That is to challenge to stop offenders not violent to be deported, and those allegation are substantial as facts of these cases illustrate the sort of relationship that qualifies , a close familial relationship issues;

a)  In such circumstances, congress has specially instructed such exclusion to the constitutions violation under section 316.2 (a) (7), therefore the plaintiff has met the requirements for proper claims;

b) Under section 101 (a) (22) (B) of the ("INA"), or by alleging to be ["*U.S National*"] while in removal proceeding because of the agencies action or by excluded him in the procedures he is entitle;

c) Therefore, he should not be housing in Concentration camps, to proper the interpretation of the ("INA") under the above section, is a question we need not to reach , if whatever the deficiencies;

d)  Of the government's position to justify their action for such serious constitutional violation may be found egregious if the plaintiff  is subjected deportation and illegal detention for their interest;

e) That if the plaintiff is plainly correct, in support in the statutes for the position that begins to ["***Permanently***"], its means any more than to form the intent to remain in the United states, and its plausible

1) That congress would means for ["*National Status*"], and to turn to his ["*Son*"] dream *Daddy come Home*, and to say that the secretary implicated to his injuries by failure to consider his requests;

2) On or about June 2019 the plaintiff file a motion to the Immigration court by inquiring about transfer the case to Indiana where his son and wife and his daughters residing, and where he could have United;

3) With his family after many years of retaliation for established evidence of criminal Enterprise; or a matter for the interest of justice, or such egregious violations are by nature rare as being alleged;

4) With the intent that he could diminished the level of emotion effecting his son by asking his wife daily for many years to come home , and he still not tired for asking the same question, this is an act;

5) Of frustration in any normal human being unless the ("IJ") is a member of the secretive Operation ;and the plaintiff asking him to response the claims  if not qualify as an egregious violation;

6) Certainly, his family resided in Indiana; the agencies must have another video immigration court closed by where he could have done the same proceeding, as the plaintiff domicile;

7) As it defines In ["***Black's Law Dictionary 1401 (10th ed. 2014)***"] and he should not be excluded from them by means of policy that is promoting apartheid has likewise adopted this interpretative laws;

8) That is plausible with respect to his family in particular, if the BIA failure to evaluate the evidence by concluded that he had merely committed for aggravation of the circumstances of his protected rights; .

9) They will be the most potential witnesses to held by the courts to evaluate his ["*moral character*"], rather the ("USCIS") officials that clearly promoting genocide, or without evaluate the punitive laws;

10) On the record by violated the applicable regulations in question, or establish a framework of factual conditions delimiting entitlements which are capable of being explored to due process claims;

i) On or about September 9, 2019 the defendants counsel failed to response his motions for inquiring about the enactment of ("NTRA"), apparently that could have been help in the exceptional maters;

ii) These cases for promoting family unity, or to mitigating his family injuries by the defendants illegally detention given that his detention exceeded six months and "he is not a risk of flight, danger;

iii) To the community whether the length of the plaintiff's detention must be weighed in favor of release and favors family reunification with his or her spouse or minor children who have been waited;

1) As well as the ambiguities that tacitly implicated on his classification based upon his national origin in violation of the equal protection component of the Fifth Amendment, assuming these allegations

2) To be true and well pleaded, the question is whether the defendants are entitled to qualified immunity because each possesses the same "essential attribute"--the recipient is guaranteed;

3) The right not to be subjected to further court processes, or qualified immunity is not meant to protect those who are "plainly incompetent or those who knowingly violate the law as explained;

4) Those allegation are supportive as evidence against the defendants, and their counsel for frivolousness claims or another word, this court should have jurisdictions when alleging constitutional claims;

5) Against all ("BOP") policies which he has no access to invoke the various courts for their intervention or purposeful delay, and deviation from standard administrative practice notwithstanding;

6) As one can imagine , those who committed crimes must be punishes for the purposed to change their life, however the ("INA") does not provide such opportunity by destroying family by mandatory factors;

7) The most restrictive laws ever exist; and except that the voting right act ("VRA"), which is not conflicting with the "(INA") as evidence the defendants certainly have intent of discrimination;

a) It failed to properly define the word ["**Aggravated**"], and by allowing the class to benefits by abolishing ["*Aggravation Scheme Act*"], who are incarcerated in private institution by means of administrative crimes;

b) That is the true definition for ["**aggravation**"] ,and for questioning the federal agencies as On or about December 4, 2019 the plaintiff filed his motion[ DKT, No 37 ] to the district court for considered;

c) His intention is to challenged the ("INA") contains the various ambiguities or he his a victim of punitive act while being illegally detained by the defendants because of being an activist against apartheid;

d) On r about April 4, 2019 while at one of the ("BOP") institution by illegal contract the ("ICE") officer served him a notice to Appears ("NTA") that contains the various stipulations, or in contradictions;

e) The allegation that the plaintiff is subject to removal because he is not a Citizen or U.S Nation, which in contradiction with congress intent or violated section 336.10 (b) (2) (v), and congress intent;

f) Has established liberty interest because ("DOS") has never send him notice that it received satisfied due process or as evidence that ["Africans"] are suspect class with respect to the right procedures;

1) As a claim of U.S National and not Citizen of Haiti taking and subscribed before an immigration officer within the meaning of the statutes in question and congress intent while in illegal procedures;

2) To That extent the ("NTA") allegation for the fact that he is not Citizen or National of the United States is in limbo until the courts review the claims and evidence on the record, if whether he should be release;

3) The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected to grant relief;

4) To grant relief under the plain error standard, an appellate court must determine: (1) there was error, (2) the error is plain, and (3) the error affects substantial rights and which (4) seriously effective;

5) By affecting the fairness, integrity, or public reputation of judicial proceedings when there expressly concedes his or her removability as charged in a notice to appear, he or she waives many objections;

## GENUINE ISSUES FOR MATERIAL ACT ("GIFMA")

**III**.By noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct;

1) On his pending ["***Motion for International Extradition by Questioning the Ants Criminal massive Issues Reform Act*** ] (MIGRA), with the challenged that he is a victim of egregious behavior;

2) Of Abuse of government power arbitrarily and oppressively exercised, in that . Context, however, indicates that the court was referring to the right to substantive due process violation by negligent intent;

3) On April 2, 2014 the plaintiff filed a grievance to the Regional office of the ("PMB") another branch of the ("BOP"), or the ["***Secrecy Operation Management***"] ("SOM") seemed to disregard claims;

4) The allegations that he met the requirements  for U.S National or National Status , he should not be placed in Apartheid; and; what are asking if the agencies confused with the various illegal regulations;

5) The proceeding in this point suggest that ["***Mr. Hugh Hurwithz***"] who is the ("BOP") Director for his intervention proceeding would be in order for the vacatur of hi convictions for the various violations;

6) As explained in previous motions filed who is subject to removal proceedings may be eligible for cancellation of removal if, among other things, they have ``been physically present in the United States;

7) For a continuous period of not less than 5 years immediately preceding the date of [an] application" for "cancellation of removal", and he certainly victimized while in their custody for habeas purposes;

2) Here, the defendants counsel failed to reference to the statutes that directed the ("BOP") how to calculated when a release person who was a victim of criminal activities by way of retaliation claim;

8) In other word she had failed to respond any allegation against the ("BOP") policies being challenged, and the plaintiff does not have any of those policies while in custody of the defendants illegal deportation;

9) That is established by ("ICE") officials, or to inquired about the vacatur of his convictions were "particularly serious crimes, and the interest of justice will be applicable for proper references;

10) It is, however, the obvious scheme of injustice that responsibility for observance and enforcing of these rights is upon the ["***United States Sentence Commission***"] ("USCC") for its intervention issues;

11) That is another issue for lack of resources that on the ("*THE ANT*") that is effecting his injury in fact resulting from the action to which he is seeking to have the court adjudicate such complex litigation

12) For the achieve judicial efficiency, as the cases before us, the (BIA) has exercised its authority by issuing a conclusive ruling on a particular issues in the plaintiff's agency proceedings in these cases;

13) The court knows the agency's final adjudication of the issue in the plaintiff's cases unless the court chooses to remand first," looking to the text and context of the statutes in question for analyzing;

a) The first and foremost, the statute's grant of authority to the district court to remand the matters to the (USCIS) undermines if the Government's challenging reading of section 1447 (b) by delegate powers;

b) Moreover, interpreting the statute to allow the (USCIS) to rule on an application while the district court "has jurisdiction" to ["***determine the matters***"] would undermine the court's ability to control;

c) By remanding with directions as the statute authorizes Naturalization applications are decided by the (USCIS), but denials are subject to de novo review by district courts for the violations of rights;

1) The plaintiff motions does provide the basis to conclude that the defendants acted under color of state or federal law, nor does it suggest that hiss federal rights were violated by the negligence conducts;

2) We we agree with the districts courts that his claims are so substantial that he does confer federal question jurisdiction to proceed in ["*forma pauperis*"] as a matter of law, or Victim of serious crimes;

3) It provides a cause of action for the violation of a federal right by a defendant acting under color of state law, and those allegation are indisputable in light of the circumstance for intervention issues;

4) For his claim for financial burden within the (PLRA) that required by itself special attention by the defendants if whether or no the plaintiff is right that the laws challenging are conflicting issues;

5) The relates matters are by technical violations of statutes due to inaction of the Department of Homeland Security (DHS). Thus, once the DHS has failed to act upon a pending of removal process;

a) We ask the (BIA) if the plaintiff is right in the matters of controversy and the claims for certain arguable for congress to intervene and by writing to the "courts have been sensitive to the mere possibility;

b) Of his collateral consequences only in this removal procedures following imposition of a criminal sanction, and n those cases before them, however, the courts must explained the facts on the records entirely;

c) That "there has been no aggravation felony and there is equivalent restraint on the government's ability to impose legal disabilities by their action that is being question for further investigation issues;

d) If congress is not clear that is the end of the matters , and for the courts, as well as the agencies, must give effect to the unambiguously expressed intent of Congress,if Congress has supplied the clearer;

e) From the  unambiguous answer to the interpretive question at hand, and If the intent of congress is clear, or if Congress has not directly addressed the precise question at issue, then the courts must determine;

f) If  whether the agency's answer is based on a permissible construction of the statutes for enacting the proposed laws in questions that will be benefited the interest of justice is a matter for litigating facts;

## MORAL ISSUES GOOD CHARACTER ACT ("MIGCA")

**A.** Great deference must be given to the agencies continuous exposing to danger theory by criminal enterprise's "[g]ranting such motions will freely  permit him to protect against injustice and fertile enough to continuously produce new and material facts sufficient to establish prima facie cases by laws;

i)  The substantive relief sought in his pending ["***Motion for invoking Congress intent and for Declaring the Minor Treatment Violation Act***"] (MTVA), and by providing facts that his traffic violations issues;

1)  On or about June, 13, 2001 the plaintiff was arrested by the Miami-Date Police Department on charges while license suspended as habitual offender, ["case# F01-18618"], which he was placed;

2) In probation for a period of one year with yearly termination; and the agencies failed to review the evidence which included the traffic violation of the incidents, would permit a finder of facts to be concluded;

3)  That one or the agencies were negligent under the applicable state law, whether a defendant's conduct falls short of the standard of care is generally a question of fact for the jury to question illegality;

1) On January, 20, 2003 he was sentence to credit for time served for two days with ["Case # F03-001877"] including cost and the record reflect that both charges he was guilty and adjudication matters;

2) That was withheld and fine of the four hundredth seventy one dollars ($ 471.00) in the first case and four hundredth sixty one dollars in the second case ($ 461.00), and we ask the courts if that is valuable;

3) On or August, 3 2007 about the time President Obama was about to elected, he file an application for Naturalization under section 316 (a) of the Act, another word with intent to vote for african descent;

4) To be President of the United States, or historical events giving rise to his voting rights can raise serious constitutional concerns raised for the illegal detention, and attendant to this situation realistic;

5) On or about December, 9 2008 about four years and seventh month he went to for interview at the immigration office located in Oakland in Florida to which the Officer failure is the proximate causes;

ii) Thus, it is true that the courts duty to evaluate ["**_Mr. Tamar Velasquez_**"] performance in all of the circumstances by exposed to crimes against Humanity is actionable actions upon relief must granted;

ii) By affirmed that he was lack of moral character because of the above convictions and excluding him to public ceremony; and thus prevented from obtaining naturalization as required by the statutes claimed;

7) On or about September 14, 2009 the plaintiff received a confirmation on form N-335, its stated that the application was ineligible for the reasoned explained, or they failed to provide reasonable time;

a) By giving him prompt notice of the decision in violation of 5 U.S.C 555(e) ;and; and the agency failed to promptly notice,or shall be given of the denial and that standard is applying for the same purposes;

b) Of the injuries or irreparable harms due to alleged lawless enforcement of a federal statutes, that necessary for to set out the facts with a little more detail than they appear in the Court's opinions;

9) The form was signed by [" ***Katherine Patterson***"], who is the field office Director at the ("USCIS") located at Oakland , Florida, another word she failed to recognized the notice was not untimely to control;

10) On or about October 22, 2010 the plaintiff sought legal assistance for responding the denial by the officers, and spoke with ["***Mr.Nishan C.Mahendran***"]** [P.A] and counselor at Law by illegal advises;

11) Contributed in the agencies action as evidence for extorted him on such important matter, he quoted that if we go to the normal procedures you might get deported another violation to question the facts;

12) Under this applicable laws, 8 U.S.C 1447 (b); and; ["***Section 1447 - Hearings on denials of applications for naturalization***"];

> **(b) Request for hearing before district court** If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

a) That section permits the plaintiff to request a hearing in the district court, if the government failed to make a determination ["***within 120 days***"] of examination conduct on the applicable matters;

b) Under the section , the district courts have jurisdiction over the matters and may either determine the matter or remanded, with appropriate instruction to the service to be determine by certain legal rights;

c) On or about November, 1, 2010 consistent with his legal advise by the Attorney, a later decision at his authorities, and he had filed a second application on whose behalf with a form G-28 had been filed;

1) By providing notice to the Attorney in record to perform his duties in accordance with 8 C.F.R 103.3, and; sufficient form of notice to satisfy the plaintiff's due process rights in the legal procedures issues;

d) On or About October, 3, 2013 in regard to the new application, he received a notice administrative closed, which the plaintiff appealed pursuant to section 335.6 (b) of the Act, and informal requests;

e) To reopen the application before the due date December. 23, 2013, and was signed by [*"Mrs. Brett.H Lassen"*], as the Field Director Officer; and; this necessarily entails affirmative action on her part;

8) That is to say that on the ground of equitable tolling , the Attorney was ineffective or not responsible for the unseemliness of his underlying application for Naturalization, and did not specify the issues;

9) How ? this explained, or justify the unseemliness of his motion to reopen, or timely form N-336 request for a considering the evidence; and; the inferences therefrom in the light most favorable claims;

a) He should have had file Form I-290B, [*"Notice of Appeal"*], or Motion, with the ("DHS") construe as motion for reconsideration, and on December, 10, 2009 the ("DHS") upheld its illegal decisions control;

b) By using the occasion to expend its statements of reason of such arbitrary action under 8. C.F.R 103.3 (a) (7) , as a result,  the filing suits in the districts courts across the country to  justify actionable claims;

c) The failure by the Attorney not requested a hearing with the time frame or for reconsideration, variant approaches can be imagine, but the approach follow was plain inadequate representation, and;

d) Whether dominated administrative or judicial, the court procedures erroneously conveyed a message that the matter was closed that nothing more in the plaintiff way of the process was available; and ;

e) It is settled that the statutory test of eligibility to citizenship is not whether plaintiff will make a good citizen, but to considerably more specific test of allegiance, to which he is entitle for public ceremony

f) That is not in  accordance with the laws explained on the controversy, which the defendant has caused him the various irreparable harms that he is being unlawfully separated from family;

e) The Attorney false representation amount to a suppression of evidence by case laws, and cause the plaintiff the various injuries while in custody of the ("BOP") and ("ICE") not to exclude by exposing issues;

g) To their Criminal enterprise, for the sole purpose of the Attorney on the record fault and the agencies arbitrary actions  or malicious conflict of interest, at worst, and their conducts are serious injustice;

9) On or September, 30 2011 the plaintiff was sentenced in the United States district court on his current charged on the ("NTA") , which ("ICE") officials stipulated that he had committed aggravated felony;

a) Without evaluated the evidence on the records; therefore, equitable estoppel does  apply, and the doctrine of equitable estoppel applies against the government as they engages in affirmative actions;

b) Of their misconduct going beyond mere negligence alleged in this case of controversies; and;  He remained to the custody of the ("BOP") upon admittance, the ("BOP) designated him to several privatizes;

c) Of their wrongful acquisition practice or violation of clearly established criminal law under 18 U.S.C 1832, which prohibits theft of trade secrets Act and they are liable for civil conspiracy claimed;

c) That is when he was in the custody, or at the Hearing site, which also involved ("ICE") by holding Immigrants In degrading treatment of confinement ("DTC"), without any cause, or he was and continuously;

d) That he is being exposed in the various dangerous theory acts by the private prisons, where individuals without any training performed the governmental duties including the duties of impose disciplinary;

1) The administrative records will prove that  the defendants violated due process and retaliation  against him by relating to a series of disciplinary hearings because of his movement or allegations of crimes;

2) That this prison discipline violated his constitutional rights. In bringing constitutional claims against correctional staff arising out of prison disciplinary hearings,and he faces an exacting burden of proof;

3) It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights if the evidence will prevail his claims for vacatur of the illegal convictions;

a) At least ["**_Mr Erin Nealy Cox_**"] will perform its duty as well as for the Attorney general to provide him supports  for those as the plaintiff who had suffered from retaliation because of challenging laws;

b) Of the Criminal Activities in the prison industry is a subject matters that is premature, they will help in the process of the disability of the conflict of interest between the Privatization performance claims;

c) As it is a matter for questioning or genuine material of facts that the agencies contracts are conflicting with criminal law or even with the above defendants for additional inquiring by congress intent;

d) of course the contracts by the agencies is is promoting crimes, or conflicting with the various policies, regulations within the ("INA"), which plaintiff will prove in the foregoing of this complexity issues;

e) Of the litigations, and the lack of resources is the first question to the courts for mitigating ["***Serious Crimes***"], ["***Mass deportation***"] and ["***Mass incarceration***"] are presenting for the evidence;

1) At this point we are questioning the pretext Three Strikes Law, which is the judicial officials can not denied the claims, or if whether or not the activist has been frames by judicial administrative crimes;

2) Thus, it is true that the advocate has proving his burden, that, even judicial official are involved in the conspiracy alleged, that they duty is to prove the contrary, or release each judges records entirely;

3) Then the evidence will prove that why? The courts must applied under this cases ["21-CV-00137"], or any allegation by the officials ["Dkt, 17,"] or for them to prove their intent is clear by to be prevailed;

## <u>RIGHT ISSUES FOR CRIMINAL ACT("RIFCA")</u>

**B**. If congress, justifiably concerned with evidence that deportable criminal aliens who are illegally detained continue to prove crimes and they fail to prove for his removal hearings in large numbers, may require that persons such as the plaintiff to inquire for criminal investigation by legal process;

1) If the exercise of its broad power over naturalization and immigration, and congress regularly makes rules that would be acceptable if applied to citizens. and the detention period had a definite issues;

2) For the determination point, [20-00540] on hi pending ["***Motion for intent to publis and Mnifest Intent or Serious Criminal Act (SCA) by invokign the right Issues Criminal Act***"]as for performance claims;

3) By ["*equitable tolling*"],claim,  and he should not be in ["*removal proceeding*"],by <u>*Pace v. DiGuglielmo*</u>, 544 U.S. 408, is available only "when an inmate diligently pursues his claims by controlling laws;

4) That the failure to timely file was caused by extraordinary circumstances beyond his control and he has made the argument for the application of equitable tolling against the counsel infectiousness issues;

5) In light of the purpose of this motion is to establish that the defendants conducts surpass the level of evidence of aggravation, which the meaning of the ("INA"), as contrary to those that had committed;

6) Their offenses that is not violent  that he is relying on *Sessions v. Dimaya,* 138 S. Ct. 1204,  (2018) and he has  made prima facie showing that is applicable and supports his request for authorization;

2) Their conducts are dangerous to the community, as may be permitted infer that purpose of the agencies action and their partners is punishable in accordance with the meaning of the statutes in questions;

3) that is to say that the ("INA") is ["*Ambiguous"*] in light of the circumstances, while Webster's dictionary defines "Deportable; 1) Punishable by deportation 2) subject to deportation proceedings;

i) It appears that the agencies can not denied the relationship between the plaintiff classification as being label as animal for the purpose of being tortures while in their custody for his conviction;

ii) For lack of Aggravation in the subjective testimony on the administrative record or the (IJ) transcript . Instead, we must  also consider the objective facts in the records to determine under specific matters;

iii) Further , being exposed to meaningless detention for the purpose of give up his right of Nationality Treatment, it is certainly not congress intent to promote aggravated felony by those committed crimes;

iii) Their first offense in certain cases, or in this case presenting for promoting justice make a new agencies rule announced in adjudication] prospective relief and the legal standards for their majority opinions;

iv) That must announced, and should  be applied "retroactively" to these cases the frustration of the expectations of those who have justifiably relied on a prior rule" against "the partial frustration

v) Of the statutory purpose" that results from purely prospective relief and "the harms to plaintiffs' justifiable reliance interests [was] substantial[,] . . . unfairly and unnecessarily inflicted by instigation;

1) In other word, they certainly can not prove by any other meaning of words to define aggravated or by reasonable objective that their action are legal in accordance of any plain meaning;

2) Of any dictionary around the world, in particularly ["*Oxford English Dictionary 1317 (5th ed. 2002)*"] has explicitly explained the situation presenting to the courts for consideration of right allegations;

3) Congress has a legitimate interest by ensure that serious criminals misconducts such as ["***Tortured*** "] and ["***Extortion***"] are seriously misconducts for the purpose of the unjust classification issues;

4) For further abolishing illegal detention after release form prison for those that are not violent or dangerous to the community is subject to an exception that is set out in within the statutes;

a) The search for congress intent is within the test of the statutes in question, as the allegations into his motion is to invoke the agencies to perform their duties by eliminating mass deportation;

b) This interpretation of the text is compelled by the broad context of the statutes as whole. which congress intent is to exclude ["***Victim of Domestic Terrorism Act***"], in such classification to promoting;

c) The allegation for crimes of apartheid, racial discrimination by the statutes 8 U.S.C 1227 and 18 U.S.C 3621 (b) that being challenged on the ground for facially neutral toward his classification;

d) Here, the defendants can not denied the unconstitutional challenged within the statutes where its enactment or the manner in which it was enforced were motivated by concerning discriminatory;

e) The one category of facially neutral restrictions that runs afoul of the Fifteenth Amendment is a classification so closely intertwined with race that it is a "*proxy for race*" is by the appropriation;

1) Although proxy discrimination does not involve express racial classifications, the fit between the classification at issue and the racial group it covers is so close that a classification on the same basis;

2) Of race can be inferred without more for that reason, proxy discrimination is "a form of facial discrimination, as it applies in this circumstances presenting to the courts as part of the controversy claim;

3) As a result, the courts may consider extrinsic evidence, but will uphold the policy so long as it can reasonably be understood to result from a ["***justification***"] independent of unconstitutional ;

4) The court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary. U.S. Const. art. III's grant of federal jurisdiction requires a live controversy at all stages of the litigations;

5) If the controversy between the parties is extinguished while a case is pending on appeal,. A case becomes moot, however, only when it is impossible for a court to grant any effectual relief to request facts;

## UNJUST CLASSIFICATION PROHIBITION ACT (UCPA)

**I**.The expropriation exception applies to claims for "property taken in violation of international law,we must held that the practice by the agencies encompasses property taken in violation of the international-law prohibition against genocide or, acts committed by the officials illegality against;

a) Their own nationals in conjunction with his ["***Motion for Unreasonable Classification By compelling and Performance movement on crimes Mitigating Act***"] (MOCMA) as evidence from his speech;

1) That language, taken in the context of the facts in violation of the constitution, is best read simply to describe the necessity for finding the equal protection violation where specific injuries

2) From hostile discrimination were at issue by consider" the policies are not in their interest, of the government action; that effecting decision-making authority over" that policy ``at a different;

3) That level of government" must be reviewed under strict scrutiny; thus, statutes that deny opportunities or benefits to aliens are subject to strict scrutiny unless they fall within two narrow exceptions;

4) Which have been established, therefore we ask ("BIA") if it really review his cases the novo by the failure the review this motions reasonable observer" inquiry applicable to cases of controversies;

b) On or about may 22, 2019 the plaintiff file a motion to the immigration court, entitle, ["***Motion for questioning and abusing discretion Act"*],** for the content of this motions he should not be in removal; **,** and;

c) The ("NTA") provided by the ("ICE") officials is not enough as evidence to support the finding that he committed aggravated felony or violated section 101 (a) (43) of the Act they failed to perform duty;

1) As applied to the defendant's conduct due to the possible ambiguity of the word "punishment that is another reason making the cases so attractive by challenging the statutes to be broad, or vague;

2) in light of the circumstances by promoting assumption, or rather specific facts to as clear convincing of the evidence as a result, a hearing where an immigration judge cannot be said to have fairly;

3) The consideration of the evidence presented by the plaintiff is one where those have been deprived of due process violations in immigration proceedings during the pendency of the procedures;

4) The Immigration court allowed the ("ICE") officials to stipulated in the ("NTA") or in the procedures of the hearing by attempted to claimed that he violated section 101 (a) (43) (U) of the act, and failed

5) To terminated the procedures for such serious due process violation as a result of his removal, and the failure by the agencies to consider the factual allegation on the administrative records;

6) During the removal proceeding both ("ICE") and the ("IJ") failed to consider that the ("USCIS") could have been the reason that he is in removal proceeding by failure to evaluated is traffic violations,

7) However, some of there allegation under the ("INA") is premature due to lack of resources at those concentration camps, and another reason to question , the government's motives are sufficient;

8) The officials intent to discriminate against him for the allegations Criminal Enterprise can be proving even with the circumstantial evidence that the defendants targeted him on account of his movement;

9) Whether or not there is a Narrow exception within the ("APA") to enforce the non agency action in light of the circumstances of entitlement of public ceremony, it is because the statutes are ambiguous;

10) The agency had failed to implement them or even offers a reasonable interpretation, with some intuitive force behind them as additional evidence that the defendants were motivated by their detention;

11) On or about August 22, 2019 the plaintiff filed a notice to ("BIA"), alleging that for evaluating the evidence on the records  under the ("INA") as defense against removal or abusive practice;

12) by the ("IJ"), and the ("ICE") officials, an the evidence is clear in light of the circumstances to support the finding of discrimination; and; on the basis of his previous citizenship is questionable;

13) It appears that the (IJ) failed to evaluate the evidence on the records, as well as section 239.2. Entitle, ["*Cancellation of Notice to appear*"] (NTA), and subsection (a) (7) allow him, and the agency officials;

14) To act in good faith, and their failure can not justify by proper justification, and was a *per se* violation of constitutional rights and for injunction would have to include of the IJ's and BIA's procedures;

15) Certainly the circumstances was change after the notice was issued, if the evidence of ["*Non-Aggravated Felony*"], or ["*Collateral Attack*"] of his conviction, and being ["*victim of criminal activities*"];

16) At that point he is question the reason the ("BOP") and ("ICE") kept him in Texas all the time while in their custody; or the delaying his immigration proceeding for years is another issues, and;

17) There are conspired against him for the sole purpose of his deportation, unless the agencies can proved the contrary that their actions, or those claims are not substantial,by fact the direct evidence;

a) Of many individuals being deported in Texas is amassed to support the claims against the officials for intervention as of right under Rule 24(a), we need not examine in-depth whether it fulfil of rights;

b) By the requirements for permissive intervention under Rule 24(b). Indeed, the Courts must noted that the spring from and to serve to resolve a dispute within the court's subject-matter jurisdiction claim;

c) To that extend such continuation of detention or removal proceeding are no longer in the best interest of the government for separate family or even a victim of criminal activities without explaining facts;

d) What should have been considered to be aggravated. 8. C.F.R 239.2 (c); Indeed, the very facts that the regulations permit DHS to withdraw an NTA and later reinstate removal proceedings suggesting rights;

e) That these proceedings may be terminated before a final decision on removability, which the defendants failure is the proximate cause of his injuries and he is being framed by the defendants;

f) It allow the officials to dismiss a case after proceeding have been begun on the ground of Nationality treatment making the agencies actions questionable for permanent injunction pending the consideration

g) Of the vital constitutional issues is for ["*cancellation of removal*"] is proving by the evidence on the record and the (BIA) failed to review de novo by supporting extorting by widespread;

i) For the plaintiff (s) as Lawful permanent residents also eligible for cancellation of removal if, *inter alia*, they have continuously resided in the United States for at least seven years as domicile claim;

ii) if the government can prove the contrary, neither they have any evidence for one that committed aggravated felony as matter of course and further permitting that the Attorney General performance;

1) We ask the court if the immigration forms he had filed should had file later after evaluated the seriousness of this cases that is involved the various constitutional violation by the defendants subordinates;

2) Of course they are   theory of *respondeat superior* applies to tortuous or criminal acts of their employee for all claims in the controversy as additional requirements for the courts to compel the records;

3) or another word the ("IJ") should have had end the proceeding or whether the ("ICE") and the officials are conspiring with ["**Mr. Pedro Govea**"] and may involved in conspiracy that is specifically;

4) It is impossible for both ["**Mr. Tony Jhonson**"] at ("PDC") have not known about the above officer retaliation misconduct for reporting criminal activities, they failed to perform their duties by laws;

5) They are violated in criminal laws or  in violation of 18 U.S.C 241 and 18 U.S.C 2 It specifically prohibits a person from "willfully caus[ing] an act to be done which if they are indirectly perform;

6) By him or another would be an offense against the United States may be punished as a principal to such offense, and they committed serious violation in conjunction with *Pinkerton* liability;

7) That is one of the injuries or damages was foreseeable consequences by the officials by anticipating in retaliation of those who might relief's in removal proceeding,, and, and we finally ask the courts

i)  To evaluate the evidence on the records if traffic violation should have excluded him to public ceremony that his satisfactory completion of all of the other requirements for naturalization created a liberty;

ii) Of interest in citizenship that cannot be undermined by something that was the result of the Government's own arbitrary action  Indeed, to the extent that the case-by-case approach results of predictable;

8) On or about August 23, 2017, after the plaintiff realized that his lawyer was infective he filed a form N-336, which ["**Mr. Stanley W. Crocket**"] as the Director of the ("USCIS") at New Orleans claimed;

a) The various stipulations not really applicable to this case; he claimed that the plaintiff did not provided enough evidence, or new facts to provide in the reopening the procedures supporting;

b) By affidavits  or other evidentiary material, and reopening based on ineffective assistance of counsel, a movant must comply with certain procedural requirements that was caused prejudice;

c) Or other documentary evidence, and he said that you did not established that the decision was incorrect on the evidence on the record of  the time of initial decisions under section 103.5 (a) 2) and (b)

d) Those allegation by the officials is certainly in contradiction with the evidence on the record, here his N-336 rejection was not improper filed under section 336.2 (c) (i)-(ii), neither the agency officials;

e) They have not provided any other reason for his pretextual contention by causing the plaintiff to be in illegal detention because of his classification or dangerous to the public interest and on that issue;

f) Neither he denial if whether or not his traffic violation met the standard for section 101 (f) of the ("INA"), and those allegations are evidence to support that the plaintiff is being framed or for questioning;

9) These courts must ask them to justify their arbitrary action or without discriminatory intent is sufficient to demonstrate an equal protection violation occurred *in this case* based on those statistics alone;

a) To that extent we ask if this court must ask the ("USCIS") to evaluate the evidence provided based upon his traffic violation that was handed the time while in the interview by the agency employee;

b) Because of that the agency still have not provide what type,or kind of evidence they are looking for that will be contrary with the evidence provided for consideration by compelling factor to inform;

5) That is certainly met the requirement for reopening and motion for reconsideration, and motion for *sua sponte* reopening of his [" ___**removal proceedings**___ "] for the various alleged constitutional claims;

6) Another word, [" ___**Mr. Croket**___ "] implicated in the misleading practice against African for the purpose to protect his co-workers negligence misconducts, which they should have known the effect decision;

7) of the hostile classification by the ("INA") while in the agencies custody in danger theory violated his substantive due process rights and he has demonstrating  that he was deprived of a fair process;

a) That is for judicial officials to correct their [" ___**Docket statements**___ "], including [" ___**Demanding**___ "] such as additional funding, or viable contracts, or $ 60, 000, 000, 000 billion dollars for hiring;

[" ___**Rule 60 - Relief from a Judgment or Order**___ "]

> *CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS.*
> *The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.*

b) As such being the cases, the courts are in violation of the rules imposed by congressional intent, ("NIRTA"), at [" ___**16-21; 32-40**___ "], or as scope of 1983, or to adopt the reading of the ambiguities;

## MASS DEPORTATION PROHIBITION ACT (MDPA)

**II**.Moreover, the rationale that underlies the Court's rule suggests a principle -- jury determination of all sentencing-related facts -- that, unless restricted, threatens the workability of every criminal justice system (if applied to judges) or threatens efforts to make those systems more uniformly;

1) On his case [ 20-CV-02197] within this ["***Motion for Article Standing By writ of Certiorari and for enforcing Immigration Second Chance Act"***] (IRSCA) for National relief by the fist step Act;

2) The construing of this allegations on these motions are part of the plaintiff writ of his habeas corpus as more expansive law provides for litigation by placing officials in a position to communicate;

3) The functioning system for solving disputes, and  directly about conflicts that must  arise during discovery, thus enabling them to promote a reduction in those conflicts among the agencies for clarification;

4) As they are related for consideration, as it if whether the above statutes extent to the scope of the liability against the defendants for the violation of the given norm that are applicable in the circumstances;

5) Of course they are being sue for failure to train their employees and failure to consider the applicable law that congress had mandated them to follow in proving that their unlawful status was known;

6) By the governments or the defendants if they are private actors, such as their partners, or individuals or the agencies being alleged in such extensive conspiracy thought at least 2011 by his conviction;

7) They may not established or create a defense for their action that that must be invalided that is further , would have consequences , or rendered the litigations more burdensome for everyone;

8) To get involved or every defendants across the country, if not Nations depends on the circumstances of  the intervenors will inducer by having incentive to put forth a theory of validating;

9) Of these claims, or they could come up with myriad of arguments for elimination of ["**extortion**"] and ["**Genocide**"] against family Unity, which are arguable basis upon relief can be granted by laws;

10) That is even Assuming aguendo that the defendants can prove that the public interest is not applicable to [***"Fraud convictions"**]* or [*"**Non-violent Offenders**"*], and for those in the favor plaintiff legality;

11) Of course the allegations must be justified by cases by case basis that is something the courts will agreed with the plaintiff that is because if the allegations are based upon of assumption by the defendants;

12) That is within the (INA) practice, and the plaintiff asks the courts and the defendants will allowed him to proved that assumption against family unity is serious concern for the public by exclusion;

13) Thus, the defendants can not proved by clear and convincing evidence the had committed ["***Serious Crimes***"] nor they can provide any substantial of evidence, but relying on assumption;

a) Of course their duty is invoked within this motion to rebut any findings made by the Guideline Procedural Safeguards for common sense practice [17-CV-00089] by reviewing the ambiguities;

b) As matter of facts if the plaintiff will posed any flight risk or dangerous to the ***communities*** with the same assumption the the loss to the victim was stipulated ["***High Rise***"] by injustice formed;

c) Thus the plaintiff may only attempt to show the disability from the statutes being question we ask the defendant, please do not used the attempt for the purpose of litigation for his classification;

d) To that extent we ask the courts if those claims met the standard for permanent injunctive by vacatur of his conviction because of the defendants actions, and what is more? To prove is claims;

e) If the defendants can prove ["***Inadmissibility***"] for the purpose of punishment in light of the circumstances for additional evidence that the defendants restriction is extended to retaliation by secretive;

f) As additional evidence to support widespread extortion unless they can prove to the contrary of the immigration statute's basic objective, would be obvious and serious problems or are unreasonable;

1) Those claims are factual allegation for excluding him from ["***Adjusting of his Status***"] that is conflicting with the word ["***Permanent***"], and that is because section 245 of the (INA) is questionable;

2) By itself as premature it must declared unconstitutional for adjudicating those with First-Time Offenders (FTO) by demanding to provide corroborating evidence regarding their personal experiences;

3) As such the condition of placing him at Illegal contract is in violation of congress intent as additional evidence that he is a victim of crime of Apartheid the government is rarely able to conducting;

4) From field investigation of matters such as the plaintiff has been suggested, this makes for a system vulnerable to manipulation of security prices in violation of of the Securities Exchange Act of 1934,

5) The standard of proof greater than the preponderance-of-the-evidence standard is required, that Congress intended that Commission disciplinary proceedings , or for their intervention;

a) We are stating that" or within the ["***Instruction of Form I-864***"] a victim of crimes may not need to submitted ["***Form I-864***"], which is a waiver make him exempt from additional illegal restrictions;

b) By the Immigration Judge ("IJ"),and the question for the courts, if whether or nor congress extended to excluded (LPR) in the further restrictions by undue financial burden by right of liability issues;

c) If they are tax payers, at this point the plaintiff should have had classified as his own sponsor in contradicting with the ("IJ") statement on the ["***Transcript***"] as evidence for questioning extort;

1) That is something the immigration Judge (IJ) can not denied if the plaintiff need the assistance of his wife to prove ["***Permanent***"] or they are anticipating in the practice of undue financial burdens;

2) Of injustice, accordingly, If (MDC) is interfering with his legal mail as tax payer to litigate his claims while in their custody or by extended the financial burdens to her financial circumstances;

3) We ask if ["***Mr Shanon Clark***"] should confirm if the plaintiff allegations against them on the commissary of price gauging is rests on the general assumption that the truth is to be determined merely;

4) By the number of witnesses on each side of a controversies, and the courts may have recognized that, while the strength of evidence does not necessarily depend upon the number of witnesses status;

5) That may testify, the number is a legitimate consideration among other things , or his grievances filed as well as if being restricted to filed them should have considered to be spoilation of evidence;

6) If his staff members refused to response grievance, or be a finding of intentional destruction indicating a desire to suppress the truth of the allegation against (MDC) is matter for arguable basis;

7) These courts should have jurisdiction to review his challenged against the (IJ's) denial of his cancellation of removal by allowing the agencies to exposed him extortion should be considered facts;

8) As National reliefs as they are related Matter against [**_Civil Detainee_**], for which any of the defendants across the country can not denied the claims for additional waiver to the proposal laws enabling

a) We ask if  the (BIA) should to exercise its administrative discretion to initiate investigation in the proceeding while inquiring the states official for their performance in the subject matters;

b) That is for the enacting the law in conjunction with the "_Uniform Act_" provides that the governors may demand the return of a person charged with a crime in the state from the executive branch authority;

c) Of any other state by issuing a warrant under seal that should be applicable under ("IRSCA") under the states law is part  of the sole purpose method legitimacy of exercise of constitutional right;

d) Of right against practice of extortion by the states formed by the Union before the courts, and the constitutional dimension of ["**_Extradition_**"] exists only when ["**_Demand_**"] is made by confer jurisdiction;

e) For the surrender of a person in another jurisdiction, of course we must turn to the merits of the controversy for preliminary injunction for his ["**_National Status_**"] by the ["_Uniform Act_"] was drafted;

f) To maintain uniformity between the laws of the several States and those of the federal government, It has been designed to complement the federal law and provide adequate information issues;

g) By excluding  nationals from ["***Mass Deportation Practice***"], and that is something the defendants can not denied that the ("INA") is causing serious injuries to various families for subpoena power;

h) By the federal and state law to enable government at all levels to control more effectively, or abuse of process, or  problem within the ("INA"),thus the courts must evaluate within the laws;

i) Of the records, will showed a pattern or practice of this occurrence. In light of this finding or investigation by the officials for their performance required the courts to compel them as the first step;

j) For mitigating Degrading treatment within the privatization scheme is matter of facts or the proximate cause of the crimes of apartheid, and it is the duty of the plaintiff now for questioning;

1) Those matters to the ["***National Conference of Commissioners on Uniform State Laws***"] approved his claims by its intervention, but if  (ICE) officials now is interfering with the public interest;

2) Its certainly not congress intent to allow (ICE) or (MDC) to restrict to litigate his claims that will benefits public interest, in particular where [ "***U.S Nationals***"] are being detained, remove illegally;

3) Those questions are presenting to the nation, if whether or not the plaintiff can prevail those claims with the result that a deferred adjudication by congress' intent to promote uniformity by of State laws;

a) As this is a state law claim, the first question to be resolved is: what state law should be applied? After performing a choice-of-law analysis would select diverse laws  states, uniformly by adjudicating;

b) Of his claims  that the analysis would actually favor applying by majority opinion is to determine whether an actual conflict exists between the substantive laws of the interested to be interne by rights;

c) Thus, there is an actual conflict in these cases are substantial, and what is more for the courts to discern the ["***Ambiguities***"]  in deportation statutes in the plaintiff's favor against mass deportation issues;

d) For the foregoing reasons the court must question the defendants to show cause in all claims and is because they are liable by the doctrine of ["***Res Ipsa Loquitur'***] applies, that is, where to inform negligent;

## <u>NATIONAL TREATMENT CHOICE ACT ("NTCA")</u>

**III**.The Ex Post Facto Clause, the Contract Clause, and the Fifth Amendment's Due Process Clause, retrospective application of a law would collide with the doctrine when such application would take away or impair vested rights acquired under existing laws, or create a new obligation to, impose new duty;

1) By the defendants, with that is to  attach a new disability, in respect to transactions or considerations already past within the new proposal law as issuance against family unity by the legal provisions;

2) On  his  case  [20-CV-00226]  ["***<u>Motions for Article III Standing and for a Writ of Certiorari and the Prohibition Excessive Scheme Act</u>***"] (PEMSA) as issuance to question the federal officials;

3) Thus, the states officials are  unquestionably to retain a significant measure for National Status Authority to the extend the rights of (LPR) is within congress intent and states constitutional for certain rights;

4) The other question is whether the agencies provide ["***Deportable Aliens***"] to state laws while in their custody that is suspicious  that is because the absence of corroboration in general of the particularity;

5) That is evidence that the defendants are "*withheld evidence*", or as additional  restriction unable them to rehabilitate testimony that has already been called into question by the controversy allegations of rights;

a) As such the plaintiff is asking for justification ["**8 C.F.R. 329.2 or  8 U.S.C. 1440**"] as matters of right  within the ["*Union*"] against federal bureaucracy can effectively overrule a judicial illegal decisions;

b) In light of the Supreme Court's intervening decision in <u>*Moncrieffe v. Holder*</u>, 569 U.S. , 133 S. Ct. 1678, 185 L. Ed. 2d 727 (2013), and he was *prima facie* eligible for naturalization on a *nunc pro tunc* basis;

c) Thus, Castillo asked for the BIA to remand his case to the (IJ) for further consideration in light of <u>*Moncrieffe*</u> as evidence that the (BIA) is promoting ["**<u>Bureaucracy</u>**"] is matter of fact that can be arguable;

d) Moreover, the records  will indicated that the agencies conspiracy is fraudulent if they are included ["**<u>U.S National</u>**"] in removal procedures, regardless of the evidence from the words inferiority matters;

e) Of course we are referring with the word ["***Alien"***] that  if the word was legally codify in the (INA) impartiality to conducts by the agencies in removal proceeding for compelling them is Nationwide;

f) Thus, congress intent is clear within this allegation for further question section 101 (a) (42) of the (INA), and the defendants knowing these facts that be proving as factual allegation for litigating facts;

g) From the ["***Ambiguities***"] that is because the courts claimed that the plaintiff has not stated facts upon relief can be granted, and they should have know congress intent in light of the circumstances;

1) On or about March 4, 2019 the plaintiff filed  to his case[ *19-CV-00890-UNA*], Entitle, ["***Motion for evaluating Patriotism Value Act***"] (VEPA) , as such for extended choice law into the proposal laws;

2) That is the inquiring within the statutes in question as part of the controversy for such declaration that ["***National Status***"] is entitlement of certain right and privileges for the enforcement rights;

3) By the states officials and because the plaintiff is a [*"**U.S National**"*] the duty of the federal officials is for mitigating discriminatory against African within the administrative records by the challenged;

4) Of course as additional evidence that the defendants must be liable for the conspiracy claims by act of ["**Genocide**"],  Under _Pinkerton v. United States_, that is they  may be held liable for the substantive;

5) Of the offense committed by a co-conspirator as long as the offense occurred within the course of the conspiracy, was within the scope of the agreement, and could reasonably have been foreseen claims;

6) As a necessary or natural consequence of the unlawful agreement caused by the defendants "**Nationwide"**] by failure to promulgated laws within the states and federal practice is into the question;

7) If we are taking  the evidence in the light most favorable to the the plaintiff, as we must, find, it sufficient evidence  to the  failure by the defendants promote privatization scheme that is very complexity;

8) Of situations presenting to the courts within the ["***administrative records***"], and by compelling the agencies for substantial evidence, a highly deferential standard against bureaucracy practice issues;

a) Additionally, for the courts to compel the record in control by ["***Mr. Michel Pompeo***"] for releasing his ["***Promissory Oath***"] of previously renounced his ["***Nationality of Haiti***"] by objected violations;

b) The allegations by the (IJ) on his ["***Transcript***"] that by itself contains the various stipulations against Congressional intent, or injustice by immigration judge or (BIA) by lack of reasoning issues;

c) Thus, congress intent has declared is purposed within the statutes and the evidence presenting to the courts or for classified the defendants as dangerous individuals if they have contracted laws;

d) If they could have had contracted with privatization ["***Nationwide***"] for a claims the courts must be reviewed de novo , and for the courts must gives deference to the intellect's interpretation of the regulations;

i) They indented to ["***Intimidated***"] or ["***Coerce***"] by by the word ["***Alien***"] applying secretively term of art by their regulations and the statutes by the illegal practice for the objective by enforcing;

ii) Of the conspiracy being alleged, and their conducts primarily within the Territorial jurisdiction by each of the defendants of the country if not International that is very premature for evaluation factors;

iii) Additionally to that " the plaintiff has proving that the (USCIS) enforcement of Federal Immigration law or causation in fact i.e., that the defendant's conduct did in fact cause the plaintiff's injuries alleged;

iv) The plain meaning of ["**_Lasting_**"] is within the contracts clause of the constitution and the simple inquiry is, whether by that instrument it was taken from the states, and granted to congress for such context;

v) For if it were not, it yet remains with them, as such being the case the plaintiff suffered from actual injuries to his patriotism value as a ["**_U. S National_**"] and the evidence for promoting additional Status;

vi) By demonstrating that his ["**_Traffic Violation_**"] can not it itself breach the contract between the states or even the United States those are facts form the evidence by his commitment to united  by law;

vii) Thus congress intent in light of the circumstances presenting required investigation by the various agencies against ["**_Extortion and Genocide_**"] is proving by the plaintiff for arguable basis in law or in facts;

viii) Of course how many poor individuals that might suffered by mass deportation by the same conducts or pattern of practice by the defendants actions, are if the (BIA) has no jurisdiction to entertain rights;

ix) They are anticipating the challenged individual that has no training in the laws, or by for the sole purpose of the same financial gain, and those claims have been recognized by many of the defendants actions;

x) For the responsibility conferred on the several agencies that are part of the controversy, or involved a broad of grant of authority and in conformance with the procedural requirements imposed by congress;

1) Thus, unlike in the usual *Chevron* case, where ambiguity derives from the fact that the text, does  speak with sufficient specificity to the question at issues, the plurality will argue of the matter certainty to rights;

2) The ambiguity can only arise if congress has spoken clearly on the issue by  understanding the kind of conflict that can make deference appropriate to an agency's decision to override unambiguous;

3) They are within the statutory text, consider the provisions at issues for the courts to consider those claims  In that circumstance, we found it appropriate to defer to the agency's choice must give way;

i) For the defendants performance to reconcile the facts and the conflicts being alleges or the statutes or for a claim for negligence per se, and for mitigating the practice of manipulation by privatization;

ii) By using human life as an object for their unjust enrichment arising from the contract as a result of the the plaintiff injuries, and this differential approach can be proving by circumstances of the evidence;

iii) Where, as here the defendants are within each states that the plaintiff filed his cases that reflecting their failure to act is another subject matters for initiating investigation or for genuine issues

iv) Of material fact" as to the plaintiff's nationality is presenting as to compare to the evidence in each states, or even if the plaintiff could not prevail his claim for ambiguities within the unjust classifications;

v) Of course the complexity of the cases required resources to litigate his claims, and of course they have control of all resources, and the issues for excessive overriding concerns to the public interest as facts;

vi) That will required the states official to intervene with congress by enforcing the choice law provision, that is because some reasonable relationship with the states in the union had specified for questioning;

vii) They should have had enforced their own policies against mass deportation which they can not denied those claims for debating facts within the the (INA) that is because they are very negligence;

viii) At this point of the controversy, or [Dkt, 1] is clear and settle on his face that the defendants misconduct upheld absence showing the contrary to the legitimate questions that are very premature;

ix) What is the plaintiff is suggesting ? to the courts that his speech required amending by itself in conjunction with all of the motions filed, but litigating such complex cases in 3 hours daily is supporting;

x) For his First Amendment claim, or an important issues to evaluate the damages caused by its violation of the foregoing provisions, and they shall likewise be responsible for the acts of breach of duty;

xi) By illegal contracts who may belong to the same objective of the conspiracy being alleged, and to that extent the exclusion against (LPR) and ["**_U.S National_**"] within the (INA) is imposing illegal punishment;

xii) On the same basis of the injuries, that is because the clear proof is established by the plaintiff ["**_Movement_**"] and his ["**_Invention_**"] that is being withheld by (BSFF) is another question for intervention;

4) Moreover, the clear proof will surface his claims or could suffice to confine the rationale adopted by the majority, and the cases which often comes to mind when one tests by distinction of the ambiguities;

a) Thus, the legislative record by itself is sufficient as evidence for such declaration that the (INA) is ["*unconstitutionally vague*"] or for the classification of the statutes in question as a bill of attainder;

b) The evidence on on the records are overwhelmingly as a clear legislature intent to punish is relevant to the question whether the statutes are punitive under the double Jeopardy Clause against certain offenders;

c) Under this approach a ["***Contractual***"], or choice of law prevision will be enforced even absence of showing the violation by the defendants actions or inaction or their intervening cause on merits of claims;

d) As a matter of law for proximate cause by Enacting (UNCA) must be applied as public policy doctrine and should be consider ["***National Reliefs***""] by the courts to determine by applying subjects;

e) From the law should applies that is because it is the final public interest factors to be considered, or it is the interest by having the issues of the laws deciding by the courts against the family unity;

1) Thus the question of ["***Family Unity***"] by itself is a controversy involved in challenging the statutes involved, as such under the application states laws or for enforcing ["*National Status*"] claim is arguable;

2) It is subject to be applied within the choice law analysis when determined the contracts clause of the constitution that is being question to adjudicating against mass deportation is matter for justification;

3) To illustrate the differences , by initiating contract laws, within the (INA) for the courts or to allow the plaintiff to question intervenors and look the laws of each states by the defendants where resided;

4) That is the scope of the the plaintiff right that is being deprived and the defendants will not have no gut to response that if those cases within those controversy can be adjudicated by the ambiguities issues;

5) For the enabling of ["***U.S Standard***"] or ["***National Status***"], of course it also should be applied as the plaintiff right of ["***Treatment***"] against the agencies classification scheme or for their notice to expertise;

6) That is being challenged for definitely resolved ("BOP") P.S. 5100.08, Chapter 5, p. 8. DHS represents that the PSF designation was in place before the immigration detainee was issued that was designated;

7) Those issues, at issues or the likelihood for enacting the laws will applied to benefits ['***Lawful Permanent Resident***'] (LPR); ["***U.S Citizen***"] ; ["***U.S National***"] and ["***National Status***"] to distinct rights;

a) That is because they are not similarly situated in the circumstances presenting will be applicable to benefits the plaintiff within any of the those relied is intent to seek by mitigating the alleged apartheid;

b) Thus the defendants now must identified the circumstances presenting if they are not similarly situated in the case by case basis ,and their decisions should be based on the totality of the special situations;

c) With the goal of conforming to ("ICE") enforcement priorities, of course they should not further applied term or word such as ["***Deportable Alien***"] will be weighted against the (INA) for discriminatory;

d) The agency's civil immigration enforcement priorities must be considered within  ["*22 U.S.C 50001 and 8 U.S.C 1227*"] If accepted, the arguments would give the executive precedent's transitory claims;

e) Of the power to invalidate the statutes being questioned that do not meet with its approval for enacting the law that imposing punishment is matter of law or arguable basis for the defendants to response facts;

8) Thus the extent the courts are challenging plaintiff [Dkt, 1] and the doctrine of conspiracy is applicable is required the defendant knowledge of the wrongdoing, or depriving the plaintiff of certain rights;

a) Because the plaintiff is asking if the states and federal official across the country can denied the claims, did not know the existence of the violation, if not then that is another issues for challenge status;

b) From their performance, and the plaintiff is addressing that to the courts as an allegation for rebut the violation of rule 8, and we should not go back with the same allegations that arguable against injustice;

c) The question for the courts, if whether or not the plaintiff has met the standard " Fed. R. Civ. P. 8(a)(2), generally requires only a plausible 'short and plain' statement of the plaintiff's claim for litigating facts;

d) We ask the courts which one of the (Agencies) officials might initiating investigation on the claims across the country, if the ["***Violated Civil***"] requirement by violated civil detainee rights by alleged factors;

e) Those claims appears to be arguable for invoking congress by questioning them to enact (PELCA) against retaliation practice by the defendants, or the regulations that he is being challenged claims;

## FREEDOM EDUCATIVE LIBRARY ACT ("FELA")

**IV**.The review of such a decision is claimed to violate some other source of constitutional obligation such as the free-speech clause of the First Amendment is the proper business of the federal judiciary,which would be operating with the guidance what might be thought implicit in idea of arbitrary;

1) By the governmental action in this case [20-CV00136-SMR-], ["***Motion for controversy within reason by congress intent by right Information to litigate the Ants library Act***"] (TALA) for litigating;

2) These courts must held that the plaintiff has satisfied the familiar four factors for preliminary injunction standard with respect of his claims under the (APA), that the restriction is arbitrary actions;

3) Of course they are capricious or abuse of discretion or otherwise not in accordance with the law for the sole purpose to promote depression or  extortion and mass deportation is criminal intent to litigate;

4) The agencies must response the continuation of his detention or as a victim of crimes that is one of the preliminary factors as a matter of facts of the likelihood of success of the merits for controversies;

a) By the merits of the allegations on each of the above pending motions that is proving that ["Dkt, 1"] is certainly arguable, and he had suffered legal wrong by the defendants failure to act in good faith;

b) On or about Sept, 20 2019 the plaintiff send the requests to the program department of ("PDC") by requesting about the the directory and legal book for legal research material by multiple requests;

c) So that he could challenged the (INA), and the librarian claimed that is not required because they said that they had provided resources for immigration cases to litigate unreasonable claims by legality;

d) They had failed to recognized of his cases that are related matter for his criminal conviction, or they are intentionally excluded ["***Deportable Alien***"] to certain courts rules so that can them wrong;

e) According to the librarian" who is ["***Mr.Jhon Does***"] if you have the courts names that you need ["**I**"] can provide you those addressees however I can not provided the senators for their intervene rights;

i) Such as statement must give the defendant "fair notice" of the basis for [the plaintiff'] claims by failure to provide resources as a ["***Rights to Petition***"], he further stated that we have jurisdiction claim;

ii) For the fifth circuit court of appeals, as the remainder of your requests, you will need to obtain those from the outsource of the facility, that is something the plaintiff had never heard by any contractors;

iii) He claimed that we have discussed this matter, and if you need name of the courts, will provide, and that is something-he has never done, and the plaintiff ask him to provide at least by the federal courts;

iv) Of the most important to prove his cases, or the merit being being challenged, which he need to invoke nationwide jurisdiction, but being restricted by ("MDC") undue financial burdens by the restrictions;

1) Moreover, he claimed that he would not broadly search for every agencies, but failed to contact ["***Amazon***"] for purchasing books that will help him not to broadly establishment of control theory;

2) Thus, the (ICE) officials can not denied the claims that any facility they contracted have inadequate law library is matter of facts by itself for the courts question the defendants mass deportation issues;

3) Thus the plaintiff now is question the federal courts for their review sua sponte, as well as for challenging the court on his case [*18-CV-03039-SAC*] according to the court if plaintiff also claim nationalist;

4) He has no access to a law library, copies, and other legal materials, and has been denied Priority Envelope to serve the defendants [Dkt, 39] he does not state a valid claim for denial of access to courts;

5) The right to access to courts neither requires "unlimited access" to a law library" nor allows inmates "the right to select the method by which access will be provided, and we are questioning facts;

i) If the same treatment  should be applicable to ["***Civil Detainees***"], and by asking the courts if _Penrod v. Zavaras_, 94 F.3d 1399, 1403 (10th Cir. 1996) was similarly situated for such restrictions issues;

ii) According to the court "His "ample filings [in these Courts] believe any argument that he is being denied meaningful access to the courts, but claimed that he failed to state claims upon relief can be granted;

iii) Thus, _Rudnick v. Raemisch_, 731 F. App'x 753, 755 (10th Cir. 2018) was not being retaliated by secretive practice or criminal misconduct by privatization, and the courts has not provided similarity;

iv) Of any evidence on the subject matters that is because the ["***Administrative Record***"]  is the sole  piece of the evidence that will prove that the defendants were conspiring against him by adversary actions;

v) Moreover, the plaintiff has shown that "the denial of legal resources hindered [his] efforts to pursue a ["***Non-Frivolous***"] claims by the ("MDC") which is the similar restriction he has confronting;

vi) As such his requests for relief should not be denied, and neither he had failed to state any claims upon relief can be granted to litigate controversy cases by compelling, or by adding defendants actions;

vii) For his claims at this point, the case must be reopened, without filling any motions for leave, or to amend with a proposed Amended Complaint attached, or Unless review the claims for controversy issues;

viii) That need to be adjudicating and until all the the cases has been filed, and these motion for relief from judgment is appropriate in such matters and for the enactment of the new proposed laws;

6) Of course he has demonstrate that the harms he has been suffered is so systemic or pervasive as to amount to a pattern or practice by the defendants restriction by means of secretive operation crimes;

a) On or about Sept, 21 2019 the plaintiff sent another request for the senators in every states so that he could start ["***Working***"] on his complaint for amending the motions or need to correct wrongness;

b) He quoted that your are welcome to received any information from the outsources of the this facility, which in contradicting with the (NCDHM) for questioning the agencies actions by way to injunctive;

c) By the subject Matters and that appear by the civilians officials claimed that the United States has too many states, senators that allowing the plaintiff to interfering with his work that contributed facts;

d) If the plaintiff must be punished because of the United States or the Union formation, and we ask if because so many of senators have failed to regulate the laws or because of his national origin;

e) Of course the senators will be not disagree with (PDC) in that matters or if whether or not tax payer should be remove from contracted facilities, or to be negligently or being restrict deportable aliens;

f) That is because ("ICE") and ("PDC") can not provide any policy that should be restricted plaintiff to litigate his claims against ("BIA") that its intention is to promoting "Fraudulent intent" by the records;

1) If the ("BIA") as well as the agencies can justified their actions and all claims within the controversy is applying against the defendants collectively by depriving the plaintiff of his right within reasoning;

2) If their partners for the allegation of [“***Criminal Enterprise***”] is being restricted him to proved his claims, or the restrictions are the proximate cause of the various injuries on his claims for jurisdictions;

3) The filling of his cases because of lack of resources is a subject matters that must be resolved even if the plaintiff is release from detention today,or for permanent injunction against various predators;

4) That is because the various detainees can not pursue their claims to the courts if the law library has no access to criminal laws or to challenged their conviction that is serious allegation for extortion;

5) As additional evidence that are part of the same objective of the conspiracy, if any grievance filed, accordingly by (“ICE”) officials and their [“***partners***”] claimed those allegations were non-frivolous;

6) Thus the matters of [“***Frivolousness***”] is subject matters for the courts not (ICE) or officials to predict plaintiff claims by excluding him grievance procedures or as class of one is questionable claims;

7) That is because of his classification or his movement or if whether or not the word [“***Alien***”] by itself could have been the proximate cause of his [“***Exclusion***”] by the defendants violation of right;

8) Of rights that he is being label as ["**_Animal_**"] or suspect class is another issues the defendants can not denied unless they can prove the contrary without any pretext violations by punitive of laws;

9) To the extent the plaintiff ask each and all of immigration counsel across the country to justify their actions, or by their official as  ["**_Pattern of Misconducts_**"] or being detained are being exclusively;

10) From certain rights and privileges than those in custody of the ("BOP"), and his allegation for Mass deportation is substantial because the restriction imposed is more effective for criminal detainees;

11) That is if the constitution will allowed them to imposed restriction without justification is being question for the agencies in those related matters [17-CV-03194-SAC] for additional informal claims;

12) While the plaintiff is questioning defendants in the matters to define the word ["**_Excessive_**"], as pattern of practices, or if whether by the private institutions and (BOP) officials are questionable;

13) If the defendants cooperated in good faith, or fairly by responded the motions filed, or for their ["**_Performance_**"] as ["**_Duty_**"] imposed by congress will ["**_Understand_**"] the frustration by the violations;

14) As the force behind the constitutional violation being alleged, and those claims are subject for jurisdiction reviewed by allowing the ("USA"), or Attorney to intervene across the country to mitigate;

15) Of the enterprise that being alleged along with the evidence for their intervention because the crimes is being restrictive and only a witness that can established the evidence for their expertise;

16) If (ICE) official and their partners are conspired to transferred him (JCCC) without any caused or forcible transferred or as evidence for criminal intent that is required justification by the defendants;

17) That for the agencies who has the duty against Domestic Terrorism Act (DTA) by referring to the private institution, that is a matters that is arguable for criminalization by legal ratification theory;

18) The evidence will prevail that the ("INA") is in fact must applied less restrictive for the purpose to eliminate depression , impairment of function, and anxiety on this basis for evaluating records by laws;

19)  In light of the frivolous claims by ["***Mr Josua***"] on his removal procedures, which the plaintiff can prove true aggravation violations with clear and convincing of the evidence with attempt of crimes;

## UNIVERSAL GRIEVOUS PROCEDURES ACT ("UGPA")

**C.**To determine whether a single conspiracy or multiple conspiracies have been proven, the court employs the following test: a single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators, furthermore, the evidence must show they should have known;

1) They had reason to know [20-CV-00389], ["***Motion(s) for Congresssional power and Apex Disposition concerns by invoking the detainees Issues Freedom Treatment Act***"] (DIFTA) that their benefits;

2) Of course are  probably dependent upon the success of the entire operation, typically, the inference of an overall agreement is drawn from proof of a single objective or from proof that the key participants;

3) The method of operation remained constant throughout the conspiracy,and they inference that their supervisors had reason to believe that their benefits were dependent upon the success

4) Of the entire venture may be drawn from proof that the co-conspirators knew of each other's participation or actually benefited from the activities of his co-conspirators against his protected rights;

5) If the alleges a single conspiracy is sufficient, then the evidence at trial will establishes additional facts, that there were multiple related conspiracies, there is sufficient evidence to support the claims

a) For crimes their convictions, in sum the special counsel, is an inferior officer in such can be appointed by the (DOJ) or the head of the Justice, in these cases the acting attorney general for his right authority;

b) That is within the law Under Article II, of the Constitutional mandated by congress, or has vested the power to conduct criminal investigation on behalf of the U.S Government officials illegal conducts;

1) For their suppression of Favorable Evidence and withholding of discovery, at this point congress has authorized to assist by discharging those duty when its necessary or in particular presenting issues;

2) As the Special Counsel's appointment does not deprive the Attorney General of any authority to "conduct" or "supervise all litigations to which the United States, an agency, or officer thereof is a party;

3) They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws to be faithfully executed rights;

a) Under U.S. Const., Art. II, 3, and 28 U.S.C 516, and for the regard congress enabled the Attorney General commission as special assistant to the Attorney General and authorized them for special assistance;

b) To conduct any kind of legal proceeding, civil or criminal against the Domestic Terrorism actors (DTA) and to include grand jury procedures for the alleged criminal misconducts by the defendants;

1) On or about July, 27, 2019 the Warden At (BSFF) response his grievance without looking the intent of the claims, which the institution is publishing forms that was expired by handled illegally;

2) That were Expired, or the claimed that if the (USCIS)  are in business of providing expired form for the sole purpose to delay immigration benefits, or by acting in such must consider as serious crimes;

3) if there is no officials from the agencies that can verify when required form that were expired by their partners, and they claimed that Form-I-485, and I-601 were expired without justifications;

4) We ask the courts now if the defendant illegal contracts by allowing their partners to provide expired form could possible cause delay in the immigration proceeding as evidence for mass deportation;

a) On or about July 29, 2020 the warden again signed a grievance by failure to consider that the plaintiff is a victim or witness of the criminal activities being alleged or by falsifying in the various formality;

b) That are issues by the Federal overgarment, here the ("BOP") policy stated that legal mail must be handed by the case manager, unless the warden intention was to commit mail fraud that can be proving;

c) By fact supporting this claims the warden did not mentioned if they have a camera for the mail box, when inmate dropped them to review, therefore dropping legal mail was a serious issues by violating rules;

d) As the plaintiff live in ["Unit B"] that is very short for ["***Mrs. Mota***"], who an officer, not the case manage,  is not established security measure against him to handle opened legal mail by retaliative means;

1) The warden did not provided the reason that his legal mail has to be opened, has provided any evidence why? the restrictions was imposed against him was substantial as part of the security objective issues;

2) As quoted by the warden, "in fact legal mail because it sensitive should always be placed in the mail box without no way to track when an individual inserted the mail to the mail or without video footage's;

3) If the warden trying to allege that (BSFF) establishing policy so that they can involved in mail tempering and the evidence to support the claims for supporting the [*"**Mail Fraud**"*] claims is substantial issues;

a) On or about July 31, 2019 the warden failed to response any allegations against them for anticipating criminal activities or violating criminal misconduct by act of retaliation is a subject matter to review;

b) If the plaintiff grievances was based upon legal material, but whatever the issues of his 15 boxes of legal are evidence for his allegation that both (RCDC) and (BSCC) involved in the attempt of tortured;

i) Here, under the ("INA"), or in this rare cases presenting for the courts  in removal procedures for allowing the plaintiff, and questioning the agencies why the procedures of his form are being delayed;

ii) Therefore, because the warden intention was to withheld evidence of his criminal activism, and with the intent to destroy evidence related to the cases of his immigration right that is serious crimes;

a) The warden did not have no specific reason not to ship his legal properties to his wife as an indigent individual that is mandate by the (BOP) policy as additional evidence to question the criminal conducts;

b) Then we assume that the defendants must answered with more clarification ["21-CV-01919"], or with the basic the evidence on the records, is  clear to support additional fact finding against injustices;

1) Here, this court ["21-CV-03078"], or to questioned illegal transferred, the courts failed to docket additional defendants, or for the conspiracy claims involved states, federal and international defendants by;

2) That is because the courts are trying to protect illegal activities or genocide is the first question, then the second question will be based upon the development process of the litigation after the funding;

a) This case, ["_https://www.politico.com/news/magazine/2021/12/26/black-activists-charge-genocide-united-states-systemic-racism-52604_5"] ["21-CM-0095"], or for additional opinions more than 70 years ago;

b) That is because ["**_The Revolutionist_**"] is accused the defendants to be involved in extensive conspiracy for genocide, or they failed to take human seriously because they are racist by nature as proof;

c) As such being the cases, they are negligence by imposing framework to reckon with their discriminatory intent, for which the defendants must answered the claims within the same reasons by standardizing;

**FAMILY UNION DANGER ACT ("FUDA")**

**I.**The deprivation of the privilege of acquiring citizenship, which a person in permanent residence normally enjoys, is a substantial penalty, and the loss of that opportunity, no less than the loss of citizenship itself, may result in loss of both property and life, or of all that makes life living effectively ;

1) Thus, a statute which attaches[ 20-00925] such a penalty to certain conduct should be construed strictly directing to this ["***Motion(s) for Non-Immigration Material or Mitigating Undue Financial Burden or Resourses by the Ant Freedom Act***"] (TAFA) to avoid further illegal imposition;

2) Of practice which goes beyond  manifest intent of Congress, in light of the circumstances of the cases ["***Aggravation***"] must be declared ["***Punitive***"] in nature and it should be applicable;

3) If a party multiplying the convictions unreasonably and vexatiously, while the plaintiff is alleging that what? reasonable measure or precaution he believes the defendants were deliberate indifference;

4) For failure to implement the ("INA") is a matter of facts, and those allegation in these motions, are sufficient to state a claim against of the defendants for inadequate supervision claim for tacit concerns;

a) On his classification as ["**_Deportable Alien_**"] alternatively, he is alleging that the exposure to the various disciplinary misconduct can be more punitive than the exclusion from the recidivism ;

b) All the time while the plaintiff was in custody of any the institutions or was forcible transferred to the various trade secret, and he has been illegally punished because of his rights grievances process;

c) They will claimed that ["**_Greater weight_**"] if the term "preponderance of the evidence" means simply the greater weight of the evidence, then the courts should applied same legal standard;

i) All in violation of the plaintiff 's due process rights under the prongs of _Wolff_ and in violation of 28 C.F.R. 541.7(e) and (f), while the agencies failed to evaluate the conflict that exist by illegal contracts;

ii) It is disputable that or an importance factor to be consider and the alleged privatization under has used in the disciplinary procedures against the plaintiff or those classifiable as deportable aliens;

iii) As a tool for their profits that can even be justified within his grievances filed and the administrative record across the country for additional subpoena power to justified the claims against enterprises;

1) As an example of the defendants egregious constitutional violation, and we ask the courts if that is one of the reason the defendants refused to release his (FOIA) requests for compelling needs;

2) Under there circumstances the plaintiff is referred to his cases in Kansas, [17-CV-03194-SAC"],if whether or being classified at the private institutions if they are not follow are the proximate causes;

3) Of his injuries in fact, and rule **8** certainly should not applicable if the evidence will prevail that the defendants acted in bad faith, or if whether or the defendants exposed him to criminal activities;

4) We ask the courts if the situations presenting,  if him and his wife or his family should be granted ["***Punitive Damages***"] under the applicable laws, or for the defendants exclusion to community rights;

5) That is because the defendants using the laws as tools to punished the plaintiff for his movement in conjunction with the disciplinary procedures can be proving by the record for evidentiary hearing;

6) Even so he ask if his daughter should be entitle to additional reliefs that is because the plaintiff intention is to challenged the ("MSSA") for excluding them or any girls from laws, or only apply to certain;

a) Under ["***The Tenth Act***"] ("TTA"), or that is part of the plaintiff movement, or by the ["*Union Protection Public Invention Act*"] ( UPPIA) that is presenting to the courts for enforcement power by congress;

b) Of course to pursue suspects of illegal activity that congress has mandated by laws and the constitution to allow the plaintiff the litigate to protect the public against obstruction of Justice by agencies actions;

i) Title 18 of the U.S. Code contains a listing of crimes entitled "obstruction of justice," permitting the court to easily determine the types of conduct Congress intended the phrase to encompass claims;

ii) That is a task outside the Bureau of Immigration Appeals' (BIA) special competence and congressional delegation, while it is very much a part of this Court's competence demand  for litigating concerns;

1) For similarly, the United States Court of Appeals for the federal Circuits should have discussed the meaning of the phrase "relating to in 8 U.S.C.S.1101(a)(43) observing that the phrase expanding crimes;

2) They must not be strictly confined to its narrowest meaning that Congress's use of "relating to" is critical, evidencing an intent to define the listed offenses in their broadest sense against  practices;

3) Indeed, unless the words "relating to" are of no effect, they must be construed to encompass crimes other than those specifically listed in the federal statutes applied against future controlling theory;

a) That is a matter of right proposed to congress when enacted the laws, only in the circumstances presenting on the administrative records applied, specify by his expression from the protected rights;

b) That must be a fundamental rights to litigate cases that will benefits the public, which the plaintiff has over and over identify the parties involved, or to amend his pending complaint by the courts to perform;

1) That is also for placing the cases under their active docket while pending appeals, and to litigate great ideas that the constituency has afforded him regardless of his Nationality that is for agencies actions;

2) As well as that is constitutional rights, as he explained before it is a matter of choice because the defendants have not explained the words" ["***within reason***"] against the policies as applied challenged;

3) That is for the defendants to evaluate the facts or if whether or not the plaintiff does has arguable basis on his claim for ["***Mr. Steven Willborn***"] to release all administrative records from its public offices;

4) As well as for him to inform every other states officials that are not listed in this motions for their performance, and for ["***Mr. Jeffrey Washington***"] to explain in detain from his expertise, if within reasons;

a) Thus, universal criminal jurisdiction necessarily contemplates a significant degree of civil tort recovery as well as to question (ACA) if the policy in question is not unconstitutional in light of facts by cases;

b) Here, Under (DIFTA) required the (ACA) in the process of the ratification stage that their understanding of the definition of the word ["***within reason***"] contained ambiguities in criminal statutes;

c) That was previously as referenced in immigration laws should be construed in the class favor, and the question for the courts, if whether congress is clear to exclude those with great ideas to illegal strikes;

1) That itself is a scheme, if applying the concept of (RICO) in conjunction with (MOCMA), or that is because the laws are conflicting for the purpose to the benefits the defendants widespread control theory;

2) At this point any allegations by the courts or against the plaintiff for frivolous must be compel the administrative records to evaluate ["***untimely***"]; ["***Idle***"] and illegal interference by surprise policies;

3) That is because by applying the concept of ("DIFTA) here, that is the second phrase of the procedures in conjunction with ["Dkt, 1] or before amending the controversy cases that must be filed to compel;

4) As mentioned before required majority opinion on each claims, and to inform the courts that ["*frivolous*"] is not ["**_freedom_**"] and the ["*restriction*"] against the plaintiff who is a civilian by illegal servitude;

i) As additional evidence for ["***slave trade***"], or if legally or illegally detained by the agencies actions those are factors that must be response by the defendants within the same reason mitigate secretive;

ii) They are certainly involved in serious crimes, those claims are very premature, that is because if any of the courts failed to explained how does the plaintiff is frivolous, if they are not compelling facts;

1) Of course the plaintiff is asking for his ["***freedom***"] against involuntary servitude, and trafficking in persons, those claims required each courts to compel the private industry on their own jurisdictional

2) Under the facts of these cases, even the judicial system must release their management as well as the their administrative records, and biography for each employees of the courts that are part of controversies;

a) Here, if the restriction imposed is based upon his indigent status, regardless if he is currently engaged in protected activities, that is subject to review under the (APA) as matter of law or question of facts;

b) That alone will rebut if the courts still believe that the plaintiff has not stated facts upon reliefs can be granted, and that is something the courts will not disagreed, if the word ["***worthless***"] must read by statutes;

1) That  it is synonym of the word  ["***indigent***"], but also not related to ["***poverty***"], of course as another claims against the (PLRA) for justification or are evidence for exclusion to the trust for damages;

2) As such being the cases the plaintiff is required to have access to the (BOP), Department of Correction, policies and other agencies that are involved in the prison industry for questioning within reasons;

3) That is to say that those laws might interfering with ["***Freedom***"], and that might required the assistance of ["***<u>Mrs. Kristen Hilkey</u>***"], who is as the Board Director of the Colorado state corrections;

4) That is to litigate ideas against suspect class, unless the defendants can justify their actions, if they failed to justify, then that is the end of the matters, and this courts should not allow pretextual claims;

a) Of course their failure to imposed illegal restriction Nationwide, is another issues that the plaintiff is inquiring about for inquiring for additional subpoena power,in light of the circumstances claims to enforce;

b) That is for the states and federal officials across the country to release all of the management in their own states, regardless of the institutions that should included their internal manual practices;

i) We ask the courts if the word ["**_Permanent_**"] should be applied that was codified by congress under the ("INA") should be considered as evidence for ["**_Trust_**"], and for proving if the statutes conflicting;

ii) Those claims are very premature that is because the plaintiff does not have access to the agencies policies to litigate those facts or to prove that the defendants objective is within the commissary funds;

a) Here, if the agencies excluded him to the _Internal revenue Code_ (IRC) as a civilian in custody of (ICE) officials, which needed to litigate certain facts, or as well as for other united states code by intellect;

b) That is to prove that their objective is substantial, if the word ["**_Trust_**"] is define by the mentioned literary Dictionary to set of the structural part of forming a framework, or it is to reliance by rights;

c) If they failed to provide resources while in ["**custody**"], then we are questioning ["**confinement**"]  that is to question the prison industry of the United states that are effecting deportable aliens;

1) Here, the plaintiff is proposes for ratification by law is the ["**_Mass Deportation Prohibtion Act_**"] (MDPA), which the defendants can not denied those claims are effecting family union nationwide;

2) As well as for the defendants to release the administrative records so that the politicians can debating against ["**_Mass Incarceration Prohibition Act_**"] (MIPA) In sum, there is  basis in custom of practice;

iii) It is true that deportable Alien, for his injuries in fact must be consider by the courts, assuming duplicity without deciding the issues, must concluded that any possible harms would be cured the specialist;

a) Of the unanimity instruction and a special jury form, then we ask each fo the defendants, if the word ["**_Alien_**"], could have been the only reason they have no faith on deportable alien for litigating concerns;

b) That is to say the defendants ["**_Attempt_**"]  is evidence discriminatory Intent where there is departure from established policies, and we ask the courts if those allegation are substantial for imposing  trial;

c) Of course the word ["***Attempt***"] is not broad, or in the instant case, it must applied to all the terms of the relevant immigration statute are succinct, clear, and explicit in defining to ratification claims; .

1) That is for the defendants to abolished genocide, then for his release from illegal practices and for evaluate the context from the statutes being challenged by ["**Trust**"] or good faith by permanency;

2) Thus, the plaintiff is asking to be trusted without any further restriction and his motions is filling for release from illegal detention, and to be free from illegality by wrongful allegation by the rights process;

3) That is additional irreparable Harms for invoking the context of ("MOCMA"), which the defendants can not denied for the courts to apply interest for all of the time being restricted by the defendants actions;

4) They collectively or intentionally exposed him to illegal restrictions, and he is asking for controlling interest against each of the institutions that are anticipated in manipulated the stock market illegally;

5) If the defendants position is ["***Unclear***"] in the subject matters, or the violations, then he is asking for ["***Unlimited Damages***"] for each claims, and each cases against each defendants criminal activities;

6) As well as for public interest, if the defendants intent is to file bankruptcy, and they must be prohibited, or they can not sold or trade their company without the plaintiff approval for consider certainty;

d) We ask the courts if the plaintiff is entitle to Equitable Interest, while in the procedures, against the defendants to proposed a contract while these cases are pending at their expenses by additional damages;

1) Of course they are liable for all legal interest for his ["**Ideas**"] that has been restricted for years without justification, or other reliefs will be required after amending the controversial by adding defendants;

2) As the plaintiff explained before to this court[ 20-CV-00348]  failure to grant him relief, or these motions for intervention by ["***Mr. J.Tyler***"] for his performance on this cases without prejudice contrary;

3) To the court allegation, and that is because several courts might have been denied these cases with prejudice, within the same reasoning or challenged for favorable discretion even against the judicial systems;

4) That is for the courts to evaluate the facts findings within their jurisdiction against the defendants corruption scandal involving government officials, and that corruption persists "at all levels of system;

i) We may not excluded that the importance of ["***Mr. Vaugh Arry"***] to even question the courts finding ["***With***"] or ["***Without***"] prejudice that is being challenged under ("NPA") as matter equal protections;

ii) That is for his performance and compelling  stratagem or the defendants deceptive scheme or maneuver to defraud thousands of individuals nationwide by mass incarceration practice for justifications;

a) As well as for ["***Mr. Gary Petters***"] to question the agencies if [ "***Deportable Alien***"] must be declared unconditional in light of the circumstances presenting for entitle to litigate by permanent claims;

b) By the same standard for allowing those in custody of (ICE) or civilians the rights of freedom of speech, freedom of assembly, and freedom of association are "generally respected" for legal protections;

c) If congress is clear, that ["***Civil Detainees***"], are not ["***Prisoners***"], then is no reasons for additional restrictions or unlawful restraint until evidence of violations or attempt to escape is to validated coercion;

1) Those issues are facts for the courts to evaluate the circumstances presenting by concessional intent under the ("PLRA") that is arguable basis and to question ("MDC") officials for their own response;

2) If  it is what is it ? then the subject matters is the end of the matter, that is a quotation by ["***Mrs, Jane does Baker***,"], or a defendant at the District court of Oklahoma should explained her statement as facts;

3) Of course the District court [20-CV-00111] will agreed with the plaintiff that the restrictions by the agencies in contracts with the privatization scheme is certainly in violation of his freedom to speak;

4) Those claims are certainly not frivolous that is because the agencies policies that is so restricting allowing its partners to interfere with his freedom of choice to question for his nationality claims;

d) At the same time we are questioning ["***Mr. Robert Hardidge***"] if (MDC) is above the law, if his institution is interfering his invention or restricted him because of his National origin to freedom of expression;

1) It is of course the duty of ["***Mr. Herdrige***"] to questioned ["***Mrs.Baker***"] and ["***Mrs.Gaudeaut***"], and by releasing their performance record for appropriation before alleged additional claims;

2) As such for ["***Mrs. Army C Hoogarsom***"] as the ("BIA") officials duty is invoked within the same reasons to evaluate  ["*Obstruction of Justice*"] under the federal law for purposes of relevant  conducts;

3) By relating to examination of ["**_Mr. Edward Grant_**"] for his legal decision with the records provided by the agencies for ["**_Non-Aggravated Felony_**"] is substantial as additional evidence for facts;

i) According to N.Y. Penal Law under Section, 215.40 (2) (2009) has been interpreted by New York courts to apply regardless of whether the conduct interfered with a judicial proceeding by investigation;

ii) That it is pertains to obstruction of judicial proceedings, in conjunction with 18 U.S.C 1503 this distinction does not defeat the United States Court of Appeals for the Third Circuit's "relating analysis;

a) That is if even, or it could defeat a traditional categorical matching of the crime of conviction with a generic federal offense to question ["**_Mr. Levi Joshua_**"] involvement in the alleged criminals;

b) If the plaintiff can prevail under (UCCA) that is the end of the matters by mitigating Extortion and abused of practice by the defendants tortuous and kidnapping strategy in illegal removal procedures;

iii) Of course if the plaintiff is right, then a question of facts or law is presenting for controversy allegations against ["**_Terrorism_**"] that is if the defendants are clearly defined by the same reasoning;

1) From the (INA) for questioning favorable discretion in the subject matters, and the same concept must applied against the defendants for the conspiracy claims that is because the defendants exposed;

2) By misinterpreting laws and policies and for the same purpose they are established controlling theory against civil detainee is subject to review de novo for enabling the rights of enforcement issues;

3) As well as for each of the private prisons, states and federal officials across the country must release the record related to the claims being alleged are required before amending against systematic attack;

4) of course, the damages against each defendants are ['***Unlimited Amount***"] that is their failure to provide ["***Unlimited Stamps***"] against an indigent individuals for the irreparable harms by illegal coercion;

5) They are interfering with publication of Great ideas presenting by his speech under ["Dkt, 1"] and some of the courts might not received that motions after the facts that (MDC) imposed their illegal objective;

a) Thus, it is appropriate in this cases for his entitlement for additional relief by invoking [***Mr. Christopher Way***] performance, that is congress intent when the evidence for serious criminal activities alleged;

b) For him to evaluate the evidence for relevant conduct against his movement or protected rights is threatened], it should have been the rule from the beginning by courts will be alert to adjust their remedies;

c) As well as for ["***Mr Ronald Washington***"] so as to grant the necessary reliefs, to serve the courts all of the pending motions to litigate regardless in custody or release from illegal future adversary actions;

d) They should be liable for all fees and printing, and all motions filed at their expenses, because of the various constitutional violations alleges, they have been violated for years regardless if he is civil detainee;

1) If the courts would said that the plaintiff has not stated statutes to invoke the defendants duty, then that will make the courts duty for further investigation by the defendants of objective effect for enabling;

2) To permanent injunction, that is because Title 28 of the United States Code is being restricted by the defendants actions in their law library across the country, or while at their custody for removal process;

3) They certainly liable to serve all additional defendants regardless if the plaintiff is indigent or not and for general damages in each claims that are part of the controversy against innocent family;

i) At the preliminary stage of the litigation, the plaintiff is about to mail additional motions after the courts granted them the reliefs sought, and they have been restricted for years now by relevant conducts;

ii) They are conducts required additional investigation for [*"**Contempt**"*] claims as they are related matter, which the defendants restrictions had cause him injuries claims that are applicable for compelling needs;

1) For the same reasons, the plaintiff is asking for his release in control by the ["***Domestic Terrorism Actors***"] (DTA), or those claims are evidence for activity is shown when a racketeer commits at least;

2) That there is two distinct but related predicate acts, and for compelling the administrative records, and premature, as to invoke one of the executive branch on the subject matters requires expert standard;

3) For them to delegate their power to ["***Mr. Kennen SenHadji***"], and that is because the defendants actions are effecting the interstate commerce before filling complexity claims for agencies actions;

a) Here, if the Fifth Circuit, Under *Clervrrain v.Coraway*, 786 F. App'x 1, 4 (5th Cir 2019), failed to perform its duty in the various cases, then we ask the courts if public opinion is an effective restraint;

b) On possible abuse of judicial power, that is to say that each courts must published his cases as matter for mitigating injustice ,and there are certain circumstances in which a court may close the proceedings;

i) To which a public right of access presumptive attaches, and  public opinion influence decision as matter for evaluate factual allegations against criminal enterprise is presenting with additional evidence;

ii) As such any allegation by the courts that he is being frivolous must be explained by the majority opinion in all cases, and they must be compelled to so in the same additional reliefs by injuries damages;

1) The courts then must directed the clerks to send the plaintiff the publication orders as references , for the plaintiff to quote his cases when filling his motions to other courts or easy access for litigations;

2) Of course for the agencies to explain why a civil detainee should not have access to the ["***Internet***"] to litigate additional facts, if the plaintiff is not convicted of crimes for additional claims by enabling;

3) As well the practice to go to law library ["***Overnight***"] is effecting his well being for permanent injunction against (MDC) until they have separate location for law library and legal courts procedures;

4) The defendants illegal contract with the (MDC) is interfering with his well being as well as causing him Anxiety and emotional distress for additional damages as required by laws against barbaric condition;

5) If the plaintiff who is litigate his claims required to sleep properly, but the restriction is effective so that the defendants intention might caused even brain damages caused by the defendants actions;

6) Moreover, the pattern of the illegal restriction results is a characteristic picture of organic brain damage and the changed circumstances and his incapacity prohibit removal for release from illegal detention;

a) It appears that the plaintiff motions express his character, that is from his ["**_Family Union_**"] or from the love of his wife and his children so that must litigate in their behalf against crimes of apartheid;

b) That his wife and his children have been suffered for years by the defendants actions against fatherhood, parental role, and we ask for permanent injunction against the defendants mass deportations;

c) That is the right time for National performance against Criminal Enterprise, which the defendants can not denied  when evaluate the evidence, and direct evidence is unnecessarily for additional reliefs;

d) Those reliefs can be based upon the various pending motions, that have been restricted for years because the defendants refused to provide him stamps to litigate facts against widespread illegal controlling;

i) At this point, the plaintiff alleged that the only Doctor that can resolved the issues against future Oppression, and his Name his ["***Mr. Charles Breyer***"] for initiating investigation by enforcing guidance;

ii) This guideline inquired will justified the agencies actions against Good Character Practice (GCP) that is because the evaluation of ["***Character***"] is an education matters, for states officials opinions;

iii) As well as for ["***Mr Michael O' Relly***"] to initiating the procedures for (SERCA) or the world ideas for the sole purpose for electronic records, or Character Records against the agencies arbitration actions;

1) As mentioned before, if the defendants claimed ["***Security Measures***"] that can not be based on pretextual allegations, [*"**Assumptions**"*], and as noted in *,* the (FBI) "*criminal background check is a vital piece;*

2) Of information and absent such information should not denied traffic violation for public ceremony, if the defendants do have any more assumption *See* 8 C.F.R. 335.2(b) is relevant to the substantial issues;

3) For additional justification inquiry, or by declaration the above regulation is illegal per se since acts were performed under defendant's instruction by someone who was unquestionably knowing participant;

a) Here, if ["***Aggravated felony***"] and ["***Good Moral Character***"] are based upon Assumption, therefore both statutes must declared ["***Illegal Per SE***"] in light of the circumstance to enforce certainly;

b) We ask the defendants if congress is clear within the request against crimes of apartheid by separating family with the same concept of assumption, to even classifying permanent resident to be flight risk;

c) Of course the purpose of these cases is to abolished ["***Genocide***"] by the defendants practice, and to guideline enhancements based on implicit assumption that he was responsible for conducts alleged;

1) That is something for ["***Mr.Lau A Peter***"] will be in the interest of the plaintiff to protect family against secretive crimes, and the interest of the public is also invoked within the same reasoning power;

2) For litigating at the government expenses is matter of facts by applying the same concept for illegal per se against the policy in question under ("DIFTA"), and they are involved in crimes against humanity;

d) We are questioning ["**_Mr.Thurgood Marshall_**"] if the allegations against the private institutions are not substantial by releasing all of his management in each states of the country for additional claims;

1) Those required should be applicable to all private prisons in contracts with the agencies to release their managements, and operation for alleged controversy concerns for mitigating secretive crimes;

2) That is because the defendants are violated the interstate law, or we are challenging the _Interstate Agreement on Detainers Act_ (IADA) is to facilitate the defendants enterprise of charges by jurisdictions;

3) If they have  accused of Mass  incarcerated  by another jurisdiction, the same concept is application against the (IADA) for promoting ["_Racketeering Activities_"], for regulate or promoting by price gauging;

4) We ask if congress must established a new agencies to modernize the prison industry against requirement that enterprise engage in racketeering activity is directed toward specified crimes committed;

5 By persons on behalf of (RICO) enterprise and requires government to prove not only that activities engaged in by enterprise affect ["**_Interstate Commerce_**"], for the courts to appoint by three judges panels;

6) That is for ["**_Mr. Bill Breetz_**"] to intervene in the pre-stage of the procedures to question the federal and state officials by initiating the universal laws being proposed as part of the challenged rights;

a) If the courts then still believe that the plaintiff is frivolous, then we are referring to mitigate retaliation, and ["**_Egregious Misconducts_**"] being alleged in these motions against their illegal misconducts;

b) Of course those claims are certainly required the intervention of the several states and federal officials to release all of their prison officials Management for questioning additional egregious criminals;

i) That is because the (INA) is promoting promoting discrimination by imposing ["**_Death Penalty_**"] or ["**_Separation_**"], or ["**_Control Theory_**"]; ["**O**_ppression_"], ["**_Criminal Activities_**"] by claims to intervene;

ii) Those allegations are effecting the plaintiff as well as innocent individuals across the country, even without the ("INA") the defendants exposed the plaintiff to death penalty anyway for questioning facts;

iii) That is under ["_Clervrainv United States Of America_"], No, 17-CV-00313 and the defendants action is subject to the (APA) as additional reliefs to question substantial evidence by their illegal actions;

a)The evidence on the records will prove that the (BOP) transferred him to the various contract facilities by exposure him, or by violated the laws explained under (MOCMA) it is most vital and essential;

b) By the importance to the public happiness when required for additional facts finding by the defendants, or for ["***Mr. Robert Dawn***"] to decide if whether ("EPA") has a duty to take steps to slow reduce it;

1) Here, Under ("CORRA") is an indisputable fact by itself is a controversy that for ["***Mr.David Bernart***"] must delegate is power without using the same favorable discretion to implement laws;

2) That is to say that the defendants implemented illegal laws in the prison industry by exposure criminal offenders to cancers, and for the same purpose of the mass incarceration practice by wrongful means;

3) We ask the secretary if the plaintiff is right that is because the judicial system failed to evaluate the evidence such exposure is consistent as facts for the same meaning for adjudicating absolute rights;

a) To that extent we are relying from the Legal Dictionary explained before, it provide that capital punishments, a penalty that make a person or entity ineligible to participating in an activities of agencies actions;

b) That is if the ("PLRA"), as well as ("INA") was not imposed restrictions on ["***Deportable Alien***"] could have previously participating in program at any facility without the penalty imposed required by laws;

i) Of course when applying the concept of ("MOCMA"), here, the unjust classification must be declared unconstitutionally vague on its face; analysis under the statute requires assessment of the alien actually;

ii) That is to say he did, suffered injury in facts by the defendants actions and applies "only to real-world facts" or against the courts allegations for facial attack on the subject-matter jurisdictional issues;

1) To the  questions merely the sufficiency of the pleading, here, the plaintiff is challenging his classification based upon the facts the defendants applying ["***gross misconducts***"] based on unprofessionalism;

2) They are acting in a inappropriate  standard or failed to make necessary findings *de novo*, and we ask the courts if the defendants exposed the plaintiff to ["***death trap***"] that is because the special situations;

3) By the imminent of risk to death, and these case is fully briefed and before the Court for adjudication of the merits of the claims, or those situation is under [Dkt,1] which the courts failed to consider  facts;

4) That he is entitle to additional reliefs in light of the circumstances of exceptional one by the supreme court Under *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, (1978) for vacatur of his illegal conviction;

5) That is for additional evidence against the courts in Northern district of Texas for moot status is being questioned for further analysis or depends on the facts and circumstances of each of the controversy claims;

6) Accordingly, the Plaintiff have satisfied the first requirement of Rule 23(a), then we ask the courts to if they must certify the class certification proposed and that doctrine is applicable for exposure to death;

a) We are applying the same reasoning standard being deprived by (MDC) while in (ICE) custody and (BOP) by violated or they can denied the water provided is clear for additional finding for compelling needs;

b) For the same reason, we assumed that the doctrine must applied for vacatur and release all individuals in custody or confinement of the ["***Agencies***"] or in all institutions where he  has been victimized;

c) As such the plaintiff is inquiring for permanent injunction against each of the private institution Under (CORRA), of course they are premature cases within  reasoning standard for adjudicating claims;

d)Moreover, the plaintiff is asserting that there are a number of questions common to the class. First, he asserts they are alleging the same legal claims, if  whether defendants' practice of separating family;

e) That by itself is putative class members from their minor children and continued separation by genocide and determination that they are unfit parents or present a danger to their children community;

f) Their right to family integrity under the Due Process Clause of the Fifth Amendment in the context of the statutes, and for the reasons set forth below, for vacatur of his conviction by directing opinions;

1) It is clear, moreover, ["***Mr.Clervrain***"] is presenting evidence for his first Amendment violations, or to express his movement should not be restricted by the defendants counsel allegation to protect injustice;

2) That is say that the courts, or any courts should have absolute jurisdictions, ["21-CV-03036"], this court must found a number of genuine issues of fact remanded unresolved including t records entirely;

3) This finding is precisely the type of factual determination over which we must granted jurisdiction at this stage in the litigation ["21-02918"] against the defendants criminal enterprise by enforceable laws;

a) If the United States Supreme Court interpreted the provision of the ("FAA") that makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity;

b) For the revocation of any contract, The Federal Arbitration Act says that an arbitration agreement "shall be ["***Valid***"], ["***Irrevocable***"], and ["***Enforceable***"], save upon such grounds as exist law equity;

["***Section 9 - Award of arbitrators; confirmation; jurisdiction; procedure***"]

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

c) To be true, the plaintiff is articulate his claim, [21-CV-01919"] or reliefs and damages against the ["***United States Of America***"] and to question ["***International Defendants***"] similarly claims against;

d) To be include additional matter for humanitarian reason ["21-CV-00137"], and to ensure family unity, and public interest ["Dkt, 16"], or the defendants to response claims that effecting global economic;

## <u>INFORMAL MITIGATING CONTROL ACT ("IMCA")</u>

**II**.As noted in the majority opinion, (ICE) clearly lacks jurisdiction to detain or remove a United States citizen Under <u>*Ng Fung Ho v. White*</u> moreover, executive detention and removal of a citizen "obviously deprives him of liberty" and thus "[a]gainst the danger of such deprivation is mandated damages;

1)By judicial proceedings, [20-05164] or ["***Motion for consideration by mitigating Undue Financial Burdens or [En Banc] by the ants Systematic Treaties Act***"] (TASTA) by protection in its guarantee rights;

2) Of due process of law, or if the plaintiff, or was a victim of criminal activities , or the former Federal prisoner subsequently illegally detained by (ICE) officials for the same reason  for compelling facts;

i) According to the court under [20-CV-00925] quoted that the several courts across the country concluded that since entered into the prison common crimes industry in 2011, he has been framed by illegality;

ii) That is because of his movement, if (ICE) officials lodge illegal (NTA) against him without proper justification that matters is in conjunction with his claim to support retaliation by additional evidence;

iii) Although the plaintiff have been subjected to various incidents of harassment or intimidation, and there enough  evidence of past torture in the record or attempt for chilling effect against Apartheid;

a) As well as this motion is filed under 18 U.S.C.3143(b), accordingly, his request for release is governed by a different standard, and victim of crimes by the defendants widespread controlling claims;

b) That for the appeal courts jurisdiction under Fed. R. App. P. 9(a) to remand the cases to the district court for clarification of the basis for [*"**_Unjust_**"*], and they certainly have jurisdiction by appealing rights;

c) From the receipt of a supplemental explanation from the district court for evaluating additional facts on his claims  by invoking ("CORIDA") or evidence that he was a victim of crimes by illegal custody;

d) The evidence will support the claims for conspiracy, as for the courts to consider his motions Under [*"**_Habeas Corpus_**"*], [*"**_Mandamus_**"*], and [*"**_Bivens_**"*], and denying  (IFP) are matters  to  review;

1) Under the ("APA") for Moot status by the courts in Northern District of Texas and Colorado as additional evidence for quasi judicial action or administrative agencies by failure to Interprets laws;

2) Their illegal rulings, and regulations  for individuals and businesses effecting the circumstances presenting, and we ask the court if section 1915 (e) (2) (B) must be excluded for right materials;

3) To prove his cases or the restriction is excessive to the plaintiffs and failing to adequately respond to that risk, and holding that a prison guard who knows of, but fails to stop, ongoing constitutional claims;

4)  That is applicable in the circumstance under  _Ricks v. Shover_, 891 F.3d 468, 479 (3d Cir. 2018) for equal protection claims against the defendants actions failed to act in good faith when informed policies;

a) As this court court in California quoted, the various courts across the country was target him, and not to exclude [18-CV-03166] or could have been the reasons for the courts violations alleged claims;

b) Under the (PLRA) is matter for equitable tolling, is available to the plaintiff who is prevented from filing a motions  due to deception, fraud, or error, as long as to the exercises due diligence discovering;

c)  Such circumstances is the result of the litigation pending across the country, which clearly met the standard for controversy is matter of facts or indisputable for rule 59 to be follow as matter of rights;

1) For the illegal judgments by the courts and to used it mandamus power, and the questions for the courts if the evidence are substantial on the administrative record the restriction legal mail by chilling effects;

2) That should be the end of the matters, so he could not pursue his legal obligation is matter of facts, or because the plaintiff is confronting the same violation while any of the agencies controlling theory;

3) For the same purpose to prove his faculty claims, his (IFP) motions must granted as national reliefs, or injunction because the defendants action is the proximate cause of the delaying of the procedures;

4) That is a matter of rights, and this motions must be review sua sponte by the administrative record, so that to evaluate that dismissal is not mandatory if the evidence can be prevailing facts;

i) As such *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763, 191 L. Ed. 2d 803 (2015) does not apply to any of those cases that are part of the controversy being alleged, unless the courts are evaluating the facts;

ii) As well as the evidence from administrative record will prove that the defendants are liable for all claims, and they are not immune from constitutional violations being alleged as to supporting claims;

iii) Of course, these courts should not dismissed the cases at any time before compelling the defendants or to show cause by providing legal material as required by the policies being enabling prospective rights;

a) If the Court determines, on its own initiative, that the actions arr  arguable basis, then section 1915(e) does not enforced abused of discretion, if the evidence on the records for  evaluate retaliation claims;

b) As additional evidence or substantial for questioning facts allegation if not properly true by the record, and the purpose of 1915 of Title of 28, is for the courts to screen any motions for additional facts;

c) Thus, it is true that the defendants are liable for the damages explained in the controversy, and they are indisputable when evaluating the claims for the courts to consider the record entirely as a matter of law;

d) As such the court has not provided how  does ? the cases claimed on its reports are similarly situated with the plaintiff situation challenged the various illegal laws for the various court intervention;

1) Moreover, it appears that the court referred to the various courts that required   it power to enforce mandamus reliefs, and the restriction by (MDC) is interfering with his rights to serve copy of the motions;

2) Therefore , the courts can not imposed additional restriction against him or by alleged that subsection 1915 (e) (2) is applicable or conflicting with rule 59 (e) only in the circumstance presenting issues;

i) Of course the above rule, which is not limited consideration when the evidence, or to benefit from equitable tolling, as the plaintiff is showing that he exercised due diligence in this motions to review;

ii) That he could not have reasonably been expected to file his motion earlier, if surprise policy was not on his way, or the principal that deportation is civil, and rather than criminal for further analysis;

a) Then, at this point, the defendants are liable even for  explaining  the differences between ["***Civil detainees***"] and ["***Criminal Detainees***"], and for  enabling  right  classification  against deportable aliens;

b) If the Ninth circuit, has held that individual detainees by (ICE) in custody pending release from illegal detention must be compelled if the evidence from the (BIA) is contradicting for illegal detention;

c) Here, Under _Agyeman v. INS_, 296 F.3d 871, 877 (9th Cir. 2002) that is among such challenges may be due process claims, but only if they involve more than "mere procedural error as explained before;

1) As such the court in southern District of California, has not explained what? the Ninth circuit said? regarding the constitutional challenged against the ("INA") as well as if the word alien for declaration right;

2) Of course the word ["***Alien***"] is illegally codify into the ("INA"), and for the same reason by the defendants objective of satisfying procedural due process violation claims is presenting for controversy issues;

a) If the plaintiff who is Poor by standard provided, or policy in question under (DIFTA) then, section 1915 (g) is also question for additional claims for constitutional violation as facially neutral instructions;

b) That is to serve as no bar to future Civil Detainees to litigate at the government expenses and for the defendants to explained if the word ["***Alien"***] is not the proximate cause of the exclusion of rights;

i) At this point the plaintiff asks the courts to evaluate the damages caused by the defendants since 2011 for excluding him to litigate his cases that could have been even excluded him for detention;

ii) If the Supreme courts, has explained the situation against ["***Undue Financial Burdens***"] and ["***Inadequate Law library***"] to litigate facts , or if whether or not pro-se litigant must have serve defendants;

iii) At to response the claims being alleged that they are part of the conspiracy that stating facts for them to response, which is not ["***Frivolous***"] in light of the circumstances against the statutes to enforce;

a) Thus, the court is referred to the same wording under (DIFTA) being challenged or incomprehensible is not applicable in these cases, and the plaintiff has proving his burden against manifest injustice;

b) As notice to right procedures, if the courts can must evaluate the direct relation at issues _Bias v. Moynihan_, 508 F.3d 1212, 1225 (9th Cir. 2007) or in conjunction with the motions filed jurisdictional claims;

c) Under (DIFTA) as explained before, [20-CV-00925] the allegation by the court on Sept 9, 2020, At ["Dkt,3" ] is required further analysis and even for ["***Majority Opinions***"] on the claims by Federal circuits;

1) Of course the plaintiff is referred to his protected right violations, that is because the (MDC), and the agencies must be label for the claims alleged by each courts jurisdiction for additional damages;

2) As quoted by the court has made a wonderful comment, a Pro-Se litigant such as the plaintiff must alleged with at least some degree of particular over act against one of the defendants conspiracy claims;

3) Moreover, the court explained that ["***Mr. Luis Gerardo Riverra Marin***"] who is , the

Attorney at Law, involved in telegram scandal, and the plaintiff is asking for access resources for

additional scandal;

d) As such under (UNCA), which will be filed Under [20-CV-00132] at the Eastern District

of Oklahoma, if a detainee should have access to the ["***Interne***t"] for even electronically filed his

motions by rights;

1) For instance the above motions must be filed on each states, and the differences that each

for the motions will have different proposed laws, for this particular courts explained for

adjudication rights;

2) That is under, ["***Domestic Issues Greed Capitalism Act***"] (DIGCA), and if the United

States is   is a capitalist well-developed country,and the evidence contained the questions for

detainees matters;

3) Of course the defendants on the motions are Co-conspirator on all of the defendants, but

they all are liable for the claims, regardless of the jurisdiction the cases was brought which being

restricted by facts;

a) We are asking the courts if access to the internet should have been provided to those in

custody of ("ICE") officials, if they are not convicted of crimes is simple request for common sense

by permanent just;

b) Thus, the courts will not denied that they are anticipating to widespread criminal scandals by privatization Scheme, which they can not denied the claims, and because the courts failed to explained facts;

c) Under ["Dkt, 1, 3 at 4"] or it failed to explained any statement from his speech that is frivolous or not in conjunction with the motions filed considering the claims within the judicial forum systems;

d) If there is various pending motions to send to the various courts, or if for the agencies and (MDC) should explained the true reason for the financial restriction by violated congress intent by restricted rights;

e) Thus, these cases are subject to review under 59, and the claims are arguable basis upon relief can be granted for his release against Capitalism and technological solution to the problems of illegal prisons;

1) Of course the court also failed to provide how Does?  The plaintiff repeats pending or previous litigation claims, and we are asking for justification against the courts stipulations as matter opinions;

2) If the court failed to provide any facts that any of those cases, or even [Dkt, 5] is applicable or lack of merit to litigate against the (INA) that promoting genocide by the defendants widespread actions;

3) If the evidence by defining words that explained the allegations are not frivolous, and for the same reasons to leave to amend any time after compelling performance by the defendants deliberate inference;

a) That is to say that if the court courts where properly construe, ["Dkt,1] with those motion was filed, and Former 1915 (d) of Title 28 permit to consider if whether an (IFP) complaint is frivolous or malicious;

b) For the same reason to question if when alleged restriction to mail, the courts must use it discretion  authorizing issuance of the summons and service of the complaint against allegation of facial attack claims;

1) By applying the concept of  _Roman v. Jeffes,_ 904 F.2d 192, 194 (3d Cir. 1990), and the courts also failed to prove that why it  may "dismiss as frivolous claims based on an indisputably meritless legal theory

2) Those claims are e factual contentions are clearly not baseless for the courts to protect crimes or additional scandals by criminal enterprise within the prison industry is presenting for mitigating factors;

3) That is inform the courts that (IFP) should taken in good faith if any cases the plaintiff intention is to filling appeal procedures is int he interest of justice that is because challenging constitutional rights;

a) Here, the plaintiff brings his actions pursuant to 42 U.S.C. 1983 against each of the defendants on their jurisdiction, or to any of these cases, and the court also failed to compel for additional facts;

b) The courts also have jurisdiction under 28 U.S.C 1331, and  shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States controversy cases;

c) They also have have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C 1367, and for each of the states officials to perform their duty against widespread conduct;

d) By directing the clear of the courts to alter their illegal judgment pending for additional facts before amending the controversy is presenting for any allegations, the activist has stated facts to  enable rights;

e) At least for the courts to inform the defendants by due process, and the restriction imposed by *McRae v. Library of Congress*, 843 F.2d 1494, 1496,  (D.C. Cir. 1988)  by the agencies due process claims;

f) The charge that government officials actively obstructed him's access to the courts, violating core procedural due process rights. *See Tellier v. Fields*, 280 F.3d 69 (2d Cir. 2000) that is for arguable basis;

i) Here, ["***Mr. Clervrain***"] is presenting himself as ["***Civilian"***], or the Attorney in records, in his court ["20-CV-00182"], while at ("MDC") or in custody of ("ICE") officials , when he filed cases to litigate;

1) On or about May 1, 2020 the plaintiff challenged the various illegal policies by (ICE) officials or related matter against the (BOP), ["Dkt, 1"], that is another issues for questioning judicial officials;

2) Thus, it is true that ["***Venue is Proper***"],or any jurisdiction of any courts alleged on this motions to be considered, also applicable because the defendants conspired against his revolution to mitigating crimes;

["***Section 1391 - Venue generally***"]

> *(e) ACTIONS WHERE DEFENDANT IS OFFICER OR EMPLOYEE OF THE UNITED STATES.-(1) IN GENERAL.-A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.(2) SERVICE.-The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.(f) CIVIL ACTIONS AGAINST A FOREIGN STATE.-A civil action against a foreign state as defined in section 1603(a) of this title may be brought-(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;*

a) Therefore, both courts ["20-CV-00182"] and ["21-CV-00132"] venue is proper on such exceptional circumstances, or delay process by Oklahoma court or matter concerning a interest of justice concern;

["***Section 1406 - Cure or waiver of defects***"]

> *(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.(b) Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue .(c) As used in this section, the term "district court" includes the District Court of Guam, the District Court for the Northern Mariana Islands, and the District Court of the Virgin Islands, and the term "district" includes the territorial jurisdiction of each such court.*

b) Under ("NIRTA"), at page 23-31, or ("***TINPPO***") for settlement Agreement, or invention to question international officials, at page, 35 (E), or they question for degrading treatment by rules;

c) The right to inform the defendants is within their contracts, or viable contracts is being question by the defendants contracts, ["21-CV-01919"], or matter to challenged the courts for rejecting filling;

1) That is also to question judicial officials misconduct, or extortion practices, or is being questioned within the same principal of laws, [21-02131"] or for  federal circuit to intervene  by the interest of justice;

2) As such being the cases the plaintiff is proposed ["***Proper Venue***"] and [*"**Proper laws**"*] to remove ["***Pauperis status***"], or ["***Delay process***"], or provision for filling by ["***Email***"] should be mandatory rights;

d) Under ("NEFRA") is matter to question judicial restriction against revolution rights, or right to inform public concern should be imposed penalty by judicial bureaucracy against the african descent;

e) Then, we asking the courts to identify, ["21-CV-00182"] or justify their actions, here, ["***Mr.Clervrain***"] who is completely indigent by the defendants actions, who has mailed large quantity by mails;

1) There is more to be filed because of complexity of the cases, or pending to file after courts granted ["***Trust Certification***"] by each of the courts, which the plaintiff was requested on motions to answer;

2) Under ( "Dkt, 10") is another issues for the courts to grant ["***National Reliefs***"], there are matter presenting for ["***Majority Opinions***"], or ["***Expert Testimonial***"], from the circumstances no to be Excluded;

3) That is certainly not the first court involved in the conspiracy, as well as to inform Chase bank, among the others, he is inquiring concerning [*"**Guarantee Trust**"*], to recover damages causes by illegality;

4) To be paid, including all benefits, under the first stage of the procedures, including hiring process, or expenses of the litigation across the country, and for punitive damages must be granted as matter of rights;

i) As well as to the whole realm of ideas and human affairs. Beyond the political sphere, his speech(s) and petition advance personal expression, although the right to petition is generally matter concerned;

ii) That with expression directed to the government seeking redress of a grievance is the concept that the words ("MOCMA"), at page 50-53 contained in the petition will relate to redress seeking;

iii) As well as hat [*"**The Speaker**"*] is genuinely issues seeking redress against the (INA) that is clearly [*"**Ambiguous**"*] and [*"**Punitive**"*], and will confirm his allegation for unreasonably classification claim;

a) Thus, it is true that the plaintiff have additional opportunity to prove the defendants allegation for ["***Fictional***"] is contradicting with the meaning of the ["***Plain Meaning***"] of the words by statutes;

b) Here, the word ["***People***"], at 6, is refer to ["***Talent for Invention***"], indeed the inventor is speaking clearly in the interest of the people to mitigating crimes, or which they failed to identify inventions rights ;

c) The word ["***Citizen***"] and ["***Nationality***"] is being questioned within the plain meaning word of Arts, that is also for the defendants initiate public funding to promote education against extensive genocide;

i) We are concerning with word of Arts, to define the defendants actions, or inactions, or if whether or not they are evidence to support claims against them, or criminal intent allegation is substantial matters;

ii) At this point the plaintiff is questioning the defendants, if we must follow the laws to prosecute serious criminals, if not why ? not, or if they refused to prosecute them, they must publicly explain?;

## INTERIM RELIEF MANDATORY ACT ("IRMA")

**D**. This court, when confronted with these cases in which the other three factors strongly favor interim relief may exercise its discretion to grant national relief if he has made a substantial case on the merits, and we believe that these cases in which we may and should -- bypass the jurisdictional;

1) By questioning within his ["***Motion for Non-Immigration Legal Material or Informative Reform Act ] by Revoking Aliens Status Act***"] (RARA), as the claims for challenging violations rights;

2) From the circumstances of these cases, we ask if the immigration judge ["***Mr. Joseph T. Leonard***"] is not entitled to qualified immunity to the civil conspiracy claims as reasonable officials predicted;

3) That is under  1985(3) prohibited their joint consultations and the resulting policies that caused the injuries alleged Occurred in Texas, the locus of injury are all states, and therefore uniform state laws;

i) On or about February, 2 2019 an ("ICE") official came to serve the plaintiff the illegal ("NTA"), who is ["***Mrs. Jane Does***"] while plaintiff while in prison at ("*BSCC*"), an institution dedicated crimes;

ii) By Itself by promoting the various illegal practice in contract with the federal officials, and ["*Mrs does*"]  intent is to force the plaintiff to sign for his deportation , and that revealing that there is conflicts;

iii) By seeking restriction  between her duty and the operation of the agencies in these cases, the plaintiff is attempting  to classify the ("NTA") claims as due process violation independent from the process;

a) On or about the Next day she came again by asserting that she made correction on the illegal documents that has no evidence of any correction, but trying to mislead him, indeed they should have known;

b) That he has no Attorney to represent him,  another work his indecency is the force behind her illegal intention , to which the plaintiff explained her that he met requirement for claiming his rights;

c) Of course, his conviction is not ["**_Removable_**"] as mentions in the illegal documents that has contains no factual allegation that a reasonable person can be construed as true for illegal deportation claim;

d) Next day after the First violation she came again, but this time she trying to used her feminine skills, to persuading the plaintiff to sign his deportation, and she claimed that she is trying to mislead;

e) That is she also forget her title means "*Deportation Officer*", she used all pretension to try her feminism skills to get the plaintiff to be illegal deported for his action by reporting their criminal activities;

f) That could be satisfied on the plaintiff's burden to demonstrate entitlement for interim relief as a way of interfering the ultimate disposition of the case makes it necessary to consider proper hearing;

1) Of the nationwide scope of the injunction requested a number of factors "strongly suggest[ed]" that the plaintiff is likely to succeed on his Fifth Amendment due process claim based on arbitrary actions;

2) On or about Next day again she came, and she said that she would speak with the Immigration counsel, ["***Mr. /s Jhon Doe***"] regarding his concerns about the facts that he should not be processing

3) That is because the evidence does not proved any aggravation in accordance with the ["***Scheme Act***"] being  alleged to be unconstitutional under that heightened standard for cancellation issues;

4) To that extent the plaintiff is entitle for a ["***Prosecutorial Misconduct Claim***"], the defendants misconduct shows that they conspiring *Improper Misconduct* so infected procedures to be with unfairness;

5) Their resulting convictions denial of due process, and that is something the counsel can not denial because the evidence on the record will prevail on the merits of the appeal as well as the controversy claim;

6) On or About February, 7 2019 if the plaintiff remembers carefully because of the defendants actions caused him the ["*Various Migraines*"] and difficulty to concentrate at night because of officers;

7) That was ["***Mr. Jhon Does***"] which call himself as the [ "*Supervisor Deportation Office*"] with the intent to intimate him and attempted to force him to sign the illegal ( NTA ) , which he refused;

8) To signed and he quoted that [ "***We will deported you***" ] a [ "***Threat*** " ] to contemplate fear of deportation that contributed to the [ "***Fear of Death***" ] while in custody of their partners because of rights;

a) Their conducts entails the intentional infliction of severe pain or suffering, whether physical or mental, in order to force him to deport himself, punish or intimidate because of his revolution rights;

b) He told him that he will not signed any documents that say, that he is [ "***Aggravated Felony***" ], neither if it has not said he is a [ "***National Status***" ], its appear the official may not know the legality;

c) On or about March, 2019 while the plaintiff in the removal proceeding, he explained the to the immigration judge listed above, which appear to understand the violations, but failed to Act to correct violation;

c) Her Assistants that came all the time at ("*BSFF*") ["***Mrs. Jane Does***"] and ["***Mrs. Jane Does***"] both of them knew that will not make copies for the activist, and the judge claimed that he has no jurisdiction;

d) All the time relevant to this action while in removal proceeding the two officials seemed to represent the court to serve documents  to several individuals seem not really understand  due process to litigate;

e) But they will ask them if they have a lawyer all the time seem to be suspicious manner and were perhaps involved in illegal activity, Indeed, the facts of the case reveal a dramatically different situation;

i) Given these facts, ["***Mrs. Patricia P Cole***"] will find substantial error in the ("IJ") performance, and we ask if the requirement by the official loses qualified immunity for violating clearly established;

`       1) By extremely abstract rights of the plaintiff constitutionally rights being alleges into his motions and for them to have knowledge that ("BSFF") involved in mail fraud; or they interfering with  legal mail;

2) As a pattern misconduct  at MDC is substantial evidence , so that he can get deported; and; the (ICE) official can not denied the allegation for the agencies to initiating investigation in the subject matters;

ii) on or about Midst of the month the plaintiff served both assassinated of the ("IJ") evidence of the Mail fraud by the Warden, ["***Mr. Bobby Thomson"]*** at ("BSFF"), must release all records be clearer;

1) The two assistant did not make copies and plaintiff have no clues where they have the evidence and for release his legal properties them but they claimed they will handed to the counsel office the counsel;

2) For those reasons, the plaintiff ask for ["***Mr. Jhon does***"] whose is the direst of ("USMS") conducted a criminal investigation with respect to the allegations the above individuals might committed crimes;

3) The question in its narrower aspect is indeed whether those consequences in mail fraud because they failed to informed other agencies about the wardens criminal activities to restrict immigrants;

4) For the purpose to cause the plaintiff  to get deported as matter of fact or arguable basis if the defendants failed to trained they partners or contractors by conspiring against him because of his allegations;

5) We ask if the Assistant was referred to ["***Mr. Levi Joshua***"] who is the counsel at ("DHS") concerning the practice of Mass Deportation Operation ("MDO") in Texas, and the plaintiff asks for justification;

6) If that will be the case both individual to cooperated in the matter because when they have knowledge crimes everyone must be prosecuted, unless they are above the laws has placed himself beyond

7) The reach of legal punishment or control, which makes it unlawful for  for the agencies to have contract or knowingly to hire those individual involved in criminal activities by fraudulent intent is factors;

8) At least to initiate a criminal investigation in all Private institutions in Texas, while the plaintiff is concerning about their operation of abused of federal funds, or fraudulent concealment legal properties;

a) The practice of commissary, or intent to defraud, because of retaliated against the plaintiff is substantial ground for the investigation, that is the defendant will refused to act in good faith efforts;

b) For these reason, the plaintiff f asks ["***Mr. Paul. B Hunter III***"] who is the Directory of the ("DHS") in Texas, to intervene in such complex situation to eliminating fraud in the prison industry in Texas;

c)  To inform all the others Director around the country to do the same because the plaintiff will file complaint against all to perform their duties; or their performance against widespread officials conducts;

d) Of the delegates power to outside parties, lines of accountability may blur, undermining an important democratic check on government decision-making  thus accountability clearly remain with the agencies;

e) For the Director to release all ("NTA") that being issued since 2011 because the plaintiff intention now is to see how many officials in each states that are not doing their job, or that are deported people;

1) That entitle to relief for the purpose that they can have a continuation of deportation of recurring business by means of ['***Illegal Re-Entry Practice***"] (IREP); that is another subject for controversy issues;

2) From all ("NTA) must be served by different country because these cases are base upon allegation for international norm with at least as 'definite content and acceptance among civilized nations of them;

3) For the director to inform all other director in every states while plaintiff  is preparing to amend his motions across the country to end Apartheid, or virtual unanimity that statelessness is not to be imposed;

4) As punishment for crime It is true that several countries prescribe expatriation in the event that their nationals engage in conduct in derogation of native allegiance is not entirely different matters;

5) All the time relevant to the proceedings of the plaintiff removal the ("IJ") will ask the several ["***Deportable Aliens***"], if they received a copy of the ["***Attorney***"] list that contains several illegal institutions;

6) That provided no services to aggravated felonies offenders; if that is not a crimes then the question in these motions  is not review *sua sponte* attempts to resolve the cases on ripeness grounds by laws;

7) The several of them was not able to contact them, they claimed that they do not accept aggravated felony, and we do not help individuals in Dallas courts , another reason  to say that is death penalty;

3) For that reasons the plaintiff asks for ["***Mr. Jhon does***"] who is the secretary of Interior , at Department of Interior ("DOI") to intervene to in the conflict practice by the federal agencies a must to delicate;

4) By the area" in which the (BIA)  must be "particularly careful in its choice of remedy, and be given special respect by reviewing it decisions. Nor can it should deny that in such circumstances;

5) Of serve critically important remedial purposes, and those purposes involve more than

victim compensation based upon his alienage, was unconstitutional because the government can

not demonstrate;

6) The classification was linked to a compelling state interest, as well as they still can not

proved that he had committed aggravate felony, and sought compensation for his injuries resulting

from criminal acts;

7) Under the ["***Criminal Victims Compensation Act***"], ("CVCA"), and that is to say that

they must receive recovery, to meet the other reasonable requirements of the Act, and he must be

given opportunities;

8) To make application if the opportunity of full participation were to be denied then, the

vibrancy of the constitutional principle of equal protection guarantee applies to these

circumstances;

a) That if they had failed to realized that the ("INA") is promoting arbitrary actions, and the

plaintiff should never have to be in removal proceeding in the first placed that is another question

for interim relief;

b) Thus, the plaintiff asks if there is a conflict between the ("INA"), ("IRC") and ("CJA")

against ("LPR") for the issuance of the Mass deportation, has they have had contributed in their

only communities;

c)  They are being forced exile without any caused after they had paid years of taxes that is a question for [ ***Mr. JOhn does*** ] for its intervention if plaintiff can prevail this claim for additional claims by evidence;

9) For the Secretaries to work with all of the agencies, in particular with the Director of ("NTIA"), for them to release plaintiff information needed for evaluated how many people that had been deported;

a) For years with this illegal laws that had caused several people injuries, we ask for change , that is because these cases concerned substantive protections for (LPR) who had been contributed issues;

b) For their  procedural protections against Mass Deportation Practice (MDP) and Crimes of Apartheid  (COA) to avoid substantive constitutional problems within the agencies criminal enterprise practices;

1) For the above individuals to work together with each other between the states and federal officials across the country, we ask them to considered a landing" and did affect" his legal National status;

2) Of course that is the claims for the controversy being alleged, and that the courts can not denied that the subject matters are arguable basis upon relief can be granted against practice of genocide claim;

## <u>FAMILY UNION DANGER ACT ("FUDA")</u>

**E**.The policy of Rule 15 heavily favors amendments that allow the cases to be decided on its merits. It allowing amendment even in trial, when doing so will aid in presenting the merits and the objecting if fails to satisfy the courts that the evidence would prejudice these actions for defense by merits;

1) It must liberality in pending motions , and ["***<u>Motion(s) for International Extradition by questioning the Ant(s) Ciminal Massive Issues For Genocide Reform Act</u>***"] for protecting family unity;

2) By the plaintiff leave to amend is subject to the qualification complex litigation, and those cases and claims are appropriate circumstances or the patterns misconducts by the defendant negligent practice;

3) These courts have continuously jurisdiction over the controversy across the country, and this motions is presenting while he must filed by invoking the various senators and their house representative;

4) For their intervention as they are defendants in these cases, and they are liable under Ratification Theory, and it is clear, and settle that section 2 U.S.C 288 (d) appears to create a cause of actions;

5) To proceed in these cases to resolve the challenge against the (INA) or the various statutes because the situation represents for [" ***Mr. Ted Cruz***"] among other to justify their actions deliberate claims;

a) Under the Ratification theory violations, and it does so in such complex of the (INA) for is superior to other available method for fair and efficiency by adjudicating the controversy is for additional concerns;

b) If class certification under Fed. R. Civ. P. 23(b)(2) requires that the primary relief sought is declaratory or injunctive,and that standards met for the court to certify these cases, and it is call for careful scrutiny;

c) That is for the relation and between common and individual question in this cases, or one individual question where the member of the proposed class will only need to present evidence that varied by members;

d) As well as for the courts to analyzing the common question, that is one where the same evidence will surface each member to make a prima facie showing of the issues that is susceptible generalized claims;

e) If the plaintiff would personally pursue those claims as a class proponent that he has demonstrate that a class action is superior to other method of adjudication the controversy for enabling certainty;

f) Moreover, the use of term "enforce" Under section 288 (d) of Tittle 2, which is not applicable at any (ICE) facility, suggest that may authorized coercive relief beyond the declaratory measures provided;

["***Section 288d - Enforcement of Senate subpena or order***"] ["(d) Rules of Senate,the provisions of subsection (c) are enacted-

*(1) as an exercise of the rulemaking power of the Senate, and, as such, they shall be considered as part of the rules of the Senate, and such rules shall supersede any other rule of the Senate only to the extent that rule is inconsistent therewith; and(2) with full recognition of the constitutional right of the Senate to change such rules (so far as relating to the procedure in the Senate) at any time, in the same manner, and to the same extent as in the case of any other rule of the Senate.*

g) By the ("DJA"), indeed jurisdiction is application in these cases for controversy in conjunction with the APA under 5 U.S.C 801 et seq, again not available at (MDC) in contract with federal agencies;

["***Section 801 - Congressional review***"]

*A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing-(i) a copy of the rule;(ii) a concise general statement relating to the rule, including whether it is a major rule; and(iii) the proposed effective date of the rule.*

1)They were designed to leave question to congress when circumstances, or sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally to apply;

2) To the class as a whole that is congress intended does the courts to have jurisdiction by enforcing congress intent, and for the enactment of the proposed laws, and certainly for ratifying ex post factor laws;

3) These courts should verify if whether or not these cases met the standard for controversy claims as part of the allegations against the defendants by contributing in apartheid by pattern of criminal activities;

4) That is for each of the Attorney General to be notified, under Federal Rule of Evidence 201 permits a court to take judicial notice of facts "capable of accurate and ready determination by resort to sources;

5) That is because the plaintiff is being restricted to legal mail by the (MDC) , then whose accuracy cannot reasonably be questioned if the plaintiff is victim by the defendants widespread illegal practice;

a) Then we asking the courts under ["21-CV-00326"] if judicial conducts is additional evidence for illegal restrictions, or if 7 days to response courts order must be considered additional fact for warrants;

b) The alleged criminal misconducts by the agencies is presenting within the courts to analyzing the claims concerning to ["***exercise Jurisdiction***"], or matter to allow email electronic filling imposed;

# INMMIGRATION VICTIM PROTECTION ACT (IVPA)

**F**.Thus, it is appropriate for the  Courts to assess the class's interest in the determination at issues in the main action as well as its ability to protect its interest, And yet, Congress, through the exemptions to FOIA, has consciously made the decision to limit what governmental information is available publicly;

1) On  his  case  [17-CV-00313], ["***Motion for Common Informed by Invoking Hague Convention as Related Matters for Informative Civil Right Provision Act***"] (ICRPA) at high risk of egregious;

2) By exposure to physical harms and death while in custody of the defendants confinement, and still confronting the same situation while in custody  from the agencies to mitigate illegality of defendant crimes ;

3) As  congress  established  the  ("INA")  to allow  ("BIA")  to  intervene  as  it  provides necessary  safeguard  to  avoid  denial  of  future  due  process  in  the  administrative  proceedings surrounding facts;

4) That that the defendants exposure him to danger theory to the various instigation, and the the  denial of his Naturalization was for the same abuse of discretion, in light of the circumstances of injuries in facts;

5) That is to say he should not have to be in detention to prove that he is entitle to relief if the defendants practice was not for the sole purpose of financial gain this case requires us to consider factors;

6) For the equal protection clause to a ``*disparate-treatment*'' claims against the defendants intentionally treated the deportable certain offenders less favorably than other offenders with his qualifications;

7) That is outside his protected class even if the protected class is disparately impacted by the challenged policies because they are deportable aliens, into the disparate-treatment analysis for questioning facts;

8) By supporting thereof the plaintiff states the following facts as well as factual dispute of consequences to the resolution of these cases that are part of the same cases of controversies across the country

9) It does effect the class he is representing eligibility against Mass Deportation Practice ("MDP) as follow that on his case [19-CV-46-H] On or about July, 30 2019 the plaintiff file a motion to this court,

10) For the same reason by the, ***Motion for suppressing the evidence on the records,*** and by requesting to suppress all evidences in all the institution that the plaintiff had been incarcerated or detained as matter;

11) Of fact to prove his cases that the private institutions violated the Detainee Treatment Act ("DTA"), which is not available while in (ICE) custody as additional evidence they have their illegal objective;

a) On or about 2017, the plaintiff files his case on the district of Texas ["***17-CV-452***"], as evidence that he is being retaliated not just by the private officials but also the federals for the alleged allegations;

b) Of criminal activities, an the defendant were acted in negligence misconducts as a patterns reflect[ed] illegal segregation, and; while the defendants intentionally transferred by exposure to crimes;

c) That he has been ["***Exposing to cancer***"] ["***17-CV-313***"], by means not providing him clear water while in custody in Texas or violation the ["***Clean Water Act ("CWA***"], or contribute to air pollution;

d) That is something which may reasonably be anticipated to endanger public health or welfare, and all the time relevant of this controversies the defendants aware of the situations, but failed to corrected

**e)** The violations but preferred to additionally caused the plaintiff more injuries by refusing to conducted immigration hearing so that they continue by their "***Prison monopolies***, inflicting unusual situations,

f) By creating new crimes, or commanding any unconstitutional act,' thus making the law necessary to the execution of a power, and for; In the hierarchy of mental states that may be for investigations;

g) As a condition for criminal liability, the ["***mens rea***"] just above negligence is recklessness negligence requires only that the defendant should [have] be [en] aware of a unjustifiable risk;

1) On or about 2017 the plaintiff files a motion to the distinct of Mississippi ["17-CV-000132**"**], with the ground that the defendant's intentionally having illegal contracts with the private institutions;

2) That they are conflicting with the ("*FTCA*") as well as excluding deportable aliens to various laws congress established,which contain the same allegations in this courts are habeas for national reliefs;

3) By asserting, as relevant here, however the defendants retaliation against him impeding him cause him to be late because they will not provide stamps or resources that is to say that the counsel allegations;

4) That are more frivolous, and  on or about 2018 the plaintiff filed his motion to his case [18-CV-51], with the intention that the illegal construction by the private institutions caused him to be disability claim;

5) The double bunking top to each other must be declared unconstitutional because its exposed offenders to danger theory, and they are matters of facts the courts can not denied the administrative facts;

6) Or about the same time, or about June 2018 the district court of Texas transfer his case to ["*18-CV- 57*] to Georgia [" *18-CV-28*"] without any cause, which he is being challenged by the same reasoning;

a) As evidence by the court for abuse of discretion; while in custody of barbaric condition, he files his motion to Georgia [" *18-CV-38*"] with the intent that his status of limitation is over and the restriction;

b) That is continuously effecting him or they have imposed against him while he is establishing evidence of the criminal activities; it is severe that could child his movement against their illegal trade;

c) On about 2018 the plaintiff filed his motions to the district of Pennsylvania with the issuance to challenge each of the above institutions by anticipating in illegal peonage, or involuntary servitude;

f) On or about 2018 the plaintiff file his motion to his case ["*18-CV-18"]*- with the intent to prove that Texas intuitions are the worse institutions in the country and the facts that most of them exposed to danger;

g) Those area making the situation worse for the agencies by exposing do death penalty, can not be classified as frivolous claims require the federal Government to expend administrative litigation costs;

h) Those allegations which ultimately fall upon society at-large, and for every dollar spent to defend against or to satisfy a Tort claim Against the United States is appropriate in this cases against terrorist;

b) That is addition, in order to limit the scope and unpredictability of the Government's potential liability, the Act exempts from the waiver of sovereign immunity certain types of recovery by law;

c) Of the interest and punitive damages Under 28 U.S.C 2674, which is not available while in custody of (ICE), which is serious issues if consider the intent of the defendants must be classified serious;

d) The question presented in these cases is whether the ("FTCA)'s filing deadlines are subject to equitable tolling. 28 U.S.C. 2401(b) applied to suits brought against the United States for under the statutes include;

1) That is waiving sovereign immunity for conspiracy to retaliate against a victim of crimes, such as because the states is interested in rehabilitation or preventing immigration hardships such as this one for justification;

2) Thus, if the courts with jurisdiction is to vacate his conviction based on a defect in the underlying victim of crimes alleged in this motions; even though the statute created categorical entry as factual;

**3)** That the classification Of ["**Alien**"] that discriminating on its face or  on the basis of national origin and without legitimacy, and, the courts must concluded that it is the judicial role cases to compel;

4) To probe and test the justifications" of immigration policies by declaring the statutes in question are not unconstitutional, and the majority must decides themselves what laws for this critical question

5) That must approach to identifying the essential elements under the statutes and the ("NA") is the forced behind the plaintiff being retaliated, or another word being classified inhuman in their illegal scheme;

a) By the majority must explained, the first step in determining whether a statutes has an impermissible retroactive effect is to ascertain whether congress has directed with the requisite clarity for enabling;

b) To be applied retrospectively, as a whole," considered here. Rather, the concept as used here suggests the existence of a legal unicorn, an animal that exists only in the legal imagination by same reasons;

c) It's required to hold that a realistic probability exists that the states will apply its statute to conduct that falls outside the generic definition of the crime, and the forcible relocation of Deportable alien;

d) To concentration camps, solely and explicitly on the basis of race, is objectively unlawful and outside the scope of Presidential authority under the ("INA"). Indeed, does dissent attempts crimes;

e) Of serious argument if the defendant can prove to the contrary, in the face of congressional opposition, and the inventors to evaluate intellect intent within the meaning of laws by legal outright;

1) Here, ["***Mr.Nicholas M. Satriano***"], failed to consider the evidence within the ("INA"), or to provide to "National Security agency" ("NSA"), or after failed to inform congress regarding the punitive laws;

2) The defendants under ["21-351-031"], then if they must granted settlement agreements to be applicable under the ("FTCA"), which the defendants are liable in the same circumstances presenting matters;

3) That is the duty of the officials, to apply the applicable, or they should not be denied the claims for the purposed of judicial development, or if they failed to investigate that could have made differences;

a) The evidence on the records, or to inform the defendants that circumstantial evidences should be applied to the laws that being concerning the scope of the agencies employees by failure to perform;

b) Their duty is invoked by ["***intellect intent***"], then the discovery must be release, for actual, or constructive knowledge of the defendants negligence misconducts described for controversies claims;

1) To that extent the activist is certainly dissatisfy against the defendants failure to act in good faith, or to even denied revolutionist right is actionable within the meaning of congress intent to settle;

2) By law, this agencies failed to follow the applicable laws, or even to mentioned what law ? is applicable by way to confused the plaintiff who is presenting evidence of the exhausting to comply by law;

["***Section 2675 - Disposition by federal agency as prerequisite; evidence***"]

> **(a)** *An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.*

a) The defendants should also construe, these motions and the claim as to defendant the united states against ["***Crimes Against Humanity***"], and ["***Terrorism Act***"] they are claims for related matters;

b) Here, the plaintiff alleged the People of Haiti, are victimized by extortion, or white extremist within their jurisdiction, and the ["***Mr.Clervrain***"] is likewise while in the united states because of races;

c) For the same reasons the defendants response is presenting to the courts within the meaning of facts,dated on November 01, 2021 to be reconsidered by circumstantial of the evidence to facts;

i) That is also to apply the circumstances of effect by the defendants actions caused disability for ["***Social Security Disability Insurance***"] and ["***Supplement Security Income***"] to mitigating pauperis;

1) Then we are waiting for the defendants to remove his ["***Pauperis Status***"] to consult the laws that imposing illegal procedures or another word extortion in light of the circumstances of this cases by laws;

2) Then we assumed that (SSA ) abused its discretion when sending letter to challenges his capacity of intellect, which has nothing to do with years of disability experience causes by the defendants actions;

ii) As such being the cases, the agency failed to consider other decisions, or o exclude him to ("SSDI"), and his family, will support the claims for racial bias against his family entitle for general damages;

1) Thus, it is true that the same information must be published nationwide to inform the public concerning the agencies actions, and to compel additional victims by illegal concerning of due procedures;

2) The agencies failed to inform the plaintiff if he qualify for Medicaid programs, as required by the act of congress when the evidence is substantial without challenged of being extortion process;

a) As such being the case or under ["**20-CV-00111**"], which the plaintiff invoked to question eligibility, and constitutional violation, or because of excluding to proper process by controlling theory;

b) Thus, that extend, the defendants must come forward, if the plaintiff has burden his cases against each of the defendants by anticipating in conspiracy to restrict him by proving claim to public interest;

iii) Accordingly, under this claim number ["**1280467**"], the defendants failed to evaluate the benefits applicable to his his children, the possibility for additional cab be prevailed the illegal conviction claim;

a) Here, the failure by the defendants to consider entirely his medial records, intent to misled the plaintiff because ["***Delusion Disorder***"], ["***Major Depression***"], or using a cane is actionable claims;

b) That extent the plaintiff is questioning if ["***Double Bunking***"] is being questioned for exposure to dangerous theory, to include ["***Paranoid Personalty Disorder***"] caused by the defendants crimes;

c) The issues related to his illegal convictions, or as ["***Alien Status***"] is the proximate cause of due process violations, and his movement is another issues to inform the public brutality by illegal matters;

1) Here, the defendants imposed illegal restrictions on him while he was in custody by the ("BOP") and ("ICE"), then the medical records will proved he was a victim of crimes to evaluate equitable reliefs;

2) By determining the constitutional violations against the defendants since December, 31, 2014, also his medical records will prove that the agencies conducts is evidence of failure to perform their duty;

3) The agencies failure is questioning under the ("APA") , and if ["OCD"] is another issues to be qualified under the applicable laws, or by appeals the process is unnecessary when challenged laws;

# INJUSTICE PUBLICATION DISCLOSURE ACT ("IPDA")

**G**.By weighing the public interest versus the privacy interest, the panel held that the privacy interests in this case were particularly strong, both because of the context of immigration enforcement and because of the private information already disclosed by the government that would be linked;

1) To the names of the released individuals, ["***Motion for compelling Substantial Evidence and Victim  Domestic Terrorism Act"***] (VDTA), and for the public interest in evaluating direct evidences;

2) The effects of government actions would be advanced only minimally by information In these cases, disclosing the names of the released detainees would not give rise to significant privacy concerns;

3) . On or before November, 13 2019 the plaintiff will filed another motion to the district court [*19-CV-46-H*] by asserting that he should not be in detention because he is currently collaterally attacking;

4) Of his convictions, or another word for litigate by ratifying the ("INA") while he is in for removal proceeding, and challenging his conviction, under a fundamental error; and victim of crimes by retaliation;

5) For reporting criminal activities by the privatization scheme, then filed to the courts, ["***Criminal Complaint***"], would seem to supply added justification for the findings of harassment against conspiracy;

6) The courts must concluded "that the institutions are violated criminal proceedings that was part of the retaliation claims, for the attempt by restricted him to have rights judicially determined claims;

a) The complaint was filed on November 4, 2021 against this Judge, or under this cases ["07-21-90075"], or to justified the alleged frivolous claims, and returned the various motions without responses;

b) The disposition of the complaints, filed against the various courts across the country must be construe as part of the evidence to question judicial performance, or right to contest the legality of laws;

c) That "few interests can be considered more central than a state's interest in regulating its own judicial system, the agencies failed their responsibility to enforce the national judicial misconduct rules;

d) The inventor is filling lawsuits against each Judges, under under 42 U.S.C. § 1983, alleging that the judicial conduct rules at issue violated their First Amendment and Equal protection rights;

e) By seeking to enjoin the commission from proceeding with the pending disciplinary proceedings against the defendants or otherwise enforcing the challenged rules is matter to invoke congress intent;

[*"**Petition for Review of Chief-Judge Disposition Under Rule 11(c), (d), or (e) (a) Petition for Review. After the chief judge issues an order under Rule 11(c), (d), or (e), the complainant or the subject judge**"*]

-may petition the judicial council of the circuit to review the order. By rules promulgated under 28 U.S.C. § 358, the judicial council may refer a petition for review filed under this Rule to a panel of no fewer than five members of the council, at least two of whom must be district judges. (b) When to File; Form; Where to File. A petition for review must be filed in the office of the circuit clerk within 42 days after the date of the chief judge's order. The petition for review should be in letter form, addressed to the circuit clerk, and in an envelope marked "Misconduct Petition" or "Disability Petition." The name of the subject judge must not be shown on the envelope. The petition for review should be typewritten or otherwise legible. It should begin with "I hereby petition the judicial council for review of . . ." and state the reasons why the petition should be granted. It must be signed. (c) Receipt and Distribution of Petition. A circuit clerk who receives a petition for review filed in accordance with this Rule must: (1) acknowledge its receipt and send a copy to the complainant or subject judge, as the case may be; (2) promptly distribute to each member of the judicial council, or its relevant panel, except for any member disqualified under Rule 25, or make available in the manner provided by local rule, the following materials: (A) copies of the complaint; (B) all materials obtained by the chief judge in connection with the inquiry; (C) the chief judge's order disposing of the complaint; Guide to Judiciary Policy, Vol. 2E, Ch. 3 Page 38 (D) any memorandum in support of the chief judge's order; (E) the petition for review; and (F) an appropriate ballot; and (3) send the petition for review to the Committee on Judicial Conduct and Disability. Unless the Committee on Judicial Conduct and Disability requests them, the circuit clerk will not send copies of the materials obtained by the chief judge. (d) Untimely Petition. The circuit clerk must refuse to accept a petition that is received after the time allowed in (b). (e) Timely Petition Not in Proper Form. When the circuit clerk receives a petition for review filed within the time allowed but in a form that is improper to a degree that would substantially impair its consideration by the judicial council — such as a document that is ambiguous about whether it is intended to be a petition for review — the circuit clerk must acknowledge its receipt, call the filer's attention to the deficiencies, and give the filer the opportunity to correct the deficiencies within the original time allowed for filing the petition or within 21 days after the date on which a notice of the deficiencies was sent to the complainant, whichever is later. If the deficiencies are corrected within the time allowed, the circuit clerk will proceed according to paragraphs (a) and (c) of this Rule. If the deficiencies are not corrected, the circuit clerk must reject the petition.

1) The names of the applicable judges should not be investigated within the administrative records, if whether or they had extended his ["***Disability Function***"] or imposed additional emotional distress;

2) Therefore, the courts must evaluate the records to evaluate when the defendants are engaged in such criminal misconducts that is include even judges of the United States is actionable prosecuting claims;

3) The question for the courts are more compelling if the plaintiff or who is the inventor is presenting facts under ["***Uniform Criminal Extradition Act***"] (UCEA), that is for questioning judicial duties;

4) Then we asking the courts if they must initiated invasion against the ["***Haitian Politicians***"], among the others, involved in serious crimes, or the conspiracy can be proving by public opinions;

a) The petition must be reviewed in accordance with public opinion, or to be published after his families, friends or each of the activist supporters be admitted in the united States to be protected by laws;

b) That is also to inform the courts that the proceeding is presenting under the judicial conducts and Disability Act, are not confidential when inquired about criminal prosecution involved politician officials;

## <u>NEGOTIATING SECRETIVE CRIMES ACT ("NSCA")</u>

**IV**. That he was subject to a due process violation because of an inadequate law library at his detention facilities, and due process protections must be provided only if the challenged disciplinary proceeding resulted in a loss of good time credits due to a prison disciplinary by illegal proceeding;

1) By having carefully reviewed the record, ["***Motion for Compelling or Relevant Rondcts by the Right Issues Detainees Exerssive Reform Act***"] (RIDERA), and we must conclude these cases will suffice;

2) The moot doctrine for the plaintiff, ["***Mr. Manetirony Clervrain***"]**,** who is the Activist, or ("***The ANT***") , or the believer, he is required to support the People's against Mass deportation by litigating facts;

3) From God"[" *Lest They Tear Me Like ("**The LION**")"*] ("*Psalm 7: 2*") that is to differentiate his beliefs for justice and his movement against injustice, to the rights of others, Its more powerful;

4) That the defendants might be more cautious not to act deliberately indifferent by the alleged allegations that are substantial, and the evidence that defendants anticipating in terrorism act into countries;

a) By which means that the outcome of the proceeding ["***may have been affected***"] by the alleged violations in this motions within the same reason alone the plaintiff is deciding to explain to the courts why?

b) The ("***THE ANT***") is so important to him; we must say that ["***The Ant***"] is small ["***Animal***"] which also refer to the ("INA") by referring not human being;  Or, the defendants own Humankind;

c) That alone is so gross violation of international law and gross disrespect for a norm high in the opinion they have imposed the various severe conditions that would rise to level [sic] of exceptional issues;

d) As that must be classified for extremely unusual Under the (INA) for additional reliefs against favorable discretion practice, and the courts would not denied the allegation against the power authority;

d) . That is the proximate cause of the various allegation against the defendants held liable for the unconstitutional conduct of their subordinates under a theory of ['***Respondeat Superior***"] by fear of liability;

e) They intentionally deprived a plaintiff of a federally protected right necessarily establishes" just such a policy and; likewise ("***The Lion(s)***") is an ["***Animal***"] that is referring to protect people;

f) As such the group because there no way that ("***The Ant***") can lift that serious constitutional violations by himself meaning the plaintiff will need support and its means that when he aggrieved;

g) By the defendants misconducts the only solution is that, to have ["***Educating***"] by protecting them, he representing" who are discriminated against due to their race color, rand/or national origin;

h) Those violations of the equal protection component of the Fifth Amendment, and they are unrelated to any legitimate penological interest in security and safety is applicable in all correction facilities;

6) Therefore for the time being the plaintiff have leaning the system in order to exhaust his right without have the same lawyers that had caused him the various injuries resulting from the defendants used

7) Of excessive restriction against him; and deprived him of his right to be free from cruel and ["***Unusual Punishment***"] can be compelled for further analysis by the administrative records against predators;

a) The defendants are liable for his intellectual rights constitutes a symbol represent of his organizations that was designed while in prison, he is leaning the legal system, and the only way to reduce criminals;

b) For promoting [“**_Education_**”] therefore he has leaned from his mistake, but corporal punishment might be inflicted "unnecessarily or excessively, and that his dedication to promote fairness of rights;

c) By contributing to society by the power of [“**_The Lion(s)_**”] against [“**_Act of God_**”], at the same time we must know that justice is not compromise with violence, regardless what the defendants caused;

d) The only remedy be, explaining that if he has standing to sue them for inadequate damages to deter the punishments, or by public safety Factors (PSF) to be in process of appeals concerning issues;

e) As well as his [“**_Disability Punishment_**”], or [“**_Corporal punishment_**”], which the plaintiff has filed, or even supporting by [“**_Hussein Chery_**”], or both claims are subject to violations rights;

1) The [“**_Remedy_**”] is presenting with evidence to the courts, [“769223-A1”] to question if equal protection clause should be applicable only in this circumstances to mitigating crimes against humanities;

2) The other question is against the defendants how does? [“**_Mr. Chery_**”] conviction applicable for aggravated felony, **[“_18 U.S.C. § 1341; 18 U.S.C. § 1029_”],** they are subject for proper guidance's;

a) The filling fees for each individual, which the plaintiff is asking to be waived pursuant to the applicable rule, ["***Rule 23.1 - Derivative Actions***"] as to notify the courts the responsibility over filling fees;

> *(a) PREREQUISITES. This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.(b) PLEADING REQUIREMENTS. The complaint must be verified and must:(1) allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law;(2) allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack; and(3) state with particularity:(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and(B) the reasons for not obtaining the action or not making the effort.(c) SETTLEMENT, DISMISSAL, AND COMPROMISE. A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders.*

b) Thus, it is  true that each of the individuals are employees of ["***Brandako, Inc***"] or its subdivisions, or therefore not liable for any fees related to punitive laws, or matter for settlement agreement issues;

1) The amount should be included, or part of viable contracts against each of the country, to be collected  ["***Rule 23.2 - Actions Relating to Unincorporated Associations***"] or matter for protection rights;

> *This rule applies to an action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties. The action may be                maintained only if it appears that those parties will fairly and adequately protect the interests of the association and its members. In conducting the action, the court may issue any appropriate orders corresponding with those in Rule 23(d), and the procedure for settlement, voluntary dismissal, or compromise must correspond with the procedure in Rule 23(e)*

2) Under ("TALA"), at page 42-50 they are mater for ["**_Common Sense_**"], courts may use their judicial experience, or expert testimony in determining whether the case stated in a complaint meets;

a) It is construe that the Status of ['**_Alien Status_**"] and ["**_Deportable Alien_**"] they are correctly utilized as factors for exclusion ["**_8 U.SC 1217; 18 U.S C 4081_**"] they are for unreasonable issues;

["**_Section 4081 - Classification and Treatment of Prisoners_**"]

> The Federal penal and correctional institutions shall be so planned and limited in size as to facilitate the development of an integrated system which will assure the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions

b) As the plaintiff mentioned before under ("MOCMA") they laws are punitive by nature, or just like the defendants are racist by Nature, common ground to prove the defendants malicious, criminal intent;

1) As we read the records, these must tried on the theory that even if criminal intent were essential its presence, should be decided by the court as a presumption of law, apparently for predicated claims;

2) The isolated act of taking rather than upon all of the circumstances is within this court [20-CV-00404"], or by failure to reopen active controversy cases, each of these respects we believe for trial;

3) Moreover, court was in error under ["20-CV-00548"], or that is for majority opinion concerning active controversy claim to be active or certify by any courts of the United States seeking reliefs:

4) Additionally, this court ["20-CV-01340"] failed to consider to reopening the cases when the plaintiff alleged that he suffered ["***Manifest Injustice***"] by the defendant actions for extraordinary issues;

a) Here, under ["Dkt, 11"] which this court must consider the evidence entirely consistent with the applicable laws, ["Dkt, 14"], or a petition for leave to commerce a successive collateral attack concerns;

b) That is because the plaintiff has sought to commence a successive collateral attack on his criminal conviction, or was  affirm on appeal ["**13-15094**"], or to be used to provide initial hearing requested;

i) The ("AEDPA") is designed to bring successive petitions to a halt, or when the agencies involved in such conspiracy, or to be cause for institutional punishment based upon national origin concerns;

i) The defendants established illegal policies for the same purposes to denied the plaintiff work assignment, eligibility various vocational programs, halfway House, Prison Camps such benefits to exclude;

ii) They illegal imposed policies call ["***Release Sites***"] as part of the Corporal punishment imposed for the same purpose of financial gain and unjust enrichment by way of illegal contracts against innocents;

a) Accordingly, Federal Inmates in the ["***United States of America***"], with the Illegal Status of ["***Deportable Aliens***"] they are  question for the defendants to prove the laws are not so punitive claims;

1) They are denied eligible for ["***Early Release***"], or regardless if they completed the residential Residential Drug Program, Treatment, ("RDPT"), or regardless of the Alien history of Drug by exclusion;

2) Then we asking if congress under ["***28 C.F.R. § 550.58***"], or for the (BOP) to justify why? ["***Deportable Alien***"] should be include in general classification pending to prove  practice control theories;

3) That is certainly in violation of all inclusive statutory language ["***Section 3621 - Imprisonment of a convicted person***"]

> *(e) SUBSTANCE ABUSE TREATMENT.-(1) PHASE-IN.-In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)-(A) for not less than 50 percent of eligible prisoners by the end of fiscal year 1995, with priority for such treatment accorded based on an eligible prisoner's proximity to release date;(B) for not less than 75 percent of eligible prisoners by the end of fiscal year 1996, with priority for such treatment accorded based on an eligible prisoner's proximity to release date; and(C) for all eligible prisoners by the end of fiscal year 1997 and thereafter, with priority for such treatment accorded based on an eligible prisoner's proximity to release date.(2) INCENTIVE FOR PRISONERS' SUCCESSFUL COMPLETION OF TREATMENT PROGRAM.-(A) GENERALLY.-Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection,*

*shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate. If the conditions of confinement are different from those the prisoner would have experienced absent the successful completion of the treatment, the Bureau shall periodically test the prisoner for substance abuse and discontinue such conditions on determining that substance abuse has recurred.**(B)** PERIOD OF CUSTODY.-The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.**(3)** REPORT.-The Bureau of Prisons shall transmit to the Committees on the Judiciary of the Senate and the House of Representatives on January 1, 1995, and on January 1 of each year thereafter, a report. Such report shall contain-**(A)** a detailed quantitative and qualitative description of each substance abuse treatment program, residential or not, operated by the Bureau;**(B)** a full explanation of how eligibility for such programs is determined, with complete information on what proportion of prisoners with substance abuse problems are eligible; and**(C)** a complete statement of to what extent the Bureau has achieved compliance with the requirements of this title.**(4)** AUTHORIZATION OF APPROPRIATIONS.-There are authorized to carry out this subsection such sums as may be necessary for each of fiscal years 2007 through 2011.**(5)** DEFINITIONS.-As used in this subsection-**(A)** the term "residential substance abuse treatment" means a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population (which may include the use of pharmocotherapies,1 where appropriate, that may extend beyond the 6-month period);**(B)** the term "eligible prisoner" means a prisoner who is-**(i)** determined by the Bureau of Prisons to have a substance abuse problem; and**(ii)** willing to participate in a residential substance abuse treatment program; and**(C)** the term "aftercare" means placement, case management and monitoring of the participant in a community-based substance abuse treatment program when the participant leaves the custody of the Bureau of Prisons.**(6)** COORDINATION OF FEDERAL ASSISTANCE.-The Bureau of Prisons shall consult with the Department of Health and Human Services concerning substance abuse treatment and related services and the incorporation of applicable components of existing comprehensive approaches including relapse prevention and aftercare services.*

a) The defendants are involved in such extensive conspiracy, or deprivation, which involved liberty interest, or if they should not be benefited from placement in community confinement regardless admitted;

b) That extent the plaintiff is questioning both the ("INA") as part of the defendants  intent is clear on its faces, they are racist by Nature, which they need to response with  clarification by applicable laws;

1) As well as for monetary damages, and fines, if the agencies imposed restriction on filling motions signed by ["***Judge David W Dugan***"] on November 16, 2021 as defendants part of the conspiracy;

2) This judge failed to prove any similarly cases between plaintiff and In <u>Alexander v. United States</u>, 121 F.3d 312 (7th Cir. 1997), in the exercise of the inherent power of this court to prevent vexatious;

3) By the litigation, we must remove any sanctions for the filing of repetitive claims involved judicial misconducts applications for leave to file a successive habeas corpus petition is matter of legality;

4) That should not be restricted to protect the various criminal activities, if the plaintiff is being restricted by the agencies because of his "status of alien"after release from illegal custody actionable claims;

["***<u>Section 571.22 - Release clothing and transportation</u>***"]

> **(a)** *Staff shall provide release clothing appropriate for the time of year and the inmate's geographical destination. Upon request, work clothing will be provided. Nonavailability of work clothing may limit this practice.***(b)*** *Inmates transferring to a community corrections center will be provided adequate clothing to complete a job search and perform work. Additionally, an outer garment, seasonably suited for the geographical destination will be provided.***(c)*** *Transportation will be provided to an inmate's place of conviction or to his/her legal residence within the United States or its territories.*

a) Indeed , the plaintiff as evidence that ["***<u>Deportable Alien</u>***"] has been excluded from the above regulation after release, and also denied the privileges for placement in FPI work program by privatization scheme;

b) The illegal fine imposed, as well as the stipulated restitution so that they can deported him is being question against the defendants for justification how does they can prove clear and convicting evidence;

i) If That the government has a legitimate interest "in reducing the flight risk posed by prisoners facing Permanent Resident without any evidence that person will exile from his family without causes;

ii) Then, we asking if they should have been eligible for assignments in the Federal Prison Industries program (known as UNICOR). 28 C.F.R. § 345.35(a). ICE detainees are not the only category inmates;

iii) As such being the cases, the ineligible for ["***Early Release***"], community-based without the determinative of factors of a lodged order of deportation issues by immigration judge is in violation of rights;

1) Here, if the ["***Revolutionist***"] who is ["***Manetirony Clervrain***"] filling those grievances to inform the public concerning to shed the light of the government brutality, or being transferred to more restrictions;

2) The ("BOP") certainly not authorized to punish the activist because protecting ["***Public Interest***"] through his ['***Invention***"], or by way to prove that his Moral character should not be a questionable facts;

3) Those facts include, he was challenged the ("BOP") to transferred him to ["***Indiana"***] where his family residency, but denied "[***Near Release Transfer***"] to be close to his family under the first step act;

4) Thus, it is true that defendants involved in a conspiracy to to exclude or punish a class of persons, or those with ["***Illegal Status***"], or ["***Deportable Alien***"] by imposing additional illegal punishment issues;

5) The defendants Hampering the rehabilitation efforts of those who relief from deportation, they are living in assumption to commit ["***Serious Crimes***"]. or by restricted families ties is for human rights;

a) It is true that the activist was disciplinary sanctioned because of his movement, and the evidence to support the claims to adjudicated the claims against illegal punishment by violated constitutional rights;

b) The competent Jurisdiction, and these facts raise, at the very least, a substantial question as to the court's jurisdiction , for it is presenting by the evidence is now an actual controversy between parties:

c) As we have recently said, the defendants violated his first, fifth Eight and fourteenth amendment, and not having the benefits of medical oversight from the (BOP) official is questionable issues;

d) As evidence that the defendants involved in Crimes of Apartheid, wen a federal inmate Housed in their custody by illegal contracts, with the status of deportable Alien is evidence they are negligence person;

e) Then, we asking the agencies if *$500, 000, 000, 000*. dollars appears to be a reasonable amount for many years being retaliated against his movement, or effecting his intellect intent to be publicly inform;

1) if the plaintiff filed the various grievances that be resolved at institution level, then settlement agreement can be the solution, for those being barred tho raised the issues from exposure to death control;

2) Then, if that was not a crimes, excluding from raising issues through the ("BOP") administrative remedies for the given reason that is not their issues to prosecute serious criminal by evaluate evidence;

3) Therefore, the ("BOP") aware of the criminal misconducts, for which the plaintiff is invoked the prosecutors and the ("FBI") across the country to perform their duty against human right violations;

4) If the ("BOP"), availed itself, from providing Medical Services to The class Act, of Federal Inmate, they are deliberately indifference means by cause disability function need to compel the facts;

5) They are in violation of the Eight amendment, by housing, Non-violent offenders, to private prisons,  or deportable Alien without any evidence being exile to United States is presenting for public interest;

a) Those issues may be exclusive to all of the private institution, which the plaintiff is inquiring about compelling administrative record, or for additional convictions to be vacated by common sense;

["***Section 287.7 - Detainer provisions under section 287(d)(3) of the Act***"]

**(a)**Detainers in general. Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1. Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.**(b)**Authority to issue detainers. The following officers are authorized to issue detainers:**(1)** Border patrol agents, including aircraft pilots;**(2)** Special agents;**(3)** Deportation officers;**(4)** Immigration inspectors;**(5)** Adjudications officers;**(6)** Immigration enforcement agents;**(7)** Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and**(8)** Immigration officers who need the authority to issue detainers under section 287(d)(3) of the Act in order to effectively accomplish their individual missions and who are designated individually or as a class, by the Commissioner of CBP, the Assistant Secretary for ICE, or the Director of the USCIS.**(c)**Availability of records. In order for the Department to accurately determine the propriety of issuing a detainer, serving a notice to appear, or taking custody of an alien in accordance with this section, the criminal justice agency requesting such action or informing the Department of a conviction or act that renders an alien inadmissible or removable under any provision of law shall provide the Department with all documentary records and information available from the agency that reasonably relates to the alien's status in the United States, or that may have an impact on conditions of release.**(d)**Temporary detention at Department request. Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.**(e)**Financial responsibility for detention. No detainer issued as a result of a determination made under this chapter I shall incur any fiscal obligation on the part of the Department, until actual assumption of custody by the Department, except as provided in paragraph (d) of this section.

c) Those issues could also met reasoning standard to release the individuals across the country under the applicable laws, ["**(b)***Authority to issue detainers.*"], or they are also co-conspirators criminal matters;

d) They are involved in grievous losses, and illegal punishments, that must be protect by the constitution of the United States, which also required the basis adherence due process of law for by enactment claims;

e) Thus, is is true that the defendants are in violation of his Fifth and fourteen Amendments, and equal protection, then what is more for the defendants for the defendants to come forward with answer to facts;

i) The deferential Treatment by the defendants imposed additional concern as matter for absolute jurisdiction under ["***Tucker Act***"], or  ["***The Ant***"], or ['***The activist***"] is questioning judicial official;

ii) They are liable for violated ["***42 U.S. § 1981***"] "Section 1981 has a specific function: it protects the equal rights of all persons within the excessive Jurisdiction, or against discrimination by national Status;

iii) The Practices by the defendants actions constitutes discriminatory apartheid, to even question ["***Social Security Administration***"], to justify their actions within the meaning of the applicable laws;

a) Their actions must not be tolerated practice such as must be declared unconstitutional by violated laws by congress [ *__42 U.S. § 1997(g); 42 U.S. § 2000dd__*'**],** or against the defendants official capacity;

1) The matters is before the courts, ["**17-CV-03194**"] for humanitarian reason. ["Dkt, 129"] pending to filed to the ("USCIS") for inspection of his family, friends, other activists to be admitted by protections;

2) Those protection should not be limited for financial concern, or pauperis status, or part of the settlement agreement with ["***Brandako", Inc***"], that is for additional $ 60 billions dollars to security measure;

3) Under ("MOCMA"), its appears that the plaintiff is inquired about security to protect the ["***Haitian People***"], for ["***Social Benefits***"] before development, while inquired additional person be hired publicly;

4) As such being the cases, the plaintiff is asking Food Stamp Program (FSP) to be implemented, to add Haiti, as the Fifty Fist States within 30 days, or after his team remove from dangerous theory;

5) That is because the defendants should not exposed his ["***Team***"], who are in Haiti,Canada, Dominican Republic,Bahamas,and Ghana,or their officials they are not entitle for qualified immunity extended;

a) Under ("TALA"), at page, 42-50 (B), we asking for worldwide aid with entrusted authority for ['***Trademark Rights***"], or access to important informative ["***Legal Material***"], which additional liability imposed;

b) Then we asking the courts if ["Dkt, 129-132"] are subject to the same analysis  to review as part additional damages, pending to file additional motions, as well as for vacatur those suffered by illegal convictions;

c)  What? is the plaintiff is suggest His ["***Team  Members***"] are entitle for vacutur of their convictions within the 30 days, as well as for their admittance in the United States, and  registration of the corporations ;

1)  As  previously  stated,  we  are  of  the  view   of  the  ["***Actionable  Claims***"],  for  defamation against the  the judicial official for the various alleged allegations, they are against one, or who is informing publicly;

2)  The exercise of that person's constitutional right to petition for redress of grievances should not be restricted by the defendants ["***Control Theory***"] on his freedom of speech, by causing him mental deranged;

3)  That is for additional question for evaluate medical records, as well as to decided his first amendment rights, or damages for $ 500, 000, 000, 000 billion dollars, or within the meaning of the term for injustice;

## FOREIGN AFFAIRS RESPOSIBILIIES ACT ("FARA")

**A**.The conspirators are responsible for all that is said and done pursuant to the conspiracy by their co-conspirators until the purpose has been fully accomplished. If two or more persons conspire to combine to commit a felony, each is criminally responsible for the act of his associates confederates;

1) By the furtherance of the common design,["***Motion for Mitigating Financcial Burdens controversy Evidence by invoking the ["Ant(s)"] Community Act"***] (TACA), and  for the Nations to recognized facts;

2) That his movement against Apartheid he is inspired by ["***Mr. Nelson Mandela***"] as President in 1994 signaled the end of apartheid in ['***South Africa'***],,based on kinship ties with an alleged racism;

3) The same thing happened in the ["***United States of America***"], but in secrecy is necessary for ["***The LION''***] and Foreign-Affairs Responsibilities (FAR), and by avoiding the constitutional conflicting laws;

4) That is under the Qualifications Clause U.S. CONST. art. I, 2, cl. 1; and; as ("***The ANT***") must follow the lead of ("***The Lion***") which explained above in order to detect the ['***Secrecy***"] how its was founded;

5)  ["***The ANT***"] became the plaintiff ["***Nickname***"], or ["***Humanitarian***"], as well as the slogan for his intellectual used for his organizations to protect the foundation of the man that he his inspired to be free;

6) For the people against Secretive Management Operation ("SOM") formed by segregation, and; for the world to understand that ["***The ANT***"] had changed from being Animal to Human kinship;

7) That  is a spiritual thing only in the power of ["***In you we put our trust***"] or the ["***The Lion***"] after his conviction and there is many people just like him after their incarceration required second chances;

8)  Their life, and the additional punishments or, of separation of their families because of their convictions are not necessary and the plaintiff intention now is asking for promoting education around;

9) The world, and to provide award, and for those that their intention is to change after they made serious mistake in their life; and  to use the success of a search to justify their protective liberty of rights;

i) For ["***Mr. Antonio Gutierrez***"], who is the secretary of the ["***United Nation***"] to intervene in this complex matter? by inquiring another ["***Nations***"] for their intervention around the world to end injustices;

ii) That based upon National Origin or because the plaintiff decided to become an activist, and part of the evidence being alleged in this motions for questioning the purposes of contribution to the community;

iii) For ["***Mr. Jhon Andrew Koskinen***"], who is the ("IRS") Director to intervene in this special matters because of his conviction the ("IRS") implemented their policy to excluded federal offenders;

iv) To register his organizations, or additional restriction against him that could effect his constitutional rights to associate for his registration of his ("*NGO*s") in the United States as evidence character;

**v)** That is because of his conviction is reviewed under the strict scrutiny standard, there, the plaintiff sought to bring a constitutional challenge to the existence of the (IRC), which, among for promulgating ;

**vi)** By inquiring for auditing and ethics standards, performs routine inspections of all accounting firms, demands documents and testimony, and initiates formal investigations by disciplinary process;

1) It is appears that during the period of the plaintiff will be release from concentration Camps established by ["***Mr. Jhon Does***"], who is the Director of ("ICE") he might be excluded being potential;

2) For qualifying the activist to promote education and to protect the public against injustice, and for the registration of the ["*("NIPGA*"); which he asks the intervenors to be a witness of his intellectuals rights;

3) As It is clear that ("*NIPGA*") must be exempt under the ("IRC") as an advocate organization that will combat injustice against Minorities, and the electronic, and the electronic system procedures;

4) To one platform with ("*PELCA*"), regardless if in prison, or not; and; it will help in the matter of ["***Good Moral Character***"] that must develop to ["***Education***"], rather than punishment by discrimination;

5) By classification practice that discriminated on the basis of racial has not legal legitimacy for such treatment, or violation; to that extent the plaintiff is declaring that section charitable activity permitted;

6) To be carried on by a non-profit corporation exempt from income tax under section 501(c)(3) of the internal revenue code must be declared unconstitutional in the ground that of strict scrutiny;

7) By the same illegal restriction against those that had convictions; and; for the Director to waive all fees associate with the registration of all of his institutions across the country, requests to be supportive;

8)  By the ("INA") "Section 1182(a) (4)(A) applies to ["***The ANT***"] ["***who at the time***"] of application for admission or adjustment of status is ["***likely at any time***"] to become a *Public charge* inadmissible;

9) There are other meaning for ("***The ANT***") ["***Indigent Persons***"] charged with federal crimes; Indeed, the very fact that an official may have broad discretion, discretion free from judicial scrutiny;

10) That is making it all the more imperative for him or her to adhere to the constitution and to its meaning and its promise by embedding the principle of education neutrality in the equal protection clauses,

11) For ["***Mr. Eric J Holcomb***"], who is the Governor of the States of Indiana to intervene in protecting the plaintiff ["***Intellectual Rights***"] of the above names and all names that being mentioned before;

12)  As well as to waive all fees for the institutions for the organization required by Indiana administrative to promote the good cause, and follow all of the states officials to perform their duty by necessity;

13) Indeed, the statutes only further promotes its goal of family unity, even while also continuing, or by ensure a child's connection to the United States, or when it is otherwise in the public interest;

14) That would be served by imposing a new substantive legal liability, for his generosity to inform all states governors concerning the Uniform law set by Congress authorize states to make decisive claims;

15) The State-funded assistance programs would rational basis apply that had cause; ["***The ANT"], for his wife***"], who is ["***Mrs. Roode A Clervrain***"] constitutional violation because of mandatory fees;

16) That must be applicable against the ("INA"), that is so restrictive of actual violations again. itself, and there is indeed a sharp conflict here; and the plaintiff has evidence on his medical record to compel facts;

17) The government to exercise their power in accordance with section 287.5 of the ("INA"), and to reduce the risk of arbitration making decision and bused of power, thereby helps protect the liberty interest,

a) The plaintiff(s) continue detention after his criminal conviction, if that is not violence or the agencies has evidence of non violent offender, that policy certainly in contraction with congress intent;

b) That is within the same reasons, or the interest unless the government can prove the contrary, and; the public has interest in the ["***Family Unity***"], and the plaintiff has provided prima facie evidence;

c) That is against separation of his family is critical, or evidence of extreme hardship to his wife and his children, and the evidence on the records would have been exercised on his favor the by proposition

d) By the immigration judges for ["**_Mandatory Detention_**"] until evidence of procedures would create additional hardship upon himself and his family that had been waited for years after his incarceration;

e) For impermissible reasons, ["**_The ANTs_**"] could have been ["**_Forced Exile_**"] because for the protection of the ["_The Ants Children Act_"] regardless if they were classified as _Human being_ serious subjected;

f) They all will have to go to ["**_The Mars Planet_**"] that is were most ["**_The Alien Resided_**"] and; these allegations are evidence that the ("INA") is certainly unconstitutional it is the proximate cause;

g) Of the plaintiff being detained for the purpose of emotional distress because of lack of conjugal rights; and;  it appears it is appropriate for the intuitions to start there and because indiana education;

h) That is one of the state that promoting education plainly is a legitimate state interest, and by providing financial assistance for post-secondary education; and; as the volunteering, for traveling doors;

i) To recruit members for the organizations, and focusing on testifying that the organization focused on promoting education against mass deportation and aimed at informed of their rights for family unity;

j) Of course their duties with their husbands and society, the right to vote, the rights to work, and the right to participate in building the society, and that is something the defendants states officials to control;

k) For the Governors to inform [**_Mr. Jane Does_**"], who is the Director of the Indiana Department of Education with the process of Education Accreditation for the institutions additional damages;

l) For the various names that has not been release on motions and ("NIPGA") is the electronic grievous platform for the various institutions and to protect the public interest is involved claim;

m) By the same illegal procedures in proceeding against the (INA) as matter of facts or and for questioning [**_Nature_**"]; and his design was intended to provide at least a specified minimum level of coverage;

n) For all Nations, but the achievement of that goal obviously depends on participation by every country It is true that some persons who are eligible for Medicaid coverage be excluded after deportation

o) That is also questionable issues, or even  for ratification under the ACA may be able to secure private insurance, and   for the Secretary of the United Nations ("UN") to provide international aids;

p) From the ("UN") that can provide assistance of the development of the educative sciences groups, ("*WEDSA*"), and; to inform [**_Mrs. Jane Does_**] who is the Director of ("WIPO") for securing rights;

q) By the same procedures of this cases and to promote the plaintiff great protecting rights around the world against Nations that might have "*corruption proces*s" by implementing secretive criminal activities;

a) To inform or to provide a list of contact of intuitions that the plaintiff may contact for inquiring about registering in the particular country, and the name could be changed based upon the country culture;

b) Of course to promote their lifestyles, religion right , and among others that might be varying interests, diverse cultures, including the University's Language and Culture program for common sense;

c) To inquire about the process of registering the plaintiff names all over the Nations and the registration of the trademark for the various intuitions, and protection is that distinctive against alien markswords;

d) Those names are symbols, and the like can help distinguish and to be deradicalized or rehabilitated and to protect the public, and to reflect the means of education by Correctional Statements of fact;"

e) For which provided for methods for monitoring and auditing compliance established only recommended standards, and that the USMS official here in question, and what their performance far from disparities;

f) That will may be used to express a determination to commit a future act as easily as a command to perform Illegal that activities or against crimes of genocide that is something requred by the federal courts;

g) To that extent asking ["**_Mr. Jhon Does_**"], who is the Director of the ["*American Bar Association ("ABA")*"] to intervene because the plaintiff intention is to challenge their performance;

h) "By the ["**_Model Rules_**"] by implementing it to electronic system that will using automatic electronic auditing so that will promote performance also not available or providing by the concentrations;

1) For all Attorneys and Bar Association across the nation and the system will be live, or in instance, meaning by mitigating the various constitutionally ineffective assistance involved claims of attorney error;

2) By widespread extortion during the course of a legal proceeding, and against mass deportation as well as for challenging the ("MDP") under rule 5.4 which appears to be unconstitutional;

3) That is because of the restriction imposed against ["*Pro-Bone Representative*"] who might have the same skills with that the various attorney's omissions with respect to deportation resulted by effect assistance;

4) For the Registration of the ["*Pro-Se litigant Bar Association*"] or ["**PSLBA**"] an International Bar Organization ("IBO"), which will work with all ("ABA") and to implement a unify platform;

5) That is against the ["**Apartheid**"] claims, will promote people to understand the basis of their rights across the world so that they will not have be committed crimes, and for them to defend legality;

6) That their families would have been unthinkable by serious acts presenting ins this motions and cases across the county, and for the prevention of Criminal Enterprise that is effecting nations;

7) By means of secretive extortion ,equivalent to targeting the protected them as the plaintiff is presenting, and; it is because it will eliminate retaliation in the workforce as well in prison industry illegality;

8) Whereas there the group, meaning that we must protect those you have no funds to pursues lawyers when they are serious difficulty because of the mandatory detention against secretive restrictions;

3) For those reason, the plaintiff asks the directors to provide him all of the ("ABA") directors across the country because they all are involved in the Scheme of Manipulating the market by extortion;

4) By the same way of failure to implement policies that could have had abolished Apartheid long before the plaintiff  suing them all for negligence and conspiracy these case is about the lawfulness;

5) Of a tax in the ["***Patient Protection and Affordable Care Act***"] ("ACA") and of a regulation that the United States Department of Health and Human Services ("HHS") uses to illegally implement;

6) The ACA imposed a tax on medical providers but exempted the states from paying it. Notwithstanding Congress's direction in the ACA, the HHS regulation effectively requires the states to pay this tax;

7) The  Plaintiffs now challenge both the tax and the regulation, that is because he is having standing to challenge the (INA) for additional reliefs, the Court must decide the legality of each controversy claims;

8) The Federal agencies had placed him in the several institutions for the sole purposed of retaliation, and he had suffered substantial injuries and even irreparable harms, because they cannot be adequately

9) The remedied through monetary damages, and; even if we characterizing the collateral harms to his children by placing him Concentration camps after incarceration whose parent is illegally detained;

10) As the irreparable harm, and to that extent we must recognizing "separation from his family members as an important factors in the balance of hardship for consideration because of those above matters;

11) As they are inadvertence, surprise, or excusable neglect that manifest injustice would result if the courts did not consider such evidence or arguments ,*only* where extraordinary circumstances;

12) To prevented the plaintiff from taking timely action to prevent or correct an erroneous judgment, or relief from the judgments; and; this motions representing newly discovery evidence compelling needs;

13) That could not  have been discovered thought diligence in time for motions for new trial because the plaintiff is being retaliated, even so the lack of resources of the private institutions illegal practice;

14) That is ("DTA") or the law congress established against degrading Treatment, in contract with the various agencies, and state officials, and  will impeding him to file this motions in pieces by facts;

15)  If congress designed the help protect victims of eligibility requires a determination by the Secretary of the ("DHS"), who ["***Mr. Kirstjen Nielson***"] to intervene because the plaintiff has suffered injuries;

16) Of evidence for establishing physical or mental abuse as a result of having been a victim of [covered] criminal activity while in his custody by federal Officials function as well as the states officials;

17)  For ["***Mr. Francis Cissna***"], who is the Director of the ("USCIS") to intervene in all matters in this motions relating against his employees for failure to perform their duties, by taking right  appropriations;

a) Of actions in accordance of the laws established by congress that creates "a statutory right or entitlement the alleged deprivation of which can confer standing against the defendant for their negligence's;

**b)** On or about April, 10, 2019 the plaintiff asked  the Immigration court ("IC") to terminated his removal proceeding in light of the circumstances of the evidence**,** including the demonstration;

c) Of his diligence in attending deportation hearings, maintaining contact with during deportation proceedings, and promptly seeking to redress against illegal order of deportation by unjust classification;

d) By the challenge that he met all requirements as a ["***U.S National***"] in accordance with congressional intent and to support his analysis and to the extent that legislative history serves as legitimate evidence;

e) *If Congres***s** is clear in this matter of these cases of controversy for exceptional circumstances in the review by the agencies expertise is within the courts for analyzing the facts against kidnapping;

f) From future removal proceeding for ["***Mr. William A Cassidy***"] who is the ("BIA") advisory counsel to weight all the evidence, and; If whether or not a traffic violation should excluded of rights;

g) For public Ceremony; and the ambiguities in criminal statutes referenced in immigration laws should be construed in the plaintiff's favor of the plaintiff who is the humankind against favorable discretion;

h) Here, the Attorney General, who is ["***Mr.William.P Barr***"**]** and [**"***Mr. Charles Adkins Branch***"**] who is the chairman at ("BIA") reached are resulted with the same conclusion by wrongfully alleged;

1) if whether a traffic violation would excluded him from the following statutes hat is relevant to the evaluation of the plaintiff claims, and his Interests of the statutory provision was arbitrary violated;

2) By the same of process of illegal restriction , or  Naturalization proceedings; and Of course, the purpose of congress intent is the ultimate touchstone in every preemption for the primary is discerned;

3) From the language of preemption statutes and statutory framework surrounding them. 8. U.S.C 1101 (a) 22) (B) by a manifestation of ["*Permanent Allegiance*"] to the United States, code for justifications;

4) [T]he road to ["**_U.S. Nationality_**"] runs through provisions detailed elsewhere in the Code; In any event, because the plaintiff  can prove that he is a ["*Non-Citizen National*"],by international laws;

5) That even so, he is entitled to a certificate under ("INA") 341(b) in accordance with congress intent for passing the Act is to overrule the same  majority opinion that had never challenged issues;

6) For ["**_Mr. Michael Pompeo_**"] who is the Secretary of State to intervene in such exclusive, or complex situations while being in concentration camps without justification because of agencies claims;

7) They are violated the Naturalization clause, and  under the Due Process Clause for procedural due process  of the constitution of the United States;and for additional protection against the practices;

a) Although along with this motions the plaintiff attach a copy of his [*"Promissory Oath"*] to defend the united against Domestic Terrorism Actors ("DTA") for the secretary performance by right classification;

b) That is a request within the (INA), such as the private institutions that are currently promoting [***"Degrading Treatment"***] in all of their institution across the country for compelling evidence by states;

c) Those claims are very complex, and the lack of resources is other issues that  the plaintiff have suffered substantial physical and pain suffered, that the defendants had cause while in their controlling theory;

d) For the Secretaries to provide any substantial reason for not accepting his requests for [*"National Status"*] as mandate by the ("INA") under congressional intent to limit an agency's arbitrary powers;

 e) For  the secretary to delegate his staffs by  getting the mandatory job done merely from a specification to act by a certain time,and by questioning if ("ICE") officials are violated criminal law by kidnapping;

1) That is that say that there is a big different between ["***U.S Citizen***"] and ["***U.S National***"] as well as *["**National Status**"]*, and by invoking the courts jurisdiction for his declaration of his promoting rights;

2) That is under for ["*Unambiguous*"] to answer to the interpretive question at hand for the appropriate responses against the agencies involved in crimes against Humanity is matter of facts for justifications;

c) For the Secretaries to inform all of the State secretaries across the country that the plaintiff has a surprise for them because they had failed to act by allowing the federal official to promote widespread crimes;

i) That is Act of estoppel silent, or Gross Negligence, and for the benefits of their political reasons but ignorance of the law is [generally] no excuse for violating international law, for failure perform duties;

ii) Their officials function; and for the Secretaries to release all Treaties between the United States and all other countries around the world regarding ["***Nationality Treatment***"], and for the right classifications;

1) To initiate the ratification of ["***National Criminals Act***"] ("*NCA*") into ["***Ratification Punitive Act***"] ("*RPA*") which is premature, and; for inquiring about mitigating discrimination by desperate treatment;

2) If the ("INA") that was form in 1996 to protect the of ("DTA") by establishing a Widespread practice against *the protected class* which the plaintiff is presenting that appears to be called class of Aliens;

a)That is being challenged, and which also the question for the Enactments of the; ["***National Treatment Provision Act***"] ("*NTPA*") for befitted those that are denied citizenship by right of certainty;

b) For the same opportunity protected by ["***Nation Union Treatment  Act***"] ("*NUTPA*") or the international laws against ["***Kidnapping***"] or serious criminal violation by tortures immigrants illegal detentions;

c)For ["***Mrs. Katheen McGetting***""], who is the Director of ("OPM") to intervene by initiating monitoring procedures, while plaintiff is proving that the ("INA") should be benefits the public interest;

d) That can not be justified by clear evidence and for issuance of his protection while dealing the various Criminals; and; who living  assumption for the same reasons by illegally deporting innocent families;

e) For ["***Mr. Kennethe A. Blanco***"], who is the Assistant of ("OIA") to intervene in the claims against the Federal and States officials Across the country for appropriate sanctioned negligent conducts;

3)That is to say to litigate or investigate the claims against them or whichever is appropriate in accordance with his duties established by the Attorney General in such important circumstance for protections;

4) That will future illegal practice against future disaster of intentional acts by the agencies against Minorities, and they are question for the each of the agencies to take appropriately for right investigation;

5) By **["_Mr.Herbert C. Hoover_"]** who is the Director of ("NTIA") to intervene, as the plaintiff will need his assistance, or to facility the ["**_Right Information_**"] as necessary in light of the circumstances;

a) For litigating complexity of the cases that required appropriate Technology and Resources for which the defendants should be liable for all fees associates of the plaintiff needs for the specific information;

b) For ["**_Mr. Eric A Johnson_**"], who is the Director of the ("OIG") to perform his duties by initiating investigation against them while the procedures in placed, as well as to facilitating evidence records;

c) To effectively mandate of the plaintiff request for Criminal investigation that might required the several agencies Across the country intervention at the government expenses against mass detentions;

6) For ["***Mrs. Hope Shimabaku***"], who is the Director of ("USPTO") to intervene in this sensitive matter that involves the plaintiff intellectual rights because while in prison he designed complex platform;

a) The ["***True change***"] or software that contains all the acronyms being used in the courts, in particular the court must issued a protective injunction for ["***The Ant***"] and ["***The Lion***"]  for his patent rights;

b) That could shift from case to case, then the result could be  a zone of uncertainty which his ideas of intellectual rights and experimentation may enter only at the risk of infringement suit against restriction;

c) Those  issues in this cases might be of a type that must be decided, and for the issuance of abolishing discrimination from the ("INA") that one individual that was not born in the United states be protected;

i) That those individuals may not be the most perfect human being ever by afforded them a second chance when they committed their first offense is certainly unreasonable when surrounding by conflicting laws;

ii) For that being to say, without the flexibility for reliefs must be declared unconstitutional by itself for mandatory deportation is subject to review against ["***favorable discretion***"] by mandatory discretion;

b) For the word ["***Perfectionist***"] to be excluded in the ("INA") by implemented the ["***First-Step Act***"] ("**FSA**") as well as the ["***Second Chance Act***"] ("**SCA**") or in other word  is to implement rights;

   1) That is the proposed law is within  the "*United States Immigration Guideline"* ("**USIG**"), and to eliminate the current classification that was designed to promote injustice for punishment as second chance;

   2) For questioning the unjustifiable ["***Inadmissible Alien***"] that is conflicting with criminal laws by mitigating double punishment without cause after imprisonment; or false imprisonments practice established;

   3) They are violated  international laws for years , or violations of  the core rights of self-defense that it 'amounts to a destruction of the constitutional Amendment right  is unconstitutional level of scrutiny;

   4) For each Directors assisting the plaintiff in the process for grant for the software, as well to protect all of his names that will protect the ["***American people***"] and (LPR) against illegal mass incarcerations;

   i)That is for promoting the ["***The true Change***"] of law by  right Recidivism factors and any other resources the directors could referred the plaintiff in the proceeding of this cases must be granting reliefs;

ii) For Instance the purpose of ("*PELCA*"), which will help in the procedures by mitigating the various frivolous claims in courts because the prisoners are ["***lack of resources***"] against broad security measure;

iii) That is against the prisons officials allegation of security will not be an issues if there is something that they can manage their broad security measured for unjustified classification by their failure to act;

a) As well as to eliminate the various claims in courts for ineffective assistance of counsel, in particular, if there is system that will mitigating deportation, and crimes for even questionable widespread claims;

b) That means if there is no reason to have Immigration Lawyers if they can not help in the procedures, and by establishing a fair classification before deportation; or fairness against favorable discretion;

1) For an establishing an electronic Auditing system that cease the practice of ["*feemail*"] by all ["***Attorney Malpractice***"] by ["***Extorting Funds***"] without justification that is right question presenting facts;

2) That facts can not be find no where, but a victim of the corrupt system, if whether he can show that he was prejudiced as a result of the defendants ["***Mr. Jhon Does***""] while in illegal removal process;

3)For the Secretaries of the Education at ("DOE") to intervene and for the implementation for the ("CJA") into the ("INA") as well as (HEA)  by promote fairness for those that are indigent recidivism rights;

i) For the secretaries to question so such matters if whether or not ["***Tax Collection***"] could have been the proximate cause of ["***Mass Deportation***"] against against those that are contributed to the community;

ii) Those are evidence that can be  prevailed in the procedures of the controversy, if whether or not there is a probable cause exist as a matter of the  public interest by enjoining implementation;

a) Of an illegal laws, and the line of these cases involving the removal of aliens is therefore readily not distinguishable from cases involving ["***Social Security Benefits***"], "W*elfare Benefits*" by employment;

b) That is because he believed his mother  "ha[d] enough credits to qualify for benefits after being deported from the country that she had been contributed for years, and she victimized by administrate crimes;

c) For [***Mr. Jhon Does***] who is the Director of the Social Security Administration ("SSA") to provide if whether or not the plaintiff Mother who is ["***Josette Jean Jacques***"] a victim of withheld Tax fund;

1) That is before, or after the collapse of deportation, or apartheid by the agencies after 1996, and that had caused her the various injuries in facts, she is still confronting including victim of extortion issues;

2) As such her parental role support and the emotional toll of breaking up the family unit; and; the plaintiff, or ("*The Son, of the ANT' Mother*") that is believing that his mother situation is the most precious;

3) By the predators have ever done after evaluating the evidence, thing ever in life, which the defendants had caused several of her children went to prison because she was not there to provide resources;

4) They need for their education to add the term expert advice or assistance; and the plaintiff is asking for ["***Retroactive Effect***"] is involved in this case, for the legislature has not attached disability;

5) To past conducts, and for her to come back to the United States after the several years of pain and suffering because of her conviction of ["***Illicit Trafficking***"] violation for which she has been rehabilitated;

a) Of course, she is a change person, the plaintiff on her behalf willing to address the personal issues that led to her conviction further in the procedures of this complex litigation as additional evidence;

1) For that reason the plaintiff is dedicating himself to end the practice of Mass incarcerations practice for Enacting, ("IRSCA") the plaintiff mother has been suffered the various act of injustice by wrongful acts;

2) They had caused pain, and suffered, because of the Separation of her children, and the punishment  is too severely increased and the punishment extends to the family for questioning the genocide practice;

a) Here, section 101(a) (43) et, seq of the ["***Immigration and Nationality Act***"](INA), as set forth in 8 U.S.C. 1101(a)(43), is the proximate cause of  ("*MIP*"), and that is another reason to say it is a conflict laws;

b) For questioning the criminal laws, or as evidence to prove that, it fail ["***Intermediate Scrutiny Practice***"] ("*ISP*") by not serving an important interest in public safety justification for additional claims;

b) As the plaintiff challenging the laws, and states that, Congress has "broad power" over immigration-related matters and can choose to implement the Second Chance Act to benefits all deportable aliens;

c) That his intention is to prove that agencies interpretations of the statute that produce "an unjust, unreasonable, or absurd result hat no rational legislature could have intended any governmental issues;

1) On or about March, 18, 2019 the plaintiff file a motion to the district court California ["18-CV-01716"] with the intent that the ["***Federal officials***"] failed to intervene in the serious complex violations;

2) As one of the claims against them for enabling the laws within the states, which plaintiff will have to file in all states across the county including the ones at issues for the same reason for factual context;

a) Therefore, the Governments officials in the controversy are liable collectively for the ["***Mass Incarceration Practice***"] (MIP),, and ["***Mass Deporation Practice***"](MDP) its true they are complex issues;

b) By providing him legal materials, and the above cases must  filed for the same intent therefore this court should follow the step in this motions under the applicable rules as they additional evidence

c) For amending is motions to all distinct court around the country, and  it appears that only reinforces what the Supreme Court would have said by explaining why a national policy on immigration impeded;

d) By the whims of the various states is paramount, and because of its ["***Treatment of Non-citizen***"]  to ensure their ["***Unjust Enrichment***"] by failure to act against the ("INA") that is negligence per se;

1) Moreover, due the fact that plaintiff lack of resources for those claims that required not just ["A***dequate of Law Library***"], but ["***Internet Access***"] and [" ***Communication***"], variety of variable resources;

2) From the States and Federal agencies, and International partners to prove his claims, this current institution does not have access to the ["***Model Penal Code***"] ("MPC"), that is a question for national reliefs;

3) That is because many States in enacting ["***Illicit Drug Trafficking*** "] ("IDT") criminal offenses have adopted the ["***Model Act***"], the question whether a conviction for the particularly are relates matters;

4) By invoking the  federal controlled substance is likely to involve relevant differences in state statutory language for excluding them to ["***Mandatory Deportation***"] when they committed their first offenses,

a) The evidence presenting to the courts will be in favor of the legislature history and plain language of the Act, for invoking the Rules Enabling Act, 28 U.S.C. 2072 to takes precedence over controversy claims;

b) For the above reason the plaintiff is questioning the Director of the ["***Democratic National Committee***"] ("DNC") who is ["***Mr. Jhon Does***]" for their input in that matters in such public interest ;

c) If whether or not Former Presidents was wrong in the matters by separated several families without giving them a second chance when they committed their first offenses that they can not be re-adjusting;

d) To their community and that this activism movement may not led to severe reprisals as the plaintiff had suffered for years, which required the international intervenors as additional issues for publications;

e) For [ "***Mr.Jhon Does***"] to intervene at ["***Republican National Committee***"] ("RNC") , and for him vigorously dispute this claims, that is because the plaintiff intentions to prove that both institutions involved;

1) By the alleged conspiracy to ["***Manipulated The Market***"] by means of enacting illegal laws to ["***Benefits Privatization Schemes***"] ("BPS") and ["***Mass Deportation Practice***"] within reasoning issues;

3) At this point if the institutions now are planning to kill "the small animals"] for the allegations in this motions, which they are liable, that is part what? ["***The ANT***"] is contacting them for right changes;

4) By the spirit of ["***In You I Put my Trust***"], meaning they have no ["***American values***"] to even implemented such punitive acts, and for the Directors should release all the member political parties;

a)Their management of each states After the [" ***Election***"] because the plaintiff need to know which one of the senators that is ["***Supporting Criminal Activities***"] ("*SCA*") for questioning their involvements;

b) The plaintiff now is asking them the reason that, we should not used ("SCA") in ["***Favor of Deportable Alien***"] ("FDA"), Rather than ["***Greed Capitalist"]*** that is something for the courts to justified  facts;

1*)* On or about December 31, 2019,  the plaintiff a  motion on his case in Kansas [*18-CV-03039-SAC"*] with the intent to prove that the senators across the country misconducts *shocks the Public Conscience;*

2) As being inherently base, vile, or depraved, and contrary to the accepted ["***Rules of Morality***"] and the ["***Duties Owed***"] between persons or to Society In General is being deprive by widespread crimes*;*

3) Therefore, they are words, or "an act which is per se morally reprehensible and ["***Intrinsically Wrong***"] and is "accompanied by a vicious motive or a corrupt mind  individuals illegal deprivation;

4) For those reasons the plaintiff is questioning the Solicitor General who is ["***Mr. Jhon Does***"] for his intervention in these sensitive matters and if ("*The ANT"*) as an ["*Animal*"] has the due process rights;

a) If the quality of the impeachment evidence to presented by the government against each of the above criminals and the allegations in this motions contains the various illegal or constitutional issues;

b) That was the proximate of the senators failure of ["***Ratification Theory***"] claims, and; For the appointments of Independent Counsels who is ["***Mr. Jhon Does***"] by the Attorney General to obtained facts;

c) By the grand jury subpoena seeking information about ["***Political Contributions***"] ("PC") by persons having ["***Financial Relationship***"] with one side yet persuade the other that for the courts opinions;

d) Of course that is between the ["***Mass Incarcerations Practice***"] ("MIP") and the ["***Widespread Criminal Enterprise***"] ("WCE") against each of the senators since the beginning of Crimes of Apartheid;

i) That was established since 1996 which all are involved in the conspiracy, moreover, the complexity of the software while being a victim of the defendants actions which is not mentioned in these motions yet,

ii) That is required the several states and international intervention because of complicated treaties, and laws, in particular it's required additional subpoena power available for litigating additional facts;

a)  Under the ["***Immigration Reform and Control Act***"] of 1986 ("IRCA"), or repealing

with the ["***Informative Reform Comprehensive Act***"] for promoting additional relied against

favorable discretion;

b) For the ["***Secretary of Department of Education***"] ("DOE") who is ["***Mr. Jhon Does***"]

of Every states and countries, and those claims are premature, and because of lack of resources by

illegal custody;

c)That the restricting imposing against him to properly addressing all the issues concerning

against the predators or the ["***Serious Criminals***"], which they failed to even classified themselves

within reasoning;

1) For ["***Mr. Alec Palmer***"], who is the Director of ("FEC") to initiate investigation on the

plaintiff claims for the violation of his voting rights, as well as for the advocating of the rights under

applicable laws;

2) For those that met the standard for ("UNCA"), for a preventive injunction for not

excluding any person to ["***Public Ceremony***"] or their right to vote because that violations is for

justification claim;

3) If that should have been considered violations, which is not consider serious crimes under

the scheme act established by the Senators for release all of the politician administrative record for

additional evidence;

a)   For investigating if whether if  the ["*Democratic National Committee*"] ("NDC") and ["*Republican National Committee*"] ("RNC')  might be involved against  ["*Minorities*"] for the purpose scandals;

b) From the ["***Practice of Genocide***"] ("*POG*") became if  the most populated individuals no longer Europeans decent they might be a serious concern, and for African or Spanish takes the senators positions;

c) If those questions can supporting by even circumstantial evidence, we ask the defendants if that could have been the reasons ["***Mr. Bill Clinton***"**]**, who was the former the President enacted the conflicting laws;

d) As the ("***Chief Deportation Officer***") ("CDO") might have repealed the ("INA") and he had created the messed that had caused the Several death and separation of families; established by Act of God since 1996;

1)) Of course he is the only ("CDO") ever existed, and we should not called former president ["***Mr. George. W Bush***"], and former President ["***Mr. Borack H. Obama***"], but they certainly lack of common sense;

2) To that extent the other former ["***Mr. Donald Trump***s"] who has proving evidence of ["***Racial Discrimination Behavior***"] ("RDB") actions that are themselves based on race--are constitutional claims;

3) That because they all are ["**_Anti Democracy_**"] only where there is a '"strong basis in evidence that the remedial actions is necessary for defining democracy first within the sames reasoning power;

4) The former presidents or the defendants have been contributed on the illegal laws or they failed to veto the ("INA") which plaintiff intention will file a complaints against all of them for failure to ratify;

a) That is because the plaintiff is reminding the court that he is currently and ["**_Indigent Activist_**"] and that his cases are not frivolous for altering the judgments under the applicable laws to manifest justice;

b) For the writ of mandamus*, and; *as* the representative, who is believe in ["**_God_**"], or referring to ["**_The LION_**"] and his intention is to the light of the light of the purely economic illegal wrongdoing acts;

c) By the act of ["**_Mass Deportation Practice_**"] ("MDP") is certainly ["**_Anti-Americans Values_**"] ("AAV"), it is wrongdoing against ["**_Family Unity_**"], who appears to be the Parents of Any American concerns;

d) The above defendants not to Exclude to the ("COD's"), and the senators and congress intent is clear in that matters; and the above should be liable for all resources needed, not to exclude all devices;

5) As well as for his travel expenses, Legal software and Research materials because after his detention is over is when the cases will be really started, and because of that the plaintiff ask for general damages;

a) For each cases or every states against the defendants that are part of the controversy in their own jurisdiction that is a question to the courts by the word ["**_Indigence_**"] that can be included in the Fist Step Act;

b) That the defendants are liable for all motions files previously because their illegal contracts is the proximate caused by not having them and their partners will not make any copies while in their illegal confinements;

c) Of course the complexity of these cases are so required him to amend each of the motions being filed and the complaints across the country for the issuance of the ["**_Ratification_**"] of proposed of laws;

d) As additional evidence is for prevailing that the act contains the various ambiguous terms, and for justification sufficient to outweigh one's 'constitutionally protected interest in avoiding physical restraint;

1) For ["**_Mr. Wilbus Ross_**"], who is the secretary of the Department of Commerce ("DOC") to intervene for considering the plaintiff as an ["**_Indigent_**"] individual as additional protection against the theories;

2) As well as for his Trademark Registration Notice ("TRA") and another word to delegate federal officials to perform their duties in the process of certification for Trademark against the domestic terrorism;

3) For ["***Mr. Ted Cruz***"], who is the Senator of the State of Texas to inform his cabinet office officials regarding the plaintiff rights under the patent right clause of the constitution as additional relief by ideology;

4) That  is because if the patent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from ["***The ANT***"]'s right to exclude him from his intellectuals;

5) Of his great ideas from privacy and the above corrupt individuals; and; for ["***Mr. John Cornyn***"] who is the Senator of the State of Texas to inform his officials in his cabinet by initiating proper process;

6)  For the plaintiff substantial rights, and resources in the process of the Enacting the several laws against Mass incarceration Practice across the country, and by  promoting justice, or mandatory right discretion's;

a) For all senators who are defendants in their own state to work together by intervening in the process of this litigations, which is so complex for their assistance in the procedures and for the issues by ratifying;

b) By the various laws that should have declared ["***Void For Vagueness***"] ("*VFV*"), and that was an impermissible regulation of immigration under the Supremacy Clause provides a clear rule that federal law;

c) By the powers of congress as the Supreme Court recently confirmed, the anti-commandeering doctrine applies with equal force to federal statutes which tell states to "enact" certainty of rights;

d) That the federal statutes which tell states to "***refrain***" from enacting certain types of laws here, the Courts must agrees for enactment of (UNCA), as well as every other courts to have consider issues;

i) For them to inform ["***Mr. Jhon Doe***"], who is the Director of the National Institution of Correction ("NIC") for their intervention in the process of mitigating abused of policy by Federal and State officials;

ii)That is currently occurred across the country against ["***First-Time Offenders***"], and for the implementation for resources for recidivism in the prison industry for the vacatur of the widespread illegal contract;

iii) By the wrongful Acquisition which the proximate cause of the plaintiff injuries, and  for them to inform ["***Mr.  John Doe***']  who is the Director of the  ("ABA") for their intervention in the legal procedures;

a) As well as for mitigating illegal practice by immigration lawyers for their extortion if they are bar to help people that are classified as *Aggravated Felony*, that is that say a legislature that is contains illegality;

b) By the mandatory provision is unconstitutional on its face and For them to inform ["***Mr. John Doe***"], whose the Director at United Sates Sentence Commission ("USSC") for their impute in the constitutionality;

c) For the implementation of the ("USIG") by mitigating Mass Deportation Practice without any vagueness doctrine in the ("INA") rests on concerns about fair notice and arbitrary enforcement rendering invalid;

 1) As it is, or for which it is being challenged across the country in the various Federal courts for their majority opinions for questioning the agencies action against illegal punishment by way right process;

2) For them to inform ["***Mr. Jhon Doe***"] , who is the Director of the Office of education and Sentencing Practice ("OESP") for their input on the ["***ISSG***"], and for mitigating Mass Deportation by way of fairness;

3) That certainly will promote proper classification and to abolish tacit authorization of that constitutionally offensive practice against favorable discretion that the defendants claimed to be the most appropriate;

a) For ["**_Mrs. Esther Alcocer Koplowitz_**"], who is the Director of the ("FCC") to intervene with the Price Gauging Operation with the Federal and States Correctional officials by contact the Greed Capitalists;

b) of course, those Actors ("GCA") as evidence to provide the defendants intentionally acted with malicious misconducts to protect themselves interest by way of illegal contract is presenting for additional issues;

1) For the defendant at least look at dictionary to understand the differences between a ["**_Civil Detainees_**"] and ["**_Criminal Detainees_**"] which is seem to be a serious constitutional violations for controversy claims;

2) As well as for the vacatur of their contracts obligation in accordance with the establishment of the contract clause; and the violation of the Telecommunication act of 1996 for additional factors;

3) For them to inform ["**_Mr. Jhon Does_**"], who is the Director of the ["_Uniform Law Commissioners_"] (ULC") for their intervention in such complex litigation across the country against illegal practices;

a) That is because the defendants actions were foreseeable future to set procedures for dealing with situations, and failed to realize the facts that the constitution provides congress shall have legal power;

b) To regulate commerce with foreign nations and establish uniform laws of naturalization and the implementation of the ["***Choice Law Provision***"] (*CLP*) within the meaning of the international laws;

c) For compelling each of the countries agreements, and common law tort on ["***Nationality***"] that is a matter that is very complex might required the defendants to reason the plaintiff right away by kidnapping;

4) As such being the case we ask the courts where in ("INA") states that a person have to be born in the United States to claim ["***National Status***"], while the immigration judge affirmatively misled to believe;

5) By failure to provide him with contradictory and incorrect instructions, and we ask ["***Mr. Michael J. Creppy***"] to intervene by justify the judge negligence misconducts that might appears nationwide issues;

a) For All of the Federal and States officials, which they are defendants, and but failed to realized that ["***one who might thought***"] not a citizen of the United State may entitle to relief from international laws;

b) They certainly acted with malice, which should have been classified as the most serious crime in accordance with the law of the ["***Nations***"]; and by way of contract laws, and; with aspects of the family unity;

c) For the defendants justification for "*social visibility*" is that it is derived from the United Nations High Commissioner for refuge's ("UNHCR") interpretation of the ("INA"), if whether or there is conflicting;

d) Of laws between the ("INA") violates the customary of the international laws, and that is giving rise to jurisdiction" under the ("FSIA") in connection with a commercial activity carried on in the United States;

e) If the United Nations' Universal Declaration of Human Rights ("UDHR") does apply to those that intentionally renounce their citizenship under Article 15; allows the plaintiff to compel the determinations;

f) Of any claim adverse to arbitrary action for which the agencies makes unavailability of other reliefs at the time of the procedures; the zone-of-danger rule, with bodily harm in consequence of the defendant's;

g) For questioning them if whether or not ["**The ANT**"] should have been in removal proceedings because the evidence provided it's clear about the violations against him for discriminatory issues;

h) , That is required for the ["***Issuance Of Publication***"] ("*IOP*") in this matter and if whether or not he met the requirement for a ["***Stateless Person***"] because he previously renounce his previous nationality;

1) Of the Republic of Haiti, and; for the  Haiti Ambassadors, ["**Mr. Jhon Does**"] to evaluates all claims in this motions to protect those that are similarly situated against mass deportation, being illegally tortured;

2) The interest of the Haitian people, or in particularly ["***The Ant's Mother***"], who is currently a citizen of Haiti, and to provide all resources of all Politicians of the state the cabinets of the senators process;

3) For  the enactment of the Laws, and for each  ambassadors to inform all Organization across the Union States for their intervention to protect the ["***Interest of the Humanity Communities***"] against  apartheid;

4) As the majority of the populations are citizen of foreign country in the first placed, and for the Ambassador to release the information to ("***The ANT***") , and to investigate how many of their citizen victimized;

5) By the  illegal practice of   mass deportation, during  the period  time of  the  Crimes  of Apartheid by the defendants, or were victim of refusing to provide them ["***Asylum Status***"] because of the bureaucracy;

6) That is  also called the Bureaucracy Gang Operation ("*BGO*") , or the (BIA), and  for the Ambassador's to release and investigate how many of their citizen that are not currently part of the for social benefits;

7) As we are proposing for those  that is not currently received ["**_Retirement International Benefits Act_**"] ("RIBA"), and how many? Of them that  have been deported by illegal practices in their own resident;

8) Therefore the period of their constitutional violations, or for the violations being alleged in this motions across the Nations for ["**_Additional Evidence_**"] on those matters are so required against negligent conducts;

a) For the Ambassadors to release, or investigate how many?  individuals that were victim for Naturalization because they have traffic violations, and to provide if that should be considered as seriously crimes;

b) As well as, if or And how many?  those were served the ["**_United States Military_**"] ("USM") and that being deported after committed crimes that allegation is very serious to question the united nation practices;

c) For the Secretary of the Department of Defense to intervene in this matters who is ["**_Mr. Jhon Does_**"] for his mercy to promote ["**_In God We Trust_**"] as a the true patriot like those who served the country;

b) For the ambassador to inform all politicians of their government that the plaintiff has a case against them for failure to act against the Apartheid, or  anticipating in a conspiracy against the nations citizens;

1) By means not to considering to implement Article 15 , and for promoting degrading treatment, and for them to  release their true condition of their prison in their country as additional issues for evidence

2) For the ambassadors to provide all names of the politicians and institutions that involved for enacting laws, as well as they should provide the plaintiff legal resources to protect the right of the nations citizens;

a) Of course under (MOCMA), it is for promoting justice, interest of mass populations exist for protection in their  community as permanent, rather to be classified as temporary is matter required intellect;

b) For the ambassadors to provide all names of their administration in each states , as well as to inform all other nations about these cases against them for failure to intervene in such complex public concerns

c) By allowing Mass Deportation Practice against innocent civilian around the Nations that alone required the ambassadors to justify their action by providing the plaintiff the primaries of their country newsroom;

d) For the Ambassadors to intervene in the protection of the plaintiff's intellectual rights, and for patent registration, and trademark procedures to protect the children in every country education commonwealths;

3) Of course, all fees must be waived for the interest of the community, and for mitigating poverty around them after they suffered from injustice or any other ["**_Evil Act_**"] that the defendants duty is questioned;

a) For the Ambassador to consult with the Ambassador each other country regarding the concerns being challenged against them, and for their involvement in the event of this serious situation alleged

b) As well as for the registration process of intellectual process in their country by contacting ("WIPO"), and that is because the plaintiff has not release those names need to be register for each countries;

c) For the registration of the: ["**_Communities Educative Leaders Developments organizations_**"] ("_CELDO_") that is required them to provide the plaintiff additional support for common character;

d) For the Ambassadors to contact with "["**_Mrs. Elizabeth Dougherty_** "], who is the Director of the ("USPTO") with the process of registration the above name and to contact other country for right assistance;

1) As well as for the process of mitigating degrading treatment in the prison industry around the world and that must end every where regardless ,if the country is ["**_Poor_**"] or rich that is serious for performance;

2) For the Ambassadors to work together in the processes of registration of ["***International Prisons Standard Association***"], ("*IPSA*"), and for the issuance to promote good condition of confinement

That is that concerns for the world and for the United Nation to take appropriate sanction of those who refused to promote (NUTA), and there should be injustice or illegal detention as matter nations standard;

8) For the ambassadors to contact all politician regarding the process to promoting good prison condition in their county and for them to inform all nations support the cause for relief against barbaric;

9) By the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, those claims are matters that the plaintiff are questioning each defendants actions

a) For UNHRC to inform ["***William P. Barr***"] , who is the Attorney General for his intervene in this matter of discrimination against because of being ["***African***"], and to explained if the plaintiff victimized;

b) For the Ambassadors to know he has the right of his renunciation, and which has been done to the proceeding of the Naturalization; and we resist on the interpretation of the statute that would produce factors;

c) From the troublesome result, or create procedural anomalies, and closed our door to a class of individuals of evidence to exclusion of allegiance seeking reviews of the agencies actions based on the seriousness

d) Of the violations can be furnished grounds for equitable estoppel; and  can  only be apply against the government in the immigration context as the plaintiff is prevailing in this cases for extraordinary issues;

e)  To excuse any untimely of his administrative procedures; as well for the government not trying to use his current conviction against him as they are not related to exclude him from public ceremony practice;

9)  As a general matter this court has an absolute duty to question the ("USCIS") by evaluate the evidence presenting, if whether or not congress is clear on the matter explained for the enactment laws;

10) As well as for reopening as an exercise of its sua sponte authority because it perceived the legal background and thought, correctly, that a reopening would necessarily be as an extraordinary remedy situations;

11) That to reserved for truly exceptional situations presenting to the courts, it is to say that we must have enough evidence for  majority ruling concerning traditional negligence by the defendants failure to perform;

## RIGHT ISSUES FOR CRITICAL ACT ("RIFCA")

**B**.The selective-prosecution claim challenges 1)-["***Attorney Generals***"] "'broad discretion' to enforce the 2)-["***Nation's criminal laws***"] he is "demanding" and, further, there is a "'background presumption' that the showing necessary to obtain discovery should itself be a significant rights;

1) Of substantial the claims.a)-["***Motion For ["State Of Florida"] ("FLA") [" National Arbitration Act'] (NAA) ],["By "] ["Defendants E- Servicing Act "]*** ("DESA") by questioning Service process;

2)To perform their duties and in accordance of the law enacted by congress against serious criminals; and civil penalties, or they imposes by process that is "arduous, expensive, they aid in the determination;

3) Of the underlying legal question, is inadequate , and for questioning their intent while the plaintiff was in confinement is subject matters to prove relaxants conducts as part of their criminal acclivities;

a) They failed to provide in which way the restriction may applied against the activist that is intention is to shed the light of the criminal enterprise is sufficient for constitutional purposes if it articulates facts;

b) We  ask both the Attorney General and ( "USMS") Director who is 1)-[" ***Donald W ; Washington***"] for performance in such complex situation in accordance with the laws ,or by act of congress intent;

c) Here the above statutes invoke the duty of the federal officials for their intervention for allegation of mail fraud, as well as well as for inquired for his legal property, and his invention rights compelling;

d) By which they have control of them of his intellectual and legal properties which needed for his cases and along with the challenge that he is a victim of attempt of malicious prosecution by the defendants;

i) That he  must be entitle to relief, and being  release from custody by the defendants retaliation against his protected right; and; in his civil rights movement should have been protected issues;

ii) For instance, while at ("BSCC") another civilian, Captain 2)-["***Mr. Aguire***"] claimed that the plaintiff grabbed a hold of his leg calf area and began stating that de does not want a cell mate by provide falsity;

  iii)The the evidence for illegal punished by incident reports; and the captain Aquire stated, that he was  assaulted, for the purpose of prosecution him, and  the evidence will prevail the fact for justifications;

iv) On or about August, 28 2018 the captain came in front of his cell, when the secretary refused to open the legal mails in front of him sent by the ("BOP") officials, the captain said that " you was lucky;

v) Then, you have not been charged of assaulted her, and all for those claims the district court failed to review for evidence of victim of crime while in custody of the defendants or motions to response;

1) To that extent a similar misconduct by the captain with the intent of Withholding him in the ("SHU") by the wardens that are serious for malicious prosecution and the intent to punish by intellect intent;

2) From the allegations that they are part of criminal activities; and they certainly can not denied any of those allegations that their intention was to punish the plaintiff because of the grievances filed;

3) To that extend, or while the plaintiff was a victim and continue to be even while in custody of the ("ICE") officials for the illegal transferred ,or forcible transferred , or being tortured for days without;

4) To be considered, that is his medical conditions, that is act of conspiracy, and the evidence will prevail on the records that the ("BOP") as well as other a)-["**_Agencies_**"] failed to act because of his national origin;

5) In the context of malicious prosecution and tortured he is entitle of due process clause for being withheld in continuation of detention after release from custody, as well as for the vacatur of his convictions;

6) Certainly, there no rational related legitimate governmental objective purpose for an activist, victim of b)-["***U.S national***"] being in such continuation of detention, while the evidence is arguable basis;

7) if The defendants tried to prosecuted him,and is entitle for relief and he should never have to be in removal procedures, and they acted in bad faith by negligence for even placing him in prolong detention;

8) They acted based on immoral or criminal responsibility, or element of criminality where the agencies transferred him to those institutions for the purpose of punishment, as it referred to criminal minded,;

9) Additionally, that something the defendants counsel will not disagreed, and the agencies and their partners conspired, or if they had to have probable cause to believe that c)-["***Torture***"] by attempting crimes;

10) They are dangerous instrument in the course of committed serious offenses naturally receive longer prison sentences for interfering with an activist intention is to prove corrupt practice by intentional act;

i) They intentionally and knowingly, or regardless inflicted, or attempt to inflict his body injuries in violation of criminal laws established by congress, and for failure to intervene for affirmative actions;

ii)Their duties as required by laws the ("BOP") as well as the other agencies do not care because or based upon national origin , and they have the duty to prove the contrary if the can prove the contrary;

iii) The totality of the circumstances including the frequency of the criminal misconducts and retaliation,or discrimination is serious enough to question the federal agencies for the alleged criminal activities;

7) They have violated 6 U.S.C 271 and 18 U.S.C 4042 for which the plaintiff is questioning the courts for their investigation in this matters and the agencies making matters worsen for kidnapping claim;

iii) if Whether it is unreasonable for the ("BOP") and ("ICE") officials might not engages in the alleged violations or any related institutions that their intention couple with the same evidence is relevant conducts,

iv) By that a reasonable person should have known when allegation for price gauging in the commissary, that the private institutions might acted or created increase the risk with potentiality of criminal intent;

v) To violated criminal laws we ask the defendant if they can justify which of the criminal code their partners should prosecuted for the their misconducts, thus the agencies exposing plaintiff to crimes;

vi) The agencies engaged in a pattern of misconducts to transferred him in custody of the various restrictive camps, which they established to create emotional distress, and their intention was designed

vii) To prejudice by trying to deported him, or; disregarded the evidence on the record that he was all the time while in custody for the ("BOP") a victim of crimes, that is years of retaliation, or adverse actions

vi). He was being exposed to death by act of retaliation and that is imminent danger of serious physical injuries in accordance with the meaning of section 245 (m) for entitlement for vacatur convictions;

6) He should be entitle for relief for all he time being in the custody of all the private institutions in contract with the ("BOP") or ("ICE") or whether or not that is a matter dangerous fear contemplated;

a) By the exposure of being of death or great bodily harms; and the defendants now is aggravated the situations by alleged that they are of lacking of jurisdiction for allegation of false imprisonments;

b) For the claim of breach of contract of his conviction by exposing him to criminal activities by their partners while in thief custody, and the evidence will prevailing for various illegal disciplinary;

b) While at ("RCDC") the wardens directed their staff, not to provide him medical treatment by quoted that" no cap out no grievance, or sick call for months, and being in the SHU for months bleeding badly;

c) They certainly part of force of capable of causing Physical pain or injuries, as evidence for imminent danger or being tortured by the defendants partners and the evidence will prevail on the records for facts;

b) Additionally, the ("BOP") should have known not to transferred him to any of those facilities or those individuals with criminal minded, while their intent is to murder him so that he would not publish

c) The evidence to the public or they can continue the Trade Secret and this allegation is referred to his ("FOIA") requests which is premature in these cases , or another evidence that will proved bad faith;

c) Of course, he should never have to be transferred or any custody of any private institution that he is questioning for anticipating in the criminal enterprise, which makes the situation is more suspicious issues ;

d) We asking for Investigation by the officials if whether or not the evidence is essential for the allegation to support his claims on the record as a victim of crimes by the defendant that are prolong detention;

1) For these reasons, the courts including i)-["***20-CV-00182***"] to order stop filling in this case is questionable, or by directing the clerks, across the country to serve the defendants who are the racist by nature;

2) To that extent anything submitted by the revolutionist should not be restricted, including a ii)-["***Notice of Appeals***"] is matter of rights when the evidence is presenting for compelling the defendants actions;

3) The plaintiff is filling this motion on iii)-["***Behalf of the People***"], and the speaker is questioning ,and the iv)-["***Related Documents***"] are evidence, or to note that any attempt of violations issues;

a) The plaintiff may iv)-["***Attempt***"] to establish that he was the victim of intentional discrimination, which also will prove the judicial officials libel claims is being presenting with additional evidence;

b) The defendants, which he is refer to all individuals and agencies and corporation listed under iv)-["***The Answer Act***"], (TAA), should be answered by the defendant counsels to prove the contrary by laws;

**["MORAL TURPITUDE SCHEME ACT"] ("MTSA")**

**C.**The doctrine of laches bars an action only when the delay in bringing the action both caused prejudice and was inexcusable, and the imposition of legal mail restriction because of his indigence delay in issuing the determination, that it was entitled to discovery to establish facts supporting claims;

1) That arguments are i)-**["*Motion For ["Clarity Analysis Act"] (CAA),["OR"],["Florida Parties Act"] ("FLA") By ["National ["ID'] Performance Act*"] ("NIPA"),**for summary judgment by laches;

2) Moreover, it Appears that the court Under ii)-[*"20-CV-00925*"] referred to (MTSA) as evidence for declaration that the ("INA") is one centralized enforcement scheme" under federal law by enabling rights;

3) These Court's new approach is particularly problematic because providing advice on whether a conviction for a particular offense will make an alien removable is often quite complex for controversy claims;

4) They are the``most crimes affecting immigration status are not specifically mentioned by the iii)-[*Immigration and Nationality Act*"] (INA)], but instead fall under a broad category of mass deportation;

5) They are classified  as crimes involving iv)-["***Moral Turpitude***"] or v)-["***Aggravated Felonies***"], which also premature challenged in different courts for the issuance of abolishing widespread claims;

a) The question for the courts if whether or not Subsection 1915(g) should enabling under the above statutes as part of  vi)-["***Proposed Laws***"] or should be applicable in the circumstances of against officials;

b) That is if Section 1227 of Title 8 was not Facially neutral reasons, and our normal  constitutional tool for reviewing facially neutral government actions is the test against pretextual factors;

c) in  *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), for the courts to compel [19-CV-01118] for additional record by the judicial system that will rebut the alleged violations;

d) Under Rule, **8** before amending controversies claims, if given further analysis liberally construe as quoted by the courts to this particular motions and for the courts will find the compelling issues;

1) Of course the above show purposeful discrimination, and the failure by defendants, or their classification scheme is additional evidence for "*Apartheid*" as unfair, unjust or even unlawful for protecting rights;

2) As quoted by the court in the Southern district of California, for which we are informing the courts that (MTSA) is question for the (BIA) officials across the country or pending to file for their performances;

3) .As for vii)-["***Mr. Charles Adkins Branch***"] as the officials or one of the  the leader of the conspiracy under a)-["***20-CV-00226***"], and the restriction to legal mails for performance because of indigency;

4) This activity affects our analysis b)-["***Laches***"] requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense for questioning facts;

5) By Even assuming laches is a permissible defense, based on the above information on his case under a)-["***19-CV-01219***"], which the plaintiff file a notice of appeals for the Ninth circuit intervention rights;

i) Moreover, the federal Circuit across the country, will find that the fifth circuit abused its discretion in many instances of these cases, that is because they failed to provide their judicial  to litigate matters;

ii) For questioning the (INA) further, or legal point arguable merit, and there are the various colorable legal claims upon relief can be granted, and as to modify, the judgments is appropriate in the circumstances;

iii) Of these cases, therefore, not frivolous, which the plaintiff is challenging the finding by the districts courts or by filling separate motions for majority opinions between the courts for proper recommendation;

a) We ask if the appealable courts across the country or within their jurisdiction should compel the courts within the 30 days to make appropriate decision to litigate without further restrictions  by materials sources;

b) If the courts still believe the plaintiff is frivolous, then and they must compel the (BIA) for release the administrative records to evaluate the facts upon the agencies against arbitrary action is presenting here;

1) For additional analysis under ("MECCA") by this court [20-CV-00369], which is one of the proposed law, and for the defendants to promote good character ["***Nationwide***"] in conjunction by congress intent;

2) According to the present statute's terms, its purpose is to define which individuals necessarily lack good moral character 8 U.S.C. 1101(f) Other non-citizens who necessarily lack good character;

i)  The above regulation violated equal protection even through it was facially neutral because it was motivated by animus, which may be reviewed with strict scrutiny,which is  subject to rational review;

ii) If the (ICE) officials can not explained, why? The law library does not have access to Title 20 of the United States Code, (USC) or for inquiring about other agencies performance in the subject legal matters;

a) Therefore, we are questioning ["**_Within Reason_**"] _Hunter v. Underwood_, 471 U.S. 222, 233, 105 S. Ct. 1916, 85 L. Ed. 2d 222 (1985) in conjunction with (DIFTA) or by challenging the agencies policies;

b) Of course they certainly have the right to prove the contrary, or any allegations should consider as additional pretextual claims, for discriminating the plaintiff based upon national origin by controlling facts;

c)They are evidence for Apartheid, which they must come forward with additional facts contrary to the claims against civil detained is matter intervention, or for the same purpose to mitigating crimes;

d) Those are the question for the courts for his legal right, including of his first amendment right for additional damages, can be challenged by judicial officials to protect serious criminal to protect injustices;

e) That is another issues for the defendants to response, who attempt to mislead the plaintiff and the courts by mean of ["**_Fictional_**"] or allegation that required them to justified their actions, challenge statutes;

## ARGUMENTS ON THE BASIS OF STANDING

**I.** The revolutionist, or the policies of conducting mandatory investigations of all activist applicants, or nationalist for Secret or the defendants conducts did violate equal protection, and the First Amendment, similar representative of a foreign nation whose interests may be inimical to the interests of the United States, or with any person who advocates the use of force or violence to overthrow the Government of the a)-["***Republic of Haiti***"] or to alter the form of Government by the United States, or constitutional means, is valid regardless of a subsequent judicial determination of its protection of the people against *extremist,* or that is to say that the courts, **and that such** excessive jurisdiction must be declared valid, yet I am able to see any sound reason why the above-stated rule as to severability of the valid from the invalid portion of the act(s) is entirely applicable to apply propose laws.1)-["***The Movement Act***"] ("TMA"), by mitigating serious crimes, that is another issues that must develop by their executive branches..*Carmichael v. Kellog* 572 F.3d 1271, **1282** (11th Cir. 2009). a)-["***Motion For ["Writ Vacatur Act'], (WVA) ["Redaction Requests Act"] ("RRA"),By ["Movement On Crimes Mitigating Act***"] **("MOCMA").**When a civil case becomes moot pending appellate adjudication, "[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction for questioning matter for controversies by evidence. b)-["***Exhibit (II) (O) (I-XII)***"].*United States* v. *Munsingwear, Inc.,* 340 U.S. 36, 39 (1950).We turn next to the effect of that development on the interest in all of the judgments in questions by.i)-["***MOCMA***"] That is clearly this excessive jurisdiction is at all

considered an essential part of the enactments, and may not be stricken without in the least affecting

the real legislative intent or the real substance of the acts, that we are proposing to the courts, and the

agencies for their expertise. ii)-["*__NIRTA__*"] but leaving the enactment entirely sensible and capable

of executions, then the courts should have additional jurisdiction under Article III standing to

challenge the exclusion of their relatives under the Establishment Clause. *Committee for Public*

*Education Religious Liberty v. Nyquist*, 413 U.S. 756, 786 (1973) ("[*W*]hile proof of coercion might

*provide a basis for a claim under the Free Exercise Clause, it [is] not a necessary element of any*

*claim under the Establishment Clause*"); *Engel v. Vitale,* 370 U.S. 421, 430 (1962). To require a

showing of coercion, even indirect coercion, as an essential element of an Establishment

Clause violation would make the Free Exercise Clause a redundancy.*Abington School*

*District* v. *Schempp*, 374 U.S. 203, 223 (1963)..We would have an obligation essentially to search

the pleadings on core matters of federal-court adjudicatory authority — to inquire not only into this

Court's authority to decide the questions petitioners present, but to consider, also, the authority of the

lower courts to proceed.2)-[" ***Serving First Tracks***"]. As explained in *Bender* v. *Williamsport Area*

*School Dist.*, 475 U.S. 534 (1986):that, if a person's interest in being united with his relatives is

sufficiently concrete and particularized to form the basis of an Article III injury in facts, so the

agencies are supplementing injuries. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct.

1114, 71 L. Ed. 2d 214 (1982), the Supreme Court held that an organization can establish Article III

injury in fact by proving "concrete and demonstrable injury to [its] activities *Id.* at 379; *see id.* at 379

n.21 (holding that an organization that proves it "has indeed suffered impairment" in its activities has proved an Article III injury); _Nnebe v. Daus_, 644 F.3d 147, 157 (2d Cir. 2011). Thus the plaintiff has proving or has demonstrating his standing for his claims to press by each form of relief sought. _Carver v. City of New York_, 621 F.3d 221, 225 (2d Cir. 2010) .That is a threshold issues by the minimum" of standing consists of three elements for which he has proving on his motions for the courts to consider his claims _Lujan [v. Defs. of Wildlife,_ 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)]. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Id. at 560-561; _Friends of the Earth, Inc. [v. Laidlaw Envtl. Servs. (TOC), Inc_., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)]. The plaintiff, as the victim of widespread criminal enterprise invoking federal jurisdiction, bears the burden of establishing these elements within this motions of factual allegation. F_W/PBS, Inc. v. Dallas_, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)._Spokeo, Inc. v. Robins_, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). The "elements are conjunctive, so that a failure of any of the three elements deprives a plaintiff of standing to maintain an action in federal court." _Dickerson v. Feldman_, 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006). That is something any of the courts can not denied the requirement are met or occurring or imminent and the alleged future injury is sufficient immense in somewhat elastic, but requires , at least  the plaintiff has additionally presenting realistic danger of sustained a direct injury. _Workers Party v. Leahy_, 145 F.3d 1240, 1244 (11th Cir. 1998) ("Because the judiciary is

unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in the justiciability doctrine, presents an important restriction on the power of the federal courts."). In *Al Najjar*, we further explained that the doctrine of mootness derives directly from the case-or-controversy limitation because "an action that is moot cannot be characterized as an active case or controversy. *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). In other words there is realistic chance of a genuine of probability that a future will occurred in order to be sufficient imminent and the essence of standing inquiring is whether the plaintiff is seeking to invoke the courts jurisdiction and has alleged such personal stake of the controversial as to assure to concrete adverseness which happens the presentation of issues upon the courts so largely depends for illumination of difficulty constitutional questions. *Swain* v. *Pressley,* 430 U.S. 372, 381, 51 L. Ed. 2d 411, 97 S. Ct. 1224 (1977). In light of the question presenting to the courts is within the plain language of the punitive laws. 3)-["***INA***"], Moreover, we need not to reach the question for ambiguous provisions for other meaning that will avoid constitutional peril, and that will conform with Congress's presumed intent to enact measures of dubious validity, and such   condition precedent for application of the doctrine is that the statute can *reasonably be construed* to avoid the constitutional difficulty. See, *e.g.*, *Miller* v. *French,* 530 U.S. 327, 341, 147 L. Ed. 2d 326, 120 S. Ct. 2246 (2000). Thus, those such as the plaintiff(s) who is invoking the doctrine must believe that the alternative is a serious likelihood that the statutes will be held unconstitutional..*Norton v. Shelby County* 118 U.S. 425 (1886). i)-["***8.C.F.R 1101 (a) (43)*** "]. On the basis of these findings the court

must be included all cases to be part. a)-["***Sava***'].<u>*Iron Arrow Honor Soc.* v. *Heckler*,</u> 464 U.S. 67, 72-73 (1983) *(per curiam)* (vacating judgment below where Court of Appeals had ruled on the merits although case had become moot). In short, we have authority to "make such disposition of the whole case as justice may require, and it  is applicable in these case for  exercising any discretion in reviewing petitioners' requests if [every federal appellate court has a special obligation to `satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede all factors involved in controversies against each of the defendants alleged.  <u>*Petition of Cahill*</u>, 447 F.2d 1343 (2d Cir. 1971) if Assuming *arguendo* that some discretion had been exercised by b)-["***USCIS***"], the Districts Courts must turned to the alternative questions of whether the agencies had abused their discretion in the subject matters in questions within terms of ii)-["***Judicial Jurisdiction***"].<u>*Rescue Army* v. *Municipal Court of Los Angeles*,</u> 331 U.S. 549, 573-574 (1947);In litigation generally, and in constitutional litigation most prominently, courts in the United States characteristically pause to ask: Is this conflict really necessary? When anticipatory relief is sought in federal court against a state statute, respect for the place of the States in our federal system calls for close consideration of that core question against the agencies  to consider all claims without appeal Process.<u>*Shapiro, Jurisdiction and Discretion*</u>, 60 N.Y. U. L. Rev. 543, 580-585 (1985).c)-[" ***8 U.S.C 1101 (f)***"].The well-settled rule is that although parts of an act, or, indeed, most of the provisions of it, be unconstitutional, then we asking the agencies if the laws was not illegal they not have so much power.<u>*Certification Before Facial Invalidation: A*</u>

*Return to Federalism*, 12 W. New Eng. L. Rev. 217 (1990).and increasing the assurance of gaining

an authoritative response. iii)-["***Jurisdiction To Review***"], and that is what we said now, or if habeas

corpus has historically distinct meanings to be enforced by.*United States v. Canals-Jimenez*, 943

F.2d 1284 (11th Cir. 1991). In such cases  congress did, or did not limited the courts in habeas

corpus proceedings was far narrow then the judicial review authorization by the APA is being to the

agencies for their same claims, so if that question must be evaluated with additional expert,so their

for evaluating will be within the same  facts upon the plaintiff request by the administrative records

nationwide, that is very "adequately reflect their theory of waiver even without the inclusion of the

waiver all of the applications. 4)-["***Exhibit  (III) (N) (I-XII)***"].*Knoell* v.  *Cerkvenik-Anderson Travel,

Inc.,* 185 Ariz. 546, 548, 917 P.2d 689, 691 (1996).When interpreting state statutes, are similarly

equipped to apply that cardinal principle. or apparently, during the plaintiff incarceration the

government initiated removal proceeding against because of his allegation that they are anticipating

in criminal enterprise is matter of factual allegation against him. See. *Clervrain V. Barr*, No 20-

601618 (5ᵗʰ Cir Mar.4, 2020). a)-[" ***Advocate Representative***"] ("*Appealing a decision of the Board

of immigration of appeals.*"). b)-["***NATA***"]. that is for the agencies to consider all claims against

their illegal laws..*In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403

U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971).the Supreme Court extended the 42

U.S.C. § 1983 remedy for violation of constitutional rights by those acting under color of law to

federal law enforcement officers against them, the certification requests merited more respectful

consideration than they received in the proceedings below. Federal courts, when confronting a

challenge to the constitutionality of a federal statute, follow a "cardinal principle": They "will first

ascertain whether a construction . . . is fairly possible" that will contain the statute within

constitutional bounds. i)-["***Genuine Materials Factors Act***" (GMFA). *Knoell v. Cerkvenik-Anderson*

*Travel, Inc.*, 181 Ariz. 394, 891 P.2d 861 (App. 1994). the Immigration and Nationality Act, and

with federal laws pertaining to funding and discrimination in education, then we asking if the court

of appeals must reinstated all motions filed,.ii)-["***URMA***"], so if after the University filed its Notice

of Appeal all related cases by laws.,a)-["***8 U.S.C 1227 (a) (2);*** *Seminole Tribe of Florida v.*

*Florida,* 116 S. Ct. 1114 (1996) was decided. The University then filed a Motion for Summary

Reversal and Vacation of Judgment, arguing that Seminole Tribe had divested the federal courts of

subject matter jurisdiction over Title IX suits, that is another question for the courts, and for the

agencies and the courts to review all claims as matter of facts. In *Crawford v. Davis*, 109 F.3d 1281,

1282-83 (8th Cir. 1997),a)-[***; 8 U.S.C 1101 (a) (43) (M)***"].*Hernandez v. Bd. of Regents*, 177 Ariz.

244, 256, 866 P.2d 1330, 1342 (1994). The Immigration Judge found the plaintiff to be removable

on illegal charges, they were based on discrimination, or pretext and he requested reliefs to be

reviewed by all courts across the country, b)-["***8 U.S.C. 1229(b)***"].*Bryant v. Silverman*, 146 Ariz. 41,

44 n. 1, 703 P.2d 1190, 1193 n. 1 (1985). Which allows certain individual such as the plaintiff

claiming to protected by facts. c)-["***Nationality Treatment***"] to request cancellation of his removal

which they failed by committed criminal acts,. Moreover if, the Immigration Judges denied his

requests for relief, by finding that he was ineligible for all reliefs because of broad allegation's aggravated felony conviction. d)-["**_8 U.S.C. 1229 (b)(a) (3)_**"] ("*providing that the Attorney General may cancel removal if an otherwise-qualifying individuals such the plaintiff that has proving he has not been convicted of an aggravated felony*")..*Cf. Garcia-Mendez v. Lynch* , 788 F.3d 1058, 1064 (9th Cir. 2015) ("*Special rule cancellation ... permits an alien ... the opportunity to cancel deportation and automatically become a lawful permanent resident ....*" (emphasis supplied) (citing 8 U.S.C. § 1229b(b)(2) ). iii)-["**_Questioning by Publication_**"].*Confederated Tribes & Bands of Yakama Nation v. Yakima County* , 963 F.3d 982, 990 (9th Cir. 2020). Here, if the agencies will not stop their violations that is the end of the matters, or if In August 2000, the (BIA) affirmed the decision of the Immigration Judge and dismissed his appeal improperly, we are  asking them, or if the courts  must compelled one illegal actions,.*Clervrain v. Sawyer,* No, 20-CV-00348 has abused the scope of its authority by granting (IFP) but dismissed the case with prejudice in conjunction with his motion filed to his case. *Clervrain v. Eldow*, No, 20-CV-00182, and for the courts to consider this pending previously filed. a)-["**_Supplemental Motions for Opposition by related Matters for invoking ("The Ant") Right litigation Act_**"] (TARLA), and the courts must concluded that if it is the scope of inquiring on habeas corpus that differential review from judicial review by the agencies actions is being question by common laws. *SEC v. Chenery Corp*., 318 U.S. 80, 87-88, 87 L. Ed. 626, 63 S. Ct. 454 (1943), If these the Court held that an agency is bound to the standards by which it professes its action to be judged. In *Accardi,* a case involving a habeas challenge to the denial of

suspension of deportation, the Court objected to the agency's "alleged failure to exercise its own discretion contrary to existing valid additional regulations upon filling evidence for the defendants to take action against illegal laws alleged. _Accardi v. Shaughnessy,_ 347 U.S. 260, 98 L. Ed. 681, 74 S. Ct. 499 (1954) Thus, the Federal agencies are required to "follow their own rules, and not to exclude the judicial system not follow the rules that congress has mandated them not violated laws applied to individual similarly situated for litigations rights._Ashwander v. TVA_, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936).This case turns on the meaning of the words "the legal authority for lifetime damages. b)- [_**28 U.S.C 1915 (e),**_]._Wilks v. Am. Tobacco Co._, 680 So.2d 839, 840 (Miss. 1996).._S_uch as those  requested "had to be brought in a suit by the personal representative" of those that are alive and not to review evidence of the judicial questions by compelling their judicial officials records by same token of facts,._Munn v. Southern Health Plan Inc._, 719 F.Supp. 525, 530 (N.D. Miss. 1989) i)-_**[" 28 U.S.C 1406**_"]._overruled on other grounds by Jenkins v. Pensacola Health Tr. Inc._, 933 So.2d 923 (Miss. 2006). This Court stated that "wrongful death has been recognized as a tort separate and distinct from other personal injury actions, then we asking if the courts must transfer their records.ii)-["_**28 U.S.C. 1631**_"] if., regardless of whether the transferring court lacks personal jurisdiction over the defendant in the states applicable for his controversy claims are  pending for national E-filling. 1)-["_**National E-Filling Act**_"] (NEFA) so the courts must also acted before filling evidence across the country for questioning of facts.._Martin v. Stokes_, 623 F.2d 469, 474 (6th Cir. 1980). As this was not done by the  court the complaint was dismissed with

prejudice by the western district of Michigan d)-["***Dkt, 6***"] .It is the minority group's ability to assert

its political interests that "[curtails] the operation of those judicial processes ordinarily to be relied

upon to protect of the public interest, we must noted that  the statutes in question allow the courts

should not avoid the serious of constitutional challenged  at issues that would arise if  the judicial

forum for constitutional claims,and were denied by their illegal actions., *Capric v. Ashcroft*, 355

F.3d 1075, 1088-89 (7th Cir. 2004). The due process requires that the plaintiff be afforded a

meaningful opportunity to present his claim, and the courts must examine if whether, he was given

the totality of the circumstances, or if he  had a full and fair opportunity to put on his  cases on the

controversy standard As such, the plaintiff is asserting , or seeking seeking lifetime damages for the

various violation, unlimited claims, so  emotional distress.In support of his motions by rely on the

"in controversy requirement of to iv)-["***Rule 35***"] of the Federal Rules of Civil Procedure.According

to Rule 35(a) of the Federal Rules of Civil Procedure: ("*When the mental or physical condition . . .*

*of a party . . . is in controversy, the court in which the action is pending may order the party to*

*submit to a physical or mental examination by a suitably licensed or certified examiner or to*

*produce for examination the person in the party's custody or legal control. The order may be made*

*only on motion for good cause shown . . . .*"). .*Panaras v. Liquid Carbonic Industries Corp*.94 F.3d

338, **341** (7th Cir. 1996). The "in controversy" and "good cause" elements is met by "mere

conclusory allegations of the pleadings. *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S. Ct. 234,

13 L. Ed. 2d 152 (1964). However, Federal Rule of Civil Procedure 26 does not contain the "in

controversy" and good cause" requirements contained in Rule 35(a), making Rule 26 less stringent.

_Schlagenhauf_, 379 U.S. at 117 ([I]n none of the other discovery provisions is there a restriction that the matter be 'in controversy,' and only in Rule 34 is there Rule 35's requirement that the plaintiff has affirmatively demonstrate 'good cause.'"). 1 Rather, Rule 26 provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Generally, discovery may inquire into all information, not otherwise privileged, that is relevant to the subject matter of the action, provided that it is reasonably calculated to lead to the discovery of admissible evidence." _Minnesota Specialty Crops, Inc. v. Minnesota Wild_, 210 F.R.D. 673, 675 (D. Minn. 2002). Consequently, "even if the plaintiffs' physical or mental conditions are not 'in controversy,' the medical records can still be relevant under Rule 26 Therefore, regardless of whether plaintiffs' mental or emotional condition has been placed in controversy, his mental health records may nonetheless be relevant if they shed light on other contributing causes of their claims of emotional distress was precluded in a habeas proceeding by _Preiser v. Rodriguez_, 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). As the plaintiff puts his mental condition at issue if he intends to seek anything more than nominal damages for any alleged emotional distress against the defendants actions while and negligence. _Ibrahim v. Titan Corp._, 391 F. Supp. 2d 10 (D.D.C. 2005). Moreover, if the agencies actions were mark the consumption of the making process, it must not be of a merely tentative or interlocutor nature, that is because the plaintiff has demonstrate his cases with factual allegation upon relied can be granted by which his right has been deprive by the

defendants action.c)-["***Clervrain Actions v. Bivens Action***"] <u>*Crocker v. United States*,</u> 125 F.3d 1475, 1476 (Fed. Cir. 1997). Thus, the courts do  have jurisdiction to consider all of his claims for lifetime damages against the defendants,.b)-["***APA***"] , when they failed to perform their  duties by certainty, of the claims to the the Court of Federal Claims for additional reliefs by the  basis for jurisdiction invoked new laws. <u>*Clervrain v. USA*</u> Docket 1:21-cv-01919, United States Court Of Federal Claims (Sept. 27, 2021). c)-["***Clervrain V. United States***"].<u>*Maxberry v. United States*,</u> 722 Fed.Appx. 997, 1001 (Fed. Cir. 2018) /. That is for the courts and the agencies to amend all claims upon reliefs can granted by laws.. d)-["***42 U.S.C 1983***"] As previously determined by the Court of Federal Claims: "Section 1983 is not a jurisdiction-granting statute, that is the end of the matters, so the courts must be given jurisdiction to hear claims for damages for violation of that provision by virtue of all related Claim. e)-["***28 U.S.C. 1343 (a) (4)***"], and such the actions can be sustained here, however, because this courts has not been given an equivalent jurisdiction, and the district courts shall have original jurisdiction <u>*Lovell Mfg. v. Export-Import Bank of the United States*,</u> 843 F.2d 725 (3d Cir. 1988).f)-["***Amending All Civil Cover Sheets***"]. To be concurrent with the United States Court of Federal Claims. <u>*Clervrain.v Unites States of America*</u>, No, 17-CV-00313, which is very premature in the procedures of these cases to have jurisdiction over all claims related to the defendants involved in 1)-["***Breach of Contract***"] claim against the government, the claim must be one for monetary relief. In determining whether a claim is for monetary relief, a court must look beyond the form of the pleadings to the substance of the claim. *See* <u>*Brazos Elec. Power Coop. v.*</u>

_United States_, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading and, accordingly, the courts must look to the substance of the pleadings rather than their form."). Accordingly, whether his claims are for monetary relief and within the jurisdiction afforded by the Tucker Act is properly before the courts because his promissory estoppel claim sought specific performance, as well as money damages, the district Court must correctly must review those claims de novo so that those claims are subject to the Tucker Act and that the Act is not precluded jurisdiction over his controversy claim. _Sea-Land Serv., Inc. v._ _Brown_, 600 F.2d 429, 432 (3d Cir. 1979). By which the obligation should have been determined, or from which legal consequence will flow, and the there is additional exception, however, that allow the courts to enforce a non final agency action when that action is excess delegate power under broad general directives, Therefore, the Supreme Court has held that it is constitutionally permissible for Congress to seek the assistance of another branch of government, so long as Congress guides the discretion of that entity by providing an "intelligible principle." _Touby v. United States_, 500 U.S. 160, 165, 111 S. Ct. 1752, 114 L. Ed. 2d 219 (1991). The claims against the agencies across the country is in plain language for controversies, by which the statutes created or enacted by congress, and what ? is more of this additional evidence meaningfully supports of his claims, or if whether of not the alleged claim against 2)-["**_INA_**"] that is to inform the agencies when they consider all evidence only in this circumstances a)-["**_Ambiguous_**"]._Warner-Jenkinson Co._ v. _Hilton Davis Chemical Co._, 520 U. S. 17, 40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997). The Federal Circuit's fuller explications of the

term "insolubly ambiguous," we recognize, may come closer to tracking the statutory prescription for additional damages.. b)-["***Unconstitutionally Vague***"].*Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1347 (Fed.Cir.2005)  In light of the circumstances …..may present one of the exception requirement and these courts may apply this exceptional only with this very narrow circumstances presenting for evaluating the ambiguities against Criminal Enterprise, where there is a plain violation of ambiguities and mandatory provision of the statutes , or which embodies the basic presumption of judicial review to the plaintiff or any other that were suffered legal wrong by the agencies action or adversely effected or aggrieved by their actions within the meaning of relevant statutes in question by evidence .i)-[***"Exhibit (IX) (Y) (I-XII)"***] .*E.g., Soliman* v. *Gonzales*, 419 F.3d 276, 284 (CA4 2005). Of course the egregious error meld the agencies actions decision into justifiable or lesser malignancies thwart of jurisdiction by the courts where review under this exception must be granted. *Saloum v. U.S. Citizenship & Immigration Servs.,* 437 F.3d 238, 243 (2d Cir. 2006). That is because the agencies actions are so contrary to the term of the relevant statutes or policies in question, and that is necessary for judicial review by the independent of the review provision of the relevant, and it should be held that the agencies engaged in the allegedly unlawfully depriving of naturalization is matter of facts or arguable basis against the agencies by supporting his claims for genocide, or by detained him within illegal procedures is another issues for which the evidence is clearer to them, and he has  not convicted of aggravated felony under their laws being questioned for reviewed ii)-[***8 U.S.C 1101 (a) ( 43), 8 U.S.C 1227***"] .*Coleman v. United States,* 635

Fed.Appx. 875, 877-78 (Fed. Cir. 2015);which are the course of the criminal activities that contracting with congressional intent to overturn the long-standing exercise of judicial review and granted National reliefs, and the statutory context of further, decisions expressly made discretionary by statute dealt with substantive rights rather than procedure, and there was no clearer and convincing evidence to rebut the presumption that executive decisions were subject to judicial review by enactment.a)-["***Aggravated Felony Scheme Act***"] (AFSA).As such being the cases congress did not excluded African Descent to proposed new laws against injustice, if the agencies must considered all factors, Thus, the (APA) waive sovereign immunity to the extent that declaration judgement or other reliefs may be available that the plaintiff harms by the agencies the take  actions within the plain meaning of laws... *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004)).  If the text of a statute governing agency action  "'directly address[s] the precise question at issue,'" then, "'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. *Clervrain v.Barkerbile*, No, 17-CV-00089] as with all statutory interpretation questions, construction of the (INA)'s persecutor bar must begin with the plain language of the statute.  Conversely, if 1996 is the relevant date, then the agencies to consider all applications.*May v. United States*, 56 Fed.Appx. 492, 493 (Fed. Cir. 2003). b)-["***Non-Violent offenders***"].*Clervrain v. Pom-peo,* No. 4:20-cv-555-SRC, 2020 WL 7714613, at *1 (E.D. Mo. Dec. 28, 2020) That will carry the day for all claims against the agencies functions, so   by if the (INA) defines the phrase "lawfully admitted for permanent

residence" as the "status of having been lawfully accorded the privilege of residing permanently in

the United States as an immigrant in accordance with the immigration the same laws, or if such

status not having changed by Clervrain v. Washington, No. 2:20-cv-5706, 2020 WL 7318096, at

*2 (S.D. Ohio Dec. 11, 2020);c)-["***8 U.S.C. 1101(a) (22)***"] In support of his allegation  for National

Status, thus, Governors of the states .1)-["***Union***"].*Clervrain v. Wilson,* No. 2:20-cv-2061, 2020 WL

1977392, at *2 (W.D. Ark. Apr. 24, 2020). If the plaintiff cannot be in removal procedures to have

been excluded from the privilege of  all residing without justification for better explanations by

agencies   failure to promote. d)-["***Permanent Status***"].  *Clervrain v. Lee*, No. 3:20-cv-548-TAV-

DCP, 2021 WL 141793, at *1 (E.D. Tenn. Jan. 14, 2021).In the United States for his traffic violation

because his Minor conviction he was then subject to illegal conditions of detention,  we believe that

the agencies failed to recognize the relevance of the statutes, and that that their  failure  are entire  in

question for legal analysis by such declaration for his claims for protecting the class for such claim

as of the date of his motion as 2)-["***National Status***"] against the agencies, or all get involved in the

conspiracy alleges, *Mass Deportation Practice* (MDP) by invoking of his choice or which of the

states from the Union is in conjunction of the statutes by asserting jurisdiction that he has bears the

burden of showing that the case is properly in federal court. *Samuel-Bassett v. Kia Motors America,*

*Inc*., 357 F.3d 392, 396 (3d Cir. 2004). In determining if removal was improper, the removal statute

is strictly construed and all doubts are resolved in favor of declaration of their illegal judgments

which they will not denied,  If there is  subject matter jurisdiction, the federal court duty is invoked

under the diversity statute; 3)-["***28 U.S.C 1332***"], and that provision bestows upon all  district courts across the country, so they must have original jurisdiction over civil actions involving sums greater than $ 75,000.00, where the action is between: ("*citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; For the purposes of this section, . . . an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled ").*Sparks v. Hershey,* 661 F.2d 30 (3d Cir. 1981), where the complaint asserted a civil rights claim under a)-[" ***§ 1983***"].In its notice of supplemental of injustice, that is for amending all claims, b)-["Dkt 1.] , the plaintiff alleged that  he suffered injuries, by implication of the Statutes is a permanent resident domiciled of the c)-["***Unions***"] States, who is deemed to be a citizen of any states of the United States for cancellation of his removal while proving that he is a Citizen of the United States . d)-["***28 U.S.C.1447 (c)***"] In this circumstance, where the cases have not been filed  for the state official intervention, before final judgment it appears that the district court has subject matter jurisdiction to entertain his claim, the case *shall* be remanded to the federal courts for controversy claim. *Raygor* v. *Regents of Univ. of Minn.,* 534 U.S. 533, 152 L. Ed. 2d 27, 122 S. Ct. 999 (2002). By the discerning facts by the records, on the other hand,  we are relying on our recent cases interpreting under 4)-[***"28 U.S.C. . 1367 (d)***."] The court held that this provision does not include, in its tolling of limitations periods, claims against States that have not waived their immunity from suit in federal court, because the statutory language fails to make those violation, by

the agencies actions, that unmistakably clear, to prove his burden, and life damages became mandatory, as it must in provisions subjecting States to suit, that such States were covered with the subsequent of their decision, *Jinks* v. *Richland County*, 538 U.S. 456, 155 L. Ed. 2d 631, 123 S. Ct. 1667 (2003), if The district courts claimed the facts, and they are, lacking of subject matter jurisdictions access, was required under the statures, if the plaintiff is prevail on his claims by all evidence presenting controversies.a)-["***USEDS***"], or if the district court's must ordered, by granting interest on pending motions..*generally* Annot., *Date From Which Interest on Judgment Starts Running, as Affected by Modification of Amount of Judgment on Appeal*, 4 A.L.R.3d 1221 (1965 Supp. 1978).i)-["***Immigration Guidance Reform Act***"] (IGRA). while interest runs from the new judgment where the court "has reversed the trial court judgment and directed that a new money judgment be entered . . .". Case law from other jurisdictions supports this distinction that is what the law said?. ii)-["***Uniform Function Forms Act***"] (UFFA) but leave the remand order in force. . Upon remand, the states superior courts can address the merits of the parties' pending motions. Having determined that the district courts who claimed they are lacking of subject matter jurisdiction in violation b)-[ "***28 U.S.C 2101 and 28 U.S.C 1331***"].*Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1377–79 (Fed.Cir.2001). Thus, a construed claim can be indefinite if the construction remains insolubly ambiguous, and that the case was properly filed to each of the courts for federal courts intervention thus, congress intent is clear for jurisdiction on these cases, they are for adjudicating is within the language of the same laws being challenged same restrictions

by means of congress intent. 1)-["**_8 U.S.C 1252 (a) (2) (B) (ii)_**"]._Verve, LLC v. Crane Cams, Inc._, 311 F.3d 1116, 1119–20 (Fed.Cir.2002). We therefore primarily consider the intrinsic evidence consisting of the claim language, the specification, and the prosecution history, then we must _Clervrain doctrine_ against Congress malicious intent._Reiter v. Sonotone Corp._, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979)..Although we agree that conducts by the senators, governors  must classified as wrongful acts, when they they failed to question the laws imposed restrictions,that is clear and ambiguous when it states that discretionary decisions by the appropriate governmental agency are subject to judicial review bureaucracy laws._Village of Willowbrook v. Olech_, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) . Therefore, if plaintiffs' version of the facts reveals that the officials could reasonably have believed they were not violating plaintiffs' constitutional rights, the district court should have granted the motion for summary judgment and we will reverse, Moreover, the Sixth Circuit Court of Appeals has held that these discretionary decisions do not necessarily have to be within the context of removal proceedings to be insulated from court intervention, as a matter of jurisdiction, courts may not review the administrative decisions of the Immigration and Naturalization Service unless the plaintiff has first exhausted all administrative remedies.2)-["**_8 U.S.C.S.1252 (d) (1)_**"],  If the statutes for jurisdiction is statutorily limited to the review of issues exhausted before the (BIA), or any agencies of the United States of America, or by allowing their partners to victimized innocent people while in their illegal custody, if that being the cases, c)-["**_MDC_**"] restricted him to mail his legal obligation is another

issues for question the agencies,  if they claimed that, or if  they claimed they are not received legal

notices by emails. .*Sagermark v. INS, 767 F.2d 645, 648* (9th Cir. 1985). In order to satisfy the

exhaustion requirement, the plaintiff has put together his motions to the BIA, and all all other

agencies that part of the same controversies,  on notice of the specific issues, which was interfering

by illegal practice by the d)-["***ICE***"] or failure to provide notice on his mail being withheld without

notice or violation of his due process,  so the e)-["***BIA***"] has an opportunity to address the claims

that is if the restrictions are against various innocent people, then we asking if any agencies of the

United States of American will claimed are  not involved in conspiracy theory alleged by the

humanist who is proving by 1)-["***Clervrain Actions***"],  that was done by the purpose of  retaliation

purpose or can be justify by any of the governmental objective  *Figueroa v. Mukasey,* 543 F.3d 487,

492 (9th Cir. 2008). 2) 2)-["***Clervrain Globalization***"] the the Ninth circuit court has explained over

and over that "[t]o constitute punishments, the governmental action must cause harm or disability

that either significantly exceeds or is independent of the inherent discomforts of confinement so they

must answer all facts. 3)-["***Treaties Union Nationality Act***"] (TUNA), if the court noted that even in

the absence of evidence of express intent, it may infer an intent to punish "if the restriction or

condition is not reasonably related to a legitimate governmental objective or is excessive in relation

to the legitimate governmental objective." *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th

Cir. 2008). The plaintiff is bringing the underlying claim bears the burden of establishing federal

subject matter jurisdiction. *Sweet Pea Marine, Ltd.,* 411 F.3d at 1247 (examining diversity

jurisdiction under a)-["**_28 U.S.C. 1332 and 28 U.S.C 1361_**"], so the Mandamus Act, which provides

a private cause of action for parties related to certain governmental agents and entities' failure to

perform prescribed duties.b)-["**_CJRA_**"], it pending against all judges, and agencies states, in

pertinent part:  (:_The district courts shall have original jurisdiction of any action in the nature of_

_mandamus to compel an officer or employee of the United States or any agency thereof to perform a_

_duty owed to the plaintiff.28 U.S.C.1361 (a) This chapter applies, according to the provisions_

_thereof, except to the extent that-- (1) statutes preclude judicial review; or (2) agency action is_

_committed to agency discretion by law.c)-["_**_5 U.S.C. 701(a)_**_"]._The Homeland Security Act of 2002,

Pub.L. No. 107–296, 116 Stat. 2135 (2002), eliminated the Immigration and Naturalization Service

("INS") and assigned INS's enforcement functions to the [Department of Homeland Security]'s

Bureau of Immigration and Customs Enforcement ("ICE")." _Khouzam v. Atty. Gen'l,_ 549 F.3d 235,

243 n. 7 (3d Cir.2008). i)-["**_Reformation ID- Treaties Act_**"] (RAFA).If the plaintiff has met his

burden of proof by establishing  diversity jurisdiction for his claim and the protected all members

against injustices, so by classes and, and they are lawfully admitted permanent residents domiciled in

the same state as any defendant. 1)-["**_28 U.S.C. 1332 (a) (2)_**"] Here, there the evidence in the district

courts, and the agencies to evaluate all records to indicate that he is  providing by distinguished all

protected classes, ii)-["**_Nearest Families Treatment Act_**"] (NFTA), or  by explaining if in the cases

he  has  met the courts order because he was or continuously being deprived access to the courts by

restriction. See _Clervrain v. Jose Castenade,_ No, 19-CV-00046-H, that is because the Courts must

determined that the plaintiff has established jurisdiction for the reasons discussed above for his relief claims as well as for questioning for 2)-["***National Relief Code***"] (NRC) by which he is invoking the courts, and agencies performance by laws , and by inquiring for the writ of error coram nobis is essential remedy of last resort for the plaintiff who is no longer in custody of the (BOP) pursuant to defendants illegal criminal convictions.*United States v. Clervrain*, Case No. 11-cr-20074-JIC, DE 78 at 1-2 (S.D. Fla. July 25, 2011). iii)-["***Non-Violent Treatment Act***"] (NVTA), but also who continue to suffered from their illegal conviction's consequences and to obtain coram relief as matter for supporting his claims, particularly for lifetime damages, as he has administrating that the claims they must be liable for all violations: 1) There are circumstances for compelling such action to achieve justice; 2) sound reasoning exist for failure to seek appropriate relief, and 3) the petitioner continue suffer legal consequences from his convictions, that is the end of the matters, that be remedied by granting the writ. *United States v. Riedl*, 496 F.3d 1003,, No. 06-10424 (9th Cir. Aug. 6, 2007) (in rejecting the six year delay in bringing an action, the court noted "To follow *Riedl*'s suggestion under the circumstances of these cases would transform the extraordinary writ of coram nobis into a free pass for attacking criminal judgments long after they have become final."). As more usual remedy is not available 2) valid reason exist for not attacking the conviction earlier; 3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy allegation requirement of controversies, and a)-["***Article III Standing***"],.*Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak* , 567 U.S. 209, 132 S.Ct. 2199, 2210, 183 L.Ed.2d 211 ("[A] person suing under

the APA must satisfy not only Article III's standing requirements," but also the prudential "zone of interests" test) (internal quotations omitted). Rather, we agree with the district court that the Plaintiffs do not have standing to seek injunctive relief under the APA because allegations of Dorn VAMC's past Privacy Act violations are insufficient to establish an ongoing case or controversy. *See City of Los Angeles v. Lyons* , 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1974). That is not all. b)-["***National Issues First Act***"] (NIFA), In those pending cases which the courts, moreover, will not dispute the facts for controversies, and for resolution of the dispute concerning the Plaintiffs' Article III standing..1)-["***TMPA***"], at page 3 (ii).*Lawrence v. Dunbar,* 919 F.2d 1525, 1529-30 (11th Cir. 1990) 2)-["***Exhibit ("I) (B) (I-XII)***"]*Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir. 2001). As a notice against the defendants first critical thinker within the meaning of evidence.. c)-["***UNCA***"],*Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499-500, 502-3 (2d Cir. 2001). We Must  referred to *Clervrain Doctrine* Now to challenged Politicians Malicious conducts by formulation in our circuit, often failed to consider rights context y protecting damages against them, and  that is not no longer  error is of the most fundamental character representing the condition of his confinement, which the BIA failed to consider any claims presenting for litime damages. i)-["***Interest of Justice***"]..In Platt, 376 U.S. at 243-44, the Court set forth the factors to be considered in evaluating whether transfer of venue "in the interest of justice" under Rule 21(b).ii) ["***Mass Deportation Prohibition Act***"] ('MDPA'). Green v. Rubenstein, 644 F. Supp. 2d 723, 730 (S.D. W. Va. 2009). On December 15, 2020, the Plaintiff filed a motion [ECF No.

19] "for opposition or release pending appeal, and intervention by the agencies failure to consider all claims being alleged,  Rule 21(b) of the Federal Rules of Criminal Procedure provides that where it appears that an offense was committed in more than one district or division and the court "is satisfied that in the interest of justice the proceeding should be transferred" to another such district or division than the one wherein it is filed, the court shall, upon motions.*Clervrain v. Hoover* CIVIL ACTION NO.: 3:20-CV-78 (N.D.W. Va. Feb. 2, 2021). While the complaint itself is typed and legible, the words often do form coherent sentences, nor do they convey clear thoughts. Plaintiff has filed a number of similar suits in district courts throughout the country.*Clervrain v. Nejen*, No. 20-cv-134, 2020 WL 2104934 (N.D. Okla. May 1, 2020) In this case, the Courts must  completely able to discern what facts or claims Plaintiff seeks to present in his complaint against the defendants malicious intent nationwide to be reviewed. a)-["***USCIS***"],*Clervrain v. Revell*, 2018 WL 5281366 (D. Kan. Oct. 24, 2018). As other courts have stated, Plaintiff's complaints "'contain a lot of legal labels but their few factual assertions are not sufficient to determine whether Clervrain has alleged a plausible claim for b)-["***Judicial Actions In Motions***"].*Parker v. Parker Int'l/Parker Tobacco Co.*, No. 89-6078, 1990 WL 63523, at *1 (6th Cir. May 11, 1990)..Moreover, Plaintiff's complaint presents a variety of factors and coherent claims in violation of the constitutions, and they are short and plain statement requirements  i)-[" ***Fed. R. Civ. P. 8.***"].*United States v. Clervrain*, No. 0:11-cr-20074 (S.D. Fla. Nov. 14, 2012)Although judicial opinions from Plaintiff's previous litigation offer some background on Plaintiff, his 208-page complaint is almost completely void of factual

allegations by ii)-["***Sentencing Hr'g Tr., ECF No. 99, 14:9-16:14)***."].*Clervrain v. Coraway*, No. 3:18-cv-819-G-BN, 2018 WL 6313216, at *2 (N.D. Tex. Nov. 9, 2018), They must released all people they have illegally deported, so  many innocent for years will justifed crimes against humanities in all circumstances alleged. b)-["***ICE***"], to Minnesota "in the interest of justice" as required by Rule 21(b). As Chief Judge Hastings pointed out in his dissent, these "factors were (1) location of corporate defendant;  (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which effective. i)-["***CRRA***'], for pending controversies cases against the defendants actions. *Ex parte Fahey*, 332 U.S. 258, 260 (1947). The function of the Court of Appeals in this case was to determine the appropriate criteria and then leave their application to the trial judge on remand by  extraordinary writs are "reserved for really extraordinary causes, then we are asking the agencies for this one.ii)-["***Mass Deportation Practices Act***"] ("MDPA").*Clervrain v. Revell*, No. 18-3166-SAC, 2018 WL 5281366, at *1 (D. Kan. Oct. 24, 2018). In 2018, one court concluded that "[s]ince entering the federal prison system in 2011, *See McCarthy v. Am. Int'l Group, Inc.,* 283 F.3d 121, 123 (2d Cir. 2002). or if a)-["***Form 14751***"], Certified Professional Employer Organization Surety Bond, so the defendants will be adjudicated additional claims by for Electronic Filing Waiver Request Procedures For b)-**["*CPEOs*"] if** Under certain circumstances, the IRS must waive the

electronic filing requirement by facts. _Lazard Frères Co. v. Protective Life Ins. Co._, 108 F.3d 1531, 1535 (2d Cir. 1997). 1)-["**_Formalities In Pauperis Act_**"] (FIPA). _Brady_ v. _Southern R. Co._, 320 U.S. 476, 479-480 (1943). If reasonable minds could differ as to the import of the evidence, however,  a verdict should be by evidence. i)-["**_Exhibit (I) (H) (I-XII)_**"]._Wilkerson_ v. _McCarthy_, 336 U.S. 53, 62 (1949).The IRS must approved  all  requests  FOIA without no more restrictions for a waiver of the  electronic  filing  requirement  based  on  each  CPEO's  particular  facts  and   exceptional circumstances  by determining a waiver request._Bill Johnson's Restaurants, Inc_. v. _NLRB_, 461 U.S. 731,  745,  n.  11  (1983).The  IRS  will  consider  the  CPEO's  ability  to  timely  file  its  return electronically without incurring an undue economic hardship, or extreme._Sartor v. Arkansas Gas Corp._,  321  U.S.  620,  624  (1944).ii)-["**_Internal  Revenue  Questions_**"]  (IRQ)._Poller_  v.  _Columbia Broadcasting Co._, 368 U.S. 464 (1962). To request a waiver, CPEOs must file a waiver request using the Online Registration System containing the following information to be recognized by all of the agencies in questions.c)-["**_Exhibit "VI") (H)   (I-III)"_**"]._La Riviere_ v. _EEOC_, 682 F.2d 1275, 1277-1278 (CA9 1982).We encourage you to consider revising all request such that a search could be conducted for specific and reasonably described records by the agencies for performing their duties for demands .i)-["**_Employer Identification Number"_**]  (EIN)._Hover v. Florida Power Light Co._, 1995 WL 91531 (S.D.Fla. 1995) .In the instructions to Form W-7, it states: "Who does not file Form W-7 — Do not file this form if you have an SSN or you are eligible to obtain an SSN. _Thus, do not file this form if you are a U.S. citizen or national, or if you have been lawfully admitted for_

*permanent residence or U.S. employment.Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Court determined that, where contractual or statutory terms of appointment of public employees guaranteed continued employment absent "sufficient cause" for non-renewal, the employees had a property entitlement in continued employment and a due process right to a hearing on the existence of sufficient cause for non-renewal.*McNeese* v. *Board of Education,* 373 U.S. 668 (1963). ii)-[*"**National Academic Formation Act**"*] (NAFA).*Truax* v. *Raich,* 239 U.S. 33, 41 (1915) (Hughes, J.).The names of many CPEOs are similar by the agencies record, or for single brand name can represent more than one business entity in a group is presenting for economic development, and for Please note: a CPEO contract must contain the exact name listed in the response of the agency CPEO fulfilling the federal employment tax obligations covered by the contract alleged in this motions. Once published, please check the list of CPEOs carefully amending agencies punitive laws. a)-[*"**26 U.S.C. § 1**"*].*Joint Anti-Fascist Refugee Committee* v. *McGrath*, 341 U.S. 123, 185 (1951)This is the "property" right that I believe is protected by the Fourteenth Amendment and that cannot be denied "without due process of law." And it is also liberty — liberty to work — which is the "very essence of the personal freedom and opportunity" secured by the Fourteenth Amendment..b)-[*"**Unlimited Equities**"*], entitle his reliefs here, additionally, to the extent that his alleging his due process claim, or violation in connection with his efforts to reopen his Naturalization application and removal procedures and such violations is presenting to the courts which are substantial by the evidence on the records.,*In Delbrook Homes, Inc. v. Mayers,* 248 Md.

80, 234 A.2d 880 (1967). i) [*"C-CPI-U "*] (*"For purposes of this subsection- **(A) In general** The term "C-CPI-U" means the Chained Consumer Price Index for All Urban Consumers (as published by the Bureau of Labor Statistics of the Department of Labor*). H.R. Rep. No. 93-1528, 93rd Cong., 2d Sess. 1 (1974), U.S. Code Cong. Admin.News 1974, p. 6756 (describing Emergency Jobs and Unemployment Assistance Act of 1974, Pub.L. No. 93-567, 88 Stat. 2117, codified at 29 U.S.C.A. §§ 961-66 (1975). ii)-["***Work Experience Training Act***"] (WETA).*Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).The values of the Chained Consumer Price Index for All Urban Consumers taken into account for purposes of determining the cost-of-living adjustment for any calendar year under this subsection shall be the latest values so published as of the date on which such Bureau publishes the initial value of the Chained Consumer Price Index for All Urban Consumers for the month of August for the preceding calendar year for characterizing the agencies. a)-["***Department of Labor***"] (DOL). That is for DOL's methodology for developing unemployment statistics constitutes a "rule," requiring notice and comment. We note that so holding can also affect the weight the agency action must be given in future agency practice and  upon judicial review. Our task is therefore a familiar one — that of characterizing the product of agency action to determine its legal status and effect.*Marshall v. Barlow's Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). b)-["***Exhibit (VI) (H) (I-XII)***"]. As here the plaintiff can proved *United States v. Cisneros-Resendiz* that can show that he was prejudiced by the government's failure to inform him of his right to move by their failure to  cancellation of illegal removal so they are

liable, if that will be the case by the counsel if jurisdiction was absent, then rule 24 empower the

courts to allow the criminal court with has sentenced him to intervene if necessary for the interest of

justice." the First Circuit has held that there is no precise and authoritativeness definition of the

interest of justice, that is same  requirement to sustain a right to intervene under the applicable  rule

24 (a) (2) . see also _Conservative law Found of New England, Inc v. Moshbasher,_ 966 F. 2d 39, 42

(1ˢᵗ Cir. 1992). Moreover, the intervenors claims must bear a sufficiently close relationship to the

dispute between the original litigations, they are matter for the courts to consider evidence by

records. ._Clervrain v. Rachel Chapa,_ No, 17-00452. These courts must first determine if whether at

least one named class representative has Article III standing, then the question if whether the name

plaintiff has representative capacity within the content of his motions, or as define by rule 23 (a), of

course The Court's legal analysis, however, would produce precisely the same result matter how

unambiguous the defendants' threatened  retaliation might have been proved with the same

administrative records,. Moreover, any doubts concerning the sinister character of a suggestion to

"think it over" delivered by each of the courts should be resolved in his favor against retaliation for

the  Enactment  of  e)-["**_Concern  Retaliation  Reform  Act"]_**  (CRRA),There  are  two  types  of

retaliation  claims,  general  claims  of  retaliation  and  claims  that  allege  that  the  individual  was

retaliated against for the exercise of specific constitutional rights. General claims for retaliation arise

from  the  Fourteenth  Amendment's  due  process  clause,  and    that  can  be  investigated  by  the

defendants for controversies . _Clervrain v. Christopher Way_. No, 20-CV-00540 for their intervention

under the  same applicable rule 24 (b) If he establishes each of the four requirements, the district

courts must allowed the agencies to intervene for mitigating crimes against an activist that his

intention his to shed the light against privatization, and he has showing  that: (1) his application to

intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in

common. The district courts has the discretion to deny intervention even if both of those

requirements are met, and its decision is reviewed for an abuse of discretion.  _Sellers v. United States_,

709 F.2d 1469, 1471 (11th Cir.1983). For example, in _Sosna_  the supreme court held that [a] named

plaintiff in a class action must show that the threat of injury in a case ….is real and immediate, not

conjectural or hypothetical…..this conclusion that he has standing does automatically established

that he is entitle to litigate the interest of the class, he seeks to represent, but it does shift the focus of

examination from the element of justification to the ability of the named representative to fairly and

adequately protect the interest of the class . _Pyke v. Cuomo_, 209 F.R.D. 33, 41 (N.D.N.Y. 2002). As

such it is appropriate to discuss them together and the commonality requirement is satisfied if

plaintiffs' grievances share a common question of law or fact. It is not necessary that all of the

questions raised by arguments are identical; it is sufficient if a single common issue is shared by the

class. _Robinson v. Metro-North Commuter R.R_., 267 F.3d 147, 155 (2d Cir. 2001); _Trief v. Dun &_

_Bradstreet Corp._, 144 F.R.D. 193, 198 (S.D.N.Y.1993); _Fox v. Cheminova, Inc._, 213 F.R.D. 113,

126 (E.D.N.Y. 2003). Or, as this court previously held in this very action, "Rule 23(a)(2) does not

require the plaintiffs to demonstrate that the class members' claims are identical; rather, it demands

that the disputed issue of law or fact 'occupi[ies] essentially the same degree of centrality to the named plaintiffs' claim as to that of the other members of the proposed class.'" _Dodge v. County of Orange_, 208 F.R.D. 79, 88 (S.D.N.Y. 2002). To be sure, here the _Sosna_ Court held that even though the named plaintiff's individual claim had become moot after proper certification of a class, the class action itself was not rendered moot. The Court reasoned that when the district court ordered certification, the class acquired a separate legal status that survived the dissipation of the named plaintiff's claims. _Sosna v. Iowa_, 419 U.S. 393, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975). Under the class certification Approach, therefore, any issues regarding the relationship between the class representative and the passive class members, such as the dissimilarity in injuries suffered are relevant only to the class certification not to standing, rule 24( b) (2) ("Treating dissimilarities in injuries names and Unnamed plaintiff as an issue of class certification under rule (a) rather than one of standing") Stated differently, representative parties who has a direct and substantial interest have standing; the question whether he may allowed to represent the class on his behalf or the others who have similarly situated with him, but not identical, interest depend not on standing, but on an assessment of typicality and adequacy of representation which plaintiff appears to met his this motion presenting in this courts. _Reade-Alvarez v. Eltman, Eltman & Cooper, P.C._, 237 F.R.D. 26, 31 (E.D.N.Y. 2006). The settlement-only class certification inquiry requires this Court to "demand undiluted, even heightened, attention in the settlement context" to Rule 23's "specifications . . . designed to protect absentees by blocking unwarranted or overbroad class definitions by

the attention is of vital importance, for the courts asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold. _Amchem Products, Inc. v. Windsor_, 521 U.S. 591, 613, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  Here, however, the district the courts had not yet certified a class at the time the of the allegation that his' claims became moot on his habeas Corpus -- indeed, the plaintiffs had not yet moved for class certification at that juncture . _Wal-Mart Stores, Inc. v. Visa U.S.A., Inc._, 396 F.3d 96, 116 (2d Cir. 2005). Although adequacy of representative is an important matter in assuring that the statutory right to a fundamental fair proceeding is respected, such class representative must not have interest antagonistic to those of the class, in order to find an antagonism between the name plaintiff objective and the objective of the class, there would need to be a legally cognizable conflict of interest between the two group.  _Yosd v. Mukasey,_ 514 F.3d 74, 78 (1st Cir. 2008). In fact courts have found that a conflict will not be sufficient to defeat a class action unless that conflict is apparent, imminent and on the issues at the very heart of the suits. _Cf. Cummings v. Connell,_ 316 F.3d 886, 896 (9th Cir. 2003) ("Stating that this circuit does not favor of denial of class certification on the basis of  of speculative conflict") As for the courts by consideration, the plaintiff does dispute that having litigating numerous cases in the federal courts involving the rights of the protected class doe not them frivolous by default., and have substantial expertise in handling immigration cases can be proving on his administrative record by challenging the ("BIA") abused of discretion is substantial, and for the Courts to finds that i)-["**_The Ant Act_**"] (TAA) will adequately protect the interests of the

class against apartheid is proving with the evidence providing. *Hussain v. Keisler*, 505 F.3d 779, 784 (7th Cir. 2007). Moreover, the fact that every class representative has not been harm in the same way as others does not by itself create a conflict precluding adequate representative against the defendants actions. a)-["***18 U.S.C 3006 (A) and Fed. R. Civ. P. 23(a)(4)***"] To obtain certification of a class action for money damages, a plaintiff must satisfy prerequisites of numerosity, commonality, typicality, and adequacy of representation," pursuant to Rule 23(a), and "must also establish that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," pursuant to Rule 23(b)(3). *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013). Thus the plaintiff has proving his claims to the courts within these motion that are typical because; 1) they are arises from the same event, or practice of course of action that give rises tot he claims of the other class members and the claims of the plaintiff and for the protected  members are based on the same legal theory. *See Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ("*noting that typicality helps determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence*"). If the plaintiff alleged that a removal order must generally exhaust all of his administrative remedied by interfering by b)-["***MDC***"] practice that is a question of law and facts for criminal investigation, and the same reasoning also undermines the Government's concern

411

that the class representatives is adequate because of the factual allegations that the restriction that imposed might caused deportation, exposed innocent to crimes by the defendants illegal contracts, and for the same purposed.2)-["***Mass Torts Allegations"]*** (MTA).<u>Rose</u> v. <u>Ark. Val. Environ. Utility Auth.</u> (W.D. Mo. 1983). The IRS will review and process all fee waiver requests in a timely manner and will send to the advocate by electronic written notice of all approval against the agencies for lifetime damages by 3)-["***Mass Economic Practice***"] (MDP).<u>Goldstein</u> v. <u>Regal Crest, Inc.</u> (E.D. Pa. 1974) "[T]he appropriate focus of inquiry here should simply be upon the extent to which the claims asserted in the earlier class proceeding have in fact placed a defendant upon notice of the claims presently at issue.a)-["***Form W-7***"] (*"An ITIN is a 9-digit number issued by the U.S. Internal Revenue Service (IRS) to individuals who are required for U.S. federal tax purposes to have a U.S. taxpayer identification number but who do not have and are not eligible to get a Social Security number (SSN)."*) b)-[***"https://www.irs.gov/forms-pubs/about-form-w-7***"].<u>Scholl</u> v. <u>Mnuchin,</u> 489 F.Supp.3d 1008, 1020 (N.D. Cal. 2020)When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are sufficient on their face to demonstrate the existence of jurisdiction. <u>Safe Air for Everyone v. Meyer,</u> 373 F.3d 1035, 1039 (9th Cir. 2004). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.<u>Savage</u> v. <u>Glendale Union High Sch. Dist. No. 205,</u> 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).Of course those allegation for mitigating crimes against privatization

Scheme does does not required the plaintiff of exhausting all of his claims as required by the ("PLRA") if the courts focus should be on what remedies are available and whether the plaintiff pursued these remedies prior to filing suit. *Vargas v. Internal Revenue Service,* No. 2:21-cv-02102 WBS DB P, 2022 WL 1129284, at *2-3 (E.D. Cal. Apr. 15, 2022). Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. *Bryant v. Rich,* 530 F.3d 1368, 1378 (11th Cir. 2008).. Of course the predators restriction by which he s still awaiting a response from the wardens regarding his grievances in most of the institution he has suffered injuries , and still in the process of exhausting his administrative remedies, that  is because section 1252 (d) (1) of the ("INA") requires exhausting only remedies available to the plaintiff as of his rights, we do not required the exhaustion of constitutional challenged to the immigration laws, because the ("BIA") has no jurisdiction to review such claims of his claims or by Enacting other proposed laws. 4)-["***National Treatment Principal Act***"] ("NTPA"). *Imperial Plan, Inc. v. United States,* 95 F.3d 25, 26 (9th Cir. 1996). As noted on his controversy cases across the country he is currently challenging the agencies policies. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau,* 701 F.2d 1276, 1293 (9th Cir. 1983) Which are not available at the time he was in the defendants illegal custody at a)-["***MDC***"]. *California Architectural Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1472 (9th Cir. 1988). Thus, the undersigned will recommend that this action be dismissed without prejudice.b)-["***BIA***"] *See* *Wilson v. Horton's Towing,* 906 F.3d 773,

783 (9th Cir. 2018). or any of their contractor facilities is subject to review de novo by the , and that

is simply to say that, these courts must considered, if whether those arguments are colorable, or even

if he did not raised this constitutional challenged all of the agencies, that us particularly his

conspiracy claims, or the agencies which also contrary with the evidence on the administrative

records for the courts to used their subpoena power ; *EEOC v. Ford Motor Credit Co.,* 26 F.3d 44,

47 (6th Cir. 1994). By having resolved the jurisdictional issues, we now turn to the merits of the

appeals that  have the authority to issue the administrative subpoenas requested against the

defendants across the country. In considering these issues, and they must apply a *de novo* standard of

review to an agency's conclusions of law . . . [and] we give a certain amount of deference to an

agency's reasonable construction of the statutes,  it is charged with administering by the agencies

expertise alleged by existing. ii)-["***The National Act***"] (TNA) *Mester Manufacturing Co. v. INS,* 879

F.2d 561, 565 (9th Cir.1989). It should be noted that, may be made as a 'speaking motion' attacking

the existence of subject matter jurisdiction in fact.*Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*

*Corp.,* 594 F.2d 730, 733 (9th Cir. 1979)..The undersigned has carefully considered whether plaintiff

may amend his complaint after his assistant arrivals to state any claim upon which relief can be

granted is presenting by a)-["***Mr.Clervrain***"].*United States ex rel. Lee v. SmithKline Beecham,*

*Inc.,* 245 F.3d 1048, 1052 (9th Cir. 2001).  that is proposing two new laws as evidence for his claims

must determined by all, iii)-["***The Dreamers Act***"] (TDA) or we call it, the best laws to be enforced

against defendants bureaucracy . *Clervrain Doctrine*. 1)-["***NIRTA***"] (" *I declare that the information*

*contained in this waiver request is true, correct and complete to the best of my knowledge and belief for agencies response*.") b)-["***National Declaratory Judgement Act***"] ("NDJA").<u>Kirsch v. Prince George's County</u>, 331 Md. 89, 97-98, 626 A.2d 372, 376 (1993) (resolving a claim brought under Article 24 of the Declaration of Rights using federal cases decided under the Fourteenth Amendment to the U.S. Constitution); <u>Murphy v. Edmonds</u>, 325 Md. 342, 354, 601 A.2d 102, 108 (1992), that viewing the facts before all Courts. 2)-["***28 U.S.C 2201 (a)"***]  allow the courts to enter a judgement by proving that in such cases of controversies within their jurisdiction…any of the court of the United States…may declare the rights and other legal relationship of the plaintiff interest seeking such declaratory, whether or not further analysis or reliefs should be applied or sought, or our interpretation of the statutory scheme Congress created to address disputes over nationality must begin, as with any matter of statutory interpretation, with the plain text of the relevant statutes. <u>Matal v. Tam</u>, 137 S. Ct. 1744, 1756, 198 L. Ed. 2d 366 (2017). The statute then explicitly instructs that, when a case is transferred from a court of appeals to a district court pursuant to section 1252(b)(5)(B) of the (INA)  for a 3)-["***Nationality Determination***"], the district courts must treat the cases "as if they are actions had been brought in the district courts for additional claim against discrimination concern a)-["***8 U.S.C. § 1701***"].<u>Green v. State Bar of Tex.</u>, 27 F.3d 1083, 1086 (5th Cir. 1994).the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statutes applied. b)-["***Enforcement of a Contract***"] If Brandako is the part of the Controlled

Group but have not yet registered as a Controlled Group in the IRS Online Registration System, then visit Create a Controlled Group License to learn how to register as a Controlled Group. All controlled groups must register as a controlled group and submit bond information through its controlled group account. c)-["***NEDSA***"].*El Paso Nat. Bank v. Southwest Numismatic Inv. Group,* Ltd. 548 S.W.2d 942, **945** (Tex. Civ. App. 1977). for development to the Group's account in a sufficient amount to cover all debts, i)-["***S-95***"] then we asking if the defendants  will denied all applicable debt. ii)-**["*Current through P.L. 118-14 (published on www.congress.gov on 09/22/2023)*** ***Section 1701 - Definitions In this chapter"***]: ("*(1) Alien The term "alien" has the meaning given the term in section 1101(a)(3) of this title.*"iii)-['["***28 U.S.C. 2201***"], The act is a procedural vehicle though which the plaintiff may request a remedy after established separate grounds for jurisdiction, it serve for the circumstances presenting or to avoid accrues of avoidable damages to one not certain of his right and afford him the opportunity to early adjudicating without waiting until his adversary, if the plaintiff is subject to removal, or he is in custody for habeas corpus, and the sole and exclusive means for jurisdiction review, then they  must be filed within the same time, so 30 days of the order of Removal must compelled.  *Clervrain v. William P.Barr*., No, ["19-60522*"*]. if the the deadline is mandatory and jurisdiction; is  subject to equitable tolling. we held that the general equitable tolling test of *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988) also governs equitable tolling claims in the habeas corpus context. a)-["***Motion for Identifying Advocate (IA) [OR"] Uniform Invention Act*** ***(UIA) by Invoking Uniform Trademarks Training Act***"] (UTTA).*Beazley v. Armour,* 420 F. Supp.

503, 507 (M.D.Tenn. 1976);Thus, although   the ("**REAL ID ACT**") (RIA) permit review of constitutional claims or question of law raised upon the plaintiff for reviewing controversies claims, and adjudicated families members benefits, if the advocate is question the defendants practices, that is the end of the matters, and for reviewing challenged constitutional violations even without final removal order once judicial review is not time-barred, which is presenting to the courts as the cases for controversy in question, and by the time the plaintiff filed his habeas petition, to exercise due diligence in preserving his legal rights. _Baldwin County Welcome Center v. Brown_, 466 U.S. 147, 151 (1984).where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline not passed for controversies claim.,_Tasco Developing and Building Corporation v. Long_, 212 Tenn. 96, 100, 368 S.W.2d 65, 67 (1963). With the district courts across the country can review all violations.,b)-["**_19-CV-46-H_**"] the deadline for properly filing a petition for review in accordance with the c)-["**_REAL ID Act_**"] had not expired. _Andrade v. Gonzales_, 459 F.3d 538, 542 (5th Cir. 2006) Thus, Section 2201 of Title 28 is the Declaratory Judgment Act, and it states, in relevant part, that "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, _and shall be reviewable as such with Clervrain v. Rodolph Alex, No d)-["**_20-CV-00132-RAW_**"], as well for additional_ evidence beyond the elements is particularly appropriate in a case like this, which involves a civil proceeding before an expert agency that regularly undertakes factual inquiries far more daunting than any that would be involved here. _Fosus v Hunter_, No e)-["**_20-CV-00297-RAW_**"] as a factual matter, congress never

decided on ages for exclusion to Nationality claim, or never determined . . . to be 21 years of age or

older, or less if inquiring for relief while in removal procedures, and congress express its intent

under 1153(h)(3) is brief for consideration. It may well contain a great deal for ambiguities, which,

or for the ("BIA") in its expertise is free to be resolved, so long as its resolution is a ``permissible

construction of the statute.'' _Chevron U.S.A. Inc._ v. _NRDC_, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L.

Ed. 2d 694 (1984). When deciding whether Congress has ``specifically addressed the question at

issue,'' thereby leaving no room for an agency to fill a statutory gap, courts must ``interpret the

statute 'as a . . . coherent regulatory scheme' and 'fit, if possible,all parts into [a] harmonious whole.'''

_FDA_ v. _Brown & Williamson Tobacco Corp._, 529 U.S. 120, 132-133, 120 S. Ct. 1291, 146 L. Ed. 2d

121 (2000). Thus, congress has spoken directly to the question in these cases or exceptional

circumstances, or for nationality claims, while the agencies involved removal procedures for those

with their parents were 1)-["**_United States Citizens_**"] ("USC").As the Court recognizes, , statutory

deadlines for suits against the Government, the terms of the statute at issue in these cases for the

defendants failure.2)- ["**_Lawful Permanent Residents_**"] ("LPRs") may petition for certain relatives

who reside abroad (known as the ``principal beneficiaries'' of such petitions is within congress intent

for protection is within this. 3)-["**_RETODA_**"].Although this precise iteration of the question has not

been expressly addressed by a prior panel, its answer lies well within the realm of circuit precedent

pertaining to related matters, while we are questioning majority opinion concerning whether this

evidence is sufficient to support the the plaintiff (s)' claims, the (BIA) had an obligation to consider

all relevant evidence on record (and to consider the plaintiff(s)' principal arguments). *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008); Indeed, the same kind of disparity in treatment for similarly situated individual would arise under the majority's rule, and would allow the agencies to effectively overrule judicial decisions, and for the Court cautioned that, where deference to an agency's reasonable interpretation is not required if they they violated they abused their discretion in the first instance, and we need not to revisit whether, apart from the administrative remedy for ineffective assistance of counsel recognized in *Lozada*, the Fifth Amendment's Due Process Clause provides an independent basis for ineffective assistance of counsel claims in removal proceedings. See *Afanwi v. Mukasey*, 526 F.3d 788, 797-99 (4th Cir. 2008) By recognizing that "a number of circuits have held that counsel's performance in a removal proceeding can be so deficient that it deprives the alien of his due process right to a fair hearing," but holding that retained counsel's ineffectiveness in a removal proceeding does give rise to a constitutional claim. *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988) In addition, the plaintiff controversy claims, and they have suffered injustice by the defendants. f)-["***Extortion***"] that their counsel's performance was deficient that can be proving on the administrative records for compelling facts at issues, and that he suffered prejudice as a result. See *Salazar-Gonzalez v. Lynch*, 798 F.3d 917, 920 (9th Cir. 2015). The fallacy of this contention lies in its assumption that, by defining extortion with reference to state law, Congress also incorporated state labels for particular offenses, of if Congress' intent was to aid local law enforcement officials, not to eradicate only those extortionate activities which any given State

denominated extortion. . . . giving controlling effect to state classifications would result in coverage under States prohibits identical activities, that is what the activist saying . *United States v. Nardello,* 393 U.S. 286, 293-294 (1969). i)-["**_MOCMA_**"], then we are questioning, if the state officials,  if that being the cases, or  for question all States Retirement System ,In so concluding, we join every other court of appeals that has addressed the issue. ii)"["**_UCLA_**"], that is other issues for national claims is being proposed  by laws. _Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,_ 466 F.3d 232, 237–39 (2d Cir.2006).iii)-["**_Uniform Common Laws Act_**"] (UCLA)We define the phrase `transactions and activity in the regular course of the taxpayer's trade or business' in § 72-15A-17(A) as: Business deals and the performance of a specific function in the normal, typical, customary or accustomed policy or procedure of the taxpayer's trade or business.Cf. _Western Natural Gas Company v. McDonald,_ 202 Kan. 98, 446 P.2d 781 (1968). The defendants do have jurisdiction to review their own violations alleged, a)-["**_United States   Tax Courts_**"].*Tarkowski v. County of Lake,* 775 F.2d 173 (7th Cir. 1985). To answers this question 1)-["**_"Yes,_**"] , or if the defendants committed Crimes against Humanity but it is an open one in this circuit. _Bell v. City of Milwaukee,_ 746 F.2d 1205, 1255 (7th Cir. 1984); b)-["**_Mass Deportation Prohibition Act_**"] (MDP). *States v. Andolschek,* 142 F.2d 503, 507 (2d Cir. 1944).2)-["**_RICO Act_**"]. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do their  part to further them by release how people they have in their record been deported . _Riordan v. Kempiners,_ 831 F.2d 690, 695 (7th Cir. 1987) c)-["**_IRS Question"_**].*Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir. 1986);

## UNIFORM NATIONALITY CHOICE ACT ("UNCA")

**II.** The Exhaustion  remedy contained in the Prison Reform Litigation Act (PLRA) mandate proper exhaustion, which means compliance with prison procedure rules and deadline, and should not be restricted by their illegality. a)-["**_UTTA_**"]. In analyzing whether entities such as the Retirement System and the Trust are arms of the State, "the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded upon the applicable law..b)-["**_USLA_**"]._Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.,_ 322 F.3d 56, 61 (1st Cir.2003). That is because the advocate is challenged his indigent Status.c)-["**_Motion for Second Assistants Act"] (SAA), Notice Treatment Act (NTA) by Invoking Uniform States Laws Act_**"] (USLA). Here, if the word d)-["**_NTA_**"] can be construe as existing laws. i)-["**_UNCA_**"].As noted by the Seventh Circuit, the Department of Homeland Security ("DHS") "frequently serves 1)-["**_NTAs_**"] where there is no immediate access to docketing information.ii)-["**_Form I-134S_**"],and the plaintiff is not required to exhausted available administrative remedies. 2)-["**_Notice For USCIS Requests_**"] and suits filed before the administrative requirement must be dismissed against illegal laws, if the evidence for retaliation was not substantial and the exhaustion prerequisite for filing a _Brown v. Rison,_ 895 F.2d 533, 535 (9th Cir. 1990), _overruled on other grounds, Reno v. Koray,_ 515 U.S. 50, 54-55, 115 S. Ct. 2021, 132 L. Ed. 2d 46 (1995). Thus, "[b]ecause exhaustion is not required by statutes, it is not jurisdictional." . If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either

"excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court."*.; McCarthy v. Madigan,* 503 U.S. 140, 144-145, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992), superseded *on other  the same grounds, so we asking if the agencies must review this one* 3)-["**42 U.S.C. 1997(e)**"].*In re Prison Litigation Reform Act,* 105 F.3d 1131, 1137-38 (6th Cir. 1997). Thus, exhaustion of administrative remedies would  not be necessary and should be excused if the agencies has authority to grant the requested reliefs or has predetermined the issued.a)-["**Control Number: NRC2024334908**"].*Branch v. Smith,* 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003).The district judge gave a reason why Congress may want to curtail joinder in ' civil litigation, and this letter is in response to your request for records under the Freedom of Information Act/Privacy Act (FOIA) or Privacy Act (PA), which was received in this office on July 20, 2024 for 1)-["**Lanese Normil…….**"].*Salvation Army v. New Jersey Dep't of Community Affairs,* 919 F.2d 183, 196 (3d Cir. 1990).In conducting plenary review over the second question,, we are mindful that ordinarily,law of the case doctrine, we will "refuse to consider issues that are raised for the first time on appeal.*Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir. 1976). 2)-["  **States Of North Carolina.**"].*Hawaii Tours, Corp. v. Polynesian Cultural Ctr.,* 116 F.R.D. 645, 649 (D.Haw. 1987).After carefully considering your request, we must granted it in its entirety pursuant to b)-["**5 U.S.C. § 552 (b)(6).**"].*Huff v. Metropolitan Life Insurance Co.,* 675 F.2d 119, 122-23 n. 5 (6th Cir. 1982). Although the appropriate standard of review for a motion to reconsider is generally whether the district court abused its discretion, if the court's denial

was based upon the interpretation, and exemption (b)(6) does not permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would not constitute a clearly unwarranted invasion of personal privacy for the purpose of questioning criminal conducts.*Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969).The types of documents and/or information that we must not withheld by the agencies for the same purpose, they must released all inform consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.i)-["***Diaspora Filling Records***"].We have stated previously that because of the strong federal policy favoring the private settlement of disputes based upon collective bargaining agreements, arbitration decisions are entitled to substantial deference and must be upheld if the ruling "draw[s] its essence from the collective bargaining agreement.*Findley v. Jones Motor Freight,* 639 F.2d 953, 957 (3d Cir. 1981).The reasons for waiving the exemption requirement does apply against each of the agencies. iii)-["***USCIS***"] to release all person admitted to united States in this illegal programs, we call if a)-["***Financial Crisis***"],*In re Openwave Sys. Sec. Litig.,* 528 F. Supp. 2d 236, 253 (S.D.N.Y. 2007).For the purposes of a motion compelling the agencies action in all of the circumstance of controversies. b)-["***Apt-Out Method***"].*In re Moody's Corp. Sec. Litig.,* 599 F. Supp. 2d 493, 512-13 (S.D.N.Y. 2009).That process which was illegal authorized prioritizes this practice is completely illegal in all senses, so we are asking for the revocation of the illegal  by the

defendants laws in questions.1)-["***Forms I-134A For Review***"],<u>Bd. of Palm Beach Cty. v. Survivors</u>

<u>Charter Sch., Inc.</u> , 3 So.3d 1220, 1230 (Fla. 2009) ("The CSAC must ... include a 'fact-based

justification for the recommendation. § 1002.33(6)(e) 5., Fla. Stat. (2005).<u>Sch. Bd. of Volusia</u>

<u>Cty.</u> , 974 So.2d at 1190 ("*The statute clearly states that the Commission ... must include a fact-*

*based justification for its recommendation.*").<u>Boyette v. State Prof'l Practices Council</u> , 346 So.2d

598, 601 (Fla. 1st DCA 1977).That is "fact-based," issues of law which Gang Members might, with

the intend to commit financial Crimes, and to maintain a meaningful and to equitable opportunity

against all, and  the agencies  must move toward deportation process individuals that might involved

in crimes against humanity, so we asking if the agencies will admitted it they are interfering with his

invention rights across, so 2)-["***DHS***"].<u>McDonald v. Department of Banking and Finance</u>, 346 So.2d

569 (Fla. 1st DCA 1977) That the agencies  must release all of their administrative records for those

that are   nationals of i)-["***Citizen of Cuba***"],.the offense of Financial Crimes can be established

where the evidence to be presented by the state officials to show that the act was accomplished by

evidence  against all  the defendants failure to acted against the presidential order for controversies

by protecting some of the people . ii)-["***Citizen of Haiti***"].<u>E.g., Hammond v. Curry,</u> 153 Fla. 245, 14

So.2d 390 (1943).The question of the weight of the evidence is usually one for the administrative

agencies for their intervention,for the courts, even though the court may have reached a different

conclusion on the same a)-["***Control Number: NRC2024330932***"].<u>Board of Dental Examiners v.</u>

<u>Feinglass,</u> 166 So.2d 686 (Fla. 3rd DCA 1964).Our responsibility on review is to determine whether

there is substantial competent evidence to sustain the agency's action.*Bowden v. State,* 152 Fla. 715, 12 So.2d 887 (1943) iii)-[**"*Citizen of Nicaragua*"**],*McNeil v. State,* 104 Fla. 360, 139 So. 791, 792 (1932), As to the responsibility of an appellate court's review of the weight of the evidence: "`While the weight of the evidence and the credibility of the witnesses is ordinarily a matter which is exclusively within the province of the jury to decide.*Dickinson v. Judges of District Court of Appeal,* 282 So.2d 168 (Fla. 1973).As well as all the others that might involved in the same crimes, not to be excluded this one. iv)-[**"*Citizens of Venezuela*"**], and their immediate family members, may request to cancel all process if were using the same illegal form by president order, that is not safe and orderly properly, so if the agencies will alleged  that was  for urgent humanitarian reasons or significant public benefit, and that claim will not supported by facts, or if the agencies are imposing innocent to people by their a)-[**"*Criminal Conducts*"**].*Clervrain v. Stone,* No. CV 318-028, 2018 WL 3939323 (S.D. Ga. Aug. 16, 2018) .So we are asking how many people that are participate in the Program without paying Fees,,so they will not be  eligible, so having  supporter in the United States will be called b)-[**"*Pretextual Claims*"**],*Clervrain v. Coraway,* No. 3:18-CV-0819, 2018 WL 6304411 (N.D. Tex. Dec. 3, 2018).To investigate or could be shown by suit for injunction to have acted "capriciously, arbitrarily, fraudulently or in such manner as to amount to a gross abuse of discretion against. 1)-[**"*Unpublished Opinion*"**].*State ex rel. Dep't of Gen. Serv. v. Willis,* 344 So.2d 580, 584 (Fla. 1st DCA 1977)."In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent

standards than formal pleadings drafted by lawyer, then we asking if the judges must published of their records for controversies.2)-["***Published Opinions***"]..Brinkmann v. Dallas County Deputy Sheriff Abner, 813 F.2d 744, 748 (5th Cir. 1987).For that reasons we are asking if the agencies must reviewed all evidence in their records...i)-["***USCIS***"].As well as for them to release how many people that had applied for c)-["***Permanent Resident***"], have pending for resident for many years, for and clearer robust security vetting, will meet by other eligibility criteria; and Warrant a favorable exercise of discretion is another question being challenged by abused of power, through the process and can seek advance authorization by an organization recognized, even so the fact that the plaintiff had suffered from the ii)-["***INA***"].Venetian Shores Home Prop. Own. v. Ruzakawski, 336 So.2d 399 (Fla. 3d DCA 1976).By the defendants illegal detention is another issues couple with illegal restrictions, as here the plaintiff has indicated that he has undertaken any efforts to exhaust his administrative remedies. And the defendants must release the administrative records raised the issues for declaration of rights iii)-["***National Reliefs***"].NLRB v. Universal Camera Corp., 179 F.2d 749 (2d Cir. 1950).As mentioned, before, futility is exceptional to the exhaustion requirement to be acted by the judges to master in equities, if the agencies will restricted him to electronically filed to other agencies when he was in their custody, so the (BIA) aware of the situation presenting, or because of his indigence that can be proving why he could not filed some of the claims required for the courts interventions, and that is if the defendants will alleged any defense for as claim should declared as to be non-frivolous against the defendants actions in all of the circumstances in questions

of facts in laws by means of the alleged evidence presenting to the courts. _Laing v. Ashcroft_, 370

F.3d 994, 1000-1001 (9th Cir. 2004). of course, when faced with a challenge to an administrative

agency's construction of a statute, which is implemented by that agency, a court must determine ,or

if whether this evidence, so viewed, is adequate to allow any rational trier of fact to find the essential

elements of the crime beyond a reasonable doubt, and that the defendants are required to answered

the relevant is within this case. _Clervrain v. Rossaso_, No 20-CV-00389, and because that is so, they

may also play a real role in a criminal cases, if proved, would entitle petitioner to relief, as there is

nothing in the record to indicate "that [defense] counsel's representation fell below an objective

standard of reasonableness, but still, they are  created equal for every purpose, and the standards for

filing an amicus brief are set out in Federal Rule of Civil Procedure._Krupski v. Costa Cruise Lines, N_.

_V., LLC,_ 330 Fed.Appx. 892, 895 (C.A.11 2009). For purposes of that inquiry, it would be error to

conflate knowledge of a party's existence by laws congress has mandated judicial officials to

consider all claims upon reliefs can be.a)-["**_29. Under Rule 29(a)_**"]._Foman v. Davis_, 371 U.S. 178,

182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).As the inventor is filling this motion by all parties consent

is within the evidence. b)-["**_TMPA_**"], at page, 124 (IV), so all applications must be granted when

Brandako is asking to enforce economic Development by proper way ,or all FOIA Requests must be

granted, and   are requesting a waiver of all Forms I-765 filing fee must submit Form I-765 by

electronic email with c)-["**_Form I-912, Request for Fee Waiver_**"]._Boriboune v. Berge,_ 391 F.3d 852,

855-56 (7th Cir. 2004).or if the court grants leave is mandatory in these cases that is the end of the

matter of the courts to review..1)-["***Exhibit (IV) (H) (I-XII***"].*Universal Camera Corp. v. NLRB,* 340

U.S. 474, 493, 71 S.Ct. 456, 467, 95 L.Ed. 456, 470 (1951)."The sub-stantiality of evidence must be

reviewed against the defendants actions,  "When the inventor objects to the agencies actions, or by

filing administrative records for his assistants, and their family member for adjudicating their rights

and leave of court is demanding by, 2)-["***Rule 29(b)***"].In *Anderson v. Anderson* , 13 Utah 2d 36, 368

P.2d 264 (1962), for example, the Utah Supreme Court construed the language of rule 63(b) to

require a new trial where the trial judge denied the disqualification motion without certifying it to a

reviewing judge, additionally, it provides that the motion for leave to file must be accompanied by

the proposed brief and must state: (1) the movant interest; and (2) the reason why an amicus brief is

desirable and why the matters asserted are relevant to the disposition of the cases. Although the Rule

does not say expressly that a motion for leave to file should be denied if the movant does not meet

the requirements of (a) an adequate interest, (b) desirability, and (c) relevance, this is implicit claims

against eachof the defendants across the country." *Neonatology Assocs., P.A. v. C.I.R.* 293 F.3d 128,

130-31 (3d Cir. 2002). That is because intention is to file the motion(s) to the (BIA) ,but  the

restriction is so effective caused him delays, and the courts must compelled all agencies now,

particularly if he was a victim by the 2)-["***BIA***"] and the agencies raise it this motion(s) to the

agencies to be serve at the government expenses, and this motion is timely  for review, and we also

asking the courts for granting these motions by for similarly individual interested  to file a joint

amicus brief for review de novo questions of law and constitutional claims. *Coronado v. Holder*, 759

F.3d 977, 982 (9th Cir. 2014). 3)-["***18 U.S.C. 3626 (g)(2***")"].*Pons v. Faux* , 16 Utah 2d 93, 396 P.2d

407, 408 (1964).Accordingly, if the plaintiff "invoked federal-question jurisdiction in question by

means of common laws against the agencies actions .*Inmates of Suffolk County Jail v. Rouse* 129

F.3d 649 (1st Cir. 1997). a)-[" ***Release All Private Prisons***"].*Barnard v. Murphy*, 852 P.2d 1023,

1025 (Utah App. 1993). To determine other eligibility because of judicial decisions, they are

protecting crime of apartheid..i)-["***Requirements Of Rule 63(b)***"].This court has jurisdiction over the

instant petition for a writ of mandamus.*Clervrain v. Shafer*, No. CV 122-001, 2022 WL 604896, at

*1 (S.D. Ga. Jan. 6, 2022).ii)-["***Motion For ["Writ Mandamus Act"] ["WMA"] ["Quasi Judicial***

***Act"] (OJA) By ["Scientific-E-Laboring Treaties Act"] ("SELTA).****Clervrain et al. v. Gruters et al.*,

3:21-cv-01209-HLA-LLL (M.D. Fla. Dec. 8, 2021).The motion to proceed *in forma pauperis* was

denied and the complaint dismissed.*Clervrain et al. v. Gruters et al.*, 3:21-cv-01209-HLA-LLL

(M.D. Fla. Feb. 16, 2022).a)-["***Utah R.Civ.P. 63(b)"***].*Clark v. Ga. Pardons and Paroles Bd.*, 915

F.2d 636, 639 (11th Cir. 1984) ("**(a) Substitute judge; Prior testimony.** *If the judge to whom an*

*action has been assigned is unable to perform his or her duties, then any other judge of that district*

*or any judge assigned pursuant to Judicial Council rule is authorized to perform those duties. The*

*judge to whom the case is reassigned may rehear the evidence or some part of it.***(b) Motion to**

**disqualify; affidavit or declaration.(b)(1)** *A party to an action or the party's attorney may file a*

*motion to disqualify a judge. The motion must be accompanied by a certificate that the motion is*

*filed in good faith and must be supported by an affidavit or unsworn declaration as described in*

*Title 78B, Chapter 18a, Uniform Unsworn Declarations Act stating facts sufficient to show bias, prejudice or conflict of interest. The motion must also be accompanied by a request to submit for decision.**(b)(2)** The motion must be filed after commencement of the action, but not later than 21 days after the last of the following:**(b)(2)(A)** assignment of the action or hearing to the judge;**(b)(2)(B)** appearance of the party or the party's attorney; or**(b)(2)(C)** the date on which the moving party knew or should have known of the grounds upon which the motion is based. If the last event occurs fewer than 21 days before a hearing, the motion must be filed as soon as practicable.*

***(b)(3)** Signing the motion or affidavit or declaration constitutes a certificate under Rule 11 and subjects the party or attorney to the procedures and sanctions of Rule 11.**(b)(4)** No party may file more than one motion to disqualify in an action, unless the second or subsequent motion is based on grounds that the party did not know of and could not have known of at the time of the earlier motion.**(b)(5)** If timeliness of the motion is determined under paragraph (b)(2)(C) or paragraph (b)(4), the affidavit or declaration supporting the motion must state when and how the party came to know of the reason for disqualification.**(c) Reviewing judge.(c)(1)** The judge who is the subject of the motion must, without further hearing or a response from another party, enter an order granting the motion or certifying the motion and affidavit or declaration to a reviewing judge. The judge must take no further action in the case until the motion is decided. If the judge grants the motion, the order will direct the presiding judge of the court to assign another judge to the action or hearing. Assignment in justice court cases will be in accordance with Utah Code of Judicial 34*

*Administration Rule 9-109. The presiding judge of the court, any judge of the district, or any judge of a court of like jurisdiction may serve as the reviewing judge.**(c)(2)** If the reviewing judge finds that the motion and affidavit or declaration are timely filed, filed in good faith and legally sufficient, the reviewing judge shall assign another judge to the action or hearing or request the presiding judge to do so Assignment in justice court cases will be in accordance with Utah Code of Judicial Administration 41 Rule 9-109..**(c)(3)** In determining issues of fact or of law, the reviewing judge may consider any part of the record of the action and may request of the judge who is the subject of the motion an affidavit or declaration responding to questions posed by the reviewing judge.**(c)(4)** The reviewing judge may deny a motion not filed in a timely manner..*Clervrain v. Edwards, No. CV 21-345-SDD-EWD, 2022 WL 628537 (M.D. La. Mar. 3, 2022).As other courts failed to compel all of their performance by laws.b)-["**_Utah. R. Civ. P. 63_**"].*Washington v. Dept. of Children and Families,* 256 Fed.Appx. 326, 327 (11th Cir. 2007).*("The United States Judicial Panel on Multidistrict Litigation, and even the Supreme Court of the United States.").*Wright v. Van Patten,* 552 U.S. 120, 125, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008).Moreover, Clervrain identifies  prejudice that resulted from the Judges, Particularly in all of the Federal Courts, so we asking if the courts must justified their actions against  defendants.c)-["**_Apartheid._**"].*Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353  (1993).For the same reasoning the agencies must released all of the Judges that had excluded people.i)-["**_PLRA_**"]   ("*[E]ven if no single error were prejudicial, where there are several substantial errors, `their cumulative effect may nevertheless be so prejudicial as to*

*require reversal*").1)-[*"**Anti-Apartheid Florida Act**"*] (AFLA).*United States v. Larson*, 460 F.3d 1200, 1217 (9th Cir. 2006) That is for the judges not to restrict him, and does include habeas corpus proceedings challenging the fact or duration of confinement in prison...."); *Andrews v. King*, 398 F.3d 1113, 1122 (9th Cir. 2005).2)-[*"**Anti-Apartheid Kansas Act"**"*] (AKSA).*Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) ("*explaining that the presumption is a basic component of the right to a fair trial*").3)-[*"**Anti-Apartheid Indiana Act**"*] (AINA).*Musladin v. Lamarque,* 427 F.3d 653, 656-60 (9th Cir. 2005) ("*reversing a murder conviction because spectators wore buttons depicting the alleged victim's photograph*"),*United States v. Olvera,* 30 F.3d 1195, 1198 (9th Cir. 1994). i)-[*"**Motion for Clervrain Apartheid Act (CAA), Anti-Retaliation Act (ARA) by Anti-Apartheid Florida Act**"*] (AFLA).The presumption is so undermined when the practice creates "an acceptable risk . . . of permissible factors coming into play against the agencies actions will support lifetime damages.1)-[*"**Exhibit (I) (U) (I-XII)**"*]..*Clervrain v. Biden* No. 22-1086-EFM (D. Kan. Jun. 20, 2024).This constitutes a permissible exercise of discretion, which the Kansas District courts failed, or if they *dismissed his petitions do count as strikes as a violation upon reliefs can be granted for additional damages 2)-["**PLRA**"*], as such he is seeking a declaration that he is the prevailing party "to prevent these controversy cases from ever improperly being counted as a 'strike' under the..." ii)-[*"**Prison Litigation Reform Act**"*] ("PLRA") and for the court to liberally construe this motion dictated by Supreme court in *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). a)-[*"**Exhibit (III) (U) (I-XII)**"*] That is a particular fact upon relief can

be granted without the benefits of formal training as a lawyer or help of processional lawyer in drafting his pleading. 1)-["***Motion for House of Counsel Act (HOCA) Scientific Evidence Act (SEA) By Nation Union Treatment Act***"] (NUTA).*In PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 (PLCM), our Supreme Court held that a corporate litigant represented by in-house counsel, i.e., counsel who was an employee of the party, could recover attorney fees under section 1717 for the services of that counsel.*Herbster v. North Am. Co. for Life Health Ins*., 501 N.E.2d 343 (Ill.App.Ct. 1986). 2)-["***Motion Clervrain Ethical (s) Act (CEA), Woodrove Previl (WP) by the National Identity Benefits Act***"] (NIBA).*McCoy* v. *Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 438 (1988).The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. a)-["***Exhibit (V) (U) (I-XII)***"]. To guard against the possibility, then, that Mr.Clervrain has done the advocate's work of looking hard for potential issues for controversies claims for the courts to consider all claims for controversies.*Clervrain v. Sessions* CASE NO. 18-3039-SAC (D. Kan. May. 16, 2018). The district court failed to take jurisdiction when the advocate asked to make decision, and the applicant "exhaust[s] his administrative remedy of appealing the denial to an immigration officer"); *Idahosa v. Bureau of Immigration & Customs Enforcement,* 111 F. App'x 293, 294 (5th Cir. 2004). b)-["***Exhibit (I) (S) (I-XII)***"].*NRDC v. U.S. Envir. Protection Agency,* 658 F.3d 200, 215 (2d Cir. 2011). If the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible

that it could not be ascribed to a difference in view or the product of agency expertise in question for compelling all factors. c)-["**_Exhibit (III) (S) (I-XII)_**"].*Zhao v. U.S. Dept. of Justice*, 265 F.3d 83, 93 (2d Cir. 2011).i)-["**_8 C.F.R. § 103.5(a)(2)_**."] (""*A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy. A motion to reconsider a decision on an application or petition must, when filed, also establish that the decision was incorrect based on the evidence of record at the time of the initial decision*.")*Shabazz v. Parsons*, 127 F.3d 1246, 1248-49 (10th Cir. 1997) ii)-["**_8 C.F.R. § 103.5(a)(3)._**"]*Hampton v. Hobbs*, 106 F.3d 1281, 1283-88 (6th Cir. 1997). To the extent Plaintiff is challenging the constitutionality of this punitive laws b against the defendants negligence a)-["**_28 U.S.C. § 1915_**"], the statute has not been upheld by the Tenth Circuit in the circumstance presenting by *Mr.Clervrain*, as well as numerous other circuit courts for their intervening cause upon reliefs can be granted.*Tucker v. Branker*, 142 F.3d 1294, 1301 (D.C. Cir. 1998) 1)-["**_Lien - Wikipedia_**"] *Boyle v. Lake Forest Property Owners Ass'n, Inc.*, 538 F. Supp. 765, 769 (S.D.Ala. 1982)("*It has also been argued that an agreement by contract that one party may retain the goods of another party until paid is not a lien, as under the common law, liens could only be nonconsensual. However, under insolvency law, such rights will be treated as liens even if they are not expressed as liens.*").*Kell v. Bella Vista Village Property Owners Ass'n*, 258 Ark. 757, 528 S.W.2d 651, 653 (1975). That particular importance is the evidence, as it involved very similar facts to the present case.*Lake O'The Hills Maintenance Ass'n*, 381 So.2d 1043,

1044 (Miss. 1980).2)-[**"*Contractual liens*"**].*One Condominium Corp. Inv. v. Point East Developers, Inc.,* 348 So.2d 32 (Fla.App. 1977). The difference results in a major distinction. In Florida, the constitutional prohibition against the forced sale of homestead property is a prohibition against the use of process for that purpose; it does not invalidate the debt or the lien but, under certain circumstances, merely takes priority over all of the debts or liens. *Bennett v. Behring Corp.,* 466 F. Supp. 689 (D.C. 1979) b)-[**"*Exhibit (II) (D) (I-XII)*"**].*Edwards v. Sammons,* 437 F.2d 1240, 1243 (5th Cir. 1971). These courts should recognized that federal courts have historically excessive great tolerance to unsure an impartial forum remained available by invokes the jurisdiction of the courts  without the guidance of trained counsel, as such his motions must help to less stringent pleading requirement, or rigor in the examination the motions, complaints or pleadings are for  such circumstances, there are sufficient grounds for vacating the illegal judgments against the defendants injustice across the country . *Nunez* v. *United States,* 554 U.S. 911, 912, 128 S. Ct. 2990, 171 L. Ed. 2d 879 (2008). c)-[**"*Exhibit (XIX) (M) (I-XII)*"**].*Consumer Protection under Art. II of the* UCC" 29 *Ohio St.L.J.* 689 (1968).The requirement of administrative exhaustion can be either statutorily judicially imposed by distinction between the two exhaustion requirements can be 'pivotal,' because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions *Nonetheless, the court in Theodoropoulos II* also recognized an exceedingly narrow exception. It stated that although "as a general rule, courts are required to strictly enforce statutory exhaustion requirements," there are

"some limited circumstances in which an exception to the general rule might apply in all of the circumstance alleged for questioning . *Pou Chen Corp. v. MTS Products*, 183 Cal.App.4th 188, 107 Cal. Rptr. 3d 57 (2010). 1)-["***Commerce***"].*Whitman v. Am. Trucking Assoc,* 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). The doubt was put to rest by the Trademark Law Revision Act of 1988, which inserted into § 1127 the requirement that a "use in commerce" be a "bona fide use of a mark in the ordinary course of trade and that is merely made to reserve a right in a marks alleged in this cases for additional reliefs…*Procter Gamble Co. v. Johnson Johnson Inc.*, 485 F.Supp. 1185 (S.D.N.Y. 1979). This was part of a change intended to bring the federal trademark registration system into harmony with the registration system of other nations, Pub.L. No. 100-667, 102 Stat. 3935 (Nov. 16, 1988),2)-["***Commercial Activities***"].*Cooley* v. *Board of Wardens of Port of Philadelphia*, 12 How. 299, 318-321 (1852). This became evident when the Court began to confront federal economic regulation enacted in response to the rapid industrial development in the late 19th century by similar questions.3)-["***Finance***"].*In Household Credit Servs. v. Pfennig*, 541 U.S. 232, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004), the Court considered the definition of "finance charge" in which congress speaks clearly a)-["***15 U.S.C. § 1605(a)***,"]. To prevent circumvention or evasion thereof, or to facilitate compliance therewith." § 1604(a). Thus, the Court has previously recognized that "the [Board] has played a pivotal role in `setting in motion.*Ford Motor Credit Co.* v. *Milhollin,* 444 U.S. 555, 566 (1980). If Congress has expressly delegated to the Board the authority to prescribe regulations containing "such classifications,differentiations, or other

provisions" as, in the judgment of the Board, "are necessary or proper to effectuate the purposes of

for additional equities demands 4)-["***Financial Services***"].*Accuride Int'l, Inc. v. Accuride Corp.,* 871

F.2d 1531, 1536 (9th Cir. 1989). We held that "[t]he mere possibility of future competition is too

tenuous a basis on which to reverse the district court. . . . *[T]he growth of the companies and the*

*changes in their services does  create a basis for relief.*.*United States v. Martin*, 408 F.3d 1089,

1092 (8th Cir. 2005). b)-["***Equitable Tolling***"].*United States v. Martin*, 408 F.3d 1089, 1092 (8th

Cir. 2005). The use of equitable procedures should be infrequent,  *Flanders v. Graves*, 299 F.3d 974,

976 (8th Cir. 2002), and  will be applied if the habeas movant has diligently pursued his rights,

see *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007). That is  because the courts again failed to

apply Equitable tolling is an exceedingly narrow window of relief." *Maghee v. Ault*, 410 F.3d 473,

476 (8th Cir. 2005).5)-["***Business  Law***"].*In Fumarelli  v. Marsam Dev*., 92 N.Y.2d 298, 680

N.Y.S.2d 440, 703 N.E.2d 251 [1998], the Court of Appeals held that the codification of

General Business Law article 36–B, pursuant to which a builder-vendor may exclude or modify all

express warranties provided that the purchase agreement contains a limited warranty in accordance

with the provisions of General Business Law § 777–b, has superseded the common law implied

housing merchant warranty previously recognized in *Caceci v. Di Canio Constr. Corp*., 72 N.Y.2d

52, 530 N.Y.S.2d 771, 526 N.E.2d 266 [1988]..The history, timing, wording, and breadth of the

statutory enactment all indicate that the Legislature did not intend an overlapping dual track that

would engender confusion, indefiniteness, and lawsuits.*Karger, Powers of the New York Court of*

*Appeals* § 5 [3d ed.] ) 6)-["***Commercial Law***"].This tribunal itself early reflected that it should "authoritatively declare and settle the law uniformly throughout the state.*Cardozo, Jurisdiction of the Court of Appeals of the State of New York* [2d ed.1909] .We bear in mind this Court's dual function to rule on the particular case and to try to settle important legal issues, as he  proposed the various laws   and litigated by 7)-["***Contracts Laws***"]. In *Crawford Professional Drugs, Inc. v. CVS Caremark Corp*., 748 F.3d 249 (5th Cir. 2014), however, the Fifth Circuit made clear that "prior decisions allowing nonsignatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson*, have been modified to conform with [the Supreme Court's decision in] Arthur Andersen," which "instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on... equitable estoppel if the relevant state contract law so permits. 8)-["***Intellectual Property***"]. In *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009), the Supreme Court held that, under the FAA, traditional principles of state law may allow an arbitration contract to be enforced by or against non-parties to the contract through a number of state-contract-law theories, including equitable estoppel all other defendants.9)-["***Property  &  Real  Estate  Law***"].*Grigson  v.  Creative  Artists  Agency L.L.C.,* 210 F.3d 524 (5th Cir.2000),We recognize that our prior decisions applying federal common law, rather than state contract law, to decide such questions.*Cargill Inc. v. Golden Chariot MV,* 31 F.3d 316, 317 (5th Cir.1994). 10)-["***Business Sectors***"].*Allied–Indus. Chem. & Energy Workers Int'l Union, Local 4–12 v. Exxon Mobil Corp.,* 657 F.3d 272, 275 (5th Cir.2011).This court reviews an

order compelling arbitration de novo.*Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 & n. 4 (5th Cir.2010) 11)-[**"*Commercial Transactions*"**]"We review the district court's findings of fact under the clearly erroneous standard.*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 338 n. 5 (5th Cir.2004) 12)-[**"*Legal Education and Practice*"**].*Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1032–34 (Miss.1985). In relevant part, the Restatement provides The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issues.*PIC Grp. Inc. v. LandCoast Insulation, Inc.*, 718 F.Supp.2d 795, 799 (S.D.Miss.2010) 13)-[**"*Property Law*"**].*Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).The Court's construction of the phrase "any other law enforcement officer" runs contrary to " 'our duty "to give effect, if possible, to every clause and word of a statutes for additional damages, though the final reference to "any other law enforcement officer" does result in some ambiguity, the legislative history, by virtue of its exclusive reference to customs and excise, confirms that Congress did not shift its attention from the context of revenue enforcement when it used these words at the end of the statutes for controversies claims.*Theodoropoulos v. INS*, 358 F.3d 162, 167 (2d Cir. 2004) We invoke the narrow leeway afforded by *Theodoropoulos  II* and hold that in light of the unusual facts of  controversy's cases, an exception is necessary to prevent manifest injustice, and this is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of

general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) ["***Fed. Rule of Civ. Proc. 4(k)(1)(A)***"]. That is for Jurisdiction to be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984), the court may exercise general jurisdiction over any action brought against the defendants, and  these courts may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum for controversy claim. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008). The clause makes arbitrate "[a]ny dispute, controversy or claim arising or in connection with the meaning of proper, and applicable laws, upon reliefs can be granted. *Graham v. Commonwealth Life Insurance Co.,* 114 Fla. 585, 154 So. 335 (1934); .It is a general rule that preliminary agreements and understandings relative to the sale of property merge in the deed by which the original contract becomes executed by each of the agencies involved in controversies .ii)-["***Viable Contracts***"]..*Gabel v. Simmons,* 100 Fla. 526, 129 So. 777 (Fla. 1930). Thus, it has been held that the contract for purchase and sale will merge with the grantor's deed and the latter will control with respect to warranties of sale.*generally, 10 Fla.Jur., Deeds* § 159; and *Williston on Contracts* § 1399A (Jaeger 3rd ed. 1968).We have previously held that this is precisely the kind of broad arbitration clause that justifies a presumption of arbitrarily,*Collins Aikman Prod. Co*., 58 F.3d at 20 (holding that a clause "submitting to arbitration `[a]ny claim or controversy arising out of or relating to th[e] agreement, is

the paradigm of a broad clause.") (citation omitted, alterations in original). Therefore, retaliatory

discharge claim is preemptively within the scope of the arbitration clause contained on his

grievances, they are evidence to question the defendants in their official capacities as well as for all

courts quoted in the claims.iii)-["***21-CV-01919;  21-CV-62266***"].*Stephan v. Brown,* 233 So.2d

140 (Fla. 2d DCA 1970). It is a general rule that preliminary agreements and understandings relative

to the sale of property merge in the deed by which the original contract becomes executed by each of

the defendants, when they failed to prove that there is no contracts, if whether defendants deprive

him his constitutional rights, or deprivation of rights is actionable as evidence for substantial

contracts violations under all applicable laws,so if the inventor is requested by using common laws

for process access to the courts, a)-["***FOIA***"]. that is because  the agencies created a disability

process when they excluded Indigent person to file application form online, If you they need

assistance, call or send a request to b)-["***FOIAPAQuestions@uscis.dhs.gov***"] with the rights subject,

filling Applications,so if the "FOIA can be used for investigation process,"and the document  needed

to access by all claims,1)-["***Mr.Clervrain***"].*St. Clair v. City Bank Trust Co.,* 175 So.2d 791 (Fla. 2d

DCA 1965). Who is the representative for his invention rights constitute additional contacts them,

and for to be email, but allowing to access all applications form without filling fees, so  all fees must

be waived by the same. 2)-["***Grievances Procedures***"].*Glenny v. American Metal Climax, Inc.,* 494

F.2d 651 (10th Cir. 1974).If  they are interring with of his right of revolution without any reasoning

standard, but restrictions,  his views upon the right of revolution were fully expounded before the

committee for majority opinions, and those views are compatible with all membership with anything if they have committed the same violations, or restrictions by each of the judicial officials in questions for controversies nationwide by laws. *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. 465, 468-472 (1985). a)-["***Form 9089***"].*Volunteer Security Co. v. Dowl,* 159 Fla. 767, 33 So.2d 150 (Fla. 1947)..It is not hard to understand the logic of a position that permits the activist or the advocate to represent public interest,, or the inventor to expound at length upon his views as to the right of his revolutions to be enforced .b)-["***Control Number: NRC2024306472***"].*Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 97 L.Ed. 1427 (1953)). It is not difficult to conceive that the FTCA, which was enacted by Congress to make the tort liability of the United States "the same as that of a private person under like circumstance, ,Indeed, the Court's must construction reads the exception to defeat the central purpose of all of the statutes, by an interpretative of the agencies to review all claims upon reliefs can be granted in its explicit terms, and the Court must identify only " 'those circumstances which are within the words.*FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 143, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). The "owner of the damaged or lost property" first must file an FTCA claim with the Bureau of Prisons (BOP) regional office, but if they continue to prevents him by failure to answer rights questions.*United States v. Palmer,* 3 Wheat. 610, 631, 4 L.Ed. 471 (1818) (Marshall, C.J.) (" [G]eneral words," such as the word " 'any'," must not"be limited" in their application "to those objects to which the legislature intended to apply them for additional claims against the agencies actions. *Small v. United States,* 544 U.S. 385, 388, 125 S.Ct.

1752, 161 L.Ed.2d 651 (2005). b)-[" ***FOIA Requests***"],_United States v. Alvarez–Sanchez,_ 511 U.S. 350, 357, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) ("*[R]espondent errs in placing dispositive weight on the broad statutory reference to 'any' law enforcement officer or agency without considering the rest of the statutes alleged  against  them across the country for controversies claims upon reliefs can granted*").1)-[" ***Office of Congressional Workplace Rights***"] (**OCWR**).[_Brady v. Maryland_, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215, 218-19 (1963).]In terms of justice, "[a]udi alteram partem [to hear the other side] is said to be `certainly the oldest established principle in Anglo-American administrative law.'" Julian M. Joshua, _The Right to be Heard in EEC Competition Procedures_, 15 Fordham Int'l L.J. 16 (1991)Bernard Schwartz, _An Introduction to American  Administrative  Law_ 105 (2d  ed.  1962).The Office of Congressional Workplace Rights (OCWR; formerly the Office of Compliance) was created through the Congressional Accountability Act of 1995 (CAA) which applied workplace protection laws to approximately 30,000 employees of the legislative branch nationwide and established the Office of Compliance to administer and ensure the integrity of the Act through its programs of dispute resolution, education, and enforcement.i)-[" ***Exhibit (I) (M) (I-XII)***"]._Kroese v. General Steel Castings Corp.,_ 179 F.2d 760 (C.A. 3d Cir.)What separates our system of law from all others is our unflinching insistence on the value of procedure. It is the "Due Process" of the law that is guaranteed by the _Fifth Amendment_, not any particular substantive right..ii)-[" ***Exhibit (VII) (E) (I-XII)***"]._Patterson v. McLean Credit Union,_ 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The OCWR educates members

of Congress, employing offices and employees, and the visiting public on their rights and responsibilities under workplace and accessibility laws._Finley v. United States,_ 490 U.S. 545, 556, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The OCWR also advises Congress on needed changes and amendments to the CAA; and the OCWR's General Counsel has independent investigatory and enforcement authority for certain violations of the CAA.Cf. _IBP, Inc. v. Alvarez,_ 546 U.S. 21, 32, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005). We do Congress no service by presenting it a moving target. In all events, Allstate has not even asked us to overrule _Sibbach,_ let alone carried its burden of persuading us to do so. 2)-[**_Uniform Reliefs Mandatory Act_**"] (URMA)._Hanna v. Plumer,_ 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).So the question is for how long? They have been used innocent people, we can not only say that what seems to us to be a logical consistency is a reflection upon his character, but also his intention is to promote education throughout the system of integrity question against the  defendants actions, to to prove the defendants malicious intent, or to injury the person by violated his constitutional  rights., that is for protected rights. _LeClair v. Saunders_ 627 F.2d 606 (2d Cir. 1980). These Courts must described a lack of good faith by all their official actions,particularly those. 1)-[**_Judicial Officials_**"] as " malicious intent , capricious action or corrupt conduct"  or " willful and corrupt misconduct._Byrd v. Blue Ridge Rural Elec. Cooperative, Inc.,_ 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).But while Congress  may have the constitutional power to prescribe procedural rules that interfere with state substantive law in any number of respects. 2)- [**_On Petition for A Writ of Certiorari_** "],,_Sibbach v. Wilson & Co.,_ 312 U.S.

1, 13–14, 61 S.Ct. 422, 85 L.Ed. 479 (1941) *That is the Enactment of law, all new laws proposed to the agencies for their actions. 3)-[*"**_Right Issues Treatment Act_**"] (RITA),_Ratner v. Chemical Bank New York Trust Co.,_ 54 F.R.D. 412, 416 (S.D.N.Y.1972). which the plaintiff brought an action for false imprisonment and retaliation against the defendants in their  officials capacities, as well as for lifetime damages,  for interfering on his first amendment rights, or to inform the courts what ? reliefs he is inquiring about since he was admitted to the ("BOP"), then even after his release he was confronting the same conducts by judicial officials, they are involved in serious crimes by administrative crimes, or if whether or we are questioning the administrative branch duty to analyzing the conducts by the judicial officials, or for the agencies to  to define all words, or therm explained in the motions. c)-["**_Elements Crimes_**"],_Guaranty Trust Co. v. York,_ 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) To be included, if the allegation against the judicial official can be classified as serious crimes, therefore, requires careful interpretation of the state and federal provisions at issue. 1)-["**_Judicial Extortion_**"]._Erie R. Co. v. Tompkins,_ 304 U.S. 64, 92, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)."The line between procedural and substantive law is hazy for the agencies to starting serving the defendants._Cohen v. Beneficial Industrial Loan Corp.,_ 337 U.S. 541, 555, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949),We next must considered if whether the plaintiffs' extortion pleadings are adequate,so the agencies are expert to investigate serious crimes to process.2)-[*"**_https://en.wikipedia.org/wiki/United_States_courts_of_appeals_**"]*perry v. Crompton Corp.,_ 8 N.Y.3d 204, 211, 831 N.Y.S.2d 760, 863 N.E.2d 1012, 1015 (2007).The manner in which

the law "could have been written. i)-["***NIRTA***"].We cannot rewrite that to reflect our perception of legislative purpose. 3)- ["***Agencies Delay Process***"]*Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 79–80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). They are serious criminals when they exported permanent resident.  ii)-["***BIA***"] has previously held that determining whether a crime is particularly serious requires a case-by-case analysis, using "such factors as the nature of the restriction imposed, the circumstances and underlying facts of the delay process, which the defendants will need to answer by 3)-["***Mass Incarceration***"], and, most importantly, whether the type and circumstances of the crime indicate that the Judges, or the agencies officials  are restricted the plaintiff against public interest, that is evidence, they are very  danger person to the community, and  the applicable legal standard for determining whether the those officials has committed a particularly serious crimes, and why ? they should not be prosecuted like the other that had committed crimes, or is to apply the laws all laws propose without exception so the courts and the agencies must follow all leads as requested  by all factors alleged ... *Anza v. Ideal Steel Supply Corp.* 547 U.S. 451 (2006). a)-["***Mass Incarceration Prohibition Act***"] (MIPA).*Coon v. Ledbetter,* 780 F.2d 1158, 1161 (5th Cir. 1986);..To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct..*Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir. 1985). b)-["***Release Al false Imprisonment***"]. We can make it more precise by noting that supervisors who are merely negligent in failing to detect and prevent subordinates' misconducts are liable,*Fundiller v. City of Cooper City,* 777 F.2d 1436, 1443 (11th Cir. 1985)

### FEDERAL PERFORMANCE DUTY ACT ("FPDA")

**III.** The first prong--constitutional deficiency--is necessarily linked to the practice and expectations of the legal community, and the relevant statute or any duties or functions performed or pay or allowances received in their officials capacity, While "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," individuals sued in their official capacities stand in the shoes of the entity they represent. _Kentucky v. Graham,_ 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit "imposes liability on the entity that he represents." _Brandon v. Holt,_ 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). a)-[**_"Motion for Re-Assignment Judges, OR Notice Professional Act by Invoking the Judicial Issues Prohibition Act_**"] (JIPA).Thus, "Congress has declared in unequivocal terms that inactive reservists and those on active duty for training are not federal employees, then we asking the defendants to answer." _Woods v. Covington County Bank,_ 537 F.2d 804, 810 (5th Cir. 1976). Moreover, although b)-[**_5 U.S.C. 2105_**"] itself was enacted in 1966, its predecessor was first enacted in 1930, it define the federal employees as an individual who is 1) appointed to the civil service designated federal office acting on his official capacity, as well as 2) they engaged in the performance of a federal function under the authority of an act congress or executive order, and 3) they subject to the supervision of the federal officials during the performance of their duty, if it arises out of the course of their employment. _Harris v. United States_, 718 F.2d 654, 656 (4th Cir.

1983). As such exercise discretion, and the defendants are generally immune from suits where the acts at issues required personal deliberation , or decision and judgment, rather than obedience to order , or performance of duty in which federal employees left no choice of their own. *United States v. Dunnigan*, 507 U.S. 87, 97, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). Here, the plaintiff met the first prong of the test because the officer decision on his Naturalization application or the inadequate investigation, or which the matter in which the denial was taken place in violation of the Statutory regulations requirements, as well as the decision on how to proceed in the investigation and the subsequent of abuse of discretion required personal deliberate judgement, however, legal judgement is not personal judgement as an adverse factor in evaluating an application for discretionary relief." Moreover, the agencie(s), in its discretion, may consider some non-criminal conducts that, like the conduct here, c)-["***8 U.S.C. 1101 (f)***"] (precluding a finding of good moral character where a person is a "habitual drunkard"). This is not an instance of the agency considering "[p]rivate sexual conduct between consenting adults.) *Yepes-Prado v. U.S. INS.*, 10 F.3d 1363, 1368 (9th Cir. 1993). Indeed, the exercise of such judgement must reflect and remain faithful to the underlying purpose of the clauses, and it must take account of context and consequences measure in light of those purposes at any rate. d)-["***8 U.S.C. 1153 (d); 8 U.S.C 1154 (e)***"]. To "examine the statutes in more depth" under all Steps of the procedures, the courts should "construe statutes, not isolated provisions, and the definitions in other parts of the ("INA") may . . . shed light on what Congress envisioned, and they are constitutionally protected., i)-["***Motion for Congressional Power and Apex disposition Act***

***(ADP) by Invoking Rights Issues for Critical Act"] (RIFCA),*** so we are concerns by the defendants

relevant conducts, if they failed to decipher any motion filed against them, so we asking if this must

be enforced for protected innocent people, so no more judicial abused their discretion's, and powers,

new laws..ii)-["***Decipher Issues freedom Treatment Act***"] ( "DIFTA"), if anything is not clear then

the agencies duty is invoke by establishing clauses jurisprudence exception, it is this establishment

clause questions are heavily dependent on the specific context and content of the display factors.

*Curtiss-Wright Corp. v. Gen. Elec*., 446 U.S. 1, 8, 100 S. Ct. 1460, 64 L. Ed. 2d 1 (1980). Moreover,

[s]ound judicial administration does not require that Rule 54(b) requests be granted routinely, indeed,

"Rule 54(b) is to be used sparingly" and "both courts and commentators have expressed the

exceptional nature of a Rule 54(b) certification. *Jones v. West Plains Bank & Trust Co.*, 813 F.3d

700, 702 (8th Cir. 2015). This inquiring is necessary, or fact intensive and case-specific, assessing

reasonableness in the context of both individuals particular circumstances for Omnibus claims for

Habeas Corpus by relying under. *Wall v. Kholi*, 562 U.S. 545, 131 S. Ct. 1278, 179 L. Ed. 2d

252 (2011). That is because the statutory language and the decision run counter to congress intent in

giving priority to which Naturalization proceeding must be granted, and the burden of establishing

that the officials were not acted within discretion authority with the execution of both denials abuse

of discretion. a)-["***8 C.F.R 316. 10 (c); 8 C.F.R 320 (a)***"], if we could apply the traditional

requirements for estoppel in this circumstances, which the plaintiff has provided the basis for

exercising that authority. In particular, he has shown affirmative Government misconducts or any

other circumstance warranting such relief. *Mudric v. Att'y Gen.*, 469 F.3d 94, 99 (3d Cir. 2006). As

"the standard method for denial stand for proposition that probation is a factor to be considered in

making good character determination, not an additional hurdle to overcome once the good character

finding made, if congress has explicitly left the gad for any of the agencies to act in good faith,

particularly the b)-["*USCIS*"] to fulfil the gaps, and there is and express delegation of authorities to

the agencies, and their employees to elucidate a specific provision of the regulations being

questioned or evidence for genocide, and apartheid claims. *Compare Tel-Oren* v. *Libyan Arab*

*Republic*, , 726 F.2d 774, 791-795 (CADC 1984). Moreover, this determination is supporting by case

laws and the constitution of the United States, they are representing a reasonable interpretation of

statutes and regulation requirement for good moral Character, and they  are  not Ultra vires,  and the

plaintiff has established that the officers conducts in these cases so obviously violated the equal

protection clauses. In by passing the equal-protection question in *Moreno*, moreover, the Supreme

Court necessarily left undisturbed the district court's holding, later adopted without qualification by

the Fourth Circuit, that all legal aliens "who maintain their place of general abode within the United

States," whether "immigrant or non-immigrant" aliens, are "wrapped . . . in the suspect classification

blanket" and entitled to have laws that discriminate against them subjected to strict scrutiny. *Moreno*

*v. Toll*, 489 F. Supp. 658, 663-64 (D. Md. 1980). Of course the prior case law is unnecessary to show

the law clearly established, in some rare cases…a violation may be so egregious that the constitution

or the statutes on their faces may be established clearly the law applicable to the particular conducts,

and circumstances to overcome qualified immunity  for constitutional torts, the reasonableness of a

state actor's conduct based on undisputed facts is subject to *de novo* review as a question of law. *See*

*Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002) (concluding that the reasonableness of a state

actor's conduct must be decided by the court). Similarly, when interpreting ambiguous contract

provisions, courts ask as a matter of law how a reasonable person would read the term at issue. *See*

*MBIA Ins. Corp. v. Royal Indem. Co*., 426 F.3d 204, 210 (3d Cir. 2005). Even in the total absence of

the cases law, here the equal protection classes alone is sufficient to put the officers , and the

agencies on the notice that their acts were unconventionality and as board principal in these cases

law is sufficient to establish clearly law applicable to the specific set of facts facing the government

officials .*Exxon Co. v. Sofec, Inc*., 54 F.3d 570, 576 (9th Cir. 1995). When it does so with obvious

clarity to the point that every objection reasonable with that mind, turn the attention of the facts on

these cases, and the elementary that a negligence claim under the state laws for controversy claims

that required the coalescence of the following element; 1) The legal duty owed to the plaintiff, and 2)

they breach of that duty, which is the proximate cause of his injuries being alleged or illegal

punishment , and the standard of review is, moreover, consistent with the Attorney General's

expressed  goal in promulgating the BIA's two-tier level of review, namely, to bring national

uniformity to immigration law by allowing the BIA "to consider and resolve instances where

'differing decisions may be reached based on essentially identical facts.'" *Procedural Reforms to*

*Improve Case Management*, 67 Fed. Reg. at 54,890 (quoting *In re Burbano,* 20 I. & N. Dec. 872,

873 (B.I.A. 1994) .The subject matter of the regulation[s] in question concerns a matter in respect to which the agency is expert, and it concerns an interstitial matter, *i.e.*, a portion of a broader definition appears consistent with the way in which the plaintiff is questioning the defendant actions, *Clervrain v. Padilla* , No, 20-CV-00925-JLS-RBB In reaching this conclusion, the agencies legal interpretation of the regulations. b)-["***303.1(b)(2)***"] finds that the definition of "child" in the applicable laws, or by  the (INA)  c)-["***8.C.F.R 101(c)(1)***"] is irrelevant to the definition of "father." Under the regulations, or  by definition, the term "child" includes a child legitimated under the laws of their own domicile, as well as under the laws of the father's domicile, and since the  constitution provides that all children are legitimate, regardless of the marital status of their parents, this broader definition might encompass defendants, and for reconsidering their decision to promulgate the various  proposer laws.d)-["***National  Status***"] is within this case, against all judges for their intervention by evaluating all factors. 1)-["***21-CV-62266***"], so they will inform all state officials, all are liable for lifetime damages. 2)-["***Motion for ["Service of Process"]or Duty to mitigating Act by Invoking the Negligence officials Secretive Act"***"] (SOSSA), Moreover, the failure by the agencies to provide the plaintiff resources, and legal material access policy provides that an enumerated list of legal materials must be maintained in their i)-["***Law Library***"], that is a question for another agency to apply common sense, ii)-["***ICE***"] which include upon requests, they must release their administrative records entirely, that is in every states, so the advocate  assistants will file additional requests pending to review by iii)-["***DHS***"], additionally each of the Secretary of each states, to

server their courts listed in this motion. 3)-["***PIRPA***"] with analysis and interpretation; the United

States Code and Code of Federal Regulations Titles relevant to aliens and nationality; treatises on

immigration; administrative decisions; country reports on human rights practices; works on asylum

and the process of gaining asylum; treatises on the rights of prisoners; works about procedural rules;

the federal criminal code and procedure; manuals about legal research and writing by the author or

inventor as well as for process of Trademark registrations; and for legal rights and language  from

the dictionaries. *Allen v. Leis,* 154 F.Supp.2d 1240, 1259 (S.D.Ohio 2001), if we now recognize that

the question of who pays a damage judgment against an entity as the most important factor in arm-

of-the-state analysis.a)-["***State executive offices and Secretary of State***"] *(The **secretary of state** is a*

*state-level position in 47 of the 50 states. The position does not exist in Alaska, Hawaii and Utah.*

*In* <u>*Massachusetts*</u>*, Pennsylvania and Virginia, the office is called the secretary of the*

*commonwealth and differs only in name.*"). b)-["***UNCA***"].*Castellano-Chacon v. INS*, 341 F.3d 533,

544 (6th Cir. 2003)..The statutory landscape, however, changed when the REAL ID Act took effect.

Among its other reforms, the REAL ID Act amends section 242 of the INA to provide care to

innocence people.c)-["***https://www.languagepeople.com/secretary-of-state-websites***"]. of the voters

directly elect the secretary of state in 35 states. In the other 12, the secretary is appointed by either

the governor or the state legislature, though it is clearer, if whether it is the  factors or merely not the

only principal one.  *Brotherton v. Cleveland,* 173 F.3d 552, 560-61 (6th Cir. 1999), and the internet

this Court's determination of foreign law, that is also for their governor to apply principal of their

state laws,to be governed by congress laws imposed._HTC Corp. v. Telefonaktiebolaget LM Ericsson CIVIL ACTION NO_. 6:18-CV-00243-JRG, at **2** (E.D. Tex. Jan. 7, 2019), or if by allows a party to move for a determination of foreign law. In making this determination, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  3)-["**_Federal Rule of Civil Procedure 44.1_**"], which provides:

*A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.*_Base Metal Trading SA v. Russian Aluminum,_ 253 F. Supp. 2d 681, 700 (S.D.N.Y. 2003) ("To the extent that these submissions are helpful to the Courts all courts,  without exception that is because all are liable for their illegal actions, Of course 4)-["**_Nationality_**"] can be determination of foreign law is treated as a question of law or facts. Although the Court may consider any relevant material or source under Rule 44.1, "expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law can be determined." _Matter of Arbitration between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp._, 978 F. Supp. 266, 275 (S.D. Tex. 1997). "In making the  determination from foreign law the court may rely on foreign case law decisions, treatises, and learned articles, even if they are not generally admissible under the Federal Rules of Evidence, if the United Nations , if 5)-["**_Detainee  Handbook_**"] states "[t]he needs, interests and  abilities of the

majority of the detainee population are carefully considered and the library collection developed accordingly, As the plaintiff is presenting viable claims under the first amendment , as one of the ways by which the people may petition for redress of grievances . *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) or  standing to bring claims on his  behalf of other detainees, when himself presenting injury in facts ,what is proving in these cases is that he has shown that they face an actual and imminent threat of injury traceable to actions of the defendants with regard with their illegal practices, and mass deportation, that is for criminal questions. . *Summers v. Earth Island Inst*., 129 S. Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009). As to remaining claims are pending upon amending the controversies or  having  legal  material  to  litigate  against  the  defendants  widespread,  that  has additional claims, beyond the pleadings to plead facts, by Checking out the accomplishments and portraits of the people who have led the Treasury Department through the years, which they must aware   and   liable   for   lifetime   damages.a)-["***https://home.treasury.gov/about/history/prior-secretaries***"].which they involved in the establishments of, or involved directly, or indirectly in any constitutional violations occurred, so the advocate  is effectively challenging that the officers failed to take  legal  decision  within  a  range  of  reasonably  in  serving  the  interest   of  the  Unit  they represented,  such   decision  may  not  be  made  solely  for  the  benefits  of  personal  animus,  more politically against a minority as an essential element, then the necessary to raise a limitation against the official Naturalization and removal procedures upon their discretion in bargain with the plaintiff rights and bad faith motive of the defendants and intent to hostile falsification by enforcing various

illegal laws per se. a)-["***The Homeland Security Act of 2002, 6 U.S.C. 101-507, P.L. 107-296, 116***

***Stat. 2135*** (Nov. 25, 2002), created  by the U.S of Citizenship and Immigration Services ("USCIS")

within the Department of Homeland Security (DHS), Nevertheless,  the claim for breach of duty is

absolute against all of the agencies, and the officials on that the plaintiff is plausible alleging that the

officers on his 1)-["***Naturalization***"], and 2)-["***Removal***"] procedures are questionable, or they are

involved in wrongful conducts caused him injuries, in other words, he has demonstrated that he

actuality suffered injuries as part of his incarceration and detention while int heir custody as a result

of the official willful or malicious conducts applied only when they know or has the reason to know

that their conducts that is somethign that is illegal, and they must have reason to know that the

challenged conducts are prohibited. *Clark v. Martinez,* 543 U.S. 371, 375 n.5, 125 S. Ct. 716, 160 L.

Ed. 2d 734 (2005) (noting that authority formerly exercised by the Attorney General and the INS

under similar provision of the INA was transferred to the Secretary of Homeland Security and

divisions of that Department, including USCIS, by the Homeland Security Act). Because of their

their illegal practices, transfer, the authority to adjudicate adjustment of status applications is now

vested in the Director of USCIS .b)-["***6 U.S.C. 271 (b)***"]. Other agencies may make determinations

regarding citizenship, such as in passport applications before the United States Department of State.

Courts recognize, however, that USCIS possesses expertise in the area of citizenship determinations.

*See, e.g., Etape v. Chertoff,* 497 F.3d 379, 392 (4th Cir. 2007) (Hamilton, J., dissenting) ("[T]he

plain language . . . makes abundantly clear that Congress fervently believed the Attorney General,

through the employees of c)-["*__USCIS__*",] who possess unique expertise in the field of immigration

and naturalization, is in the best position to decide naturalization applications. _McLaughlin v._

_Richland Shoe Co._, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988). The exception

does not imposed liability merely because the officials intentionally committed the acts, but the

courts and the jury subsequently must determined they applied legal wrong, indeed the exception

anticipate liability , or when the officials willful or malicious are considered synonym in this context,

and willfully is usually is question of facts to be resolved by the jury. _Match-E-Be-Nash-She-Wish_

_Band of Pottawatomi Indians v. Patchak_, 567 U.S. 209, 224, 132 S. Ct. 2199, 183 L. Ed. 2d

211 (2012). Moreover, the plaintiff has alleged factual allegation on his motions, and the

administrative record will rebut the finding of additional facts they are acted without legal

justification or willfully violation as know rights. _Ettienne v. Holder_, 659 F.3d 513, 517-18 (6th Cir.

2011). When viewed in light most favorable to the plaintiff controversy cases, the evidence are

wholly supportive that a finding of egregious, therefore, the courts have the discretion to address

those circumstances within the two prongs analysis for the purpose of the injuries on the records, It

allows "government officials to carry out their discretionary duties without the fear of personal

liability or harassing litigation." _Durruthy v. Pastor_, 351 F.3d 1080, 1087 (11th Cir. 2003)  Under

qualified immunity, "all but the plainly incompetent or one who is knowingly violating the federal

law" are shielded from litigation. Yet qualified immunity "does not offer protection if an official

knew or reasonably should have known that the action he took within his sphere of official

responsibility would violate the constitutional rights of the [plaintiff]." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003). For the purpose of these injuries the right is clearly establishes; 1) the case laws with indistinguishable facts that clearly established the constitutional violations; 2) A broad statement of principal within the constituents or case laws clearly established a constitutional rights; and 3) The conducts by the officials are so egregious that  constitutional violation were clearly violated even in the absence of the cases laws. *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc*., 502 U.S. 32, 44, 112 S. Ct. 459, 116 L. Ed. 2d 358 (1991) ("courts should restrict judicial review only where there is "clear and convincing evidence that Congress intended" to do so"). It is clear and settle that the agencies and the officials are not entitle to raise any qualify immunity in these cases that met controversy standard, as any defense for their intentional violations, or as they are facing the circumstances that they should have known before excluded him from public ceremony, then placed him in removal procedures, here, the finding of principal against discrimination based on classification did put them on the notice that their acts, or commissions constitute  intentional acts, thus, governmental officials on the other hands, it has been define as follow; If the officials has the intelligence enough to understand the physical and nature, and consequences of their behavior, thereof then that injuries is the result of their intentional acts. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011). This leave the question of causation, and the plaintiff is presenting the evidence which a reasonable jury could find that there was a direct  and substantial cause relationship between the officers breach

of standard of care to his injuries, and his injuries were foreseeability, and thy may be a number of factual causes of this particular, or not everyone whose acts are factual's cases of injuries is legally responsible. *Air Transport Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 486-88, (D.C. Cir. 2011). The law for determining if whether it is fair to hold someone responsible for injuries using the concept of proximate cause, in such cases the acts by the officials are the proximate cause of the injuries within his administrative records while in confinement and custody of the agencies, of course the injuries are reasonable foreseeable consequences. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 241 F.R.D. 435, 444 (S.D.N.Y. 2007). Moreover, through not authorized by laws, such practice by the agencies exclusion from procedures, and he has proving that the the agencies are the proximate cause of his injuries in facts,  that he being excluded from the various programs while he was in 1)-["***BOP***"] confinement as the plausible nexus or affirmative link between agencies violation, and specified the deprivation regardless if he is entitle to cancellation of removal. *Lopez* v. *Gonzales*, 549 U.S. 47, 61, 127 S. Ct. 625, 166 L. Ed. 2d 462 (2006). As one can imagine, the failure by the agencies to train, or supervise, or investigate context, the casual link is connecting with the deficiency from the training by the 2)-["***DHS***"], as such the the issues for proximate causation is often reserved for the jury as long as the causal  link is not too tenuous in the present matters, that is because the plaintiff has pointed to the explicit or affirmative policies, indeed the agencies failed to properly train their officials how to exercise their discretion power under the ("INA"), and the statute does confer  and 3)-["***ICE***"], or among the others officials,  which one of

the individuals to exclude from public ceremony, as well as those need to be in removal procedures with respect with the interpretation of the statutes in question, in particular for inadequate investigation; d)-["*__8 C.F.R 335.1, and 8 C.F.R 316.10 (c)__*"], according to the prerequisites for denial his Naturalization application are: 1) Outlining the process for investigating the facts on facts, and examined them; 2) was promulgated in accordance with established rules making procedures with the ("INA") set forth if the i)-["*__USCIS__*"] responsibilities with respect for adjudicating all claims presenting to them regardless, if to the ii)-["*__FOIA__*"] and it is providing before a person to be Naturalized. The official should have had conducted personal investigation of the plaintiff, _Gomez v. Whitney,_ 757 F.2d 1005, 1006 (9th Cir. 1985). Therefore, consistent with the regulations provided that the investigation shall consist at the minimum of a review of all pertinent records, including police department checks, and neighborhood investigation in the divinities,  where the plaintiff has resided and has been employed, or engaged in business, for the last five years immediately proceeding the filling of the application, and the extreme cases, the plaintiff is presenting this motions to the courts as well as the agencies for reconsideration, and it would be unreasonable and perhaps even deliberately indifference by the agencies, and  its employees for failure to consider the evidence presenting, or even for the ("DHS") choose not to investigate his personal background where he could have been presenting his experience, lack of foundation, and reformation of his character that is for pretextual, and his extenuating circumstances. _Sevoian v. Ashcroft_, 290 F.3d 166, 178 (3d Cir. 2002). Accordingly, negligence, lack of investigation, or failure to act as a reasonable

prudent person are insufficient to show actual malice, however, the inadequate investigation in these

cases, couple with the ulterior motive may be sufficient to raise a fact issues of actual malice. *Zellner*

*v. Summerlin*, 494 F.3d 344, 361 (2d Cir. 2007); As to understanding the violation by the agencies

action required us to invoke other obligations 1)-["***APA***"] by its definition the terms as issuance of

the rule, order, licence, sanction or relief or the equivalent or denial thereof, or failure to act by the

agencies is subject to other violations .2)-["***5 U.S.C. 551(13")*** ]. We need not decide whether a case

of extreme delay by the relevant federal agencies could amount to a "failure to act, and that would

give the district court authority under the ("APA") to compel agency action "unlawfully withheld."

*Id. See* *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 62-64, 124 S. Ct. 2373, 159 L. Ed. 2d

137 (2004). Meanwhile, the supreme count in ("SUWA") thus, a claim under 5 U.S.C. 706(1) can

proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is

required to take, and  the question here is whether ("USCIS") ,and  ("ICE") officials have a duty to

act in this cases, In these cases, the defendants belong to the controversies consisting of the various

officials connected with legal wrong procedures, and the others connected with his illegal detention

by retaliation  or because of his movement against them for criminal Enterprise, and they have

mandatory duties with respect to mitigate legal wrong .*Bangura v. Hansen*, 434 F.3d 487, 498-500

(6th Cir. 2006). As the plaintiff is prevailing on his claims, he has demonstrating that what favorable

to the evidence that would produced, in particular, the matter of his lack of foundation and personnel

knowledge, assuming aguendo, this allegation is true;  It is well settle that those lacking proper

parental care by reason of the fault, or habit of their parents, or guardian or custodian; or those

lacking of proper necessary subsistence, education, or other care necessary for their health, moral or

well being because of the neglect or refusal to provide such as care, or neglect or refusal to provide

special care required special; for condition or behavior and …those in a situation or engaging in am

occupation dangerous to life or limbo or injurious their health or moral, Such Statements appears to

be the most compelling to the plaintiff situation(s) or his behavior he never had a father or mother

that could guided him to understand the importance of his driving records and that should have been

considered by the officer or would have been taken into account as the standard of the americans

citizen in the community. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).

As such, that could have been the evidence to the officer as relevant that he had any tendency to

make the existence of any facts on the records, and that is consequences to determine of the action or

more probable or less probable that it would be without the evidence, also the relevant standard is

must interpreted liberally. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S. Ct.

2786, 125 L. Ed. 2d 469 (1993). The decisions are similarly reviewed under the abuse-of-discretion

standard, thus to the conclusive statements by by the officer on the record, or made by the officer"

*you have not established extenuating circumstances*", that is to say that  s strong statement without

providing even the least opportunity to so so, but by abused his discretion by failure to investigate

facts, further more the statement by the officer should have been considered as false allegations the

plaintiff because if he had conducted adequate investigation, he would have known more than his

extenuating circumstances that had caused his traffic violations *Rico v. INS*, 262 F. Supp. 2d 6 (E.D.N.Y. 2003) (finding that a naturalization applicant who did not show extenuating circumstances affecting his DWI conviction in the statutory period could not establish good moral character because he failed to accept responsibility for his crime, failed to establish a claimed rehabilitation and lacked candor); *In re Briedis*, 238 F. Supp. 149 (N.D. Ill. 1965) (discussing extenuating circumstances that made the adulterous conduct of the naturalization applicant "merely technical"); *Ellsberg v. Mitchell*, 709 F.2d 51, 56-7 (D.C. Cir. 1983); The requirement that the privilege be asserted solely by the head of a department or agency, and even then only after personal review of the material in question, is merely technical. That , it is intended to ensure that the privilege is invoked by the informed executive officials of sufficient authority and responsibility to warrant the court relying on the official denial or decision that is being presenting to the court's for further analysis . *United States v. Reynolds*, 345 U.S. 1, 7-8, 97 L. Ed. 727, 73 S. Ct. 528 (1953). Furthermore, the plaintiff was eligible for naturalization because he was not on probation for his crime at the time that his naturalization application was approved, as a result, the inquiry into whether is application was improperly denied is necessary for removal proceedings, for, among other matters that the agencies selectively enforcing immigration laws against the plaintiff because of his movement in violation of the Federal Constitution's First and Fifth Amendments. and by the due process clause of the Fourteenth Amendment, or if the text,or the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees

with a safe working environment is a substantive component of the Due Process Clause. "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government "`from abusing [its] power, or employing it as an instrument of oppression.'" *DeShaney v. Winnebago County Department of Social Services*, 489 U.S., at 196 (quoting Davidson v. Cannon, 474 U.S. 344, 348 (1986).iii)-[" ***Intentionally Combine Violations***"]. if the evidence is contradicted with the defendants action, so  these provisions acknowledges any distinction between citizens and resident aliens.a)-[" ***Exhibit  II  (C)***"], that is for each court, and state officials to release their administrative records, and  for all agencies to release their records entirely, to be all all that are part of the United States of America, and its territories so for their protection, so if they extend their inalienable privileges to all "persons" and guard against any encroachment on those rights by federal or state authority. *United States* v. *Verdugo-Urquidez,* 494 U.S. 259, 271, 108 L. Ed. 2d 222, 110 S. Ct. 1056 (1990). ("*The alien, to whom the United States has been traditionally hospitable, has been accorded a generous and ascending scale of rights as he increases his identity with our society. . . . At least since 1886, we have extended to the person and property of resident aliens important constitutional guarantees--such as the due process of law of the Fourteenth Amendment*").Of course, if the plaintiff has proving that the defendants actions are questionable by laws, and evidence. *United States* v. *Verdugo-Urquidez,* 494 U.S. 259, 271, 108 L. Ed. 2d 222, 110 S. Ct. 1056 (1990)..This history reflects the traditional and common-sense notion that the Due Process Clause,  that was "intended to secure the individuals from the arbitrary exercise of the powers of

government, so he against governmental brutalities, that is what?. _Hurtado v. California_, 110 U.S. 516, 527 (1884) 3)-["**_Exhibit (II) (D) (I-XII)_**"], the Courts must used the declarations to answer questions of laws, or fact, when the defendants involved in gross negligence, or recklessness would violate the Fourteenth Amendment, so all claims, and evidence are not premature, to remove the family from pauperis status by so call lifetime damages in equities, that is because the defendants must first release, and access to financial circumstances, so lifetime damages can be proving by circumstances of evidence, this invitation to "artful" pleading, petitioner contends, would engender sticky (and needless) disputes over what is fairly pleaded. What's more, requiring complainants to allege something more than negligence would raise serious questions about what "more" than negligence — intent, recklessness, or "gross negligence" — is required, and indeed about what these elusive terms mean.4)-["**_UCCA_**"], if the whole law does so as soon as it is civilized, that is question of facts, or laws for the courts and states official to make appropriate, changes or amending all of their illegal laws, they are excluding some people. _LeRoy Fibre Co._ v. _Chicago, M. St. P. R. Co._, 232 U.S. 340, 354 (1914). a)-["**_Suffixing All Letters_**"].*cf. Hutto v. Finney*, 437 U.S. 678 (1978), the Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for all pretrial detainees, civilian detainees *see Bell v. Wolfish*, 441 U.S. 520, 535, n. 16, 545 (1979). b)-["**_DIFTA_**"], for persons illegal arrest, or after illegal imprisonment is being questioned by the advocate invention rights, _Revere v. Massachusetts General Hospital,_ 463 U.S. 239, 244-245 (1983). c)-["**_UFFA, at 1-635_**"].*Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982).

### ADVOCATE-CLIENT(S) REFORM ACT ("ACRA")

**IV.** That is because there is no constitutional or statutory right to effective assistance of counsel in immigration proceedings, a motion to reopen based on effective assistance is only a request for a favorable exercise.. _Ming Xia Chen v. BIA_, 435 F.3d 141, 144 (2d Cir.2006). In this case, we consider first whether we have jurisdiction to review the all judges discretionary and factual determination.a)-["**_Motion for Representative Development,Self -Regulations Act (SRA) by Invoking Non-Attorney Treatment Act_**"] (NATA) ( of the agency's discretion as additional evidence that the plaintiff claim for extortion is substantial, and it would, of course, "be manifestly appropriate for us, and for the agencies, to undertake that inquiry in the first instance, and the plaintiff se forth the standard with the supervisory officials may be held liable for the constitutional injuries inflicted by their subordinate, which standard include a finding that the supervisor's response to unconstitutional conducts of which they were aware or was so inadequate as to show deliberate indifference to or tacit authorization of the alleged practices. _Belcher v. City of Foley,_ 30 F.3d 1390, 1395-6 (11th Cir. 1994). Although the assessment of the Attorney representative is to base an objective standard, ultimately, the decision is left to the good sense and discretion of the review of the courts. _Koon v. United States_, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).Thus, any conclusion will be influence significantly by the subjective reactions and personnel judgement of the reviewing courts, through the prevailing norms of practice embodies in bar association standard are helpful, and that is the plaintiff intention to the invoke ,and inform all

agencies , or if  or the b)-["***American Bar Association***"] ("ABA"), failure is also the proximate cause of the injuries, if whether or not the ("INA") is promoting extortion , or if whether the particular advocate is asking the rights questions, against  their misconducts falls within the boundaries of reasonable processional assistance will depend on the particular facts and circumstances on this cases, further for counsel unprofessional error, the result for the proceeding would have been different if the c)-["***ABA***"] could have protect public interest, so they failure is proving here. *Padilla v. Kentucky*, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). By giving the varying context in which the existence, so we are proposing to the state, and federal agencies new laws for protected them.d)-["***Advocate-Client(s) Relationship Act***"] ("ACRA") or relevant including issues of privileges communication, disqualification in the face of the conflict interest, and the legal malpractice action, it is clear that the requirement for establishing such relationship will vary. *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1439 (9th Cir. 1986) (stating that interference with "an established, on-going attorney-client relationship" like the one present here is a "key factor" in finding a violation of the right to counsel). In the context of this case, it is the act of directly rendering illegal advice, services or assistance that form the touchstone of the attorneys relationship. Cf. *Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985) (explaining that the Equal Protection Clause "is essentially a direction that all persons similarly situate should be treated alike"); *F. S. Royster Guano Co.* v. *Virginia*, 253 U.S. 412, 415, 64 L. Ed. 989, 40 S. Ct. 560 (1920). The advocate owed an compromising duty, as fiduciaries, to

protect the interest of the plaintiff, but they failed to provide him appropriate advice and to exercise

the same degree of care that an ordinary prudent person man would exercise on his own behalf to

ensure that the process of his Naturalization proceeding. _Okafor v. Gonzales,_ 456 F.3d 531, 534 (5th

Cir. 2006) (In the above case, _Okafor,_ Appealed the (BIA), On November 14, 2000, if the ("BIA")

must accepted his arguments, then that the signed Oath form satisfied the public ceremony

requirement under .1)-["**_8 U.S.C 1448 (a)_**"]. More specifically, the ("BIA") found that his signed

copy printed oath documented that the oath was administered to him by the 2)-["**_INS_**"] at the time of

his Naturalization interview, therefore the ("BIA") concluded that he had successfully completed the

Naturalization process, and it ordered the removal proceeding to be terminated. _Afridi v._

_Gonzales,_ 442 F.3d 1212, 1218 (9th Cir. 2006). That is to say that a man fiduciary only begins

analysis, it gives direction to further inquiry to which is fiduciary?, or what obligation does he owe

as a fiduciary" in what respect the attorney has failed that is because the plaintiff traffic violation is

not serious crimes to excluded him to the procedures applicable, and he failed to discharged his

obligation ? and what consequence of his deviation from the duty. _Native Ecosystems Council v._

_Dombeck_, 304 F.3d 886, 899 (9th Cir. 2002). Consequently, it is accurate to say that the attorney

breach his duty under the circumstances, where the plaintiff traffic violations is not deportable for

excluding him to 3)-["**_Public Ceremony_**"], in such case the action by both the  officer and the

attorney are questionable within their personal interest are necessary to effect or influence the action

by the  ("USCIS"), and not to exclude the (ICE) officials for illegally detained him, that there are the

risk involved by the defendants personal interest may override their obligations so that their conducts do bear the injuries. _Clervrain v. Santana_, No,"19-CV-01118 and more importantly, the plaintiff can show their conducts proximate caused a dangerous situation in deliberate indifference by retaliation, while in ("BOP") custody, so because of his movement within this previous motion filed previously. d)-["**_Motion(s) for Forcible Trasferred and Related Matters by the Concerns On Retaliation Reform Ac_**t"] ("CORRA"), and causation of these cases by exposing him to various unconstitutional policies, and being detained by ("ICE") , or if the official aggravated the situations by the same violations. 1)-["**_Practice of Concentration Camp_**"] ("PCC"), or without any cause or explanations, See, _Clevrain v. McCament_, No 20-CV-00122"-RAW it touches and concerns only for all rights questions, or if whether the National's claims have been accorded a reasonable hearing, in this case the plaintiff has established that the agencies official, have policies or custom of racial discrimination practices from retaliation. _Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.,_ 450 F.3d 130, 134 (3d Cir. 2006). The supreme court has held that the due proceeds clause not only the procedures by which the government may act to deprive any person of life, or liberty or property, but also bar the government action regardless of the fairness of the procures used to implemented them, and this concept of substantive due process serves to prevent the governmental power from being used for the purpose of of oppression. _Clervrain v.Barr_. ,No 19-05165 (D.C Cicuit). This is particularly true where the sections are enacted as part of a unified overhaul of judicial review procedures, and for the proposition that when the plaintiff alleges the loss of

infringement or denial of governmental rights, or if the benefits previously enjoyed by the agencies couple with the failure to act, and to correct the violations having stigmatizing effect, or event which implicates his protected liberty interest is within this one if for development factor by the same laws against injustice.2)-["***Motion for Development Guidance Procedures Requirement(s) issues by the Minor(s) Treatment Choice Act"***] (WTCA).Alternatively this motion has demonstrate additional violations or officials policies, by showing that the agencies have policies to be questioned. a)-["***Notice for Attorney In Criminal Records***"] and for adequate training that is when the advocate laws, stand for adjudication, under this theory the agencies action may be violate the plaintiff rights, and it taken with deliberate indifference as it known or obvious consequences, or actual malice. *Beene v. Terhune,* 380 F.3d 1149, 1150 (9th Cir. 2004). The Supreme Court formulated the constitutional standard that public officials must prove "actual malice" before recovering damages for harm to reputation in a state law defamation suit. "Actual malice" is defined as "knowledge of falsity or reckless disregard as to truth or falsity, or by causing injuries to the plaintiff or the advocate issue . *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). As suggested earlier, those case law dealing with § 1983 actions alleging this claim against his counsels, prosecutors in records across the country., b)-["***Selective Treatment***"] is sparse. In *Moss v. Hornig,* 314 F.2d 89 (2d Cir. 1963). Moreover, In *LeClair*, the Second Circuit stated that a violation of equal protection by selective treatment arises if: "(1) the person, compared with others similarly situated, was selectively treated; and (2)... such selective treatment was based on impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person, we acknowledge that the announcement of what constitutes a legally sufficient claim against the defendants actions in all their capacities, so all liability must be imposed by same laws.. 1)-["***Viable Contracts***"] claim is not difficult due to the relative infancy of the statutory scheme at issue, indeed the laws are so punitive on their faces, for purposes of questioning their laws. 2)-["***Alien Status***"], so what that means such status, then we assumed the must proper answers. 3)-["***Pauperis Status***"], or for them to response allegation for lifetime damages, to which they must response each of the claims alleged in their individual, and official capacities as matter of laws. 4)-["***Bamboozle***"], so what is the intent of this judge now, we assumed the prosecutors will find out. 5)-["***Jabberwocky***"] , that is because the defendant's "use of them for the purpose of discrimination intent a)-["***Alien***"], which we marks are in connection with the violation of his constitutional rights or services—it [was] in connection with the expression of his opinion about the defendants criminal enterprises, so he wanted to serve them with the same status, that they had classified him, b)-["***Pauperis***"], the continuing series element reflects congress' intent to punish, or to be clearer c)-["***Mr.Clervrain***"] could have been valued unlimited resources, that presumption is based on the violations, or irreparable harms, or historical events, that may be presumed when the plaintiff asked many time, as in these the cases, attacks general conditions, practices, rules, or restrictions of the plaintiff, or if they are against his revolution rights is matter to be consider as matter of laws to litigate his claims upon relief can be granted. *Bell v. Wolfish* 441

U.S. 520 (1979). For proper ruling on consolidated cases from across the country on the issue of representation of plaintiff(s) by unlicensed laypersons and discussing the history of one proving another illegal laws.i)-["***28 U.S.C. § 1654***"], to that extent, the plaintiff is proposing new laws against the defendants failure to act.a)-["***CICA***"] by invoking law by supreme courts, when judges by which lawyers, and judges are abused by power, additionally that is for considered other claims upon relief can be granted. b)-["***ADTA***"] for the annulment of this laws..*Haines v. Kerner* 404 U.S. 519 (1972).As by a new Advocate,to enforce new laws, very competitive market if the Supreme Court to consider conservative effort to block federal power and a challenge to 'qualified immunity' for police officers by i)-["***Ariane de Vogue***"], CNN Supreme Court Reporter 3 minute read  Published 3:08 PM EDT, Fri October 13, 2023, or if The Supreme Court on Friday added another case to its docket that asks the justices to overturn decades-old precedent to scale back the power of federal agencies, as well as a case that looks at "qualified immunity" for police officers. ii)-["***Supreme Court to consider conservative effort to block federal power and a challenge to 'qualified immunity' for police officers | CNN Politics***"].The new case is a companion to a similar dispute involving herring fishermen that the justices have already agreed to hear claim, and terms, then we are asking how many district courts will agrees now if the agencies will hear. a)-["***Mr.Clervrain***"]. Although the court did not explain its thinking, it likely added the new case because Justice b)-["***Ketanji Brown Jackson***"] is recused from the first case, by having dealt with it as a lower courts across the county, so  judges before

elevation to the high court.iii)-["***UJSA***"]. The pair of cases represents a conservative attack on the so-called administrative state.a)-["***UNCA***"]. then we are asking if each district courts  must denied qualified immunity to all of the official involved in this current controversies across the country, if  b)-["***Gonzalez***"] lost her case, that is because this court had proving pattern of misconducts. c)-["***5th US Circuit Court of Appeals***"], which held that there was probable cause to arrest her and that it "necessarily defeated" all retaliatory arrest claims so the agencies must reviewed. iii)-["***USCIS***"], that for them the agencies to compel the administrative records. a)-["***S-95***"]  was filed against each of the federal Court across the country for failure to act.c)-[***"Exhibit (IX) (B (I-XII)"***] as for Application For Membership In The Bar Association Of The Fifth Federal Circuit.  Please Send To: (*" Bar Association Of The Fifth Federal Circuit 600 Camp St., Room 102A New Orleans, La 70130  Please Enroll Me As a Member In The Bar Association Of The Fifth Federal Circuit. Enclosed Is a Check In The Amount Of $95.00 Payable To: Treasurer, Bar Association*"). In re Testing Accommodations of Lafleur 722 N.W.2d 559 (S.D. 2006).i)-[***https://baffc.org/about/board***"] ("*The Bar Association of the Fifth Federal Circuit's (BAFFC) goal is to improve and facilitate the administration of justice in the federal courts within the Fifth Circuit.*").ii)-["***UFWA***"], So if they claimed that  thousands of attorneys committed to raising the standards of proficiency and integrity in federal practice have joined our Association. iii)-["***Notice for New Development***"] .*Gill v. Columbia 93 School Dist*, 217 F.3d 1027, 1037 (8thCir.2000). a)-["***The Promoters Act***"] (TPA) For  such matters, we should give "due

weight" to the Board's administrative across the country decisions and for considering his own notion of exam policy.1)-["***Exhibit (VIII (B) (I-XII)***"].*Wooden v. Bd. of Regents of Univ. Sys. of Ga.* , 247 F.3d 1262, 1283 (11th Cir.2001).[T]o have standing to obtain forward-looking relief, the advocate is proving his burdens, and  for Self-regulations plaintiff must show a sufficient likelihood that he will be advance by the allegedly lawful conduct in the future, so the defendants should not excluded him because of his illegal convictions or they should not excluded his assistants pr agents because of their disadvantage country, so they should not be excluded from all legal rights, by due process clauses..2)-["***N.M. Code R. § 5.55.8.9***"].*Gormley v. Ashcroft*, 364 F.3d 1172, 1178 (9th Cir. 2004). What  the court said that,? then we are interpreting with common sense, logic against agencies actions, by Holding that "mere economic disadvantage alone" does not constitute persecution, we are asking the agencies, their performance..3)-["***Current Through Register Vol. 34, No. 19, October 10, 2023 Section 5.55.8.9 - Maintenance Of Statewide Advanced Placement Exam Policya.***"]- (*"The department shall create and make available a form to be used by institutions to request changes to the statewide advanced placement exam policy.**B.** Completed forms shall be submitted to the department by the institution's chief academic officer or designee only after receiving approval by the chief academic officer.**C.** If the form is submitted on or before the deadline published by the department, consideration of the form shall be placed on the next committee meeting agenda. If the institution submits the form after the published deadline, consideration of the form shall be postponed until the subsequent committee meeting.**D.** The*

*department shall conduct an initial review of the form to determine whether it has been correctly and fully completed. The department may request additional information from the institution for use in its initial review. If the department determines that the form has met the initial review criteria, the department shall submit the form and all supporting material to the committee and require that the form be considered by the committee. If the department determines that a form is not correctly and fully completed, the department shall return the form to the institution with recommendations as to how deficiencies may be remedied. A form shall not be presented to the committee until the department has completed initial review and determines that the form is correctly and fully completed.***E.** In reviewing the form and supporting materials, the committee may request more information from the institution. If additional information is requested, the institution shall submit the additional information by the deadline set by the department. If the additional information is not received by the deadline, consideration of the form shall be postponed to the subsequent committee meeting.***F.** The department shall have a representative present during the advisory committee meeting to present the form. The department shall not make any recommendation to committee regarding the advanced placement exam policy.***G.** A representative from the applicant institution shall be present during the committee meeting and shall be prepared to respond to questions presented by committee members.***H.** The committee shall consider the form, any supporting materials, and information presented during its meeting. The chair shall conduct a vote. Each institution shall cast a single vote. Based on the majority vote, the committee may approve, deny,*

*table, or send the request to a subcommittee for further review. The vote shall be certified by the committee chair and the department shall issue official notice of the committee decision to the institution.***I.** *An institution shall not publish and makes available to students the courses it offers that fulfill the statewide advanced placement exam policy prior the institution's receipt of notice of the committee decision from the department.***J.** *Institutions shall notify the department if any courses that are part of the statewide advanced placement exam policy will no longer be offered at least 90 days prior to the time the course will no longer be offered.***K.")** The department shall update the statewide advanced placement exam policy to reflect all changes to institution's curriculum which we are proposing now!.4)-["***N.M. Code R. § 5.55.8.9***"].*City of Myrtle Beach v. Mayer* 256 S.C. 130, **133** (S.C. 1971).5)-["***Motion For ["Officials Capture Act"] ("OCA"], or ["Definite Statement Act"] (DSA), or ["Viable Contract Act"] (VCA) By invoking National Issues Bar Publication Act ("NIBPA")*** *Additionally, b)-* **["***The Agents Act***"] (TAA).***Hemslderfer v. Bobrick Washroom Equip., Inc***., 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("*[D]ifferent claim terms are presumed to have different meanings*."). i)-["***Type of Registration***"], if there is no filing fee for Form I-956K, then we are asking if the agencies, must authorized the same coding by Electronic Filling Process, and the is for Each person acting as a direct or third-party promoter (including migration agents) of the following must complete ii)-["***Form I-956K***"].With respect to the term "synchronization agent," Synchronous argues that the term "agent" is understood by skilled artisans to mean "the managed nodes in a network.c)-["***Rights Issues Treatment Act***"] (RITA). To be sure, some interests which

the Court has deemed to be fundamental for purposes of equal protection analysis are themselves constitutionally protected rights.i)-["***Exhibit (II) (P) (I-XII)***")].Thus, discrimination against the guaranteed right of freedom of speech has called for strict judicial scrutiny, then we asking the agencies by common laws to litigates against.ii)-["***MSPB***"].*Police Dept. of Chicago* v. *Mosley*, 408 U.S. 92 (1972). Further, every citizen's right to travel interstate, or to say that  he is **s**eeking a declaration of a  contract that must be enforceable, because the practice of exclusion  is "unfair" and "inequitable," and finding that the complaint was not properly dismissed because the "requests for declaratory relief [did]  state claims upon which relief can be. *Rockefeller v. Court of Appeals, Tenth Cir. Judges*, 248 F. Supp. 2d 17 (D.D.C. 2003). The Court must  noted that even if it were to construe the advocate, which no longer be  pro se litigant, but Advocate process, or self-litigator, complaint liberally and conclude that a claim  iii)-["***42 U.S.C. § 1983 (2000)***"] has been asserted, the claims  would still have to be granted under the ground for constitutional challenged against the defendants in their officials capacities, or that is  because a § 1983 claim upon which relief could be granted can  be established against a federal government official for the performance of his or her official duties, and in any event, the defendants are no entitled to the protection of absolute immunity. Thus, while the issue hast been presented with the utmost clarity, I think it sufficiently before us. I would find no absolute immunity. As discussed above, the only relevant common law absolute immunities were defamation immunity and judicial immunity. At common law, the tort of maliciously intent, and criminal intent, and Alien status a species of violations..See *3 F. Wharton,*

*Criminal Law* 234 (7th rev. ed. 1874).They must in other words act either knowingly or with

deliberate,  reckless indifference can be proving by additional *United States v. Cerro,* 775 F.2d 908,

911 (7th Cir. 1985).iv)-["***Winners Identity Functions Act***"] (WIFA). *Slakan v. Porter,* 737 F.2d 368,

373-75 (4th Cir. 1984). This heavy burden on plaintiffs is easy to understand in a case such as this

case where the ground of the supervisors' liability is that they conspired with subordinates to violate

the plaintiff's constitutional rights in all circumstances.*Parrett v. City of Connersville,* 737 F.2d 690,

695 (7th Cir. 1984). a)-["***Compelling Evidence Against Agencies***"].*Monroe v. Pape,* 365 U.S. 167,

187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961).In constitutional-tort cases as in other cases, "a man

[is] responsible for the natural consequences of his actions..*Malley v. Briggs,* 475 U.S. 335, 106 S.Ct.

1092, 89 L.Ed.2d 271 (1986), b)-["***Victim of Crimes People***"]. *Myers v. Morris,* 810 F.2d 1437,

1457 (8th Cir. 1987).The question whether his continued confinement or prosecution is

unconstitutional passes over from all Amendments, and to the due process clause (and after

conviction to the Eighth Amendment's cruel and unusual punishments clause, but that is  relevant

here for lifetime damages against them..*Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982).c)-["***How Long they Have Tortured People?***"].*Monell v. Department of Social*

*Services,* 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The custom in question is the

maintenance from the defendants record, they had violated his constitutional rights for many years

because of his national origin, which they will need to prove the contrary.*United States v. Herrera-*

*Medina,* 853 F.2d 564, 567 (7th Cir. 1988);Cf. *Harris v. City of*  821 F.2d 499, 507 (8th Cir. 1987)

## **NON-ATTORNEY TREATMENT ACT** (NATA)

**V.** Formal conspiracies aside, he also alleges that the defendants commonly aided and abetted his detention and removal -- that is, that the defendants were personally involved in his mistreatment by both in 1)-["**BOP**"] and 2)-["**ICE**"] custody with the intent to shed the light of his movement . *See Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003). A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or (4) deliberate indifference to the rights of others); *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001). It is clear clear and settle that the plaintiff had demonstrated the legitimacy of his concerns for the need to mitigating crimes in the prison industry.See *Clervrain v. Nejen*, No, a)-["***20-CV-00134-JED-JEJ***"], that is necessary to support a conspiracy, also he is seeking to justify the ordinance as required by to protect the protected class, while in the agencies custody by illegal acquisition by the defendants, and of course they are anticipating in constitutional violations.b)-["***Motion for Mitigating Undue Financial Burden (s) Controversy Evidence By invoking [The Ant(s)] Community Act***"] ("TACA"), and the general rule of evidence are applicable in prosecution of the various criminal misconducts by the officials not to exclude what is not mentioned in the pleading and the question of admissibility to show that the official intent to commit crimes or tortured, or to prove a lack of specific intent required to commit crimes against the federal government by defrauding, and the plaintiff had filed the various

grievances inquiring about defendants violations, or criminal activities, for the courts to compel the evidence, the circumstances evidence is established by the records, and the evidence of other bad acts are to be admissible. i)-["***The Parties Act***"] (TPA) when is furnish of part of the context of the crime charged against the various prison officials and is so much a part of setting of the cases and its environment that is proof is appropriate in order to complete the story of the crimes on trial by proving immediate context., ii)-["***Mr. Clervrain***"] An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the Administrative Judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning standard by laws. *Spithaler v. Office of Personnel Management,* 1 M.S.P.R. 587, 589 (1980). a)-["***Notice for Point of Contact***"], who is willing and available to serve, as his or her representative before the Board, or may choose to represent him or her self. Any designation of a representative must be in writing and signed by the appellant.*Green v. State,* 666 S.W.2d 291 (Tex.App.-Houston [14th] 1984).The "stipulation of evidence" was on a form entitled "Judicial Confession." Said form includes a waiver of the appearance, to be clearer we call it for special appearance by invention rights.. b)-["***5 C.F.R. § 1201.31***"]..*Atchison, Topeka Santa Fe Ry. Co. v. Stevens*, 109 Tex. 262, 206 S.W. 921, 921 (1918). i)-["***RICMA***"] ("*A special appearance is unknown to our practice. The filing by a defendant of any defensive pleading, though it be only for the purpose of challenging the jurisdiction of the court, constitutes an appearance and a submission to the jurisdiction of the forum.*") ii)-["***ACRA***"], as for process. *York v. Texas,* 137 U.S. 15, 21, 11 S.Ct.

9, 34 L.Ed. 604 (1890) iii)-[" ***Designation of Representative form***"], but if no particular format is required, then we assumed, a)-["***USCIS***"] If they submit their  appeal online via e-Appeal, so they may designate to the representative as part of that controversial process, or against each of the their agencies, so their threat of severe punishment for someone in plaintiff particular circumstances by proving factors. <u>United States v. Sharp</u>, 463 F. Supp. 2d 556, 567 (E.D.Va. 2006) ("*discussing the CVRA and holding that "[a] person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm. A person is proximate harmed when the harm is a reasonably foreseeable consequence of the criminal conduct*"); <u>In re McNulty</u>, 597 F.3d 344, 350 (6th Cir. 2010). Where the evidence are central to the defense that the officials had been part of the conspiracy, and their involvement in the enterprise had giving the victim motive to framed because of his grievances that they are part of criminal enterprise, and such necessary investigation will rebut any doubt by the courts that the plaintiff has not stated facts upon relief can be granted on it face is to mitigating all crimes and omitting all evidence of the complex or secretive activities are likely to confused to jury. <u>Bracy v. Gramley</u>, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997).But, habeas corpus are not to be left without any method for developing facts in support of his claims, Moreover, Rule 6 of the Rules Governing of b)-[***"Habeas Rules"***"], and for the same reason the good cause exists "where specific allegations show reason to believe that the plaintiff may, if the facts are fully developed, be able to demonstrate that [they are] entitled to relief." <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1281 (11th Cir. 2016) (citing *Bracy*, 520 U.S. at 908-

09). Conversely, good cause "cannot arise from mere speculation" and "cannot be ordered on the basis of pure hypothesis[.]" *Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006). If discovery is warranted, "Rule 6(a) [of the Habeas Rules] makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Courts, however, it doe not prove innocence but only indicate that the agencies investigation in the procedures may not failed to meet its burdens of proving beyond reasonable doubt. *Middleton v. McNeil*, 541 U.S. 433, 437, 124 S. Ct. 1830, 158 L. Ed. 2d 701 (2004). At least one element crime,  is relevant to determine if whether the this motions would help to mitigating crimes in prison practice, if for instance an error in admitting evidence concerning the official involvement in violation of the rules prohibiting admission of the other acts, or evidence to prove character of a person in order to show action in conformity therewith was harm, for the purpose of violent criminal practice, and abuse on the ground that such lack grievances and pending lawsuits against them for the various allegation could have substantially weighted by the danger, if there is and unfair prejudice in a prosecution for criminal enterprise. *Green Leaf Nursery v. E.I. DuPont De Nemours & Co*., 341 F.3d 1292, 1307 (11th Cir. 2003); The evidence are relevant to establish the existence of the criminal enterprise is not extrinsic to the crime that must be charged. *United States v. Lokey*, 945 F.2d 825, 833 (5th Cir. 1991)). Thus, "parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy," even in the absence of contact with other conspirators, and the government must prove beyond a reasonable doubt (1) an agreement between two or more persons to violate the

narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate voluntarily in the conspiracy. _United States v. Hernandez-Palacios_, 838 F.2d 1346, 1348 (5th Cir. 1988). Of course the evidence on the administrative records are relevant to established how the conspiracy came about, how it was structured and how each of the official became a member, even if their involvement in uncharged crimes are admissible as it was insistence to the government case in proving the existence of conspiracy. See _E.W. French & Sons, Inc. v. General Portland Inc._, 885 F.2d 1392, 1397 (9th Cir. 1989) (preponderance of the evidence standard applies when determining if offering party's evidence established existence of conspiracy) Therefore, that evidence on the record should be sufficient when the courts compelling the agencies to support his claims against, thus, the existence of conspiracy established, or evidence establishing reasonable doubt is a connection  of the officials with the conspiracy, even though the connection is slight, in sufficient to convict them with knowing participating in conspiracy of torture, and illegal restriction to mail his legal obligation _Penson v. Ohio_, 488 U.S. 75, 83, 102 L. Ed. 2d 300, 109 S. Ct. 346 (1988). When a jury is informed of the possibly challenged presenting to the courts by a witness credibility, and nevertheless believes the witness, the review courts should not upset the jury credibility determination, of course by construing the records in the light most favorable to the prosecution, a rational trier of fact will find beyond reasonable doubt that the officials are members knew of it, or participating in the conspiracy by retaliated against the the activist because of his movement, and they might have played key role

in the criminal enterprise, but the record does established that they were at the core of the conspiracy to defraud the United states by using sophisticate means of abusing the plaintiff as part of the practice, and the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement any allow a jury to infer the existence of the conspiracy themselves. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 60 L. Ed. 2d 156, 99 S. Ct. 1667 (1979). The basic premise concerning disclosure is that to insure the confidentiality of the grand jury process, those are matter occurring before the Grand Jury by secretive means, that for the agencies to initiating investigations. c)["***Fed. R. Crim. P. 6(e) (2)***"] The rule is the court privileges, ratter the plaintiff, since he is base his claims on the need for due administrative of justice, it is found under common law, that a court inherent authority or it afforded by the statutes and may not denied privileges where the subject matter of the courts proceeding is closely related by the subject matter to the action in which the service of process must be made. *Gannett Co. v. DePasquale*, 443 U.S. 368, 383, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979). Where the service of process is necessary to command him and continue the presence and aid to facilitate the pending litigations, moreover, a witness may be privileged even from criminal arrest of the official under the circumstances, he maintains that he is engaged in federal litigation are entitle a s a class to the first amendment protection with regards to person and poverty, and also maintains that, as a rule he is engaging in federal litigation that will be unconstitutionally injured when the evidence for the legal restriction or related to his pending motions are not being delay because of safekeeping *Preiser v. Rodriguez,* 411

U.S. 475, 484-86, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). While the congress has established general duties of protection and safekeeping of prisoners, so if the defendants failed to follow congress intent is clearer.1)-["*__18 U.S.C. 4042__*"] that is because the plaintiff is able to point that he has the various pending motions filed to the courts or concerning litigation issues this issues, that could be conflicting with decision by the 2)-["*__FB__*I"], if it failed to initiating the investigation requested, and their concern should not be limited fund if their duty is invoke by laws.  *Low King Yong v. Pan Am Airways*, 74 F. Supp. 657, 659 (D. Hawaii 1947). The right of the plaintiff as self litigant required careful protection where sightly opportunity to prosecute or defend his lawsuits without further restrictions, because of his 3)-["*__Indigent__*"], or technical issues are involved in the proceeding or because lack of proving resources, although the federal official can briefly questioned a person regarding their unlawful activities, while the officials do suspect the person involved in a criminal enterprise by the alleged conspiracy, or that the plaintiff is currently in detention by law enforcement required a reasonably or articulate suspicious of crimes activities. *Almeida-Sanchez* v. *United States*, 413 U.S. 266, 272-274 (1973). Their offenses occurred at this current time, they will not stop until the official stop the enterprise that serious impact on the various individuals in particular to evaluate the evidence on the record, that is because they are mature individuals with criminal mind, they involves in special skills with the intent to defraud by illegal restriction, but ultimate, resulting in their benefit, to it's very hard to imagine a more similarly offense that is not identical and the officials analysis of the circumstances which may justify,  may be based upon

various objective observation, information from the official reports and considerate of the mode or pattern of operation of certain kind of lawbreaker. _Del Elmer v. Metzger_, 967 F.Supp. 398, 403 (S.D.Cal.1997). The circumstances confronting the law officers must view though the eye's of a reasonable and cautious officials on the scene, guided by their experience and training and the circumstances before the officials are not to be dissected and view singly, but must be consideration as whole for evidence on the records. _Leeke v. Timmerman_, 454 U.S. 83, 86-87, 102 S. Ct. 69, 70 L. Ed. 2d 65 (1981). Thus, the i)-["**_FBI_**'] among to the agencies decision  if the evidence existed, in particular, by evaluating the evidence of the existence of the criminal practice, or for two or more person official and committed together to commit, or  cause to commit a breach of criminal laws, and they are offenses of gravest character and may outright, by inquiring to the public for their opinion, mere commission of contemplated crimes, since they involved in deliberate plotting to subvert laws illegal contracts, and they are preparing conspirators for further, and habitual criminal practice, and since it characterized by secrecy, and rendering it difficulty of detecting or requiring more time for discovery, and they are aiding to the importance of the punishment, it when discovered; and the evidence are substantial for allegation that the defendants are aiding and abetting, which does not separate offense, but makes it punishable as a principal one who aid or abet another in the commission of the substantial offence, that is for their actions._Iannelli_ v. _United States_, 420 U.S. 770, 785, n. 17 (1975).ii)-["**_18 U.S.C 201, and 18 U.S.C 2_**"] it is the jury's role to make such factual inferences , and the Fourth Circuit has explained that "the government is not required to

prove an expressed intention (or agreement) to engage in a quid pro quo, such an intent may be established by circumstantial evidence. . . ." *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998). Although the indictment does not have to charge any substantive offenses, that is unnecessarily for a conspiracy to defraud under these data, a trained officials drawn inference and made deduction that might well elude an untrained person. *United States v. Reed*, 402 F. App'x 413, 415 (11th Cir. 2010) ("Reasonable suspicion analysis is not concerned with 'hard certainties, but with probabilities . . . .' '[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.") (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). Moreover, "[r]easonable suspicion is determined from the . . . collective knowledge by the witness by his grievances against the officers involved, and the duty of the law enforcement to preserve the peace  and arrest lawbreakers is one which the officials owes to the public generally, rather than to particular individuals. *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). Furthermore, "the decision to prosecute is particularly ill-suited to judicial review. Finally, "[t]o obtain discovery on a selective prosecution claim the defendant[s] must first identify specific facts that establish a 'colorable' basis for both elements of the claims, branch the duty create a liability on the part  of the officials to an individual who is damaged as a result of the officers failure to perform it  .*Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). Thus, the courts have generally reject claims of individuals who is damaged for personal injury or property damages from the acts of person committing crimes

or violations, or for not preventing the defendants convicted committed additional crimes, in such instance cases the proximate cause is the predators subsequent conducts, and they failed to arrest their partners regardless the plaintiff is identified the crimes, or for failure to enforce the law may arise, however, upon this motions the evidence will prevail malice oppression by the officers, or willful misconducts in connection with the failure to enforce the law, and punish them for their criminal conduct. As we have just noted, the fact that the threats were intended to dissuade them from reporting criminal activity to the government undermines the required proof that they are involved tortured the plaintiff  or by persons whom that government is contracted, or able to control for the purpose of privacy and liability, additionally, the evidence on the administrative records, will prove that the agencies officials aware of the situation, entitle the plaintiff to a greater degree of protection and hence imposing a greater duty than that afforded to the public generally, the officials have control over their partners, a)-["***Notice for Private Prisons***"] or over the place when the violation occurred. b)-["***18 U.S.C 245; and 18 U.S.C 249***"] they are to constitute impermissible punishment, the condition must be one that arbitrarily purposely, or put differently, not reasonably related to legitimate goals, and the intent to punish is presumed if the condition or restriction of confinement is otherwise senseless, unlawful or criminal behavior. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). As such, or with respect to the entrapment claim, the agencies may find an ample support in the record for a jury to conclude that the officials were predisposed to criminal behavior of the sort must lead to their arrest and con-fiction, of course,

entrapment by estoppel is a defense that can be available to someone who makes complete and accurate representations to a public official and then receives permission from that official, when acting within the scope of his or her authority. In other words, when a public official directs a person to perform an act, with assurance that the act is lawful under the circumstances, Moreover, congress passed the (HCPA), Codified at Under Section 249 of title 18 of the Act, to punish certain crimes, the act creates two distinct crimes, first Under Subsection 249 (a) (1), if focuses on hate crimes based on actual or perceived race, color religious or national origin, this offense is at issue here, secondly, under Section 249 (a) (2) focuses on the hate crimes based on actual or perceived religion, National origin, gender, Sexual orientation, gender identity, or disability, and congress passed this subsection base on its power under the commerce clauses. _United States v. Jefferson_, 546 F.3d 300, 306-14 (4th Cir. 2008). That is congress intent  within reason , regarding Speech those that their intention if to restrict other to litigate their cases without justification, to obtain conviction under the statute, and the government must prove, that the defendants willfully excluded him to litigate his cases to federal courts, and cause him body injury, or attempt to cause body injury thorough the used of illegal restrictions , and that the but-for cause of the restriction was because of his allegation of reporting their activities. _Goodyear Dunlop Tires Operations, S.A. v. Brown_, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). Specifically, it would seem to stay it hand in the public interest, where it reasonably appears that private person such as the plaintiff will not suffice. _Clervrain v. Way_, No, 20-CV, 00540, it is the public interest that the agencies of equity should exercise their

discretionary power with proper regard for the rightful independence of the of the government in carry out their domestic policy, it provides that  ("*No persecution of any offense describe in the applicable statute any be undertaken by the United States except upon the Certification In writing of the Attorney General, or his her design that in his or her judgement a prosecutor by the United states is in the public interest and necessary to recuse substantial justice, moreover, no person may be prosecute, trier or punish for any non capital offenses under such statute unless the indictment is found or the information is instituted not later than seven years after the date on which the offence was committed.*"). c)-[*"**MOCMA**"*]. When moreover, statement made by an advocate against Crimes of Apartheid, or criminal activities, or indicating the officials apparent intent to engaged in crimes, particularity this one. 1)-[*"**USCIS**"*].*Clervrain v. Cuccinelli* No. 21-CV-02197, at ***24** (W.D. Wis. Mar. 30, 2022), if that being the cases, or when they against the plaintiff movement by Core Right Violations .2)-[*"**Justice for Victims of Trafficking Act**"*] of 2015, Pub. L. No. 114-22, , then we are asking, if the human trafficking claims still provide a sufficient 3)-["*"**RICO**"*] predicate under the guideline may warrant unless it is apparent, from the circumstances  or context in which statements are made, that is the prospect of harm. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969)). That if the court must weigh several factors to determine if a dispute is ripen by the following: (1) the hardship to the parties if judicial relief is denied at the pre-enforcement stage in the proceedings, (2) the likelihood that the alleged harm will ever occur, and (3) "whether the case is fit for judicial resolution at the pre-enforcement stage, which requires a

determination of whether the factual records are sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims., _Brown v. Ferro Corp._, 763 F.2d 798, 801 (6th Cir.). of course the agencies must acted only in the circumstances of the public interest and must initiated investigation or take other action when the alleged violations of law is merely a matter of private controversy, and does tend adversely to affect of the public, and the plaintiff who seeks to enjoin a criminal investigation has showing, at the minimum, that his threatened with irreparable injury in the form of prosecutorial bad faith or harassment, such as particularly oppression investigation without any any prospect of ultimate indictment and conviction, so we are asking when the agencies will start investigation of crimes. 1)-["**_FBI_**"] has an affirmative duty under the applicable law, which is not available while in 2)-["**_ICE_**"] custody to ligate against their illegal practice, and to halt the ongoing violation of criminal statutes….by the various prison officials, so that is because the plaintiff movement, invention, for their intervention and by concluded that the agencies are essentially sued, because of That, it is relevant to these cases is the discretionary function exception must be application. i)-["**_28 U.S.C. 2680(a)_**"]. Their discretionary function exception to the law congress indicated. ii)-["**_FTCA_**"] "provides immunity from suit for '[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" _Terbush v. United States_, 516 F.3d 1125, 1129 (9th Cir. 2008). Accordingly, if "the will followed their own laws iii)-["**_FTCA_**"] directs courts to consult state law to determine whether the

government is liable for the torts of its employees." _Liranzo_, 690 F.3d at 86 (citing _FDIC v. Meyer_, 510 U.S. 471, 478, 114 S. Ct. 996, 127 L. Ed. 2d 308) (1994), it is for liabilities, and by enforcing _Clervrain actions_, by amending  1)-["**_FTCA_**"] to arise, a "plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdictions,  where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action against the defendants across the country for the alleged violations that the plaintiff has been victimized because of his movement for years they are matters of facts even without the records. ." _Peker v. Steglich_, 324 F. App'x 38, 39 (2d Cir. 2009). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the defendant must response if justification was false, 2)-["**21-01919**"] may permit the trier of fact to conclude that their employee might be involved in the conspiracy by failure to perform  their duty, or  unlawfully discriminated against the activist by alleged the word a)-["**_Fictional_**"], while most have held that review extends to the entire records, drawing all reasonable inferences in favor of the plaintiff  grievances filed while in their custody b)-["**_Public Interest_**"], and c)-["**_Interest of Justice_**"] that is to prove that the defendants action is questionable for we note that Congress has provided that the standard fees for production of documents under the 3)-["**_FOIA_**"] shall be waived or reduced " it is likely to contribute significantly to public interest.  _U.S. Dept. of Justice v. Reporters Committee_. 489 U.S. 749 (1989). The Expanding Constitutional Protection for the News Media from Liability for Defamation: Predictability and the _New Synthesis_, 70 Mich. L. Rev. 1547, 1560 (1972). The public

interest is necessarily broad; any residual self-censorship that may result from the certain contours of the "general or public interest" concept should be more concern to the publishers and broadcasters than that occasioned by state laws imposing liability for negligent falsehood or for all judges across the country to comments. i)-["**_Bamboozle_**"], and ii)-["**_Jabberwocky_**"], or concern to reach decisions in . . . cases dealing with an alleged group libel While _Beauharnais_ has never been expressly over-ruled, a number of cases have so weakened its rationale that its holding would not likely survive if tested. Indeed, _in R.A.V. v. City of_ St. _Paul_ (1992), the Court struck down a local ordinance that made it a crime to place on public or private property a symbol or object likely to arouse "anger, alarm, or resentment …on the basis of race, color, creed, religion, or gender." The defendant had been charged under the ordinance after burning a cross in the yard of an African American family. Even though the "speech" at issue fell into the analytical category of "fighting words," which the Court had previously maintained was of low constitutional value, the Court held that the ordinance was viewpoint based and thus on its face unconstitutional. _R.A.V._ thus suggests that group libel laws and hate speech codes will fail constitutional attack, absent some special context that would allow the speech restriction to satisfy strict scrutiny..in _Beauharnais v. Illinois_ (1952), the U.S. Supreme Court narrowly upheld the constitutionality of a state statute criminalizing the libel of a group of citizens. **_Freedman, Monroe H., and Eric M. Freedman, eds. Group Defamation and Freedom of Speech. Westport, Conn.: Greenwood Press_**, 1995. 4)-["**_Group Libel_**"], "if . . . the statement concerns a group sufficiently large that it can reasonably be understood to apply to plaintiff

particularly, it is not actionable in the absence of content or circumstances reasonably specifying the plaintiff individually, or to the classification as a)-["***Alien Status***"] is being questioned for the defendants to response, and that the claims against the defendants violations…. ." *2 F. Harper, F. James O. Gray, The Law of Torts* § 5.7 (2d ed. 1986). Then, that is for the courts to permit, Another relevant consideration in these cases is the purpose for which the "evidence" must be offered at trial. Those allegation, or statements can be prevail by a witnesses during trial to impeach the defendant's credibility, their' statements in these case are to be admitted solely to provide context for the responses to be offered by the defendant. When the trial must court considered motion filed to redact the illegal by illegal practices, the prosecutors may not argued defendants criminal intent, or with inadequate responses to many statements made by their official to be admissible to impeach their defendant's credibility. The trial court must concluded that the plaintiff had made claims and claims to support criminal intent and that the defendant's responses must be irrelevant if the evidence is clear administrative crimes. In additional, the trial court must concluded that the evidence are not hearsay and that they were necessary to provide context to the defendant's responses. We note, however, that when the trial court must admits third party statements to provide context to a defendant's responses, the trial court should give a limiting instruction to the jury, explaining that all defendants must response b)-["***Men Rea***"] claims and all of the motion's as support, should be considered as evidence. Such a limiting instruction is not required in these case because the jury will clearly, that additional evidence must be compel. *U.S. v. De Varon*, 175 F.3d 930 (11th Cir. 1999).

## UNIFORM TRADEMARK TRAINING ACT ("UTTA")

**VI.** The mens rea is either (1) the intent to terrorize another or reckless disregard of causing such terror or (2) the intent to cause, or reckless disregard of the risk of causing, either (a) the evacuation of certain facilities (a building, place of assembly, or facility of public transportation) or (b) some other serious public inconvenience. a)-["**_MOCMA_**"].*Groman v. Township of Manalapan* 47 F.3d 628 (3d Cir. 1995).This mailbox may be used to submit new requests, as well as other records against the agencies actions. i)-["**_FOIA_**"].We apply the same test required of the district court, viewing the facts from the evidence submitted in the light most favorable to the non-moving party, and taking the non-movant's allegations as true.*Goodman v. Mead Johnson Co.,* 534 F.2d 566, 573 (3d Cir. 1976),The party contesting the motion must demonstrate a dispute over facts that might affect the outcome of the suits involved by controversies claims, that is upon reliefs can be granted as matter of laws applications.. ii)-["**_Motion for For Identifying Advocate (IA) Uniform Invention Act (UIA) by Invoking Uniform Trademarks Training Act (UTTA)_**.*Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir. 1993). Thus, b)-["**_PA_**"] so he is requested records submitted to the agencies mailbox to be processed. i)-["**_Mr.Clervrain_**"] who is qualified to be nominated by each of the state agencies to evaluate admission on motions.*In re Rules Governing Admission* 356 Ark. App'x 691 (Ark. 2004). ii)-["**_NCBE Number: N10667285_**"].The Board must be noted such a requirement is met by this motion filed by the advocate, or to the underlying philosophy of admission on all motions he had filed, that is, less state restrictions on the movement of attorneys

across state lines. Further, the addition of such a requirement might hinder motion admission of Arkansas attorneys in other jurisdictions.*North Carolina State Bar v. Braswell*, 67 N.C. App. 456, 460, 313 S.E.2d 272, 275 (1984).ii)-["***Professional Advocate***"] ("PA), as for  Service as corporate counsel to litigate their interest,  or  For the same purposes of this rule, the active practice of law shall not include work that, as undertaken, constituted authorized practice of law in the jurisdiction in which it was performed or in the jurisdiction in which the clients receiving the authorized services were to be  located nationwide. iii)-["***Direct Promoter***"] (DP), to advertisers or direct promoters by education to be informed publicly by circulations by such requirements, then his assistants are be helping in the process of filling.a)-["***Migrant Agents***"].*Hyppolite v. Gorday*, 115 Lab.Cas. ¶ 35,346 (S.D.Fla. 1990) ("*finding that the labor contractor hired by Gorday Farms acted as its agent when recruiting migrant labor and that, as a result, personal jurisdiction over the foreign farm was appropriate*"); *Neizil v. Williams*, 543 F.Supp. 899 (M.D.Fla. 1982) (finding personal jurisdiction over a foreign defendant after the defendant submitted clearance orders into the interstate clearance system and hired a labor contractor who recruited in the forum state); *Garcia v. Vasquez*, 524 F.Supp. 40 (S.D.Tex. 1981) b)-["***6 CFR Appendix A to Part 5***"], ("*all FOIA and PA requests for records should be submitted electronically through the USCIS FOIA Portal: https://first.uscis.gov/ or mailed to National Records Center, FOIA/PA Office, P.O. Box 648010, Lee's Summit, MO 64064-8010.*"). c)-["***RICMA***"].*Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its

action by the APA. d)-["**_5 U.S.C. § 552(a)(4)(B)]_**."._Kowalczyk v. Dep't of Just._, 73 F.3d 386, 389 (D.C. Cir. 1996)). To read the regulation otherwise, DHS adds, would "transform the DHS Privacy Office into a central clearinghouse, compelled to divine the hidden intent of all FOIA requests by his assistants, as for the agencies to respond , and adjudicated all application filed to the FOIA or PA request as quickly as possible, we strongly encourage you to submit your request electronically through the i)-["**_USCIS FOIA Portal_**"].This type of preliminary hearing has been analogized to grand jury hearings. _Attorney Grievance Comm'n v. Strathen_, 287 Md. 111, 117, 411 A.2d 102, 105 (1980), and there the issues are also determined by laymen. _But see_ _Kurowski v. Kittson Memorial Hospital_, 396 N.W.2d 827, 830 (Minn. 1986). This type of requests are required by congress intent, that is  because the the agencies restrictions, or if  actus reus must be shown in every case that is applicable against the defendants illegal detention practice means of intimidation by this Under _Rowland v. California Men's Colony_, 506 U.S. 194, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993), "context" as used in ii)-["1 U.S.C. 1"] "means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts for defining the wording by the agencies." a)-["**_Common laws_**"]  committed as a political act or for political motives or in a political context, this argument persuasive. As the Supreme Court has recognized, the constitutionality of a particular governmental action may depend on the larger social context in which that action occurs. _See Shelby Cty., Ala. v. Holder_, 570 U.S. 529, 553-557, 133 S. Ct. 2612, 186 L. Ed. 2d 651 (2013). It does look at any of the evidence one would expect an interpreter to

consider in determining the clause's relevance to the many uses to which the courts must applied all of their literary for  b)-["***Common Sense***"] indicates that the defendants are even violating of the United Nations High Commissioner for Refugees ("UNHCR") to the American Immigration Lawyers Association, and to the 1)-["***UNHCR"]*** 2)-["***Handbook on Procedures and Criteria for Determining Refugee Status*** "] (1979) 3)-["***UNHCR Handbook"]*** if whether of not the UNHCR Handbook, for its part, does unambiguously support the plaintiff's position.,while requiring an individualized determination of the applicability of Article 33.2's exclusion clause, focuses on the definition of "serious non-political crime" and does  explicitly require a separate dangerous determination as presenting to them.  .*Prosecutor v. Rutaganda*, 39 I.L.M. 557, 570 (Case No. ICTR-96-3-T, May 2000)) 4)-["***I.C.C. Statute***"]. Article 7 lists the "enumerated acts" ("as *murder; extermination; enslavement; deportation or forcible transfer of population; imprisonment or other severe deprivation of physical liberty in violation of fundamental rules of international law; torture; rape, sexual slavery, enforced prostitution, forced pregnancy, enforced sterilization, or any other form of sexual violence of comparable gravity; persecution against any identifiable group or collectivity on political, racial, national, ethnic, cultural, religious, gender . . . or other grounds that are universally recognised as impermissible under international law, in connection with any act referred to in this paragraph or any other crime within the jurisdiction of the court; enforced disappearance of persons; the crime of apartheid; other inhumane acts of a similar character intentionally causing great suffering or serious injury to body or mental or physical health.I.C.C.*

Statute, art. 7 (cited in <u>Rutaganda</u>, 39 I.L.M. at 570**). c)-["*FITA"].**<u>*In re Yurika Foods Corp*</u>. 888 F.2d 42, **45** (6th Cir. 1989). i)-[***Notice to the United Nations***"] ("*The US has announced it will provide employment authorization cards to some non-immigrant categories, including those waiting for green cards, for five years, a move that would benefit thousands of Indians living in the country*."). ii)-[***United States | United States to provide employment authorisation cards for five years - Telegraph India***"] ("*The US Citizenship and Immigration Services (USCIS) said it was increasing the maximum validity period of Employment Authorization Documents (EAD) to 5 years for initial and renewal EADs for certain non-citizens who must apply for employment authorisation*."). iii)-[***Notice by Mr.Clervrain, Assistants Admittance***"].The further requirement that the agencies evaluate   crimes   against humanity be committed against a "population" distinguishes these crimes from a "single or isolated act which, although possibly constituting Serious crimes or crimes against the national.a)-["***USCIS***"] so if the agencies  denied Citizenship based on factor of track violations that is the end of the matters, so such conduct by the agency  does rise to the level of crimes against humanity. b)-["***ICE***"]  that now have fairly precise definitions and that have achieved universal condemnation, "terrorism" is a term as loosely deployed as it is powerfully charged. *Judge Harry T. Edwards* of the District of Columbia Circuit stated eighteen years ago in  <u>*Tel-Oren v. Libyan Arab Republic*</u>*.,* 726 F.2d 774 (D.C. Cir. 1984).The general rule is to resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation and the strong presumption in favor of judicial review. <u>*Romer v. Evans*</u>, 517 U. S. 620, 632, 116 S.

Ct. 1620, 134 L. Ed. 2d 855 (1996). c)-["**_5 U.S.C. 704_**"] ("*exempting from judicial review agency*

*action for which there is an "adequate remedy in a court*"). As such the plaintiffs disagree,

contending that the immigration court's review procedures does permit consideration of whether the

agencies complied with the statutory mandate at issue in this case. _Bowen v. Massachusetts,_ 487 U.S.

879, 903, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988).  To the extent this court has jurisdiction over

the plaintiff claims, and he has demonstrated that these case warrants the intervention of the courts

by means of the extraordinary remedy of mandamus. See _Bauman v. U.S. Dist. Court_, 557 F.2d

650 (9th Cir. 1977). The Immigration and Nationality Act restricts an appellate court's review of the

petition only to the administrative record.d)-["**_8 U.S.C.S. 1252(b)(4)(A)_**"] provides that the court of

appeals shall decide the petition only on the administrative record on which the order of removal is

based. _Infanzon v. Ashcroft_, 386 F.3d 1359, 1363 (10th Cir. 2004). If our review is for plain error,

we will reverse only if the plaintiff shows "(1) error, (2) that is plain, which (3) affects substantial

rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial

proceedings." _United States v. Wireman,_ 849 F.3d 956, 962 (10th Cir. 2017). Moreover, At page 24

from the this one book.e)-["**_UNHCR Handbook_**"] explain clearly the situation presenting to the

courts as a matter of rights for adjudicating the cases against genocide, it provides ; (*with the term*

*Nationality in the context is not to be understood only a citizen, it refers also to membership of an*

*ethic or linguistic group, and may occasionally overlap with the term Race or or for illegal*

*prosecution for Reason for Nationality may consult the adverse attitude and measure direct against*

*a National (Ethic , linguistic ) minority and certain circumstances the fact of belong to such minority may itself give rise to the well fear of prosecution. )*.<u>National Rifle Association v. Magaw</u> 132 F.3d 272, **284** (6th Cir. 1997) Within the context of the First Amendment, Under ("TMPA"), at page 174, which the plaintiff alleged the most important one, the first question is not different, then for protection analysis, and if the Supreme Court has enunciated concerns that justify a lessening of the  usual prudential requirements for a pre-enforcement challenge to a statute with criminal penalties. <u>Secretary of State of Maryland v. Joseph H. Munson Co., Inc</u>., 467 U.S. 947, 956 (1984). The harm alleged in First Amendment cases is the "chilling effect" on the constitutionally protected right to free expression, which, the Supreme Court has stated, is "of transcendent value to all society." <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 486 (1965). That is what ?, therefore all Brandako family members must leave i)-["**_Republic of Hait_**i"], now, because Revolutionary Act, we can't go back history  <u>United States v. Layton</u> 767 F.2d 549, 552 (9th Cir. 1985).They won't leave us alone with their immediate families, if the Legislature enacted that Law in 1991 to codify a set of guidelines designed to limit actions by local officials,  that might create doubt in the minds of citizens concerning the motivations of those officials, if  we can prove they are very corrupt that is the en of the matters. ii)-["**_N.J.S.A. 40A:9-22.5(d)_**"] provides that ("*[n]o local government officer or employee shall act in his official capacity in any matter where he, or a member of his immediate family * * * has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment.*.<u>ex. rel. Settles v. Board of</u>

*Education, McCurtain County, Oklahoma, Okl.*, 389 P.2d 356 (1964),.They're now going back to tell more lies which means more congressmen. And there's no way, no way we can survive, as the plaintiff is invoking the So called Cessation Clauses Under Article 1 (C) to 6 of the 1951 from the convention spell exactly the situation presenting under which  a person was denied citizenship based upon race, it based on the consideration that discrimination is in violation of international law, and should be granted were the agencies action can not be justified by their own civil laws, but this one with has been proved by the court of the United States of America, we are listed many of them for their interventions.. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At page 34, under Person not consider to be in need of International protection by Article 1 E of the 1951 Convention it provide;" This convention shall not apply to person who is recognized by the competent of Authorized of the country in which he has been taken residency or having the right and obligation which are attach to the possession of  Nationality of the country, and  the defendants burdens to present that is a legitimate claim.  a)-["***1101 (a) (31)***"] Nevertheless, Florida courts have held that permanency in the context of Tax Exemption cases is relevant to the analysis of eligibility for the Florida Homestead Exemption.*Grisolia v. Pfeffer*, 77 So. 3d 732, 736 (Fla. 3d DCA 2011). if *Federal and Florida Jurisprudence Support an Interpretation of Permanency That is Synonymous With Indefinitely that is under b)-**Lisboa*** is of particular relevance to the Contested Matter before the Court because the *Lisboa* Court discussed the definition of  the wordings, then we  are asking the agencies if we claiming   right one.c)-["***Permanent***"] in the Immigration and Naturalization Act,

which today is still defined as follows: The term i)-["***Permanent***"] means that a relationship of continuing or ii)-["***Lasting Nature***"], as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law..*Sudomir* [*v. McMahon* , 767 F.2d 1456, 1467 (9th Cir. 1985) ]: "The common characteristics of all these temporary relationships is that they exist for a defined purpose with a defined end, and there is never any intention of abandoning the country of origin as home. .*d)-["**8 U.S.C. 1101 (a) (31)**"]*.*The *Lisboa* Court also cited to and quoted from the Florida Supreme Court's opinion in *Department of Health and Rehabilitative Services v. Solis*, 580 So.2d 146 (Fla. 1991) ("*Solis*"). That case held that an applicant for political asylum is eligible for welfare benefits as an immigrant ("PRUCOL) and reasoned as follows: like the word "*permanent*," Congress has not defined any word, so we asking the agencies if can review those claims as upon reliefs can granted. i)-["***Temporary***."], so we are helping in the process by applying common sense laws..ii)-["***Training***"] and iii)-["***Temporarily***,"] Moreover, , we are are requesting the agencies for it expertise.e)-["***8 U.S.C. Sec. 1101(a)(15)***"] in reference to students, teachers, business visitors, and *specific workers*..*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). iii)-[" ***Mr.Clervrain Victim by Agencies Actions***"]. As stated in all motions for their admittance, for their applications, so if they are special persons, then no different then special agents, so for the courts and the agencies will not denied the wording, or intent of the inventor, so his assistants are the trustees, then, they are *Special Agents* as matter of definitions. *Sudomir* [*v.*

*McMahon*, 767 F.2d 1456, 1467 (9th Cir. 1985)]: "The common characteristics of all these temporary relationships is that they exist for a defined purpose with a defined end, and there is never any intention of abandoning the country of origin as home."*Lisboa* at 707 (quoting *Solis* at 149) (footnote omitted). In *Solis*, the Florida Supreme Court cited approvingly to *Holley v. Lavine*, 553 F.2d 845 (2d Cir. 1977). If the district court now Under *Clervrain v. Rossado*, No.20-CV-00389 reading the statutes and the above cases by special solitude as quoted, it will find that the plaintiff is a victim of attempt to extradition, and that standard for proving outrageous governmental conduct is extremely demanding." *United States v. Sandlin*, 589 F.3d 749, 758 (5th Cir. 2009). As well as he is a victim of Mass deportation; 2) Mass Incarceration, and the defendants retaliated against him because of his movement and restricted him because of his financial circumstances, for which he should not be restricted.a)-["***Exhibit (IX) (A) (I-XII)***"] For these reasons, coupled with allegations for kidnapping, and evidence for discrimination as a *pro se* litigant, the Court must concluded the "most speedy" and "most expeditious" procedure would be applied a relaxed admissibility standard during the hearing and then discount the evidentiary value of any dubious evidence during the fact-finding process, and to such an extent that factual conclusions may rest upon nothing more substantial than the quicksand of cultural bias. See, e. g., *United States v. Caceres*, 545 F.2d 1182 (9th Cir. 1976). In respect of the procedure employable before the courts and the agencies for review of the statutory language reveals that its not judicial character, and liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. *These demand "a fair and*

*open hearing,"* - essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an "inexorable safeguard." *Morgan v. United States,* 304 U.S. 1, 14-15, 82 L. Ed. 1129, 58 S. Ct. 773, 58 S. Ct. 999 (1938). This actions is commerce by alleging that those violations of the regulations, and for their  justification by challenging their regulation mandate.b)-["***8 C.F.R 316.10 (2) (b) (v) and  8 C.F.R 316.10 (c) (1)***"], meanwhile, the plaintiff intention is is reminded the agencies, and the courts that the is a PRO-SE litigant, in order to clarify the precise claims being alleged, or urged by naming the last criminals are the agencies involved in the practice c)-["***Transparency***"], Of course such ambiguity concerns alone could justify discrimination against the plaintiff or an arbitrary and irrational denial his Naturalization application, and that is the ambiguity lies in the existence of the matter unknown to congress intent. *Cohen v. JP Morgan Chase & Co*., 498 F.3d 111, 116 (2d Cir. 2007). The first step of the *Chevron* analysis is straightforward here.1)-["***URMA***"] if Congress has not defined the phrase "lawfully resided continuously" anywhere in the 1)-["***INA***"]. If given the range of possible interpretations that might apply to it, we agree with the 2)-["***BIA***"] that this phrase is ambiguous. *See In re Rotimi*, 24 I. & N. Dec. at 571; *see also Quinchia v. U.S. Attorney Gen*., 552 F.3d 1255, 1259 (11th Cir. 2008). Under the *Chevron analysis*, we first ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of

Congress, nor can we divine what congress would have wanted, if it had thought of the situation presenting before the courts and the agencies, thus congress sough to avoid the danger of the situation in this cases, i)-["***Clervrain Analysis"]***.We "accord respectful consideration and great weight to the views of the State's highest court," though ultimately we are "bound to decide for ourselves whether a contract was made.*Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938). The question whether a contract was made is a federal question for purposes of Contract Clause analysis. *Irving Trust Co. v. Day*, 314 U.S. 556, 561 (1942), and "whether it turns on issues of general or purely local law. ii)-["***Choices***"].While it is true that the terms to which the contracting parties give assent may be express or implied in their dealings, *cf. Garrison v. City of New York*, 21 Wall. 196, 203 (1875). iii)-["***Character***"], for controversy and for enacting the applicable laws upon reliefs can be .1)-["***Universal Nationality Character Act***"] ("UNCA"), then we therefore question for proceeding to the second step of the *Chevron* analysis for the protection of those individuals in this situation presenting against illegal detention, and Genocide by the defendants, and when an applicant such as the plaintiff who is , or was confine to a panel institution for two days, but less than One-Hundredth Eight-Days (180 Days), and then he should not be excluded from the constituent for protection..2)-["***8 C.F.R.316.2 (a) (7),  8 U.S.C. 1427(d)***"] Moreover, subsection (d) of the Act expressly directs that the finding by the Attorney General that if the plaintiff traffic violation is not deportable shall be accepted as conclusive evidence of good moral character, while the plaintiff is demonstrating that, during or part of the statutory prescribed period he is and

continue to a person of good moral character, this include the period between the examination and administration of oath of allegiance. *Hamdi v. Rumsfeld*, 542 U.S. 507, 159 L. Ed. 2d 578, 124 S. Ct. 2633 (2004). It is true that the agencies should give no defense at on the question, if whether or not the statutes are ambiguous and if the agencies erroneously content that congress has been clearly express, and it has rested on the ground for the denial, and these courts must remand to required the agencies to consider the question a flesh in light of the circumstances presenting as matter of facts against facial attack. *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009). Since the decision in these case are depending on factual findings, and these courts must considered this motion to be a facial attack on jurisdiction that is to be reviewed *de novo, and if* The standards that must be. a)-["***Rule 12(b)(1)***"] *if* The Fifth Circuit, on facts similar to those here, adhered to what it called the "general rule" and recognized that "a jurisdictional attack intertwined with the merits of an b)-["***FTCA***"] claim should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper, then we asking the courts if they must review all evidence to this cases by applying the same standard upon relief can be granted. c)-["***CIRTA***"], to file all state courts records, when they provide access to electronic resources, so what ? the federal  Circuit will think about the same analysis when the district courts failed to grants access. d)-["***UFTA***"], that is pending to file for compelling necessary need, so the agencies must release all information requested, as well as using the FOIA Request as for filling application, if congress is not clear, that is the end of the matter, so the courts must

considered all laws. i)-["***Clervrain Analysis v Chevron Doctrine***"] *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). The Eleventh Circuit has reached a similar conclusion. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990) ("*vacating dismissal of FTCA claim under Rule 12(b)(1) because "[t]he pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim*"); *see also Augustine v. United States,* 704 F.2d 1074, 1079 (9th Cir. 1983) ii)-["  ***Compelling all States   Officials***"].*Clervrain v. United States* CASE NO.17-3194-SAC, at *1 (D. Kan. Dec. 8, 2017). The Court is required to screen complaints brought by the advocate seeking relief against a governmental entity or an officer or employee of such entity to determine if  whether summary dismissal was not appropriate, so the evidence on the records is presenting against them. iii)-[ ***Compelling Judicial Actions***"], so even the the United States Judicial Panel on Multidistrict Litigation, and even the Supreme Court of the United States involved in the conspiracy theory can be proving");  *Clervrain v. Shafer,* No. CV 122-001, 2022 WL 604896, at *1 (S.D. Ga. Jan. 6, 2022). a)-["***PIRPA***"]. That is because the jurisdictional issue [when plaintiff's cause of action accrued for purposes of the b)-["***FTCA***"] is dependent upon resolution of factual issues going to the merits.c)-["***USIGA***"],or if the district court held that AWR had not shown the requisite likelihood of irreparable injury and success on the merits, so AWR  failed his claims, then we are asking if i)-["***Clervrain Doctrine Ac***t"] (CDA), must be published today as matter of laws for admission on motions. a)-["***PIRLA***"], so all of them are pending to file to the courts, agencies, as well as this one. b)-["***National Conference Of Bar Examiners***"] (NCBE) , that is for national

advocate self regulations ii)-["***NIRTA***"], pending  to filed .*Alliance for the Wild Rockies v. Cottrell*

632 F.3d 1127 (9th Cir. 2011).iii)-[**"*NATA*"**],we now set forth the reasons for our reversal, and we

take this opportunity to clarify an aspect of the advocate standard, and his analysis for a preliminary

injunction against the defendants.*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046,

1052 (9th Cir. 2009). 1)-[**"*N.D. Admiss. Prac. R. 3.2 As amended through July 18, 2023 Rule 3.2 -*

*Provision of Legal Services Following Determination of Major Disaster A. Determination of*

*existence of major disaster.*"**] (*"For purposes of this Rule, the Supreme Court shall determine when*

*an emergency affecting the justice system, as a result of a natural or other major disaster, has*

*occurred in:**1.** this jurisdiction and whether the emergency caused by the major disaster affects the*

*entirety or only a part of this jurisdiction, or**2.** another jurisdiction but only after such a*

*determination and its geographical scope have been made by the highest court of that jurisdiction.*

*The authority to engage in the temporary practice of law in this jurisdiction under Section C extends*

*only to lawyers who principally practice in the area of the other jurisdiction determined to have*

*suffered a major disaster causing an emergency affecting the justice system and the provision of*

*legal services.**B. Temporary practice in this jurisdiction following major disaster.** Following the*

*determination under Section A of an emergency affecting the justice system in this jurisdiction, or a*

*determination that persons displaced by a major disaster in another jurisdiction and residing in this*

*jurisdiction are in need of pro bono services and the assistance of lawyers from outside of this*

*jurisdiction is required to help provide such assistance, a lawyer authorized to practice law in*

*another United States jurisdiction, and not disbarred, suspended from practice or otherwise restricted from practice in any jurisdiction, may provide legal services in this jurisdiction on a temporary basis. The legal services must be provided on a pro bono basis without compensation, expectation of compensation or other direct or indirect pecuniary gain to the lawyer. The legal services must be assigned and supervised through the State Bar Association of North Dakota, a pro bono program or legal services program, or through another organization specifically designated by the Supreme Court.* **C. Temporary practice in this jurisdiction following major disaster in another jurisdiction.** *Following the determination of a major disaster in another United States jurisdiction, a lawyer who is authorized to practice law and who principally practices in that affected jurisdiction, and who is not disbarred, suspended from practice or otherwise restricted from practice in any jurisdiction, may provide legal services in this jurisdiction on a temporary basis. Those legal services must arise out of and be reasonably related to that lawyer's practice of law in the jurisdiction, or area of such other jurisdiction, where the major disaster occurred.* **D. Duration of authority for temporary practice.** *The authority to practice law in this jurisdiction granted under Section B ends when the Supreme Court determines the conditions caused by the major disaster in this jurisdiction have ended except that a lawyer then representing clients in this jurisdiction is authorized to continue the provision of legal services for such time as is reasonably necessary to complete the representation, but the lawyer shall not thereafter accept new clients. The authority to practice law in this jurisdiction granted under Section C ends 60 days after*

*the Supreme Court declares that the conditions caused by the major disaster in the affected jurisdiction have ended.***E. Court appearances.** *The authority granted by this Rule does not include appearances in court except:***1.** *under Admission to Practice R.3, Section A, and, if such authority is granted, the fee imposed under Admission to Practice R. 3, Section A(1)(a)(4) is waived; or***2.** *if the Supreme Court, in any determination made under Section A, grants blanket permission to appear in all or designated courts of this jurisdiction to lawyers providing legal services under Section B. If such an authorization is included, the fee imposed under Admission to Practice R. 3, Section A(1)(a)(4) is waived.***F. Disciplinary authority and registration requirement.** *Lawyers providing legal services in this jurisdiction under Section B or C are subject to the Supreme Court's disciplinary authority as provided in N.D.R. Prof. Conduct 8.5. Lawyers providing legal services in this jurisdiction under Section B or C shall, within 30 days from the commencement of the provision of legal services, file a registration statement with the State Board of Law Examiners in a form prescribed by the Board. Any lawyer who provides legal services under this Rule is not engaged in the unlawful practice of law in this jurisdiction.***G. Notification to clients.** *Lawyers authorized to practice law in another United States jurisdiction who provide legal services under this Rule shall inform clients in this jurisdiction of the jurisdiction in which they are authorized to practice law, any limits of that authorization, and that they are not authorized to practice law in this jurisdiction except as permitted by this Rule. They shall not state or imply to any person that they are otherwise authorized to practice law in this jurisdiction..*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th*

Cir. 2009) ("*In Winter, the Supreme Court definitively refuted our 'possibility of irreparable injury' standard. . . .*");  2)-["***N.d. Admiss. Prac. R. 3.2***"].*McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 957 (9th Cir. 2010) ("ultimately applying a more stringent standard in light of First Amendment interests"). 3)-["***Notice Admission On Motions***"] In *National Meat Association v. Brown*, 599 F.3d 1093, 1097 n. 3 (9th Cir. 2010), so those motions vary according to the nature of the jurisdictional challenge..a)-["***Multiple Choices***"] If, as here, the challenge is a facial attack--one contesting jurisdiction solely on the allegations of the complaint--the factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See Thornhill Pub. v. Gen'l Telephone & Electronics,* 594 F.2d 730, 733 (9th Cir. 1979). A complaint will be dismissed for lack of subject matter jurisdiction if (1) the cause does not "arise under" any federal law or the United States Constitution, (2) there is no case or controversy within the meaning of that constitutional term, or (3) the cause is not one described by any jurisdictional statute. *Baker v. Carr,* 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962). While congress left the gap for the agencies  as to their exercise of discretion by revolving the ambiguities, which  is not frivolous or where the allegations are affirmatively contradicted by the record. *Vick v. United States*, 730 F.2d 707 (11th Cir.1984); As we can see the analysis of this factors are tailored to the circumstances of these cases, so we can say that only at this time, such as the b)-["***Transparency***"] they be no more agencies  have been excluded him to any process of laws, so  for his  public ceremony, the defendants alleged he was deportable

alien is being challenged, and being in illegal detention by (ICE) official is another subject matter to support the claim for kidnapping.c)-["**_18.U.S.C 1201_**"], Section 2A4.2's application note defines a "participant" as a person "criminally responsible" for the kidnapping offense, even though that person need not have been convicted of kidnapping, and to determine criminal responsibility, we apply the federal kidnapping statute, which provides, inter alia:  *a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when-(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; (2) shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.*.In <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1084 (9th Cir. 2009), the district court had applied the "serious questions" test and held that "there are serious questions on the merits and the balance of hardships tips sharply in favor of plaintiff, so if the agencies , or if  The Federal Guidelines attach special significance to the "Defendants misconduct if they intentionally restricted to ligate his cases because of his "indigent" designation by act of adverse actions against the plaintiff who is entitle to relief  for National treatment, so he should be excluded because of his national origin. <u>Shweika v. Department of Homeland Security,</u> 723 F. 3d

710 (6th Cir 2013). The sixth circuit acknowledge that congress may nevertheless make a clear statement even if it does not used magic word, here the dictionary of the word is another question against the defendants 1)-["*__Allegiance__*"] indicate that a person must have loyalty or other obligation of loyalty as to a person, Nation sovereign or cause, these definition means allegiance as inter-alias against Kidnapping by mass deportation, or to the exclusion of the one from establishing good character as as a matter of law occurred after the defendants denial of his nationality by exposed him to serious criminal activities. 2)-["*__Advocate__*"]. *United States v. Eagle Thunder*, 893 F.2d 950, 952 (8th Cir. 1990) ("holding that victim's initial consent to accompany kidnapper did not preclude kidnapping conviction where victim was later detained"). Therefore, it is within the boundary of the interpretation of the plain language of the statutes to protect the plaintiff against the defendants illegal activities, and  for the courts to give the terms, their ordinary, contemporary and common meaning and indication of congress intent to bear some different import, our sole function is to enforce the statute according to its terms, 3)-["*__Activist__*"] and with these principles in mind, we turn to the text of Section 1252 (f) (2) focusing specifically on the word 4)-["*__Enjoin"__*] that is because "enjoin" is undefined in the statute, we must accord the term them  absent an indication Congress intended [it] to bear some representative the circumstances presenting to the courts for adjudicating his rights." *DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005). "We customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning." *Nat'l Coal. for Students v. Allen*, 152 F.3d 283, 289 (4th Cir. 1998); *see also United States v. Harris*,

128 F.3d 850, 854 (4th Cir. 1997) (citing *Black's Law Dictionary* to ascertain meaning). In common parlance, "enjoin" means to require one "to perform, or to abstain or desist from, some acts," *Black's Law Dictionary 529* (6th ed. 1990), The one in question manifest congress intent to protect the plaintiff, and afforded the right under the constitution of the United States, and it created exception to whom should the reformation of character should apply to the obvious constitutional violation by the agencies actions. *Oyler v. Boles,* 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962). Congress understood that is required those that committed serious crimes such as their illegal convictions by 5)-["***Transparency***"] lengthily sentence not traffic violations, and even if the defendants knew that his current conviction is not aggravated felony they will still illegally detained him anyway by secretive detention, and the Supreme Court has, nonetheless, stated without explicitly deciding that kidnapping is a crime of violence. *See United States v. Rodriguez-Moreno,* 526 U.S. 275, 280, 119 S.Ct. 1239, 1243, 143 L.Ed.2d 388 (1999) (considering federal kidnapping statute). Other courts have explicitly so held. *See, e.g., United States v. Patino,* 962 F.2d 263, 267 (2d Cir. 1992) .That the crime of kidnapping involves the threatened use of physical force against a person, and is thus a crime of violence, so we are asking if the defendants could not deported him, so they violated. 6)-["***18 U.S.C. 924(c)***"], thereunto congress has provided the agencies broad discretion in determining the nature of the defendants behavior for illegally detentions, or as the plaintiff who is proving his competency, as one can assumed, how many innocent people will be suffered by the defendants criminal misconducts, so retaliation is another

subject matters, or that is because of his movement, and release him form illegal detention while his cases pending for adjudicating his nationality claim and the evidence provided is substantial before afforded him the privileges to establish good moral character and extenuating circumstances is prevailing factors. *United States v. Dang*, 488 F.3d 1135, 1144 n.7 (9th Cir. 2007) ("Upholding validity of regulation because requiring of the plaintiff's unlawful act during the Five-year moral character period -or if whether or not he plaintiff for the acts during that period is not beyond the agencies statutory a)-["***Exhibit (III) (D) (I-XII)***"].with the exception that he met the requirement is not excluded him to prove, b)-["***Average Citizen***"] for his traffic violations, and produce direct evidence from the court or his probation, parole and indirect evidence of sufficient probative force to reflect the evidence issues of marital of facts"). Meanwhile, congress understand that his traffic violation admitted was not really serious when enacted the laws, it express the objective statutory language before us by address the circumstances presenting against genocide, and it is proper to place defendant in c)-["***Criminal History Category VI***"].*United States v. Collins*, 122 F.3d 1297, 1304 (10th Cir. 1997). For the reasons stated, that the defendants violated his constitutional rights in all circumstances. d)-["***Serious Human Rights Offense***"], and the definition, and for purposes of this guideline, "serious human rights offense" means violations of federal criminal laws relating to genocide, torture, war crimes, and the use or recruitment of child soldiers under sections 1091, 2340, 2340A, 2441, and 2442 of title 18, United States Code. See 28 U.S.C. 509(B)(e). Indeed, the defendants themselves committed and ordered the commission of restricted to his legal mails is

being questioned, and the plaintiff now is presenting those ambiguities who should not be excluded for future detention by considering i)-["**_Mr.Clervrain_**"] standard, or a victim by the defendants illegal actions, so his analysis is depend clearly upon congress intent, or existing laws upon relief can be granted. 1)-["**_Average Citizen_**"] in the 2)-["**_Community of Residence_**"], moreover, with the same standard, which they applied 3)-["**_Certainty_**"], or if they involved in illegal convictions by way of authorities by. ii)-["**_Limitation_**"] to which he is favorable disposed toward the good order and happiness of the United States. _Abusamhadaneh v. Taylor_, 873 F. Supp. 2d 682, 683 (E.D. Va. 2012). That is to say that congress express the circumstances for protection rights by express the above words, a)-["**_Status Limitations_**"] terms in fashion with specific words which the defendants failed , for example, b)-["**_Standard"_**] consistent with is statutory language, simply does contemplate a claims for c)-["**_Sovereignty_**"], despite the limitation surrounding them, it has recognized the statutory language of encouraging them the right of protection by the government, which they do so by considered his color of 1)-["**_Skin_**"], and excluded him in all process, so if the word is not clear that is the end of the matters, 2)-["**_Alien_**"] and the agencies , and the courts should not abused their authority should not abused him because d)-["**_Color of Skin_**"], and he is demonstrating that the Ir's decision for failure to consider his claims are bias or that his request for background information was based on hit's race or national origin.e)-["**_IJs_**"] have broad discretion to conduct hearings by stopping his removal although an IJ may not violate his due process rights by failing to act as "an impartial trier of fact." _Matter of Lam_, 14 I. & N. Dec. 168, 171 (B.I.A. 1972); _see also Bi Qing_

_Zheng v. Lynch_, 819 F.3d 287, 297 (6th Cir. 2016) ("noting that (IJs) must "ensure that his positions as neutral arbiters do not take on that of advocates"). We conclude that the plaintiff has  identified the prejudicial bias or impermissible advocacy by the (IJ) by placing him on illegal detention is evidence for kidnapping against his protected rights is presenting to the courts for majority opinion as matter of of facts. As such it reflect that minor convictions or traffic violations has a constitutional rights not be place in illegal detention, which also explain that every minor criminals has a constitutional rights to remain in the United states until death or if there is evidence that he had voluntary relinquish his previous Nationality.  _Afroyim v. Rusk_, 387 U.S. 253, 268, 87 S. Ct. 1660, 18 L. Ed. 2d 757 (1967). These cases represents an instance of the most explicit language, which leaves room for questioning congress by enacting this new laws, so they cause injuries in facts, so they must informed y circulations. i)-["**_UNCA_**'], and together by applying this one , which congress authorized to be enforced. Section 101 (a) (3) of the ["_Immigration Control and Reform Act_ of 1986 (Pub.L. 99-603, 100 Stat. 3372). As another challenged against  the defendants failure to consider various factors, ("INA") ,which defines 1)-["**_Alien_**"] as if any person can not prove his claim, then, they are not to be classified as a 2)-["**_Citizen_**"]._Gummala v. U.S. Dep't of Labor No._ 20-12839, at *__7__ (11th Cir. Mar. 25, 2022), and specifically its new, broader definition of "citizen of the United States" for corporations, applies retroactively.3)-["**_National_**"] of the United States, and the point is those words are contradicting with the U.N. Doc. HCR/GIP/02/02 (May 7, 2002) ("UNHCR Guidelines"), or if read together, could reasonably means different things, hence they are

ambiguous rules, , or if one more ambiguity puts the first, the defendants to analysis all factors presenting to them today. 4)-["***Average Citizen***"] to chevron question, or to which we are asking if the rules, or regulations.a)-["***8 C.F.R 316.10 (2) (b) (v)***"], as the plaintiff stating before he is seeking to distinguish between i)-["***Minor Criminals***"] and ii)-["***Transparency***"], so the agencies will not denied they had committed.iii)-["***Serious Criminals***"] , and this is where the panel opinion must distinguish the facts or arguable basis for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (citing *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). For this exception to apply, the issuing court must have a "total want of jurisdiction[, which] must be distinguished from an error in the exercise of jurisdiction, and [occurs] only [in] rare instances of a clear usurpation of power." *Id.* (quoting *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661-62 (1st Cir. 1990). it is beyond dispute that the statutes are silent regarding how exactly, the agencies should assess if whether a minor criminal should have the benefits of reformation of character while in removal procedures with the intent or evidence that the plaintiff had met all requirement. b)-["***8 C.F.R 316.10 (c) (1)***"] and the Courts do not extend the indulgence of the *pro se* liberal construction rule to *pro se* litigants who, like the plaintiff, are also the advocate to protect public interest good character,. *See Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 720 (10th Cir. 2014). Moreover, the agencies prefer to mix-and-match definition of all claims alleged, because of  c)-["***Within Reasons***"] by the policy challenged by this proposes laws, , and minor criminals so that they can restricted him to protect individual's against future crimes

committed by their employees, so the defendants actions, it is "based on disputably meritorious

without applying so call  d)-["***Legal Theory***"] or a "clearly based" or "fantastic or exclusionary"

factual scenario, and ("[T]he United States Court of Federal Claims may adjudicate all claims

without discrimination , if it arises from the 'same operative facts' and requests 'essentially the same

relief,' as a claim presented to the courts, even if the complaint at issue alleges a 'slightly different

legal theory.' _Scott Timber Co. v. United States_, 333 F.3d 1358, 1365 (Fed. Cir. 2003). That is or if

any well dis-guided, or if the intent of congress is clear, that is the end of the matter, and for the

courts as well as the agencies must give effect to the Unambiguously express intent of congress, if

however the statutes are silent or ambiguous with respect to the specific issues, or congress has not

spoken clearly and a permissible by the agencies interpretation of the statutes merit judicial

deference. _E.g., Mellow Partners v. Comm'r of IRS_, 890 F.3d 1070, 1079 (D.C. Cir. 2018). Thus, the

objective of step one is not to interpreting and by applying the statutes to resolve a claim, but to

determine if whether congress intended to enact the laws proposed against serious crimes by the

defendants, or was so clear to foreclose any other interpretation under the first step of the review

courts is to employ traditional tools statutory construction to determine whether congress address

the precise question at issues, therefore, begins this analysis with the text and structure of the

statutes. _United States v. Shabani_, 513 U.S. 10, 17, 130 L. Ed. 2d 225, 115 S. Ct. 382 (1994). After

all the plain language of the statutes are the most liable indicator of congressional intent,,

additionally, the fourth circuit as described legislative history as one of the traditional tool of

interpretation to be conservative to chevron step one. _Elm Grove Coal Co. v. Director, OWCP_, 480 F.3d 278, 291-95 (4th Cir. 2007). Here, as mentioned, the courts must begins its chevron step one inquiry into congress intent, as it must from the fundamental canon of the the statutory interpretation begin with the language, and the defendants actions, so they are liable for lifetime damages that is without exceptions. _Demby v. Schweiker_,  671 F.2d 507, 510 (D.C. Cir. 1981). Indeed, these concerns animate the review of the agencies actions, so under the chevron doctrine against their practice of criminal conducts,1)-["**_Kidnapping_**"], by way of attempt for deportation, so they will not denied relationship exist 2)-["**_Genocide_**"], and so if they restricted to legal mails while he was in their custody, or that is for 3)-["**_Control Theory_**"] to ligate facts as the plaintiff has the bears the burden to prove his cases by preponderance of the evidence is establishing extenuating circumstances, along with the evidence that he met all requirement for public ceremony,but they were conspired against him, so that he will not prove lifetime damages against them and this articular situation is matter for good moral character pursuant to the Immigration and Nationality Act ("INA") for ratification their laws,  as is still fresh in the minds of all of us, the January 19, 1981 signing of the "Algerian Accords" ended the so-called "hostage crisis." Those Accords set up an Arbitral Tribunal to consider claims by American citizens against Iran.  Accords Article VII, P 2 provides: _Claims referred to the Arbitral Tribunal shall, as of the date of filing such claims with the Tribunal, be considered excluded from the jurisdiction of the courts of Iran, or of the United States, or of any other court.On January 18, 1982 Kianoosh filed a claim with the United States-_Iran Claims

*Tribunal at The Hague.  Consequently the precise language of the Accords "excludes" Kianoosh's claims from this Court's consideration. i)-[**"RETODA"**].*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result, they are not legal theory, but factual allegations. ii)-[**"NATA"**], Of course the Accords must be read in light the challenge of the controversy in each states, which is premature, so his assistants must be arrived,as they are the trustees, they are the iii)-[**"Migrant Agent**s"], and the restrictions by the defendants or amounted to a terrorist activity within the meaning of the a)-[**"INA"**] .if Congress, "in express terms," empowers the agency to do so, b)-[**"Special Agents"**], It is therefore unclear whether or not an act that would qualify as "engage in revolution activities" must at the same time be lawful arrival in the united states of America, so then we are asking the USCIS, must  approved all application filed for his families that filed various applications, the question if whether not he had filed an application with the same malicious intent. iv)-[**"Exhibit (II) (D) (I-XII)"**], so he was force by to be filed, the United States Citizenship and Immigration Services (USCIS) approved a petition for alien relative (or "Form I-130 petition"). a)-[**"Notice Extortion by agencies"**].In other words, the question is whether theirs conduct during the hostage crisis, which is clearly in violation of the statutory mandate, or any other section the act which the agencies hereby denied him public ceremony they are question of facts, damages is without limits,, and for the courts as well as the agencies must give effect to the unambiguously express intent of congress and  ought to be evaluated in light of the more speech-

friendly First Amendment standard articulated by in _Brandenburg v. Ohio_, 395 U.S. 444, 23 L. Ed.

2d 430, 89 S. Ct. 1827 (1969). In _McVeigh_ the Tenth Circuit found that it need not decide if the First

Amendment right existed, because even if it did apply, the corresponding Press-

Enterprise standard had been meet, which the defendants must also prove the contrary. _United States_

_v. McVeigh_.119 F.3d 806 (10th Cir. 1997).b)-["**_Office of Immigration Litigation, District Court_**

**_Section_**"**] ("**_OIL-DCS currently employs over 70 attorneys, all of whom handle a variety of matters_

_within the section. Some DCS attorneys possess specialized expertise in specific subject areas, such_

_as detention, employment-based immigration, denaturalization, or terrorism-related immigration_

_issues._"). c)-["**_Releasing all  OIL-DCS Attorneys_**"]._Griffin v. Breckenridge_, 403 U.S. 88, 91 S.Ct.

1790, 29 L.Ed.2d 338 (1971), who are the remaining defendants to the actions for all pending cases

in their dockets,. The district court's must be granted all reliefs, of the § 1985(2) claim that is correct

one, OIL- Appellate Section attorneys hold primary responsibility for civil immigration case

litigation before the federal appellate courts.  These cases present numerous challenging issues, both

legal and factual, relating to whether an individual, pursuant to the Immigration and Nationality

Act, ["_8 U.S.C. § 1101, et seq"'_]., is subject to removal from the United States or is eligible for some

form of benefit, relief, or protection that would allow him or her to remain in the United States

without restriction people. d)-["**_Exhibit (II) (T) (I-XII)_**"] In Fiscal Year 2009, there were over 7,500

such cases filed, and they comprised approximately thirteen percent of all controversies filed in the

federal appellate courts._.Hunter v. McKinney_, 45 Ohio Op. 498, 101 N.E.2d 810 (Ohio C.C.P. 1951)

## RIGHT ISSUES FAMILIES ACT ("RIFA")

**VII.** The issues are more than academic here. Article I of the Constitution "exclusively grants the power of the purse to Congress ("*U.S. Const. art. I, Section 9, Cl 7, and U.S. Const. art. I, Section 8, Cl.*)  a)- *Moor v. County of Alameda,* 411 U.S. 693, 702, 703, 93 S.Ct. 1785, 1795, 1792, 36 L.Ed.2d 596 (1973). The Department of Homeland Security (DHS) and DHS's three components – the U.S. Citizenship and Immigration Services, U.S. Immigration and Customs Enforcement, and U.S. Customs and Border Protection – to uphold and defend U.S. immigration illegal laws. b)-["***TMPA***"], which, 1)-["***Mr.Clervrain***"] listed all of the agencies of the United States of America, they are part of the same conspiracy theory claims. *Rosa v. Cantrell,* 705 F.2d 1208, 1222 (10th Cir. 1982). That is for survival claim is predicated upon reliefs can be grants for damages during his lifetime. i)-["***S-95***"], to be adjudicated by each of the agencies upon received the claims, as well as for ii)-["***USCIS***"] to review this motion before 2)-["***E-filling"]*** them to the district courts across the country.3)-["***Motion for Humanitarian Reasons, Emergency Admittance Act (EA) by R Issues Claim Mandatory Act***"] (RICMA) As a result, much of the present dispute turns upon the interpretation of statutory provisions which the agencies are using to commit serious crimes against innocent people, which they believe embody broad delegations of spending authority by violated human rights.iii)-["***8 U.S.C. 1182 (a)(3)(B)(iii) and 28 U.S.C 509(B)***"] if the the term "engage in terrorist activity" is defined, *inter alia*, as incitement "to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity by informing

congress intent, how to define a)-["*__Integrity__*"], and arguing shall be considered one who is

supported their dependents are not different from what is meant to a be a b)-["*__Human__*"] being with

integrity allegations, and the Supreme Court has long protected, under substantive due process

principles, the integrity of the family unit and the right of parents to raise their children which the

defendants destroy. "The rights to conceive and to raise one's children have been deemed 'essential,'

'basic civil rights of man,' and 'rights far more precious . . . than property rights.' " _Stanley v. Illinois_,

405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). In additional, if the U.S. immigration

law prioritizes the value of keeping families together, it regard the scope of laws, congress has

clearly spoken by this one, c)-["*__Subsection 316.10 (b) (3) (I-II)__*"], ("*The Office of Immigration

Litigation, Appellate Section publishes the Immigration Litigation Bulletin, available at OIL-APP

Documents & Forms. This is a monthly publication intended to keep attorneys within the

Departments of Justice and Homeland Security apprised of litigation matters in the immigration

field.*"). i)-["  *__OIP Not Being Selective__*"] ("The Immigration Litigation Bulletin is an internal

publication covering immigration litigation matters. The publication keeps litigating attorneys

within the Departments of Justice and Homeland Security informed about immigration litigation

matters and increases  information sharing between the field offices and the Department of Justice

headquarters."). ii)-["*__https://www.justice.gov/civil/links__*"]._In Culombe v. Connecticut_, 367 U.S. 568,

573-576, 81 S.Ct. 1860, 1862-1865, 6 L.Ed.2d 1037 (1961), Mr. Justice Frankfurter stated: "This

practice has its manifest evils and dangers, or within the same views, they must expressed in this

publication, very necessarily reflect the views of the Office of Immigration Litigation or of the Department of Justice. iii)-[**"*Crimes Against Humanity*"**].The following issues of the Immigration Litigation Bulletin have been released pursuant to a Freedom Of Information Act request, so each of the agencies must release their records, from the a)-[**"*INA*"**'"], and the plaintiff obligation is clear on the faces of the statutes, and he had demonstrate that he has been willfully supported his children and wife as matter of laws before, they defendants exposed him to death, of one who has not failed to pay child support for the agency to exclude him from Naturalization procedures is questionable, of if he had violated the b)-[**"*Child Support Recovery Act*"**] ("CSRA"), if the circumstances of the denial his application was based upon i)-[**"*18 U.S.C. 228*"**], so the circumstances could have been different, or if The right to receive child support payments is a property right. *See, e.g., Hill v. Ibarra,* 954 F.2d 1516, 1524 (10th Cir. 1992) (holding that, under a judgment requiring the father to pay child support, the mother of the child "clearly does have a state-created property right to current child support"). ii)-[**"  *Next Illegal Law*"**], then we are asking the agencies if they were refer to *Children Created Property Rights, so mother of child, is being question, so the defendant questions. iii)-[*"UNCA"*] or state official question. Ex parte Linnell,* 484 So.2d 455, 457 (Ala. 1986), and the law is well-settled that an appellate courts across the country will consider on appeal the admission of evidence..*a)*-[**"*Section 228 - Failure to pay legal child support obligations*"**];

*(a) OFFENSE.-Any person who-(1) willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 1 year,*

*or is greater than $5,000;* **(2)** *travels in interstate or foreign commerce with the intent to evade a support obligation, if such obligation has remained unpaid for a period longer than 1 year, or is greater than $5,000; or* **(3)** *willfully fails to pay a support obligation with respect to a child who resides in another State, if such obligation has remained unpaid for a period longer than 2 years, or is greater than $10,000; shall be punished as provided in subsection (c).* **(b)** *PRESUMPTION.-The existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period.* **(c)** *PUNISHMENT.-The punishment for an offense under this section is-* **(1)** *in the case of a first offense under subsection (a)(1), a fine under this title, imprisonment for not more than 6 months, or both; and* **(2)** *in the case of an offense under paragraph (2) or (3) of subsection (a), or a second or subsequent offense under subsection (a)(1), a fine under this title, imprisonment for not more than 2 years, or both.* **(d)** *MANDATORY RESTITUTION.-Upon a conviction under this section, the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as it exists at the time of sentencing.* **(e)** *VENUE.-With respect to an offense under this section, an action may be inquired of and prosecuted in a district court of the United States for-* **(1)** *the district in which the child who is the subject of the support obligation involved resided during a period during which a person described in subsection (a) (referred to in this subsection as an "obliger") failed to meet that support obligation;* **(2)** *the district in which the obliger resided during a period described in paragraph (1); or* **(3)** *any other district*

*with jurisdiction otherwise provided for by law.* **(f)** *DEFINITIONS.-As used in this section-***(1)** *the term "Indian tribe" has the meaning given that term in section 102 of the Federally Recognized Indian Tribe List Act of 1994 ( 25 U.S.C. 479a ); 1***(2)** *the term "State" includes any State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and***(3)** *the term "support obligation" means any amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living.* <u>*Mitchell v. Folmar Assocs.*</u>, 854 So.2d 1115, 1116 (Ala. 2003).Therefore, we the defendants must address the father's arguments, If the agencies can not prove that during his Naturalization procedures he was qualified, or he knowingly violated a state court or administrative child support payment order and stating that because "the parameters of the legal duty to pay b)-["***Child Support***"] are clear from the face of the . . . order imposing c)-["***Support Obligation***"] the government need not demonstrate that the defendant knew that his conduct violated the Act. <u>*United States v. Mattice*</u>, 186 F.3d 219, 225-26 (2d Cir. 1999), If drawing all reasonable inference in the plaintiff favor, a reasonable fact finding could determine that his relationship with his wife contain to have existing marriage with her, and at the time of the d)-["***Oath of Allegiance***"] even at the time of long time of false imprisonment by the defendants, which the immigration was trying to use as toots to deport him based on the facts they think that his wife will not file appropriate forms, that is if the defendants can prove if the plaintiff had not  committed aggravated felony challenged the

defendants by which proving similarly claims i)-["***MOCMA***"], so we are committed to inform the public concerning agencies  abused of power, so the people must be protected, so the government failed to perform their duties as required, as such the cases where the is sufficient evidence of agreement to be married, and there is not generally objective evidence of the non proponent agreement during the interview by the officers and the agencies for conspired against him by committed crimes against his movement that has filed ii)-["***RAPA***"], if the agencies claimed that he is not eligible for naturalization because of his traffic violation, then, he is not qualify for non-aggravated felony regardless the evidence is substantial, and we can say that something is suspicious circumstance for additional evidence. iii)-["***NIBPA***"] The inquiry must therefore be whether the situations are so situated may be changed, with the burden of proving eligible and thus, the establishing his innocence by the defendants arbitrary action against mass deportation, therefore the plaintiff is suggesting that if the officers had done appropriate investigation, in particular, testimony from his wife, and the outcome of the procedures could have been different, as the court must relied heavily on the administrative records, or evidence of the non proponent willingness to sign  or accept without question legal document referring to a legitimate existing marriage when the time he applied for naturalization's. a)-["***8 C.F.R.316.10***"],** then we question them if overlaps a great deal with listed offenses applied to traffic violations, b)-["***8 U.S.C 1101 (f)***"] and adds actions such as failure to support dependents, polygamy, and having an extramarital affair which tended to destroy an existing marriage"). For example, _In re Swenson,_ 61 F. Supp. 376, 377 (D. Ore. 1945). As an

apposite drunk driving case, and  there, the applicant was "making moonshine" and also attempted to mislead the court contrary to the plaintiff is these cases, if the agencies failed to evaluate its employees negligence, and failed to grant him public ceremony by exposed him to serious crimes, which they are liable are matter of law for statutory damages, so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages -- yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award. It may be that the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions. If so, such a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an *in terrorem* effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award. *Cf. State Farm Mutual Auto. Ins. Co. v. Campbell,* 538 U.S. 408,   (Apr. 7, 2003). Moreover the courts must compel the evidence, that the couple had filed joint tax return,  to his case in question were the evidence is in the agency records for compelling additional facts that he had provided to the officer during the procedures, and they were legally married as matter of facts, , and spouses maintain a special status as single unit in many area of the law, and the action of husband and wife can no be separated from one another as concretely for unrelated c)-["***People***"] if they are filling joint federal tax returns are generally jointly and severally liable for the full amount of tax due on their combined income, then we asking if the

agencies must review evidence. i)-["**_26 U.S.C 6013_**"]. It is the opinion of these Courts that duress and coercion would at least provide a basis for mitigation in these cases, even though not expressly so provided in the statutes, as such tell us, that about congress intent regarding the terms to be applicable to all., ii)-["**_Community of Residence_**"], and illegal detention is not one of them, is define as those with the plaintiff situation is modified by the word iii)-["**_Proposed_**"] against terrorism activities, so d)-["**_USCIS_**"] must answer all claims, if lifetime damages is considered to be complex tasks, for adjudication all application filed, by the advocate public interest, which typically means something has been putted forward for consideration with average citizen. _Cheek v. United States_, 498 U.S. 192, 201, 112 L. Ed. 2d 617, 111 S. Ct. 604 (1991) ("In determining the plain meaning of the ambiguities of the statutory language, we are referring to the statute as a whole, were, however is the statutory is ambiguous,, the court must look beyond the text of the other indicia of congress intent , as one could have imagined, it is disputable that the plaintiff had met all requirement to be Naturalized citizen, or as one should have been considered as the average citizen of the community of residence, however,  he bears of establishing a clear a showing of immediate irreparable injury, as he also presenting to the courts for consider his controversy claims by compelling the facts, as he is indigent to show on his next motion for subpoena power by the various agencies across the country against Mass deportation and criminal enterprise. _United States v. Vandeberg_, 201 F.3d 805, 811 (6th Cir. 2000). As this court recently held, In general, "a defendant must have exerted control over at least one individual within a criminal organization, and as the plaintiff allegation reflect that

he was and continuously or subject to violation for the various constitutional rights, additionally, a showing of immediate irreparable harm is insufficient if the harm will occur in the indefinite future, and the law is well-established that a person acquires a legal i)-["***Domicile***"] when he is physically present in a location with the intent to remain for the indefinite future, and the agencies refused to act by ending the violation, if they is not to exclude that our reading of the statutes, not only with respect of congress intent, and to curb meritorious claims of Naturalization against illegal removal procedures, but ensure meritorious lawsuits are not septs away in the process. *Foucha* v. *Louisiana*, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 112 S. Ct. 1780 (1992). "Freedom from bodily restraint" means more than freedom from handcuffs, straitjackets, or detention cells. A person's core liberty interest is also implicated when he is confined in a prison, a mental hospital, or some other form of custodial institution, even if the conditions of confinement are liberal. This is clear beyond , at least  where adults are concerned. "In the substantive due process analysis, it is the State's affirmative act of restraining the plaintiff's freedom to act on his own behalf -- through incarceration, institutionalization, or other similar restraint of personal liberty -- which is the 'deprivation of liberty' triggering the protections of the Due Process Clause . . . ." *DeShaney* v. *Winnebago County Dept. of Social Services*, 489 U.S. 189, 200, 103 L. Ed. 2d 249, 109 S. Ct. 998 (1989). Thus, for the same reasons that the plain language of the Acts from the ("INA") can not be read to create an implied private right action, and it should not be read to create or irrational wholly arbitrary acts, and racial classification,..*Pell* v. *Procunier*, 417 U.S. 817, 822 (1974) ("*[A] prison inmate retains*

*those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system*"). This is because certain privileges and rights must necessarily be limited in the prison context. See *O'Lone* v. *Estate of Shabazz,* 482 U.S. 342, 348 (1987) ii)-["***Unjust Classification Punitive Ac***t"] (UCPA). as opposed to congress intent is within the word a)-[" ***Resident"***] for those who had evidence against the agencies actions, that because they are liable by b)-["***Contribution***"], and failed to protect the communities when the advocate asked them right questions. c)-["***Community***"]  should had or should have had protected against terrorism Activities by the defendants mental cruelty.iii)-["***The Anti-Terrorism and Effective Death Penalty Act of 1996 (***"***Anti-Terrorism Act***"]" or ("AEDPA"), if the defendants classified everyone regardless if they committed their first offense as serious criminal, then if the statutory phrase "terrorist organization" is a term of art, defined by congress as "an organization designated as a terrorist organization. iv)-["***8 U.S.C. 1189 (a) (1)***"]  which states in relevant part: *If a designation . . . has become effective . . . a defendant in a criminal action or an alien in a removal proceeding shall not be permitted to raise any question concerning the validity of the issuance of such designation or redesignation as a defense or an objection at any trial or hearing..*Consolidated Rail Corporation* v. *Gottshall,* 512 U.S. 532, 557-558 (1994). In the prison context, when the government's power is at its apex, we think that searching judicial review of racial classifications is necessary to guard against invidious discrimination, or if that the designated terrorist organization is not really terrorist at all. No doubt Congress was well aware that some might claim that "one man's

terrorist is another man's freedom fighter.*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State* 32 F.4th 1363 (11th Cir. 2022).a)-["***NATA***"] Congress clearly chose to delegate policy making authority to the President and Department of State with respect to designation of terrorist organizations, and to keep such policy-making authority out of the hands of United States Attorneys and juries, as result for liberally policy promulgated the Acts proposed against broad classification, if the decision by the agencies , generally not kept within the strict dictionary definition of the meaning of the term b)-["***Resident***"], which defined by plain meaning of facts, *Merriam-Webster Dictionary*, (4th Ed. 2002), as 2). The fact of the status of living or staying in place while working, or going to school, or carryout officials duty, etc, esp long enough for certain rights and privileges, and it they are based upon congress intent to provide the term resident or primary resident equate with domicile, against mass deportation, as a person may have one or more residents, but  can only have have one primary resident. *Nevada Dept. of Human Resources* v. *Hibbs*, 538 U. S. 721, 736, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003). Correspondingly, such laws may disserve men who exercise responsibility for raising their children, as such it is further stronger indicia of congress intent on this subject consistent for close continuation for parental role, is not obviously indented by the regulations to be lasted. c)-["***8.C.F.R 316. 10 (b) (3) (ii)***"], therefore the plaintiff application for naturalization should have been evaluated on a case by case basis taking into accounts by the above element describes, as the elements enumerated and the standard of the average citizen in the community of his residency. *Repouille v. United States*, 165 F.2d 152, (2nd Cir 1947). As discussed

earlier, congress indented that those who had contributed to the community shall have evaluated as one of integrity person, and should be taken into account …..the standard of average citizen, in fact a congress used the word 1)-["***Community***"] technically feasible, and economically viable , as one that contributed as as the standard for 2)-["***Permanent***"] against removal or such as person made substantial contribution to enhance the warfare of the his community, that the plaintiff is consistent with congress intent as a person with integrity, in such case if the plaintiff application was denied for other reasons, or because of social disadvantage group that is a different issues which must be address to the agencies apartheid, and for the courts across the country, to evaluate the evidence because he is a native or a former citizen of Republic of Haiti, and this is a necessary mechanism to preserve congress intent underlying the defendants action by exposed him to criminal activities because of his national origin, or in violation of facially neutral instructions from their superiors. Thus, it sees no need to address the independent question whether such disparate treatment would also violate the Constitution, and invokes *Ashwander* v. *TVA*, 297 U.S. 288, 347 (1936). Of course if whether or he is a member of a preemptively socially disadvantage, then he must establish social disadvantage by a preponderance of the evidence by considering the condition of economic of Haiti, a country that that he left, for most of his entire life, with substantial disruption of living condition based on the environment disaster, within that country, specially the devastation resulting from a serious of Earthquake, tropical stroms, or volcanism eruption and congress understood that such individual such, if  the plaintiff could have been subject to economic disadvantage because of his

former country, racial and ethic, prejudice, or culture bias because of his identity of a member of

group that is identify as i)-["**_African_**"] is a matter of facts to question if the ("MDC) restrictions, if

that is not for the same subject matter without justification, and if  the agency is "engaged in the

unlawful exclusion, by denied based upon racial discrimination, so they answer naturalization

proceeding in violation of  ii)-["**_8 U.S.C. 1422"; 42 U.S.C 1981_**]. Moreover, If congress intent is

clear , we would not need to engage in the special-factor analysis at all, because the statutes does not

impose to denial social disadvantage to any individual regardless of his Nationality or not or

because of his race, or National Origin, and it has been determined that in the United States

deprivation of has been socially and or economically disadvantage for the basis of determining facts

if there is clear evidence that the plaintiff deprived of the opportunity to establish that he met all

requirement for his Naturalization. _Kungys v. United States_, 485 U.S. 759, 779, 99 L. Ed. 2d 839,

108 S. Ct. 1537 (1988). The question for the courts now if whether or not the restrictions against the

plaintiff give rise to an inference of discrimination or retaliation apply with equal force to the

advocate rights under iii)-["**_42 U.S.C 2000d_**"] , It prohibits discrimination based on race, color, or

national origin by entities receiving federal funds. "To establish [such a] claim, a plaintiff must

show (1) that the defendant discriminated against him on the basis of race [or national origin], (2)

that the discrimination was intentional, and (3) that the discrimination was a 'substantial' or

'motivating factor' for the defendant's actions, by the same enable laws, so the courts will be able to

practice new laws, a)-["**_Decipher Issues Freedom Treatment Act_**"] ("DIFTA"), Thus congress has

provided clear, and intelligible direction regarding who can be deem suffered the effect of discrimination practice for the purpose of the policies, regulations and the statutes in question, and what is more ?, congress can compete on an equal basis in his Naturalization, against removal by agencies actions, as well as the restrictions for him to litigate his cases against mass deportation. *Hernandez v. Texas*, 347 U.S. 475, 479, 74 S. Ct. 667, 671, 98 L. Ed. 866 (1954). This courts must examined the purpose, b)-["***8.C.F.R 316.10 (2) (b) (v)"]***.where the public interest lies.' " *Nken v. Holder* , 556 U.S. 418, 425–26, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). In that scenario, the stay may be "granted upon a lesser showing of a 'substantial case on the merits, that is what the agencies fear, so their deportation attempted,c)-["***8 C.F.R 316. 10 (c) (1)***"] ("*Noting that a delegation need not to be tested in isolation*").1)-["***Notice for Release National Records***"] *United States v. Texas Education Agency*, 467 F.2d 848, 852 (5th Cir. 1972). Although ethnic segregation was not mandated by law, as it is segregation by classification of deportable Alien, that is the factual background and the statutory context, in addition to the statutes themselves, as the plaintiff mentioned before the the irrational conducts by the Officer couple with the denied of relief from his removal procedures and excluding to litigate his cases to federal courts, if the agencies conferred unlimited discretion to decide whether racial or ethic prejudice and culture bias has occurred with respect to his Naturalization application, and it is simply correct in the cases because the agencies single him out the concept of equal protection, however, may in rare cases permit a state to single out a class of persons, such as ineligible aliens, for distinctive treatment. *McCleskey v. Kemp*, 481

U.S. 279, 292, 95 L. Ed. 2d 262, 107 S. Ct. 1756 (1987). Discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group[.]" *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988). The crucial test in these exceptional instances is whether there is a rational basis for the particular kind of discrimination involved with respect to deny his application for his 2)-["***Traffic Violation(s)***"], and it is simply correct in this case because the agency interpretation of the statutes or regulations in question, these courts must agree with the sixth circuit interpretation under *Medina*, by analyzing of the issues raised by the plaintiff here, many of which align with this case for argumentation, *Medina*, 65 F. Supp.3d at 429-3 , If Congress had desired, it could have provided that a person subject to an order of deportation shall not be eligible for naturalization, and the fact is that congress has taken no such action although courts have in the past admitted persons to citizenship subject to deportation, assuming aguendo based on the denial by the agencies; or that 1) congress intended different meaning for the words 3)-["***Support Dependent***"] and existing 4)-["***Marriage***"] as individual that is proving that he is person of conducts,5)-["***Integrity***"] from lacking of moral character, if the plaintiff interpretation is correct, there would no reason for sub-section *316.10 (b) (3) (iii)*, to separate , or refer to eligibility as a threshold requirement in the subsection *(b) (3) (i); (ii)* and the failure to maintain Naturalization as bar eligibility in sub-section *(b) (3) (iii)* addresses only to bar to the Habitual Drunkard by excluding to public ceremony or his Naturalization application, or if interpretation

conflict with portion of the statutes as congress used the word i)-["**OR**"] between them to exempt other category of applications from sub-section *(b) (3) (i) (ii)* , such exemption established for those covered by charges of driving without licence suspense offenders, and confined to a panel institution for only ii)-["***2 days***"] pursuant to his convictions, and  the courts should apply <u>United States</u> v. <u>Campos-Serrano</u>, 404 U.S. 293, 294, n. 2 (1971). In addition, as a collateral consequence of the current  convictions, This interpretation is consisting with congress intent, while this courts must echo other federal courts across the country, that are part of the controversies, that is because the agencies failure, so the  a)-["***USCIS***"'], by interpretation is created absolute result in this particular controversies cases. b)-["***Concern Uniform Treatments   Act***"] ("CUTA").We are particularly reluctant to find implied authority to inquire into and "punish" private consensual sexual conduct in light of the fact that Congress has removed from Title 8 the three provisions that had previously penalized certain forms of that activity.<u>Abrahamson v. Illinois Department of Professional</u> <u>Regulation</u> 153 Ill. 2d 76, **90** (Ill. 1992). The primary rule of statutory interpretation is that a court should ascertain and give effect to the intention of the legislature. The legislative intent should be sought primarily from the language used in the statute. ( *Certain* <u>Taxpayers v. Sheahen</u> (1970), 45 Ill.2d 75, 84.) The statute should be evaluated as a whole; each provision should be construed in connection with every other section. ( <u>Miller v. Department of Registration Education</u> (1979), 75 Ill.2d 76, 81.)  That is a i)-["***Notice for All States Agencies***"]  "Where the language of the act is certain and unambiguous the only legitimate function of the courts is to enforce the law as enacted

by the legislature. ii)-["**_TECTA_**"].The following are state education agencies as identified by the Council of Chief State School Officers.a)-["**_National Association of State Boards of Education_**] (**NASBE**) ("*The association's principal objectives, stated in the bylaws, are to strengthen state leadership in education policy-making, promote excellence in the education of all students, advocate equality of access to educational opportunity, and assure responsible lay governance of public education*.").*Students for Fair Admissions, Inc. v. University of North Carolina* 567 F. Supp. 3d 580 (M.D.N.C. 2021).To support its claim that the education system's use of race in its' admissions process.a)-["**_Mr.Clervrain_**'] is questioning the records, so public importance is invoked. b)-["**_State Education Agencies_**"] (SEAs). ("*The opposite of standardized testing is non-standardized testing, in which either significantly different tests are given to different test takers, or the same test is assigned under significantly different conditions (e.g., one group is permitted far less time to complete the test than the next group) or evaluated differently (e.g., the same answer is counted right for one student, but wrong for another student*")..H.R. Rep. No. 95-1137, p. 49, (1978); S. Rep. No. 95-856, p. 27 (1978). This confusion, Congress observed by existing laws. d)-["**_8.C.F.R 101 (f) (2)_**"] In 1981 Congress repealed the statutory subsection that provided that adultery disqualified an applicant from being found to possess good moral character.e)-["**_Pub. L. 97-116, section 2(c) Dec. 29, 1981, 95 Stat. 1611_**"], so all other laws must repealing, and enforced..i)-["**_8 U.S.C. 1101 (f) (2)_**"]. More significant, Congress has eliminated the statutory ground for exclusion based on "sexual deviancy". Section 601 of the Immigration Reform

Act of 1990, Pub. L. 101-649, Nov. 29, 1990, 104 Stat. 4978, 5067 ,codified at so they are additional questions. ii)-["**_8 U.S.C. 1182(a)_**"],the legislative history of the Act described the eliminated ground as "being out of step with current notions of privacy and personal dignity." _House Rep. No. 723(I), 101st Cong., 2d Sess., p. 56, 1990 U.S.C.C.A.N. 6736_. The Immigration Reform Act also removed polygamy as a ground of exclusion. As a whole, these changes evidence Congress's intent that private sexual conduct  among consenting adults should no longer be considered a legitimate basis for making immigration decisions, as a result, the repeal of that exception in the statutes in 1981 implicitly achieved that result. It seems to us, however, that the 1981 exception is best explained as merely confirming the limited scope of the new review procedures for declaration that the statute is unconditional by interfering with individual private life for making decision or by enforcing arbitrary enforcement. _Papachristou v. City of Jacksonville_, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). As stated to eloquently in Medina, as it equally applicable here to interpret the statutes in the manner suggested by congress intent, for the courts would have to find that despite allowing beneficiaries to Naturalization not exceed six months when committed certain crimes that was confine to a panel institution, as congress indented that such as the plaintiff seems to be the exact type of person that it would have in mind to allow Naturalization regardless if he is in removal procedures or not, he has been in the united states for about the entire of his life, he has root here, his wife and minor children are American Citizen, and he is a person with integrity, contributed member of society, such as denial had negative effect of his family

United states Citizens, on family well-being, not to the individual application of existing procedural regulations. *Exec. Order 12606 of Sept. 9, 1987 (52 Fed.Reg. 34188)*. Moreover, while Congress and the courts have recognized family unification as a factor in the immigration field, to apply it in the way suggested by the petitioner would prohibit deportation of any alien with a spouse or children who have a different status, and his 's family unification argument has merits by relying on *Delgadillo v. Carmichael*, 332 U.S. 388 (1947). Although the present cases for controversy for review does  contain an ineffective assistance of counsel argument, and the allegations, likewise did assert ineffective assistance as an explanation of his counsel's failure to file a timely application (in all likelihood because the same counsel has been violated his due process pursuant to the fifth amendment or egregious circumstances, *Magallanes-Damian v. INS*, 783 F.2d 931, 934 (9th Cir. 1986). We are disturbed by the 1)-["***USCIS***"] incessant and injudicious opposition in this like this, where the only purpose seems to be a general policy for the same of racial classification as abuse of power by the agencies, and it employees acted contrary to the above statutes and congress intent,, the courts and the agencies themselves should conclude that it decision was arbitrary and capricious and they should reverse the decision and remands to 2)-["***USCIS***"] for his declaration for public ceremony, and entitle for Naturalization consistent with congress intent . *Miller* v. *French*, 530 U.S. 327, 336, 147 L. Ed. 2d 326, 120 S. Ct. 2246 (2000). The crimes against humanity are recognized as violation of international law, that occurred in the circumstances presenting or as result of widespread or systematic attack against civilian populations, were as here, the plaintiff has sufficient

alleged claims for iii)-["**_Torture_**"], lifetime damages, so conspiracy claims will supported by additional actions.  iv)-["**_Kidnapped_**"] and arbitrary action, and detention, in this case , it is disputable that the plaintiff missed the a)-["**_120 days deadline_**"] caused by his Attorney negligence that should be applied for equitable tolling doctrine to extent his filling period for his public ceremony, and this doctrine provides that exceptional circumstances, and the absent of specific and circumstantial evidence bearing on the plaintiff circumstances ends the aspect of our inquiry has the burden of showing that a clear probability for reliefs loom because or even under a disfavored group analysis, and he has the burden to establish sufficient evidence of individual risk. _Pulisir v. Mukasey_, 524 F.3d 302, 307-08 (1st Cir. 2008) (describing it as a matter of common sense that large social, culture and political force can lend valuable context to the particular incidents and thus, can influence the weight that a fact finding may assigned to those incidents. In _Lee v.Ascroft_, 216 F.Supp. 2d 51 (E.D.N.Y 2002), if the court ruled that a person can demonstrated Permanent allegiance to the United States, and Attain National Status by applying for his Citizenship with objective demonstration of allegiance by deprived by the agencies actions, and the court found that it has absolute jurisdiction to consider his Citizenship claim, and he must entertain that claim before under 1252 (d) (1) can be applied, and further said that we may not decide the merits, If Ogundoju is, as he claims, actually a United States citizen, the immigration laws -- including their requirement of administrative exhaustion -- do not apply to him. Other circuit courts of appeal have thus held that a citizenship claim can be heard without regard to whether the person bringing the claim has

exhausted administrative remedies. *See, e.g., Poole v. Mukasey,* 522 F.3d 259, 264 (2d Cir. 2008).

Moreover, as the plaintiff recognize, there remain a genuine issue of material of facts, which must

be resolved by the district court in the first instance, therefore, this courts should grant the plaintiff

motions and evaluate the evidence to question public ceremony and transfer the cases for

evidentiary hearing on the Nationality claim where the plaintiff is planning to reside with his family,

*Theagene v. Gonzales,* 411 F.3d 1107, 1110 (9th Cir. 2005); The term National came into general

use when the Unite States acquired territories outside its continental limit, and accord inhabitant as a

status that was not equivalent to citizenship, but nonetheless conferred them certain rights and

responsibility as a National of the United States, and the Modern Term is address for the Enacting of

the proposed laws within congress intent. b)-["***8 U.S.C 1448***"], it provides, ("*Address to newly*

*naturalized citizens Either at the time of the rendition of the decree of naturalization or at such*

*other time as the judge may fix, the judge or someone designated by him shall address the newly*

*naturalized citizen upon the form and genius of our Government and the privileges and*

*responsibilities of citizenship; it being the intent and purpose of this section to enlist the aid of the*

*judiciary, in cooperation with civil and educational authorities, and patriotic organizations in a*

*continuous effort to dignify and emphasize the significance of citizenship.").Klamath-Siskiyou v.*

*Bureau of Land* 387 F.3d 989 (9th Cir. 2004). That is a character of the same man who does not

believe con Crimes, that is  the characteristics of the class such as to provide a rational justification

for the difference in treatment for long term residency, or personal claims or beliefs that one owes

allegiance are clearly insufficient stand alone, which is contrary to the case, if the plaintiff is

relaying his claims based upon 1) congressional intent, 2 ) Arbitrary Enforcement by the agencies ,

and 3) ineffective assistance of counsel, for instance, In *United States v. Jasso,* 587 F.3d 706,

714 (5th Cir. 2009).As the fifth Circuit mentioned, ("we are facing similar error and refused to

reverse in both cases we noted that there was no evidence that the district court could believed the

bottom of any range to be appropriate). At the minimum for a person to claim to be National in

removal procedures, he must demonstrate he completed the Naturalization process, to which the

agencies alleged that his traffic violation was excluded him from public ceremony, or he failed to

established his reformation of character, more specifically, his conduct and act prior tot he statutory

period may be consider for the purpose of the moral character determination, if the conducts during

the statutory period does effect that he has  been reform from early period, or if the earlier conducts

and acts appears relaxants to a determination of his moral character for enacting of this wonderful to

promote educations.c)-["***Treament Movement Protective Act***"] ("TMPA"). if the evidence of his

applications for himself, so  the first track, should  be process, in  step of the process of acquiring

fundamental rights as 1)-["***Citizenship***"], and 2)-["***Public Ceremony***"], that is the injuries in facts as

a result the d)-["***USCIS***"] historical events, violations, so by the agencies determination that they

failed to evaluate his values, and  prove his moral character is contradicting with the evidence

presenting or acted in arbitrary actions, and this courts should have jurisdiction to review his claims

by declaring that section i)-["***1101 (f) of Title 8***"] must be declared unconstitutional, and he has

prevail that on his equal protection claim whether considered under rational basis review or intermediate scrutiny because he has carried his burden to show that the agencies action is not closely related to the important government goals for excluding individuals with traffic violations, moreover, were specific conducts does not preclude a finding of good moral character under one of the Enumerated categories under the statutes for repeal, and these cases represent the narrow circumstances in which he is asking for ii)-["**_Repeals"_**] the laws will be recognized, however, or broadly speaking,[i]t is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum, unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all. _Traynor v. Turnage,_ 485 U.S. 535, 548-49, 108 S. Ct. 1372, 99 L. Ed. 2d 618 (1988). Of course the defendants should not tried to escape from the alleged allegation against them for torture the plaintiff who appears met the requirement of iii)-["**_National Status_**"] or if he is victimized by iv)-["**_De facto Segregation_**"] and if the requirement for public ceremony is met, what is more ? to call him a National that is a alternative relief only apply when in removal procedures against the defendants for violating criminal laws; and these courts should not ruled against the plaintiff because that was his intention, for the same purpose will compel them, so  that is additional for  enacting of the e)-["**_Comprehensive Judicial Reform Act_**"] ("CJRA"), of course, it will benefits against Mass deportation, and genocide , who might applied for their citizenship, and first time

offenders by giving them the opportunity for a Second Chance Act ("SCA"), in their first conviction, if they are all 1)-["***First Time Offenders***"] ("FTO").*Churchill County v. Norton,* 276 F.3d 1060, 1071 (9th Cir. 2001). i)-["***RAPA***"]. The agency's actions, findings, and conclusions will be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with  follow proper law now presenting." *Ocean Advocates v. U.S. Army Corps of Eng'rs,* 361 F.3d 1108, 1118 (9th Cir. 2004). 2)-["***Non-Violent Offenders***"] (NVO), Indeed, required a second chance under *Griffiths,* 413 U.S. at 719 if the the plaintiffs first advance arguments based on every conceivable level of Equal Protection analysis, contending that: (1) under *In re Griffiths,* to begin was a permanent resident individual, instead of ii)-["***Alien***"] thus far, the Supreme Court has reviewed with strict scrutiny, then we asking state  official for their performances,  only state laws affecting 3)-["***Permanent Resident Individuals***"] ("PRI"). As the highest level of Equal Protection analysis, strict scrutiny is employed when a governmental body creates a classification that burdens a fundamental right 24 or targets a suspect class. *Regents of University of California v. Bakke*, 438 U.S. 265, 357, 98 S. Ct. 2733, 2782, 57 L. Ed. 2d 750 (1978). This proposal law is controlling where, as here a person Nationality status to determine if whether he can enjoy the rights and privileges of United States National against the agencies arbitrary actions and to avoid illegal procedures or deportation in certain circumstances, these courts must interpret this requests, as to exclude him from further immigrant court procedures, or against administrative crimes, or at least to remove the function from the Attorney General with Broad favorable discretion to discriminate, which also

codify into the ("INA"). As severity to mitigate illegal contracts by the defendants with the various private prisons, 4)-["***Mass Deportation Prohibition Act***"] ("MDP"), or by separate family by wrongful means *See, e.g*., _Kathryn A. Watts, Adapting to Administrative Law's Erie Doctrine_, 101 NW. U. L. REV. 997, 1000 n.19 (2007). That is substantive for purpose of conflict laws, and those claims were premature when he was in their custody, so now the defendants effected him by  caused him financial burdens, so law library a)- ["***Corporal Punishment***"] when he was in custody of the agencies interrogation technique b)-["***ICE***"], so their operation, also involved delay process, by way of illegal appeal process, at c)-["***MDC***"]  or any other facilities, and ground will benefit the others, he representing from all requirement mandated, or excluding from ("MDP") by way or if  the evidence for immediate family petition, and the agencies prolong process is another issues that should also be classified. e)-["***Criminal Enterprise Practice***"] (CEP), those claims are for controversial allegations, it is undisputed that the plaintiff entitle to reliefs even without a visa petition by his wife, or the defendants f)- ["***Attempted***"] of extortion, so that is  for the same requirement of 1)-["***Rule 7(c)(1)***"], or  if the same  Federal Rules of Criminal Procedure that an indictment be a plain should be applied to all, concise, and definite written statement of the essential facts constituting the offense charged, as quoted by Justice _Scalia, J_., dissenting, expressed the view that (1) when the government indicts a defendant for attempt to commit a crime, it must be alleged that the defendant (a) had the intent to commit the crime, and (b) took some action toward its commission. At common law, the attempt to commit a crime was itself a crime if the perpetrator not

only intended to commit the completed offense, but also performed some open deed tending to the execution of his intention, we are refereeing the practice of illegal detention, then if the agencies was forced him to filed  2)-[“***Form I-130***”], that is not his choice, but he was forced by the judges against deportation, so he was placed in situation to make no choices, or if not he will be deported by the officials filed at i)-[“USCIS”] that is  because  he is against the agencies bureaucracy practice, so the evidence must be compelled, and the third circuit has explained that Section 245 of the (INA) required the activist or ii)-[“***The Ant***”] to prove the defendants objective from the alleged conspiracy which is against family values, by illegal detention, of course, he is also challenging the six restrictive factors required for protection against mass deportation or moral wrong by the defendants actions, if an individual with immediate family committed their first offense, and this request is to protect the Amrican value against criminal enterprise, or whom their parent being held in removal procedures by means of  a)-[“***De June Segregation***”] as another objective by the defendants to destroy family unity, or their children can end up being in prison for the same purpose for accomplishing their goals, or criminal activities alleged in this motions, but excluded them to patriotism values in accordance with congress intent, and the language of the b)-[“***INA***’] itself and they are from the favorable discretion authorized them to committed serious criminal activities by the agencies actions; 1) The statutory requirement of 1)-[“***Inspection***”] met  in all circumstances, so the advocate is questioning with the same laws, so he is proving that he is very competent, so that they evaluate all applications for 2)-[“***Admission***”],, or for Admission on Motion—Years of Practice

and Definition of Practice a)-["***Jurisdiction***"].So the courts must also be mindful to defer to agency expertise, particularly with respect to scientific matters within the purview of the agency performance. *See Anderson v. Evans,* 371 F.3d 475, 489 (9th Cir. 2004). What does  definition of practice for purposes of admission on motion include? Law teaching, gov't agency, military, in-house corporate, judicial court of record. b)-["***PIRPA***"] ("All Kansas-licensed attorneys who are permitted to practice law under Supreme Court Rule 208(a) must electronically file documents in state courts.") c)-["***Admission on motion fee $1,250***"],** so all fees must be waived, to be included all universities he appllied, to review his motions, particularly this one**,**  by applying to Washburn Law With a GRE Score, if the advocate to have his 1)-["***Honorary Degree***"],  who wish to apply for admission to Washburn Law without a 2)-["***GRE***"] score should not excluded, to be  follow the procedure described for d)-["***First Training Advocate Act***"] (FTA) ("*In addition to steps 1 and 2, the applicant should also complete the third step of requesting that ETS send the applicant's GRE score(s) to Washburn Law. See frequently asked questions below.*").Neighbors of Cuddy Mountain v. United States Forest Serv., 137 F.3d 1372, 1379-80 (9th Cir. 1998)). The analysis "must be more than perfunctory; it must provide a useful analysis of the cumulative impacts of past, present, and future projects. i)-["***https://www.ets.org/praxis/site.html***"] (*The Praxis tests measure a teacher candidate's knowledge and subject-specific content knowledge needed for teaching. Each Praxis assessment reflects what educators across the United States believe to be important for new teachers. ii)-["**eFiling Login**"*], so If he he is litigant ins the state of  Kansas, so as the advocate

to inform public opinions, so he does not to be attorney and you have completed registration process by electronically-File 1)-["***Admission On Motion"].***Self-represented parties file paper documents, so they must be registered.. 2)-["***NATA***"], **so if** Kansas eFiling Rules require Kansas-licensed attorneys permitted to practice law under Supreme Court Rule 206 must electronically file documents in state courts. a)-["***Notice for Question of laws***"].*Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) ("*'[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary*.)' (quoting *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008). b)-["***Non-Lawyers Educative Stakeholders Act***"] **("NESA")** if the Supreme Court Rule 122A permits certain nonlawyer, external stakeholders to electronically file documents, then we asking if the courts must followed i)-["***NESA***"]. to be Electronic filing by certain advocate, is different than what they call 1)-["***Non-Lawyer***"], external stakeholders is required if the court is on the Kansas eCourt case management system.ii)-["***RETODA***"], that is law presenting to each courts concerning discrimination's, so if the court is not operating on the Kansas eCourt case management system, e- filing is mandatory.iii)-["***Kansas Supreme Court***"].As in *Kleypas*, the Kansas Supreme Court clearly rested its decision here on the Eighth and Fourteenth Amendments to the United States Constitution. We, therefore, have jurisdiction to review its decision *Michigan* v. *Long*, 463 U. S. 1032, 1040-1041 (1983)..a)-["***Kansas eCourt Courts***"] lists which courts are operating on the Kansas eCourt case management system. b)-["***UTTA***"], If he is eligible to litigate his cases, then

what is the reason he can not  efile under one of the following categories, request a Kansas Court

eFiling account using the i)-["***Rule 122A Request Form***"]: ("*Supreme Court Rule 122A permits*

*certain non-lawyer external stakeholders to electronically file documents if the district court is not*

*operating under the Kansas eCourt centralized case management system (CCMS).  Once the district*

*is operating under the CCMS, use of electronic filing is required.")*.Na Land Co. v. State 624

S.W.3d 671, **674** (Tex. App. 2021).If the Texas courts have interpreted rules liberally and acted with

leniency." *Tex. G & S Invs., Inc. v. Constellation Newenergy, Inc.* , 459 S.W.3d 252, 257 (Tex.

App.—Houston [14th Dist.] 2015, no pet.) ; *see also* Harris (Tex.) County Ct. Loc. R. 7.2 (providing

that rules should be "liberally construed so as to avoid undue prejudice to any person on account of

using the electronic filing system"). ii)-["***UFTA***"], so before development process, each of advocate

should be having access, to all courts system, to be included, states,, federal all other courts, not to

precluded supreme courts, that is Before account request is processed, by  reading, accept, and agree

to abide by the terms of use for all Courts eFiling. The terms of use include a requirement that you

follow technical standards set out in Supreme Court Administrative Order No. 268 for filing and

transmitting electronic motions.a)-["***Tex. R. Civ. P. 21***"] that is for his  account to be approved by

each courts, or agencies across the country,  that are part of the same controversies, they must sent

an email to him as confirmation, as well as for  his assistants, that explains how to log in for the first

time to file their motions, so  the email will include several useful documents, including an

explanation of rules and technical standards, and a list of documents currently accepted by all

Kansas Courts eFiling. So questions, experience advocate process with the registration process became mandatory by b)-["***efilingadministrator@kscourts.org***"]. that what we call self regulations with the same rules,.3)-["***Eligibility***"].for vacutur of his criminal conviction finding from his record if the violations clear, so that is likely to accelerate the public for his 's eligibility for his reputations, and publications that is upon reliefs can be granted. <u>Bostic v. Carlson,</u> 884 F.2d 1267, 1269 (9th Cir. 1989). 4)-["***"Immigrant Visa"***"].<u>Drax v. Reno</u>, 338 F.3d 98, 114 (2d Cir. 2003). "Within the preference categories, immigrant visas are issued on a first-come-first-served basis." <u>Kooritzky v. Reich</u>, 17 F.3d 1509, 1511 (D.C. Cir. 1994),Where, as here, the advocate, on whose behalf a visa petition was filed by representative, so he is asking for compelling the agencies with same requests filed.5)-["***Immediate Availability***"], This petition for review turns on that issue — whether immigrant visas were immediately available, so we asking the agencies to review all of the FOIA request by adjudicated . 6)-["***Visa Proces***"], and 2) he must be very competent by proving his burden in all circumstances.a) ["***Very Convincing***"], or that if for the Attorney general to across the country to exercise b)-[ ***Favorable Discretions***"] they are ambiguities which that required majority opinion against the Attorney General broad function <u>Ameeriar v. Immigration and Naturalization Service</u>, 438 F.2d 1028, 1030 (3d Cir. 1971). As congress intent is to make prompt determination on family unity, so nothing excluded applications to be filed to the FOIA requests, specifically for the i)-["***USCIS***"], among others are engaged by withheld individuals, that committed their first offenses with evidence of family ties is subject to review under the application

laws, or particularly this one. ii)-["**_APA_**"] as abused of discretion, specifically, the plaintiff is alleging that the practice by the defendants and policies that are in violation of the fifth amendment of the United stated constitution,, it provide that: "No person shall...be deprived of life, liberty, or property, without due process of law, U.S Const, Amend V, the first inquire in every due process challenge is if whether the plaintiff has been deprived of a protected interest or liberty, or property only after finding the deportation of a protected interest do we look to see if the governments procedures comport with due process . _American Mfrs. Mut. Ins. Co. v. Sullivan_, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999). If the Supreme Court articulated a balancing test for deciding what procedures are required when there has been a deprivation of liberty and due process is required, and this test generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. _Mathews v. Eldridge_, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). This history was known to be that the plaintiff is being framed or class of one, and no doubt to confirm the majority opinion if his traffic violation can take away his liberty were endemic to undivided, uncontrolled power, and the agencies inherent destruct of governmental power was the driving force behind the constitutional violations among their independent branches by the assumption from failure to

recognize the inappreciable of  the principal of statutory construction invoked, as well as the failure to appreciate the differences in statutory purposes.  *Louisiana Environmental Action Network v. EPA*, 382 F.3d 575, 582 (5th Cir. 2004). The scope of the court's inquiry is limited to determining "whether the agency action bears a rational relationship to the statutory purposes, and if *whether there is*  substantial evidence in the record to support it, aside from  its characterization of the right at issues, as the fundamental rights to liberty, or failure to recognize special circumstances of this cases and the factors should influence our analysis of constitutionality of the challenged  all regulations involved here.,iii)-["***The Real ID Act, Pub. L. 109-13 Div. B, Title II, section 2101-2107***"] (May 11, 2005) Thus, say by the plaintiffs, the regulations are impermissible using the Real ID act as an "after-the-fact justification" for the administrative regulations at issue in this cases, and the court analysis should focus on the immigration context of this by applying the principal of the statutory construction; that is for this court is to determine congress intent beginning with the language, if the language are iv)-["***Ambiguous***"], and they must look to the legislative history and underlying the public policies of the statutes, this court must read the words of the statutory context, and with a view to the plaice of the statutory scheme. *Davis* v. *Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989).  As these cases demonstrate, and the express of purpose of section 101 (a) (22) (B) is very broad, or that make the standard unconstitutionally vague. In fact, this court routinely uses the exceptional circumstance standard when deciding whether to excuse a litigant's failure to do something, such as, for example, the failure to preserve an issue on

appeal. *E.g. United States v. Archibald,* 589 F.3d 289, 296 (6th Cir. 2009). For instance citizen is not sine quo Nationality claims, or for a person such as the plaintiff who thought not a citizen of the United States, but entitle to a)-["***Public Ceremony***"] with respect being eligible for citizenship, or who had filed a b)-["***Declaration of Intent***"] to become a citizen of the United states, or and application for citizen should be excluded  them to removal procedures, that is because congress intent is clear in the subject matters for such declaration is matter for the courts,and the agencies to make publications. 1)-["***U.S Citizen***"].*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).2)-["***U.S National***"].That is for Freedom of personal choice in matters of commitment and family life is, of course, one of the liberties protected by the Due Process Clause. *See Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-640, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).3)-["***National Status***"], they certainly express they somewhat opaque, those terms and expectation are gear in conjunction of the circumstances presenting or to reduce the agencies illegal actions or limited arbitrary or abusive practice while to ensure that certain criminal conviction not being excluded form public ceremony, the agencies will need to answer all question of facts with this motions. 4)-["***Minor Criminals***"] or in general 5)-["***Minors***"], and when they applied for citizenship, they are not competitively disadvantage,  therefore, Congress used the above terms, they must be excluded from5)-["***Mass Deportation Practice***"] (MDP), and that is to say that the agencies exposed the plaintiff to their criminal enterprise, particular alleged circumstances ,faces an elevated risk of 6)-["***Excessive Punishment***"] that is extent to punishment that is excessive when

evaluate the administrative records at whole, if only apply or in the sense that they are imposed on the basis of intentional or mistaken facts, at least as long as the punishment was not reasonable from the point of view of the disciplinarian, if the The Supreme Court has made it clear that, "[o]utside the context of capital punishment, *successful* challenges to the proportionality of sentences [are] exceedingly rare *Solem v. Helm*, 463 U.S. 277, 289, 103 S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983).This is so because we accord substantial deference to Congress, as it possesses "broad authority to determine a)-["***Advocate Status***"] against illegal detentions and  that is the best way to harmonize the the statutes being challenged, or they are superfluous, as the plaintiff is drawing from the parenthetic phrase of  manifesting of congress intent to only exclude him or to be benefits his families class from future b)-["***Crimes of Apartheid***"], of course we  must given serious consideration to the concerns or the characteristic of the plaintiff claims, and documentary evidence, or reasonable fact finding could have found the evidence for improving degrading treatment against the agencies illegal contracts, and the federal courts have jurisdiction over his claims, which include breach of contract, defamation, and violations of the ["*Racketeering Influenced Corrupt Organization*"] ("RICO"), or by their conspiracy more credible than the evidence for the enactment of the proposed laws, or c)-["***Ratifiation Punitive Act***"] ("RPA") or if whether or not the defendants are are liable for the same arguable basis or challenged under the acts, the defendants are certainly liable on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final

policy making authority." _Matthews[v. Columbia County,_ 294 F.3d 1294, 1297 (11th Cir. 2002), if the Eleventh Circuit has repeatedly made clear, to the regard of the statutes in character, or appropriate interpretation, the question is to ask if whether congress intended to preclude minor criminal to public ceremony is fairly not discernible in the statures, and the final policymaker must ratify not only the decision of its member with an unconstitutional motive, but also the unconstitutional basis itself. _Campbell[v. Rainbow City,_ 434 F.3d 1306, 1313 (11th Cir. 2006). Thus, to prevail on a ratification theory, he has  establish that if the defendants failed to recognize over those claims, or the  challenged actions, or if they were aware by the public opinion, but failed to ratify for the same reasons.1)-["**_Restrictions_**"] and Genocide, which he allegedly claim for unconstitutional basis for the action by controversy to adjudicating facts, In this case, he has not failed to come forward with sufficient evidence to create a genuine issue of fact as to whether a majority opinion must declared his right with congressional intent. _Cf. Aulicino v. N.Y. City Dep't of Homeless Servs.,_ 580 F.3d 73, 85 (2d Cir. 2009).  Accordingly, we think that termination of his removal procedure is not appropriate to permit the agencies to express its views on this question, and in the first stage of the analysis, we look to whether the statutory scheme are so punitive, either in purpose or effect as to negate congress intention to establish a civil remedial mechanism, thus, the Supreme Court has recognized a Bivens remedy where, for the plaintiff, it was "damages or nothing _In Davis_, the Court held, "unless such rights are to become merely precatory, the class of those litigants who allege that their own constitutional rights have been violated, and who at the same time

have no effective means other than the judiciary to enforce these rights, must be able to invoke the

existing jurisdiction of the courts for the protection of their justiciable constitutional rights."*Davis v.*

*Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979). Moreover, the plaintiff is seeking

several prospective reliefs..Cf. *Roche Products, Inc.* v. *Bolar Pharmaceutical Co.*, 733 F. 2d 858,

865 (CA Fed. 1984) (recognizing the "considerable discretion" district courts have "in determining

whether the facts of a situation require it to issue an injunction").*Roche Products, Inc.* v. *Bolar*

*Pharmaceutical Co.*, 733 F. 2d 858, 865-867 (1984). At the same time, the advocate is asking for

lifetime damages,  as they are characterize the remedy sought, historically events, the defendants

can be will not enough papers.2)-["***Reperative Injunction***"]. i,e,, an injunction to compel the

agencies to process public ceremony as well as for vacatur of his convictions in conjunction with the

all of the claims under 3)-["***Nationality Protective Act***"] ("NPA"), and there would be no

explanation for the Supreme Court's decision in a)-["***Bivens Action***"], that is to be  second place then

we are proposing b)-["***Clervrain Action (s)***"], or after the first  one, or the New Laws, he is

proposing, surely there were special factors that would have the counsel have not hesitation -- the

drain on the public fiscal, the strain on judicial resources, the hindrance to law enforcement

personnel whose efforts had to be diverted to defending lawsuits for damages, or  because success

necessarily implied the invalidity of his detention. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70,

122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). The purpose of *Bivens* is to deter individual federal

officers from committing constitutional violations in way that would remedy part of the effect of their past misconducts, or even with those remedies because of the serious constitutional violations may be a reason for creating a new cause of action. *Wilkie v. Robbins*, 551 U.S. 537, 555, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007). As such even with the assumption that the specific allegedly wrongful acts occurred without pausing to consider these factors, the Bivens Court held that a damages remedy was necessary to enforce, in general the concern regarding retroactive application of statutes is the deprivation of rights without notice, and fair warning such as concerns are present in these cases for controversy, …..to that extent congress did additional protection for all wording from the dictionaries, particularly this one.i)-["***Minors***"],, so the courts, and the agencies will applied congress intent against injustice. ii)-["***28 U.S.C 2072***"] (mandating that in matters of "practice and procedure," the Federal Rules shall govern, and "[a]ll laws in conflict with such rules shall be of no further force or effect"); that is for enacting the law in conjunction with the proposed laws, so this one must be reviewed.iii)-["***DIFTA***"'] so it being amending with different proposed names so that to address the defendants actions, or by this word 1)-["***Crimina***l"], as to classified the defendants within the same standard. 2)-["***Critical***"]  Furthermore, the scope of the Court's review is *de novo. De novo* review of agency decision-making is rare, if not unique to the naturalization context, and that is because the Appellate authority has held that the district courts are not limited to the administrative records in this context under this standard of review..*Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002). iv)-["***RIFCA***"], When it comes to discerning and applying those

standards must be by Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court de novo_."). 1)-[**"DKT, 34"**]._Clervrain v. Johns_ 5:18-cv-38, at *__1__ (S.D. Ga. Apr. 8, 2022). 2)-["***Notice for Amending all motions After equities"***], of course, congress presumably intended that the effect of this language appear to allow the plaintiff the retention requirement by the statutes, the intent of which he renounce previously his Nationality, and because he is an unmovable and "stateless" person, his "indefinite custody" is a violation of his constitutional rights, indeed he certainly qualify for public ceremony that is the facts of these cases for adjudicating, and there is no reason to hear arguments about congress intent to enact the laws for protection of the general public, and there is  distinction between being a citizen and being a national, and this inquiry is a necessary one, if congress did intended to benefit of such special class to which the plaintiff belongs, also intended to include the benefits for the public generally, it is inherently less likely that congress intended to create a private remedy, which was not explicitly specified in the statutes, or else or even to challenged the 3)-["***United States Criminal Code***"] (USCA) includes a chapter entitled "Obstruction of Justice," a)-[***18 U.S.C. 1501-1521***"] it does not clearly set forth the elements of a generic federal obstruction of justice crime, and we are  asking if  the courts, or if the defendants should be liable under all of  laws as part of the conspiracy,  as matter of facts is to prove the courts if there is conflicting laws between the b)-["***INA***"] and the criminal laws, if  particularly  we are question them with  this one c)-["***1101(a)(43)(S)***"] states that "an offense relating to obstruction of

justice . . . for which the term of imprisonment is at least one year" is an aggravated felony, of if the statute does not define "obstruction of justice." _Alwan v. Ashcroft_, 388 F.3d 507, 514 (5th Cir. 2004). These claims are very premature that is only for the courts may recognize that the statutory interpretation is a d)-["**_Multifaceted Enterprise_**"] ranging from the precise construction of the statutory to a determination of its best effective statutory objective,  Although a sentencing court must generally apply the Guidelines in effect at the time of sentencing, the Ex Post Facto Clause requires a court to apply instead the Guidelines in effect at the time of the current offense "if the guideline have undergone substantive changes that should  disadvantage for  the defendants to punish for the criminal enterprise they had established within the ("INA")  for years by predicate act is presenting  for the courts to evaluating additional facts within the same reason explained in the controversy ." _United States v. Stevens_, 462 F.3d 1169, 1170 (9th Cir. 2006). Having reached the end of what seems like a long front walk, we finally arrive at the threshold jurisdictional question: whether respondent, the plaintiff below, has standing to sue. Article III, § 2, of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies to litigate facts by . _Steel Co. v. Citizens for Better Env't_, 523 U.S. 83, 102 (1998), Then, that is what?  is plain here is that this case involves the most prototypical exercise of judicial power : the entry of a final, binding judgment _by a court_ with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime.  See 314 Md., at 404, 550 A.2d, at 1141; _Md. Cts. Jud. Proc. Code Ann_. §§ 3-801(e), 3-804(a) (Supp. 1989); If

such an exercise of judicial power may nonetheless be taken from the Article III Judiciary simply by deeming it part of some amorphous " public right," then Article III would be transformed from the guardian of individual liberty and separation of powers we have long recognized into mere wishful thinking, or by 4)-["***Brandako, Inc***"],or if whether these cases involved issues, or if whether plaintiff, is questioning  bidder on a public contract, a)-["***NESA***"] had a valid business expectancy. In order to establish this, "[t]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking ." *Trepel v. Pontiac Osteopathic Hosp.,* 135 Mich.App. 361, 377, 354 N.W.2d 341 (1984). We will not agreed with any of the the trial court and the Court of Appeals must evaluate the evidence for trial. b)-["***HFRA***"]  that is  plaintiff did not have a valid business expectancy because plaintiff  reasonable expectation of being awarded by contract, only "wishful thinking, It may be that the Government is doing some wishful thinking in regard to the relations of the standards proposed, or if    "probable cause" requirement by making this is a test  for controversies cases.  c)-["***TPVA***"] We should  lend ourselves to further investigation on the Merits on the claims, whether denial what?  we called educative public importance. *FCC v. League of Women Voters of California*, 468 U.S. 364 (1984).to prove public interest against the defendants criminal enterprises that must justify by laws. *Denmark v. Liberty Life Assur. Co. of Boston* 566 F.3d 1 (1st Cir. 2009). d)-["***UCCA***"], at page 16, so the courts and the agencies must review all facts if the plaintiff is right or wrong by law.*Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 293 (6th Cir. 2005)

## PRAYER FOR RELIEF (S)

**A**-WHREFORE, the plaintiff(s) a)-["***Manetirony Clervrain***"], who is  applying proper guidance with the same meaning to challenge the agencies exclusive theories, and by punished parent of 3 children without causes b)-["***The Parent(s) Act*** "] (TPA)  if they are similarly situated individuals, or person. i)-["***Motion for Trail Courts Act (TCA), OR Official Performance Act OPA) by   Humanitarian Federation Reform Act***"] (HFRA) or the activist against apartheid by the defendants secretive operations. c)-["***The Freedom Act*** "](TFA)  prays these honorable courts to be able to treat these actions with generosity, and for lifetime damages,  in light of the circumstances for defining the words in the ("INA").  that is conflicting with the various statutes or if whether or not the agencies are deported by  1)-["***Perfectionist***"] is illegally codified in the Act, or  by their failure to explain the term for 2)-["***Favorable Discretion***"] against Fist time offenders, or as they purpose easily deported innocent individuals by means of 3)-["***Forced Exil***e"], or Mass Deportation , or by way of depriving certain rights and privileges, to the plaintiff while in illegal custody by the defendants negligent and the courts may direct them within their jurisdiction who legally authorized to effectuate his freedom.i)-["***Human Rights Communities Act***"] ( HRCA) and to benefits others, regardless if they are in custody of 1)-["***ICE***"]; 2)-[""***BOP***"] or 3)-["***USMS***"], as well as affording them, the vacatur of their convictions and the class for the unusual punishment on the ground of fundamental error by the defendants ii)-["***Crimes of Apartheid***"] by imposing to his classification against Deportable aliens or civilians or because of the effect of their restriction disposition that

effecting the denial of right to litigate  such complex litigation for years, or for the enactment of the

acts to protect the class against the defendants privatization scheme, Apartheid , Genocide, they are

involved in serious crimes.a)-["***Crimes Against Humanity Act***"] (CAHA). 1] These courts duty are

invoked this declaration to each of the defendants by  email addresses, or all individual that is or

were register to 1)-["***PACER***"], or Any 2)-["***UCMA***"] if the defendants, as well as the judicial

system conducts alleging in the motions are discriminatory, abuse of discretion and punitive without

due process of laws ; b) He is demanding demanding for national relief for the beneficiaries, until the

cases are adjudicating in all states, or if whether not his conviction  or the class was abused by the

official power for misrepresentation by the b)-["***INA***"] or alleging that broad allegations for

aggravation within the current laws ; i) He is demanding for judgement on each claims against each

of the defendants in the controversial claims,so pending to file to each of the courts, and for applying

states laws,  for the alleged negligence claims. *In Bryant v. Oakpoint Villa Nursing Center,* 471 Mich.

411, 432-433, 684 N.W.2d 864, 876, (2004), the plaintiff delayed filing her claim due to the court's

own confusion between medical malpractice and negligence claims, which qualified as an "unusual

inequality" that supported equitable tolling.ii)-["***UEDA***"].Moreover, under the standards set forth

in *Dorris v Detroit Osteopathic Hosp Corp,* 460 Mich 26; 594 NW2d 455 (1999), the officials

failure-to-train and failure-to-inspect claims sound in judicial practice, then we asking if the judicial

officials are liable for the violation of his constitutional rights against the United States of America

for failure to ratify punitive laws.iii)-["***RICMA***"], at page 1)-["***Motion for Equitable Tolling Act***

***(ETA), [AND"] Equitable Reliefs Act (ERA) by invoking Non-Lawyers Educative  Shareholders Act***"] (NESA) To that extent we asking if the Defendants must waive all  appeals decisions in this circumstances of emergencies situations, so  the Court of Appeals decisions if the advocate claims are question the defendants behaviors in ordinary negligence, and we granted leave to appeal in this case and in *Lawrence v Battle Creek Health Systems*, 468 Mich 944 (2003), ordering that the two cases be argued and submitted together.2)-["***VEPA***"], and they are liable for the  various Constitution violations, which they should have known that the statutes, policies and regulation into questions are so punitive in their faces; i) For the amount to be treble in accordance to the laws of each of the defendants states  to determined by the jury trail for the illegal punishment or the injury in fact being alleged upon reliefs can be granted, ii) As well as compensation exemplary; punitive , nominal and monetary judgments. ii)-["***RIFTA***"] and  the defendants must be liable for all procedures of the litigations; and Attorney fees if applicable together with the cost of the suits, controversies, with interest for the various irreparable harms suffered for all the years he had suffered injustice by defendants action so the courts must review all evidence; iii) As well As Demanding for relief such as retroactive, injunction, equitable reliefs; a) He is demanding for Injunction Prohibition for First Time Offenders to be housed in any private institutions or Non-Violent Offenders, and to exclude them to unnecessary removal as well as the classification of punitive aggravation Act , which clearly in contradiction with plain meaning of the term of art, or ambiguous laws, which prescribe the grounds for vacatur of all contracts with private institutions

across the country that is for permanent requests.*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,* 94 F.3d 1407 (10th Cir.1996) ("[*An appellate court] must consider whether the decision maker failed to consider a relevant factor....*") (quoting *Kickapoo Tribe v. Babbitt,* 43 F.3d 1491, 1497 (D.C.Cir.1995). 3)-["***Notice Relevant factor Against Torture***"] ("*The U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) mission is to protect the homeland through the arrest and removal of those noncitizens who undermine the safety of our nation's communities and the integrity of U.S. immigration laws.*").*Immigration Naturalization Serv. v. National Center for Immigrants' Rights, Inc*., 502 U.S. 183, 187 (1991). In fact, the Supreme Court has long recognized that the power to exclude alien laborers is "necessarily intertwined with the power to punish any who assist in their introduction." *Lees v. United States*, 150 U.S. 476, 478-79 (1893). Furthermore, as the Fifth Circuit has noted, the Supreme Court "has approved the use of administrative agencies in adjudicating violations of the customs and immigration laws and assessing penalties therefor. a)-["***https://www.ice.gov/detention-facilities***"].Austin v. Shalala, 994 F.2d 1170, 1177-78 (5th Cir. 1993).To fulfill the agency's critical mission, ERO oversees civil immigration detention in facilities nationwide that house noncitizens to secure their presence for immigration proceedings or removal from the U.S by enforcing human right structure, partnering with privatization. b)-["***Notice for Invalided Privatization Contracts***"] (*"ICE detains noncitizens who are subject to mandatory detention or those that ICE determines are a public safety or flight risk during the custody determination process."*).i)-["**FITA**"].To determine if a noncitizen still needs

a notice to appear, ICE will run system checks to make sure the noncitizen is not already in removal proceedings pursuant to Section 240 of the INA, does not have an affirmative asylum application pending with U.S. Citizenship and Immigration Services (USCIS) and does not already have a final order of removal. ii)-["***Exhibit (4) (G) (I)***"], that is for this court to compel the agencies administrative records against ICE Operation of Torturing innocent people,then we asking if they must release their records.iii)-[***https://www.ice.gov/news/releases/ice-online-change-address-tool-noncitizens-fully-operational***"] ("*Noncitizens eligible for, but who have not yet received a notice to appear – meaning those who were released on conditional parole with an alternative to detention – may be prompted to state whether they want to receive their notice to appear by mail or to in person by scheduling an appointment at an ERO field office.*"). a)-["***UCCA***"].Although there are laws requirement that all agencies to get involved, when conspiracy alleged their employees by  search every division or field office ... in response to a FOIA Requests," <u>Oglesby v. U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990),and to exclude them some that are not violent, or danger to the communities, so the  form of removal procedures or to exclude them from the aggravation scheme Act or the classification being challenged to be unlawful that contains various ambiguities within the mean of word  of arts  b) For the abolishment of the all private prisons, or abolishment of the secretive operation that is the sources of being innocent people, while in their custody by their prisons industrial by act of . c)-["***Tortured***"] by the defendants illegal activities, and for the agencies to interpret their policies being challenged in accordance with its meaning as evidence giving

substantial effect for the abuse practices and to explain  unlimited discretion toward  prison officials

in the various retaliative misconducts against an activist. i)-["***FITA***"].It is obligated under FOIA to

search [those places] barring an undue burden," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

327 (D.C. Cir. 1999). ii)-["***Notice for No-More Burdens***"], So the defendants malicious intent is

proving by facts, so  when evaluate the evidence in most favorable to the plaintiff by exposing him

to institutions that located in areas that are not  provided clear water or exposed him to cancer to the

various illegal practices,   a)-[ *["**Defendants Defamation**"], that for defamation of reputation in

social media against the interest of United States of America.*United States v. Blattel* 340 F. Supp.

1140, **1141** (N.D. Iowa 1972).b)-["***USDOJ: US Attorney's Office - Southern District of Florida***

***(justice.gov)***"],   Can police do anything about 1)-["***Slander?***"] ("*If they believe you that the*

*information is wrong, they could file charges against that person for filing a false police report, a*

*crime.*"). 2)-["***18 U.S.C. § 2510(1)***"] as: ("*any communication made in whole or in part through the*

*use of facilities for the transmission of communications by the aid of wire, cable, or other like*

*connection between the point of origin and the point of reception furnished or operated by any*

*person engaged as a common carrier in providing or operating such facilities for the transmission of*

*interstate or foreign communications. [emphasis added].*")..*Gold v. United States*, 378 F.2d 588 (9th

Cir. 1967). i)-[ ***Criminal Complaint Against Some Defendants "].***Whether on its own motion or

otherwise, where judicial notice is taken, the jury must be instructed that they are to accept the fact

noticed as true allegatipns. *McCormick, supra*; Rule 201, Proposed Rules of Evidence, 51 F.R.D.

315, 330 (1971). ii)-["***Notice for Bureau of Investigations***"], which is causing the advocate injuries in facts by libel, Slander to Social Media, a)-["***Mr.Clervrain***"] who is an activist against Gang members in Republic of Haiti.b)-["***Social Media Notice***"] might be interfering in the process, so they had committed crime against humanity, so she is against the people of Haiti, so innocent people are being murdered, killed, while her intention is to stop process, by violated international laws, so notice has been given to the courts. c)-["***UNCA***"], the question if the agencies, if they are degrading advocate reputation, with this 1)-["***Be***"] ("*Written defamation is called "libel," and spoken defamation is considered "slander," and they both fall under "defamation." In the US, defamation is not usually a crime. Instead, it is a "tort" or civil wrong. Under the law, a person who has been defamed can seek damages from the perpetrator*.")..*Simmons v. United States* 390 U.S. 377 (1968).Here, Document dated, 2)-["***Septembe 30, 2011***"].*P. Wall, Eye-Witness Identification in Criminal Cases* 83 (1965); *Williams, Identification Parades*, [1955] Crim. L. Rev. 525, 531. Also, it probably would have been preferable for the witnesses to have been shown more than six snapshots, for those snapshots to have pictured a greater number of individuals, so the agencies are exposing the advocate to criminal activities. a)-["***FBI***"] that is because reporting their activities to appropriate agencies which is serious crimes in accordance with the meaning of the domestic, and international criminal laws. 3) For the agencies to evaluate the evidence on the records by release all evidence to the plaintiff, in particular all grievances must be compelled  and related documents , of course his legal documents  in control of b)-["'***BSFF***"] by means  concealment by withheld evidence of their

illegal practices. i)-["***Notice for Invention Rights***"] or the plaintiff invention rights. that will be proving to the courts. ii)-["***Non-Attorney Treatment Act***"] (NATA).In this respect, our holding in *Adickes* v. *S.H. Kress Co*. was as follows:"The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; *Monroe* v. *Pape*, 365 U.S. 167 (1961); see *United States* v. *Classic*, 313 U.S. 299, 326 (1941). The Question for the agencies if whether, or not the their agencies actions against a)-["***Mr.Clervrain***"], by illegal publication was in violation in criminal laws, for their performance. b)-["***18 U.S.C. § 2386***"].*Paton v. LaPrade* 471 F. Supp. 166 (D.N.J. 1979),There is a genuine issue as to a material fact, this must be resolved by a trier of fact at trial. *See generally, Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Taylor v. Rederi A/S Volo,* 374 F.2d 545 (3d Cir. 1967). Moreover, questions of law may be resolved by summary judgment. *Mellon Nat'l Bank and Trust Co. v. Nationwide Mutual Ins. Co.,* 32 F.R.D. 365, 366 (W.D.Pa. 1962).By now this Court and all the parties are intimately familiar with the facts of this case.c)-["***Exhibit (VI) (E) (IV) (A) (1)***"]. For those not familiar reference is made to *Paton v. LaPrade,* 524 F.2d 862, 865-867 (3d Cir. 1975).Thus I will recapitulate only the most notable facts. i)-["***Notice for Alaska Supreme Court***"], so we will inform all supreme courts across the country for their interventions as matter of laws, so 1)-)-[**"*Current through P.L. 118-14 (published on www.congress.gov on 09/22/2023) Section 2386 - Registration of certain***

***organizations(A) For the purposes of this section:***"] ("*Attorney General" means the Attorney General of the United States; "Organization" means any group, club, league, society, committee, association, political party, or combination of individuals, whether incorporated or otherwise, but such term shall not include any corporation, association, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes;"Political activity" means any activity the purpose or aim of which, or one of the purposes or aims of which, is the control by force or overthrow of the Government of the United States or a political subdivision thereof, or any State or political subdivision thereof; An organization is engaged in "civilian military activity" if:**(1)** it gives instruction to, or prescribes instruction for, its members in the use of firearms or other weapons or any substitute therefor, or military or naval science; or**(2)** it receives from any other organization or from any individual instruction in military or naval science; or**(3)** it engages in any military or naval maneuvers or activities; or**(4)** it engages, either with or without arms, in drills or parades of a military or naval character; or**(5)** it engages in any other form of organized activity which in the opinion of the Attorney General constitutes preparation for military action; An organization is "subject to foreign control" if: **(a)** it solicits or accepts financial contributions, loans, or support of any kind, directly or indirectly, from, or is affiliated directly or indirectly with, a foreign government or a political subdivision thereof, or an agent, agency, or instrumentality of a foreign government or political subdivision thereof, or a political party in a foreign country, or an international political organization; or**(b)** its policies, or*

*any of them, are determined by or at the suggestion of, or in collaboration with, a foreign government or political subdivision thereof, or an agent, agency, or instrumentality of a foreign government or a political subdivision thereof, or a political party in a foreign country, or an international political organization.(B)(1) The following organizations shall be required to register with the Attorney General: Every organization subject to foreign control which engages in political activity; Every organization which engages both in civilian military activity and in political activity; Every organization subject to foreign control which engages in civilian military activity; and Every organization, the purpose or aim of which, or one of the purposes or aims of which, is the establishment, control, conduct, seizure, or overthrow of a government or subdivision thereof by the use of force, violence, military measures, or threats of any one or more of the foregoing. Every such organization shall register by filing with the Attorney General, on such forms and in such detail as the Attorney General may by rules and regulations prescribe, a registration statement containing the information and documents prescribed in subsection (B)(3) and shall within thirty days after the expiration of each period of six months succeeding the filing of such registration statement, file with the Attorney General, on such forms and in such detail as the Attorney General may by rules and regulations prescribe, a supplemental statement containing such information and documents as may be necessary to make the information and documents previously filed under this section accurate and current with respect to such preceding six months' period. Every statement required to be filed by this section shall be subscribed, under oath, by all of the officers of the organization.(2) This*

*section shall not require registration or the filing of any statement with the Attorney General by:(a) The armed forces of the United States; or(b) The organized militia or National Guard of any State, Territory, District, or possession of the United States; or(c) Any law-enforcement agency of the United States or of any Territory, District or possession thereof, or of any State or political subdivision of a State, or of any agency or instrumentality of one or more States; or(d) Any duly established diplomatic mission or consular office of a foreign government which is so recognized by the Department of State; or(e) Any nationally recognized organization of persons who are veterans of the armed forces of the United States, or affiliates of such organizations.(3) Every registration statement required to be filed by any organization shall contain the following information and documents:(a) The name and post-office address of the organization in the United States, and the names and addresses of all branches, chapters, and affiliates of such organization;(b) The name, address, and nationality of each officer, and of each person who performs the functions of an officer, of the organization, and of each branch, chapter, and affiliate of the organization;(c) The qualifications for membership in the organization;(d) The existing and proposed aims and purposes of the organization, and all the means by which these aims or purposes are being attained or are to be attained;(e) The address or addresses of meeting places of the organization, and of each branch, chapter, or affiliate of the organization, and the times of meetings;(f) The name and address of each person who has contributed any money, dues, property, or other thing of value to the organization or to any branch, chapter, or affiliate of the organization;(g) A detailed statement of the assets of the*

*organization, and of each branch, chapter, and affiliate of the organization, the manner in which such assets were acquired, and a detailed statement of the liabilities and income of the organization and of each branch, chapter, and affiliate of the organization;**(h)** A detailed description of the activities of the organization, and of each chapter, branch, and affiliate of the organization;**(i)** A description of the uniforms, badges, insignia, or other means of identification prescribed by the organization, and worn or carried by its officers or members, or any of such officers or members;**(j)** A copy of each book, pamphlet, leaflet, or other publication or item of written, printed, or graphic matter issued or distributed directly or indirectly by the organization, or by any chapter, branch, or affiliate of the organization, or by any of the members of the organization under its authority or within its knowledge, together with the name of its author or authors and the name and address of the publisher;**(k)** A description of all firearms or other weapons owned by the organization, or by any chapter, branch, or affiliate of the organization, identified by the manufacturer's number thereon;**(l)** In case the organization is subject to foreign control, the manner in which it is so subject;**(m)** A copy of the charter, articles of association, constitution, bylaws, rules, regulations, agreements, resolutions, and all other instruments relating to the organization, powers, and purposes of the organization and to the powers of the officers of the organization and of each chapter, branch, and affiliate of the organization; and**(n)** Such other information and documents pertinent to the purposes of this section as the Attorney General may from time to time require. All statements filed under this section shall be public records and open to public examination and*

*inspection at all reasonable hours under such rules and regulations as the Attorney General may prescribe. **(C)** The Attorney General is authorized at any time to make, amend, and rescind such rules and regulations as may be necessary to carry out this section, including rules and regulations governing the statements required to be filed.**(D)** Whoever violates any of the provisions of this section shall be fined under this title or imprisoned not more than five years, or both. Whoever in a statement filed pursuant to this section willfully makes any false statement or willfully omits to state any fact which is required to be stated.").2)-*["***18 U.S.C. § 2386***"].*Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir. 1977). ii)-["***Mrs Joseph***"], failed to show responsibilities to protect the interest of the Haitian people, but her own personal interest by retaliated against the advocate against the various criminal in Republic of Haiti, a)-["***18 U.S.C. § 2***"] 3)-["***Current through P.L. 118-14 (published on www.congress.gov on 09/22/2023) Section 2 - Principals(a)***"]** (*"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.**(b)** Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.*"). b)-[***"Notice for Future Reporting other Actions"***]., so they have been notified by laws for controversies. *U.S. v. Zichettello* 208 F.3d 72 (2d Cir. 2000) (*"Judge's Summary — Holding that "no rule" requires "the government to prove that a [RICO] conspirator knew of all criminal acts by insiders in furtherance of the conspiracy" as long as it shows that defendant possessed knowledge of "the general contours of the conspiracy"*) c)-["***MOCMA***"].*United States v. Mortimer,* 52 F.3d 429,

437 (2d Cir. 1995). c)-["***The Movement Act***"] (TMA),or which is necessary to make the statements made not misleading, shall be fined under this title or imprisoned not more than five years, or both, and those allegations against the defendants was based upon his classification for the same purposes of illegal publication.i)-["***Deportable Alien***"], as it codified in the ("INA") on a unequal enforcement of a facially neutral  statutes that tacitly codify for the purpose to promote apartheid or discriminatory effect by the agencies and their partners, of if whether or not that the agencies could not deported him  ii)-["***ICE***"] officials going to far in their practice to house civilians in disciplinary segregation. iii)-["***Notice for Destroy Reputations***"] or serious restriction giving them authority to discriminate base upon 1)-["***National Origin***"]; a) Generally the statutes and the illegal contracts must be declared unconstitutional test came into play because dues process so required prior warning of culpable conducts in the situation presenting before penalty may imposed; b) For the agencies not imposed restriction on activist or innocent individuals who are indigents , however those claims are premature claims, that is because the plaintiff is requesting to various information to the FOIA Requests, to  have access to any 2)-["***BOP***"] polices while in custody of the various agencies in their control by false arrest.3)-["***ICE***"] as supporting his claim for access to the court for the vacatur of his convictions or among others, or even he would have access to all resources, they will be liable for lifetime damages. 4)-["***BOP***"] he will still need to have access to  each of the states resources or their polices as well as the 5)-["***Department of Correction***"] of each states; b)  For the court to compel the agencies to response the reasons why?  they are not intervened when plaintiff questioned

them about his legal properties that contains his 6)-["***Invention***"] that will served the public importance, so  by publishing all the activities by the agencies, or after he is release from detention, So  he  asking  to  their  supports,    that  will  help  in  mitigation  criminal  enterprise  by  the  prison industries, or another word 7)-["***BSFF***"] withheld evidence of their practice to explained the public what they are doing to deportable Alien that will also explained to the defendants how? does will publish the ("FOIA") requests sought, or another word when they exposure the advocate to the various unhuman practices. 8)-["***Carcinogen***"] is very or serious constitutional violation when he was, or continuity to be housed in all of the those institutions, giving that the defendants can not denied that, he was exposed to death penalty by mean of their negligent or gross in light of all  the circumstances, or as well as for temporary restrain order by directing the to perform their duties in all of the claims alleged in all of the motions filed previous across all the courts in the country; a) For the  each of the courts to release all those motions filed because of the defendants refused to make copies of all claims. i)-["***Motion for Mitigating Financial Burden, OR Constitutionality by Invoking Laws, Rights, Rights Aggravated Provision Act***"] (RAPA).*IA Labs CA, LLC v. Nintendo Co.* 946 F. Supp. 2d 429, **431** (D. Md. 2013).As a result, the defendants are are clearly liable for lifetime damages, they are automatically caused harms, they must  released funds to the courts for the operation of the invention. ii)-["***Fed.R.Civ.P.  62(d)***."].*Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.,* 600 F.2d 1189 (5th Cir.1979). and the for  agencies to release all documents in electronic formats and papers  since the plaintiff was in their custody in 2011; b) For

the courts to stop all deportation.a)-["***Fist-Time Offenders***"] (FTO) while this procedures being process, and to inform all senators across the country that their duty is invoke to cease all crimes against innocent people.b)-["***Genocide***"] and apartheid against innocent family or by ratifying the current illegal laws that was enacted in 1996 for the sole purpose to benefits privatization scheme, rather to protect family unity. or another word nobody is c)-["***Perfect***"] to incorporated factual allegations by iii)-["***Second Chance Act***"] (SCA) into the laws, of for right invention, so that is upon reliefs can be granted. a)-["***The Ant Act***"] (TAA), Moreover, those word are symbol of the plaintiff books, so nobody should not copy.1)-["***Invention***"] while in prison therefore, the courts has another duty to protect those names, 2)-["***Trademarks***"] for the purpose of amending the controversy, or another word the appropriate agencies should take action in the process of his trademark and copyright registration, and b)-["***The Adequate Act***"] (TAA) that is what the advocate is inquiring for proper justification in all claims. 3)-["***Justice***"], but injustice on his way caused him the various constitutional violation including access to law library or education as evidence for his cause cause of action in each states. c)-["***The Lion Act***"] or to promote education in the ("INA") as well as the criminal procedure or recidivism; 6) As well as for the court to evaluate all claims on his pending motion filling across the country where jurisdiction is applicable against the defendants, and for factual allegation for his 1)-["***Nationality Claim***"] that is within congress intent for compelling access to resources to litigate.2)-["***21-CV-00137***"].*Fidelity Federal Savings & Loan Ass'n v. De La Cuesta* 458 U.S. 141, **152** (1982).The pre-emption doctrine, which has its roots in the Supremacy

Clause, U.S. Const., Art. VI, cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones* v. *Rath Packing Co.*, 430 U.S. 519, 525 (1977).3)-["***Notice for Family Representative***"] ("This will enable us to more efficiently consider all cases. So the defendants must be acted by the same laws, or for the same resons, the bona fide determination process, if there is no fee for an initial bona fide determination 4)-["***Employment Authorization Document***"] (EAD).*Employment Authorization Documents* 69 Fed. Reg. 45555 (Jul. 30, 2004).These aliens must apply to BCIS to receive an EAD evidencing their employment authorization. i)-["***8 CFR 274a.12(c)***"].This rule will have a positive significant economic impact on a substantial number of small businesses described in the Regulatory Flexibility Act at ii)-["***5 U.S.C. 605.***"].*Davis v. City of Aurora*, 705 F.Supp.2d 1243, 1263-64 (D.Colo. 2010) a)-["***Petition for U Nonimmigrant Status | USCIS***"].*Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002).("*positing that imposing liability upon officials for their promulgation of a policy the enforcement of which violates individuals' federally protected rights holds such officials "responsible for their own wrongs rather than on the basis of respondeat superior liability" and, therefore, comports with Iqbal").*Board of County Comm'rs v. Brown*, 520 U.S. 397, 404-05, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).Its authorized decisionmaker itself for the reformation of laws..b)-["***Universal Humanitarian Visa Act***"] (UHVA).*Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). To that extend all visas, fees  waiver,

application process must be waived. c)-["***Fed. R. Civ. P. 5***"] 1)-["***Current through P.L. 118-14 (published on www.congress.gov on 09/22/2023) Rule 5 - Serving and Filing Pleadings and Other Papers***"] ("***(E)*** *sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing-in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served*"). d)-["***Exhibit 4 (H) (I-II)***"].*Paulish v. Bakaitis,* 442 Pa. 434, 442, 275 A.2d 318, 322 (1971). i)-["***HFRA***"], that to say that each Trial courts should not abuse their discretion in striking advocate *Admittance On Motio*n where the explanation was offered for extraordinary  process without regard to any possible prejudice by the  defendants, so electronic filling is mandatory process by regulations. *Delgrosso v. Gruerio,* 255 Pa. Super. 560, 565, 389 A.2d 119, 122 (1978).ii)-["***RETODA***"].The defendant must show cause why he should be permitted to file electronic filling, and application to the iii)-["***FOIA Process***"], so they should not be late, and they may request for extensions if necessary, and he must also show that their actions will  will not be prejudiced  against  the  advocate.iv)-["***NATA***"].*Bata v. Central Penn National Bank of Philadelphia,* 448 Pa. 355, 380, 293 A.2d 343, 357 (1972).This argument is, therefore, with meritorious process.1)-["***NEFRA***"], or for reinstatement of all appeals, and compelling judicial administrative records. 2)-["***TIPPA***"], as well as at the subsequent evidentiary hearing, the basis for an assertion that there was "cause" why the late pleading should be allowed, that is after his assistants admired in the united States. 3)-["***NCA***"].*Allison v. Merris,* 342 Pa. Super. 571, 572, 493

A.2d 738, 739 (1985).i)-["***Motion(s) for The Answer Act (TAA) or Additional Defendant(s) Act )ADA) by the Treaties Union Nationality Act ],*** *(TUNA)* Of course the restrictions to litigate for years is so effective even while in Custody for ii)-["***ICE***"] to release all organization structures in each states they are operating their illegal practices, therefore, we asking the agencies if they failed to inform publicly.a)-["***https://www.ice.gov/leadership/organizational-structure***"] ("*The ICE Office of Professional Responsibility (OPR) is responsible for upholding the agency's professional standards through a multi-disciplinary approach of security, inspections and investigations. OPR promotes organizational integrity by vigilantly managing ICE's security programs, conducting independent reviews of ICE programs and operations, and impartially investigating allegations of serious employee and contractor misconduct, as well as internal and external threats against ICE personnel and facilities.*").b)-["***https://www.ice.gov/about-ice/opr***"] ("*OPR assesses pre-employment suitability and continuously evaluates background investigations of the ICE workforce. OPR also manages physical security and classified national security information, which includes administering clearance levels and access to classified information, systems and equipment. OPR provides ICE senior leadership with an independent assessment of their programmatic compliance with requirements of agency policies, procedures, and detention standards. OPR's role in safeguarding the organization permits the agency to focus on its larger mission of promoting homeland security and public safety.*"). c)-["***RICMA***"] *Duffin v. Carlson,* 636 F.2d 709, 712 (D.C. Cir. 1980) ("*distinguishing two clauses of Exemption 7(D*"). These additional requirements are more

exacting than the threshold requirement of "law enforcement purpose," *Dunaway v. Webster*, 519

F.Supp. 1059, 1076, 1080 (N.D.Cal. 1981), and, in the case of a national security

intelligence    investigation,    may    require    a    determination    of    the    lawfulness    of

the investigation's methods. d)-[*"RASA"*] that is right notice..H.R. Rep. No. 1380, 93d Cong., 2d

Sess. 13 (1974).1)-[***Notice for National Investigation***] ("*The field offices listed below are not

*check-in locations. To find an ICE check-in location, schedule or change an appointment time, or to*

*update an address, please visit the ICE Check-in page.*"). e)-[*"**FICA**"*].*Radowich v. United States*

*Attorney*, 658 F.2d 957, 959 (4th Cir. 1981);2)-[***Criminal Intent***"], then  we are  asking  the courts

to act in good faith as part of the same controversies against the defendants for the various agencies

illegal misconducts, 3)-[*"**https://www.ice.gov/contact/field-offices?office=13**"*],such other relief the

courts might deem just and proper and pray the honorable courts to  issues the various orders against

each of the defendants for viable contracts,  that the plaintiff should not be  be excluded from any

laws of the United States of America, or any financial Institution to inquiring funding, or purchase

power at his convenience, i)-[***Section 1915 (g) of the "PLRA"***] does not apply to advocate, or

civilians proving they are as victimized by governmental brutality, or crimes of apartheid, so the

defendants are liable for ii)-[***Irreparable Harms***"],and sometimes conclude in the negative to be

reviewing by evidence..,iii)-[*"**NESA**"*] *Baker's Aid v. Hussmann Foodservice Co.,* 830 F.2d 13,

16 (2d Cir. 1987) Those argument that irreparable harm automatically follows breach of covenant

not-to-compete, especially in light of plaintiff's ability to show loss of goodwill or any other type

of harm cause by the agencies. *A.L.K. Corp. v. Columbia Pictures Inds., Inc.*, 440 F.2d 761, 763-64 (3d Cir. 1971).a)-["***Imminent Danger***"] or as evidence for another ambiguities as issuance to mitigate Secretive crimes within the prison industry.*Mountain Med. Equip., Inc. v. Healthdyne, Inc.*, 582 F.Supp. 846, 848-49 (D.Colo. 1984) .By classified those that can challenged to suspect classification of b)-["***Illegal Strikes***"]. or in other word c)-["***Deportation***"] by itself  is imminent danger, and for the defendants to be liable for all fees associate in these cases including all traveling fees upon reliefs can be granted , electronic devices can be purchase at anytime, the same day he was release from illegal detentions.d)-["***Arbitration  Case  #01-23-0004-4387***"].*Rent-A-Center, Inc. v. Canyon Television Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) if they failed to consider contracts obligations, i)-["***Mr. Clervrain***"] ("*The American Arbitration Association acknowledges receipt of the above case number (case number in subject line). Based on our review of the case file, the AAA notes an arbitration agreement referencing the AAA was not included with the filing. For this reason, we have closed our file.*").In *Anderson* v. *Continental Ins. Co.*, 85 Wis.2d 675, 689, 271 N.W.2d 368, 375-376 (1978), which established that in Wisconsin an insured may assert a cause of action in tort against an insurer for the bad-faith refusal to honor the insured's claim, the court stated that the tort duty was derived from the implied covenant of good faith and fair dealing found in every contract. ii)-["***RIFTA***"] It relied for that proposition on the Restatement (Second) of Contracts § 205 (1981). a)-["***Motion for Their Settlements, We are against Serious Crimes by Invoking their Rights Issues Trust Fund Act***"] (RITFA), we are  as well as on the

adoption of the Restatement's position in _Gruenberg_ v. _Aetna Ins. Co._, 9 Cal.3d 566, 575, 510 P.2d 1032, 1038 (1973). b)-["**_AAAFiling_**"]If respondent had brought a contract claim under § 301, he would have had to attempt to take the claim through the arbitration procedure established in the collective-bargaining agreement before bringing suit in court._Steelworkers_ v. _Warrior Gulf Navigation Co._, 363 U.S. 574, 581 (1960). The judgments of all courts across the country must be be reversed for c)-[**"_Administrative Assistant Act_"] (AAA).**their federal right to decide who is to resolve contract disputes.d)-["**_XIV (C) (II) (7-10)_**"],and then afforded him a right to a formal hearing under the Contract Disputes Act. _See Cleveland Bd. of Educ. v. Loudermill_, 470 U.S. 532, 547-48, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).i)-["**_TMPA_**"] ("_We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures_").ii)-["**_American Arbitration Association_**"],the procedural due-process claims, or because the source of the advocate rights, by contracting with the agencies, each of the defendants across the country and he requested contractual remedies to vindicate those rights,In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and free-standing remedy in damages.").iii)-["**_AAAFiling@adr.org_**"]._Nat'l Park Hospitality Ass'n v. Dep't of Interior,_ 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003).For example, we asking if the inventor must be  requested to the a)-["**_FOIA Request_**"] that his prospective employers be given good references. b)-["**_Status Update for Request #2023-23766_**"] ("_The status of your FOIA request_

*#2023-23766 has been updated to the following status 'In Process'. To log in to the IRS FOIA Public Access Portal click on the Application URL below.*").<u>Kmart Stores of Tex., L.L.C. v. Ramirez</u> 510 S.W.3d 559 (Tex. App. 2016).i)-["***https://foiapublicaccessportal.for.irs.gov***"] ("*Judge's Summary —*

*In Kmart, Kmart introduced an arbitration policy two years after the employee's employment began and asserted the employee confirmed acknowledgment and receipt of the agreement via online portal.*").ii)-["***https://v2.ereg.ets.org/ereg/public/customer/create***"].If the schools have questions regarding the documents that must be delivered, please contact the Disclosure caseworker assigned to the requests. iii)-["***XVI (5) (G) (XIII)***"], so all of the agencies can be reached using the messaging feature within the *IRS FOIA Public Access Portal.*.<u>Food & Water Watch, Inc. v. Vilsack,</u> 808 F.3d 905, 913 (D.C. Cir. 2015) ("*In determining standing, we may consider materials outside of the* Admission on Motions.").a)-["***NEPA***"] The fact that all of the advocate's FOIA requests to each of the agencies are still pending can be "readily determined" from all of the District's courts, and their own FOIA public-access portal and is thus a matter of public record whose "accuracy can reasonably be questioned.<u>Hurd v. District of Columbia,</u> 864 F.3d 671, 686 (D.C. Cir. 2017) b)-["***Internal Revenue Service***"] ("*The IRS is organized to carry out the responsibilities of the secretary of the Treasury under section 7801 of the Internal Revenue Code. The secretary has full authority to administer and enforce the internal revenue laws and has the power to create an agency to enforce these laws.*").i)-["***TETCA***"].<u>Hess v. Port Authority Trans-Hudson,</u> 513 U.S. 30, 39, 115 S.Ct. 394, 400, 130 L.Ed.2d 245, 257 (1994).by acting together

through their legislatures, may both states increase Power of Attorney Rights or add to all of the

agencies, and employees responsibilities..ii)-["***Ind. Code § 36-1-6-3 Current through P.L. 255-2023***

***Section 36-1-6-3 - Proceeding to enforce ordinance; law applicable***"] ("*(a) Certain ordinances*

*may be enforced by a municipal corporation without proceeding in court through:(1) an admission*

*of violation before the violations clerk under IC 33-36; or(2) administrative enforcement under*

*section 9 of this chapter.(b) Except as provided in subsection (a), a proceeding to enforce an*

*ordinance must be brought in accordance with IC 34-28-5, section 4 of this chapter, or both.(c) An*

*ordinance defining a moving traffic violation may not be enforced under IC 33-36 and must be*

*enforced in accordance with iii)-["**IC 34-28-5. IC 36-1-6-3**"].Townes v. City of New York* (2d Cir.

1999) 176 F.3d 138 ( *Townes*). There, the plaintiff's section 1983  alleged that he subjected to

various unconstitutional violations,, so the defendants are liable for their actions damages because

the courts were enforcing the unconstitutional ordinance "at the advocate request he is asking all

cities officials, or if Cities official have been found liable for damages based on official action

to enforce an ordinance later determined to be unconstitutional in a variety of contexts for their

considerations legalities. *RK Ventures, Inc. v. City of Seattle* (9th Cir. 2002).In the absence of

evidence that the agencies  official in conspiracies to misled public importance or pressured the

prosecution or trial judge. c)-["***TMPA***"], that included all of the agencies, we are asking if  IRS must

amended their legal process, so if that must created based on this legislative grant by invention rights,

so to be clearer part of this, if Section 7803 of the Internal Revenue Code provides for the

appointment of a commissioner of Internal Revenue to administer and supervise the execution and application of the internal revenue laws.i)-["***FITA***"].*In Maryland v. Soper* (No. 1) 270 U.S. 9, 46 S. Ct. 185, 70 L. Ed. 449, considering the scope of section 33 of the Judicial Code (Comp. St. § 1015), pertaining to suits and prosecutions against revenue officers, so the same reasons we asking if each agencies must  release their administrative records, and for the FOIA Process, we assumed for the agencies actions.  ii)-["***N.H. Rev. Stat. § 564:22 Current through Chapter 243 of the 2023 Legislative Session Section 564:22 - Charitable Trusts, Internal Revenue Laws***"]("*I.  In the administration of any trust which is a "private foundation" as defined in section 509 of the United States Internal Revenue Code of 1954, or which is a "charitable trust" as defined in section 4947(a)(1) of the Internal Revenue Code of 1954, or which is a "split interest trust" as defined in section 4947(a)(2) of that code, the following acts are prohibited:**(a)** engaging in any act of "self-dealing" (as defined in section 4941(d) of the Internal Revenue Code of 1954) which would give rise to any liability for the tax imposed by section 4941(a) of the Internal Revenue Code of 1954;**(b)** retaining any "excess business holdings" (as defined in section 4943(c) of the Internal Revenue Code of 1954) which would give rise to any liability for the tax imposed by section 4943(a) of the Internal Revenue Code of 1954;**(c)** making any investments which would jeopardize the carrying out of any of the exempt purposes of the trust, within the meaning of section 4944 of the Internal Revenue Code of 1954, so as to give rise to any liability for the tax imposed by section 4944(a) of the Internal Revenue Code of 1954; and**(d)** making any "taxable expenditures" (as*

*defined in section 4945(d) of the Internal Revenue Code of 1954) which would give rise to any*

*liability for the tax imposed by section 4945(a) of the Internal Revenue Code of 1954. However, this*

*paragraph does not apply to those split-interest trusts or to any amounts thereof which are not*

*subject to the prohibitions applicable to private foundations by reason of the provisions of section*

*4947 of the Internal Revenue Code of 1954.**II.** In the administration of any trust which is a "private*

*foundation" as defined in section 509 of the Internal Revenue Code of 1954, or which is a*

*"charitable trust" as defined in section 4947(a)(1) of the Internal Revenue Code of 1954, there shall*

*be distributed, for the purposes specified in the trust instrument, for each taxable year, amounts at*

*least sufficient to avoid liability for the tax imposed by section 4942(a) of the Internal Revenue Code*

*of 1954.**III.** The provisions of paragraphs I and II shall apply to any trust except to the extent that a*

*court of competent jurisdiction determines that the application of those paragraphs to a trust would*

*be contrary to the terms of the instrument governing the trust, and that the instrument cannot*

*properly be changed to conform to those paragraphs.**IV.** Nothing in this section impairs the rights*

*and powers of the courts or the attorney general with respect to any trust.**V.** All references to*

*sections of the Internal Revenue Code of 1954 include amendments to those sections which are made*

*after the effective date of this section, and include all corresponding provisions of any United States*

*internal revenue laws which replace the Internal Revenue Code of 1954..*Connecticut Dept. of*

*Income Maintenance* v. *Heckler*, 731 F.2d 1052, 1055, n. 3 (CA2 1984),.In legal parlance, the term

"damages" refers to money awarded as reparation for injury resulting from breach of legal duty.

*Webster's Third New International Dictionary* 571 (1981). Then we are inform the agencies if the claims are proper, filed on, or before, Oct 17, 2023, 12:43 PM (13 hours ago), if the The attached letters, responds to some claims, which was also submitted previously to the agencies for performance their obligations.iii)-["***https://www.dhs.gov/leadership***"].for example, by ordering  to return to the plaintiff of the precise properties, constitutional rights, that was based on his national origin, as notice, that has been wrongfully taken, or by enjoining acts, that would damage the plaintiff's person or property.1)-["***Standard Form 95***"].*5A A. Corbin, Contracts* § 1141, p. 113 (1964). That is for agencies actions, or for claims for Damage, Injury, or expose to  Death while advocate was against the practices, seeking payment for damages related to injuries by the defendants actions. 2)-["***Motion for Their Actions Act (TAA), ["OR"] For Experience Patriot Act (EPA) by Revoking Aliens Status Act***"] (RASA).The Court likewise must granted to each any agencies by argumentative, and that the Law School's plan t narrowly tailored because race-neutral alternatives that had proven effective elsewhere (i.e., the percentage plans utilized in all state of America were available and would deliver the educational benefits the Law School by seeking for accredited. a)-["***Schools Seeking ABA Approval***"] ("*The Council of the ABA Section of Legal Education and Admissions to the Bar is recognized by the U.S. Department of Education as the accrediting agency for J.D. programs in the United States.*").*Application of Urie,* 617 P.2d 505, 506-507 (Alaska 1980). b)-["***RASA***"], at page 7 (iv).The requirements of our rule presently in effect have been adopted by the vast majority of States. c)-["***RASA***"].*Matter of the Application by Adams,* 102

N.M. 731 (1985). Under the previous rule an applicant became eligible to take the examination when his law school received A.B.A. approval. i)-["***The Prolific Act***"] (TPA) ("*We collect information in order to provide you with the best possible ABA member experience.*"). This information is kept in a secure database. ii)-["***MEMBER ID: 05458673***"].We are, therefore, confident that the present rule more nearly achieves the desired result of ensuring that applicants have experienced a generally uniform level of appropriate legal education..Standard Pennsylvania Practice 2d § 4:13 (updated Nov. 2007) (*"to qualify for Pennsylvania bar, applicant must "complete the study of law at and receive without exception an earned Bachelor of Laws or Juris Doctor degree from accredited or unaccredited law school located within the boundaries of the United States"*) (citations omitted, emphasis added);   a)-["***Self -Accredited Law School Act***"] ("SALSA").*Gaskin v. Pennsylvani*a, 2006 WL 2060437, *1 (3d Cir. Jul. 25, 2006). For the same reasons, we asking if State officials must considered new Practices. b)-["***Accredited Technology Scientific Act***"] (ATSA).As of the time of relevant of the incident, i)-["***Mr.Clervrain***"] must be accredited, that is because he is litigation for more than ten years against ii)-["***American Correctional Association***"] ("*The Standards and Accreditation Department is dedicated to the field of corrections.*").*Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978)..The standards created and refined by the American Correctional Association represent fundamental correctional practices that ensure staff and inmate safety and security; enhance staff morale; improve record maintenance and data management capabilities; assist in protecting the agency against litigation; and improve the function of the facility

or agency at all levels. iii)-[" **_Cancel All Private Prisons_**"] (*"The department's roles include development and monitoring of the ACA standards, facilitation of the ACA accreditation process (formalized by the Commission on Accreditation for Corrections), and creating training and community resources to help facilities, auditors, and administrators access and implement leading correctional practices within their agency.").*<u>Henderson v. Simmons Foods, Inc</u>. , 217 F.3d 612, 615 n.3 (8th Cir. 2000). The same claims should be applied this one, they are part of the same conspiracy theory.c)-[" **_National Commission on Correctional Health Care_**"], two organizations whose training requirements often surpass minimal constitutional standards. Moreover, appellant has explained how any deficiency in training "actually caused" a constitutional violation of any sort. City of Canton v. Harris, 489 U.S. 378, 391 (1989). The courts, and the agencies must compel all of their prisons officials licenses .d)-[" **_The Law School Accreditation Process_**"] (**"***Under Title 34, Chapter VI, Part 602 of the Code of Federal Regulations, the Council of the ABA Section of Legal Education and Admissions to the Bar (the "Council") is recognized by the United States Department of Education (ED) as the accrediting agency for programs that lead to the J.D. degree. In this function, the Council and the Section are separate and independent from the ABA, as required by ED regulations. Further, state bar admissions processes generally accept a degree from an ABA-approved law school as sufficient to meet the educational requirements that must be met to be eligible to sit for the jurisdiction's bar exam and for admission to practice.").*In <u>Monell v. New York City Dept. of Social Services</u> , 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that is for the

Supreme.b)-["***https://www.americanbar.org/groups/legal_education/accreditation/schools-seeking-aba-approval***"].See A.B.A. *Section of Legal Education Admissions to the Bar, A Review of Legal Education in the United States* — Fall 1984, at 75-81 (1985).. This page contains important information for law schools contemplating an application for ABA approval, then we asking if they must applied c)-["***TMPA***"],which contain a list of schools accredited, by holistic admissions, pending for each of the Organizing and leading a law school through the ABA accreditation process is a substantial and serious undertaking. i)-["***PANUS***"].We strongly recommend that the take the time to review all of these materials, admission on motions, they might also find it useful to visit us in future offices, to discuss planning process.*Growth Control by the Ballot Box: California's Experience* (1991) 24 Loyola L.A.L.Rev. 1073, 1102.).As explained above, that is dependent upon the legislative process mandated by the planning law, and thus not  excludes resources for the development of the.ii)-["***PIRPA***"], to the initiative power, and losses sustained while in their custody of the United States of America employees. *Clervrain v. Revell* CASE NO. 18-3166-SAC (D. Kan. Dec. 14, 2018). As the letter explains, a)-["***DHS***"] failed to contact the b)-["***BOP***"] for the constitutional violations alleged.iii)-["***Deprivation of Rights***"].we note that a section 1983 action may be based on negligence when it leads to a deprivation of rights. *Jenkins v. Averett*,  424 F.2d 1228 (4th Cir. 1970).If In 1870, leaders in American corrections met with international colleagues in Cincinnati. Together, they developed inaugural principles stating the ideas and objectives underlying the practice of their profession. a)-["***Failure to lead and Serve***"]. Subsequently, if  the National

Prison Association (NPA) was founded. b)-["***Rutherford B. Hayes***"], ("*then-governor of the State of Ohio and future president of the United States, was elected as the association's first president. In 1907, the NPA was renamed the American Prison Association; it ultimately became the American Correctional Association (ACA) by action taken at the 1954 Congress of Correction in Philadelphia. This name change reflected the growing recognition of community corrections and juvenile programs, as well as all facets of the profession*").*Boddie v. Connecticut*, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).Indeed, they failed to  reviewed all  claims against them, by violated core rights, and their own laws.1)-["***Federal Tort Claims Act***"] (FTCA), If plaintiff's allegations are true, it is clear that his constitutionally based right of access to courts has been violate, then we assumed that all governors, and federal federal officials are liable.*Chambers v. Baltimore Ohio Railroad Co*., 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907) (access to courts is a privilege of American citizenship protected by the Fourteenth Amendment); *Ginsburg v. Stern*, 125 F. Supp. 596, 601 (W.D.Pa. 1954) ("*clerk's failure to file papers would be a "patent" violation of constitutional rights*") (dictum). *Cf. California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) 2)-[***Motion For ["National Arrival Act"] ["NAA"], ["Protected Rights  Act"] (PRA) By ["Nation Union Bar Treaties Act***"] ("NUBTA"). *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 381, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). And as the majority recognizes, the construction of written instruments is generally a question of law, or "*access to courts is "part of the right to petition protected by the First Amendment*").*McIntyre v. Ohio Elections*

*Comm'n,* 514 U.S. 334, 359–366, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995).The Court has given no hint that this practice changes when the statute it construes is a land patent—that is, for  public importance alleged by the inventor.a)-["***UTTA***"].*Silver King Coalition Mines Co. of Nevada v. Silver King Consol. Mining Co. of Utah,* 204 F. 166, 172 (C.A.8 1913)For example, when a court searches for  the meaning that a hypothetical person "conversant  with  the  subject-matter  with  which  the contract is dealing" would give to the words of the contract, its conclusion often remains one of law for controversies alleged…*Bloomer v. McQuewan,* 14 How. 539, 549–550, 14 L.Ed. 532 (1853), it has mostly acted by authorizing the Executive Branch to issue patents when certain statutory requirements are met.b)-["***WEDSA***"].*Keystone Bridge Co. v. Phoenix Iron Co.,* 95 U.S. 274, 279, 24 L.Ed. 344 (1877) ("*An act is designated as a "Model" Act if uniformity may be a desirable objective, though not a principal objective, and the act may promote uniformity and minimize diversity even though a significant number of jurisdictions may  adopt the act in its entirety.*Goodyear Dental Vulcanite Co. v. Davis,* 102 U.S. 222, 227, 26 L.Ed. 149 (1880). Moreover, because the ultimate meaning of a patent claim, like the ultimate meaning of a statute, binds the public at large, it should not depend on the specific evidence presented in a particular for invention rights,or upon reliefs can be granted against the defendants by.1)-["***The Model Act*** "] (TMA).*Kendall v. Winsor,* 21 How. 322, 327–328, 16 L.Ed. 165 (1859).c)-["***PIRPA***"].*Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 63, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998)("*The ULC's annual report provides a yearly overview of the ULC's newest acts, the president's initiatives, and its enactments, finances, committees, and*

*membership for the advocate.*"). 2)-["***Mr.Clervrain***"],*Seymour v. Osborne,* 11 Wall. 516, 533–534, 20 L.Ed. 33 (1871). From this admission on motion, or the purposes of the act can be substantially achieved even though it is not adopted in its entirety by every state, so if the defendants involved in defamation, and depriving an advocate access to the courts without any explanation is being question by..2)-["***https://my.uniformlaws.org/newsandpublications/publications***"].*Missouri, K. & T.R. Co. v. Kansas Pacific R. Co.,* 97 U.S. 491, 497, 24 L.Ed. 1095 (1878) But, as our decisions have also recognized, the patent is perhaps better characterized as a reward for feats already accomplished—that is, innovation and public disclosure—than as a mutual exchange of executory promises, and that is the end of the matters. *Steffel v. Thompson,* 415 U.S. 452, 458-59, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). The Declaratory Judgment Act represents Congress' judgment that, in these circumstances, it is unfair and may deter the exercise of constitutionally protected rights to compel a person to wait for an actual arrest or prosecution before allowing that person to test the legislation in all district, 3)-["***The Guidance Act***"] (TGA),*Royal Ins. Co. of America v. Thomas,* 879 So.2d 1144, 1154 (Ala. 2003) ("`It being presumed that every condition was intended to accomplish some purpose.a)-["***Uniform Function Filling Act***"] (UFFA).*Hall v. American Indem. Group*, 648 So.2d 556, 559 (Ala. 1994). For example, the "fact" of how a skilled artisan would understand a given term or phrase at a particular point in history is a legal fiction; it has no existence independent of the claim construction process. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 162, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). that is for all for agencies we filed tort

claims,particularly each of the cabinet, i)-["***DHS***"],*Brewhouse, Ltd. v. New Orleans Pub. Serv., Inc.*, 614 So.2d 118, 124 (La.Ct.App. 1993).For example, acquiring a "`permanent *first mortgage loan*'" is an essential part of the "` *construction process*, because it finances a substantial proportion, if not all, of the cost of development, including site preparation and sometimes the actual cost of acquiring the raw land.ii)-["***TETCA***"].Hershman, *Permanent Financing, 1 Modern Real Estate Transactions*, 455-56 (4th ed. 1983). That must considered all factors presenting to them for enforcing rights laws., a)-["***Immigration Guidance Reform Act***"] ("IGRA"),*Bonniecrest Dev. Co. v. Carroll*, 478 A.2d 555, 559 n. 5 (R.I. 1984) ("*The ULC's Guide to Uniform and Model Acts lists and summarizes the acts that are currently recommended for enactment. It is for legislators, legislative drafting bureaus, commissioners, and others interested in state legislation.*"). 11 Richard A. Lord, *Williston on Contracts* § 31:13 (4th ed. 1999). The best evidence of [the] intent [of the parties] is the [written] contract itself; if an agreement is `complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177-78 (2d Cir. 2004). The terms of an *oral* contract can be established through [parol] evidence, and a determination of those terms is for the trier of fact for development process.b)-["***Invention Guidance Ac***"]t (IGA).*The National Conference of Commissioners on Uniform State Laws: A Continuing Work in Progress*, 79 N.Y. St. B.J. 40, 41 (2007) .c)-["***Guide to Uniform and Model Acts 2022 – 2023***"] ("*Technically, the Act covers all business entities that must file articles of organization with the secretary of state as part of the*

*formation process.*") d)-["***Model Registered Agents Act (2006).***"] The Act (s) also allows non-filing entities for standard, such as general partnerships and unincorporated nonprofit associations, to appoint registered agents.").i)-["***TMPA***"], at page 124 (IV), were usually only "present" in their state of incorporation and, accordingly, could be served in other states, even those in which they conducted significant business..*Segregated Account of Ambac Assur. Corp. v. Countrywide Home Loans* , 376 Wis.2d 528, 898 N.W.2d 70, 75 (2017).To counteract that problem, states enacted registration statutes requiring foreign corporations to appoint in-state registered agents to receive service of process by email. ii)-["***RETODA***"] These registration statutes were designed to allow states to confer specific personal jurisdiction over foreign corporations. *Morris & Co. v. Skandinavia Ins. Co.* , 279 U.S. 405, 408-09, 49 S.Ct. 360, 361, 73 L.Ed. 762 (1929) ("*The purpose of state statutes requiring the appointment by foreign corporations of agents upon whom process may be served is primarily to subject them to the jurisdiction of local courts in controversies growing out of transactions within the [s]tate* ."). iii)-["**NEFRA**"].*World-Wide Volkswagen Corp. v. Woodson* , 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).Of what avail? Or if it to the individual to arm him with a panoply of constitutional rights if, when he seeks to vindicate them, the courtrooms door can be hermetically sealed against him by a functionary who, by refusal or neglect, impedes the filing of his papers? Viewing plaintiff's admission on motions,  with the liberality customarily afforded *pro se* pleadings. iv)-["***NATA***"] for violation. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a)-["***28 U.S.C. §§ 2671-2680***"], which the defendants are liable for

their actions, and restrictions imposed against his invention and Federal regulations should be applicable to all  at b)-["***28 C.F.R. Part 14***"], and the agencies failed to consider the claim against them found, more  to be declarative and, therefore, has  been deemed properly submitted for the reconsideration in all circumstances.4)-["***The Demurer Act***"] (TDA).*Ivanoff v. Bank of A*m., N.A. 9 Cal.App.5th 719, **725** (Cal. Ct. App. 2017), to be more informative, or we  noted that because claims have been properly filed against each of the agencies for failure to act when request information for controversies. a)-["***MOCMA***"], the letter is i-["***Not"]*** a final denial of the claims upon the violation of deprivation of rights.ii)-["***28 C.F.R. § 14.9***."]. so if the  demurrer tests the legal sufficiency of the factual allegations in admittance on motions, so misleading by the agencies will be with the same violations of legal rights. iii)-["***DHS***"] or failed to contact other agencies, which the evidence can be proving by the 1)-["***BOP***"], so the agencies, so all other agencies will be liable for the same claims, or lifetime equities.*Tigue v. Dep't of Justice*, 312 F.3d 70, 75 (2d Cir. 2002). We also "conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994). The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure. See *id.; see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) If the agencies intend to negotiate the claims for controversies, by intend to re-consider all claims will supported, they are liable for all damages within their administrative records.  noted the requirements for timely commencing a tort

action against the United States of America has been met since the time of the controversies alleged

across the country against this one. 5)-["_**USMS**_"].If the government has admitted that a specific

record exists, a government agency may not later refuse to disclose whether that same record exists

or not. *See* _Wolf v. CIA_ 473 F.3d 370, 378-79 (D.C. Cir. 2007). Additionally, the advocate is

question the defendants i)-["_**Student Volunteer Internship Program**_"]**,(SVIP)** as notice for related

notice for public resources. 6)-["_**The Resources Act**_"] (TRA), if all allegations are to be considered

in a light most favorable to the plaintiff. ii)-["_**Mr.Clervrain**_"] that is any heightened pleading

requirement that may have influenced the district court's disposition of the controversies claim

against crimes of apartheid.. _Leatherman v. Tarrant County NICU,_ 507 U.S. 163, 168, 113 S.Ct.

1160, 122 L.Ed.2d 517 (1993).ii)-["_**https://www.usmarshals.gov/careers/students**_"].We assume, for

purposes of this case..a)-["_**Volunteer Internship Treatment Act**_"] **(VITA) ("***The U.S. Marshals*

*Service Student Volunteer Internship Program* **(SVIP)** *offers current college students a diverse,*

*unpaid internship within the U.S. Marshals Service Headquarters and local District or Division*

*offices in the field.*"). b)-["_**VIPA**_"] This program provides student volunteers with an opportunity

centered in real-world work experience with a government agency and is offered for Fall, Spring,

and Summer semesters by. c)-[" _**Similarly Claims**_"], so if the Applicants must be degree seeking

students in college, professional, technical, vocational, or trade school, then we asking if the

agencies must release all of their volunteers to serve the defendants by email, and follow courts

proves as required. iii)-["_**Student Volunteer Internship Program Essentials**_"] the agencies claimed

that it  only offer volunteer intern hours (**unpaid**) at this time. Some of the information we can provide about the program includes: 1)-*Must be a United States Citizen*, that is challenged will support 2)-["***Apartheid***"] that is another question will question the agencies to define the word volunteer, so choice of law to be enforced by so called humanitarian factors that is upon reliefs can be granted by complex litigations.2)-["URMA"].*Vincent v. Hughes Air West, I*nc 557 F.2d 759, **773** (9th Cir. 1977), so a)-["***Mr.Clervrain***"] that Must be in good standing with their Academic Institution and be enrolled in at least part-time studies, then we asking if invention will be considered a person be able to recruit people to work a minimum of 24 hours (3 days) per week at least for compelling  U.S. Marshals Service Office actions, at the agencies expenses, if the minimum age for a student volunteer internship with the U.S. Marshals Service is 18 years old, if Student volunteer interns perform only clerical and administrative tasks.*Comstock Constr, Inc. v. Sheyenne Disposal, Inc.*, 651 N.W.2d 656, 661 (N.D. 2002) ("*The terms and conditions of [an] oral contract and the intent of the parties are generally questions of fact.*").*United States v. Gaudin* , 515 U.S. 506, 512, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) ("*the application-of-legal-standard-to-fact sort of question ..., commonly called a 'mixed question of law and fact,' has typically been resolved by juries" as a fact issue*").b)-["***Clervrain Assistants***"], *Mo. Pac. Ry. v. Somers*, 78 Tex. 439, 14 S.W. 779, 779 (1890). Indeed, "it is the right and duty of the court [of appeals]  to set aside a verdict, when it is against such a preponderance of the evidence that it is clearly wrong..*Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898);On the other hand, our court of criminal

appeals has struggled with the express language of the factual-conclusivity clause and its implications. The court has in the past been criticized because, "in spite of a constitutional mandate to the contrary," it had, unlike the supreme court, "continue[d] to refuse to recognize the authority of the courts of appeals to determine questions of factual sufficiency of the evidence, that is why his assistant must  be admitted for managing students being recruits, so if Student volunteer internships usually last one semester, are unpaid and cannot exceed a six-month period, then we agencies must paid education fees for his families, assistants and their families, the process for applying may differ depending on the all Division or all  District field office, that is because  are interested in all of them, Student Volunteer Internship Program Application, for amending, option,  for more information on the application process for HQ (Divisions) and District field offices.*Manne v. Jaddou* CIVIL 21-1092 PJM, at **2** (M.D. Ala. Jan. 11, 2022).We, as an intermediate court of appeals, have an express, well-established, and long-recognized constitutional and statutory duty to address appellant's question of fact as a question of fact and, if he prevails, to remand his case for a new trial against all the defendants alleged. c)-[" **Release Agencies District Offices**"].*Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634–35 (Tex.1986) if Under United States immigration law, foreign nationals wishing to live, work, or study in the United States typically must first obtain visas through an application process must be adjudicated by the agencies. *Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 927, 930–31 (D.C.Cir.1984)). Indeed, we have a duty to protect our jurisdiction:Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full

justice to litigants By 1)-["**_Natalia Segermeister_**"] _Professional Reactor Operator Soc'y v. United States Nuclear Regulatory Comm'n,_ 939 F.2d 1047 (D.C. Cir. 1991); .Who is the Assistant Counsel to the Inspector General, U.S. Department of Homeland Security, or as the Office of Inspector General, who can be reach at this email  address._Department of the Air Force, Scott Air Force Base v. FLRA,_ 956 F.2d 1223 (D.C. Cir. 1992). By remanding this aspect of the case to the Authority so that it may analyze anew the union's document request under the principles of formation of the allegation alleged  in  all  motions.2)-["**_Natalia.Segermeister@oig.dhs.gov_**"] To be Clearer please keep all personal information to Privileged and Confidential, or Attorney Work Product, and advocate for scientific needs is asking the 3)-["**_Office Of Inspector General_**"],_In Department of Justice v. FLRA_, 39 F.3d 361 (D.C. Cir. 1994). That is without appeals process,  was filed on or  before, October 17, 2023 _Via E-Mail Only_– a)-["**_godybako@gmail.com_**"]._National Treasury Employees Union v. FLRA,_ 835 F.2d 1446, 1450 (D.C. Cir. 1987)/ by the advocate who is question the Attorney from ex branches to start the process. b)-["**DHS**"],The opinions of this Court have long recognized the opprobrium which both the civilian and the military segments of our society attribute to allegations of dishonor among commissioned officers of our Armed Forces. See, _e. g., Parker_ v. _Levy,_ 417 U.S. 733, 744 (1974), i)-["**_Re: Tort Claim – Manetirony Clervrain_**"],_Clervrain v. United States_ CASE NO.17-3194-SAC (D. Kan. Dec. 8, 2017).So All parties should start negotiation process for violation of constitutional rights, so the defendants must review all claims, and evidence required by question of laws, and facts,c)-[" **_Mr. Clervrain_**:"],_Simmons v. Himmelreich,_ 136 S. Ct. 1843,

1845, 195 L. Ed. 2d 106 (2016). Who is the victim by the defendants actions or crimes against humanity can be proving by facts,  ii)-[*"FTCA"*].*Stephens v. Dep't of Health Human Servs.*, 901 F.2d 1571, 1574 (11th Cir. 1990) . We said that the courts failed in all circumstance of the cases, states that any claim for money damages resulting from an injury or loss of property caused by the negligent or wrongful act or omission of a government employee acting within the violations of various constitutional rights.iii)-[***Exhibit (VII) (A) (I-XII)***"],*Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).The scope of employment, is to be filed against the United States, for various violations, so the  claimant has taken the various,and  made all administrative claims to the agencies, that employs the person(s) who allegedly caused the injury or loss. Cf. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995). a)-[***"FTCA"***"], *Brillhart* v. *Excess Ins. Co. of America*, 316 U.S. 491 (1942), governs this declaratory judgment action and that district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief,  should be reviewed for abuse of discretion, or if the United States is liable if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred (absent any exclusion under the applicable laws the b)-[***"FTCA"***"],*Central Jersey Freightliner, Inc., v. Freightliner Corp.,* 987 F. Supp. 289, 295 (D.N.J. 1997). So if the inventor now  submitted under the FTCA shall be deemed to have been presented when a Federal, and all of the agencies receives from a claimant an executed Standard to be granted against all agencies. c)-[***Form 95 (SF-95)***"] *Urich v. Diefenderfer,* 1991 WL

17820 (E.D. Pa. Feb. 11, 1991).or other written, and should be answer by all of them with the same meaning of the laws, we had notified them, all incidents, accompanied by all evidence claim for money damages in a sum certain for injuries to or loss of property, personal injury, or death alleged to have occurred by reason of all the incidents, and injuries in fact.*Clapper v. Amnesty Int'l USA* , 568 U.S. 398, 410, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).That can addressed a constitutional challenge. 1)-["***Exhibit (I (E) (I-XII)***"] which we had suffered injuries, upon reliefs can be granted by regulations .2)-[" ***28 C.F.R. § 14.2(a)***"]. As the SF-95 instructions make clear, in support of all claims,the claimant should provide a description of the basis of the claim sufficient to conduct an investigation by each agencies. i)-["***TMPA***"] *Byrne v. U.S.* 804 F. Supp. 577 (S.D.N.Y. 1992) ("*discussing deficiency of notice regarding 28 C.F.R. § 14.2, where notice was timely in accordance with § 2675*"). ii)-["***TIPPA***"] to be included additional facts, so to inform the agencies each cases is a controversies by itself, including the known facts and circumstances attending the exposure to damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. iii)-["***SIGMA***"] The claim should also be substantiated by competent evidence as follows: (*"(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred. (b) In support of claims for damage to property,*

*which has been or can be economically repaired, the claimant should submit at least two itemized*

*signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the*

*itemized signed receipts evidencing payment. (c) In support of claims for damage to property which*

*is not economically repairable, or if the property is lost or destroyed, the claimant should submit*

*statements as to the original cost of the property, the date of purchase, and the value of the property,*

*both before and after the accident. Such statements should be by disinterested competent persons,*

*preferably reputable dealers or officials familiar with the type of property damaged, or by two or*

*more competitive bidders, and should be certified as being just and correct.0F* ); *Volvo GM Heavy*

*Truck Corp. v. U.S. Dept. of Labor,* 118 F.3d 205, 209 (4th Cir. 1997). The statement must describe

the article in enough detail to determine whether the value claimed is accurate, so if the defendants

are asking for  Picture from a catalog showing the value of a similar article (only if a sales receipt,

invoice, or statement of value from a reputable dealer, or attempt to purchase to purchases equity

with the same lifetime damages, and  the date and place of purchase must be included. . .in the

futures, so before the adjudicating each claims, or  Upon the  review of the SF-95 claims forms

submitted on, or before  September 22, 2023, which he is  demanding, for additional reasonable

damages for each cases; a)-["***$600,000,000,000***"], we found that the SF-95 did not sufficiently state

the facts and those circumstances that resulted in damage to the property or person and did not need

state the place, because the allegations are based on constitutional violations, particularly the each

has a duty to investigate all claims, to be included, statutory damages, when the agencies violated

statutory imposed. b)-[" **_Unlimited Equity Demands_**"] where the act(s) occurred is not required, because dependents deprivation of rights.._Allen v. State Bd. of Elections_, 393 U.S. 544, 555, 89 S.Ct. 817, 826, 22 L.Ed.2d 1 (1969). And "the private party has standing to obtain an injunction" in the appropriate circumstances.c)-["**_URMA_**"], that is pending to file to each courts, where sufficient detail to establish the person(s) who caused, the injury or loss, and it was clearer by compelling agencies actions.d)-["**_CJRA_**"] if the Department of Homeland Security Office of Inspector by this one, i)-[**_Compelling Each Agencies Actions_**"]._Cf. Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U_, 46 F.3d 682, 686 (7th Cir. 1995) (stating in a case involving claims brought under § 1983 that "[m]ost voting-rights cases seek equitable relief, but damages too are available for a racially motivated deprivation of the right to vote.") (citing _Nixon v. Herndon_, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927). Then we are asking if ii)-["**_DHS_**"], all of its agencies must perform their duties, so they failed to considered exclusion to public ceremony will be considered to be damages that will supports the damages, or circumstances of the defendants are liable for  more damages  by failure to consider his claims  a)-["**_$600,000,000,000_**"], to be multiply by each states, where part of the United States of America, and additionally for the courts to consider each of the agencies alleged, or filed S-95, General, that  is the Federal agencies that employs the person(s) alleged to be at fault for said injuries or losses. Additionally, there was not need of supporting evidence found to substantiate the claims despite the SF-95's reference to an "administrative record for evidence."In _Masella v. Blue Cross Blue Shield of Connecticut, Inc.,_ 936 F.2d 98, 103-05 (2d Cir.

1991), we held that a district court may consider evidence outside the administrative record upon a *de novo* review of issues of In *DeFelice v. American International Life Assurance Company of New York*, 112 F.3d 61 (2d Cir. 1997). i)-["***TMPA***"].Therefore, based on the complete records, or after each of the agency will releases, and compelling the facts from each others,and by each states will reviewed the exposure claims, and the insufficient information provided, the claims are not deficient by applicable laws. ii)-['***28 C.F.R. § 14.2(a)***"].*Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998). It was a § 1985(2) case involving allegations that the defendants had conspired to have the plaintiff to be punished, or because of revolution rights, so violation of his first amendment rights, or if they were conspired against him by retaliation for him to obey their federal officials obligation. c)-["***First Amending Rights***"].*Chavis v. Clayton County Sch. Dist.*, 300 F.3d 1288 (11th Cir. 2002). Like *Haddle, Chavis* involved a § 1985(2) claim of racially discriminatory retaliation for testimony given in court proceedings. As such, the claims will be deemed filed until the SF-95 is properly submitted, with the required information and supplemented with competent evidence, that is because all claims have been properly filed, this letter was for adjudicating the final denial all claims without exceptional.d)-["***28 C.F.R. § 14.9***"]. to be Conclusive that "motions seeking relief from a trial court's decisions adjudicating fewer than all the claims, rights, and liabilities of all the parties, should be e)-["***Rule 54.02***"].*In re Estate of Henderson,* 121 S.W.3d 643, 645 (Tenn.2003) ("*A final judgment is one that resolves all the issues in a case, 'leaving nothing else for the trial court to do.*' ") (quoting *State ex rel. McAllister v. Goode,* 968 S.W.2d 834,

840 (Tenn.Ct.App.1997). f)-["  ***Agencies to take Actions***"] In the discussion of Tennessee Rule of Civil Procedure 60, "final judgment" refers both to a decision adjudicating all the claims, rights, and liabilities of all the parties *and* to the facts that more than thirty days have passed since the final judgment was entered. g)-["  ***Amending all Judgments***"] See <u>Campbell v. Archer,</u> 555 S.W.2d 110, 112 (Tenn.1977).  If the intend to amend, and refile with all motions and evidence to supports all claims, that must be  their requirements, for timely commencing a tort action against the United States of America, that  is not limited in controversies cases against each of the defendants for performing their duties.before and after,, i)-["***28 C.F.R. § 14.4***"].<u>Mack v. Alexander,</u> 575 F.2d 488, 489 (5th Cir. 1978). so for additional Administrative claims; evidence and information to be submitted after the defendants attempt to resolve some of the claims, so all evidence by the agencies will be considered to be premature.ii)-["***28 C.F.R. § 14.9(a)***"] (*"a final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail,* or by iii)-["***Electronic Mail***"], to be included one option, for each courts to provide access to prolific litigants without the notification of final of adjudication of certain claims, pending to file all the others, and so  denial may be subject to the same violation to be included pretextual, or attempt to mislead him. So iv)-["***DHS***"] must informed congress, and all politicians that might involved in such conspiracies theory, or  for the violations of his constitutional rights,  statement of the reasons for the denial is not necessary and shall include a statement for adjudicating rights that, if the defendants all of the demands, by compelling their agencies actions, before filling suits in an

appropriate U.S. District Court not later than 6 months after the date of mailing, so the agencies have

been aware of the cases. 1)-["**_28 U.S. Code § 2401(b)_**"] (*"a tort claim against the United States shall*

*be forever barred unless it is presented in writing to the appropriate Federal agency within two*

*years after such claim accrues or unless action is begun."*) _Clervrain v. United States CASE_ NO. 17-

3194-SAC (D. Kan. Jan. 8, 2019). 2)-[" **_National Allegations_**"]in these cases as well as in his other

cases, is that he believes he should not have to explain his claims or even file a proper Complaint

before conducting discovery.3)-["**_PIRPA_**"], pending to file. _Black's Law Dictionary_ 351-352 (5th ed.

1979), so Another recurring theme in Plaintiff's motions is that he repeatedly tries to add related,

supported claims to this lawsuits, so they are part of the same controversies allegations upon all

reliefs can be grants,   a)-["**_MSPB e-Appeal_**"]They must  have updated one or more fields on

their MSPB e-Appeal user profile, so we asking them, if they have option to allow his assistants to

help in the process, then we asking if b)-["**_MSPB's_**"] must follow its own regulations which  this

agency  failed  to  promulgated  c)-[**_"5  C.F.R.  1201.26_**"].*In Piecknick v. Commonwealth of*

*Pennsylvania*, 36 F.3d 1250 (3rd Cir. 1994), The court found that placement on a wrecker rotation

list — created pursuant to a state police policy — was not a constitutionally protected interest

because the policy did not have the force of law, Contrary to the cases presenting to the courts and

the agencies in question, as they are for  promulgated rights,  pursuant to any specific state statutes

or regulations, and that must be  approved by any state agencies, so the courts, and the agencies must

adjudicated the first step in the process, which is not  required that parties notify the appropriate

Board office and one another, in writing, email , of any changes in the names or addresses on the service by electronic filling. d)-["***MSPB Jurisdiction***"**].**As we have explained, the CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue. See *supra,* at 2130, 2133 – 2134; see also 5 CFR § 1201.3(a) (stating that "[t]he Board has jurisdiction over appeals from agency actions" and enumerating covered actions); *Todd v. Merit Systems Protection Bd.,* 55 F.3d 1574, 1576 (C.A.Fed.1995) (explaining that the employee "has the burden of establishing that she and the action she seeks to appeal [are] within the [MSPB's] jurisdiction"). Accordingly, as the cases cited by petitioners demonstrate, the Federal Circuit has questioned its jurisdiction when an employee appeals from a type of adverse action over which the MSPB lacked jurisdiction. But the Federal Circuit has never held, in an appeal from agency action within the *MSPB's* jurisdiction, that its authority to decide particular legal questions is derivative of the *MSPB's* authority. To the contrary, in *Briggs v. MSPB,* 331 F.3d 1307, 1312– 1313 (2003). e)-["***Compelling all Judicial Officials***"]. Indeed,  the complexity of the cases will required his legal materials 1)-["***BSFF***"] withed, or his invention to protect innocent people against crimes of apartheid, so no more excluded to public ceremony, or no more attempt to deported them because they are lack of education, the future irreparable harms by inquiring the defendants to demonstrates that their position was justifiable in all claims in all motion filed or to for them to show cause why? After they adjudicated some claims, and access to financial demand for take care his families, by create job, and economic development as part of his invention rights, the reliefs sought

after, and before must be adjudicated or any other reliefs within the jurisdiction and discretion of the courts should be granted by evidence, to be included each the last order, or by any orders from the all courts involved in the violations. 2)-[*"21-CV-01379"*],McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996). 3)-[*"Text Orders Abolishment"*], so if the courts in business of denying proper reliefs, 4)-[*"Dkt, 17"*] *Motion for Extension of Time to File,* that is the end of the matters, so before filling to each courts, federal circuit courts, access to pacer became mandatory, that is without exception, within admittance on motions..*Commonwealth* v. *Allen,* 378 Mass. 489, 498 (1979). The defendant's pimping operations were interstate and the single justices might have found "the possibility of flight to advance publications." *Commonwealth* v. *Levin,* 7 Mass. App. Ct. 501, 505 (1979). i)-[*"Agencies to admit their wrongful actions"*] If the the Seventh Circuit claims, or if it provided the plaintiffs with the following instruction to be released: therefore he is entitle for additional to reliefs on the same grounds.ii)-[*"S-95"*], that was filed against each of the judicial officials. So if they were against his movement, if he against serious crimes, that is the end of the matters to be published, so if Trial counsel's performance exceeded by far the minimum constitutional standard of "behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer.. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).In this case, there was cogent evidence on every element against the defendants actions to be charged constitutional violation or claims.iii)-[*" Compelling National Judges Performance"*] that is because the advocate or who is filing his motion with the same intent to prove the judges lack of common sense, and

they should not continue to retaliate against him, and  for challenging their abused of power, and

discretion's or he  wishes to request an extension of time in which to file the notice of appeal,

appellant should file an appropriate motion in the district courts, not this courts, as soon as possible.

Appellant's jurisdictional memorandum should include a discussion of the status of any such

motion." Order at 1, _Clervrain v. McConchie_ , No. 22-1262 (7th Cir. Feb. 22, 2022), ECF No. 4.

Though the instant motion is largely unintelligible, it states "the plaintiff s asking to file additional

time for compelling all judges. 1)-['**_Jurisdictional Memorandum_**']...." (Doc. 17 at 5), or also

pending for additional extension, or  because of the complexity of the cases, he  is pro se, or  asking

for additional time, and to inform the  to the Seventh Circuit's that the district courts has abused its

discretion, the Court liberally construes Plaintiffs' request as a motion for extension of time to appeal.

moreover, given that the appeal is not frivolous and  taken in good faith (see doc. 13), As evidence

the Court declines to extend Plaintiffs' time to file a notice of appeal under Federal Rule of Appellate

Procedure 4(a)(5).. 2)-["**_SIGMA_**"]._Borio v. Coastal Marine Const. Co._, 881 F.2d 1053, 1055 (11th

Cir. 1989). The appellants filed a timely appeal of the order denying their motion for extension of

time to file an appeal.3)-["**_NAPA_**"]. That is because, he is presenting those claims, they are in

violations of their own laws. a)-["**_APA_**"] as matter of legal wrong._In Grein v. LaPoma_, 54 Wn.2d

844, 340 P.2d 766 (1959), we erased the distinction between the mass torts allegation, or if the

defendant caused, libel and slander, even so the b)-["**_INA_**"']._In Church of Scientology Int'l v. Time

_Warner, Inc_., 806 F. Supp. 1157 (S.D.N.Y. 1992), Church of Scientology, Inc. ("CSI") contended six

passages in an article in Time Magazine contained allegedly defamatory statements which were sufficiently for specific performance. to be. and concerning discrimination and to overcome the group libel doctrine against the defendants..c)-["***Partial Remanded***"] the cases for controversy for further review of each claims in all motions, or for the clerks to serve the defendants immediately, or to be is directed or notify all parties and the Seventh Circuit of this Order. Entered by Judge Joe Billy McDade on 03/22/2022. ("DRS"), which generally governs appellate review of district courts findings of fact (court/court review), rather than the less stringent standards set forth in the Administrative Procedure Act d)-["***APA***"].Here, if the advocate has identified all cases where individual members of groups larger, or more have been permitted to go forward against the agencies actions. i)-["***Alien Status***"], that is the end of the matters. *Neiman-Marcus v. Lait,* 13 F.R.D. 311 (S.D.N.Y. 1952). ii)-[" ***Supporting Group Libel***"].*National Nutritional Foods Association v. Whelan,* 492 F. Supp. 374 (S.D.N.Y. 1980).The New York Courts have also used an "intensity of suspicion" test to evaluate whether or not to sustain actions premised on group libel. *See Brady,* 445 N.Y.S.2d at 793-795; citing with approval *Fawcett Publications, Inc. v. Morris,* 377 P.2d 42, 51 (Okla. 1962).Then, if iii)-["***Mr.Clervrain***"], who is proving his cases, and the defendants failed to considered, which permit a court to set aside agency findings of fact found to be arbitrary, capricious, an abuse of discretion.a)-["***Exhibit (IX) (A) (I-XII)***"].*Rozanski v. Fitch,* 113 A.D.2d 1009, 494 N.Y.S.2d 847 (4th Dept. 1985). New York Courts have so held with respect to negligence claims coupled with claims for defamation. *See Butler v. Delaware Otsego Corp.,* 203 A.D.2d 783, 610

N.Y.S.2d 664 (3d Dept. 1994).b)-[" ***Emotional Distress***"] by supported by substantial evidence (court/agency review), c)-["***5 U.S.C. § 706***"]. The court will found  the judge 's factual finding to be clearly erroneous. 1)-["***DHS***"] to evaluate emotional distress for many years and these cases are not frivolous claims for his.2)-["***Holistic Admissions***"].When understood in context, the Plan is narrowly tailored to serve a compelling governmental interest in ensuring that all students in  every states , or public high schools, middle School will receive the educational benefits of an integrated learning environment. d)-["***CENTS***"] Navigating Holistic Admissions for a Stronger Graduate Program Holistic admissions, inclusive of *GRE®* scores, can help you admit a qualified and diverse graduate classes. e)-["***https://www.holisticadmissions.org***"].*In re Zurko*, 142 F.3d 1447, 1458 (Fed. Cir. 1998). If the Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. One of  the Amendment's "core principles" is to "do away with all governmental imposed discrimination based on race," *Palmore v. Sidoti* 466 U.S. 429, 432, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984), and to create "a Nation of equal citizens in a society where race is irrelevant to personal opportunity and achievement." *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 505-06, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). This is why "[r]acial and ethnic distinctions of any sort are inherently suspect and . . . call for the most exacting judicial examination. *Miller v. Johnson,* 515 U.S. 900, 904, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995). i)-["***Mr.Clervrain***"],  that is because he is Learning how he can benefit from holistic admissions practices in all universities across the country to be

clearer for his honorary degrees.*In Universal Life Church v. United States*, 372 F. Supp. 770 (E.D.Cal. 1974), a case concerning the tax-exempt status for all of his proposed names Universities across the country. ii)-["***University of Jovenel Moise Science***"] (UJMS) in the honored of the former president of Republic of Haiti, the Courts must to draw such a distinction, of for criminal investigation Against 1)-["***Gang Members***"], and for the Issuance of the Honorary Doctor, but the evidence are very supportive. 2)-["***DHS***"] to evaluate how many schools will needs in republic of Haiti, based upon the testimony from founder, that education must developed for additional honorary degrees in criminology study because its policy was to issue ministerial credentials upon request. 3)-["***Notice for Haitian People***"].As the proponent of the expert testimony, the government must establish its admissibility by a preponderance of the evidence.*Nelson v. Tenn. Gas Pipeline Co.,* 243 F.3d 244, 251 (6th Cir. 2001). That a method that looks at multiple sources of information to get the fullest picture of each advocate's potential.*Buckley v. Valeo,* 424 U.S. 1, 50 (1975) (*"legislative restrictions on advocacy of the election or defeat of political candidates are wholly at odds with the guarantees of the First Amendment"*).*Southeastern Promotions, Ltd. v . Conrad,* 420 U.S. 546 (1975). By preventing the anyone to interfering with the process from employing millions of potential advocates to carry their political message to the people of the new states, we call it 4)-["***Commonwealth of Haiti***"],*" Fox v. Washington*, 236 U.S. 273, 275–277, 35 S.Ct. 383, 59 L.Ed. 573 (1915), a federal statute criminalizing candidate solicitation of contributions for " 'any political purpose whatever.*United States v. Wurzbach*, 280 U.S. 396, 398–399, 50 S.Ct.

167, 74 L.Ed. 508 (1930),The ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Danford*, 435 F.3d 682, 686 (7th Cir. 2006).Here, her was deprived of a fair trial when the jury heard critical. a)-["***UCCA***"] for them, and to Contact a Graduate Education Advisors A number of graduate faculty and administrators serve as graduate education strategic advisors with ETS. Contact them for answers to your questions and consultation on matters of recruitment and admissions.b)-["***info@holisticadmissions.org***"],*United States v. Mansoori*, 304 F.3d 635, 665 (7th Cir. 2002) ("while voice identification based on hearing defendants speak only once in open court was "relatively weak," admission was proper because "we can say as a matter of law that the brief opportunity to identifying all assistants, to hear the defendants in courts be sufficient to permit his voice identification.").c)-["***UTTA***"].Comment, *Evidence: Admissibility of Spectrographic Voice Identification* (1971-1972) 56 Minn.L.Rev. 1235, 1239; Comment, *The Voiceprint Dilemma: Should Voices be Seen and not Heard?* (1975) 35 Md.L.Rev. 267.) Spectrograms are taken of certain cue words, such as "the," "me," "on," "is," "I," and "it," spoken by a known voice and an known voice. d)-["***Mr.Clervrain***"], *Bachenski v. Malnati,* 11 F.3d 1371, 1376-77 (7th Cir. 1993);That must be An examiner then visually compares the specific of the same words, as spoken, and also listens to the two voices. Based upon these visual and aural comparisons, the examiner states his opinion whether or not the voices, known as the inventor, since the identification process is essentially an exercise in pattern matching, the examiner's opinion is to a large extent a subjective one based upon the relative aural similarity dissimilarity of the

those voices and visual  comparison, that is for the purpose of informing public importance as matter of legal his rights e)-*["**Motion For ["Bank Equities Act"] ("BEA") Or ["National Hiring"]  Act"] ("NHA") By ['National ["I, Am"] Teaching  Act"] ("NITA").**Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 303 (7th Cir. 1991).The plaintiff remains entitled to litigate even if the district judge concludes that he is not entitled to proceed IFP.*United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). i)-["**Exhibit (M) (IV) (I-XII)**"].*Quiles v. O'Hare Hilton,* 572 F. Supp. 866, 867 (N.D.Ill. 1983). Equitable grounds may serve to toll the running of the statute. *Archie v. Chicago Truck Drivers,* 585 F.2d 210, 217 (7th Cir. 1978). It is also settled that presentation of a *pro se* complaint and a petition to proceed in forma pauperis toll the limitations periods by act of congress intended alleged in this  f)-["**"28 U.S.C. § 2000e-5(f)(1)**."] *Quiles v. O'Hare Hilton,* 572 F. Supp. 866, 867 (N.D. Ill. 1983);The first question must be examined in light of the particular Court's failure procedure of common laws. i)-["**Exhibit (M) (IV) (I-XII)**"].*Harris v. National,* 454 F.2d 307 (7th Cir. 1971). The Morality of Law 84 (1964).Congress of course acts in the context of existing common-law rules, and in construing a statute a court considers the "common law before the making of the Act. ii)-["**Uniform Fees Waiver Act**"] (UFWA)" *Heydon's Case*, 3 Co. Rep. 7 a, 76 Eng. Rep. 637 (Ex. 1584).But Congress enacts a statute to remedy the inadequacies of the pre-existing law, or  common law. iii)-["**No More Judicial Bias**"].*Daly-Murphy v. Winston,* 820 F.2d 1470, 1477 (9th Cir. 1987).The constitutional violations alleged in the complaint are more properly characterized as alleging direct constitutional tort.*King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987)

Respectfully submitted,

1)-Date: [ ***001-S***"] ["**24-CV-02049**"]
 09/20/2024

*Manetirony Clervrain*
**S/ *Manetirony Clervrain (Teacher)***
**["Foundation International Award Science"] ("FANTAS")**
*Chief Informative Technology Officer* **(CITO)**
*bclervrain@gmail.com*
4326 S Scatterfield Road
Suite 153
Anderson, IN 46013
765-278-9806

Date: ["***002-E***"]["**24-CV-02049**"]
 09/20/2024

*Lanese Normil*
**S/ *Lanese Normil*** ("Student")
**["Educative Market Exchange*"] ("EME")***
["*Assistant Informative Technology Officer*"] (AITO)
*famybako@gmail.com*
4326 S Scatterfield Road
Suite 153
Anderson, IN 46013
765-278-9806

 Under ("UNCA), at page,1, that is for ["**_Judicial Intervention_**"], or they failed to question the defendants officials to ["**_Clarify_**"], or to [**·**_Justify_"] their actions pending to file criminal forms; ["**_AO 91 (Rev. 11/11) Criminal Complain_**"] to be filed against the defendants across the country, and their duty is invoked to why? we should questioned serious criminals to be prosecuted within extended Jurisdictions that must be applied, and that is because the Supreme has made here clearer,  to all exercises of state court jurisdiction, including exercises of quasi in rem jurisdiction, any challenged for jurisdiction by judicial officials is here. _Shaffer v. Heitner_ 433 U.S. 186 (1977)

## CERTIFICATION OF SERVICES

**B-THEREBY**, The plaintiff a)-["**_Manetirony Clervrain_**"] or the activist requesting justice, and does swear in that particular situations are very demanding that the defendants are involved in fraudulent intention by failure to intervene._Leber-Krebs, Inc. v. Capital Records,_ 779 F.2d 895 (2d Cir. 1985), in which we emphasized that the fraud-on-the-court rule enunciated in _Hazel-Atlas_ "should be characterized by flexibility and an ability to meet new situations demanding equitable intervention. b)-["**_The Notorious Act_**"] (TNA).Whether the suit concerns a decree in equity or a judgment at law, it is for relief granted by equity against an unjust and inequitable result, and is subject to all the customary doctrines governing the award of equitable relief. i)-["**_Motion For ["Matters Factors Act"], (MFA)"], ["National Debate Act"]("NDA") By The ["Uniform Functions Forms Act"_**] **(UFFA).**Whether the suits concerns a decree in equity or a judgment at law, it is for relief granted by equity against an unjust and  for equitable demand. ii)-["**_TMPA_**"] At this points to the equitable and flexible nature of the rule in support of his contention that the saving clauses, and for controversies allegation against the defendants actions.iii)-["**_Fed.R.Civ.P. 60(b)_**"] provides a sweeping avenue of relief against their illegal actions, or judgments. c)-["**_The Holistic Act_**"] (THA).In the light of the facts I have recited, it seems clear that if the agencies failed again,  or their conducts must be weighed merely in the aspect of negligent failure to investigate._Mack v. South Bay Beer Distrib., Inc.,_ 798 F.2d 1279, 1282 (9th Cir. 1986) 1)-[**_"Motion For ["Matters Factors Act"], (MFA)"], ["National Debate_**

*Act"]("NDA")  By The ["Uniform Functions Forms Act"*] **(UFFA).***Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872). If A judge will  be deprived of immunity because the action he took was in error, was done maliciously. *Stump v. Sparkman,* 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). They were  excess of their authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.*Phillips v. County of Allegheny,* 515 F.3d 224, 231-32 (3d Cir. 2008).If [A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*Crabtree v. Muchmore,* 904 F.2d 1475, 1480-81 (10th Cir. 1990). 1)-["***DHS***"], among the others participating, or such declare on this date against the defendants for conspiracy theory.*Rogin v. Bensalem Twp.*, 616 F.2d 680, 686-87 (3d Cir. 1980)…2)-[".........../.........../.......,"] to be served by the United States Marshall against all of the defendants alleged under [***"DESA"***]**,** to be served to the defendants electronically, on each party to above proceeding and envelop containing the above documents in the united states addresses to each of them and  by email, or by delivery to a third party to technology process, that is for the Court of Appeals' formulation, an invention is a "process" only if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing, or if this Court has "more than once cautioned that courts 'should not read into the patent laws limitations and conditions which the legislature has expressed.*Diamond v. Diehr,* 450 U.S.

175, 182, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981). To wit: The Court is mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances. The Court is equally mindful that caution is advised in any pretrial  disposition of conspiracy allegations in civil rights actions.*Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990).. If the extent of municipal power or home rule has been questioned in the courts. In <u>*City of Miami Beach v. Fleetwood Hotel, Inc.*</u>, 261 So.2d 801 (Fla. 1972), the supreme court held that the constitutionally provided powers were insufficient to permit a municipality to enact a rent control ordinance absent enabling legislation, then we asking the agencies the advocate rights.a)-["***Hands On Lessons***"].This noteworthy program is certainly a good "hands-on" civic lesson for these students and may clearly be included in a regular or special town meeting must be  called by the mayor or by the board of education across the nation for their interventions rights. b)-["***Core Academic***"].<u>*Sagebrush Rebellion, Inc. v. Watt*</u> 713 F.2d 525 (9th Cir. 1983). As set forth in the Motion to Intervene, all of these applicants in intervention share the same common interest insofar as the subject matter of this litigation is concerned, so the defendants will be admitted with the inventor, so for proper clarification can not be denied by each of the defendants actions. 1)-["***Manners***"],It provides these students an opportunity to actually participate in local government.vi)-["***UTTA***"].<u>*North Carolina Bd. of Education* v. *Swann*</u>, <u>402 U.S. 43, 45</u> (1971). i)-["***Economic Development***"].The complaint explains that, contrary to Congress' expectation when it enacted the 1996 Telecommunications Act, and consistent with their

own economic self-interests. ii)-["***Brandako, Inc***"].*Mayor & City Council of Baltimore*, 709 F.3d at 136 ("'*[P]lus factors' may include ... evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators ....*").*Mayor & City Council of Baltimore, v. Citigroup, Inc*., 709 F.3d 129, 135. (2d Cir. 2013).To survive a motion to dismiss, a complaint must plausibly plead a claim to relief—i.e., allege facts that do more than "create[] *a suspicion* [of] a legally cognizable right of action," *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 182 (2d Cir. 2012) a)-["***Character Formation***"].*Applied Materials v. Advanced Semiconductor Materials America, Inc.,* 98 F.3d 1563, 1569 (Fed. Cir. 1996). The actions of the PTO "in is requiring the swearing of a supplemental oath . . . are presumably proper classification as required by laws, so b)-["***Mr.Clervrain***"]." *Railroad Dynamics, Inc. v. A. Stucki Co.,* 579 F. Supp. 353, 372 (E.D.Pa. 1983)..iii)-["***Health Social Skills***"].The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills to be concerns.. c)-["***Conflict Resolution Skills***"].The job coach for the Welfare-to-Work Initiative is required to have direct contact with the participants through crisis intervention, act as liaison between the participant and the employer, maintain a phone and travel log, establish a trusting relationship with the participant, act as an advocate for the program, reinforcement of stress management and conflict resolution skills, assist the employment specialist in job placement when needed, keep proper documentation of incidents that should be discussed with the entire staff, and be abreast of all community services available to participants..*Heller v. Doe*, 509 U.S. 312,

329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). These responsibilities all require direct participation

in the delivery of the educational programs, that the defendants are liable for their action upon

their evaluation on motion for 1)-["***WEDSA***"] system, all registration process, so we asking the

defendants if they must evaluate d)-["***Critical Thinking Skills***"].As a threshold matter,

respondents have demonstrated, and the advocate  does contest, that the agencies is not a proper

party to this matter. 2)-["***NEDSA***"] It is well settled that the 3)-["***DOE***"] and the are must be

informed separate and distinct legal entities ( *Perez ex rel. Torres v City of New York*, 41 AD3d

378, 379 [1st Dept 2007].a)-["***La. Stat. tit. 17 § 285.1 Current through the 2023 Legislative***

***Session Section 17:285.1 - Science education; development of critical thinking skills.***"] ("***A. This***

*Section shall be known and may be cited as the "Louisiana Science Education Act".****B.(1) The State*

*Board of Elementary and Secondary Education, upon request of a city, parish, or other local*

*public school board, shall allow and assist teachers, principals, and other school administrators to*

*create and foster an environment within public elementary and secondary schools that promotes*

*critical thinking skills, logical analysis, and open and objective discussion of scientific theories*

*being studied including, but not limited to, evolution, the origins of life, global warming, and*

*human cloning.****(2) Such assistance shall include support and guidance for teachers regarding*

*effective ways to help students understand, analyze, critique, and objectively review scientific*

*theories being studied, including those enumerated in Paragraph (1) of this Subsection.****C. A*

*teacher shall teach the material presented in the standard textbook supplied by the school system*

*and thereafter may use supplemental textbooks and other instructional materials to help students understand, analyze, critique, and review scientific theories in an objective manner, as permitted by the city, parish, or other local public school board unless otherwise prohibited by the State Board of Elementary and Secondary Education.**D.** This Section shall not be construed to promote any religious doctrine, promote discrimination for or against a particular set of religious beliefs, or promote discrimination for or against religion or nonreligion.**E.** The State Board of Elementary and Secondary Education and each city, parish, or other local public school board shall adopt and promulgate the rules and regulations necessary to implement the provisions of this Section prior to the beginning of the 2008-2009 school year.* b)-["**_La. R.S. § 17:285.1_**"].*Glines* v. *Wade*, 586 F.2d 675, 677, n. 1 (CA9 1978). The Court of Appeals for the Ninth Circuit affirmed the finding of facial invalidity. *Glines* v. *Wade*, 586 F.2d 675 (1978). Following its decision in an earlier case involving collective petitions to Members of Congress, the court first must determined that the defendants violated the c)-["**_INA_**"] entirely, so the courts must inform the defendants, is this laws must applied for advocate licence..*Cf. Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F.Supp.3d 565, 575 (S.D.N.Y. 2016). In *Palmer,* the licenses' one-year term had expired, which established the basis for the copyright violation.1)-["**_Ill. Admin. Code tit. 23 § 25.840 Current through Register Vol. 47, No. 40, October 6, 2023 Section 25.840 - Appeals to the State Educator Preparation and Licensure Board_**"] ("*a) A licensee may appeal the lapse of a license for failure to complete renewal requirements to SEPLB. The licensee shall submit a request for an*

*appeal by certified mail, return receipt requested, no later than September 30 of the year the license lapsed. The appeal request shall be sent to the State Educator Preparation and Licensure Board, 100 North First Street, Springfield, Illinois 62777-0001.***b)** *Within 90 days after receipt of an appeal submitted pursuant to subsection (a), the SEPLB may hold an appeal hearing or make a recommendation based on a review of the record, as enumerated in Section 21B-45(m) of the Code. If a hearing is to be held, the Board shall notify the licensee of the date, time, and place of the hearing.***1)** *The licensee shall submit to SEPLB any additional information as SEPLB determines is necessary to decide the appeal.***2)** *If a hearing is held, SEPLB may request that the licensee appear before it. The licensee shall be given at least 10 days' notice of the date, time, and place of the hearing.***3)** *In verifying whether the licensee has met the renewal criteria set forth in Section 21B-45 of the Code and this Subpart J, SEPLB shall consider:***A)***the regional superintendent of education's rationale for recommending nonrenewal of the license, if applicable;***B)***any evidence submitted to the State Superintendent along with the individual's electronic statement of assurance for renewal provided in ELIS; and***C)***the State Superintendent's rationale for nonrenewal of the license. (See Section 21B-45(m)(2) of the Code.)***c)** *SEPLB shall notify the licensee of its decision regarding license renewal no later than 30 days after reaching a decision as set forth in Section 21B-45(m) of the Code. Upon receipt of notification of renewal, the licensee, using ELIS, shall pay the applicable registration fee. If the decision is not to renew the individual's license, the notification shall state the reasons for that decision.***d)** *An individual whose license is not renewed*

*because of a failure to complete professional development in accordance with this Subpart J may reinstate the license once that license has lapsed (i.e., September 1 of the year in which the license expired) if the individual has;* **1)** *paid any accumulated registration fees, including registration fees owed;* **2)** *either paid the penalty or completed the coursework required under Section 21B-45 of the Code with a grade of C- or higher; and* **3)** *presented evidence of completing the balance of the professional development activities that were required for renewal of the license previously held.* **e)** *SEPLB shall not renew any license if information provided on the application makes the holder subject to the requirements of any of Sections 25.485 through 25.491. Any disciplinary action taken against a licensee under any of those Sections shall be in accordance with the rules of the State Board for Contested Cases and Other Formal Hearings (23 Ill. Adm. Code 475). The decision of the State Board is a final administrative decision and shall be subject to administrative review as set forth in Section 21B-90 of the Code..* <u>Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,</u> 86 N.Y.2d 685, 691, 636 N.Y.S.2d 734, 660 N.E.2d 415 (1995).In contrast, "contract obligations that are to be performed after partial performance by advocate abilities this one in these cases for controversies..2)-["***CBP One™ Mobile Application***"] ("*On October 28, 2020, U.S. Customs and Border Protection (CBP) launched the* **FREE** *CBP One™ mobile application on the Apple App and Google Play stores.*"). a)-["***Mr.Clervrain***"] is requesting for additional reliefs, that is for agencies  i)-["***USCIS***"] to Stop all application pending from any ii)-["***Haitian National***"] because for potential claims  b)-["***United States of Mexico***"] ("*Allows users with approved I-134s*

*to request authorization to travel via air to the United States. For additional information on the*

*ATA process, please visit the <u>USCIS CHNV website</u>.*"). <u>United States v. Fernandez-Ventura</u>, 132

F.3d 844, 846-48 (1st Cir. 1998).The First Circuit has held that questions regarding citizenship and

purpose of an entrant's trip to the United States are routine, even when CBP officers are aware of

likely criminal activity.c)-["***Gangs Members***"] without action to restrain the suspect, but to protect

the interest of United States of America. iii)-["***CBP One™ Mobile Application | U.S. Customs***

***and Border Protection***"]So any Travel Document Authorization must be declined upon further

notice, must pending for Investigation. a)-["***Forms I-134A***"].Similar claims against all that had

filed other forms, such this one so b)-["***DHS***"] will be in the interest of the people not to exposed

them to potential crimes.c)-["***Fugitive Members***"].<u>Smith v. U.S. Marshal Fugitive Unit No</u>. 23-

6188, at *1 (4th Cir. Jun. 21, 2023) ("*CBP One™ is a mobile application that serves as a single*

*portal to a variety of CBP services*."). 1)-["***FOIA Request***"].Through a series of guided questions

for each agencies to consider all factors , the app directs each type of user to the appropriate

services based on their necessary needs.2)-["***NRC2023514049REQ***"].2)-["**"**] <u>*In Baby Neal v. Casey*</u>,

43 F.3d 48 (3d Cir. 1994), So the advocate alleged that systemic problems is within the agencies if

they failed to stop those applications, or *As part of CBP's* comprehensive effort to improve the

security of our nation's borders while enhancing legitimate travel and trade, CBP One™ provides

increased accessibility and transparency to some of CBP's most utilized services..<u>*Williams*</u>

<u>*cited Dodson v. Atrax Division of Wallace-Murray Corp.*</u>, 437 So.2d 1294 (Ala.Civ.App. 1983),

for the proposition that, if any injury, so we must declared rights, to protect the American people by invention if the agencies involved in illegal laws, so we are asking for Deportation of all, pending for proper classification, CBP One's™ privacy impact assessment can be found by laws, we are questioning the applications 3)-["***DHS/CBP/PIA-068 CBP One™ Mobile Application***"]..*Tangorre v. Mako's, Inc.*, 2003 WL 470577, at *6 (S.D.N.Y. Jan. 6, 2003). With respect to the State's important and legitimate interest in the health of the people, the "compelling" point, in the light of present media knowledge, is at approximately that is not the end of the first Track filed to the FOIA Portal so the 4)-["***USCIS***"], so the agencies must release all applications, without identification is being question for the agencies actions.5)-["***RASA***"].This is so because of the now-established publication fact pending. d)-["***Motion for General Circulation, Publication Act (PA) by invoking the Universal Judicial System Act***"] (UJSA).*Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81 (1967). It also is worth emphasizing that the actual malice standard is satisfied merely through a showing of their actions, "malice" in the ordinary sense of the term, or with reckless disregard as to whether, not it was true.e)-["***USCIS***"] must be published in their website to stop all pending applications in the interest of justice, ..*Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 56 (1988). i)-["***The Assistants Act***"] (TAA).If they are are prolific against crime against humanity, their motive is to end crimes in Republic of Haiti, that is the end of the matters for controversies, should  be admitted to United of America by way of performances process could be verifiable.a)-["***Admittance by laws Process***"].*People v. Young*, 100 Ill. App.2d

20, 241 N.E.2d 587 (1968). These views are in accordance with the ancient rules of the common law and are predicated on the constitutional principle that a person's home is his castle that is for identification.b)-["**_UTTA_**"].The requirement is for the protection of all of his assistant as well as their families members, and for the protection of the occupant and the recognition of his constitutional rights. c)-["**_Exhibit IV (C) (I-XII_**"]or by communications of the otherwise available constitutional protection them..*Spahn* v. *Julian Messner, Inc.*, 18 N.Y.2d 324, 221 N.E.2d 543 (1966). ii)-["**_The Identity Act_**"] (TIA). That is because, the scope would present different questions of violation of the constitutional protections for speech and press, so we asking the agencies to perform duties. 1)-["**_USCIS_**"] ("*U.S. Citizenship and Immigration Services has issued policy guidance in the USCIS Policy Manual clarifying that a sole proprietorship may not file a petition on behalf of its owner because the sole proprietorship does not exist as a distinct legal entity separate and apart from the owner.*").*Patterson v. V. M Auto Body* 63 Ohio St. 3d 573, **574** (Ohio 1992): 2)-["**_USCIS Clarifies Policy on L-1 Petitions_**"].*Duval v. Midwest Auto City, Inc.* (D.Neb. 1977). 3)-["**_Brandako, Inc_**"] ("*This Policy Manual update affirms the existing guidance. The update distinguishes a sole proprietor from a self-incorporated petitioner (such as a corporation or a limited liability company with a single owner), where the corporation or the single member limited liability company is a separate and distinct legal entity from its owner, which may petition for that owner.*").*iii) ["**_Their Agents Act_**"] (TAA)..Ganino v. Citizens Utilities Co.* 228 F.3d 154, **163** *(2d Cir. 2000).*for example, a rule promulgated by the agencies pursuant to

its rulemaking authority.a)-["**_NATA_**"]._Mourning v. Family Publications Service, Inc._ 411 U.S. 356, **371** (1973), if the language of the enabling provision precludes us from accepting so narrow an interpretation of the agencie power. b)-["**_DHS_**"] to delegate that power to person proving their performance to c)-["**_FOIA Requests_**"], so if iv)-["**_Mr.Clervrain"_**] is proving his cases, that is the end of the matters, for 1)-["**_Advocate_**"], 2)-["**_Assistants_**"], and 3)-["**_Agents_**"], so all are evidence will be filed to different courts.d)-_Brandako Inc, Manetirony Clervrain v. Indiana Bar Association, State Of Indiana_ 16D01-2211-CT-000626, Indiana State, Decatur County, Superior Court (Nov. 22, 2022). v)-["**_Notice for Re-Opening all Courts Cases_**"]._S&W Enters., LLC v. S. Trust Bank of Ala.,_ 315 F.3d 533, 536 (5th Cir. 2003). that is the for question all agencies actions, so the the District Court has wide discretion in its regulation of pretrial matters." _Si-Flo, Inc. v. SFHC, Inc.,_ 917 F.2d 1507, 1514 (10th Cir. 1990). a)-["**_UFTA_**"], or that is pending to file access the country as evidence. b)-_["**"Del. Code tit. 21 § 3209 Current through 2023 Legislative Session Act Chapter 236 Section 3209 - Concurrent agents, joint agents, and successor agents"]_ **(a)** _A principal may designate 2 or more persons to act as concurrent agents. Each concurrent agent may exercise its authority independently._**(b)** _A principal may designate 2 or more persons to act as joint agents. No joint agent shall have the power to act without the agreement of all other joint agents and shall have no power to act independent of the other agent._**(c)** _If the principal designates more than 1 agent and does not specify that they are concurrent agents or joint agents, such agents shall be considered concurrent agents._**(d)** _A principal may designate one or more_

*successor agents to act if an agent resigns, dies, becomes incapacitated, is not qualified to serve, or declines to serve. Unless the personal power of attorney otherwise provides, a successor agent:(1) Has the same authority as that granted to the original agent; and(2) May not act until all predecessor agents have resigned, died, become incapacitated, are no longer qualified to serve, or have declined to serve.(e) A principal may give an appointed agent or another person designated by name, office or function the authority to designate by a writing executed by such person, 1 or more concurrent, joint, or successor agents in addition to those designated in the personal power of attorney. Unless the personal power of attorney authorizing the appointment of such further agents otherwise provides, a concurrent, joint, or successor agent appointed by this method:(1) Has the same authority as that granted to the original agent; and(2) May not act until the predecessor designee has resigned, died, become incapacitated, is no longer qualified to serve, or has declined to serve.(f) Except as otherwise provided in the personal power of attorney and subsection (g) of this section, an acting agent that does not participate in or conceal a breach of fiduciary duty committed by another agent, including a predecessor agent, is not liable for the actions of the other agent.(g) An acting agent that has actual knowledge of a breach or imminent breach of fiduciary duty by another agent shall notify the principal and, if the principal is incapacitated, take any action reasonably appropriate in the circumstances to safeguard the principal's best interest. An agent that fails to notify the principal or take action as required by this subsection is liable for the reasonably foreseeable damages that could have been avoided if the*

*agent had notified the principal or taken such action.*.*Simmons v. Uintah Health Care Special Dist.,* 506 F.3d 1281, 1284-85 (10th Cir. 2007)..Indeed, our cases recognize for school boards interventions, or additional level administrators, are generally  the final policymakers in public interest, or for their importance, because administrators are usually constrained by the board-established policies. *See, e.g., Brammer-Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1190 (10th Cir. 2010). c)-*[*"***21 Del. C. § 3209***"]*.The district court was right to grant the advocate summary judgment on these retaliation claims, too. So the agencies must answer all allegations after his assistants admitted. d)-["***URMA***"], so we call it emergency, But as this court has explained, if  such danger exists when the agencies or an unbiased judges "independently verifies the facts and does not rely on the biased source.*Lobato v. N.M. Env't Dep't,* 733 F.3d 1283, 1294 (10th Cir. 2013). e)-["***Notice Bias Judges***"]. The answers must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied, so each judges, agencies must answer by proper explanation, that is upon relief can be granted by laws, so advocate met all burdens required for the agencies to take actions by the all factors for additional emergencies.  *Nilva* v. *United States*, 352 U.S. 385 *Torres* v. *United States,* 270 F.2d 252  (C.A. 9th Cir.. The Legislature has determined that the public good will be better served by encouraging public employees to take immediate action in emergency situations for the arrival of his families. *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 315-321 (1908). The question then, is whether the issuance of immediate cessation must be ordered by

the judges without long process of hearing, so the application filed to the agencies falls under this emergency situation exception to the normal rule that due process requires a hearing prior to deprivation of a property right._Air East, Inc_. v. _National Transportation Safety Board_, 512 F.2d 1227, 1232 (CA3). f)-["**_National Arrival Functions Act_**"] (NAFA)_. Cf. Vermont Yankee Nuclear Corp_. v. _Natural Resources Defense Council, Inc._, 435 U.S. 519 (1978). Accordingly, we turn to the District Court's holding that other sections of the Act violate the Fifth Amendment's Due Process Clause of the constitutions of United States…._San Diego Gas Electric Co_. v. _City of San Diego_, 450 U.S. 621, 654 (1981).g)-["**_NACCA_**"].The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Historically, this guarantee of due process has been applied to _deliberate_ decisions of government officials to deprive a person of life, liberty, or property for all person without exceptions, or if the Fourteenth Amendment is a part of a Constitution generally designed to allocate governing authority among the Branches of the Federal Government and between that Government and the States, and to secure certain individual rights against both State and Federal Government alleged...i)-["**_UHVA_**"]._LeRoy Fibre Co_. v. _Chicago, M. St. P. R. Co._, 232 U.S. 340, 354 (1914). We should begin by identifying the precise constitutional claims that petitioners have advanced. ii)-["**_HIFA_**"], they are claims against the defendants if they failed to adjudicated his assistants for visa process._.Bank of Columbia v. Okely,_ 4 Wheat. 235, 244 (1819)

1)-Date: **002-*E*''**]  ii)-[''***22-CV-02049*** '']

09/20/2024

*United States District Court*

(*"Co-Defendants)*

[**"*District of Columbia*''**] (Defendants

Att; [**"*Angela D.Caesas*''**] (Co-Defendant )

*Email;dcd_cmecf@dcd.uscourts.gov*

*333 Constitution Avenue, N.W.*

*Washington, DC 20001*


2)-Date: **002-*E*''**]  ii)-[''***22-CV-02049***'']         [**"*U.S Department of Justice*''**] (DOJ)

09/20/2024         [**"*United States Marshals Service*** (*"Co-Defendants)*

[**"*State of Columbia*''**] (Defendants

Att; [**" *Charlotte Luckstone* ''**]

*46 East Ohio Street, Suite 179*

*Indianapolis, IN 46204-4318*


*1)-[''**Rights Issues Scientific Treaties Act**''] (RISTA)*

*i)-Upon the agencies a)-[''**SAPA**''], which each courts must follow the lead of the existing laws, so this court must have absolute jurisdiction by each factors 2)-[ **Exhibit (I) (T) (I-XII**''], Binder v. Madison, 72 Wis.2d 613, 241 N.W.2d 613 (1976),so the courts must  granting all  access to pacers, as matter to remove the inventor for his current status alleged in all of the courts for controversies.b)-[''**Unlimited Damages**''],New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511  (1976);To that extend the agencies must release d their administrative records entirely, that is all courts without exception is within this motion filed..3)-[ **TMPA**''] Kaganove v. EPA, 856 F.2d 884, 889 (C.A.7 1988). c)-[''**DESA**''] (DESA), that is without exceptions, as well as for compelling all courts performance, Judges, agencies involved in conspiracy theory,Schiller v. NLRB, 964 F.2d 1205, 1208 (C.A.D.C.1992).that is without exceptions, as well as for compelling all courts performance, they must released all their staffs emails address, and biography information, that is more than complex cases for the agencies to follow their own laws, so they must followed their own laws for controversies..... d)-[''**FLOA Requests**''] Dirksen v. HHS, 803 F.2d 1456, 1458 (C.A.9 1986).so we are very specific Judges, and we had previous asked them the same question about adjudicated all Applications filed to be considered by the agencies addressed. 4)-[''**Form I-824**''], Sladek v. Bensinger, 605 F.2d 899, 902 (C.A.5 1979).that is because all evidence swill be filed to  courts where access electronic has been granted. for  them to review all  evidences in favor of public importance, to be   reviewed in less than 30 days  is matter of laws by congress mandated for his assistants visas waivers.e)-[''**Exhibit (VI) (E) (I-XII**'']Clervrain v. United States No. 21-3040 (10th Cir. Jul. 12, 2021)So the agencies will delay the process, Massey v. FBI, 3 F.3d 620, 622 (C.A.2 1993) .they will be filed across the country, which the agencies will have to answer question of facts, their legal authorities, and national authorities, as notice to the courts,  the agencies as mater of legalities to be enforced by laws. .Barnett Bank of Marion County, N.A. v. Nelson 517 U.S. 25 (1996).f)-[''**WETA**'']…..Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).*

Respectfully Submitted,

*3)-Date: [" **002-E**"]  ii)-["**22-CV-02049** "]*     *["**United States District Court***
*09/20/2024*                                                  *(Co- Defendants")*
                                                     *["**State of Columbia**"]("Defendants")*
                                                     *Att; ["**Matthew M. Graves"**]*
                                                        *601 D Street, NW*
                                                        *Washington, DC 20530*

*4)*-Date: *["* **002-E**"]   ["**22-CV-02049** "]  **United States District Court** (defendants)
      09/20/2024                              ["**State of Columbia"**] (Co-Defendants)
                                           **Att [**"**Brian P. Hudak**"]**
                                              *601 D Street, NW*
                                              *Washington, DC 20530*

*2)-["**Software Issues Rights Treaties**"] (SIRTA)*

ii)-Upon the agencies a)-["**WIFA**"], which each courts must follow the lead of the existing laws, so this court must have absolute jurisdiction by each of the courts . 2)-[ **Exhibit (I) (O) (I-XII"]**, so the courts must  granting all  access to pacers as matter to remove the inventor for his current status for  to  b)-["**Unlimited Damages**"], to that extend they must release d their administrative records entirely, that is all courts without exception.3)-[ "**35 U.S.C. §273**"] that is without exceptions, as well as for compelling all courts performance, they must released all their staffs emails address, and biography information, that is more than complex cases for the agencies to follow their own laws, c)-[**"WIPA** "] so we are very specific Judges, and we had previous asked them the same question about adjudicated all Applications filed 4)-["**Form I-912**"],  that is because all evidence swill be filed to  courts where access electronic has been granted. for  them to review all  evidences in favor of public importance, to be  reviewed in less than 30 days  is matter of laws by congress mandated.d)-["**35 U.S.C. §122**"], they will be filed across the country, which the agencies will have to answer question of facts, their legal authorities, and national authorities, as notice to the courts,  the agencies as mater of legalities to be enforced by proposed laws alleged. e)-["**Pawards,Inc**"].Clervrain v. United States No. 21-3040 (10th Cir. Jul. 12, 2021). If Mr. Clervrain asserts that he is an activist who is directing his efforts at ending the "apartheid" of non-citizen prisoners in the federal prison system., which the courts will not denied. Simmons v. Himmelreich, 136 S. Ct. 1843, 1845, 195 L. Ed. 2d 106 (2016).To recover under the FTCA, Plaintiff must show the government's actions, if committed by a private party, would constitute a tort in all States, to be included Kansas, and he is a victim of the defendants crimes of Apartheid, so his assistants must be admitted for development stages.Barnett Bank of Marion County, N.A. v. Nelson 517 U.S. 25 (1996).f)-["**UMTA**"].Forest Guardians v. U.S. Dep't of the Interior, 416 F.3d 1173, 1177 (10th Cir. 2005).

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of District of Columbia

Washington Division

| | |
|---|---|
| Manetirony Clervrain; Shameel Myla Clervrain; Lanese Normil; Woodrove Previl; Darline Joseph; Azor Smith; Techelet Paul; ["Brandako, Inc"], or its Marks ["Innovation for Great Ideas"] ("IFGI"), or its subdivision ["Human Relief, Inc"] ; ["Pawards, Inc"] [" Bako Trading Corporation, Inc"] ["Cribako, Inc"] ["Be Happier"], ["Brandbid, Inc"] ["Commonwealth of Haiti "] (COH) ;or Also Known as ["World Education Science Association, Inc"] ("WEDSA") ; ["Educative Market Exchange"] (EME); ["United States Educative Science"] (USEDS); ["Haiti Educative Science"] (HTEDS); National Educative ["BES"] Association Science (NEDBAS); Foundation Award International Science"] (FAIS). | Case No. 24-CV-02049 |
| | *(to be filled in by the Clerk's Office)* |

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: *(check one)*   ☒ Yes   ☐ No

–v–

Office of the Federal Register (OFR); U.S Security Exchange Commission (SEC);  Department of Education; National Archives and Records Administration (NARA); United States Marshal Services (USMS);  Executive Office for United States Attorneys; FederaL Bureau of Prisons (BOP); Federal Reserve Banks (FSB); Federal Reserve Bank of New York; United States Supreme Court; Court of International Trade; Republic of Haiti; Executive Office for Immigration Review (EOIR); American Bar Association; (ABA); U.S. Patent and Trademark Office (USPTO); McRae Correctional Facility (MCF); National Institute of Corrections (NIC); American Arbitration Association (AAA); U.S. Trustee Program; Offices of the United States Attorneys; Office of the Pardon Attorney (PARDON); Department of Energy; Office of Legislative Affairs (OLA); Office of Information Policy (OIP); Office of Legal Counsel (OLC); Office of Privacy and Civil Liberties (OPCL);  Internal Revenue Services; Office of Public Affairs (OPA); Justice Management Division (JMD); U.S. Parole Commission (USPC)

*Defendant(s)*
*(Write the full name of each defendant who is being sued.  If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.  Do not include addresses here.)*

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
## (Non–Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Manetirony Clervrain |
| Address | 4326 S Scatterfield Rd Suite 153 |
| | Anderson                          IN                       46013 |
| | *City*                            *State*                 *Zip Code* |
| County | Madison |
| Telephone Number | 7652789806 |
| E-Mail Address | bclervrain@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

**Defendant No. 1**

| | |
|---|---|
| Name | United States of America (USA) |
| Job or Title *(if known)* | Office of the Federal Register (OFR); |
| Address | 7 G Street, NW ,Suite A-734 |

| Washington | DC | 20401 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | 202-401-2000 |
| E-Mail Address *(if known)* | fedreg.info@nara.gov |

☒ Individual capacity    ☒ Official capacity

**Defendant No. 2**

| | |
|---|---|
| Name | U. S Security Exchange Commission (SEC) |
| Job or Title *(if known)* | United States of America |
| Address | 100 F Street, |

| Washington | DC | 20549 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | 2023324090 |
| E-Mail Address *(if known)* | Help@sec.gov |

☒ Individual capacity    ☒ Official capacity

**Defendant No. 3**

| | |
|---|---|
| Name | Department of  Education (DOE) |
| Job or Title *(if known)* | United States of America (USA) |
| Address | 333 Constitution, Ave, NW  Suite 1500 |

| Washington | DC | 20001 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | |
| E-Mail Address *(if known)* | AskaLibrarian@ed.gov |

☒ Individual capacity    ☒ Official capacity

**Defendant No. 4**

| | |
|---|---|
| Name | National Archives and Records Administration; (NARA) |
| Job or Title *(if known)* | |
| Address | 700 Pennsylvania Avenue, NW |

| Washington | DC | 20408 |
|---|---|---|
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

| Telephone Number | 1-866-272-6272 |
|---|---|
| E-Mail Address *(if known)* | inquire@nara.gov. |

☒ Individual capacity     ☒ Official capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

☒  Federal officials (a *Bivens* claim)

☒  State or local officials (a § 1983 claim)

B.     Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

While the plaintiff who is the Activist , or ["The Ant Act"] (TAA) or ["The Ant Act"] (TAA), or matter to promote Jusitice against putive Laws under ("MOCMA"),at page 1 or for judicial intervention and clarificaton Necasry, thus the defendants are liable in both under ("MOCMA") at page, 94-99 for officials capacities, also the defendants are liable  for controversies claims (Under ("NIRTA") subeject to amend for additional parties, at page 9-65, or for supplemtal jurisdiction against the defendants in the individual capacities... see ["Motion for Judicial Intervention and Clarrification Necessary by Invoking te Movement (s) On Crimes Mitigating Act"] ("MOCMA"), or to apply additional Judisdiction under the (FOIA), which the courts failed to review de nove for related Matters, at page 61-66 for the court to response each of the pending motions filed, or to compel the administrative records within the meaning the applicable laws........or the same purpose for the defendants to justify action under the (FTCA)... Moreover, federal agencies had only limited authority to settle claims. See Federal Tort Claims Act of 1946, ch. 753, §§ 403(a), 420, 60 Stat. 843, 845. Because the vast majority of claims ultimately must settled before trial,  that Congress amend the FTCA to "requir[e] all claims to be presented to the appropriate agency for consideration and possible settlement before a court action could be instituted. This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. That agency would have the best information concerning the activity which gave rise to the claim. Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation for the Enacment of the The Ant(s) Fear Liability Act (TAFLA), or pending to prove the defentans illegal actions....MOTION FOR ["JURY DEMANDS ACTS"] ("JDA") [" CONCERNS  DEBATE  ACT'] (CDA) ,["BY "] [ WAIVER IDENTITY FUNCTION ACT "] ("WIFA")Folgelstrom v. Lamps Plus, Inc., 195 Cal.App.4th 986, 992, 125 Cal.Rptr.3d 260 (2011) . In re iPhone Application Litig., 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012) ("Even negligent conduct that leads to theft of highly personal information, including social security numbers, does not . . . constitute a violation of Plaintiffs' right to privacy"), but violations of the ["FOIA"], it does in all circumstances for compelling controversies claims accross the country. Razuki v. Caliber Home Loans, Inc., No. 17-cv-01718-LAB-WVG, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018);

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

By the same applicable laws the defendants are liable  for all claims for their failure to considered all motions filed ["Motions for Unreasonble Classification Act by compelling performance Movement On crimes Mitigating ("MOCMA"), or matter for constituional violations, and violation of Human Rights The applicability of this norm to private individuals is also confirmed by the Genocide Convention Implementation Act of 1987, 18 U.S.C. §(s) 1091 (1988), which criminalizes acts of genocide without regard to whether the offender is acting under color of law, see id. Section(s) 1091(a) ("[w]hoever" commits genocide shall be punished), if the crime is committed within the United States or by a U.S. national, id. Section(s) 1091(d). Though Congress provided that the Genocide Convention Implementation Act shall not "be construed as creating any substantive or procedural right enforceable by law by any party in any proceeding," id. Section(s) 1092, the legislative decision not to create a new private remedy does not imply that a private remedy is not already available under the ["Alien Tort Act"] or  ["The Ant Act"} (TAA). Nothing in the Genocide Convention Implementation Act or its legislative history reveals an intent by Congress to repeal the Alien Tort Act insofar as it applies to genocide, and the two statutes are surely not repugnant to each other. Under these circumstances the defendants are liable under the FTCA, ATA as well as  the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1330, is a "comprehensive scheme" comprising both pure jurisdictional provisions and federal law capable of supporting Art. III "arising under" jurisdiction.).Moreover, in the District Court must view, allowing all actions against foreign sovereigns, including those initiated by foreign plaintiffs, to be brought in federal court was necessary to effectuate "the Congressional purpose of concentrating litigation against sovereign states in the federal courts in order to aid the development of a uniform body of federal law governing assertions of claims under this ["Motion for settlement Agreement(s) Against Secretive Criminals by Invoking the National Regulatory Treaties Act ("NIRTA"), or  for additional defendants to be consider for addtional reliefs including to invoke  the Patent Act of 1836, however, Congress changed course and made enhanced damages discretionary, specifying that "it shall be in the power of the court to render judgment for any sum above the amount found by good faith analysis, or Humanitarian factors must also be consider when evaluating intellect intent......["Motion for National Impact Act (NIA) OR Workforce Ethical Act (WEA) by Community Union Provisions Act"] (CUPA)Schmitt v. SN Servicing Corp., No. 21-cv-03355-WHO, 2021 WL 3493754, at *7 (N.D. Cal. Aug. 9, 2021) As the Plaintiffs contend that the criminal nature of the defendants acritionss by exposure him to criminal enterprise will justified  lifetime damages demanding as for the  breach and the information that was exposed or stolen in the data breach demonstrates that [the defendant] committed a serious violation of their privacy rights, and the Courts faced with similar data breach scenarios to found such allegations sufficient for controversies claims accross the to compelling their actions.  Helling v. McKinney, 509 U.S. 25, 35-37, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993)

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

Additonally, the defenants are also libale Under ("TADMA")Clervrain v. Dewine 1:21-cv-1303 (N.D. Ohio Nov. 3, 2021) for the same purpose or the Enactment of the Ant(s) Movement Act ("TAMA") where the injury is wanton or malicious, a jury may inflict vindictive or exemplary damages, not to recompense the plaintiff, but to punish the defendant see Motion for consideration or Compelling Need(s) or controversies to ltigate by invoking the Ant(s) Duty Mitigating Act (TADMA") or claim against the defendant for conspiracy with the premise that original jurisdiction in civil rights and elective franchise conferred by 28 U.S.C. § 1343, is unique, special and limited and made available for the expeditious vindication of persons which are subject to deprivation on pretenses of lawful conduct by State agents.., or all of the other defendants will be identified to the courts to additional filling of Motions or quotation, that is also the duty of the clerk of the courts to perfomClervrain v. Johns 5:18-cv-38 (S.D. Ga. Apr. 8, 2022) As such all of the motion are subject to review de nove upon reliefs can be granted is question of tenure, or lifetime damages.Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)

## III.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

Under ("MOCMA") or mater for Judicial intervention ["17-CV-03194"], Dkt, 1 ],which the plaintiff alleged that the defendants violated his first amendment Rights concerning ("FOIA"), or control theory requrest for review common sense , or common crimes or public puplic opinions by the this ["Motion for Comon Sense or access to the Informative Legal Materials or opposition by the ("Ant(s) Library Act "] ("TALA"). That public funding will lead to better Education or to promote parenting Role against culture schoking by the defedants, or their executive,  internal affairs of political parties, and thus to a significant loss of political freedom. The concern is necessarily wholly speculative and the  basis for validation of the public financing scheme on its face. congress has expressed its determination to avoid the possibility..See Clervrain v. Lee et al., No. 6:21-mc-108-WWB-LRH (Doc. 22) (noting that Clervrain has filed over 100 federal cases); Clervrain v. Toutman et al., No. 8:20-mc-28-T-35SPF (M.D. Fla. Apr. 24, 2020) (Doc. 3) (recognizing that Clervrain is a frequent federal court filer, so he should not be punished by the agencies discrimiantion, class of one can be justified when the defendants answer the complaints, and evidence. Clervrain calls himself "the Activist, " alleges violations of non-existent statutes such as "The Ant Act ("TAA"), " "The Ant(s) Movement Act ("TAMA"), " and "The Ant(s) Duty Mitigating Act ("TADMA"), and refers to genocide, apartheid, and an alleged  conspiracy. (Doc. 1 at 5-9). See Clervrain v. Lee et al., No. 6:21-mc-108-WWB-LRH.Clervrain v. Lee, No. 3:20-cv-548-TAV-DCP, 2021 WL 141793, at *1-2 (E.D. Tenn. Jan. 14, 2021)  ("If a more carefully drafted complaint could not state a claim, then dismissal was not  proper hey are involed in crimes against Humanities.")Clervrain v. Bingman, No. CIV-21-675-R, 2021 WL 3686691, at *2 (W.D. Okla. July 12, 2021) The motions to proceed without paying the filing fee (Docs. 2, 15) must be granted for Serving process against all of the agencies accross the country for answer question of facts. ); Clervrain v. Dunleavy, No. 3:20-cv-00279-RRB, 2021 WL 3847121, at *1-2 (D. Alaska Aug. 27, 2021).

B.    What date and approximate time did the events giving rise to your claim(s) occur?

Under ("TADMA") addressing part of the allegation pending to file this ["Motions for enforcing Power or developing Guidance against Facially Attack by Invoking the Ant(s) Nationality Act"] ("TANA") or Matter for controversies for the court to certify within the reasoning standard, that is because the ripeness and standing doctrines "overlap," claims that were sufficiently "actual and imminent" to establish Article III standing also were ripe for adjudication, "not merely speculative or hypothetical" City of Garland v. Louton, 691 S.W.2d 603 (Tex. 1985)As we can said now ? all of the motion filed are subject to be amend after his assitants admitted in the United States for controversies against their practice of Denial and concerning dicriminationsCalifornia Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780 (1960),

C.      What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Unde ["The Ant (S) Nationality Act"] ("TANA") or ["The Nationality Act "] ("TNA") or to say that the ("INA") is a puitive Law, to apply the concept of ("MOCMA") or for declaration of Right the laws are unconstitutional, at page 60 (II) for which the plaintiff is challenging the various laws, or pending to file this motion Motion for Material of Facts and Marticular situation Demand(s) for controversies by Invoking the Ant Nati Nationality Act ( "TANA") of material fact, even with respect to issues that the non-moving party would have the burden of proving at trial, or regarding prextext for the exclusion to ("FOIA"), Public Ceremoney, and he was a victime of the defendants injustice practices against the various judicial officials pending to identify the claims to ("MIGRA") or concerning public interest against Genocide, that is for the Court to finds that plaintiffs have stated a cognizable claim under international law for the restriction imposed against me by punitive laws and the defendants for aiding and abetting genocide, and for conspiracy to violated access to the courts and federal official while in the custody, all violations of international law. The facts, as pled, are sufficient to demonstrate potential liability against each defendants and, as such, will preclude dismissal on 12(b)(6) grounds.California Products, Inc. v. Puretex Lemon Juice, Inc., 160 Tex. 586, 334 S.W.2d 780 (1960)In regard to the second issue presented in this case, the trial court denied all licence fees, or programs, if congress is not clear hat is the end of the matter lifetime damages is demading by laws. Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997) (reviewing justiciability principles in light of 1985 constitutional amendment to district court jurisdiction). Wessely Energy Corp. v. Jennings, 736 S.W.2d 624, 628 (Tex. 1987)

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

That the sufficient specification of when the injury in fact will occur is necessary under ("TAJA") or that his speeech, then must concludes that any "procedural injury" suffered by the activist against his movement issufficient to confer standing, or for additional injuries in fact by this ["Motion for International Extration by questioning (The Ant) Criminal Massive Issues for Genocide Act"] ("MOGRA") or matter for extradition hearing under the Uniform Crime Extradition Act ("UCEA") to repeal by ("UCCA"). Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial, then we asking the courts if they must extradicted the Haitian polititian for commited serious crimes against the people, then he asking for invading ["Haiti"], because the defenddants are very negligence, or pending for applying Democrcy Rights......that the people are suffered for years by crimes of Apartheid, Humanity and among the other to be proving by circumstatial evidence must "form a complete chain which, in light of the evidence as a whole, leads so directly to the guilt of the accused as to inckude matters for beyond a reasonable doubt, therefore, these courts must allowing the Brandako, Management team to prove their ["Prolificing Status"] against ["Alien Status"] which the proximate cause of the pauperis Status.Alamo Express v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815, 827 (1958). This prohibition extends to cases that are not yet ripe. See Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988); A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass. California Prod., Inc. v. Puretex Lemon Juice, 160 Tex. 586, 334 S.W.2d 780, 783 (1960).

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

At this point the plaintiff is asking for damages , that must be granted , as well as he is asking for ["$500 Billions"] for his invention whihc the defendants has been restricted for many years without the record of his intention for economic development, ["$650 Billions Dollars"] for the development of the ["New Commomwheath of Haiti"], (COH) and $350 Millions dollars against each individuals involved in the conspiracy, that is because they are also liable for intervning cause, ratification theory,or failure to ratify the alleged punitive laws in all pending motions...... among the other to be developed by laws.... and for the courts to docket the defendants information properly upon electronically file the motion so call ("TANA") and ("TALA"), then we asking the court for National reliefs against judicial restrictions, or another $ 300 billion for exemplary damages or additional liabily against them for failure to allow Non-Attorney Access to electronic filling, this Notice (s) to the court for docketing statements to litigate by invoking uder ("MOCMA") at, page 94-99 stattes additional defendants as well as under ("TALA"), at page 42-50, it is matter for[" invention right"], or ]"Protection Rights"] and ["Trademark rights"] by both domestic and international defendants to protect the plaintiff names, idealogistic concern against criminal enterprises within this ["Notice to the courts for Dockets Statements to litigate by ["National Electronic Filling Reform Act ('NEFRA") or for Initiating legal process to protect public interest by the ["National Infomative Public Grievouous Association ("NIPGA"); ["National Educative Bar Association Science "] ["NEDBAS"] and the Word Educative Science Association ("WEDSA) to be developed wordewide by invoking public opinions , or right for pubication at the defendants expenses, that must include all other damages upon other investigation while in the presedures of the claims and his ("FOIA") must be granted additional Damages, among the others to litigate controversies, or any other reliefs to court might find just and proper....Frankfurter, A Note on Advisory Opinions, 37 HARV. L. Rev. 1002, 1002-03 (1924). ("ripeness analysis carries the banner of prudence rather than power"). Refraining from issuing advisory opinions and waiting for cases' timely factual development is also essential to the proper development of the state's jurisprudence. See Entman, Flawed Activism: The Tennessee Supreme Court's Advisory Opinions on Joint Tort Liability and Summary Judgment, 24 MEM. ST. U.L. REV. 193, 199 (1994)

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            09/20/2024

Signature of Plaintiff            *Manetirony Clervrain*
Printed Name of Plaintiff        Manetirony Clervrain ("Advocate")

### B.    For Attorneys

Date of signing:            09/20/2024

Signature of Attorney            *Manetirony Clervrain*
Printed Name of Attorney        Manetirony Clervrain ("Advocate Questions")
Bar Number            ["Competent to be proving by laws controversies Clervrain"]
Name of Law Firm        Prolifico, Inc ["House Counsel Licence Demands']
Address            4326 S scatterfield Rd Suite 153

| Anderson | IN | 46013 |
|---|---|---|
| *City* | *State* | *Zip Code* |

Telephone Number        7652789806
E-mail Address            bclervrain@gmail.com

---

**[*"Brandako, Inc "*]**

*famybako@Gmail.Com*

**District of Columbia**
**[*"The Scientific Act"*] (TSA)**
**_Clervrain_  et al v. United States Of America et al**
_1:24-cv-02049, District Of Columbia District Court (July 15, 2024)_

---

## [*"The Amending Act"*] ("TAA")

[*"Uniform Function Factors Act"*] ( UFFA)

## [*" National Adequate Questions In District Of Columbia "*]

### [*"Lanese Normil "*], ("AMS")

# [*" Innovation for Great Ideas"] ("IFGI")*]

### [*"Educative Market Exchange"*] ("EME")

*"Equity Demands"*

[ *"Office of the Federal Register"*] (OFR)

# [*"EXHIBIT (I) (M) (II) "*]

[ *" Amending Complaints Against Malicious Intent"*]

Case No; [*"24-CV-02049"*]

[*"Country Union Public In Data Act"*] ("CUPIDA")

a)-If the new law must be i)-[*"CUPIDA"*], it gives effect to all district courts broad latitude to grant protect public interest, or both b)-[*"Brandako, Inc"*] as the parent company, that is what we are asking them to to be notice by importance.ii)-[*"UFFA"*], that is for Secretary performance to register all names by publisher sensitive information as required by congressional intent .b)-[*"Exhibit (I) (M) ("II)  "*], for unlimited damages against each of the defendants across the country..*American Locomotive Co.*, 92 N.L.R.B. 115, 116-117 (1950) ("buyers who made substantial purchases on employer's behalf"), 1)-[*"Human Relief, Inc"*] as the representative,to litigate against bureaucracy..and to protect all subdivisions as matter for In Housing Counsel [*"WIFA"*]. That must be granted by all agencies, or their partners, to allows the speaker to communicate at a "normal conversational distance, to that extend, we asking to be aware of ? what is the plaintiff is requesting for years now, c)-[*"Exhibit (I) (J) (I-XII)"*] it call call E-filling, or access National Funding, or Public Funding and to protect all interest, not the politicians, and  for all courts, and agencies to  perform their duties, they must have their illegal objectives, or by failure to act in good faith, we are questioning  them to enforced to protecting his assistants without long process of visa Process. _Clark v. Community for Creative Nonviolence_, 468 U.S. 288, 293, 295, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).d)-[*"Exhibit (I) (M) (II)  "*]..The first question before us is whether there is, in fact, statutory ambiguity in the interaction between the Special Rule for defendants to answer matter of factual allegation against their operations alleged   by facts...d)-[*" Exhibit (I) (Y) (I-XII"*].Clervrain v. Pompeo No. 4:20-CV-555-SRC (E.D. Mo. Apr. 24, 2020). 2) [*"Brandako, Inc"*] the parent company presenting the facts for controversies, which the defendants    will not denied any of those .., iii)-[*"NIPA"*].Clervrain v. Coraway, No. 3:18-cv-819-G-BN, at 3 (N.D. Tex. Nov. 9, 2018)

# Civil Litigation Management Manual

*Third Edition*

2022

# Civil Litigation Management Manual

## Third Edition

**The Judicial Conference of the United States**
**Committee on Court Administration and Case Management**

## 2022

This manual is for the guidance of judges. It is not intended
to be relied upon as authority, and it creates no rights or duties.

## Committee on Court Administration and Case Management of the Judicial Conference of the United States

| | |
|---|---|
| Audrey G. Fleissig, Chair | Robin S. Rosenbaum |
| Joseph F. Bianco | Leo Sorokin |
| Nora B. Fischer | Patricia A. Sullivan |
| Louise W. Flanagan | Gregory F. Van Tatenove |
| Jerome A. Holmes | B. Lynn Winmill |
| Marvin P. Isgur | Jessica J. Lyublanovits, |
| John Z. Lee |    Clerk Representative |
| Trevor N. McFadden | David Levine, Staff |
| Susie Morgan | |

This third edition of the *Civil Litigation Management Manual*, was approved by the Judicial Conference of the United States at its March 2022 session. This revised version was prepared under the direction of the Judicial Conference Committee on Court Administration and Case Management.

The original version, prepared in 2001, captured the most effective practices developed by courts in implementing the pilot programs and plans required under the Civil Justice Reform Act of 1990. Under the Act's mandate, the judiciary was required to develop, and periodically update, a manual to describe and analyze "litigation management, cost and delay reduction principles and techniques, and alternative dispute resolution programs considered most effective." 28 U.S.C. § 479(c). The second edition, prepared in 2010, retained the foundation of the original version and suggested additional litigation practices. This new edition addresses significant amendments to the Federal Rules of Civil Procedure and discusses more modern case management techniques. As with the second edition, it also encourages judges to engage in effective case management, and to tailor case management to the specific needs and complexity of the case to help achieve the goal of Rule 1 of the Federal Rules of Civil Procedure—"the just, speedy, and inexpensive determination of every action and proceeding."

As in the first two editions, this volume contains over two hundred pages of forms in the appendix. These forms were submitted by district and magistrate judges across the country as examples of methods to manage every stage of a civil case. The Committee thanks those judges for their time and contributions. The Committee is also grateful to both the Administrative Office and the Federal Judicial Center for supporting the Committee in this project and for their substantial contributions.

Finally, this version will be available primarily electronically on the judiciary's website, J-Net, and on the Federal Judicial Center's website. The appendix, containing the court forms, will be available electronically, not in print, so that the forms may be updated and supplemented more frequently. You should periodically check for changes to the manual or appendix, as they will occasionally be updated in between major substantive revisions to reflect changes in the Federal Rules of Civil Procedure or other minor edits. We also hope that those who review the manual and its forms will contribute forms and materials that they have developed, for inclusion in the appendix.

We hope that you will find this manual useful as one of the many tools available to assist you in your day-to-day work.

Audrey G. Fleissig
*Chair*, Court Administration
and Case Management Committee

# **Contents**

Acknowledgments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Chapter 1: Early and Ongoing Management of the Pretrial Process** . . . . . . . . **5**
    A.   Early case management. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.   In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.   Specific techniques . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
            a.   Case management guidelines and initial scheduling orders . . 6
            b.   Early case screening . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            c.   Differentiated case management . . . . . . . . . . . . . . . . . . . . . . . 10
    B.   Prompting counsel to give early attention to the case . . . . . . . . . . . . . 10
        1.   In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        2.   The parties' Rule 26(f) conference . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        3.   The Rule 26(f) conference agenda and report . . . . . . . . . . . . . . . . 11

**Chapter 2: Establishing a Case Management Plan** . . . . . . . . . . . . . . . . . . . . . . **15**
    A.   Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    B.   Approaches to the initial Rule 16 case management conference and
        preparing the scheduling order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    C.   Structuring the initial Rule 16 case management conference . . . . . . . . 18
        1.   Conducting the conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        2.   Timing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        3.   Location . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        4.   Remote participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        5.   Making a record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        6.   Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            a.   Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            b.   The parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        7.   Pre-conference submissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        8.   Agenda for the conference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
        9.   Managing the scope of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
            a.   Identifying and narrowing the issues. . . . . . . . . . . . . . . . . . . 26
            b.   Limiting joinder of parties and amendment of pleadings. . . 27
        10.  Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    D.   Issuing the scheduling order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Chapter 3: Discovery Management** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

    A.   Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    B.   Discovery rules and procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    C.   Discovery management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

        1.   Judge-specific discovery requirements and procedures . . . . . . . . 33

        2.   Rule 26(f) conference and proposed discovery plan . . . . . . . . . . . 34

        3.   Initial Rule 16 case management conference . . . . . . . . . . . . . . . . . 34

        4.   Setting discovery deadlines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    D.   Using magistrate judges and special masters . . . . . . . . . . . . . . . . . . . . . 37

    E.   Resolving discovery disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

        1.   Meet and confer requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        2.   Phone conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

        3.   Discovery dispute letter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        4.   Motion to compel discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        5.   Disputes arising during depositions . . . . . . . . . . . . . . . . . . . . . . . . 40

    F.   Electronically Stored Information (ESI) . . . . . . . . . . . . . . . . . . . . . . . . . 41

        1.   ESI and the Rule 26(f) conference . . . . . . . . . . . . . . . . . . . . . . . . . 41

        2.   ESI and the initial Rule 16 case management conference . . . . . . . 42

        3.   Accessibility of ESI sources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

        4.   ESI, waiver, clawback, quick peek agreements, and Rule of

               Evidence 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

    G.   Protective orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    H.   Expert witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        1.   Early pretrial management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

        2.   Court-appointed experts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**Chapter 4: Managing Pretrial Motions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **49**

    A.   In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

    B.   Managing motions as part of your civil docket . . . . . . . . . . . . . . . . . . . 50

        1.   CJRA pending motions report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

        2.   CM/ECF motions reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

        3.   Tracking motions in chambers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

    C.   Managing motions in a case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

        1.   Initial management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

        2.   Screening motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

        3.   Scheduling motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

        4.   Oral argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

        5.   Motions in complex cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

        6.   Orders on motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

D.  Strategies for particular types of motions . . . . . . . . . . . . . . . . . . . . . . . . 58
    1.  Motion for emergency injunctive relief . . . . . . . . . . . . . . . . . . . . . . 58
    2.  Motion for default judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
    3.  Motion to dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
    4.  Motion for remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
    5.  Motion raising qualified immunity . . . . . . . . . . . . . . . . . . . . . . . . . 63
    6.  Motion for summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
    7.  Motion affecting the case schedule . . . . . . . . . . . . . . . . . . . . . . . . . 65
    8.  Motion for sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
    9.  *Daubert* Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

**Chapter 5: Alternative Dispute Resolution and Judicial Settlement** . . . . . . 71
A.  Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
B.  Authority to use ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
C.  Types of ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
    1.  Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
    2.  Early neutral evaluation (ENE) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
    3.  Court-annexed arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
    4.  Summary jury trial, summary bench trial, and mini-trial . . . . . . 75
    5.  Settlement week . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
D.  ADR Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
    1.  Referring cases to ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
    2.  Selecting and compensating an ADR neutral . . . . . . . . . . . . . . . . . 78
    3.  Issuing a referral order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
    4.  Managing cases referred to ADR . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
E.  Judicial settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
    1.  The judge's role . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
    2.  The timing of settlement discussions . . . . . . . . . . . . . . . . . . . . . . . 84
    3.  Successful settlement techniques . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
    4.  Recording the settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
    5.  Settlement in cases involving pro se litigants . . . . . . . . . . . . . . . . . 90
    6.  Ethical and other considerations in judge-hosted settlement
        negotiation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

**Chapter 6: The Final Pretrial Conference and Trial** . . . . . . . . . . . . . . . . . . . . 93
A.  Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
B.  Trial guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
C.  The final pretrial conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
    1.  Timing and structure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

2.    Preparing for the final pretrial conference . . . . . . . . . . . . . . . . . . . . 96
3.    Conducting the final pretrial conference . . . . . . . . . . . . . . . . . . . . . . 98
       a.    In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
       b.    Expert witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
       c.    Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
       d.    Depositions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
       e.    Jury issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
       f.    Scheduling and limiting trial events . . . . . . . . . . . . . . . . . . . . 103
4.    The final pretrial order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
   D.    Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
1.    Jury trials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
       a.    Techniques for trial management . . . . . . . . . . . . . . . . . . . . . . . 105
       b.    Assisting the jury during trial . . . . . . . . . . . . . . . . . . . . . . . . . . 106
2.    Bench trials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
       a.    Techniques for trial management . . . . . . . . . . . . . . . . . . . . . . . 109
       b.    Deciding the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

**Chapter 7: Special Considerations by Case Type** . . . . . . . . . . . . . . . . . . . **113**
   A.    Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
   B.    Mass tort, class action, and other complex cases . . . . . . . . . . . . . . . . . 114
1.    Complex cases generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
2.    Mass tort cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
3.    Class actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
   C.    High-profile cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
1.    Making a plan and assigning responsibilities . . . . . . . . . . . . . . . . 118
2.    Planning for the presence of the media . . . . . . . . . . . . . . . . . . . . . 120
3.    Interacting with the media . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
       a.    Court interactions with the media . . . . . . . . . . . . . . . . . . . . . . 121
       b.    Attorney interactions with the media . . . . . . . . . . . . . . . . . . . . 122
4.    Protecting the jurors, facilitating their attention, and providing
       for their comfort . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
5.    Planning for security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
6.    Managing the courtroom . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125
7.    Managing the case and the rest of your docket . . . . . . . . . . . . . . . 126
8.    Social media manipulation and cyberattacks . . . . . . . . . . . . . . . . 126
   D.    Pro se cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127
1.    Early Screening . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
       a.    Prisoner cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

|   |   | b. | In forma pauperis cases | 130 |
|   |   |   | i. Prisoner IFP cases | 130 |
|   |   |   | ii. Nonprisoner IFP cases | 130 |
|   | 2. | Securing counsel for pro se litigants | | 131 |
|   | 3. | Scheduling and monitoring the pro se case | | 132 |
|   |   | a. | Prisoner cases | 133 |
|   |   | b. | Nonprisoner cases | 134 |
|   | 4. | Holding settlement discussions and conducting the trial | | 135 |
|   | 5. | Resources for pro se litigants | | 137 |
| E. | Bankruptcy appeals | | | 137 |
|   | 1. | District court jurisdiction | | 138 |
|   | 2. | Appeal procedure | | 139 |
|   | 3. | Initial jurisdictional issues to examine | | 140 |
|   | 4. | Standards of review | | 141 |
|   | 5. | Withdrawal of the reference | | 141 |
| F. | Patent Cases. | | | 142 |
| G. | International child abduction cases under the Hague Convention | | | 142 |

**Chapter 8: Personnel Resources in Litigation Management** . . . . . . . . . . . . . **145**

| A. | Overview | | | 145 |
| B. | Chambers staff | | | 146 |
|   | 1. | Law clerks. | | 147 |
|   | 2. | Judicial assistant. | | 150 |
| C. | Court staff | | | 151 |
|   | 1. | Courtroom deputies | | 151 |
|   | 2. | Court reporters | | 152 |
|   | 3. | Pro se and death penalty law clerks. | | 153 |
| D. | Magistrate judges | | | 154 |
|   | 1. | Referral of nondispositive matters. | | 154 |
|   | 2. | Referral of dispositive matters | | 155 |
|   | 3. | Referral of case for mediation. | | 156 |
|   | 4. | Consent to magistrate judge disposition or case responsibility. | | 156 |
|   | 5. | Other referrals. | | 157 |
|   | 6. | Method for assigning matters to magistrate judges. | | 158 |
| E. | Workplace conduct and employee dispute resolution | | | 159 |
| F. | Special masters | | | 159 |
|   | 1. | Authority to appoint a special master | | 159 |
|   | 2. | Reasons for appointing a special master | | 160 |

|   | 3. | Selecting and appointing a special master | 161 |
|---|----|-------------------------------------------|-----|
|   | 4. | The special master's report | 163 |
|   | 5. | Compensating the special master. | 163 |

**Chapter 9: Using Information Technology for Litigation Management** . . . **165**

| A. | Overview | 165 |
|----|----------|-----|
| B. | Using CM/ECF to manage cases | 165 |
|    | 1. Notice of Electronic Filing | 166 |
|    | 2. Case management reports | 167 |
|    | 3. Statistical and conflict checking reports. | 169 |
|    | 4. Docket text entry orders and orders on motions using the gavel icon | 170 |
|    | 5. Next Generation CM/ECF | 170 |
| C. | Working remotely and cybersecurity | 171 |
| D. | Civil case and criminal defendant disposition dashboard | 171 |
| E. | IT training and information | 172 |

# Acknowledgments

This third edition of the *Civil Litigation Management Manual* was prepared under the direction of the Committee on Court Administration and Case Management of the Judicial Conference. Special recognition should be given to District Judge Audrey Fleissig, who chaired the subcommittee overseeing the revision and led the effort to update the hundreds of pages of sample forms contained in the appendix. The following current and former members of the Court Administration and Case Management Committee served on the subcommittee and contributed a great deal of time and effort in drafting and reviewing revisions to the manual: Circuit Judge Robin Rosenbaum, District Judge Marcia Crone, District Judge Kim Gibson, the late District Judge Philip Martinez, District Judge Susie Morgan, District Judge Rebecca Pallmeyer, the late District Judge Roger Titus, District Judge Reggie Walton, Magistrate Judge Charles Coody, and Magistrate Judge Patricia Sullivan. The Committee would also like to thank the many judges and Federal Judicial Center staff who authored publications that were heavily relied on to update several chapters of the manual. Many thanks also to the judges and court staff who assisted the Committee by providing updated forms for use in the appendix of the manual.

Staff from the Administrative Office of the U.S. Courts assisted substantially in these efforts: this revised version would not have been possible without Zachary Porianda and Stephanie O'Banion, who made substantial revisions to update the second edition of the manual, coordinated the revisions submitted by judges and other staff, and kept the project on track with their exceptional organizational, legal, editorial, and writing skills; Patrick Rodefeld worked with Stephanie in reviewing drafts of each chapter and assisted in creating the appendix; and Erin Conner made substantial contributions to the revision of Chapter 7. Federal Judicial Center staff also contributed significantly, particularly the dozen research and education staff who provided reviews of individual chapters; Tim Lau who helped consolidate those reviews; Donna Stienstra who coordinated the review process, reviewed every chapter, and revised chapter 5; and the editorial staff who prepared the manual for publication. Finally, the Committee gratefully acknowledges any others who helped in creating this manual but may have been inadvertently excluded above.

# Introduction

After the passage of the Civil Justice Reform Act of 1990 (CJRA), and the judiciary's implementation of the requirements of that Act, the Judicial Conference stated that "[t]he federal judiciary is committed to, and believes in, sound case management to reduce unnecessary cost and delay in civil litigation, and thus ensure the 'just, speedy, and inexpensive' determination of civil actions called for in the Federal Rules of Civil Procedure."[1] It has been shown that "[m]anaged cases will settle earlier and more efficiently, and will provide a greater sense of justice to all participants. Even in the absence of settlement, the result will be a more focused trial, increased jury comprehension, and a more efficient and efficacious use of our scarcest institutional resource, judge time."[2]

The first edition of this manual, published in 2001, was written after the judiciary's implementation of the CJRA[3] and its extensive study evaluating the impact of the Act in the federal courts.[4] In the ensuing years, several Federal Rules of Civil Procedure were amended in an effort to improve discovery processes and respond to the widespread use of technology and electronic records. Courts' CJRA plans also became part of their local rules,[5] and the Case Management/Electronic Case Files (CM/ECF) system was implemented in all federal district courts. These changes were reflected in the second edition of this manual. This third edition of the manual, among other things, addresses more recent amendments to the federal rules of procedure and discusses more modern case management techniques.

Certain case-management practices continue to result in decreased case length and costs: they include early judicial involvement, shortened discovery

---

1. Judicial Conference of the U.S., The Civil Justice Reform Act of 1990: Final Report 10 (1997) [hereinafter *JCUS CJRA Report*].

2. *Id.*

3. Civil Justice Reform Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089 (1990). The Act required courts to adopt "civil justice expense and delay reduction" to "facilitate deliberate adjudication of civil cases on the merits, monitor discovery, improve litigation management, and ensure just, speedy, and inexpensive resolutions of civil disputes" (former 28 U.S.C. § 471). The Act suggested a number of case-management techniques for courts to consider including in their CJRA plans.

4. James S. Kakalik et al., An Evaluation of Judicial Case Management Under the Civil Justice Reform Act, Executive Summary (RAND Inst. for Civil Justice 1996) [hereinafter *RAND CJRA Report*].

5. Most provisions of the CJRA have expired, including the requirement that courts maintain expense and delay reduction plans; however, the CJRA's reporting requirements remain in effect. The judiciary publishes a public, semiannual report on pending civil matters. 28 U.S.C. § 476.

periods, and the setting of an early, firm trial date.[6] Yet, the judiciary is handling cases of increasing complexity with voluminous electronic records and limited resources, raising case-management challenges. The judiciary continues to explore better practices in a time of widespread Internet use, a restrictive budget climate, and a greater demand for public access and accountability. The federal rules contain the authority for the judge to manage civil litigation and to take steps to enforce limits set by those rules.

To carry out these practices, and to gain greater efficiency for the bench and the bar, many courts have adopted standardized case-management procedures for all civil cases within a district. Such courts use their websites to post standing orders or guidelines for civil practice, and, with the agreement of the district and magistrate judges, adopt standard orders for judges to use in all civil cases. Courts are encouraged to take such steps to maximize efficiency in their case-management procedures, but courts should remain able to tailor those procedures, when necessary, to suit the needs of a particular case.

This manual presents both successful practices and suggested practices for use in the modern civil litigation landscape. The practices described here are derived from many sources, including judges' published writings, court orders, lectures, and Federal Judicial Center (FJC) materials. We have also drawn upon the many years of experience of the judges who have generously donated their time and expertise to this project.

The discussion in the manual's first six chapters generally follows the chronology of a civil case. Thus, we begin with techniques for monitoring service of process and conclude with management of trials. Chapters seven through nine turn to more specialized matters, such as the management of special types of cases, the use of CM/ECF and other information technology, and personnel resources.

One cautionary note seems appropriate at this juncture. The tools and practices outlined in the chapters that follow should not be employed without first making the conscious decision that the practice is appropriate in the case at hand. This manual is inspired by the belief that early, active case-management results in greater efficiency, reduced costs, and a shorter time from filing to disposition.

Experience and anecdotal information suggest that some case-management techniques invariably add to the cost of litigation, usually in the form of added time requirements for lawyers and staff. It is also widely known that litigation costs in federal courts are rising and can represent a real threat to some litigants' access to justice. Judges are urged to avoid time-consuming case-management practices in those cases that have low dollar value and are otherwise straight-forward factual

---

6.   *RAND CJRA Report*, *supra* note 4, at 26–28.

disputes involving settled principles of law; in such cases, the corresponding cost benefit usually obtained in complex cases with the utilization of such techniques is unlikely to be realized.

This manual, as well as appendices with forms and examples identified throughout the manual, are available online. They can be found on the Federal Judicial Center's intranet site and on the Administrative Office's J-Net.

Management of criminal cases is not covered in this manual. The *Manual on Recurring Problems in Criminal Trials* (Federal Judicial Center, 6th ed. 2010) contains a wealth of material judges will find helpful in the management of criminal litigation.[7]

---

7. The FJC also has published the following criminal case-management manuals: *Criminal e-Discovery: A Pocket Guide for Judges* (2015); *National Security Case Studies: Case Management Challenges, Sixth Edition* (2015); *Keeping Government Secrets: A Pocket Guide for Judges on the State-Secrets Privilege, the Classified Information Procedures Act, and Court Security Officers* (2013); *National Security Case Management: An Annotated Guide* (2011); *Terrorism-Related Cases: Special Case-Management Challenges* (2008). The following FJC webcasts are also available: *What Judges Need to Know About Surveillance* (2017); *How Complex Systems are Used in Criminal Activity, Criminal Investigation, and Criminal Prosecution* (2015); and *Computers and Digital Forensics* (2015). For lectures and materials on search and surveillance warrants, see the FJC program *Search and Surveillance Warrants in the Digital Age* (2019). Also available are two podcasts from the FJC *Please Proceed* series: *Conducting a Change of Plea and Sentencing in the Same Appearance* (July 10, 2020) and *Conducting Revocations of Supervised Release Remotely* (October 1, 2020).

1

# Early and Ongoing Management of the Pretrial Process

A. Early case management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   1. In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   2. Specific techniques . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      a. Case management guidelines and initial
         scheduling orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      b. Early case screening . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      c. Differentiated case management . . . . . . . . . . . . . . . . . . . . 10
B. Prompting counsel to give early attention to the case . . . . . . . . . . 10
   1. In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   2. The parties' Rule 26(f) conference . . . . . . . . . . . . . . . . . . . . . . 10
   3. The Rule 26(f) conference agenda and report . . . . . . . . . . . . . 11

## A. Early case management

### 1. In general

> "*Judges must be willing to take on a stewardship role, managing their cases from the outset rather than allowing parties alone to dictate the scope of discovery and the pace of litigation.*"[8]

As presiding judge, you are responsible for overseeing the litigation process and ensuring the just, speedy, and inexpensive determination of civil cases assigned to you. Early and effective case management is fundamental to successfully accomplishing this objective. This entails using the Federal Rules of Civil Procedure,[9]

---

8. Chief Justice John G. Roberts, Jr., *2015 Year-End Report on the Federal Judiciary*, at 10, 1–16 (Dec. 31, 2015).

9. Unless otherwise indicated, any citation to a "rule" or the "federal rules" refers to the Federal Rules of Civil Procedure.

your court's local rules,[10] and your discretionary authority to establish your role in actively managing a case and engaging the parties and counsel in the process. As Chief Justice Roberts noted, "judges who are knowledgeable, actively engaged, and accessible early in the process are far more effective in resolving cases fairly and efficiently, because they can identify the critical issues, determine the appropriate breadth of discovery, and curtail dilatory tactics, gamesmanship, and procedural posturing."[11]

You can initiate early case management in two ways. First, on a broad level, you may develop standard practices and procedures, collectively referred to as "case management guidelines," that will apply to all civil cases assigned to you. These case management guidelines will provide the parties and counsel with an overview of your expectations and protocols and establish uniform approaches for handling cases across your civil docket. Second, once a case is assigned, you can begin the process of developing a case management plan tailored to the case. This will involve directing the parties in their Rule 26(f) "meet and confer" conference and using information they provide to prepare a schedule that includes benchmarks and deadlines for each phase of the case.

While these initial steps will set the general course for a case, it is important to keep in mind that case management is an ongoing, collaborative process for you, counsel, and the parties. The 2015 amendment to Rule 1 made clear that the parties and counsel share the court's responsibility to employ the rules to achieve fair and prompt resolution of cases. Using early case management techniques discussed in this chapter and impressing upon counsel their duty to cooperate and to avoid misuse of procedure helps control costs, conserve judicial time, and expedite the disposition of cases.

## 2. Specific techniques

### a. Case management guidelines and initial scheduling orders

You can begin early case management even before a case is filed by developing standard practices and procedures that, in addition to your court's local rules and general orders, will govern civil cases assigned to you. These case management

---

10.   Some district courts have adopted detailed local rules addressing case management issues. *See* Fed. R. Civ. P. 83 (authorizing district courts to adopt local rules consistent with the Federal Rules of Civil Procedure after providing public notice and an opportunity for comment and authorizing judges to "regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules.").

11.   Chief Justice Roberts, *2015 Year-End Report on the Federal Judiciary*, at 10–11.

guidelines can include your instructions, rules, or requirements for litigating a civil case and are often issued in a standing order or posted on your court's website so that they are readily accessible. While the level of detail varies, case management guidelines typically give a general overview of how a judge conducts various proceedings and outline specific procedures for communicating with chambers about administrative matters. Additionally, case management guidelines may include information about the form, content, and deadlines for Rule 26(f) reports or case management statements. *See* online [appendix](#) for examples of case management guidelines.

*Consider* developing case management guidelines that include instructions on:

- when and how to contact chambers;
- your typical schedule (i.e., days and times) for motion hearings, Rule 16 pretrial conferences (including case management, status, and final pretrial conferences) and trial;
- how to request a continuance or a telephonic appearance;
- expectation for Rule 26(f) "meet and confer" conferences;
- how to prepare Rule 26(f) reports or joint case management statements;
- procedure for filing a motion (e.g., pre-motion conferences, noticing a hearing date, submitting courtesy copies, proposed orders);
- procedures for filing a motion for summary judgment;
- how to raise a discovery dispute;
- procedures for motions in limine;
- an overview of how trials are conducted (pretrial submissions, witness list, exhibits); and
- courtroom decorum and logistics (e.g., attorney and party conduct, how to address the court and witnesses, courtroom technology).

Your case management guidelines may also refer to other standing orders or rules (e.g., a standing discovery order), alternative dispute resolution (ADR) procedures, and the availability of magistrate judges. They may also provide information for pro se filers, such as where pro se resources can be found on the court's website. In addition, information about the Rule 26(f) conference should be included in your case management guidelines so the parties can approach the conference with a clear understanding of your requirements and expectations. You may also encourage counsel to meet in person, if feasible, and to consider whether any early request for production of documents should be served

pursuant to Rule 26(d)(2) to foster a more productive and informed discussion at the Rule 26(f) conference.

In some districts, the clerk's office issues an initial scheduling order when a case is assigned or shortly thereafter.[12] This order typically sets out important deadlines and conference dates, such as deadlines for filing proof or waiver of service, holding the Rule 26(f) "meet and confer" conference, filing a Rule 26(f) report or case management statement, and completing initial disclosures. The initial scheduling order may also set the date for the initial Rule 16 pretrial conference. The initial scheduling order should also advise litigants to review your case management guidelines. Many courts have local rules requiring the plaintiff to serve a copy of the initial scheduling order on each defendant and, in removal cases, requiring the defendant to serve it on any party that has previously appeared in the case.

Using these early case management tools, you can immediately set the tone for a newly assigned case and focus the parties and counsel on critical dates and tasks that must be completed in the weeks after a case is filed. In this way, the parties and counsel will be apprised of your expectations and their responsibilities from the moment the case is assigned to you.

## b. *Early case screening*

Another early case management technique you can implement in chambers is a system to screen the initial pleadings to identify jurisdictional, procedural, or administrative issues that may delay progress or, in some circumstances, mandate dismissal or remand. You may delegate this task to your law clerks by setting up a schedule for review (e.g., once a week) and developing a method (e.g., brief weekly meeting, short memorandum, notation in the case file or case tracking spreadsheet) for flagging any issues that require your attention. You can then raise these issues with counsel at the initial pretrial conference or, if the issues require more immediate attention, you can send an order to show cause. The key is to identify and address jurisdictional, procedural, and administrative issues early, before you and the parties have invested significant time and resources in the case.

---

12.  Depending on your district's case assignment procedures, when a case is filed, the clerk's office will assign it to a district judge and/or a magistrate judge. *See infra* Chapter 8, Section D.

*Consider* developing a checklist for you and your law clerks to use that includes the following issues:[13]

- What is the basis for subject matter jurisdiction? Has it been sufficiently alleged (e.g., for diversity jurisdiction, consider the amount in controversy, citizenship of the parties, including citizenship of corporations, business partners, and/or LLC members[14])?.

- Is a party seeking a temporary restraining order, requesting to file the case under seal, or seeking other immediate relief?

- Are there issues relating to exhaustion of administrative remedies (e.g., a right to sue letter in Title VII cases)?

- Are there service issues (e.g., foreign defendant)?

- Are there problems with personal jurisdiction?

- Is venue proper?

- If the district has multiple divisions, is the intra-district assignment correct?

- Is a related action pending in your district, a state court, or another district that may prompt a request for a stay, consolidation, or transfer?

- Is the case subject to a multidistrict litigation order?

- If the case was removed from state court, was removal proper?

- Are there obvious statute of limitations issues?

- Did the plaintiff file an application to proceed in forma pauperis?

- Is the plaintiff a prisoner? If so, has the plaintiff filed prior cases that raised the same claims or that were dismissed for failure to state a claim, as frivolous or malicious, or because they sought monetary relief from a defendant who was immune from such relief?[15]

- Does the case involve high-profile or sensitive issues of which the judge should be aware?

- Do you or any members of your chambers have readily apparent conflicts of interest?

- If relevant, have all parties consented to have a magistrate judge conduct all further proceedings?

---

13. For sample jurisdiction checklists, *see* Schwarzer et al., *Practice Guide: Federal Civil Procedure Before Trial* ¶ 2:299 & form 3A (Nat'l ed. 2016).

14. In diversity cases, a judge may require the parties to file a joint certification of the citizenship of the parties. *See* online appendix.

15. *See infra* Chapter 7, Section D.1.

### c. Differentiated case management

In some districts, cases are assigned using a differentiated case management (DCM) system, which assigns each civil case to a "track" based on its relative complexity and need for judicial involvement. Tracks are typically designated as "expedited," "standard," and "complex," and each track carries with it a specific set of procedures and case-event timelines. Track designations can also reflect particular case types (e.g., Social Security or asbestos cases) or case characteristics (e.g., administrative or appeals cases).

A DCM system usually relies on a uniform case management order that assigns each case to a track. Depending on the court, initial assignment to a particular track can be made by the clerk's office based on information provided by the plaintiff in the civil case cover sheet or based on the parties' selection of a track. Regardless of how tracks are initially designed or selected, all DCM systems preserve the assigned judge's discretion to alter the previously chosen track or any of its predefined management controls as individual case needs evolve. *See* online [appendix](#) for examples of orders and local rules pertaining to differentiated case management.

## B.  Prompting counsel to give early attention to the case

### 1.  In general

The presiding judge, counsel, and the parties each play a role in formulating a schedule for the case, including setting discovery and motions deadlines, as well as a trial date. The parties will be bound by the scheduling order; therefore, counsel should be encouraged to meaningfully prepare for, and participate in, the initial scheduling process. This will help you set a schedule that is realistic and achievable in light of the complexity of the case and will minimize the need for continuances as the case proceeds.

### 2.  The parties' Rule 26(f) conference

Under Rule 26(f)(1), unless the case is exempt[16] or the court orders otherwise, the parties must confer as soon as practicable, and in any event at least 21 days before a Rule 16 case management conference is held or a scheduling order is issued by the court under Rule 16(b). If your clerk's office issues an initial scheduling order

---

16.  Rule 26 does not apply to those limited actions specified under Rule 26(a)(1)(B).

when cases are assigned, that order may set a date for the initial case management conference, with the preceding deadline for the parties to hold their Rule 26(f) conference calculated from that date. In other districts, the judge issues an order setting the initial Rule 16 case management conference. *See* online [appendix](#) for examples of both approaches.

During their Rule 26(f) conference, the parties must: discuss the nature and basis of their claims and defenses; discuss the possibility of settlement; make or arrange for disclosures under Rule 26(a)(1); discuss issues about preserving discoverable information; and develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f)(2), (3). The parties must submit to the court a written report outlining the discovery plan within 14 days of the Rule 26(f) conference.

The Rule 26(f) conference presents an early opportunity for counsel to analyze their case and plan for its legal and factual development. Equally important are the relationships that can be fostered between the attorneys, which depend in part on how you convey your expectations regarding this meeting. The tone you establish can color subsequent interactions between the attorneys, as well as their interactions with the court.

## 3. The Rule 26(f) conference agenda and report

Rule 26(f)(2) lists the topics the parties must consider during the conference.[17] It also requires the parties to develop a proposed discovery plan that includes the information listed in Rule 26(f)(3), and to submit to the court a written report outlining the plan within 14 days after the conference.[18]

Some district courts, however, require the parties to file a case management statement that addresses additional topics and includes a proposed scheduling plan for the judge to consider during the initial Rule 16 case management conference.[19] These topics typically include the legal and factual issues in dispute, anticipated motions, anticipated discovery disputes, proposed dispositive motion

---

17.  The rule requires each party to disclose the names, addresses, and telephone numbers of persons likely to have discoverable information and the subject of that information; to support its claims or defenses; to provide a copy or description of all documents, electronically stored information, and things that support its claims or defenses; to provide a computation of damages claimed, along with the documents and other materials on which the computation is based; and to provide for inspection and copying of any insurance agreement that may satisfy all or part of the judgment. *See* Fed. R. Civ. P. 26(a)(1).

18.  Under Fed. R. Civ. P. 37(f), failure to participate in good faith in a Rule 26(f) conference to develop a discovery plan may result in court sanctions.

19.  *See* [*Benchbook for U.S. District Court Judges*](#) § 6.01 (Fed. Judicial Ctr. 6th ed. 2013) [hereinafter *Benchbook*].

deadlines, a schedule for ADR, proposed trial dates, and the expected length of trial.

The court may require that the parties jointly prepare and file the case management statement. However, in cases where one or more of the parties is proceeding pro se, or if a party is unable to obtain the cooperation of another party in preparing a joint statement, the court may allow the parties to file separate statements.

To facilitate this process, some courts standardize the information required in the case management order for all judges in the district. These uniform requirements are issued by local rule or standing order. *See* online [appendix](). Additionally, many courts have developed case management statement templates that the parties can download, complete, and submit. *See* online [appendix](). Judges may also develop their own case management statement templates that require additional information, especially in specialized cases such as class actions or patent litigation. *See* online [appendix]() for examples. Providing a template can ensure that each party provides the needed information and that the topics are addressed in logical order. Moreover, the topics outlined in the template can serve as an agenda for both the parties' Rule 26(f) conference and the subsequent initial Rule 16 case management conference, as well as for the initial scheduling order.

*Consider* requiring the parties to include the following information in their case management statement:

- the basis for the court's subject matter jurisdiction;

- any issues with personal jurisdiction;

- any issues concerning venue;

- whether any party remains to be served and proposed deadlines for service;

- a statement of facts and a list of factual issues in dispute;

- a statement of disputed points of law;

- prior and pending motions, status of motions, and anticipated motions;

- whether any party will seek to amend its pleadings and a proposed deadline for amendments;

- whether there has been full and timely compliance with the initial disclosure requirements of Rule 26 and a description of the disclosures made;

- discovery taken to date, the scope of anticipated discovery, whether expert discovery will be necessary, whether a Rule 30(b)(6) deposition will be taken, proposed limitations or modification of the discovery rules, a proposed discovery plan pursuant to Rule 26(f), how the parties

have considered proportionality in formulating their discovery plan, and any discovery disputes;

- the format and location of all discoverable electronic information, whether the information is readily available, and the reasonable and proportionate steps taken to preserve it;[20]

- whether any party will be seeking a protective order and whether there will be objections to its terms;

- whether the case is a class action and a proposal for how and when the class will be certified;

- any related cases or proceedings in the district or before another court or administrative body;

- the relief sought;

- prospects for settlement, settlement efforts to date, and an ADR plan for the case;

- whether all parties will consent to have a magistrate judge conduct all further proceedings;

- issues that can be narrowed by agreement or motion;

- proposed dates for designation of experts, deadlines for completing fact and expert discovery, dispositive motions, pretrial conference, and trial;

- whether the case will be tried by a jury or by a judge and the expected length of the trial;

- any other information that will facilitate the just, speedy, and inexpensive disposition of the case.

Requiring the attorneys to consider and address these topics early can help prevent problems from arising later in the case and speed its disposition.

---

20. Rule 37(e) authorizes specific measures a court may employ if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost and the party failed to take reasonable steps to preserve it. Accordingly, issues of electronic data preservation should be discussed and agreed upon as early as possible in the case. Some courts have adopted guidelines for the discovery of electronically stored information and checklists for the parties to use when discussing electronically stored information during the Rule 26(f) conference, which may be referenced in the case management statement template. *See* online appendix.

# 2

# Establishing a Case Management Plan

A.  Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
B.  Approaches to the initial Rule 16 case management conference
    and preparing the scheduling order . . . . . . . . . . . . . . . . . . . . . . . . . .  16
C.  Structuring the initial Rule 16 case management conference . . . .  18
    1.  Conducting the conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
    2.  Timing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
    3.  Location . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
    4.  Remote participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
    5.  Making a record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
    6.  Participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
        a.  Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
        b.  The parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
    7.  Pre-conference submissions . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
    8.  Agenda for the conference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
    9.  Managing the scope of the case . . . . . . . . . . . . . . . . . . . . . . . . .  26
        a.  Identifying and narrowing the issues. . . . . . . . . . . . . . . .  26
        b.  Limiting joinder of parties and amendment of pleadings.  27
    10. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
D.  Issuing the scheduling order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

## A.  Overview

Rule 16 establishes the tools at the core of civil case management: pretrial conferences and the scheduling order. It authorizes the judge to hold a pretrial conference at any point during the case to facilitate the just, speedy, and inexpensive disposition of a case. In most cases, setting an initial case management conference—often interchangeably referred to as the initial "scheduling conference," or "Rule 16 conference"—to discuss the parties' Rule 26(f) report or case management statement may give you a better understanding of the disputed issues, scope of discovery, anticipated motions, and settlement potential so that you can

tailor a scheduling order to the needs and complexity of the case. Generally, the initial Rule 16 case management conference is an opportunity for you to directly engage counsel and the parties in the case management process, reinforce your expectations for litigating the case, and ensure that the parties understand and are prepared to adhere to the deadlines in the scheduling order. Holding the initial Rule 16 case management conference requires time and preparation from you, your staff, and counsel. This investment, however, can help prevent costly, inefficient, and unnecessary discovery disputes and motion practice later in the case. In this way, the initial Rule 16 case management conference is a useful tool to expedite disposition and control costs.

A scheduling order is required in every case unless exempted by local rule. Fed. R. Civ. P. 16(b)(2). Under Rule 16(b)(2), the judge must issue the scheduling order "as soon as practicable" after receiving the parties' Rule 26(f) report or holding an initial pretrial conference, but absent good cause for delay, no later than the "earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared."[21] The scheduling order controls the course of the action unless modified by subsequent order. Fed. R. Civ. P. 16(d). Accordingly, your goal should be to set a schedule that ensures expeditious case progress and, to avoid later requests to extend the deadlines, is realistic for the parties.[22]

The following sections discuss strategies for holding an initial Rule 16 case management conference and preparing a scheduling order.

## B. Approaches to the initial Rule 16 case management conference and preparing the scheduling order

Judges take varying approaches to the initial Rule 16 case management conference and preparing a scheduling order. Some judges elect not to hold a conference at all and instead issue an order after reviewing the parties' Rule 26(f) report or case management statement. Under this approach, the judge considers the parties' proposed schedule and modifies the discovery and motion deadlines, hearing dates, and trial date, as appropriate. The judge then sets the case schedule and provides other pertinent information in the scheduling order.

---

21.  The 2015 amendment to Rule 16(b)(2) reduced the time the judge has to issue a scheduling order by 30 days, thereby encouraging judges to engage in earlier case management.

22.  Even in cases exempted by local rule from Federal Rule of Civil Procedure 16(b), a minimal but firm schedule should be set. At the other end of the scale are cases, such as some class action and mass tort cases, which require extensive management, numerous rulings, and periodic adjustments to the schedule as the case unfolds. For guidance on handling the special needs of these cases *see Manual for Complex Litigation* §§ 11.1–11.23 (Fed. Judicial Ctr. 4th ed. 2004) [hereinafter *MCL 4th*].

In some courts, case schedules for certain categories of cases are set by local rule or standing order. *See* Chapter 1, Section A.2.c, for a discussion on Differentiated Case Management. For example, some courts have default schedules or "tracks" for cases seeking review of an administrative decision (e.g., social security appeals, immigration mandamus cases), habeas petitions, bankruptcy appeals, and Americans with Disabilities Act access cases. *See* online appendix for examples. The tracks establish pre-set time frames and uniform, presumptive deadlines for significant case events, such as filing the administrative record and dispositive motions. Even when one of these default schedules applies, some judges still hold an initial case management conference, if feasible, to review the schedule, determine whether any issues or discovery can be narrowed, and assess settlement potential.

Another common approach is for the judge to hold an initial Rule 16 case management conference in *each* case to provide an opportunity to consult with the parties before issuing the scheduling order. The conference date can be automatically generated and included in the initial scheduling order (*see* Chapter 1, Section A.2.a), or the judge may issue an order setting the conference after the first defendant has been served or appeared in the action. The key is getting a case management conference on the calendar so counsel can coordinate a Rule 26(f) conference and submit their report or case management statements by the deadline in Rule 26(f)(1). If it appears from the parties' submissions that an initial case management conference is unnecessary, either because the case is relatively straight-forward or because the proposed dates and deadlines are reasonable, you may vacate the conference and issue a scheduling order. However, even in cases where the parties agree on a schedule and have proposed a reasonable discovery plan, there are potential benefits to holding an initial conference that you should consider. As Rule 16(a) highlights, the conference can be used to:

- expedite disposition of the case;
- establish early and continuing control so that the case will not be protracted because of lack of management;
- discourage wasteful pretrial activities;
- improve the quality of the trial through more thorough preparation; and
- facilitate settlement.

In addition to furthering these objectives, an initial case management conference provides an opportunity for counsel to ask questions about your procedures and to raise issues that were not included in their submissions. In many instances, the conference is also the first opportunity for counsel to meet face-to-face to discuss the case.

Civil Litigation Management Manual

## C.  Structuring the initial Rule 16 case management conference

You have broad discretion in structuring pretrial conferences to reflect your judicial style and to best achieve their objectives.

### 1.  Conducting the conference

The initial Rule 16 case management conference is generally the first significant contact between the judge and counsel. It provides a prime opportunity for the judge to assess the attorneys, the merits of the case, and the interactions among the attorneys. It also allows the judge to have a frank discussion with counsel about the case and how each phase will be managed. For newer judges, initial pretrial conferences are also a way to get to know the local bar and to begin to assess the lawyers' reputations. For these reasons, the presiding judge should consider conducting the conference in person, when practicable, or via video conference.

In courts where magistrate judges handle all pretrial proceedings, the magistrate judge will typically conduct the initial case management conference and will set deadlines for the case up through a specified time (e.g., the deadline for filing motions for summary judgment or the final pretrial conference date), at which point the district judge assigned to the case will assume responsibility. Following the initial case management conference, the magistrate judge may prepare a brief report to the district judge assigned to the case summarizing the case management plan and any special actions taken. Because this arrangement requires the time and involvement of two judges, many district judges prefer to conduct the initial pretrial conferences in their cases.

### 2.  Timing

The primary objective of the initial case management conference is to provide an opportunity for the judge and counsel to review the Rule 26(f) report or case management statements and discuss in greater detail issues that should be considered *before* the judge sets a schedule for the case. The conference, therefore, should precede the deadline for issuance of the scheduling order set by Rule 16(b).[23] Generally, the initial case management conference should be set within 60 to

---

23.  In complex cases, a judge may find it beneficial to hold an initial case management conference to have a preliminary discussion about issues such as discovery and joinder of parties and hold a follow-up pretrial conference soon thereafter to hear any updated information from counsel before issuing the scheduling order. *See MCL 4th*, *supra* note 22, § 11.212.

90 days after the case is filed. This should allow counsel time to become familiar with the case and to hold a meaningful Rule 26(f) conference. If, however, counsel is unable to adequately prepare for the Rule 26(f) conference, you may continue the initial case management conference upon a finding of good cause.[24] Because the timing of the Rule 26(f) conference is tied to either the initial Rule 16 case management conference or the deadline for issuing the scheduling order, an order continuing either date will also continue the time for the Rule 26(f) conference. The initial scheduling order or case management guidelines (*see* Chapter 1, Section A.2.a) should encourage plaintiffs to complete service of process on all defendants. It should also encourage defendants to appear as soon as practicable so that they receive ample notice of, and have sufficient time to prepare for, the Rule 26(f) and the initial Rule 16 case management conferences.

In cases where a party files a Rule 12(b) motion *before* the initial case management conference, you may either continue the conference until after ruling on the motion or proceed with the conference. If it appears that the motion may dispose of the case (e.g., a well-taken motion to dismiss based on lack of subject matter jurisdiction), it may be more prudent and cost-efficient to continue the conference until you rule on the motion. On the other hand, proceeding with the conference allows you to have a discussion with the parties about whether the motion can be narrowed or informally resolved (e.g., by amending the complaint to correct pleading deficiencies). In such instances, the initial pretrial conference can help expedite the case and save the parties the expense of fully briefing the motion and appearing for oral argument.

In cases that have been removed from state court, transferred from another district, or reassigned from another judge, you may need to set an initial case management conference so that you can issue a new or amended scheduling order. If a scheduling order has already been issued in the case, you may want to order the parties to file a joint statement summarizing the status of the case before your conference with them.

Because initial Rule 16 case management conferences are a recurring—and sometimes substantial—part of a judge's calendar, many judges adopt a standard procedure for conducting these conferences, including requirements for who must attend and how they will be permitted to participate (i.e., in person or virtually). Some judges also designate a certain day, time, and location for initial

---

24. For example, the Advisory Committee Notes to the 2015 Amendment to Rule 16 recognize that litigation involving complex issues, multiple parties, and large organizations may be more likely to need extra time to establish meaningful collaboration between counsel and the people who can supply the information needed for counsel to participate in the Rule 26(f) conference in a useful way.

case management conferences—for example, Tuesdays at 1:00 p.m. in the court-room.[25] This approach has the advantage of providing predictability for your calendar and for attorneys who routinely appear before you. Further, because the deadline for filing a Rule 26(f) report or case management statement will be the same for all cases set for a particular date, your staff can easily check that sub-missions have been timely filed and prepare them for your review. The downside to this approach is that if the calendar is heavy, counsel will have to wait for their case to be called, which ultimately increases the client's costs.

## 3.  Location

For initial case management conferences held in person, judges generally hold them in either the courtroom or chambers (e.g., in a conference room/library).

*Consider* the following factors when deciding where to hold the initial pretrial conference:

- the number of people attending;
- the public or media interest in the case;
- the purposes of the conference and the items on the agenda (e.g., whether you will make rulings or issue orders);
- the nature of the issues;
- the experience and temperament of counsel;
- whether any of the parties is proceeding pro se; and
- whether any party poses a potential security risk.

Holding a case management conference in the informal setting of your chambers can be more conducive to achieving the cooperation needed for narrowing issues, making stipulations, discussing possible problems, and pursuing possible settlement. The formality of the courtroom setting, on the other hand, promotes orderly and controlled proceedings, leading to a better record if you will be making substantive rulings. In cases of public interest, members of the public and media representatives may want to attend the conference; their presence is more easily accommodated in the courtroom.

---

25.  If more than one case is set for an initial Rule 16 case management conference on that date, you can determine the order to call the cases.

## 4.  Remote participation

The initial pretrial conference is most effective when the judge and counsel are able to have a real-time discussion about the case.[26] While judges typically hold conferences in person, under certain circumstances a judge may allow counsel to appear telephonically or by video when an in-person conference is not necessary or feasible.[27] Many courts have a local rule setting a deadline for filing and serving a request to appear telephonically (e.g., seven days before the conference date). If your court does not have such a requirement, consider including such a deadline in your case management guidelines or initial scheduling order. When deciding whether to conduct an initial pretrial conference by phone or video, *consider*:

- telephone or video conferences, especially with out-of-town counsel, can save time and money, permit a conference on short notice, and adequately address routine management matters such as scheduling or discovery issues;

- travel to the courthouse for a conference could be particularly burdensome and costly for self-represented litigants;

- face-to-face conferences can facilitate the detailed discussion needed to clarify and narrow issues, analyze damages claims, explore settlement possibilities, and address contentious matters; and

- face-to-face conferences in the courtroom may be advisable in cases with non-incarcerated pro se litigants to address their concerns, to avoid misunderstandings, to enable you to emphasize the seriousness of the litigation, and to mitigate potential security concerns.

## 5.  Making a record

You have the discretion to conduct the initial Rule 16 case management conference on or off the record. When deciding whether to record a conference, *consider*:

- counsel may speak more freely off the record, but certain cases may be so contentious that it is advisable to record the proceedings to avoid disputes later about what was said or agreed upon; and

---

26.  *See* Advisory Committee Notes to 2015 Amendments to Rule 16.

27.  Appearance by telephone or video requires the parties to coordinate with the courtroom deputy to get instructions for dialing in or logging on. The courtroom deputy should ensure that the equipment is operable before the conference to avoid any connectivity issues.

- if the case involves a pro se litigant, it may be helpful to record the conference, whether held in person or by phone or video, to avoid misunderstandings and to have a record if disputes arise later.

You should state at the outset of the conference whether you are having it recorded. If you decide the conference should be held off the record, stipulations or rulings can be dictated to the reporter or put on the record using audio recording technology at the end of the conference. If your courtroom is equipped with audio recording technology, you may make a record of the conference this way, rather than using a court reporter. This may allow you to capture details that may be helpful later in the case, but not included in the scheduling order.

## 6. Participants

### a. Counsel

For represented parties, most judges, by standing order or pursuant to their district's local rule, require lead counsel for the case to attend the initial case management conference. Other judges do not require lead counsel to appear, as long as counsel who are present have full authority to make decisions about the topics to be addressed. In cases involving a pro se party, the initial scheduling order should be clear that the pro se party is required to attend all conferences.

When deciding who will be required to attend the initial pretrial conference, *consider*:

- if you plan to work with the lawyers to narrow issues, reduce the amount of discovery, or discuss settlement, a lawyer with full authority may be needed;

- in cases in which the United States is a party, individual U.S. attorneys have limited settlement authority; and

- limiting the attendance of attorneys at conferences can save fees and other costs; however, counsel involved in related pending litigation may be helpful.

### b. The parties

In most cases, it is not necessary or useful for parties who are represented by counsel to attend the initial case management conference (i.e., counsel alone is sufficient). In certain types of cases, however, some judges find it helpful to have

the parties attend (e.g., insurance carriers bearing the major risk and exercising control in the litigation, parties asserting civil rights or personal injury claims). In cases in which strong emotions may be a factor, having the parties attend may help them understand what will be expected of them during the litigation process and the risks and costs involved with trial. Providing parties with the opportunity to express their position or reasons for pursuing a claim or defense to the judge also may help them feel they have been heard. Participation in the initial conference may also open them to early settlement.

In deciding whether to require the parties to attend the initial case management conference, you should *consider* that their attendance may:

- help them understand the key evidence and legal theories at issue;
- help them understand the potential costs and time involved in litigating the case;
- facilitate making stipulations;
- reveal potential disagreements between the parties and counsel; and
- assist them in reaching a settlement.

However, the parties' attendance may also:

- cause attorneys to posture and to maintain positions on which they might otherwise yield;
- make a party intransigent; and
- be costly for the parties, especially if there is little movement as a result.

If parties attend the conference, you can avoid problems by excusing them from time to time as needed.

## 7. Pre-conference submissions

As discussed in Chapter 1, a productive initial case management conference depends, in large part, on the time and effort counsel put into their Rule 26(f) conference and in preparing their Rule 26(f) report or case management statements. The objective of the submissions is to have counsel provide enough information about the case—including underlying facts, claims and defenses at issue, discovery, settlement potential, and anticipated motions—to enable you to assess its complexity, spot issues that may stall progress, and craft an appropriate case management plan and schedule.

Your case management guidelines should instruct counsel to file their submissions at least seven days before the initial pretrial conference. Consistent with your internal chambers procedures, it is helpful to have a member of your staff—whether the law clerk assigned to the case, your judicial assistant, or courtroom deputy—confirm that the submissions have been timely filed and contact counsel or issue an order to show cause if they were not. *See* Chapter 9, Section B for a discussion of using CM/ECF to monitor new filing.

Judges take various approaches to prepare for the initial case management conference. One option is to have the law clerk assigned to the case review the parties' submissions and highlight particular issues you may want to address in greater detail at the conference. Your law clerk may also prepare a draft scheduling order with tentative deadlines and hearing dates that you can discuss and finalize at the conference. Some judges, however, prepare by reviewing the submissions themselves before the conference.

Regardless of your approach, it is helpful to have your staff check your calendar to confirm that the proposed hearing dates for motions and trial dates are available on your calendar.

## 8.  Agenda for the conference

Rule 16(c) contains a non-exhaustive list of subjects that can be discussed at pretrial conferences.

For the initial case management conference, your focus will be on getting a better feel for the case and engaging counsel in developing a case management plan, including, in most cases, setting a trial date. The parties' Rule 26(f) report or case management statement will generally provide a starting point for issues that you will want to discuss in greater detail, especially if the parties disagree on any points or if settlement seems likely. At the beginning of the conference, you can let counsel know what you intend to cover and ask whether there are other subjects they would like to discuss. You can also use your case management guidelines to provide a general overview of how you will conduct the conference, which can help counsel prepare and streamline the conference. Keep in mind that the initial case management conference is an opportunity for you to assist counsel in identifying—and potentially resolving—issues that could slow the progression of the case and increase litigation costs. For that reason, spending a few minutes to talk through an issue raised by counsel may obviate the need for a motion and unnecessary discovery.

*Consider* the following topics and areas for discussion at the initial case management conference:

- clarifying, narrowing, or eliminating legal or factual issues in dispute, *see* Fed. R. Civ. P. 16(c)(2)(A);

- setting proposed discovery and motion deadlines, hearing dates, pretrial filings deadlines, pretrial conference date, and trial schedule;

- agreeing on procedures to be followed for determining claims of privilege, including claims arising after production of privileged information, *see* Fed. R. Civ. P. 26(f)(3)(D);

- clearly identifying and agreeing on all electronic discovery issues, including issues of preservation, cost, location, and format, *see* Fed. R. Civ. P. 26(f)(3)(C);[28]

- specifying time limitations for the joinder of parties and amendment of pleadings, *see* Fed. R. Civ. P. 16(c)(2)(B);

- for district judges, whether the parties will consent to magistrate judge jurisdiction for all aspects of the case, *see* Fed. R. Civ. P. 16(c)(2)(H);

- discussing prospects for settlement and assessing the parties' present settlement posture;

- adopting special procedures for managing potentially difficult or protracted actions (e.g., complex or patent cases, or class actions), *see* Fed. R. Civ. P. 16(c)(2)(L);

- controlling, limiting, determining the proportionality of, and identifying potential problems with discovery, including the possibility of phased discovery and the need for a Rule of Evidence 502(d) order;

- exploring the suitability and appropriateness of the case for ADR; available ADR options (e.g., arbitration, mediation, judicial settlement conference); the parties' preferred ADR option; and the parties' justification if no ADR option is chosen; and

- whether a later pretrial conference will be needed.[29]

---

28.  A thorough discussion of electronic discovery matters that should be considered early in the case is contained in *infra* Chapter 3, Section F. *See also Managing Discovery of Electronic Information* (Fed. Judicial Ctr. 3d ed. 2017); and *Effective Use of Courtroom Technology: A Judge's Guide to Pretrial and Trial* (Fed. Judicial Ctr. 2001).

29.  *See also MCL 4th*, *supra* note 22, § 11.21; *Benchbook*, *supra* note 19, § 6.01(B) (suggesting topics for the initial pretrial conference).

## 9.  Managing the scope of the case

### *a.  Identifying and narrowing the issues*

As outlined in Rule 16(c)(2), one of the most important tasks at the initial pretrial conference is to simplify the legal and factual issues in dispute to avoid unnecessary proof or cumulative evidence.[30] Refining the issues and stipulating to uncontested facts can help make discovery more targeted and efficient, obviate unnecessary motions, and focus settlement discussions—all of which help control costs and expedite disposition of the case. Discussing the issues in dispute also encourages counsel and their clients to consider the scope and complexity of the litigation and the economics of litigating the case.

In some instances, counsel will contend that they lack appropriate information for early identification of legal and factual issues. You may remind counsel that Rule 11 requires inquiry prior to the filing of an action, and counsel should be held to their responsibilities. Moreover, identifying even formative information is helpful. You can make it clear that information should be as specific as currently possible, but that any information developed in this process is subject to later clarification.

In engaging counsel in the issue narrowing process, you will want to ask direct and leading questions, such as: "What do you expect to prove and how? How do you expect to defeat this claim? What are the damages?" If these questions reveal issues that are ripe for dismissal, counsel should be given adequate notice and an opportunity to be heard before you take any action on the merits.

*Consider* the following additional approaches:

- addressing and resolving early in the case questions concerning subject matter jurisdiction—a fatal and nonwaivable defect[31] (for a sample order to show cause regarding removal jurisdiction, *see* online appendix);

- urging attorneys to reach agreement on the issues in dispute or to clearly identify areas of disagreement and narrow those remaining issues;

- determining which issues are material and genuinely in dispute by pressing both sides to avoid wasteful litigation activity (e.g., unnecessary discovery and motions) and to encourage settlement;

---

30.  *See also MCL 4th*, *supra* note 22, § 21.3.

31.  *See Practice Guide: Federal Civil Procedure Before Trial* ¶ 2:299 & form 3A (jurisdictional checklist), *supra* note 13.

- determining how issues may be resolved, whether by motion (e.g., Rule 12(b)(6) motion or motion for partial summary judgment) or by special procedures (e.g., a bifurcated trial);

- determining what discovery is required to resolve a potentially dispositive issue and putting that limited activity on an expedited track;

- identifying with specificity the amount and computation of damages claimed and other relief sought, the supporting evidence, and the basis for establishing causation; and

- determining whether there are indispensable parties to be joined.

### b.  Limiting joinder of parties and amendment of pleadings

Changes in parties (by addition, substitution, or dismissal) and amendments to claims or defenses can affect the claims at issue and cause unnecessary or duplicative discovery and motion activity. For these reasons, it is important to set a reasonably early cutoff date for amendments of any kind (*see* Fed. R. Civ. P. 15; local rules may also apply). If counsel indicates in the case management statement or during the initial pretrial conference that the party may be filing a motion to amend, explore whether the opposing party will stipulate to the amendment, either at the conference or upon disclosure of additional information. Because judges are to liberally grant leave to amend under Rule 15(a)(2), it may not be worth the expense for the other party to oppose the motion when the amendment is minor or does not change the scope of the issues.[32] Engaging in this discussion may help avoid a round of motions on the amendment.

## 10. Sanctions

To further Rule 16's goal of active judicial management, Rule 16(f)(1) contains an enforcement mechanism, authorizing a judge on motion or sua sponte to issue an order sanctioning parties or counsel for failing to appear at pretrial conferences, being substantially unprepared to participate in the conferences, or failing to obey a scheduling or other pretrial order. Under Rule 16(f)(2), instead of or in addition to sanctions, the judge *must* order the party, its attorney, or both to pay reasonable expenses (including attorney's fees) incurred unless the violation was substantially justified or an award of expenses would be unjust.

---

32.  For additional topics to consider discussing at the initial retrial conference, *see Benchbook*, *supra* note 19, § 6.01.

Civil Litigation Management Manual

## D. Issuing the scheduling order

In general, you have discretion to craft a scheduling order that best sets forth the deadlines, hearing dates, and other pertinent information you want to convey to the parties. But under Rule 16(b)(3), there is certain information that *must* be included in the scheduling order and a non-exhaustive list of information that you *may* consider including in the order.

Rule 16(b)(3)(a) requires that, *at a minimum*, the scheduling order set deadlines for joining other parties, amending the pleadings, completing discovery, and filing dispositive motions. These deadlines will ensure that at a specific point the pleadings and parties will be fixed, which will help deter delay tactics. In addition to this mandatory content, Rule 16(b)(3)(B) lists several other items that you *may* incorporate into the order, including:

- changes to the timing of disclosures under Rules 26(a) and 26(e)(1);
- limits on the extent of discovery;
- details about the disclosure, discovery, or preservation of ESI;
- agreements the parties have reached for asserting claims of privilege or for protection of trial-preparation material after information is produced, including agreements under Rule of Evidence 502;
- a requirement that parties request a conference with the court before filing a discovery motion;
- dates for pretrial conferences and trial; and
- other appropriate matters.[33]

Notably, the final item authorizes you to include any other information that will assist with management of the case. Some judges provide more specific details about the items listed in Rule 16(b)(3)(B), such as:

- deadlines for participating in a settlement conference or complying with ADR requirements;
- deadlines for completing particular phases of discovery (disclosure of expert witnesses, disclosure of rebuttal expert witnesses, noticing depositions, serving interrogatories and document requests, and filing discovery motions);

---

[33]. The 2015 amendments added preservation of ESI, agreements under Rule of Evidence 502, and pre-motion discovery conferences to the list of permitted items.

- limits on the number of depositions, requests for documents, interrogatories, and requests for admission;

- deadlines for supplementing and/or correcting previously-made disclosures and discovery responses;

- deadlines for filing pretrial materials (joint pretrial statement, motions in limine, trial briefs, proposed voir dire questions, proposed jury instructions, proposed verdict forms, trial exhibits) and for filing objections; and

- dates for further pretrial conferences, as needed.

For examples of scheduling orders, *see* online appendix.

Under Rule 16(b)(4), the schedule may be modified only for good cause shown and with the judge's consent. It is important to emphasize during the initial pretrial conference that you expect counsel to adhere to the schedule set in your scheduling order and that last-minute requests to continue deadlines will be disfavored.

Finally, bearing in mind the deadline set by Rule 16(b)(2), you should issue the scheduling order either at the end of the initial case management conference or soon thereafter so that counsel and the parties are on notice of the timeline for the case and their obligations to the court and the other parties. The law clerk assigned to the matter should also confirm that the deadlines and hearings are noted on your internal chambers case tracking system, as well as on your calendar.

# 3

# **Discovery Management**

| | | |
|---|---|---|
| A. | Overview | 31 |
| B. | Discovery rules and procedures | 32 |
| C. | Discovery management | 33 |
| | 1. Judge-specific discovery requirements and procedures | 33 |
| | 2. Rule 26(f) conference and proposed discovery plan | 34 |
| | 3. Initial Rule 16 case management conference | 34 |
| | 4. Setting discovery deadlines | 36 |
| D. | Using magistrate judges and special masters | 37 |
| E. | Resolving discovery disputes | 38 |
| | 1. Meet and confer requirement | 39 |
| | 2. Phone conference | 39 |
| | 3. Discovery dispute letter | 40 |
| | 4. Motion to compel discovery | 40 |
| | 5. Disputes arising during depositions | 40 |
| F. | Electronically Stored Information (ESI) | 41 |
| | 1. ESI and the Rule 26(f) conference | 41 |
| | 2. ESI and the initial Rule 16 case management conference | 42 |
| | 3. Accessibility of ESI sources | 42 |
| | 4. ESI, waiver, clawback, quick peek agreements, and Rule of Evidence 502 | 43 |
| G. | Protective orders | 44 |
| H. | Expert witnesses | 44 |
| | 1. Early pretrial management | 45 |
| | 2. Court-appointed experts | 47 |

## A. Overview

Pre-trial discovery is often the longest phase of a case and directly impacts the overall cost, speed, and perceived fairness of litigation. While the Federal Rules of Civil Procedure establish the basic scope and mechanisms for discovery, the

presiding judge plays a crucial role in ensuring that every party gets appropriate but proportional access to information needed to prosecute or defend against the claims at issue. This is not an easy task. To effectively manage discovery, you must use the Rule 26 and Rule 16 pretrial conferences to encourage counsel to develop a realistic and proportional discovery plan and to identify areas of disagreement that can be resolved early and informally. Disputes often arise that have the potential to sidetrack the case, escalate costs, and erode an otherwise cooperative relationship between counsel. You should therefore have procedures in place that promote prompt and cost-effective resolutions of discovery disputes. You should also remind counsel of their obligations under Rules 1 and 26(g) not to misuse the discovery process and that failure to comply with the Rules or your orders could result in sanctions under Rule 37. The following sections discuss techniques you may use to oversee the discovery phase of a case and ensure that it is efficient, expeditious, and fair.

## B. Discovery rules and procedures

Federal Rules of Civil Procedure 26–37 set out the general framework, timing, and mechanisms for conducting discovery. Significant amendments to several of these rules came into effect in 2015.[34] The most important of these amendments is the change to the definition of the scope of discovery in Rule 26(b)(1), which provides that, unless otherwise limited by court order, parties may obtain discovery on any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering six factors that bear on proportionality.[35] The Advisory Committee Notes explain that this amendment reinforces the parties' obligation under Rule 26(g) to consider these factors in making discovery requests, responses, or objections. Consistent with

---

34. For example, Rule 34(b), dealing with requests for production, was amended in several respects in 2015. Rule 34(b)(2)(A) was amended to comport with Rule 26(d)(2), setting the time to respond to a Rule 34 request delivered before the parties' Rule 26(f) conference to 30 days after the first Rule 26(f) conference. Moreover, Rule 34(b)(2)(B) was amended to require that objections to Rule 34 requests be stated with specificity. This provision was also amended to reflect that the responding party may state that it will produce copies of documents or ESI instead of permitting inspection and that production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. Finally, Rule 34(b)(2)(C) was amended to state that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection.

35. The six factors bearing on proportionality listed in Rule 26(b)(1) are: the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

this amendment, Rule 26(b)(2)(c) requires the court to limit discovery if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

The mechanisms for conducting discovery, including depositions, interrogatories, requests for production, mental and physical examinations, and requests for admission are described with specificity in Rules 27–36. Rule 37 allows parties to move for an order to compel disclosure or discovery, authorizes sanctions for violations of discovery rules and orders, and specifies curative measures a court may employ if a party fails to preserve electronically stored information (ESI).

In addition to the Federal Rules, many districts have adopted local rules imposing more detailed procedures and requirements for discovery. For instance, some districts require specific formatting or numbering for interrogatories, requests for production, and requests for admission, or establish district-wide procedures for resolving discovery disputes. Some districts have also adopted local rules for specific categories of cases, such as pro se prisoner,[36] patent infringement,[37] and employment cases.[38]

## C. Discovery management

### 1. Judge-specific discovery requirements and procedures

To start managing discovery at the very beginning of the case, you may include guidance or instructions in your case management guidelines or initial scheduling order. This may include topics the parties should consider during their Rule 26(f) conference, your procedures for resolving discovery disputes, specific requirements for various discovery mechanisms (e.g., requests for production), and procedures for requesting protective orders. *See* online appendix for examples. Even if your district's local rules already address discovery procedures, you may still consider adding a brief statement about discovery to reinforce the parties' obligations to cooperate and not to abuse discovery procedures and to encourage them to consider proportionality when developing their discovery plan. Including such information in your guidelines or scheduling order not only compels counsel to

---

36.  *See, e.g.*, S.D.N.Y. Local Civil Rule 33.2.

37.  *See, e.g.*, N.D. Cal. Patent Local Rules; N.D. Ill. Local Patent Rules.

38.  *See Report on Pilot Project Regarding Initial Discovery Protocols for Employment Cases Alleging Adverse Action* (Fed. Judicial Ctr. 2015).

start thinking about discovery immediately after the case is filed, but allows you to reinforce key rules, implement procedures to make discovery more productive, and proactively address problems that have led to disputes in other cases.

## 2.  Rule 26(f) conference and proposed discovery plan

As discussed in Chapter 1, a chief objective of the Rule 26(f) conference is for counsel to develop a proposed discovery plan that you can consider when preparing the scheduling order for the case. Rule 26(f)(2) sets forth the information that the parties *must* address in the discovery plan, including statements from the parties about initial disclosures, the subjects on which discovery may be sought, discovery completion dates, whether discovery should be phased, issues about claims of privilege, issues relating to ESI, proposed changes to the presumptive limits under the Federal Rules or the court's local rules, and whether the court should issue any other orders under Rule 26(c) or Rule 16(b) and (c). As detailed in Chapter 1, many courts and individual judges require parties to provide more specific details about discovery in the Rule 26(f) or case management statement, including proposed deadlines for expert testimony under Rule 26(a)(2) and deadlines for disclosure of witnesses, exhibits, and other matters under Rule 26(a)(3). If there are particular issues that you believe will assist the parties in formulating their discovery plan, you may instruct the parties to discuss those issues and include their responses in their Rule 26(f) report or case management statements.

## 3.  Initial Rule 16 case management conference

At the initial Rule 16 pretrial conference, you should review the details of the parties' proposed discovery plan with counsel. The discussion will give you a general picture of the nature and extent of discovery in the case, including whether it will involve a high volume of documents, ESI, and expert testimony. It can also help you assess the proportionality of the initial discovery the parties are seeking and provide an opportunity to ask counsel how they can streamline the discovery process and control costs. Moreover, the discussion can help identify areas of potential disagreement before they devolve into costly and counterproductive disputes.

*Consider* discussing the following discovery-related topics at the initial pretrial conference:

- Do the parties agree on the scope of discovery in the case?
  - ◦ Are there issues about the relevant subject matter and time period?

- Have the parties made initial disclosures under Rule 26(a)?
  - ◦ If not, when are they due?
  - ◦ Are the parties seeking modification of that deadline?[39]

- Based on the parties' description of the claims and defenses at issue, what is the logical starting point for discovery and what are the most accessible and least expensive sources for that information?

- Should discovery be phased?
  - ◦ Is there a legal issue that is potentially dispositive?
  - ◦ What information is needed for a hearing on the dispositive issue?

- Can the parties streamline discovery on certain issues?
  - ◦ What are the top items that each party will be seeking?
  - ◦ Will the opposing party agree to voluntarily produce these items without a formal request for production?

- What discovery is necessary for the parties to meaningfully participate in ADR?
  - ◦ What information will help the parties assess litigation risk?
  - ◦ Will the parties agree to produce that information early in discovery so that they can assess settlement potential?

- Do the parties agree that the presumptive limits on discovery in the Federal Rules of Civil Procedure will apply, or are there proposed modifications?

- Are expert witnesses necessary?

- Is counsel aware of special circumstances that might affect the availability of key witnesses (e.g., a terminally ill witness)?

- Are there issues concerning confidentiality; is any party seeking a protective order?

---

39. A judge may require parties to exchange Rule 26(a) initial disclosures before the initial pretrial conference. *See* online [appendix](appendix) for an example of this approach.

- Do the parties understand their obligations relating to ESI?
    - Have the parties taken steps to preserve potentially discoverable ESI?
    - Have counsel talked to their clients about the location and custodians of ESI?
    - Have the parties discussed and agreed upon a format for producing ESI?
    - Have the parties discussed whether to agree that inadvertent production of privileged or protected ESI will not result in a waiver, and whether to ask the court to enter an order under Rule of Evidence 502(d)?
- Do the parties wish to be referred for mediation or other ADR?

## 4.  Setting discovery deadlines

The amount of time needed for the parties to complete pretrial discovery will vary from case to case, depending on the type of case, the complexity of the issues, the ease of access to relevant documents and witnesses, the experience of counsel, and the parties' motivation to either get to or forestall trial.[40] There are several considerations when setting deadlines for specific phases of discovery and a discovery cut-off date.

First, the parties' proposed discovery schedule is often a fair indicator of the time needed to complete discovery.[41] Nevertheless, informed by the discussion with counsel at the initial pretrial conference, you should review and appropriately revise the proposed discovery schedule to ensure that it is efficient, realistic, and achievable. If the discovery schedule is too aggressive, it creates the risk that parties will need to file motions to extend the discovery cut-off date, which not only increases costs, but may require pushing back the dispositive motion deadline and the trial date. A discovery schedule that is unnecessarily long may discourage counsel from developing an organized and cost-efficient discovery strategy and ultimately delay resolution of the case.

---

40.  A 2011 FJC study entitled, "The Timing of Scheduling Orders and Discovery Cut-Off Dates" found that in the 11 districts studied, the median time from entry of the first scheduling order to the first imposed discovery cut-off ranged from 143 days (or 4.7 months) to 240 days (or 7.9 months). The study also found that the nature-of-suit categories with the longest median time were contracts (6.6 months) and complex (7.1 months). The nature of suit with the shortest median time was the catch-all category, at 157 days (or 5.2) months.

41.  For courts that assign cases to a particular track under a Differentiated Case Management system, *see supra* Chapter 1, Section A.2.c, there may be presumptive timeframes for discovery.

Second, while the discovery cut-off date should be firm, there may need to be adjustments to the deadlines for fact discovery, expert disclosures, expert depositions, and pretrial disclosures as the case evolves. It may be beneficial to build in buffers between these deadlines so that if one deadline needs to be extended, it will not throw off remaining deadlines.

Third, you should keep in mind the Civil Justice Reform Act (CJRA) reporting requirement for cases pending more than three years. Discovery should be completed far enough in advance to allow for motions for summary judgment to be briefed and ruled on and for the case to be tried before the three-year mark.[42]

In general, after the initial pretrial conference, you will not have further involvement with the case during the discovery phase unless a dispute arises. If there is a particular issue that needs to be discussed or reevaluated after the parties have produced some discovery, you may order the parties to file a joint statement briefly describing the issue and/or schedule a telephonic conference with counsel. Although less common, some judges schedule a telephonic status conference near the close of discovery in every case. While this may not be practical or necessary in most cases, you may consider setting a conference if discovery has been especially contentious and you anticipate last-minute disputes or motions to extend the discovery cut-off date.

## D. Using magistrate judges and special masters

As discussed more fully in Chapter 8, Section D, magistrate judges play various roles in pretrial case management, including supervising discovery and resolving discovery disputes. In some districts, at the time the case is filed, a magistrate judge is automatically assigned to the case for pretrial case management or for purposes of discovery. In these districts, the assigned magistrate judge will be responsible for discovery issues that arise during the pretrial stage. In other districts, when a discovery dispute arises, the district judge presiding over the case may refer the dispute to a magistrate judge for resolution. Typically, the magistrate judge to whom that dispute is referred will handle subsequent discovery issues that arise in that case. If a magistrate judge has developed expertise in a particular area of law (e.g., patent infringement), you may consider directly referring a complex discovery dispute concerning that area to that magistrate judge. Keep in mind that magistrate judge orders on discovery disputes are appealable to the referring district judge under Rule 72(a) and must be set aside if clearly erroneous or contrary to law.

---

42. For more information on the CJRA reporting requirements, *see infra* Chapter 4, Section B.1, and the *Guide to Judiciary Policy*, vol. 18, § 540.

While some judges routinely refer all discovery disputes to magistrate judges, in certain instances it may be more efficient for the district judge presiding over the case to handle the dispute. For example, if the discovery dispute raises a single, well-defined issue, the district judge may be able to promptly rule on the matter. Similarly, if there was an extensive discussion about discovery during the initial pretrial conference, the district judge may be better suited to make discovery rulings consistent with the discovery plan adopted for the case. Further, if the dispute concerns discovery central to the viability of a claim or defense, the district judge should consider handling the dispute. On the other hand, a magistrate judge may be in a better position to dedicate time to disputes that require extensive legal analysis or written decisions, as well as to cases that have recurring discovery disputes or need periodic pretrial conferences to ensure that discovery is on track.

Although infrequent, in large-scale, complex cases, it may be appropriate to appoint a special master to supervise discovery if discovery issues cannot be effectively and efficiently addressed by an available district or magistrate judge.[43] Examples include cases involving a substantial amount of ESI or cases requiring technical expertise to resolve certain issues.[44] For a full discussion of the use of special masters for pretrial proceedings, *see* Chapter 8, Section F and the *MCL 4th*.

## E.  Resolving discovery disputes

While Rule 26(f) and Rule 16 pretrial conferences can help identify and defuse initial discovery disputes, most disputes arise after discovery is underway and concern specific items or categories of information that a party refuses to produce. Discovery disputes are problematic because they bring the exchange of discovery to a halt and spawn satellite litigation over whether the information is discoverable, which increases costs and demands your immediate attention. Although discovery disputes may sometimes be unavoidable, having clear procedures in place for resolving them can minimize unnecessary disruption to the case.

There are several approaches for handling discovery disputes, ranging from informal telephonic conferences to motions to compel. Some districts have adopted local rules establishing a uniform procedure for discovery disputes; in other districts, each judge decides what procedure parties should follow. Below are a range of options to consider.

---

43.  *See* Fed. R. Civ. P. 53(a)(1)(C).

44.  *See* *Managing Discovery of Electronic Information*, *supra* note 28, at 5–6; *MCL 4th*, *supra* note 22, §11.446.

## 1. Meet and confer requirement

Federal Rule of Civil Procedure 37(a)(1) requires counsel to meet and confer in good faith in an attempt to resolve discovery disputes informally before moving to compel. Consistent with this rule, many judges require counsel to meet and confer before submitting written materials or contacting chambers about a discovery dispute. The requirement makes it more likely that counsel are truly at an impasse before seeking intervention. Some judges have found that requiring lead trial counsel (rather than an associate) to participate may facilitate resolution of the dispute. If practical, requiring that the lawyers meet in person may also be useful.

## 2. Phone conference

When a discovery dispute arises, some judges—either on a case-by-case basis or in general—require the parties to submit a joint letter or jointly call the court (either chambers or the courtroom deputy) to request a telephonic conference with the judge. The judge may have a law clerk speak with counsel to take down a brief description of the dispute, the legal authorities each side is relying upon, and determine whether documents should be submitted (e.g., the interrogatories in dispute). After consulting with the judge, the law clerk can set up a time for the conference call and provide further instructions to counsel. The judge will then hold a conference call with counsel on the record, either with a court reporter or using the audio recording technology in the courtroom. During the conference call, the judge will hear counsels' positions on the dispute and announce a ruling, which will be summarized in the minutes prepared by the courtroom deputy. In some cases, the judge will also issue a brief written order or direct counsel to file a proposed order for signature.

This approach allows the parties to quickly bring their dispute before the judge and obtain a ruling before discovery is derailed. Because no formal briefing is required, it is cost-effective for the parties and does not generate additional materials for the court to review. Further, requiring counsel to present their positions to the judge over the phone rather than by letter or brief has a way of encouraging them to rethink unreasonable positions and come to an agreement.

While this approach may work well with routine discovery disputes, more complicated disputes—especially those requiring interpretation of case law or statutes—will likely require briefing. Nevertheless, even in those circumstances, the initial conference call is useful to give you an overview of the dispute and to narrow the issues. You may also use the conference call to convey your initial thoughts or

tentative ruling and direct counsel to meet and confer again to attempt to resolve the dispute on their own and to notify you of the outcome. *See* online appendix for examples of instructions for telephonic discovery dispute conferences.

## 3.  Discovery dispute letter

Another option for efficiently addressing discovery disputes is to have counsel file either a joint letter or separate letters detailing the dispute. The letter should address the nature and status of the dispute, confirm that counsel have met and conferred, be of a reasonable page limit (e.g., 3–5 pages), and include as an attachment the disputed discovery request or response. If a joint letter is required, you may specify that the party seeking relief should prepare its portion of the letter first and then provide it to the opposing party so that it can include its response and file the letter. If separate letters are required, you may set a standard deadline for the response letter (e.g., 3 days after the initial letter is filed). After the joint or separate letters, you may resolve the dispute on the papers, set the matter for a telephonic conference or hearing, or if the matter is complicated, order the party seeking relief to file a motion to compel. *See* online appendix for examples of the letter approach.

## 4.  Motion to compel discovery

Rule 37(a) provides that the motion to compel is the traditional method for presenting a discovery dispute to the court for decision. To narrow the scope of the dispute, some judges require the parties to participate in a preliminary phone conference. For the same purpose, many judges also require parties to file letters or a joint letter before allowing them to file a motion. *See* online appendix for examples. The judge's ability to award fees to the party that prevails on the motion to compel pursuant to Rule 37(a)(5)(A)-(B) may also deter ongoing and unnecessary discovery disputes.

## 5.  Disputes arising during depositions

Disputes arising during a deposition often require your immediate attention because they can stop the deposition or, if not resolved before the deposition concludes, require a second deposition. Accordingly, some judges have adopted procedures that encourage the parties to contact chambers for a telephonic conference so the judge can rule on the dispute before the deposition ends. *See* online appendix for examples.

## F.  Electronically Stored Information (ESI) [45]

Digital technology now dominates how information is communicated and stored. As a result, ESI is a routine component of discovery in civil litigation.[46] ESI discovery may be burdensome and expensive, and may involve the court in thorny issues regarding preservation, form of production, and complex issues of waiver regarding attorney–client privilege and work–product protection.

A proactive management strategy that encourages the parties to discuss and develop a pragmatic approach for electronic discovery as part of their overall discovery plan will help control costs and avoid disputes once discovery is underway. Notably, your management of these issues may be more significant in smaller cases staffed by attorneys who are not comfortable with ESI and who cannot afford to engage ESI experts to assist them.

### 1.  ESI and the Rule 26(f) conference

As discussed in Chapter 1, the starting point for effective discovery management is the Rule 26(f) conference. Under Rule 26(f)(3)(C), the parties are required to discuss issues relating to disclosure, discovery, or preservation of ESI, including the forms in which it should be produced, and to include this information in their Rule 26(f) report or case management statements. To facilitate this process, some courts have adopted local rules or developed guidance materials, such as Rule 26(f) preparation requirements, checklists of discussion topics, and model agreements, to give structure to the parties' discussion.[47] *See* online appendix for examples.

If your district has developed such materials, consider including a statement in your case management guidelines advising litigants to review the materials before the Rule 26(f) conference. If your district does not have uniform ESI guidance, you may adapt the sample materials in the online appendix to conform

---

45.  For a comprehensive discussion of electronic discovery, including each of the topics discussed in this section, *see Managing Discovery of Electronic Information*, *supra* note 28.

46.  ESI generally includes:

> e-mail messages, word processing files, web pages, and databases created and stored on computers, magnetic disks (such as computer hard drives), optical disks (such as DVDs and CDs), flash memory (such as "thumb" or "flash" drives), and on "cloud" based servers that are hosted by third parties and accessed through Internet connections.

*Id.*, at 2.

47.  *See also Managing Discovery of Electronic Information*, *supra* note 28, at 7–8; and *MCL 4th*, *supra* note 22, § 40.25(2).

to your district's local practices and include them as an attachment to your case management guidelines or initial scheduling order. At a minimum, you may want to consider adding an instruction to counsel in your case management guidelines advising that, if ESI discovery is expected, counsel should discuss their clients' obligation to preserve ESI and should become familiar with the critical aspects of their clients' ESI *before* the Rule 26(f) conference. Some courts also recommend that the parties each identify an e-discovery liaison who is knowledgeable about the party's ESI and will participate in the resolution of ESI discovery disputes.

## 2.  ESI and the initial Rule 16 case management conference

After reviewing the parties' Rule 26(f) report and discovery plan, you may use the initial pretrial conference to ask targeted questions about the scope, cost, and time required for producing ESI, as well as the form of production and steps that have been taken to preserve potentially discoverable ESI. The conference also provides an opportunity for you to learn about the technology that will be involved in the ESI production. If the parties indicate that no ESI will be sought or exchanged and that there is no ESI preservation obligation to discuss, you should remind them that Rule 34(b)(2)(E)(iii) limits a party to producing ESI in one form so that they understand clearly that it may not be possible to shift from hard copy production to electronic production midway through the discovery phase.

In a case potentially involving a significant volume of ESI, the judge may use the initial pretrial conference to assess whether the ESI sought is reasonable and proportional to the needs of the case. Generally, the parties should stage discovery to begin with a search for readily accessible ESI that is associated with the key players and use the results to refine the scope of subsequent searches, especially if information is only available from less accessible sources. You should also ask counsel about the search methods and criteria they will be using to ensure they are using cost-effective means of locating the requested ESI. In cases involving voluminous or highly-technical ESI, additional pretrial conferences may be necessary after the parties have better assessed the scope of the ESI to ensure that the discovery plan is reasonably proportional to the needs of the case.

## 3.  Accessibility of ESI sources

Under Rule 26(b)(2)(B), a party is not required to provide discovery or ESI from sources that the party identified as "not reasonably accessible" because of undue burden or cost. If a requesting party seeks to compel production of ESI from such a source, the resisting party bears the burden of proving the undue burden or

cost associated with accessing it. If, however, the requesting party shows good cause, you may order discovery from such sources, subject to the proportionality limitations in Rule 26(b)(2)(C) and other appropriate conditions, including cost-sharing or cost-shifting.[48] In resolving such a dispute, consider initially limiting discovery to ESI from accessible sources and deferring consideration of discovery from the not reasonably accessible sources until the parties can assess the need for it. You may also permit the parties to conduct limited and targeted discovery to better assess whether the source is not reasonably accessible.

You may consider allocating or shifting costs when a party seeks production of ESI that is not reasonably accessible, as well as in instances where a party seeks production of a volume of ESI that may exceed what is proportional to the case. Courts have articulated various standards and factors that must be considered before ordering such cost shifting.[49]

## 4. ESI, waiver, clawback, quick peek agreements, and Rule of Evidence 502

Cases involving production of ESI raise serious concerns for the parties about inadvertent disclosure of privileged or protected material. The sheer volume of ESI, coupled with the reality that privileged or protected commentary may be hidden in metadata or overlooked during pre-production review, have resulted in a significant increase in both the costs of screening ESI and in the inadvertent production of privileged or protected material.

In recognition of this increased risk, Rule 16(b)(3)(b)(iv) contemplates that parties may agree to binding non-waiver agreements, also referred to as "clawback" or "quick peek" agreements.[50] Under a clawback agreement, the party responding to an ESI request will still review responsive material for privilege or work product protection prior to production, but will agree with the requesting party to a procedure for the return of inadvertently produced information without waiver of the applicable privilege or protection. Under a quick peek agreement, the responding party produces the requested material without an extensive privilege review, but agrees with the requesting party that the production does not waive attorney–client privilege or work–product protection for anything included with the production. The details of these agreements are up to the parties to develop.

---

48.   *See Managing Discovery of Electronic Information*, *supra* note 28, at 15–16.

49.   *See* id., at 18–20.

50.   For a more detailed discussion of non-waiver agreements, *see id.*, at 24–26.

Rule of Evidence 502(d) also allows parties to seek additional protection from the consequences of inadvertent production. It authorizes a federal court, on motion or sua sponte, to enter an order providing that disclosure connected with the litigation pending before it does not waive privilege or protection. Such an order is binding not only on the parties to the case but also as to third parties and will apply in any other federal or state proceeding. Without a Rule 502(d) order, a non-waiver agreement's applicability will generally be limited to the parties in the case.

Rule 26(f)(3)(D) requires the parties to focus on these issues early in the case, in that it mandates that the parties indicate in their proposed discovery plan whether they have agreed upon a procedure for asserting post-production privilege and work–product claims, and whether they are asking the court to include their agreement in a Rule 502(d) order. You should raise the topic at the initial pretrial conference and consider entering an order under Rule 502(d) if it appears that the parties will be producing a significant amount of ESI.

## G. Protective orders

Rule 26(c) addresses the entry of protective orders to limit discovery or access to discovery—for example, to protect a party's trade secrets from public disclosure or from use other than prosecuting claims or defenses. At the Rule 26(f) conference, the parties should discuss whether a protective order will be required to prevent disclosure of confidential, proprietary, or private information that will be produced during discovery. In many cases, entry of a protective order is common practice, and the attorneys may be prepared to stipulate to an agreed order. Some courts have adopted model protective orders that set forth standard definitions as well as procedures for designating protected material, for challenging these designations, and for controlling the use of protected material. *See* online appendix for examples. If the case will involve confidentiality concerns, the most efficient way to resolve them is before discovery begins, by discussing the need for a protective order at the initial pretrial conference.[51]

## H. Expert witnesses

Experts are routinely used in civil litigation to testify on a broad spectrum of disciplines and experience, including economic, scientific, technological, medical,

---

51. For additional information on protective orders, *see Confidential Discovery: A Pocket Guide on Protective Orders* (Fed. Judicial Ctr. 2012).

44

and legal subjects. In light of three well-known Supreme Court decisions,[52] management of expert evidence is an integral part of proper case management. Under those decisions, the district judge is the gatekeeper who must determine whether the proffered evidence is sufficient to meet the test under Rule of Evidence 702. Your performance of the gatekeeper function will be intertwined with your implementation of Rule of Civil Procedure 16.[53]

To further your own understanding of expert evidence, you can use several sources, beginning with the parties' experts. You may also appoint your own expert, as discussed below. Refer also to the *Reference Manual on Scientific Evidence* which, in addition to introductory essays on the admissibility of scientific evidence and how science works, offers a tutorial in each chapter on a different area such as DNA evidence, medical evidence, toxicology, mental health evidence, and estimations of economic loss in damages awards.[54]

## 1.  Early pretrial management

Effective management of expert evidence begins at the pretrial stage. *Consider* the following approaches to facilitate early management of expert evidence:

- Requiring identification of expert witnesses, by area of expertise if not by name, at an early pretrial conference to further the process of defining and narrowing the issues, to focus discovery, and to facilitate settlement. In cases in which expert evidence is a necessary predicate of the claim (e.g., medical malpractice), identification of an expert qualified and willing to supply such evidence may be required before the case is permitted to proceed.

- Encouraging the parties to use experts who can convey information in terms that lay persons can understand.

---

52.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *General Elec. v. Joiner*, 522 U.S. 136 (1997); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

53.  *See Joiner*, 522 U.S. at 149 (Breyer, J., concurring):
> [J]udges have increasingly found in the Rules of Evidence and Civil Procedure ways to help them overcome the inherent difficulty of making determinations about complicated scientific, or otherwise technical, evidence. Among these techniques are an increased use of Rule 16's pretrial conference authority to narrow the scientific issues in dispute, pretrial hearings where potential experts are subject to examination by the court, and the appointment of special masters and specially trained law clerks.

54.  *Reference Manual on Scientific Evidence* (Fed. Judicial Ctr. 3d ed. 2011).

- Asking the parties to identify the issues that will be addressed by expert testimony and to ensure their experts address the same issues so that you (and later the jury) can clearly see where the differences and conflicts lie.

- Attempting to identify the specific bases for the differences in opinions of opposing experts. The utility of expert evidence can be enhanced, and issues can be more easily decided, if the *basis* for the difference between opposing expert evidence, not merely the difference itself, is identified as early as possible in the pretrial process. This may be done by determining whether the experts' disagreement is over data, interpretation of data, factual or other underlying assumptions, applicable theories, risk assessments, or policy choices.[55]

- Limiting the number of experts who will testify on a given issue. Some courts' local rules limit the number to one expert on any subject, for example.[56]

- Setting deadlines for mutual disclosure of expert reports or narrative statements of testimony, underlying data, and curricula vitae in appropriate sequence. Although Rule 26 provides for interrogatories to obtain the experts' facts and opinions,[57] pre-deposition exchanges of proposed testimony and of access to underlying data may be more efficient and can even make depositions unnecessary.

- Exploring the possibility of joint expert reports on background or minor matters (rather than each side preparing expert reports on those issues).

- Establishing a procedure for discovery, including ground rules for time, place, and payment of costs and fees.[58]

- Exploring the possibility of video depositions, including cross examination, to avoid the need for expert witnesses to appear at trial.

- Exploring the need for confidentiality orders to protect information produced from further dissemination.[59] Confidentiality orders can expedite and simplify discovery of sensitive matters, but they can also raise issues concerning future release of data. Some courts have developed model

---

55. *Id.*

56. *See, e.g.*, Western District of Washington Local Rule 43(j).

57. Rule 26(b)(4)(D) prohibits interrogatories or depositions of experts employed only for trial preparation without a showing of exceptional circumstances in which it is impracticable for the party to obtain the information by other means.

58. *See MCL 4th*, *supra* note 22, § 11.48, for a discussion of discovery and disclosure of expert opinions.

59. *See id.* § 40.27 for a sample confidentiality order (Form A).

protective orders that contain standard definitions, steps for designating protected material, and steps for challenging confidentiality designations.[60] For additional information on confidentiality orders, *see Confidential Discovery: A Pocket Guide on Protective Orders*.

## 2. Court-appointed experts

Rule of Evidence 706 provides a detailed procedure for the selection, appointment, assignment of duties, discovery, report submission, and compensation of court-appointed experts. That procedure, however, does not preclude the use of other approaches, either by stipulation of the parties or by exercise of your inherent management power. Court-appointed experts may be used in various ways and for various purposes. They may, for example, serve as witnesses, consultants, examiners, fact finders, or researchers.

If you are considering appointment of an expert, make sure you consult with counsel and determine before making an appointment exactly what purpose the expert is to serve, how the expert is to function, and the extent to which the expert will be subject to discovery. You also need to address the potential for what may be considered ex parte communications. Arrangements for compensation of the expert should be made in advance and should define clearly the potential liability of the parties. Because of the time involved in identifying and appointing an expert, try to determine early in the case whether you will appoint an expert.[61] Academic departments and professional organizations can be a source for such experts.

You should appoint the expert through a formal order, after the parties have had an opportunity to comment on it.

*Consider* including in the order:

- the authority under which it is issued;
- the name, address, and affiliation of the expert;
- the specific tasks assigned to the expert (e.g., to submit a report, to provide background material for the court, and/or advise the court);

---

60. *See, e.g.,* Northern District of California (model protective orders for civil and patent cases); Western District of Washington (model stipulated protected order); Northern District of Illinois (Local Rules Form LR 26.2).

61. *See generally MCL 4th*, *supra* note 22, §§ 11.51–11.54; *see also* Joe S. Cecil & Thomas E. Willging, *Accepting* Daubert's *Invitation: Defining a Role for Court-Appointed Experts in Assessing Scientific Validity*, 43 Emory L.J. 995 (1994) for guidance on appointment of court-appointed experts. Rule of Civil Procedure 53 provides guidance on appointment of special masters. *See infra* Chapter 8, Section F on appointment of special masters.

Civil Litigation Management Manual

- • the subject on which the expert is to express opinions;

- • the amount or rate of compensation and the source of funds;

- • the terms for conducting discovery of the expert;

- • whether the parties may have informal access to the expert; and

- • whether the expert may have informal communications with the court and whether those communications must be disclosed to the parties.

Whether or not the expert you appoint is new to litigation, consider giving the expert written information about what to expect procedurally and what kinds of contacts he or she may and may not have with the parties and other experts.

# 4

# Managing Pretrial Motions

A.  In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
B.  Managing motions as part of your civil docket . . . . . . . . . . . . . . . . 50
    1.  CJRA pending motions report . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
    2.  CM/ECF motions reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    3.  Tracking motions in chambers . . . . . . . . . . . . . . . . . . . . . . . . . 52
C.  Managing motions in a case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    1.  Initial management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
    2.  Screening motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
    3.  Scheduling motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
    4.  Oral argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
    5.  Motions in complex cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
    6.  Orders on motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
D.  Strategies for particular types of motions . . . . . . . . . . . . . . . . . . . 58
    1.  Motion for emergency injunctive relief . . . . . . . . . . . . . . . . . . 58
    2.  Motion for default judgment . . . . . . . . . . . . . . . . . . . . . . . . . . 59
    3.  Motion to dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
    4.  Motion for remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
    5.  Motion raising qualified immunity . . . . . . . . . . . . . . . . . . . . . 63
    6.  Motion for summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . 63
    7.  Motion affecting the case schedule . . . . . . . . . . . . . . . . . . . . . 65
    8.  Motion for sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65
    9.  *Daubert* Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

## A.  In general

Motion practice has increasingly become the driving force behind civil litigation. The bulk of the work for judges and chambers staff is dedicated to monitoring, reviewing, and preparing orders on motions, which can number in the hundreds each year. By necessity, a key part of case management for judges involves motion management.

Under Federal Rule of Civil Procedure 7(b), any request for a court order must be made by motion. Rule 7(b) also requires that the motion be in writing

(unless made during a hearing or trial), state with particularity the grounds for seeking the court order, and state the relief sought. For some types of motions, the Rules may also prescribe the deadline for filing the motion, the procedural requirements, and the standard for granting relief. *See, e.g.,* Fed. R. Civ. P. 56. In many districts, local rules provide additional procedural and technical requirements for motion practice.

Some judges also include more specific requirements for motions in their case management guidelines or initial scheduling orders. For example, a judge may provide information about whether a pre-motion letter or phone conference is required, how and when motions are set for hearing, page limits, how motions and supporting materials should be organized, and whether chambers copies are required. Judge-specific requirements can be a useful tool to address recurring issues that are not covered by local rules and to establish approaches that can make motion practice more efficient. Some judges also provide guidance on how parties should approach specific types of motions, such as motions to dismiss and motions for summary judgment. For examples of judge-specific motion requirements and guidance, *see* online appendix.

## B.  Managing motions as part of your civil docket

Because motions are filed on a rolling basis, you and your chambers staff must stay apprised of newly-filed and pending motions and have a system in place to screen, track, assign, and expeditiously rule on motions. There are several resources to help you prioritize and monitor the status of pending motions.

### 1.  CJRA pending motions report

For many judges, the CJRA reporting requirements are a key consideration when prioritizing pending motions. Under the CJRA, on March 31 and September 30 each year, district and magistrate judges must report all motions that have been "pending" for more than six months to the Director of the Administrative Office (often referred to as the "six-month report").[62] A motion before a district judge

---

62.  28 U.S.C. § 476. *See also Guide to Judiciary Policy,* vol. 18, § 540. After the close of each reporting period, the Administrative Office generates a master CJRA report showing, by district judge and magistrate judge, all motions pending more than six months, all civil cases pending more than three years, all bench trials submitted more than six months, all bankruptcy appeals pending more than six months, and all social security appeals pending more than six months. The semiannual consolidated national report is published on the uscourts.gov website. The Administrative Office also prepares a supplemental report ("CJRA Table 8") that provides detailed information about each judge's individual pending motions, including the nature of suit, case name, title of the motion, and the CJRA report status code and status description. This supplemental report is also available on the uscourts.gov website.

or a magistrate judge in a consent case is considered "pending" 30 days after it was filed, or if the motion papers are not filed until the motion is fully briefed, then 30 days after the date the motion is first served.[63] A motion referred to a magistrate judge is considered "pending" 30 days after the filing date, or, if the motions papers are not filed until the motion is fully briefed, 30 days after the motion is first served, or the referral date, whichever is later.[64] If the motion has not been disposed of within six months after the pending date, the presiding judge must list the motion at the close of the next CJRA reporting period (i.e., March 31 or September 30). If the motion was referred to a magistrate judge, the magistrate judge must file a report and recommendation for the motion or dispose of the motion within six months after the pending date, or the motion will appear on *both* the district judge's *and* the magistrate judge's six-month reports.[65] For motions that are listed on the six-month report, the judge should include one of the "status codes" indicating the cause of the delay in terminating the motion where applicable (e.g., "settlement pending" or "opinion/decision in draft").[66]

Note that the "pending" date—not the date a motion is fully briefed or argued—starts the clock for CJRA reporting purposes.[67] You should therefore be cautious of granting lengthy extensions of the briefing schedule and should set any hearing on a motion far enough in advance of the close of the reporting period to allow time to issue your written decision. A list of motions that will appear on the upcoming six-month report, if not terminated, can be generated on the Case Management/Electronic Case Files (CM/ECF) system, which provides a useful starting point for prioritizing motions on your docket.[68] Because the six-month pending motions report along with other CJRA reports is made available to the public and is used to examine court congestion and performance, many districts and chief judges emphasize the importance of minimizing the number of pending motions reported.

---

63. *Guide to Judiciary Policy*, vol. 18, § 540.50(c)(2)(A).

64. *Id.* at § 540.50(c)(2)(B).

65. *Id.* at § 540.50(c)(2)(D).

66. A list of status codes is available on JNet.

67. For example, a motion filed on February 28 will become pending in 30 days (assuming it is not referred to a magistrate judge) and will be pending more than six months on September 28 of that year. If the judge does not rule on the motion before September 30 (the close of the April 1–September 30 reporting period), the judge must include the motion on the CJRA report for that period.

68. *See* Chapter 9, Section B for a description of how to generate in CM/ECF a list of cases and motions that will appear on the next CJRA report if not disposed of by the close of the reporting period.

## 2.  CM/ECF motions reports

There are several features on CM/ECF that can assist with tracking newly-filed and fully-briefed motions.

The Motions Report in CM/ECF can generate a list of all pending civil motions. The report also can be customized to display only those motions that are fully briefed, or "ripe," for ruling and can be scheduled to run automatically at a set time (e.g., weekly).

For a summary of case activity, you can run a "Daily Activity Report" (DAR). The DAR lists new filings in each of your assigned cases during a selected time period. You can also configure the DAR settings so that it runs at a specific interval (e.g., daily, weekly) and is emailed to you at the close of that period. Judges use the DAR differently. For example, some judges review the DAR each morning to get a quick rundown of the previous day's filings. You may also ask your law clerks to run the DAR at the end of the day and highlight new docket entries that require attention.

Additionally, CM/ECF may be configured to email you or your staff a "Notice of Electronic Filing" (NEF) each time a docket entry has been added or a document has been filed in one of your cases. This will provide you with a real-time update on all case filings, but also may generate a substantial amount of email for you depending on the volume of your caseload and case activity.

The Motions Report, DAR, and NEFs are discussed in greater detail in Chapter 9. Step-by-step guides for configuring these functions are included in the online appendix.

## 3.  Tracking motions in chambers

Some chambers have developed their own internal motion-tracking spreadsheets and reports. These materials can be customized to highlight briefing deadlines and hearing dates, and can include a section for the judge and law clerks to make notes or flag issues relating to the motion or case. *See* online appendix for examples.

## C.  Managing motions in a case

Your approach for managing motions likely will vary from case to case depending on the type and number of motions filed, as well as their complexity. There are, however, steps you can take to streamline the motions and decision process across all of your cases.

## 1.  Initial management

As discussed in Chapters 1 and 2, the Rule 26(f) meet and confer conference and the initial Rule 16 pretrial conference can be effective tools to encourage the parties to think pragmatically about how they will litigate the case, including their motion strategy. To facilitate this process, many judges require the parties to list in their Rule 26(f) report any prior, pending, and anticipated motions and to also include a statement of issues to be decided in pending and anticipated motions. *See* online appendix for examples. While this initial list may change as the case develops, having each party identify motions it intends to file puts the other parties on notice and can help frame a discussion for the initial pretrial conference about which issues are in play and whether motion practice will be necessary.

At the initial pretrial conference, you may review the list of motions with the parties and try to determine whether the pending and anticipated motions can be narrowed or avoided by stipulation. This discussion may be especially useful if a defendant has filed or intends to file a motion to dismiss that would be mooted by an amended complaint or that may raise an issue more appropriate for summary judgment. Knowing the motions that are anticipated can also assist in setting deadlines for the case and assessing whether there is a potentially dispositive issue that should be raised by motion early.

As a way to prevent frivolous motions and to encourage the parties to narrow issues that may be raised in motions, some judges require that, before filing a motion, the movant must meet and confer with the opposing party or parties about the substance of the motion and any potential resolution.[69] In some districts, judges require a pre-motion letter from the movant setting forth the grounds for the anticipated motion and a brief response from opposing parties. After the letter is filed, the presiding judge either holds a conference (usually telephonic) with counsel, or issues a short order directing the parties as to how they should proceed (e.g., the movant shall file the motion by a certain date). In courts with a high volume of civil motions, holding pre-motion conferences may not be feasible. Nevertheless, you may want to consider using the pre-motion submission process in certain cases or as a prerequisite to filing a certain type of motion. For examples of this process, *see* online appendix.

## 2.  Screening motions

For judges presiding over hundreds of civil cases, the number of motions filed on any given day can be substantial. To ensure that motions are triaged appropriately,

---

69.  *See* C.D. Cal. Local Civ. R. 7-3.

it is helpful to have a process in place to screen newly-filed motions. The process may be formal or informal, and can be as simple as having your law clerks quickly review motions to assess their urgency and to flag issues that require your immediate attention. For instance, if your law clerks receive NEFs, they can forward a particular NEF (which contains a link to the motion in CM/ECF) along with their comments. You may also ask your clerks to run the DAR periodically throughout the day or at the end of the day and to highlight noteworthy motions that you may want to review early. You may establish guidelines or a checklist to help the clerks in this process.

*Consider* having your law clerks screen new motions for the following:

- Is the motion timely?

- Does the motion conform to the format requirements and page limits in the local rules and your case management guidelines?

- Does the motion conform to procedural prerequisites, such as meet and confer?

- Does the motion seek expedited or emergency relief?

- Does the motion need to be set for hearing or can it be decided without oral argument?

- Does the motion appear to be dilatory or filed in bad faith?

- Is the motion premature (e.g., is it more appropriate after discovery or does it raise arguments more appropriate for summary judgment)?

- Does the motion raise complicated or novel legal issues (i.e., is the motion going to require a significant amount of time and research)?

- Does the motion raise newsworthy or high-profile issues such that media coverage is likely?

## 3.  Scheduling motions

Under Rule 16(b)(3)(A), you must include a time limit for filing motions in the scheduling order. In most cases, it is sufficient to set a dispositive motion deadline, usually at the close of discovery and far enough in advance of the trial date to allow you to decide the motion. In cases where deciding a threshold issue such as class certification or qualified immunity may result in early resolution, you may wish to set deadlines for motions for such an issue. Cases in which the parties intend to file cross-motions for summary judgment may also need to be

coordinated so that you can consider all arguments and evidence relating to an issue at the same time. In these instances, you should discuss the motions schedule with the parties during the initial pretrial conference to avoid later requests to amend the deadlines.

## 4. Oral argument

The practice and standard for holding oral argument on motions vary considerably among courts and even among judges of a court. In some districts, the parties may request oral argument when filing a motion or response, and the court decides whether and when to set the matter for hearing.[70] In other districts, parties must notice a motion for hearing on the judge's calendar when the motion or response is filed or by a specified deadline.[71] Under either approach, the judge retains the discretion to hold oral argument and to determine how any arguments should be structured.

Because motion hearings take up your and your staff's time, as well as increase costs for the parties, you should carefully consider whether holding a hearing will meaningfully assist you in making a decision.[72] Routine motions that are not case dispositive can generally be decided on the papers (e.g., motions to dismiss where leave to amend will be granted). Alternatively, if there is a specific question you would like addressed or clarified, you may order supplemental briefing from the parties on that issue. The supplemental briefing order should expressly warn the parties that briefs must be strictly limited to that issue and that any other argument will be deemed stricken.

There are circumstances when holding a hearing can greatly assist you in understanding the parties' arguments and in reaching a decision on the motion. If a motion raises novel or complicated legal issues, or if you are undecided after reviewing the briefs, it may be helpful to hold a hearing to ask counsel questions, pose hypotheticals, or explore nuances not addressed in the briefs. Oral argument can also help narrow the issues in dispute. If a motion will likely dispose of a case, it may be prudent to hold a hearing—even if short—to give the parties an opportunity for final arguments. A hearing also creates a record that may be helpful for appellate review. In cases involving a non-prisoner pro se litigant, a hearing may

---

70. *See, e.g.,* D. Ariz. Local Civ. R. 7.2(f); W.D. Wash. Local Civ. R. 7; D. Or. Local Civ. R. 7(d).

71. *See, e.g.,* N.D. Cal. Local Civ. R. 7-2; E.D. Va. Local Civ. R. 7(E).

72. If you decide not to hold oral argument, you should consider including language in your written order indicating that after reviewing the parties' written submissions, the court determined that oral argument would not materially aid in the decision-making process.

clarify and identify colorable issues and allow you to explain the consequences of any ruling to the pro se litigant.[73]

In evaluating whether to hold oral argument on a motion, *consider* whether oral argument will:

- help you understand the law or facts;

- help you narrow the issues;

- provide a party an opportunity to clarify a complicated issue;

- open opportunities for settlement discussions; or

- help you craft your ruling.

If there are specific questions you would like counsel to address at the hearing, you may issue a notice before the hearing listing those questions. Many judges also set a time limit for oral argument and state it either within the order setting the hearing or at the beginning of the hearing. Some judges issue a tentative ruling before the hearing and set a deadline for the parties to indicate whether they want to keep the hearing on calendar or withdraw their request for oral argument.

As the hearing date approaches, a party may request a continuance. Some districts have local rules that address the timing and procedure for continuing a hearing.[74] Before granting a continuance you should ensure that it will not adversely impact other important deadlines or dates, such as the discovery deadline or trial date. Further, for motions that will appear on the upcoming CJRA six-month motions report, you should ensure that continuing the hearing date will still allow you sufficient time to issue a ruling before the close of the reporting period (i.e., March 31 or September 30).

## 5. Motions in complex cases

Because complex cases, such as multidistrict litigation cases, can generate numerous motions by multiple parties, it may be helpful to schedule status conferences on a regular basis (e.g., every 60 days) to get updates from the parties and to address new issues. *See* online appendix for a sample case management order. You should direct lead counsel to file a joint status report before each conference that briefly summarizes the issues and the efforts to resolve them. This approach

---

73. For a thorough discussion of managing pro se cases, *see Pro Se Case Management for Nonprisoner Civil Litigation* (Fed. Judicial Ctr. 2016). Managing pro se cases is also discussed in Chapter 7, Section D.

74. *See, e.g.,* N.D. Cal. Local Civ. R. 7-7; E.D. Va. Local Civ. R. 7(G); D.D.C. Local Civ. R. 16.1.

allows you to address issues at regular intervals with all parties participating and may help forestall the filing of more motions. For a detailed discussion of managing motions in complex cases, *see* Chapter 7, Section B.1, and the *MCL 4th*.

## 6. Orders on motions

Once a motion is fully briefed or the briefing deadline has passed, you should aim to issue an order on the motion as soon as possible. The ripe motions report on CM/ECF and internal motions tracking systems described above can help you stay apprised of motions that are ready for a ruling. To expedite drafting of orders on routine motions (e.g., motions to amend, motions to dismiss, and motions for a more definite statement), some chambers have created templates that include the title of the order, headings, standard introductory language, and applicable legal standards. *See* online appendix for examples.[75]

Routine procedural motions, especially if uncontested, can be ruled upon by minute entry order (MEO) or by a text-only entry order using the gavel icon on CM/ECF.[76] For instructions on how to use these features, *see* Chapter 9, Section B.4 and online appendix. In some districts, local rules require the movant to file a proposed order along with a motion in a civil case. The proposed order should be submitted electronically in a file format that you can modify.

If you hold a hearing on the motion, at the end of the hearing, you may:

- Announce that you are taking the motion under submission and will issue a written order.

- Announce your ruling from the bench and state that a written order will follow. While not always practical, especially on substantive or case dispositive motions, announcing your ruling from the bench lets the parties know how the case will be proceeding and allows you to terminate the motion immediately and eliminate it from the pending motions list.[77]

---

75. Some courts have developed programs that allow chambers and court staff to auto-populate case information (such as case number, party names, and docket number being ruled on) from CM/ECF into a Microsoft Word document, obviating the need to manually enter that information. For example, the Northern District of California uses the Automated Document Tool (ADOT) utility program.

76. Text-only entry orders on CM/ECF should not be used in cases involving a pro se party unless the party has been granted permission to e-file on CM/ECF and will receive notification of the docket entry. In some districts, the courtroom deputy will mail a copy of a text-only order or a MEO to a pro se litigant.

77. *See The Elements of Case Management: A Pocket Guide for Judges* (Fed. Judicial Ctr. 3d ed. 2017) at 12 (noting that most disputes do not become easier to resolve once taken back to chambers and that litigants generally prefer a prompt decision to a perfect, albeit belated, one).

- Announce your ruling from the bench and instruct a party (usually the prevailing party) to submit a proposed order consistent with your ruling, which you may be able to modify, as necessary, and sign.

## D. Strategies for particular types of motions

### 1. Motion for emergency injunctive relief

Motions for emergency injunctive relief require special attention because they demand prompt decisions on a limited record and have an immediate impact on the parties (*see* Federal Rule of Civil Procedure 65). The motion hearing presents opportunities to achieve a number of important objectives, including deciding whether a temporary restraining order should be issued; setting dates for associated motions, depositions, and requested actions; and examining and resolving matters relating to the issuance of surety bonds. Some judges include special instructions about emergency applications in their case management guidelines. *See* online appendix for examples.

*Consider* the following approaches:

- Insisting that a party seeking a restraining order notify the opposing counsel or party in advance, unless doing so would cause prejudice (*see* Fed. R. Civ. P. 65(b)).[78]

- Including instructions in your case management guidelines requiring counsel to inform your courtroom deputy by phone or by email of an application for a temporary restraining order or other emergency request and to state whether the opposing party has been notified.

- Issuing a prompt order setting a briefing schedule, deadlines to file proposed findings and conclusions and any other filings, and setting a hearing.

- Instead of issuing a conventional order to show cause, calling an early conference with counsel to identify issues (e.g., whether irreparable harm can be shown), address bond-posting requirements, schedule written submissions and a hearing date (*see* Fed. R. Civ. P. 65(b)(2) regarding time limits for show cause orders), and consider other procedural issues.

- Determining if live testimony is necessary at any injunction proceeding. Many matters can be adequately presented in writing, so long as the declarant can be deposed on his or her declaration in advance of the hearing.

---

78. *See Benchbook*, *supra* note 19, § 7.03.

- Requiring counsel to submit proposed findings of fact, conclusions of law, and a proposed order in an electronic format that can be edited by chambers (*see* Fed. R. Civ. P. 65(d)).

- Combining preliminary and permanent injunction proceedings when possible (*see* Fed. R. Civ. P. 65(a)(2)). Separate hearings and proceedings can result in duplication and wasted time, whereas an expedited trial can resolve all issues in a single proceeding.

The wording of an injunction order can be critical to its enforcement and to its fate on appeal. Particularly, you should ensure that the wording is clear and covers all necessary parties. You should also ensure that counsel agree as far as possible on its form and state any objections clearly on the record. You should be cognizant of the valuable opportunity such a motion provides for settlement; in addition, many defendants will gladly agree to maintenance of the status quo ante to avoid the potential risks of an injunction.

## 2. Motion for default judgment

Although relatively infrequent, motions for default judgment are one of the first motions that may be filed in a case. Default judgment is meant to ensure that a party's unresponsiveness does not obstruct resolution of a case. However, because default judgment does not resolve the case on the merits, it is generally disfavored and left to the judge's discretion to determine whether it is appropriate in light of the facts and procedural history of the case.

Under Rule 55, the default process occurs in two steps. First, if a defendant fails to plead or otherwise timely defend the action, the plaintiff may request that the clerk of court enter the defendant's default. Second, once the clerk enters default, the plaintiff may apply for default judgment against the defendant. If the plaintiff's claims are for a sum certain (or one that can be made certain by computation), Rule 55(b) authorizes the clerk of court to enter default judgment for that amount (plus costs) without a hearing. In all other cases, the plaintiff must move for default judgment. Some districts have local rules setting procedural requirements that the movant must satisfy when seeking default judgment.[79] When a motion for default judgment is filed, your staff should review the motion to ensure that default has been entered and that the movant has complied with any requirements under your district's local rules. In cases where the defaulting

---

79. For instance, in the Central District of California, the movant must file a declaration addressing issues about the entry of default, whether the defaulting defendant has been given notice, and how damages were calculated. *See* C.D. Cal. Civ. R. 55-1.

defendant has appeared in the case, the movant-plaintiff must serve written notice of the application (or motion) at least seven days before the hearing.[80]

Some judges provide additional guidance to movants for default judgment by including requirements in their case management guidelines or issuing orders after the entry of default specifying issues movants must address. *See* online appendix for examples.[81]

In a multi-defendant case, you may want to defer ruling on a motion for default judgment against a single defendant when the defendants are sued under a theory of joint or several liability, when related legal questions are still outstanding with respect to other defendants who have appeared, or when default judgment against one of several similarly-situated defendants could lead to an incongruous result.

## 3. Motion to dismiss

Often the first motion you will encounter in a case is a defendant's motion to dismiss pursuant to Rule 12(b). While Rule 12(b) allows a party to assert seven defenses by motion, the most common grounds are lack of subject matter jurisdiction (*see* Fed. R. Civ. P. 12(b)(1)), lack of personal jurisdiction (*see* Fed. R. Civ. P. 12(b)(2)), or failure to state a claim upon which relief can be granted (*see* Fed. R. Civ. P. 12(b)(6)). Because a Rule 12(b) motion raises threshold issues about whether a claim or the case as a whole may proceed, your ruling will determine the course and scope of the case. When considering a motion to dismiss, pay particular attention to which party bears the burden of proof, whether you may consider materials outside of the pleadings, and in whose favor you must construe facts, as these factors vary depending on the grounds asserted. For example, except in limited circumstances, considering facts or materials outside the scope of a complaint on a Rule 12(b)(6) motion will convert the motion for dismissal into a motion for summary judgment, which requires giving a reasonable opportunity for the parties to present all the material pertinent to the motion. *See* Fed. R. Civ. P. 12(d). For this reason, a Rule 12(b)(6) motion that raises a fact-intensive defense, such as a statute of limitations, may be better suited for summary judgment after the parties have had an opportunity to conduct discovery and present their arguments on a fully-developed record.

---

80. Fed. R. Civ. P. 55(b)(2).

81. For a discussion of issues to consider when default judgment is sought against a pro se defendant, see *Pro Se Case Management for Nonprisoner Civil Litigation*, *supra* note 73, ch. III(C).

A motion to dismiss can unnecessarily delay a case and increase litigation costs if the alleged defect can easily be cured by amending the pleadings. For this reason, the parties should state in their Rule 26(f) report or case management statements whether they anticipate filing a motion to dismiss, if they have not done so already; the grounds on which the motion will be based; and whether such grounds are curable. You can then discuss the anticipated motion with the parties at the initial pretrial conference and inquire as to whether amending the complaint will resolve the issues and obviate the need for a motion.[82] To avoid unnecessary briefing, some judges have adopted special procedures for motions to dismiss. For example, upon the filing of a motion to dismiss, the judge may issue an order requiring the non-moving party to notify the court by a certain deadline if it intends to file an amended pleading or if it will instead defend the pleading at issue. *See* online [appendix](#) for examples.

A final caution: Because Rule 12(b) motions come early in the case, before the answer is filed and often before the initial pretrial conference, they may not be as easy to manage as later motions for which time frames have been established by the scheduling order. For this reason, if a motion to dismiss is filed early in the case, some judges wait to schedule the Rule 16 conference until after the motion has been ruled upon. Of course, prompt resolution of Rule 12(b) motions will help keep the litigation on track.

## 4.  Motion for remand

A motion for remand is appropriate when a case removed from state court to federal court: (1) fails to invoke federal jurisdiction, *see, e.g.,* 28 U.S.C. §§ 1331 (federal-question jurisdiction), 1332 (diversity jurisdiction), 1441(c)(1) (1-year time limit for removal based on diversity jurisdiction); (2) is subject to abstention under the inherent powers doctrine with regard to claims of equitable relief, discretionary relief, or other prudential actions; (3) is barred by statute; or (4) fails to comply with procedural requirements. The more common remand actions, for lack of federal jurisdiction or procedural defects, fall under 28 U.S.C. § 1447(c). You or the parties may raise subject matter jurisdiction or you may entertain motions for remand on this basis at any time. However, motions based upon procedural defects related to the removal action itself (e.g., timeliness issues, failure to join all necessary defendants, or defects in the notice of removal) must be made within thirty days after the filing of the notice of removal, *see* 28 U.S.C. § 1447(c).

---

82.  *See* [Benchbook](#), *supra* note 19, § 6.01 (discussing tips for handling motions to dismiss).

The two most common motions for remand are motions alleging lack of federal question jurisdiction (asserting the absence of a substantial federal issue arising under the Constitution or federal law) and motions alleging the absence of diversity of citizenship between the parties accompanied by a monetary claim in excess of $75,000.00. These elements must appear on the face of the "well-pleaded complaint" to withstand a motion to remand. Disputes often center on diversity of the parties (including claims of the improper joinder of parties to create or destroy diversity), or whether the amount in controversy is in fact satisfied. Remember that the citizenship of each member of an unincorporated association or partnership must be considered when analyzing whether diversity exists. Some courts require non-governmental organizational parties, such as limited liability companies and partnerships, to file a disclosure of organizational interests certificate, identifying each member of the organization and the member's state of citizenship. *See* online appendix for an example. In support of a motion to remand, a plaintiff may submit an affidavit or binding stipulation stating that, following remand to state court, it will not seek more than $75,000. You may consider such post-removal materials, provided they clarify—rather than amend—the allegations in the complaint.

In addressing motions for remand, *consider that*:

- these issues generally require little or no discovery effort;
- procedural defects are waivable or curable at the discretion of the court;
- if other non-merits matters, such as personal jurisdiction and forum non conveniens, are more straight-forward than the subject matter jurisdiction issues raised in the motion to remand, the court has the discretion to consider those issues first;
- when all the federal claims fall out of an otherwise properly removed case, the court has discretion to retain, remand, or dismiss pendent state law claims over which the court has supplemental jurisdiction only (*see* 28 U.S.C. § 1367(c)).

Partial retentions, remands, or dismissals should be avoided whenever possible owing to the potential burdens imposed on the parties to proceed in two separate fora. Dismissals, of course, may have preclusive effects on parties' claims in the state forum, whereas partial retentions risk inconsistent state and federal rulings. You should always address a motion for remand as soon as possible to avoid potentially duplicative, costly, and unnecessary proceedings.

## 5.  Motion raising qualified immunity

The affirmative defense of qualified immunity will most often be raised in a motion to dismiss or a motion for summary judgment. Because qualified immunity should be pled in the answer, you should be aware of it as a potential issue from the outset. If the issue has not already been addressed by the time you conduct the initial pretrial conference, you may want to discuss with counsel a schedule for briefing the issue. Cases involving allegations of qualified immunity often present factually complex situations that require a lot of your time either reviewing deposition evidence or conducting a hearing. Outlining a schedule for handling these complexities may lessen the impact on your overall workload.

It is also important to note that the denial of a defense of qualified immunity is subject to an immediate interlocutory appeal. In this situation, only the qualified immunity issue will go to the court of appeals, leaving the remaining issues in the case on your docket. It may be appropriate in some cases to stay proceedings pending the appeal on qualified immunity.

## 6.  Motion for summary judgment

Motions for summary judgment are typically the most time-intensive motion for judges and law clerks to review and the most expensive for the parties to litigate. When properly timed and briefed, however, motions for summary judgment are effective for disposing of claims and defenses that should not proceed to trial, or to resolve the case altogether.[83] At the same time, parties often move for summary judgment on claims and defenses that cannot be resolved on the papers (and therefore must be tried) or before adequate discovery on the issues. To ensure that the timing and subject of a summary judgment motion are appropriate, some judges require the parties to file pre-motion letters and/or participate in a conference with the judge before moving for summary judgment. *See supra* Section C.1. If the movant seeks summary judgment on a claim or defense that clearly involves triable issues of fact (e.g., when a claim turns on competing witness testimony that requires a credibility determination), you may encourage the movant to consider going straight to trial to avoid the unnecessary expense of filing a motion that will be denied.[84] Cases involving a pro se party may also require your intervention once a motion for summary judgment is filed. Several

---

83.  *See MCL 4th*, supra note 22, § 11.34 (discussing procedures for effective use of summary judgment).

84.  *See* Hon. Jack Zouhary, *Ten Commandments for Effective Case Management*, The Federal Lawyer (Mar. 2013).

circuits require the court to notify pro se litigants of the procedures for opposing summary judgment and the consequences of failing to respond.[85]

Because summary judgment motions can raise complicated issues and involve voluminous documents, judges often develop specific procedural and formatting requirements for the briefs and exhibits to ensure they are well organized and presented in a way that expedites review. As a starting point, you may limit parties to one summary judgment motion per side, so that a party must raise all issues at one time rather than in separate motions. To help parties focus on the material facts in dispute, some judges require the parties to submit either joint or separate statements of facts.[86] In some courts, the parties must file an appendix that compiles the materials the party has cited in support of its argument (e.g., pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits). Only those portions of materials necessary for the judge to rule on the motion should be included. The appendix should also include a table of contents and each document should be tabbed for easy access. You may also require that the chambers copy of the appendix be the CM/ECF-filed copy, so that it has the CM/ECF stamp on top, which includes the case number, docket number, date, and CM/ECF page number and makes for easier citation.

Cross motions for summary judgment may require coordination to avoid duplicating work and the risk of inconsistent rulings. One approach you may take is to require a cross-motion to be made as part of the response to the initial summary judgment motion. Another approach is to set a briefing schedule whereby the parties file four briefs sequentially, rather than three pairs of simultaneous briefs. Under this approach, the opening brief is filed by the plaintiff(s), the opening/opposition brief is filed by the defendant(s), the opposition/reply is filed by the plaintiff(s), and the reply is filed by the defendant(s). In either case, the judge may consider a reasonable increase in page limits to allow the parties to fully present their arguments.

---

85. For a discussion of this requirement and sample language, *see Pro Se Case Management for Nonprisoner Civil Litigation*, *supra* note 73, at 62–67, 111–114.

86. For example, a judge may require the movant to submit a statement, broken down into numbered paragraphs, of the material facts as to which the movant contends there is no genuine issue to be tried. The statement should include only those facts necessary for the judge to decide the motion (other background facts can be included in the memorandum of law), and must include citations to the record supporting each factual assertion (e.g., to an affidavit, deposition, discovery response, etc.). When filing a response brief, the opposing party must file a controverting statement of facts that responds to each of the movant's numbered paragraphs by indicating whether the party disputes the factual assertion and citing to a specific portion of the record in support of the existence of a genuine dispute, and including any additional facts that create a triable issue of fact or otherwise preclude judgment for the movant. For examples of this approach, *see* online appendix.

## 7.  Motion affecting the case schedule

When you grant a motion that removes a case from its schedule—for example, a motion to stay or a motion to compel arbitration—you run the risk that the case will sit on your docket because of inactivity. In orders granting such motions, you should consider adding a statement requiring counsel to update you on the status of the case at a set interval (e.g., every 90 days) by filing a status statement or joint letter. You also may want to consider entering an order administratively closing the case without prejudice and allow for reopening of the case on motion upon a triggering event (e.g., resolution of arbitration or the proceeding that prompted the stay).

## 8.  Motion for sanctions

At the Rule 16 conference, you should convey your expectation that counsel will cooperate, adhere to their duty under Rule 1 to employ the Federal Rules to expeditiously and efficiently resolve their action, and abide by your orders in the case. In some cases, however, repeated violations of the rules or your orders, or bad faith conduct by counsel or a party, will warrant some form of sanctions (e.g., striking a filing, award of costs or attorneys' fees, or dismissal). Keep in mind that sanctions are not a basis for effective case management or a substitute for it. On the contrary, the need for sanctions often arises when case management has received insufficient attention, has been ineffective, or has broken down. It is equally true, however, that good case management cannot anticipate or control all problematic conduct of attorneys or parties. Sanctions may therefore be necessary, but you should maintain close control over the process to prevent collateral litigation.

It may be necessary, throughout your career, as well as in each case, to act firmly in the area of rule administration, in order to set a clear expectation that counsel and parties will comply with all applicable rules. In complex or multiparty cases (especially those involving out-of-state counsel), this is a small price to pay, early on, to establish and maintain order. Once developed, a reputation for fairness, responsiveness, and certainty in rule administration and motions management can be among your most lasting professional assets.

*Consider* the following approaches:

- Setting the guidelines for acceptable conduct at your earliest opportunity—for example, in your case management guidelines or at the Rule 16 conference.

- Reminding counsel of their obligations with respect to preserving and producing electronically stored information—a common source of sanctions or spoliation motions.

- Making a clear record of notice. For example, consider warning the parties in orders compelling conduct that the failure to comply can result in the imposition of specified sanctions.

- Dealing swiftly and firmly with the transgressors, even if imposition of sanctions is to be delayed until the end of the case (i.e., do not avoid or postpone challenges).

- Avoiding empty threats of sanctions.

- Avoiding being used by one side in tactical contests about technical violations.

When, despite your careful shaping of motions practice before your court, legitimate disputes and sanctionable conduct arise, consider the relevant threshold and give the parties an opportunity to show cause or to have a fair hearing. Remember that different statutes and rules authorize different sanctions for different kinds of conduct under different legal standards; they are not inter-changeable. The source of authority for imposing sanctions should generally cor-respond to the offending conduct, and you should make a record that clearly identifies the authority you relied on and the factual basis for your action. During the pretrial stage of litigation, your authority to impose sanctions against a party or counsel includes:

- Rule 11: pleadings unreasonably lacking support in rule, law, evidence, precedent, fact, or theory; or filed with frivolous or improper purposes.[87]

- Rule 16(f): noncompliance with a pretrial order.

- Rules 26 and 37: violations, abuses, or impropriety in relation to discovery orders or processes.

- Rule 41(b): dismissal for failure to prosecute an action or comply with a rule or court order.

- 28 U.S.C. § 1927: vexatious or unreasonable multiplying of proceedings in any case.

- the doctrine of inherent judicial powers: contempt citations for any kind of sanctionable conduct.

---

87.  Remember that Rule 11 includes a safe harbor provision. *See* Fed. R. Civ. P. 11(c)(2).

Sanctions can serve several purposes: to protect a party, to remedy prejudice caused, to deter future misconduct, to punish the offender, and to protect the efficiency and integrity of the court's process. You should select the least severe sanction adequate to accomplish the intended purpose.

*Consider* the specific conduct to be sanctioned, asking:

- what prejudice was caused to the opponent;
- whether the act was deliberate or inadvertent;
- whether there were extenuating circumstances;
- whether the conduct impacted the court, the public, or both;
- whether the offending party had notice and an opportunity to respond;
- what purpose is to be served by the sanction—protection, remedy, deterrence, or punishment;
- what sanction is the least severe but adequate to serve that purpose;
- whether the sanction should be imposed promptly or delayed until the end of trial;
- on whom the sanction should be imposed—attorney, client, or both;
- under what legal authority the sanction(s) will be imposed (e.g., whether the sanction is authorized by the court's inherent authority or by local rules); and
- whether the conduct requires reporting to the court's professionalism committee or the state bar association.

In situations in which you address sanctionable conduct, especially when acting sua sponte, use a show cause order with its accompanying process.

*Consider*:

- letting counsel know you are considering sanctions and the legal basis for sanctions; and
- giving counsel an opportunity to show cause why any or all of the possible sanctions are unwarranted.

In short, give attorneys an opportunity to be heard. The process itself will insulate you from the danger of a precipitous response; provide time for the transgressors to reflect; and ultimately force them to help shape the remedy you adopt, ensuring a more memorable, larger sense of justice for all concerned.[88]

---

88. For further discussion, *see MCL 4th*, *supra* note 22, § 10.15.

*Consider* the following conduct-specific sanctions:

- If an attorney has failed to disclose an expert and there is no way to avoid prejudice to the opponent, prohibiting the expert.
- If a false affidavit has been made, imposing on the offending party the costs and fees incurred in the defense against it.
- If a frivolous pleading has been filed, striking the pleading.
- If specific remedial action will cure the harm, imposing the remedy.
- To suit the specifics of the conduct and the individual case, using a combination of sanctions (costs, strikes, punishments, and remedial actions).

The discretion vested in the judge, as well as the many specific remedies enumerated in the rules of procedure, provide the wide latitude you need to get your point across. But do remember your purpose—to secure just, speedy, and inexpensive dispositions; to stop rules transgressions; and to deter future violators. Moreover, you should be aware that sanctions can have collateral effects, including the creation of a permanent shadow on a sanctioned attorney's record with state regulatory and bar authorities.

## 9. *Daubert* Motion

When expert evidence is anticipated at trial, a party may file a motion to exclude testimony that is not scientifically valid or that is offered by an unqualified expert. A *Daubert* hearing should address issues and potential problems related to the admissibility of such evidence, particularly under Rules of Evidence 104(a) and 702. (*See also infra* Chapter 7, Section C for a discussion of managing expert evidence generally and Chapter 6, Section C.3.b, for a discussion of expert evidence in the context of the final pretrial conference.)[89]

You should distinguish rulings on admissibility of evidence from motions for summary judgment under Rule 56. Ordinarily, an evidentiary ruling should not be regarded as the vehicle for adjudicating a claim or defense, unless it is clear that the proponent of the expert testimony absolutely needs the evidence to prevail. However, an early *Daubert* hearing can be helpful for distinguishing admissibility issues from dispositive issues and may in some cases lead to a summary judgment motion.

---

89.  *See also* the *Reference Manual on Scientific Evidence*, *supra* note 54, which provides tutorials on specific types of scientific evidence and has extended discussions of the use of *Daubert* hearings.

Also *consider:*

- having counsel identify specific portions of the opposing experts' reports and testimony with which they disagree and portions that are undisputed;

- directing the parties, when the expense is warranted, to have the experts submit a joint statement specifying the matters on which they disagree and the basis for the disagreement;

- directing the parties, when the expense is warranted, to have their experts present at the final pretrial conference to facilitate identification of the issues remaining in dispute;

- clearing in advance all exhibits and demonstrations to be offered by the experts at trial and giving opposing parties an opportunity to review exhibits and raise objections;

- encouraging joint use of courtroom electronics, models, charts, and other displays;

- encouraging stipulations on relevant background facts and other uncontroverted issues; and

- having the experts and lawyers prepare a glossary of technical terms to be used at trial with definitions in understandable language.

The admissibility of expert evidence is much litigated, and there is a substantial body of case law with variations from circuit to circuit. Particularly when you face questions of drawing the line between admissibility, weight, and credibility, you should consult circuit law.

5
───

# Alternative Dispute Resolution and Judicial Settlement

| A. | Overview | 71 |
| B. | Authority to use ADR | 72 |
| C. | Types of ADR | 72 |
| | 1. Mediation | 72 |
| | 2. Early neutral evaluation (ENE) | 73 |
| | 3. Court-annexed arbitration | 74 |
| | 4. Summary jury trial, summary bench trial, and mini-trial | 75 |
| | 5. Settlement week | 76 |
| D. | ADR Procedures | 76 |
| | 1. Referring cases to ADR | 76 |
| | 2. Selecting and compensating an ADR neutral | 78 |
| | 3. Issuing a referral order | 80 |
| | 4. Managing cases referred to ADR | 81 |
| E. | Judicial settlement | 82 |
| | 1. The judge's role | 83 |
| | 2. The timing of settlement discussions | 84 |
| | 3. Successful settlement techniques | 85 |
| | 4. Recording the settlement | 89 |
| | 5. Settlement in cases involving pro se litigants | 90 |
| | 6. Ethical and other considerations in judge-hosted settlement negotiation | 90 |

## A. Overview

Alternative dispute resolution (ADR) refers collectively to procedures for resolving disputes that include mediation, arbitration, early neutral evaluation (ENE), summary jury trial, and judge-hosted settlement conferences. Some ADR procedures, such as mediation and ENE can be less formal, less adversarial, and

less expensive than standard litigation.[90] ADR procedures can be effective tools for resolving cases without the expense, delay, and uncertainty often associated with motion practice and trial. The following sections discuss various ADR procedures typically available to courts as well as techniques and approaches for judge-hosted settlement conferences.

## B.  Authority to use ADR

Under the Alternative Dispute Resolution Act of 1998 (the ADR Act), all district courts must provide at least one form of ADR to litigants in civil cases and must, by local rule, require that litigants in all civil cases consider using an ADR process at an appropriate stage in the litigation.[91] Further, the ADR Act authorizes courts to require litigants to use mediation, ENE, and—if all parties consent—arbitration.[92] The Judicial Conference has also endorsed use of ADR in civil cases.[93] For a more in-depth discussion of the history of ADR in federal courts, *see* the ADR in the Federal District Courts: An Initial Report.[94]

A district's ADR procedures may be governed by local rules, an ADR plan, or ADR-related general orders. Typically, a district's authorizing documents will identify the types of cases that are eligible for ADR; indicate whether participation in ADR is mandatory or voluntary; establish procedures by which cases are referred to ADR, including whether the judge has authority to order a case to ADR; establish certain guidelines for the ADR process, such as confidentiality and conflicts of interest; and set deadlines for parties to select and complete an ADR process.

## C.  Types of ADR

### 1.  Mediation[95]

Mediation is a process designed to help parties clarify their understanding of underlying interests and concerns, probe strengths and weaknesses of legal positions, explore the consequences of not settling, narrow the issues, and generate

---

90.  *Guide to Judiciary Policy*, vol. 4, § 510.50.

91.  28 U.S.C. §§ 651–658.

92.  *Id.* at § 652(a).

93.  *See JCUS CJRA Report*, *supra* note 1, at 37–38.

94.  Donna Stienstra, ADR in the Federal District Courts: An Initial Report (Fed. Judicial Ctr. 2011).

95.  *See also Guide to Judiciary Policy*, vol. 4, § 530.10.10.

settlement options. A trained neutral mediator assists the parties in resolving their dispute consensually through a negotiated settlement. The mediator, who may meet jointly or separately with the parties, serves solely as a facilitator and does not issue a decision or make any findings of fact. The process is non-binding unless settlement is reached.

Mediation sessions are confidential. The judge presiding over the case is provided no substantive information about the mediation sessions and is notified only whether the case has settled. Mediation is considered appropriate for most kinds of civil cases, and in some district courts referral to mediation is routine in nearly all civil cases.

In many district courts that authorize mediation, the court has established a panel of trained mediators to provide services for the court. The mediators selected for these panels are usually attorneys, although a few districts also include non-attorney professionals on their panels. In some districts, the judges—typically the magistrate judges—also serve as mediators. Approximately ten district courts have full-time ADR directors for their ADR programs and some of these directors also mediate cases.

All district courts are authorized to use mediation,[96] and it is the most frequently used form of ADR in the district courts. Over three-quarters of the ninety-four U.S. district courts exercise this authorization to permit mediation in civil cases.

## 2.  Early neutral evaluation (ENE)[97]

ENE is a nonbinding ADR process designed to improve case planning and settlement prospects by providing litigants with an early advisory evaluation of the likely outcome of the case in court. As originally designed by the Northern District of California, the ENE session is generally held before much discovery has taken place. Some courts have adapted the process for use later in a case and have dropped the word "early" while retaining the goal of providing a neutral evaluation of the case.

In ENE, a neutral evaluator, usually a private attorney with expertise in the subject matter of the dispute, holds a confidential joint session with the parties and counsel early in the litigation to hear both sides of the case. The evaluator then helps the parties clarify arguments and evidence, identifies strengths and weaknesses of the parties' positions, and gives the parties a nonbinding assessment of

---

96.  28 U.S.C. § 652(a).

97.  *See Guide to Judiciary Policy*, vol. 4 § 530.30.

the merits of the case. Depending on the goals of the program, the evaluator may also offer case planning assistance or meet in private sessions with each party to facilitate settlement discussions. Like mediation, ENE is thought to be widely applicable to many types of civil cases, including complex disputes.[98]

All district courts are authorized to use ENE,[99] and it is the second-most used form of ADR in the district courts. About a third of U.S. district courts authorize referral of cases to ENE. Some of these courts have established panels of evaluators to serve as neutrals in cases referred to ENE. Judges typically do not serve as early neutral evaluators in court ADR programs with that name, although when mediating a case using a more evaluative approach, a judge may look very much like a neutral evaluator.

## 3.  Court-annexed arbitration[100]

In arbitration, one or more arbitrators listen to presentations by each party to the litigation, and then issue a nonbinding judgment on the merits. The arbitration services are always provided by a neutral other than the court's judges. Witnesses may or may not be called, and exhibits are generally submitted. The arbitrator's decision addresses the disputed facts and legal issues in the case and applies applicable legal standards. After the hearing, the arbitrator issues a decision on the merits of the case, which, along with proof of service of such decision on the other party by the prevailing party or by the plaintiff, is filed with the clerk of the court. If a timely request for a trial de novo is not made, the award is entered as the judgment of the court.[101] The judgment has the same effect as a judgment of the court in a civil action, except that it cannot be appealed.[102] The outcome of the hearing is not to be disclosed to the assigned judge until the final judgment has been entered or the case has otherwise terminated.[103] Within 30 days after the award has been filed, any party to the case may file a written demand for a trial de novo.[104] When such a demand is made, the action is restored to the court's docket and treated as if it had not been referred to arbitration.[105]

---

98.  For more information about the ENE process, *see* the Northern District of California's ADR Handbook, available at: http://www.cand.uscourts.gov/adrhandbook.

99.  28 U.S.C. § 652(a).

100.  *See Guide to Judiciary Policy*, vol. 4 § 530.20.

101.  28 U.S.C. § 657(a).

102.  *Id*.

103.  *Id.* at § 657(b).

104.  *Id* at § 657(c)(1).

105.  *Id*. at § 657(c)(2).

As an adversarial, rights-based process, arbitration may be particularly helpful when a decision on the merits is important but the dollar value of the case makes trial uneconomical. Arbitration is believed to be particularly well suited to contract and tort cases involving modest amounts of money for which litigation costs are often disproportionate to the amount at stake.

All district courts are authorized to refer cases to arbitration[106] but only about a quarter of them have authorized its use. The ADR Act expressly requires consent of the parties for a referral to arbitration, excepting ten courts that were authorized in 1988 to compel arbitration in certain kinds of cases.[107] Of those ten courts, only three continue to require use of arbitration for cases that meet the statutory requirements. To provide arbitrators in cases referred to the process, a number of districts have established panels of trained arbitrators. Others refer parties to other arbitration providers.

## 4.  Summary jury trial, summary bench trial, and mini-trial[108]

The summary jury trial is a nonbinding ADR process presided over by a district or magistrate judge and is designed to promote settlement in trial-ready cases. The process provides litigants and their counsel with an advisory verdict after an abbreviated hearing in which counsel present summary evidence to a jury. Witnesses are generally not called. The advisory verdict is delivered by a jury selected from the court's regular jury pools. The jury's nonbinding verdict is used as a basis for subsequent settlement negotiations. If no settlement is reached, the case returns to the trial track.

Some recommend this resource-intensive process only for protracted cases, others for routine civil litigation in which litigants differ significantly about the likely jury outcome. Although the format of the summary jury trial is determined by the presiding judge more than in most ADR procedures, summary jury trials are thought to be most useful after discovery is complete. Opinions are divided on the propriety of using jurors without telling them their decision is only advisory, although telling them could alter the way in which they hear evidence and reach a verdict.

A variant of the summary jury trial is the summary bench trial, in which the presiding district or magistrate judge issues an advisory opinion.

---

106.  28 U.S.C. § 654(a).

107.  *Id.* at § 654. For more information on limits on these arbitrators' fees, *see Guide to Judiciary Policy*, vol. 4 § 530.20.70.

108.  *See also Guide to Judiciary Policy*, vol. 4 §§ 530.50, 530.60.

A third form of summary trial is the mini-trial or mini-hearing, in which the attorneys present their case to high-level representatives of the parties who have authority to settle the case. The informal hearing may be conducted outside the courthouse, and generally no witnesses are called. After the presentations, the representatives of the parties meet to discuss settlement. The role of the court may be limited, unless the parties wish to have a judge preside over the hearing. Mini-trials are uncommon and are generally used only in large cases in which all parties are business entities.

A little more than a quarter of district courts authorize summary jury trials. Most courts simply authorize use of the process; few set out procedures for using it. Historically, courts have rarely used these ADR procedures.

## 5. Settlement week[109]

In a typical settlement week, a court suspends normal trial activity and, aided by volunteer mediators, sends numerous trial-ready cases to mediation sessions held at the courthouse. The mediation sessions may last several hours or days, with additional sessions scheduled as needed. Cases unresolved during settlement week return to the court's regular docket for further pretrial or trial proceedings, as appropriate. If settlement weeks are held infrequently and are a court's only form of ADR, parties who want to use ADR may need to look outside the court or to the court's judges for assistance while awaiting referral to the next settlement week. Few district courts authorize use of the settlement week process, although some districts have used the process on occasion.

## D. ADR Procedures

### 1. Referring cases to ADR

District courts have generally authorized three methods for referring cases to ADR.[110] In some districts, participation in ADR is mandatory and all civil cases, unless otherwise excepted, are automatically referred to ADR at filing or at some point thereafter.[111] In other districts, a case may be referred to ADR only if all

---

109.  *Id.* § 530.70.

110.  *Id*. at 9–10.

111.  Most federal district courts do not refer to ADR cases that are typically decided on the papers, such as Social Security appeals and government collection cases, nor do they generally refer pro se cases, though a number of courts have developed procedures and specially-trained mediators for pro se cases.

parties consent. Under the third and predominant method, the district court gives the presiding judge discretion to refer a case to ADR. In many of these districts, the presiding judge is authorized to order a case to ADR even if a party does not consent. Accordingly, in most districts, judges play a critical role in the ADR process, either by directly referring cases to ADR or encouraging the parties to consider participating in an ADR process.

Whether you refer a case to ADR will depend on a number of factors, including the nature and complexity of the case, the potential litigation costs, and the willingness of counsel and the litigants to participate in ADR. As a starting point, as discussed in Chapters 1 and 2, the parties should include a statement in their Rule 26(f) report or case management statement addressing issues such as their compliance with your district's ADR requirements, their ADR efforts to date, and any discovery or resolution of motions they believe are necessary for them to meaningfully participate in settlement negotiations. *See* online [appendix]. At the initial Rule 16 conference, you should discuss ADR options with counsel, which can help you better assess whether the case would benefit from ADR (through settlement or by narrowing the issues) and determine which procedure would be most effective.[112]

When deciding whether to refer a case to ADR, you should also consider what you want to accomplish through the referral. For an in-depth discussion of strategies for selecting an appropriate ADR process, consult the *[Guide to Judicial Management of Cases in ADR]*.[113] Your referral decision will depend not only on the unique characteristics of the case but also on the types of ADR that are available to you. As discussed in *supra* Section B, each of the principal types of ADR presently used in the federal courts (mediation, ENE, and arbitration) serves a different purpose. One or more types of ADR may be suitable in a particular case or even at different stages within the same case.

The timing of the ADR referral is variable and generally left to the judge. For a process like arbitration, where the neutral makes a decision on the merits of the case, referral is likely to be most appropriate later in the case after most of the evidence has been developed. On the other hand, ENE is, by definition, a process that should occur early in a case. For mediation, conventional wisdom has held that the process is most productive after considerable discovery has been completed. Some courts have found, however, that some parties can benefit from earlier mediation. For example, mediation may be more likely to result in settlement if it occurs before summary judgment motions are filed and parties

---

112. *See* Fed. R. Civ. P. 16(c)(2)(I); *see also [The Elements of Case Management]*, *supra* note 77, at 8–9.

113. Robert J. Niemic, Donna Stienstra & Randall E. Ravitz, *[Guide to Judicial Management of Cases in ADR]* §§ III, IV (Fed. Judicial Ctr. 2001) [hereinafter *ADR Guide*].

have "dug in" to their positions, suggesting that an earlier referral may be more productive in some cases. Some judges order parties to conduct discovery in stages so that only the discovery needed for the anticipated ADR process is obtained during the first stage, with additional discovery undertaken only if the ADR process is not successful.

You should refer a case to ADR at the earliest possible point that productive negotiations can occur in order to help parties avoid higher litigation costs and "digging in." Keep in mind, however, that while many cases can benefit from ADR, it may not be appropriate in cases that can be disposed of earlier and more efficiently by motion. For example, if there is a potentially dispositive legal issue, such as lack of jurisdiction resolvable by a motion to dismiss, ADR may not be the best use of time and resources, at least until the issue has been resolved.

## 2. Selecting and compensating an ADR neutral

You may have several options for ADR services.[114] Your court may, for example, maintain an outside panel of neutrals who are trained in specific ADR procedures.[115] Your court may also use its district or magistrate judges as settlement judges. A small number of district courts have a trained mediator on staff. Another option is to refer cases to outside ADR providers who are not on a court panel.

Before deciding whether an outside neutral, instead of an internal settlement judge, is the best choice, you should first confirm whether your local rules give you discretion in how the neutral is selected. If they do, you should *consider* the following factors:

- *Cost*. Some districts promote cost savings to litigants by agreeing to use district or magistrate judges to lead mediation efforts. This approach often targets cases in which relatively low damages are at stake. Other districts rely on outside neutrals, to make sure in-court personnel remain available for their other duties.

- *Objectivity*. If you are concerned about potentially losing your objectivity—or that there might even be an appearance that you have lost your objectivity—referring the case to an individual not connected with the court can help maintain your objectivity.

---

114. *See* ADR in the Federal District Courts: An Initial Report, *supra* note 94, at 9–11.

115. Some courts have established such panels, which are usually made up of attorneys from the local bar who have met the qualifications requirements set by the court. Some courts also include neutrals with training in other professions, such as finance or engineering. The ADR Act requires that a court make neutrals available and ensure that they are qualified in the type of ADR procedures offered by the court. 28 U.S.C. § 653.

- *Expertise*. Outside neutrals may be able to provide subject matter expertise not available within your court. Outside neutrals also are more likely to be trained in the specific ADR techniques that you or the parties wish to use for the case.[116]

- *Availability*. In courts with crowded dockets, outside neutrals may be able to give more individual attention to a case, or get to it sooner, than would court personnel.

- *Time*. Some ADR procedures, mediation in particular, can take several hours for a straightforward case, one or more days for a more difficult case, and many days for large or complex cases. Outside neutrals may have more time to give unless ADR is a routine part of the responsibilities of in-court personnel.

The method of selecting a neutral differs among the districts. As noted above, some districts maintain a panel of court-approved neutrals, generally possessing a minimum of formal training and experience, as required by the court's local rules. Panel members may state their preferences as to the subject matter of the cases referred to them (employment law, intellectual property, securities, etc.). Some judges prefer, after considering the pertinent characteristics of the case and the participants, to select a neutral from the panel and to issue an order appointing the neutral and fixing a schedule for the ADR process (subject to the parties' objections based on a latent conflict, scheduling problems, special subject matter expertise, or other sound reason). Some judges prefer initially to solicit the parties' choice of a qualified and capable neutral from the panel (although some judges reserve the right, in the event that the parties' neutral is unsuccessful, to require a later mediation before a neutral selected by the judge) and permit the parties to fix a schedule. In any event, you can have considerable influence on selection of the neutral and thus on neutrals' access to cases referred by the court. Distributing the court's cases across many neutrals, rather than assigning them to those most well-known, can preclude appearances of favoritism in the appointment of neutrals. For one view of the issues accompanying appointment of the neutral, *see* the *ADR Guide*.[117]

When an outside neutral is used for dispute resolution, the neutral and the parties will have a keen interest in whether the neutral will receive a fee for his or her services.[118] The ADR Act leaves to the district courts the decision whether to compensate neutrals, but requires the courts to establish the amount of

---

116. *See, e.g., ADR Guide, supra* note 113, § VI.

117. *Id.* § VI.

118. *See* ADR in the Federal District Courts: An Initial Report, *supra* note 94, at 11–14.

compensation, if any, in conformity with Judicial Conference regulation.[119] The Judicial Conference policy requires all district courts to establish a local rule or policy on compensation, whether neutrals serve pro bono or for a fee.[120] You should, therefore, look to your local rules for guidance.

Parties will also have an interest in the qualifications of, as well as the standards of conduct expected of, outside ADR neutrals. For useful information about designing a sound court ADR program and establishing standards for outside neutrals, *see* the guidelines approved by the Court Administration and Case Management Committee of the Judicial Conference.[121]

## 3.  Issuing a referral order

In districts with mandatory ADR programs, the clerk's office may automatically generate an ADR referral order after the case is filed, or the judges may include language in their initial scheduling order referring the case to ADR. *See* online appendix. In other districts, the judge must issue an ADR referral order or include the ADR referral in their case management order for the cases they have selected for ADR referral.

If you need to prepare your own referral order, *consider* including the following items, or where appropriate, citing to the local rule or other ADR authorizing documents where these items are set forth:

- identification of the type of ADR to be used;

- identification of the neutral or a description of the process the parties should use to select a neutral;

- a statement on whether the neutral serves pro bono or for a fee and guidelines for compensation of the neutral;

- instructions on whether the parties must submit materials, such as a statement of positions and settlement status, to the neutral and whether those statements are to be confidential or to be shared with the other party;

- guidelines on who must attend the ADR session and whether someone with settlement authority must be present on behalf of each interested party;

---

119. 28 U.S.C. § 658(a).

120. *See Guide to Judiciary Policy*, vol. 4 § 520.40.

121. Court Administration and Case Management Comm., Judicial Conf. of the U.S., Guidelines for Ensuring Fair and Effective Court-Annexed ADR: Attributes of a Well-Functioning ADR Program and Ethical Principles for ADR Neutrals (1997); reproduced in online appendix [hereinafter *CACM ADR Guidelines*].

- a statement that good faith participation is required;

- guidelines on whether participation must be in-person or may be by virtual technology;

- deadlines that must be met for initiating and completing the ADR process, as well as instructions on whether other case events, such as discovery, must go forward as scheduled or are stayed;

- instructions regarding confidentiality of the proceedings and communications between the judge and the neutral;

- instructions about how to end the ADR process—e.g., where to submit a status report, if any, and what papers to submit if the case settles;

- instructions about whom to contact if problems arise during the ADR process; and

- a statement about whether and under what circumstances sanctions might be imposed.[122]

For an example order referring cases to ADR, *see* online appendix.

It is particularly important that all persons involved in an ADR process, including the referring judge, have a clear understanding of two matters: (1) any ADR deadlines and how the ADR process will fit into the regular litigation schedule as set out in the case management order; and (2) the limits of any confidentiality provisions, including who may speak with the judge and on what matters. The first is, for the most part, a matter of clarity about deadlines and whether other pretrial events will go forward during the ADR process. The second is a very important matter for the parties, the neutral, and the judge. Your local rules, in compliance with the ADR Act, should provide for confidentiality in ADR proceedings.[123] For a sample form setting out a confidentiality agreement between parties, *see* online appendix.

## 4. Managing cases referred to ADR

After you have referred a case to ADR, you may need to make decisions about a number of issues, such as whether discovery will be stayed or go forward; what your role should be in monitoring the ADR process; whether you will engage in ex parte communications with the neutral; and how the ADR process should be

---

122. For a more extended discussion of the referral order and how it can help forestall problems in cases referred to ADR, *see ADR Guide*, *supra* note 113, § X.

123. 28 U.S.C. § 652(d).

concluded. You may also have to resolve issues, such as a party who refuses to attend or to participate in good faith in the ADR session; a neutral who has failed to disclose a conflict of interest; a request for public access to ADR sessions; or a motion to admit at trial information disclosed during ADR. These kinds of problems arise infrequently in cases referred to ADR, but when they do, they can be difficult and time-consuming. For a comprehensive discussion of techniques used to prevent and handle such problems, *see* the [*ADR Guide*](#).[124] You should also consult your local rules, which may, pursuant to the ADR Act, have well-established procedures for handling some of these issues.

## E.  Judicial settlement

Judge-hosted settlement negotiations can be an effective and cost-efficient method for litigants to resolve their cases.[125] Settlement potential may be explored early in the case by having the parties indicate in their Rule 26(f) report or Rule 16 case management conference statement whether there have been any prior settlement negotiations and whether they are amenable to a settlement conference with a judge. You can follow-up on the parties' responses at the Rule 16 conference. *See* Fed. R. Civ. P. 16(c)(2)(I).

Nearly all judges host settlement conferences at least occasionally, and some judges (especially magistrate judges) do so frequently, if not routinely. In some districts, a settlement judge is assigned at the same time the presiding judge is assigned to a case. In other districts, the case is assigned to a judge for settlement purposes upon the request of the presiding judge. In many districts, magistrate judges serve as the court's primary settlement neutrals. Magistrate judges are highly effective as settlement judges because they can offer the litigants a perspective of how the presiding judge might view a party's argument or position. Having magistrate judges serve as neutrals also helps avoid the cost of compensating a private neutral, and magistrate judges can often accommodate emergency settlement conferences sooner than outside mediators. Magistrate judges, however, may have fewer hours to devote to a settlement conference than an outside neutral would, and the court, as a matter of policy, may want to use its judicial resources for work that only judges can do.[126]

---

124. *See* [*ADR Guide*](#), *supra* note 113, at § X.

125. For additional information about approaching settlement discussions, *see* [*The Elements of Case Management*](#), *supra* note 77, at 8–9.

126. In a substantial number of districts, magistrate judges are on the case assignment wheel. Because they have their own caseload, their availability for settlement work may be more limited. Some districts have decided, as a matter of policy, to use outside neutrals for most, if not all, settlement work, leaving judges free to concentrate on other matters.

## 1.  The judge's role

The traditional view of judicially-hosted settlement conferences is that the judge assists the parties in exchanging settlement offers and very likely gives his or her own view of the strengths and weaknesses of each side's case in an effort to find a monetary value that will settle the dispute. The understanding of what judges do when conducting settlement negotiations has shifted as more judges learn, or bring with them into their judicial role, the theory and skills of mediation.[127] Use of these skills typically means a commitment of more time to an individual case's negotiations, a smaller role for the judge's view of the case, and more emphasis on a settlement that meets the parties' needs beyond a monetary settlement.

The extent to which you become involved in settlement discussions will depend on several factors, including whether you have time, whether other alternatives are available, whether you feel your involvement could help the parties and the case, whether your involvement could risk perceptions of settlement coercion or perceptions that your impartiality might be compromised, and, if you are a magistrate judge, whether the court or individual judges refer such matters to you.

Serving as a settlement facilitator in your own cases may raise questions about your impartiality and may result in recusal motions.[128] While local custom and practice may provide guidance, generally you should be cautious about doing so. Judges should serve as the settlement judge in their own cases only at the request of the parties and preferably when recusal is waived.[129] The better practice may be not to host settlement discussions in your own cases at all.

Expert commentators differ on whether, and when, it is appropriate for judges to participate in settlement negotiations in their assigned cases. Some judges believe their familiarity with their cases makes them the most effective neutrals and places them in the best position to focus on the issues and evaluate the parties' positions. Others draw a distinction between bench and jury trials, feeling freer to participate in settlement negotiations when the facts in the case will be determined by a jury. Many judges will not participate in settlement negotiations in their own cases unless the parties specifically request it and waive recusal.

---

127. The Federal Judicial Center offers workshops in basic mediation skills to magistrate judges, district judges, and bankruptcy judges. Materials from these workshops and information about upcoming workshops are available on the FJC's website: fjc.dcn.

128. *See* Canon 3(A)(4)(d) & commentary, Code of Conduct for United States Judges.

129. *See id.; see also Guide to Judiciary Policy*, vol. 2, Ethics Advisory Opinions, Advisory Opinion No. 95 (June 2009) ("Judges must be mindful of the effect settlement discussions can have not only on their own objectivity and impartiality but also on the appearance of their objectivity and impartiality.").

Civil Litigation Management Manual

If you do host settlement discussions in your own cases, the safest stance is to limit your participation to cases that will be tried to a jury and only after case-dispositive motions have already been decided. This advice is even more pertinent if you are likely to become deeply involved in the case through the settlement discussions. Helping the parties explore their underlying interests is an essential element of the mediation process. The more you learn about the parties—their positions, concerns, strategies, views of their opponents, and so on—the more difficult it will be for you to remain impartial or to maintain the appearance that you are impartial. This may be problematic if you must rule on motions or decide the outcome of the case after participating in settlement discussions.

In any event, you can always serve as a catalyst, by opening the door to negotiations and helping the parties evaluate the case. Because many attorneys and their clients are reluctant to make the first settlement move, fearing their overture may signal a weak case, you can be especially important in breaking down barriers to negotiation by suggesting that they seek the assistance of a third-party neutral, whether from another judge or through your court's ADR program. You will be most effective if you maintain credibility and a reputation for candor and fairness, giving counsel and litigants confidence that they will be fairly treated in the negotiation process.

## 2. The timing of settlement discussions

There are three logical points in a lawsuit where settlement efforts are optimal: (a) no discovery has yet occurred, and litigation cost savings are significant; (b) discovery has been completed, but dispositive motions have not yet been filed; and (c) after discovery and after dispositive motions have been ruled upon. You should evaluate whether, in the case at hand, the apparent purposes of the parties favor one of these points over the others for holding settlement talks.

Although conventional wisdom has held that productive settlement discussions cannot be held until substantial discovery has been completed, many cases defy this truism. You should open the door to settlement discussions before counsel embark on extensive briefing schedules or extended rounds of discovery (i.e., before their clients have sunk large sums into the case and become hardened in their positions). This will help you avoid putting yourself and the parties in the position of preparing for trial, with all the resources that requires, and then having the case settle.

You should raise the settlement question not only early but regularly, first in your guidelines for the parties' Rule 26(f) report or case management statement,

then at the initial Rule 16 scheduling conference, at subsequent pretrial conferences, after dispositive motions (which tend to change how parties view their case), and before attorneys begin preparing for the final pretrial conference. You generally should not wait until just before trial to raise settlement for the first time, but you should raise the issue of settlement again just before trial. In addition, some cases do settle during trial. Generally, you should not permit the attorneys to ask for delays of the trial date to settle the case, but if you have encouraged and assisted settlement discussions all along, you should rarely, if ever, find yourself in this position.

To help parties enter into serious settlement discussions, you might do a number of things in connection with the Rule 16 conference. *Consider*:

- asking counsel for an oral or written report on whether settlement negotiations have occurred, are in progress, or are contemplated; what the prospects for settlement are; and how settlement may be facilitated;

- having counsel identify, and then complete, only targeted discovery necessary to evaluate the case for settlement, leaving until later discovery needed for other purposes;

- requiring counsel to discuss with their clients the anticipated costs of litigation;

- requiring counsel in fee-shifting cases to disclose to you and opposing counsel anticipated fees and costs;

- referring the case to a mediator, special master, settlement judge, magistrate judge, or, if all counsel request it, to yourself to conduct negotiations (preferably someone other than yourself if you are the fact finder); and

- referring the case to ADR procedures as provided by your court's local rules or general orders or as agreed to by the parties.

You should not consider delaying the progress of the case for the sake of settlement discussions, as the momentum of the pretrial process can in itself be an important impetus to settle.

## 3. Successful settlement techniques

When you are presiding over a settlement conference, you need to decide how to conduct the discussions and how to lower barriers to settlement. Your choice of settlement techniques will be influenced by the nature of the case, the history of the litigation, the personalities and needs of the participants, and your own

personality. There is no single best way to assist settlement negotiations, but whatever techniques you use, two things are fundamental: being prepared and listening carefully. Relevant information can be communicated by the participants in very subtle ways. Understanding the parties' thinking and feelings is as important as analyzing the issues; the parties' real objectives in the litigation may not always be what they seem based on their pleadings. The parties may also take a long time to reach settlement. You can help expedite this process by asking the plaintiff to state simply what he or she wants from the defendant. Assisting in settlement discussions can require great patience. Reaching a settlement, however, may lead to a far better outcome for all parties and may take less time than trying the case.

You can facilitate settlement negotiations by your actions and decisions in setting up the process and by the steps you take during the settlement session itself.

In setting up the settlement process, *consider*:

- at the first opportunity, asking counsel what information they need to evaluate the case and to reach supportable damages estimates, ordering the parties to produce the necessary items (e.g., personnel files in a discrimination case or the medical file in a personal injury case), and asking them to write you about the results of subsequent settlement talks;

- directing attorneys participating in any settlement conference to be prepared regarding the factual and legal issues and their clients' positions;

- ensuring that attorneys and other party representatives have adequate authority to settle the case or at least have immediate access to someone who has final authority, including insurers, senior government officials, and top management, when necessary;

- requiring the attendance of parties or party representatives (particularly in cases such as discrimination and personal injury where parties may value an opportunity to "tell their story");[130]

- suggesting, if the attorneys in the case are antagonistic or unskilled in negotiation, that one or more parties employ special counsel for the purpose of conducting settlement discussions;

- setting a firm and credible trial date to keep pressure on the parties; and

- having counsel submit to you confidential memoranda, outlining the pivotal issues, the critical evidence, and their settlement positions.

---

130. Federal Rule of Civil Procedure 16(c) authorizes the court to require a party or its representative to be present or available by telephone at pretrial conferences "to consider possible settlement of the dispute."

After a matter is referred for settlement purposes, many judges issue an order with information about the date, time, and location of the settlement conference, as well as a description of how the settlement conference will be conducted (e.g., who is required to attend and whether they must attend in person or may attend by virtual technology) and what materials the parties must submit before the conference (e.g., a settlement conference statement). For examples, *see* online appendix. The order gives you a chance to convey your expectations for the settlement conference and ensure that the parties are prepared to engage in meaningful negotiations.

To assist negotiations during the settlement conference itself, *consider* the following approaches:

- discussing with the participants the issues and the probable risks each party faces, without taking a position on the merits;

- asking the attorneys, in front of their clients, how much it will cost to litigate the case through trial and then suggesting to their clients that they put this sum toward settlement;

- helping parties focus on their underlying interests (e.g., resuming a profitable business relationship) rather than on disputed facts or legal principles;

- meeting separately with each side (parties and counsel) for candid evaluations of the parties' prospects and the costs of continuing the litigation—but keep in mind, if conducting a settlement conference in your own case, that while these meetings often become essential to the successful conclusion of settlement negotiations, you should have the parties' consent or risk being precluded from presiding at trial;[131]

- suggesting that the corporate principals meet without counsel to reach an agreement as business people;

- delaying having parties state their "bottom lines" so as to keep the negotiating positions flexible;

- in appropriate cases, directing attention to damages, instead of emphasizing liability issues;[132]

---

131. This point illustrates why you should be cautious about holding settlement conferences in your own cases. Private caucuses with the parties are often pivotal for settling a case, but they can also put your impartiality at risk.

132. In some cases, it is money, rather than principle, that ultimately matters. If it becomes clear to the parties that a settlement on financially acceptable terms is possible, there is little point in continuing to debate liability.

- severing one or more issues for a separate trial if doing so will provide the basis for settlement of other issues;

- looking for imaginative and innovative solutions, such as structured payouts, payment in kind, future commercial relations, concessions, apologies, admissions, establishment of a training or recruiting program, or correction of a defect;

- discussing settlement in the parties' language (e.g., with two business litigants, ask "How many widgets will the litigation costs buy? What are your daily profits against the costs of this case?");

- providing a structure, when the parties are dug in, to help them exchange offers (e.g., asking the plaintiff to "come up with the next offer," asking the defendant to make a counteroffer, and asking them to continue exchanging offers until a settlement or impasse is reached), which can force movement but takes the burden off the parties to make the first move;

- injecting realities, such as the risk of bankruptcy or the difficulties of collecting a judgment from a financially strapped defendant;

- recommending or encouraging the parties to exclude punitive damages as an element of the claim for settlement purposes;

- encouraging the defendant to make a Federal Rule of Civil Procedure 68 offer of judgment, carefully drafted to avoid later disputes;[133]

- deferring any judicial recommendation of potential settlement figures until the outlines of a probable settlement become apparent;

- settling only some issues in the case or the claims of some but not all parties;[134] and

- keeping the negotiations going despite lack of agreement.

Some judges find they are most effective if they try to move the parties within range of settlement (i.e., if they establish a "ballpark"). To do that, you may need to remain noncommittal on the merits for some time. If you are careful to not make a recommendation too soon, you may also find that your credibility and effectiveness are enhanced, and you may avoid having to backtrack later if discussions move in an unanticipated direction. However, many attorneys prefer a judge who is actively involved in settlement discussions, who knows the facts and

---

133. Such an offer can be helpful in cases in which attorneys' fees can be awarded by the court, since the offer can cover all liability, but it must be unambiguous to enable the parties to determine whether the final judgment is more favorable.

134. *But see* MCL 4th, *supra* note 22, § 13.21, for a discussion of the risks of partial settlements.

law in the particular case, who offers explicit assessments of party positions, and who makes specific suggestions for resolution, provided the judge is not going to be the fact finder in the case.[135] Because these preferences seem to vary by geography, an understanding of your local culture may be helpful in deciding the approach you will use.

## 4. Recording the settlement

In the end, it is not the judge who settles the case, but the parties. Their decision does not ordinarily require your review or approval. To forestall future disputes over the settlement, it is generally wise nonetheless to record the settlement in writing. If you think there is a chance that the settlement may fall apart, you might consider, if appropriate, entering the complete terms of the settlement into the record in the presence of counsel. If your courtroom is equipped with audio recording technology, you may have counsel recite on the record the key terms of the settlement and affirm that they understand the terms and agree to be bound by them. If the agreement requires ratification or approval by a board of directors, the Attorney General, or some other higher authority, set a date certain by which counsel must file a written agreement with the court. If the agreement is to be filed later, it is wise to get at least an outline of the settlement terms on paper on the spot, particularly if individuals rather than corporations are involved. Ask both counsel and all parties to affirm the terms of the agreement by signature or on the record. You should also indicate which party will be drafting the agreement and the date by which they will transmit it to the other parties for signature.

If you have given counsel leeway to file the agreement by a specified later date, you may find that some parties are tardy in meeting that date. When you set a date certain and put it on the record, reinforce with counsel that you expect them to keep that date. When they do, you can dismiss the case. *See* online appendix for examples of orders dismissing a settled case. If they do not, you can ask the parties to show cause why you should not dismiss the case.

In some cases, such as class actions and some antitrust cases, you are required to review and approve the settlement.[136] Also note that, once the case is dismissed,

---

135. W. D. Brazil, Settling Civil Suits: Litigators' Views About Appropriate Roles and Effective Techniques for Federal Judges (American Bar Association 1985) at 1–2, 5–6. In this study of litigating attorneys in four districts, Brazil found that 85% agreed that involvement of a federal judge in settlement discussions was likely to improve prospects for settlement and that a majority thought judges should involve themselves in settlement even when the attorneys did not ask for help. However, a substantial majority also preferred that the settlement judge not be the judge who will try the case, especially if the case is a bench trial.

136. *See* MCL 4th, *supra* note 22, § 13.14, for a helpful discussion of this responsibility.

the court does not retain jurisdiction to enforce a settlement agreement simply based on its prior authority over the underlying dispute.[137]

## 5. Settlement in cases involving pro se litigants

Cases involving a pro se litigant seem to be obvious candidates for disposition by settlement, but you should be cautious about assisting settlement negotiations in pro se cases. Pro se litigants will likely turn to you for advice, and you may be tempted to help them. Within bounds, it is your responsibility to ensure that these litigants are provided fair access to justice, while also protecting your impartiality. Because this is a difficult line to walk, the better approach is simply to forego any involvement in settlement discussions in pro se cases over which you are presiding, and refer these cases to another district or magistrate judge in your court for a settlement conference. Your court might also consider establishing, if it has not done so already, a special panel of attorneys who agree to assist pro se litigants solely for the settlement process (referred to as "limited scope counsel").[138] For more information on conducting pro se settlement conferences, *see Pro Se Case Management for Nonprisoner Civil Litigation*.[139] Additionally, the FJC has training videos and materials on mediating pro se cases available on its website.[140]

## 6. Ethical and other considerations in judge-hosted settlement negotiation

Whatever your approach to settlement discussions, you should ensure at all times that your impartiality and the court's credibility are not compromised. To preserve the integrity of the process, you may also need to monitor the conduct

---

137. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994); *see also Massi v. 198 Chelsea Corp*, 217 F. Supp. 3d 731, 732–33 (S.D.N.Y. 2016); *Amer. Cntr. for Civil Justice v. Ambush*, 49 F. Supp. 3d 24, 26 (D.D.C. 1994).

138. For example, in 2014, the Central District of California implemented a pro bono limited-scope representation pilot program. See https://www.cacd.uscourts.gov/attorneys/pro-bono/pro-bono-limited-scope-representation-pilot-program. The District of Colorado, by local rule, also authorizes attorneys to assist a pro se litigant with discrete issues or phases of litigation, including representing the litigant in settlement and ADR proceedings. *See* D. Colo. L. Atty. R. 2(b)(1), 5(a)-(b); *see also* http://www.cod.uscourts.gov/AttorneyInformation/LimitedRepresentation.aspx.

139. *Pro Se Case Management for Nonprisoner Civil Litigation*, *supra*, note 73, at 45–49.

140. *See, e.g.,* National Workshop for U.S. Magistrate Judges II – Breakout Session – Pro Se Settlement Conferences. For mediation of prisoner pro se cases, *see* Court to Court: Inmate Early Mediation (FJC Dec. 2017; video program).

of counsel and their clients. Efforts by parties to seal documents as part of the settlement agreement, for example, will require your close attention, especially in cases that involve public safety. Counsel may also try to enter into side agreements that are not disclosed to other parties in the case. Negotiations regarding attorneys' fees may require your attention, as well, especially in civil rights cases, in which the losing side is liable for the fees of the prevailing side. These and other problems are given careful attention in the *MCL 4th*.[141]

---

141. *MCL 4th*, *supra* note 22, §§ 13.22–13.24.

# 6

# The Final Pretrial Conference and Trial

A.  Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
B.  Trial guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
C.  The final pretrial conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
  1.  Timing and structure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95
  2.  Preparing for the final pretrial conference . . . . . . . . . . . . . . 96
  3.  Conducting the final pretrial conference . . . . . . . . . . . . . . . 98
    a.  In general . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
    b.  Expert witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
    c.  Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
    d.  Depositions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
    e.  Jury issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
    f.  Scheduling and limiting trial events . . . . . . . . . . . . . . . 103
  4.  The final pretrial order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
D.  Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
  1.  Jury trials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
    a.  Techniques for trial management . . . . . . . . . . . . . . . . . . 105
    b.  Assisting the jury during trial . . . . . . . . . . . . . . . . . . . . . 106
  2.  Bench trials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
    a.  Techniques for trial management . . . . . . . . . . . . . . . . . . 109
    b.  Deciding the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

## A.  Overview

The need for active case management continues through trial. Having trial guidelines in place and holding a final pretrial conference can help ensure that counsel are prepared and that the trial proceeds fairly and efficiently. The following discussion focuses on case management techniques for the final pretrial conference as well as for jury and bench trials.

## B.  Trial guidelines

As discussed in Chapter 1, developing and posting case management guidelines can help convey your expectations and procedures for each phase of litigation. Some judges include basic information about trial procedures in their case management guidelines. Others have separate guidelines for jury and bench trials that they either post on the court's website or provide to counsel before the final pretrial conference. Judges typically include information about how trials are scheduled, courtroom protocol, how exhibits should be submitted and marked, and how voir dire is conducted. *See* online [appendix](#) for examples. Having an early understanding of how you conduct trials can help counsel plan and prepare their case should it advance to that stage.

## C.  The final pretrial conference

Under Rule 16(e), the court may hold a final pretrial conference "to formulate a trial plan, including a plan to facilitate the admission of evidence."[142] Although the final pretrial conference is not mandatory, you should consider holding a conference in every case that advances to trial unless it is clear that the time and expense would outweigh its benefits. Generally, the final pretrial conference provides a valuable opportunity for you to:

- explore settlement potential;
- review with counsel the claims and defenses that remain to be tried;
- discuss your trial procedures and expectations with counsel;
- set deadlines for further written submissions;
- rule on motions in limine;
- obtain admissions or stipulations to avoid unnecessary proof at trial;
- discuss your voir dire process; and
- address questions from counsel before trial begins.

Rule 16(e) further provides that, if a final pretrial conference is held, it must be held as close to the start of trial as is reasonable and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. Aside from these basic requirements, the timing, structure, and

---

142. For further discussion of the final pretrial conference, *see The Elements of Case Management*, *supra* note 77, at 13–15; *Benchbook*, *supra* note 19, at 199–204; *MCL 4th*, *supra* note 22, at 118–129; and *Practice Guide: Federal Civil Procedure Before Trial*, *supra* note 13, §§ 15.1–15.77.

content of the final pretrial conference are up to you and can be tailored to fit a case's specific needs and complexity. The following sections offer factors to consider when setting and holding a final pretrial conference.

## 1. Timing and structure

There are various approaches for scheduling a final pretrial conference. Some judges set a date for the final pretrial conference as part of the scheduling order. Other judges do not schedule a final pretrial conference until trial is imminent (e.g., after denying summary judgment, or, if no dispositive motions were filed, after the dispositive motion deadline has passed or discovery has closed). Under the latter approach, to ensure that the conference is promptly set, the judge may require the parties to file a Notice of Readiness for Final Pretrial Conference within a certain period of time (e.g., 10 days after the dispositive motion deadline has passed if no motions are filed or after the court rules on the last dispositive motion). If the final pretrial conference date is set early in the case, keep in mind that continuances of certain deadlines (e.g., discovery cutoff or dispositive motion deadline) may also require resetting the final pretrial conference date.

As indicated above, Rule 16(e) directs that the final pretrial conference must be held as close to the start of trial as is reasonable. What is "reasonable" will largely depend on your calendar availability, as well as the complexity of the pretrial matters that must be addressed, such as motions in limine. In complex cases, you may need to schedule the final pretrial conference sufficiently in advance of trial to allow for an additional, follow-up conference to address any issues that could not be resolved during the first conference.[143]

When scheduling a final pretrial conference, you should also *consider*:

- requiring the parties and/or a representative with final settlement authority to be present (or if unable to be present, to be available by phone);

- holding the conference where it is likely to be most productive (either in chambers or in open court); and

- having a transcript made of the conference for future reference in guiding the course of the trial.

---

143. *See MCL 4th*, *supra* note 22, §§ 11.6, 11.23.

## 2. Preparing for the final pretrial conference

To ensure that counsel is prepared for the final pretrial conference, many judges require parties to submit materials in advance, typically in the form of a pretrial statement or proposed final pretrial order. To facilitate this process, some districts have adopted either a local rule listing the information and materials that should be submitted or a standardized final pretrial order template for the parties to download and complete. In other districts, judges use their case management guidelines, a standing pretrial order, or the order setting the final pretrial conference to specify the materials to be submitted. Some judges also require that the parties meet, confer, and jointly submit the materials. For examples of orders and local rules addressing written submissions for the final pretrial conference, *see* online [appendix](#).

If not already required by your district, *consider* requiring the parties to include the following in a preconference submission:

- A statement of the case, including:
  - ◦ a concise description of the nature of the case;
  - ◦ the identity of the parties;
  - ◦ the basis for the court's jurisdiction; and
  - ◦ a statement of all relief sought.
- A statement of the claims and defenses that remain to be decided (including whether any issues are for the judge rather than the jury to decide).
- A statement of material facts that are admitted, stipulated, or uncontested.
- A list of all witnesses (other than for impeachment or rebuttal) that each party will call or may call at trial (either in person or through deposition), including a brief description of the substance of each witness's testimony and the estimated amount of time the testimony will take (direct and cross). *See* Fed. R. Civ. P. 26(a)(3)(A)(i), (ii).
- A list of exhibits, including a brief description of each exhibit and a statement of stipulation or objections, if any, to each exhibit.[144] *See* Fed. R. Civ. P. 26(a)(3)(A)(iii).
- A brief description of the motions in limine that have been filed and any opposition thereto.

---

144. For more information about trial exhibits, *see infra* Chapter 6, Section [C.3.c](#).

- Whether a jury trial was requested and whether the parties stipulate that the request was timely and properly made.

- An estimate of the total length of the trial.

- A description of the efforts the parties have made to settle the case and a statement as to whether the parties believe a settlement conference could be worthwhile.

*If a jury trial was requested*, the parties should also include:

- A joint statement of the case (to be read to the jury during voir dire).

- Proposed voir dire questions (both agreed-upon and disputed).

- Proposed jury instructions (including a notation as to whether each instruction is agreed to or disputed and a statement of the grounds for objection for each instruction).

- Proposed verdict forms, including special verdict forms or juror inter-rogatories if requested (*see* Fed. R. Civ. P. 49).

*If a jury trial was not requested*, the parties should also include proposed findings of fact and conclusions of law.[145]

If not already set by local rule, you should set a filing deadline that will allow you sufficient time to review all of the materials and prepare for the final pretrial conference (e.g., some judges set the deadline at 7 days before the conference; others at 14 days before the conference).[146] Further, if you or your district requires the parties to jointly submit final pretrial conference materials, you should also set a timeline for the parties to initially confer, exchange drafts, and file their preconference statement or proposed final pretrial order.

Many judges also have special requirements for motions in limine. For example, to keep the motions succinct, you may consider capping the number of motions in limine that each party may file; imposing a more restrictive page limit on the motion and response (e.g., 5 pages); and disallowing reply briefs.

Finally, keep in mind that if any of the information or materials described above is unnecessary in a particular case, you may excuse the parties from com-pleting those parts of the preconference filings to avoid unnecessary costs.

---

145. For additional discussion of preconference submissions, *see Benchbook*, *supra* note 19, § 6.01(C).

146. Note that if the parties are required to include all of the Rule 26(a)(3) disclosures in their preconference filing, the filing deadline for the preconference statement may supersede the "30 days before trial" disclosure deadline set by Rule 26(a)(3).

## 3. Conducting the final pretrial conference

### *a. In general*

The format and agenda for a final pretrial conference are up to you and can be adapted to fit the particular needs of a case. Generally, you will want to go over your rules and procedures for trial, set a trial schedule, explore settlement potential, define the issues to be tried, and narrow the evidence that will be presented through stipulation and by ruling on motions in limine. If the parties filed a final pretrial conference statement or a proposed final pretrial order, that filing can serve as the basic outline for the topics to be addressed at the conference.

*Consider* addressing the following topics during the final pretrial conference:[147]

- Confirming that the party requesting a jury trial still wants a jury trial.

- If a trial date has not previously been set, informing counsel of the trial date and days allotted for trial.

- Discussing the prospects of settlement and gauging whether a settlement conference would be worthwhile.

- Reviewing how you conduct trials, including the typical trial schedule, your expectations of counsel, how you conduct voir dire and jury selection (including how many jurors will be called and empaneled), your practices regarding the jury (e.g., whether they may take notes or ask questions), and other matters relating to courtroom decorum.

- When discussing jury selection, reminding counsel of their obligations to comply with *Batson*.[148]

- Reviewing with counsel the factual and legal issues that remain to be tried and confirming that there is no disagreement on the scope of those issues.

- Determining if there are issues that may be narrowed through stipulation.

- If the parties have filed motions in limine, hearing argument on the motions (if necessary), and ruling on the motions, or informing the parties that you will issue a ruling before trial starts.

- Addressing issues relating to the witness lists, including witness-scheduling issues and elimination of witnesses whose anticipated testimony does not go to matters in dispute.

---

147. For additional suggestions on how to structure the conference, *see Benchbook supra* note 19, § 6.01(D).

148. *Batson v. Kentucky*, 476 U.S. 79 (1986).

- Pre-admitting exhibits into the record to which there are no objections or which you are able to rule as admissible under Rule of Evidence 104.

- Addressing issues concerning the mode or order of proof (*see* Fed. R. Evid. 611(a)).

- Requiring agreement by counsel (to be included in your final order) that all documents are considered authentic if produced by the parties, unless a specific document is objected to, in order to avoid unnecessary custodial witnesses or certification of authentication.

- Requiring narrative written statements for presenting, subject to cross-examination, the direct testimony of expert witnesses to avoid the use of depositions at trial (*see* Fed. R. Civ. P. 43 and Fed. R. Evid. 611(a)).

- Having counsel list, by page and line for review, depositions to be used (i.e., those that are not amenable to the above procedure).

- Discussing with counsel limits you will impose on time or on the number of witnesses or exhibits.

- Instructing counsel that they should contact court staff (either your courtroom deputy or a member of the IT staff) to coordinate use of courtroom technology and equipment and resolve issues before trial starts.[149]

- Asking counsel whether there are other issues that need to be addressed or whether they have any other questions about how the trial will be conducted.

### *b.  Expert witnesses*

Managing expert witnesses can help avoid the parties' reliance on redundant or duplicative expert testimony, which not only wastes trial time but increases the parties' litigation costs. As the trial judge, you are in a unique position to question counsel's justification for an expert witness; the parties may lack the technical background to do so.

At the final pretrial conference, *consider*:

- ruling on the qualifications of expert witnesses, the admissibility of particular expert evidence, the use of hypothetical questions, and the requisite evidentiary foundations (*see* Fed. R. Evid. 104(a));

---

149. In some districts, the U.S. Marshal requires a court order allowing the parties to bring in additional equipment.

- including language in the final pretrial order barring experts not previously identified and expert testimony at variance with an identified expert's prior deposition testimony, written report, or statement, unless preceded by proper notice and prior court approval;

- establishing procedures to enhance jury comprehension (*see infra* Chapter 6, Section C.3.e);

- determining whether to appoint an expert witness (*see* Fed. R. Evid. 706); and

- limiting the number of experts permitted to testify.

While it may appear easier to defer to the judgment of counsel regarding experts, it is important to emphasize your responsibility to ensure economy and efficiency in the use of public trial resources. Consider whether more than one expert per side is needed and should be permitted to testify with respect to any single scientific discipline. Trials involving different disciplines may require different qualifications and call for different experts.

If expert testimony is to "help the trier of fact to understand the evidence or to determine a fact in issue," *see* Fed. R. Evid. 702, the trial should be managed so as to enhance the trier of fact's comprehension.

*Consider* the following approaches:

- having a tutorial for the jury or the judge before the trial begins, conducted by a neutral expert or experts chosen by the parties, to explain fundamentals of complex scientific or technical matters, and to do so in lay terms, if possible;

- excluding undisclosed experts and evidence from the trial: few things are more disruptive at trial than the appearance of undisclosed experts or the offer of expert evidence that varies from prior testimony or reports;

- having experts testify back-to-back to facilitate clarification of the extent and basis of their disagreement;

- giving the jury preliminary and interim instructions, allowing jurors to take notes, and permitting them to ask questions (*see infra* Chapter 6, Section D.1.b, for a brief discussion of the issues involved in permitting juror questions); and

- using narrative written statements or reports for presentation of experts' direct testimony.

### c.   Exhibits

To facilitate the organization and presentation of exhibits, many judges provide detailed instructions on how exhibits should be marked, organized, and provided to the court (including how many copies to submit, whether an electronic copy of all exhibits is required, and when the exhibits should be delivered to the court). *See* online appendix for examples.

Duplicative, redundant, or unclear exhibits not only waste limited trial time, but may also prejudice the case of the presenter, who is often the last to recognize this.

*Consider*:

- controlling the volume of exhibits by limiting their number;
- forcing counsel to justify the independent utility of exhibits with regard to specific issues or proofs (*see* Fed. R. Evid. 403, 611(a));
- encouraging stipulations to foundation;
- having counsel redact voluminous exhibits;
- asking counsel to pre-mark exhibits and provide copies to the court;
- insisting that counsel are familiar with the courtroom technology and equipment and have tested the equipment to ensure compatibility prior to trial; and
- identifying disputed or potentially prejudicial exhibits and developing protocols for their presentation.

### d.   Depositions

Presenting deposition testimony by reading depositions can save litigation costs, but it can bore jurors. Accordingly, you should consider limiting the reading of depositions by use of a stipulated summary or agreed-upon statement of the substance of a witness's testimony,[150] reserving readings for key testimony. This practice should also be balanced against the reasonable desire on the part of counsel to allow a key witness to "speak the case" to a jury (at least in part through deposition testimony). Requiring that counsel, in advance of trial, designate or stipulate to summaries or depositions to be offered at trial can promote the effective and efficient use of these materials at trial. Should you permit deposition testimony to be offered at trial, you should require counsel to organize and redact deposition testimony in preparation.

---

150.   *See MCL 4th*, *supra* note 22, § 12.331.

### e. Jury issues

Jurors are generally less familiar than anyone else in the case about what is happening in the courtroom and why it is happening. While no one consciously wishes to offend or mistreat jurors, they are often subjected to seemingly arbitrary and unexplained delays, excluded from private sidebar discussions, and presented with confusing or arcane instructions over the course of trial. You are their only constant champion and defender. You should highlight for trial counsel the risks they face in not considering juror needs, from their first contact with a trial panel at voir dire through the end of trial, when fatigue and impatience can set in. You should also remind counsel that the jury's eyes are on them at all times; they should therefore conduct themselves professionally—whether questioning a witness or sitting at counsel's table.

*Consider* the following techniques to improve the jury's experience and function:

- streamlining voir dire procedures generally;[151]

- screening prospective jurors by having them complete questionnaires in advance in cases in which a large jury pool is necessary and voir dire could be lengthy (*see* online appendix); [152]

- establishing a procedure for voir dire and discussing that procedure with counsel at the final pretrial conference (*see* Fed. R. Civ. P. 47; *see, for example*, online appendix);[153]

- having counsel submit proposed voir dire questions;

- preparing for the voir dire examination to ensure that all important points will be covered;

- establishing procedures for jury selection, including the number of jurors to be seated, the number of alternates to be selected, and the number of peremptory challenges per side, as well as the procedure for their exercise (*see* Fed. R. Civ. P. 48; *see, for example*, online appendix);

- establishing a procedure for selecting and excusing alternate jurors;

- clarifying that all jurors remaining at the end of the presentation of evidence, except alternate jurors, will deliberate (*see* Fed. R. Civ. P. 48);

---

151. *See MCL 4th*, *supra* note 22, § 12.412.

152. Note that written questionnaires may disadvantage jurors without much formal education because they are sometimes less effective at articulating themselves in writing. As a result, some judges only use written questionnaires to screen for juror availability when a trial may be lengthy.

153. *See MCL 4th*, *supra* note 22, § 12.412.

- determining how complex evidence will be presented to enhance jury comprehension;

- developing a process for submitting proposed jury instructions and settling on final jury instructions (*see, for example,* online appendix);

- drafting brief, well-organized instructions using clear and plain language to maximize jury comprehension (for guidelines, *see* online appendix); and

- preparing special verdict forms and considering whether to use seriatim verdicts (where the jury decides one issue at a time), general verdicts with interrogatories, or special verdicts (*see* Fed. R. Civ. P. 49).

When discussing juror-related issues during the final pretrial conference, you can probe to determine if larger juror panels must be summoned for voir dire owing to the nature of the case or its complexity. Special precautions may be necessary to qualify a larger number of expected panelists. If many prospective jurors are likely to be ineligible or lengthy voir dire may be necessary, juror questionnaires can be mailed to the venire in advance with the assistance of the clerk's office.[154] Whether the questionnaires are completed and returned in advance or completed at the courthouse, sufficient time needs to be allowed for their review and screening by counsel before voir dire.[155]

Special verdicts and interrogatories can be useful devices to reduce the risk of having to retry the entire case. You can, with counsel, make the initial determination that complex issues raised and addressed in the proposed instructions lend themselves to special verdicts. Such verdicts also make possible alternative outcomes in cases in which the law is not settled or the law has changed but its retroactive application is in doubt. Because the preparation of special verdicts and interrogatories requires care to avoid inconsistencies or conflicts, however, you should obtain the attorneys' approval as to form.[156]

## f.   *Scheduling and limiting trial events*

During the final pretrial conference, you should discuss the trial schedule, any time limits on particular trial events (such as opening statements), and the total trial time. Scheduling trial events and limiting trial time through consultation

---

154. For concerns about the prejudicial effect of written questionnaires, *see supra* footnote 152.

155. The juror questionnaire form has become automated and is submitted in advance of trial in many courts using the Juror Management System software.

156. *See MCL 4th*, *supra* note 22, § 11.633.

with counsel are exercises of authority well within the traditional discretion of the trial judge.[157] Counsel should be allowed to estimate, and you can subsequently hone and accede to, the time necessary for each major trial event from opening statements through closing arguments. In addition, the scheduling and timing of many other subevents can come into play.

*Consider* the following for discussion:

- the overall schedule for the trial and for each trial day;
- the length, scope, and content of opening statements;
- the number of hours each side may have for examination and cross-examination;
- the order of cross-examination and designation of cross-examiners in multi-party cases;
- the length, scope, and content of closing arguments; and
- the order of final arguments and jury instructions (*see* Fed. R. Civ. P. 51).

Setting time limits requires careful consideration of the views of counsel (who know the case), the allocation of burdens among the parties, and how the respective cases will be presented (e.g., one side may depend on cross-examination of the opponent's witnesses to present much of its case). Naturally, this should be done in full consultation with counsel.

As part of the final preconference filings, or at the conference, you may ask counsel to estimate the total time they need for trial. Taking that figure into consideration, some judges allocate a total amount of time to each side (e.g., 6 hours) for witness examination (whether direct, cross, re-direct, or re-cross). Other judges set time limits for specific parts of the trial process (e.g., opening statements, direct examination, etc.).

---

157. Fed. R. Civ. P. 16(c)(2)(O) (trial time limits are a proper topic for pretrial conferences); Fed. R. Evid. 403, 611; *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002); *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (citing *Gen. Signal v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1508–9 (9th Cir. 1995)); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994), *cert. denied*, 513 U.S. 1014 (1994); *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1408 (7th Cir. 1991).

## 4.  The final pretrial order

After the final pretrial conference, you should issue a final pretrial order setting forth the actions and rulings made during the conference.[158] Particularly, the order should include:

- the trial dates and schedule;
- the contested issues of fact and law;
- a list of witnesses who will or may be called;
- exhibits that are admitted;
- rulings on motions in limine; and
- objections or pending motions held over for trial.

After you issue the final pretrial order, no deviation or modification will be permitted except "to prevent manifest injustice."[159]

If the parties submitted a joint proposed final pretrial order, you may modify it to reflect the actions taken during the conference. Alternatively, you may dictate the order on the record at the end of the conference, or you may direct counsel to prepare it on the basis of the record of the conference. For sample final pretrial orders, *see* online appendix.

# D.  Trial

## 1.  Jury trials

### *a.  Techniques for trial management*

The lawyers, not the judge, try the case. Nevertheless, there is much you can do to improve the quality of the trial and reduce its length and cost.

*Consider*:

- conducting short daily conferences with counsel to identify upcoming witnesses and exhibits, to anticipate problems (e.g., objections to evidence, witness unavailability, or other potential causes of interruption or delay), and to assess the general progress of the case;[160]

---

158.  *See Benchbook*, *supra* note 19, § 6.01(E).

159.  Fed. R. Civ. P. 16(e). *See also MCL 4th*, *supra* note 22, § 11.67.

160.  *See id.*, §§ 12.13, 12.23.

- avoiding unnecessary proofs by narrowing disputes and encouraging stipulations to matters;

- minimizing or avoiding sidebar conferences, arguments, and other proceedings that disrupt the flow of the trial;

- before trial starts, requiring the parties to provide the court reporter with a joint list of names, places, and uncommon terms or acronyms that are likely to come up during testimony;

- discussing with counsel how requests from the jury to replay video or audio evidence will be handled (i.e., if the evidence will be replayed and how); and

- having a tutorial for the jury or the judge before the trial begins, conducted by a neutral expert or experts chosen by the parties, to explain fundamentals of complex scientific or technical matters, and to do so in lay terms, if possible.

You should let counsel know in advance the procedures you use for conducting voir dire and exercising challenges. Because lawyers tend to attach more importance to voir dire than judges, you should consider allowing counsel a reasonable but limited time to supplement judge-conducted voir dire. You should also consider whether to refer to prospective jurors during the voir dire process by name or by assigning numbers. The Judicial Conference has advised that judges should inform jurors that they may approach the bench to share personal information in an on-the-record, in camera conference with the attorneys. Furthermore, it has recommended that judges make efforts to limit references to names of potential jurors on the record by assigning and using numbers.[161]

Over time, you may develop standard language or a "script" for key parts of a jury trial, such as administering jury admonitions, explaining the voir dire process, announcing the rule of exclusion of witnesses and the return of verdict, and instructing a deadlocked jury. *See* online appendix for an example.

## b. *Assisting the jury during trial*

Sound trial management will improve jurors' performance, promote juror satisfaction with their service, and enhance the court's public image. In conducting

---

161.  *Guide to Judiciary Policy*, vol. 10, § 330.20(c)(2).

the trial, you should ensure that jurors are treated as important participants in the trial and assist them in carrying out their functions.[162]

*Consider*:

- giving preliminary instructions identifying the sequential stages of a trial and providing a neutral statement of the issues (*see* online appendix);[163]

- instructing jurors on the use of social media during trial (*see* online appendix);[164]

- permitting jurors to take notes;[165]

- permitting jurors to ask questions (in writing, submitted through the judge) when appropriate, under adequate safeguards;[166]

- discouraging or delaying sidebars until the next recess whenever possible;

- encouraging parties to stipulate to the use of techniques to enhance jury comprehension,[167] such as:

  ◦ jury notebooks listing witnesses and containing critical exhibits, glossaries, etc.;

  ◦ courtroom technology (e.g., using computers and video to display evidence to the jury);[168]

  ◦ pictures of witnesses or evidence;

  ◦ back-to-back expert testimony to facilitate clarification of the extent and basis of their disagreement;

---

162. The Federal Judicial Center has developed a petit jury orientation video, Called to Serve, available on the FJC website, which explains to potential jurors why their service is important and what they should anticipate. The video also includes guidance on the use of social media by jurors.

163. The Third, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits have developed model or pattern civil jury instructions for district courts, including preliminary instructions on the trial process. *See also MCL 4th*, *supra* note 22, § 12.43.

164. *See Jurors' Use of Social Media During Trials and Deliberations: A Report to the Judicial Conference Committee on Court Administration and Case Management* (Fed. Judicial Ctr. 2011); Social Media and Jury Duty (Fed. Judicial Ctr. 2015).

165. For a discussion about juror note taking, *see MCL 4th*, *supra* note 22, § 12.421. *See also* S. Arthur, Federal Trial Handbook Civil § 20:14 (4th ed. 2018).

166. *See, e.g., U.S. v. Brown*, 857 F.3d 334, 340–41 (6th Cir. 2017) (noting that judges have discretion to permit juror questions if they take certain precautionary measures); *U.S. v. Rawlings*, 522 F.3d 403, 407–09 (D.C. Cir. 2008) (same). *See also MCL 4th*, *supra* note 22, § 12.423.

167. *See MCL 4th*, *supra* note 22, § 12.31.

168. *See* Natl. Inst. for Trial Advocacy, *Effective Use of Courtroom Technology: A Judge's Guide to Pretrial and Trial* (edited by Fed. Judicial Ctr., 2001). *See also* Technology in the Courtroom (Fed. Judicial Ctr. 2012).

- ◦ narrative written statements or reports for presentation of experts' direct testimony;

- ◦ summaries of exhibits;

- ◦ the use of plain English by lawyers and witnesses;

- ◦ in more lengthy or complex cases, interim summations (or supplemental opening statements) by counsel and interim explanations of legal principles (with counsel comment or objection) to prepare jurors for closing instructions;[169]

- giving jurors a written copy of the jury instructions;[170]

- determining whether to instruct jurors before or after closing arguments (*see* Fed. R. Civ. P. 51(b));[171] and

- permitting reasonable read-backs of trial testimony when requested by the jury during deliberations.

The comfort of sitting jurors affects their performance, and there are ways you can easily enhance their comfort. You should, for example, avoid calling jurors prior to the time they are to sit, explain any delays, and observe break times, recesses, and adjournments. You can also reinforce the importance of jurors' service by thanking them for their time and sacrifice at the end of each trial day and when you dismiss them at the end of trial. And you can gain valuable insights from exit questionnaires completed by jurors, enabling you to improve your trial management techniques.

In trials with especially troubling testimony and evidence, you may want to make counseling services available to jurors through the Federal Occupational Health Employee Assistance Program (EAP). The services are free of charge and a juror's participation is voluntary and confidential. Information about this service and handouts that can be given to jurors are available on the "Jury Operations - Counseling Services" page on JNet. Note that counseling services through the EAP can be provided only for *as long as the jurors are serving*; these services are not available once the jurors have been dismissed from service. Accordingly, in cases where you want to authorize counseling services at the conclusion of trial, you should enter an order near the end of the trial extending the jurors' term

---

169. *See* MCL 4th, *supra* note 22, § 12.43.

170. When giving the charge to the jury, some judges make an audio recording and provide it to the jury, along with a written copy of the instructions so that jurors can review the instructions in writing or aurally.

171. Many judges believe that the jury can make better use of closing arguments after having first heard the judge's instructions.

of service "for administrative purposes" for a period long enough to allow individual jurors to obtain counseling. A sample order and a sample letter to jurors informing them that the trial judge has authorized counseling services are also available on the Counseling Services JNet page.

In high-profile trials, especially when partial sequestration is necessary, special arrangements may be necessary to protect jurors from media interference. For a discussion of such considerations, *see infra* Chapter 7, Section C.4.

You may receive requests from counsel to speak to the jurors after the verdict. While such contacts may be prohibited for cause (e.g., post-trial motions), they may also be controlled or denied entirely by local rule. If such contacts are neither controlled nor prohibited, your decision whether to permit them should be guided by the jurors' comfort and the circumstances of the case; you should also advise jurors that they may refuse any requests.

## 2. Bench trials

### *a. Techniques for trial management*

The absence of a jury obviates some of the requirements and pretrial filings discussed above. Nonetheless, ensuring that counsel is adequately prepared and that the trial is fair and efficient remain as priorities. Holding a brief final pretrial conference may still be helpful to discuss your requirements and procedures for bench trials with counsel and to address evidentiary issues. Your case management guidelines or order setting the final pretrial conference should instruct the parties how to prepare for the conference and provide the requirements and deadlines for pre-conference submissions. *See* online appendix for examples of guidelines for bench trials.

In addition, *consider* the following approaches:

- Having the parties exchange and submit the direct testimony of witnesses under their control in advance and in narrative statement form (*see* Fed. R. Civ. P. 43; for examples of instructions regarding submission of direct testimony in writing, *see* online appendix.[172]

- Imposing limits on testimonies and exhibits to avoid creating an excessively long record that will make deciding more difficult.

- Adopting trial procedures to ensure that you understand the evidence as it comes in rather than leaving it to be studied after the case is submitted.

---

172. *See MCL 4th*, *supra* note 22, § 12.333 (citing Fed. R. Civ. P. 26(a)(3)(B), 32(c)).

> Such procedures include asking questions of witnesses to enhance under-
> standing, having opposing witnesses appear in court at the same time for
> back-to-back questioning, and having opposing experts confront each
> other to identify and explain the bases of their differences of opinion.

Although exclusionary rulings are of less importance in bench trials than
in jury trials, receiving evidence into the record indiscriminately may result in a
record that is difficult for you to manage and digest in the decision-making process.

### b.  Deciding the case

Judges may have trouble finding time to decide the case once it is submitted,
but cases become more difficult to decide as they grow cold with the passage of
time.[173] If you do take a case under submission, you should try to issue a written
decision as soon as practicable. Keep in mind that as part of the March 31 and
September 30 CJRA Reports (discussed in *supra* Chapter 4, Section B.1), you must
list any civil bench trial that has been submitted for more than six months and
any civil case pending more than three years after filing.[174] A prompt decision
saves resources, increases satisfaction with the court, and helps avoid listing the
case on your CJRA Report.

*Consider*:

- having counsel submit proposed findings of fact and conclusions of law
  before trial begins, enabling you to accept or reject findings as the trial
  progresses (*see* Fed. R. Civ. P. 52);[175]

- having counsel argue the case immediately following the close of the
  evidence, as in a jury trial, instead of using post-trial briefings;

- if briefing is needed, having briefs submitted before rather than after trial;

- deciding the case, whenever possible, promptly after the closing arguments
  by dictating findings of fact and conclusions of law into the record; and

- adopting your own time standards for reaching decisions as soon as is
  practical.

---

173.  *See id.*, § 12.52.

174.  *See* 28 U.S.C. § 476(a)(2), (3); *see also Guide to Judiciary Policy*, vol. 18, § 540.

175.  The proposed findings of fact and conclusions of law should also be submitted electronically
in a format that allows you to edit them during and after trial. You should, however, avoid wholesale
adoption of a party's proposed findings of fact and ensure, to the extent you adopt certain proposed
findings, that the language sufficiently articulates your independent, decision-making process. *See*
Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* 9C, § 2578 (3d ed. 2019) (dis-
cussing rulings among circuits on use of proposed findings).

Your fact-finding can be greatly aided by using counsel-prepared materials, such as proposed findings of fact and conclusions of law, as well as through trial briefs. Regarding the former, you may find it helpful to require that each finding of fact and conclusion of law be brief, noncontentious, limited to a single assertion, and supported by appropriate citation to either the record or legal authority. Some judges also require that counsel mark the opponent's proposals to indicate which ones are contested and which are not (for an example of this approach, *see* online appendix). At the end of trial, you may consider allowing the parties a brief period to submit revised findings of fact and conclusions of law to conform to the evidence presented during the trial.

# 7

# Special Considerations by Case Type

| | | |
|---|---|---:|
| A. | Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 114 |
| B. | Mass tort, class action, and other complex cases . . . . . . . . . . . . | 114 |
| | 1. Complex cases generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 114 |
| | 2. Mass tort cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 117 |
| | 3. Class actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 117 |
| C. | High-profile cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 117 |
| | 1. Making a plan and assigning responsibilities. . . . . . . . . . . | 118 |
| | 2. Planning for the presence of the media. . . . . . . . . . . . . . . . | 120 |
| | 3. Interacting with the media . . . . . . . . . . . . . . . . . . . . . . . . . . | 121 |
| | a. Court interactions with the media . . . . . . . . . . . . . . . | 121 |
| | b. Attorney interactions with the media . . . . . . . . . . . . . | 122 |
| | 4. Protecting the jurors, facilitating their attention, | |
| | and providing for their comfort . . . . . . . . . . . . . . . . . . . . . . | 122 |
| | 5. Planning for security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 124 |
| | 6. Managing the courtroom. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 125 |
| | 7. Managing the case and the rest of your docket . . . . . . . . . . | 126 |
| | 8. Social media manipulation and cyberattacks . . . . . . . . . . . | 126 |
| D. | Pro se cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 127 |
| | 1. Early Screening . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 128 |
| | a. Prisoner cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 128 |
| | b. In forma pauperis cases . . . . . . . . . . . . . . . . . . . . . . . . | 130 |
| | i. Prisoner IFP cases . . . . . . . . . . . . . . . . . . . . . . . . . | 130 |
| | ii. Nonprisoner IFP cases . . . . . . . . . . . . . . . . . . . . . | 130 |
| | 2. Securing counsel for pro se litigants . . . . . . . . . . . . . . . . . . . | 131 |
| | 3. Scheduling and monitoring the pro se case . . . . . . . . . . . . . | 132 |
| | a. Prisoner cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 133 |
| | b. Nonprisoner cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 134 |
| | 4. Holding settlement discussions and conducting the trial . . | 135 |
| | 5. Resources for pro se litigants . . . . . . . . . . . . . . . . . . . . . . . . | 137 |
| E. | Bankruptcy appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 137 |
| | 1. District court jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . | 138 |

|   | 2. | Appeal procedure | 139 |
|   | 3. | Initial jurisdictional issues to examine | 140 |
|   | 4. | Standards of review | 141 |
|   | 5. | Withdrawal of the reference | 141 |
| F. | | Patent Cases. | 142 |
| G. | | International child abduction cases under the Hague Convention. | 142 |

## A. Overview

Although most of your cases will be of the routine sort that are the subject of this manual, you will undoubtedly be assigned cases that involve areas of law you are less familiar with or that demand more time and resources than the typical civil case. In this chapter we discuss some of these types of cases, including class actions, high-profile cases, pro se cases, bankruptcy appeals, patent cases, and international child abduction cases under the Hague Convention. This section offers some basic case management guidance, with the assumption that you will turn to other readily-available sources such as the *MCL 4th* for more information.[176]

## B. Mass tort, class action, and other complex cases

Management of complex cases often requires additional procedures and special techniques to ensure that the case proceeds efficiently toward a just resolution without causing undue disruption to your docket and court operations generally.

## 1. Complex cases generally

Given that factors other than subject matter may determine a case's complexity, how can you distinguish ordinary cases from complex cases?

*Consider* some of the signs that a case may require more intensive case management:

- *Number of parties*. A complaint naming numerous plaintiffs or defendants, or numerous notices of appearances filed by counsel, may be early indicators that the case is complex and may require some of the case management techniques discussed in the *MCL 4th*, such as designating lead/liaison

---

176.  *See MCL 4th*, *supra* note 22.

counsel, coordinating motions and responses, coordinating discovery, and establishing special trial procedures for multi-party cases.[177]

- *Number of similar or related cases*. The parties' Rule 26(f) report or case management statement may reveal other cases involving the same or similar transactions and legal claims that are pending in your court or other federal or state courts.[178] While judges may not be aware that a number of similar cases have been filed in a district, the clerk of court and clerk's office staff are often attuned to sudden trends or upticks in case filings (e.g., a large number of cases filed against a certain defendant). Sometimes, as with mass tort litigation, different attorneys may represent individual plaintiffs in different lawsuits and may not initially be aware of the full scope of the litigation. The same defendants, though, will be named in most related cases, and the defendants' attorneys can often give precise information about the number and location of similar cases. Some judges routinely ask counsel to identify all similar cases, even though such cases may not be technically "related to" each other as that term is used in local rules.

- *Mass-produced or mass-marketed products*. A claim alleging harm from a mass-produced product or a widely-marketed pharmaceutical product or medical device should alert you that similar cases could be or may have already been filed.

- *Competing experts*. A leading indicator of case complexity is that the parties have opposing experts who propose to testify about a central issue in the case, such as the capacity of a chemical or pharmaceutical product to cause the alleged injuries.[179]

- *Complex subject matter*. The subject matter of a claim may be inherently difficult. Patent law cases, for example, often involve disputes about highly technical and complex matters.

- *"Maturity" of the litigation*. If the dangers of the product in a product liability suit are clear from prior litigation (as with asbestos), past decisional history may diminish much of the case's complexity. If, however, a case involves liability for a product that has not been found in court to cause the type of alleged injury, you can assume that litigation over the scientific basis for causation will increase the case complexity.

---

177. *Id.*, §§ 10.22 (coordinating counsel), 11.32 (motions), 11.4 (managing discovery), 12.22 (trial procedures).

178. For a discussion of Rule 26 reports and case management statements, *see supra* Chapter 2, Section C.7.

179. Management of cases with opposing experts is discussed *supra* Chapter 3, Section H and Chapter 6, Section C.3.b.

- *Class action allegations*. Managing a putative class action imposes additional responsibilities on a judge. You may need to control the parties' and their attorneys' communications with the putative class, designate counsel, rule on class certification, rule on the fairness of any proposed settlement or dismissal, and provide for the administration of an approved settlement.[180]

- *Volume of discovery and evidence*. Cases that revolve around standard transactions, such as the use of a form contract or a public forecast of corporate earnings, will generally involve less evidence and management than cases arising from a host of individualized transactions, such as claims of product liability and personal injury arising from the manufacture of an automobile. Cases involving extensive electronic discovery may also signal a need for greater judicial management.[181]

If you conclude that the case before you is complex, consult the appropriate section of the *MCL 4th* for the specific type of case. Additional resources on specific topics include guidance for judges and court clerks handling multi-district litigation;[182] a pocket guide on managing patent litigation and several other resources on management of intellectual property cases;[183] a report on two judges' use of expert science panels in complex cases involving scientific evidence;[184] and a pocket guide on the use of science tutorials to help judges understand relevant science and technology central to a case.[185] For cases involving complex scientific evidence, consult the *Reference Manual on Scientific Evidence, Third*.[186]

---

180. *See MCL 4th*, *supra* note 22, § 21.0.

181. *See Managing Discovery of Electronic Information*, *supra* note 28.

182. *Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges* (Judicial Panel on Multidistrict Litig. (JPML) & Fed. Judicial Ctr. 2d ed. 2014) and *Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Court Clerks* (JPML & Fed. Judicial Ctr. 2d ed. 2014).

183. *See* Complex Litigation Committee, American College of Trial Lawyers, *Anatomy of a Patent Case* (Fed. Judicial Ctr. 3d ed. 2016); Peter S. Menell, et al., *Patent Case Management Judicial Guide* (Fed. Judicial Ctr., 3d ed. 2016); Peter S. Mennell, et al., *Patent Mediation Guide* (Fed. Judicial Ctr. 2019); *and* Jane C. Ginsburg & Robert A. Gorman, Copyright Law (Thomson Reuters 2012). The FJC also maintains a Patent Law Resources website, which compiles materials and resources on the topic.

184. Laural L. Hooper, Joe S. Cecil, and Thomas E. Willging, Neutral Science Panels: Two Examples of Panels of Court-Appointed Experts in the Breast Implants Product Liability Litigation (Fed. Judicial Ctr. 2001).

185. *Tutorials on Science and Technology* (Fed. Judicial Ctr. 2018).

186. *Reference Manual on Scientific Evidence*, *supra* note 54.

## 2.  Mass tort cases

Mass tort claims will call for you to make a number of discretionary decisions at the outset of the litigation about whether to aggregate the individual claims for pretrial or trial purposes. These decisions will affect the direction of the litigation and may increase its complexity. You should consult the *MCL 4th* and look for the characteristics described above, even for the seemingly simple and straightforward act of consolidating cases within your district. As an alternative to aggregating similar claims, you should consider whether pursuing one or more test cases—or a sample of cases—would be the most efficient way to proceed.[187]

## 3.  Class actions

Management of class actions should be governed by principles discussed in the *MCL 4th*. Prompt consultation of the *MCL 4th* will aid you in making the critical decision about when to rule on the certification issues and in identifying actions that might be considered before ruling on a motion to certify a class, such as whether to allow preliminary discovery on class issues. Chapter 10-C of the *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* (National Edition)[188] also provides a useful overview of the procedural and substantive issues that arise in a class action. The pocket guide *Managing Class Action Litigation* offers an additional resource for managing these cases.[189]

## C.  High-profile cases

When you are presiding over a case that has attracted heightened public or media interest, you may face a number of management problems that will require you to take early action and be in constant communication and coordination with the clerk's office. Anticipating these management issues and having a plan in place to address them can help ensure that the case proceeds smoothly, with minimal external disruptions. The Administrative Office has developed a high-profile cases webpage on JNet with information and resources, including tips for developing a media plan, sample courtroom decorum orders, and sample media guidelines

---

187. For a discussion of whether, when, and how to aggregate mass tort cases, *see* Thomas E. Willging, *Mass Torts Problems and Proposals: A Report to the Mass Torts Working Group*, 187 F.R.D. 328, 348–377 (1999).

188. *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* (Nat'l ed.), ch. 10-C (Thompson 2019).

189. Barbara J. Rothstein and Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* (Fed. Judicial Ctr. 3d ed. 2010).

used in recent high-profile trials. You and your clerk of court should review these materials and discuss how to best handle media and security issues throughout the case. The Office of Public Affairs at the Administrative Office is also available to assist or answer questions about media-related issues.[190] In addition to these resources, the National Center for State Courts has developed a webpage entitled, "High-Profile Cases in the 21st Century," that offers best practices, checklists, and other resources to assist both judges and court staff with media, security, and public access issues.

The following discussion aims to capture the central issues you may face when presiding over a high-profile case. You should note that the issues and approaches are applicable to both high-profile civil and criminal cases.

## 1.   Making a plan and assigning responsibilities

Your primary goal in preparing for a high-profile case will be to protect the integrity of the judicial process at every stage. To realize that goal you will need to:

- protect yourself, the jurors, and court staff from improper influences;
- ensure the security of parties, witnesses, jurors, and other trial participants;
- give the public reasonable access to the trial as well as events and materials that would be available to the public in other cases;
- maintain efficiency of the pretrial and trial processes;
- provide for the jurors' comfort, especially if they are sequestered; and
- minimize disruption of other court functions.

One of the greatest challenges of a high-profile case is simply the sheer number of people, beyond the court and parties, that may be involved. You will be very dependent on court staff for management of these people and the activity the case generates. Thus, you should include clerk's office staff early in planning for the case, keep them informed as the case progresses, and give them discretion over their areas of expertise.

To use staff effectively, you and your clerk of court (or other designated coordinator for the case) should begin by identifying the specific requirements of the case and developing a plan to address them.

---

190.  The Office of Public Affairs can be reached at (202) 502–2600.

*Consider* including the following requirements in the plan:

- security;
- media relations;
- crowd control inside and outside the courtroom and courthouse;
- inquiries by the public;
- management of case documents and their availability to the public and media;
- jury selection;
- management of the jurors; and
- attention to the needs of court staff.

In preparing the plan, *consider*:

- identifying who will be responsible for each of the requirements listed above;
- preparing a description of the duties and responsibilities of each person;
- clarifying where responsibilities overlap and how the staff involved should proceed if conflict or uncertainty arises; and
- meeting with staff at the outset to go over their responsibilities and meeting as needed for updates.

Your goal in taking these steps is not only to ensure there are no gaps in managing the events that swirl around a high-profile case, but also to foster cooperation and minimize conflict and confusion. If possible, you should build your list of tasks and responsibilities using the court's existing organizational structure rather than disrupting its normal procedures and staff assignments.

You should ensure that the court's planning involves everyone who may have an interest in the case or whose help you may need in managing the case. For example, the court is in control of the physical space in the courthouse and a certain boundary outside of it. The U.S. Marshals and contract court security officers will be part of your planning for security in those areas. Beyond that, other authorities will have responsibility and your planning may need to include local entities as well.

Perhaps your most valuable resources for guidance about managing a high-profile case are the judges and staff who have already handled such cases. For guidance on how to handle various aspects of planning for a high-profile case, contact the Administrative Office's Office of Public Affairs at (202) 502-2600.

## 2.  Planning for the presence of the media

As soon as you are assigned a high-profile case, you should make plans for managing the media. The most intense visibility and scrutiny will occur if the case goes to trial, but interest can spike at other times, too, such as when you issue important rulings and hold key hearings. You and your clerk of court should discuss designating a primary media liaison to serve as point of contact for communicating with the media. If your court does not already have a clerk's office media policy in place, you and your clerk should discuss how the media will be provided information about key proceedings and accommodated in the courtroom or courthouse during proceedings.[191]

*Consider* the following in your planning:

- Which member of the court's staff will handle inquiries from the media? What instructions should that person, and other staff, be given for inter-actions with the media?

- How will the court determine who is a legitimate member of the media (e.g., through applications, background checks, passes)? *See* the "District Court High-Profile Case Resources" link on the high-profile cases JNet page for sample media credential application and registration forms.

- What arrangements must be made for routine updates of schedules and case status (e.g., postings on court website under "cases of interest,"[192] recorded phone message, or written notice posted at designated location in the courthouse)?

- What arrangements must be made for providing the media with copies of case documents, exhibits, and rulings (e.g., ask parties to file two sets of papers so that one can be provided to the media; post all written documents, including rulings, on a case-specific site on the court's website)?

- What will the media be permitted to know about the jury?

- Is the courtroom large enough, or will you need an overflow room with closed-circuit television?

- Is the courtroom located in a place where the presence of the media will interfere with other court business as little as possible?

---

191. For a list of topics to consider during the planning process, *see* "25 Questions: How to Deal with the Media in a High Profile Case," available on JNet.

192. *See* online appendix for examples.

- How many seats in the courtroom will be allocated to the media and by what procedure will they be allocated (e.g., one pass per media organization, permanent or daily passes, forfeiture of a seat if it is not occupied within ten minutes before trial starts)?

- Where will sketch artists be seated to provide an unobstructed view? Will they be permitted to sketch victims, children, or the jury?

- Does your court have a policy on portable communication devices (e.g., smart phones, laptops, tablets, etc.) in the courthouse or courtroom? If not, consider whether you need to restrict use of portable electronic devices during hearings or trial.[193]

- Keep in mind that Judicial Conference policy does not permit the use of television cameras or other recording devices in the courtroom.[194]

## 3. Interacting with the media

### *a. Court interactions with the media*

It is essential to maintain clear and reliable channels of communication between the court and the media. At the outset of a high-profile case, you will want to take steps to gain the media's cooperation and goodwill. Above all, you will want to ensure all media members are treated fairly and have reasonable access to information.

*Consider:*

- establishing clear rules about media conduct and procedures for access to information;

- providing all essential information the media need, including schedules for hearings and the trial;

- asking the media to designate a limited number of spokespersons or liaisons for bringing media inquiries to the court so that communications are more efficient; and

- emphasizing that you are in control of the case and courtroom and that you expect the media's cooperation and observance of your ground rules.

---

193. *Guide to Judiciary Policy*, vol. 10, ch. 5.

194. *Guide to Judiciary Policy*, vol. 10, ch. 4.

Civil Litigation Management Manual

The Administrative Office has developed a Journalist's Guide to the Federal Courts, available on the uscourts.gov webpage, which provides general information on media access to court proceedings, obtaining court documents on PACER, and the key events in criminal and civil proceedings. You should direct media to that webpage for basic information.

### b.  Attorney interactions with the media

One unfortunate but real possibility in a high-profile case is that the attorneys will use the media to influence the public (and potential jurors) of their view of the case. If at all possible, you should avoid imposing gag orders on the attorneys, as such orders can heighten animosity and be difficult and time-consuming to enforce. A much better approach is to meet with the attorneys early in the case and communicate your expectations for their conduct. You can ask for their agreement to observe limits on what is said to the media, and you should remind them of any disciplinary rules you intend to apply. If the attorneys are unwilling to agree or are likely to violate the agreement, it may be appropriate to impose a gag order.

## 4.  Protecting the jurors, facilitating their attention, and providing for their comfort

In a high-profile case, there can be great public and media interest in the persons who are selected for the jury. There can also be much written about the case that could affect the jurors and their views of the case, the parties, and the evidence. One of your key responsibilities in protecting the integrity of the trial is protecting the jurors from improper influences. If the trial is protracted or the media and public are very aggressive, you may also need to give greater attention than usual to the jurors' concentration on the case, their personal comfort, and their sense of safety.

*Consider*:

- withholding jurors' addresses from the public and media;

- during voir dire, asking prospective jurors whether the presence of the media makes them uncomfortable, will distract them, or will prevent them from deciding the case impartially;

- inquiring at voir dire and periodically thereafter whether any juror has been approached by the media or publishers with offers to purchase his or her story and, if so, determining whether this may bias the juror or affect how the juror listens to the evidence;

- ensuring that jurors can enter and leave the courthouse safely and without interaction with the media or public;

- if the jurors must walk through or eat in public spaces, cordoning off space for them and making sure they are accompanied by a member of the court staff;

- instructing the jurors daily not to watch television coverage of the trial, read press accounts or social media posts, or talk with anyone about the trial;

- providing the jurors daily newspapers with articles about the trial removed and directing them not to read unredacted versions;

- keeping the jurors well informed about the daily schedule (e.g., when breaks will be taken) and about the overall trial schedule (e.g., approximately how much longer the case will continue);

- permitting the jurors to use such aids as note taking and notebooks (prepared by the court or parties under your supervision and containing, for example, lists and pictures of witnesses and copies of key documents or evidence);[195]

- instructing the media that they are strictly forbidden from interviewing jurors during the trial;

- advising the jurors that the decision whether to be interviewed at the end of the trial is theirs alone and asking them to be sensitive to the privacy of fellow jurors if they do choose to speak with the media;

- determining how the jurors will be dismissed when the trial ends so that they are not mobbed by the parties, public, or media and determining whether and how they will meet the media and the parties' attorneys;

- meeting informally with the jurors after the trial to thank them, answer their questions, and explore whether they have any remaining needs; and

- determining what post-trial arrangements can be made, if needed, to deal with any psychological trauma experienced by the jurors.

Your planning and thoughtful consideration of the jurors should be evident from voir dire through post-trial events. The more rapport you can develop with the jurors, the more likely they will be to alert you to any problems or interference

---

195. As noted in Chapter 6, Section D.1.b, if the parties stipulate to the use of jury notebooks, you may wish to preadmit any exhibits to be included therein.

they experience. Make sure, however, that you plan for the extra time it will take to select the jurors and ensure their comfort and security in a high-profile case.

## 5. Planning for security

Like all other aspects of managing a high-profile case, you should make plans early in the case for meeting its security requirements. The U.S. Marshals may come to you with a plan already worked out, which you should review and approve when you are satisfied with it. Any entities likely to be involved in security, such as the U.S. Marshals and local authorities, should be consulted, and each entity's responsibilities should be clearly outlined.

When reviewing the U.S. Marshals plan, *consider* asking the following questions:

- Is security needed only to control crowds, or could there be threats to the safety of participants in the case, including yourself, court staff, and witnesses?

- Is the case of local or national interest?

- Is security needed both inside and outside the courthouse?

- Are demonstrations or protests likely?

- To what extent might certain proposed security measures unduly prejudice a party to the case?

Answers to these questions will help your security coordinator determine the number, type, and allocation of security personnel needed.

Some additional steps you should *consider* are:

- ensuring the courtroom is large enough to accommodate additional security personnel if higher levels of security are needed for the jurors, witnesses, or yourself;

- ensuring security is provided for exhibits during trial and when court is not in session;

- conferring with the media to ensure that media equipment will not compromise security, safety, or Judicial Conference policy;

- determining what kind of security, if any, is needed outside the courthouse (e.g., roadblocks, a ban on parking, outside guards, or surveillance) and conferring with local authorities as needed;

- determining who should be permitted access to the courthouse, when (e.g., evenings), and to what parts of the courthouse;

- if access is restricted to certain parts of the courthouse, making arrangements for barriers, signs, and so forth;

- determining how the media, the public, the parties, witnesses, jurors, and court staff will enter the courthouse and how they will be screened for entry;

- providing security (e.g., escorts) for the jurors if they must walk through public areas or must otherwise be protected; and

- trying to anticipate whether additional security will be needed (in the courtroom and/or outside the courthouse) when the verdict is announced.

## 6.  Managing the courtroom

A high-profile trial will bring the media and the public to your court along with attitudes or agendas that you may not have encountered in other cases. You should communicate your expectations for their conduct clearly. You might want to set out your rules and expectations in a decorum order.

*Consider* including the following in your decorum order:

- how persons will be screened for entry into the courtroom (e.g., color-coded, photo-ID passes);

- the time seating will begin each morning and afternoon;

- seating arrangements in the courtroom for the media, the public, and those involved in the case who need reserved seating;

- entry and reentry rules while court is in session;

- restrictions on portable electronic devices, including smart phones (if your court has a portable communication devices policy, consider whether you need to impose more stringent procedures for high-profile cases);

- the appropriate location for interviews (never in the courtroom);

- media equipment permitted in the courtroom (as noted earlier, cameras and recording devices are prohibited in district courts by Judicial Conference policy[196]);

- how questions from the media and public will be handled;

---

196. *Guide to Judiciary Policy*, vol. 10, ch. 4.

- how the media and public can obtain copies of exhibits and other case documents; and

- a clear prohibition against communicating with jurors during the trial.

## 7.  Managing the case and the rest of your docket

Because the spotlight will be on you and the court during the litigation of a high-profile case, you should use all of your most effective case management skills with even greater consistency and dedication than you usually do. As emphasized in earlier chapters, you should consult with the attorneys to set a realistic schedule for the case, and then hold both the attorneys and yourself to that schedule.

Whether you will need assistance with the rest of your docket will depend on the nature of the high-profile case. If it is not a complex case and the media and public interest focus mainly on the trial, you may be able to manage your other cases as well. But if the high-profile case is both complex and intensely followed even in its earliest stages, you may find you need help keeping your other cases— particularly your criminal cases—on schedule. You should speak with your chief judge about your needs, and if necessary, request authorization for a temporary emergency law clerk from your circuit's judicial council.[197]

## 8.  Social media manipulation and cyberattacks

A high-profile case may attract the attention of foreign state actors or others who, seizing on the heightened public interest, can use targeted advertising, fake social media accounts, or software-based bots to post content aimed at manipulating public opinion or undermining trust in the judiciary. While your ability to respond to these sorts of coordinated efforts may be limited, you should be mindful of the possible impact on potential or sitting jurors. The Court Administration and Case Management Committee has developed model jury instructions directing jurors that they cannot use social media to communicate or learn about their case during the trial. The instructions include language to be used during voir dire, at the start of trial, at the close of each trial day, at the next day's restarting of the trial, and as part of your final jury instructions.

Keep in mind that any social media post that threatens you, court staff, witnesses, or parties to the case should be reported to the U.S. Marshals or its Judiciary Security Inspector.

---

197. *Guide to Judiciary Policy*, vol. 12, §§ 560.60.30, 615.50.20.

There have also been incidents of cyberattacks on courts where high-profile cases are pending. If you are presiding over a case that could make your court the target of a cyberattack, your clerk of court should contact the Administrative Office for possible assistance with heightened security services. In particular, the Administrative Office may be able to provide your court with an "enhanced watch list" service, which evaluates existing court security protocols and provides enhanced monitoring services for internet traffic in and out of the court.

## D.  Pro se cases

In many districts, lawsuits with unrepresented, or "pro se," litigants comprise a significant portion of the court's civil caseload. Most pro se litigants are plaintiffs; many, but not all, are also prisoners.[198] Cases involving pro se litigants present special challenges for several reasons, not the least of which is your obligation to ensure equal justice for litigants who may have little understanding of legal procedures or the law. At each stage in the case, you may need to take actions not required in cases in which all parties are represented by counsel.

The burden for managing pro se cases falls heavily on court staff, as well as on the judge. Pro se litigants tend to have many needs and questions and are likely to press court staff for assistance. Court staff are usually acutely aware that they should be helpful but must not give legal advice to any litigant. At the same time, there are many actions court staff, especially pro se law clerks, can and must do.

Techniques for managing pro se litigation vary from case to case and may be affected by special procedures in your district. Your approach to managing pro se cases will further turn on two key considerations: (1) whether the case involves a pro se plaintiff who is also a prisoner, as that term is defined in the Prison Litigation Reform Act (PLRA);[199] and (2) whether a pro se plaintiff is seeking to proceed in forma pauperis (IFP). "Assistance to Pro Se Litigants in U.S. District Courts: A Report on Surveys of Clerks of Court and Chief Judges" can be a valuable resource for courts in this regard, as it sets forth the various differences between nonprisoner and prisoner pro se litigants and highlights the many issues courts face in managing cases involving pro se litigants.

---

198.  The types of actions filed by pro se prisoners typically include habeas corpus actions under 28 U.S.C. §§ 2241, 2254, or 2255, civil rights complaints under § 1983, *Bivens* actions, and actions under the Federal Tort Claims Act.

199.  Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, April 26, 1996, 110 Stat. 1321, Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996.

## 1.  Early Screening

You and the parties may save considerable time later if you take a few minutes early in the case to start it down an orderly path. *Consider* generally the following approaches for early management of all pro se cases:

- Reviewing the pleadings as soon as they are filed; if pleadings fail to meet technical requirements, informing the parties and giving them an opportunity to cure defects. Actions brought by pro se litigants must be liberally construed, and if the litigant has paid the filing fee, generally may not be dismissed before service unless legally frivolous.

- Checking whether the pro se litigant has previously filed cases in your district.

- Consolidating related cases, such as cases involving similar claims arising in the same institution.

- Checking promptly for threshold issues, such as subject matter jurisdiction, personal jurisdiction, venue, and proper parties.

- Evaluating whether the case is appropriate for appointment of counsel (*see infra* Section D.2).

- Using routine show cause orders to trigger dismissals under the Rules of Civil Procedure if service of the complaint is not effectuated by the prescribed deadline.[200]

### *a.  Prisoner cases*[201]

The PLRA governs many aspects of cases brought by incarcerated parties. In fact, you have a special obligation under the PLRA to screen, before docketing, if feasible, or as soon as practicable after docketing, a civil complaint filed by a prisoner seeking redress from a government entity or officer thereof, or bringing suit with respect to prison conditions under 42 U.S.C. § 1983 or other federal law.[202] On review, you must identify cognizable claims or dismiss all or part of the complaint, if the complaint:

---

200. Remember, however, that if the plaintiff is proceeding in forma pauperis, the court has an obligation to issue and serve all process in the case. *See* 28 U.S.C. § 1915(d).

201. A very helpful manual for staff, as well as for judges, is the *Resource Guide for Managing Prisoner Civil Rights Litigation*, prepared in response to passage of the PLRA. Although the resource guide was published in the mid-1990s, the PLRA has not changed, and the basic advice provided by the *Resource Guide* remains useful.

202. 28 U.S.C. § 1915A(a).

- is "frivolous, malicious, or fails to state a claim upon which relief may be granted;" or

- "seeks monetary relief from a defendant who is immune from such relief."[203]

Dismissal may also be appropriate if:

- it is apparent from the face of the complaint that the prisoner has not exhausted available administrative remedies (42 U.S.C. § 1997e(a));[204]

- the prisoner is alleging "mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act" (42 U.S.C. § 1997e(e)); or

- the prisoner is proceeding in forma pauperis (IFP) and has had three or more actions or appeals in federal courts previously dismissed as frivolous, malicious, or for failing to state a claim upon which relief can be granted, unless the prisoner is in imminent danger of physical injury (28 U.S.C. § 1915(g)).[205]

In prisoner cases, the screening process should also include consideration of whether the claims are really challenges to the prisoner's conviction or sentence, which must be asserted in a habeas corpus petition. In many courts, pro se law clerks conduct an initial screening of prisoner cases and prepare a draft order for the district judge assigned to the case if there is any basis warranting dismissal prior to service or if further action is required by the pro se litigant. Most, but not all, prisoner pro se parties move to proceed IFP. Early screening is often done at the same time the court considers the prisoner's IFP motion, discussed *infra* Section D.1.b.

---

203. *See* 28 U.S.C. § 1915A(a)-(b); 42 U.S.C. § 1997e(c).

204. It is important to note, however, that failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove, and that a prisoner-plaintiff is not required to specifically plead or demonstrate exhaustion in the complaint. *See Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

205. *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) (holding that regardless of whether the dismissal is with prejudice or without prejudice, the dismissal of a prisoner's civil lawsuit, for failure to state a claim, counts as a strike under the PLRA's three-strikes rule); *see also Coleman v. Tollefson*, 135 S. Ct. 1759 (2015) (holding that, at least as to a prisoner's first two dismissals, § 1915(g) does not require an "affirmed dismissal," but focuses on dismissal at the trial court level).

### b. *In forma pauperis cases*

#### i. Prisoner IFP cases

Most, but not all, prisoner plaintiffs also seek to proceed IFP, as they are typically unable to pay the full filing fee upfront. A grant of IFP to a prisoner plaintiff does not relieve them of their obligation to pay the full filing fee. Rather, it relieves them of their obligation to pay the full fee upfront and allows them to make payments toward the balance of the fee over time. Under the PLRA, the court must:

- require a prisoner seeking IFP status to include in an affidavit "a statement of all assets [the] prisoner possesses" and "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ." (28 U.S.C. § 1915(a));

- require prisoners who are granted IFP status to pay the filing fee, by a partial initial payment from funds available and through monthly payments forwarded by the institution based on the balance in the prisoner's account (28 U.S.C. § 1915(b));

- permit prisoners with no assets and no means to pay the filing fee to proceed without prepayment of the initial partial filing fee (28 U.S.C. § 1915(b)(4)); and

- require prisoners against whom judgment is entered to make full payment of any costs ordered (28 U.S.C. § 1915(f)(2)).

Note that a fee collection order is required whether the prisoner has monetary assets or not.

#### ii. Nonprisoner IFP cases[206]

A grant of IFP status allows nonprisoner plaintiffs to proceed without paying the filing fee. Nearly all courts require that nonprisoners support their IFP motions with a financial affidavit or sworn statement attesting to their inability to afford the filing fee. You will need to decide how deeply to probe into a nonprisoner's assertion of indigency, and if you have doubts as to its veracity, you may consider asking for supporting documentation, such as paystubs or tax documents. You

---

206. You may also wish to consult the *Pro Se Case Management for Nonprisoner Civil Litigation*, *supra* note 73, for steps you can take to manage pro se litigation more efficiently and ways to help pro se litigants better navigate the complexities of litigation.

may also wish to consider warning pro se plaintiffs of the potential for fee shifting and other possible costs should they be unsuccessful in their suit.

Much like the prescreening required of prisoner complaints under the PLRA, the complaints of plaintiffs seeking to proceed IFP must be dismissed if, at any time, you determine that:

- the complaint or any portion thereof is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief" (28 U.S.C. § 1915(e)(2)(B)); or

- the IFP plaintiff's allegation of poverty is untrue (28 U.S.C. § 1915(e)(2)(A)).

## 2.  Securing counsel for pro se litigants

Pro se litigants in civil cases have no constitutional right to counsel. The decision whether to appoint counsel in these cases is within your discretion and should be made on a case-by-case basis. The exercise of your discretion should, however, be guided by both statute and case law. Under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel."

Because no public funds are available (except under the Criminal Justice Act, 18 U.S.C. § 3006A, for representation of habeas corpus petitioners), appointment of counsel can present substantial difficulty. Many judges, however, attempt to find counsel for nonfrivolous cases because the need to protect the rights of an unrepresented party places additional burdens on a judge and generally will be better met by counsel. Even if attorneys are unwilling to take full responsibility for litigating a case, they may be willing to advise the plaintiff, or they may be willing to be appointed for a specific limited role, such as to assist the pro se litigant during trial. Sometimes, consolidating related pro se cases can make the litigation of sufficient public interest to attract counsel.

You should take care, nonetheless, to appoint counsel only when a case warrants it. A high percentage of pro se cases do not have the merit to warrant the services of a volunteer lawyer, and you should not call on attorneys to represent such cases, as their time is a valuable resource not to be wasted. The truth of the matter is that in most of these cases you will be on your own.

When you decide that appointing counsel is warranted, you should call on resources available locally. Some courts, by local rule, require pro bono service as a condition of admission to the bar. A number of districts have civil pro bono panels of attorneys who have volunteered to represent indigent litigants; some

local and federal bar associations may also assist in securing counsel.[207] Some volunteer programs include a screening process to identify meritorious cases. You should be aware of the options available in your district.

Even if there is no ready source for attorneys' fees, there is generally some relief for expenses incurred. Although appointed counsel is typically responsible for initially paying reasonable expenses, such as those for transcripts and experts' fees, many districts have some arrangement for reimbursing these expenses through use of non-appropriated funds. The PLRA also provides for certain expenses, such as printing the record on appeal, to be paid by the Administrative Office, once the prisoner has paid the initial partial filing fee.

In some cases filed pursuant to specific statutes (e.g., 42 U.S.C. § 1983 and other civil rights statutes), there is a possibility that attorneys' fees could be awarded. Attorneys' fees might also be recovered in cases in which there is a contingency fee arrangement and the plaintiff prevails. In prisoner cases filed under 42 U.S.C. § 1988, however, the PLRA prescribes that fees may not be awarded unless: (1) they were directly and reasonably incurred in proving an actual violation of the plaintiff's rights that are protected by a statute pursuant to which a fee may be awarded under 42 U.S.C. § 1988; and (2) the fees are proportionately related to court-ordered relief for the violation or were directly and reasonably incurred in enforcing relief ordered for the violation (42 U.S.C. § 1997e(d)). The PLRA also limits the hourly rate and provides that when a prisoner is awarded monetary damages, a portion of the judgment must satisfy the award of attorneys' fees.[208]

## 3.  Scheduling and monitoring the pro se case

A conference with the judge can send a powerful message to pro se litigants that their cases are receiving the court's attention. Pretrial conferences involving a pro se litigant should be held in the courtroom (rather than in chambers) and on the record. Other considerations for how you approach scheduling and monitoring pro se cases will also be influenced by whether the litigant is in custody.

---

207. A list of districts with pro bono programs and attorney panels is available on the District Court Pro Se Litigation page on the Federal Judicial Center website.

208. *See Murphy v. Smith*, 138 S. Ct. 784, 790 (2018) (holding that in cases governed by § 1997e(d), the district court must apply as much of the judgment as necessary, up to 25 percent, to satisfy an award of fees).

### *a. Prisoner cases*

Many judges do not believe that pretrial conferences are appropriate in most pro se cases involving an incarcerated pro se litigant. Thus, most courts, by local rule, exempt such cases from the requirements of Federal Rule of Civil Procedure 16. Most courts instead have a standing practice order tailored to prisoner cases. The standing practice order may include instructions, contain pertinent portions of federal and local rules, and provide various notices, such as requiring the prisoner to keep the court apprised of a current address.

Many cases involving prisoner pro se litigants can be decided on the papers, after the prisoner is required to respond to an order for a more definite statement or after the defendant has filed a motion for summary judgment. A few cases, however, may involve allegations that appear to warrant the time and effort of a pretrial hearing. In some districts, magistrate judges have been assigned this responsibility.[209]

If a hearing in a prisoner pro se case is warranted, *consider* the following approaches:

- conferring by telephone conference; or
- using, if available in your courthouse, videoconferencing technology to conduct hearings in prisoner cases.

Many courts use a *Spears* hearing for cases involving a prisoner pro se litigant.[210] The purpose of the hearing, which is "in the manner of a motion for a more definite statement" and is usually conducted by a magistrate judge, is to bring into focus the factual and legal basis of the plaintiff's claim. Hearings can be held at the prison, by telephone, or by videoconference. Many cases can be resolved through a *Spears* hearing, either by dismissal or by agreement of prison officials to solve a problem. Other cases may proceed to discovery with the issues, claims, and legal theories narrowed or clarified.

Some courts use a *Martinez* report,[211] which requires prison officials to investigate the prisoner's complaint, to report the findings of the investigation, and to supply certain standard information. A *Martinez* report can help you and

---

209. *See* 28 U.S.C. § 636(b)(1)(B) (magistrate judge may issue report and recommendation following hearing on "prisoner petitions challenging conditions of confinement").

210. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

211. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987).

the institution determine whether a case is frivolous and can be disposed of by motion,[212] or whether there are problems the institution can address informally.

### b. Nonprisoner cases

An initial case management conference can be useful when the pro se litigant is not in custody, particularly for identifying and narrowing issues and for establishing your control over the case.

*Consider* holding an early case management conference in cases with nonprisoner pro se litigants for the purpose of:

- explaining the applicable procedural requirements in straightforward terms;

- reinforcing to the litigants the need to comply with the Federal Rules of Civil Procedure and local rules;

- pointing out available resources such as court-developed forms or pro se help centers;

- discussing a schedule for the case;

- entering a scheduling order to ensure that the case moves to prompt resolution and including deadlines for discovery, for submission by the defendant of all relevant records and documents, and, in appropriate cases, for the filing of a motion for summary judgment and the response (because the relevant facts usually are in the defendant's control, early disclosure will facilitate resolution of the action);

- establishing the least disruptive discovery method adequate to complete the task (a deposition with written questions may be preferable, for example, to a live deposition conducted by an unrepresented party);

- informing the pro se litigant that the case will be closely monitored and identifying a person to contact should problems arise;

- explicitly requiring the pro se litigant to maintain a current address and telephone number on record with the court; and

- making clear to the pro se litigant the requirement that all communications with the court be served on all opposing parties.

---

212. Note, however, that, with few exceptions, *Martinez* reports do not fall within any exception to the general rule that the sufficiency of a complaint must rest on its contents alone. *See Gee v. Pacheco*, 627 F.3d 1178, 1186–87 (10th Cir. 2010).

## 4.  Holding settlement discussions and conducting the trial

Many cases involving a pro se litigant are appropriate for resolution by settlement rather than by judgment or trial. At the same time, anyone who assists the parties in such cases with settlement negotiations runs the risk of being pressed by the pro se party to give legal advice. This is one reason why most federal courts exempt pro se cases from their ADR programs. Likewise, you as the judge should be cautious about assisting with settlement since your assistance will very likely be misunderstood by the pro se litigant. Many commentators worry, nonetheless, that it is unfair to the pro se litigant for courts not to provide settlement assistance. To address this problem, you might consider appointing counsel for the limited purpose of representing the pro se litigant during settlement discussions (*see supra* Chapter 5, Section E.5).[213] Some courts also have programs where volunteer attorneys represent pro se plaintiffs for purposes of mediation in certain types of cases (e.g., employment discrimination).[214] In addition, some courts offer mediation programs specific to prisoner cases.

If the case proceeds to trial, you should give serious consideration to appointing counsel. Should you be unable to find volunteer counsel, or should the pro se litigant refuse counsel, you will need to provide guidance as the pro se party attempts to handle the trial alone. You can also provide sample documents and forms (e.g., forms for witnesses and exhibits) before trial to help the pro se litigant complete the necessary preparations.[215] You will undoubtedly need to personally instruct the pro se litigant as well, while carefully maintaining your impartiality.

Before the trial begins and then again on the record, you may want to tell the pro se litigant, with the other party present, what the trial will entail. For a detailed discussion of issues to address with pro se litigants at the pretrial conference, *see Pro Se Case Management for Nonprisoner Civil Litigation*.

*Consider* the following in conducting a pretrial conference in nonprisoner and prisoner pro se cases:

- verifying that the party is not an attorney and chooses to proceed pro se;

---

213.  For further discussion of providing settlement assistance to pro se litigants, *see Pro Se Case Management for Nonprisoner Civil Litigation*, *supra* note 73, ch. II(C). *See, e.g.,* Northern District of Illinois, Settlement Assistance Program for Pro Se Litigants.

214.  *See* the Southern District of New York's mediation program for pro se employment discrimination cases.

215.  The Southern District of New York has a detailed trial manual for pro se litigants, entitled "Representing Yourself at Trial," that discusses how to prepare for trial and each phase of trial, including jury selection, opening statements, questioning witnesses, and closing arguments.

- warning the pro se litigant of the risks of proceeding to trial pro se and explaining the benefits of representation;

- explaining the trial process (e.g., that you will hear the plaintiff first, then the defendant; that interruptions will not be permitted; that a record will be made);

- explaining the elements of the case (e.g., that the plaintiff is asking for _____; that this can be granted if the plaintiff shows _____);

- explaining that the party bringing the action has the burden to present evidence in support of the relief sought;

- explaining the kind of evidence that may be presented (e.g., testimony from witnesses and exhibits) and that everyone who testifies will do so under oath;

- explaining the limits on the kind of evidence that may be considered (e.g., describe hearsay evidence and explain that it may not be admitted at trial);

- asking both parties whether they understand the process and the procedure; and

- permitting a non-attorney advocate to sit at the pro se party's counsel table and explaining that this advocate may provide support but will not be permitted to argue on behalf of a party or to question witnesses.[216]

If you need to question the pro se litigant during the trial (or at any other time), make sure you use questions that seek to obtain general information to avoid the appearance of advocacy on behalf of (or against) the pro se litigant.

Prior to trial in a pro se case, you should *consider*:

- ensuring that any prisoner plaintiffs and witnesses will be transported to and from the courthouse by issuing a subpoena ad testificandum to their custodians well in advance of the trial;

- planning for the security and custody of any prisoner litigants and witnesses while at the courthouse; and

- anticipating whether additional security will be needed in the courthouse or courtroom.

---

216. These suggestions are taken from Minnesota Conference of Chief Judges, Protocol to be Used by Judicial Officers During Hearings Involving Pro Se Litigants (Adopted 1998).

If the case proceeds to a **bench trial**, you should decide the matter as promptly as possible. You may also wish to *consider* requiring the parties to submit proposed findings of fact and conclusions of law in advance of your decision. If the case proceeds to a **jury trial**, you should *consider* advising the jury that a party's prisoner or pro se status does not mean that their claims or defenses lack merit.

### 5.  Resources for pro se litigants

For the benefit of pro se litigants, some districts have developed manuals or booklets explaining the litigation process in simple terms or have tabs with information and resource materials on their websites. A few districts also have pro se clinics and pro se mediation programs. The FJC has created a central repository, entitled "District Court Pro Se Litigation: Resources for Litigants, Court Staff, Attorneys, and Judges," that collects pro se resource materials from district court websites throughout the country. The repository provides links to district courts' pro se webpages, prisoner and non-prisoner pro se manuals (including foreign-language versions), pro se clinics, and pro se mediation programs, as well as a list of publications on pro se litigation. You should be aware of the information and resources your district has available for pro se litigants and consider mentioning them in your case management guidelines or in your scheduling order to ensure that pro se litigants know of and access these resources early in the case.[217] Some courts also provide standard forms through the clerk's office and on the court's website.[218]

## E.  Bankruptcy appeals

You may be assigned an appeal from a decision by a bankruptcy judge in your district. Bankruptcy appeals are governed by 28 U.S.C. § 158, Federal Rules of Bankruptcy Procedure 8001 et seq, and applicable local rules.[219]

---

217. The Federal Bar Association also offers "Representing Yourself in Federal District Court: A Handbook for Pro Se Litigants."

218. *See, e.g.*, Legal Help Center Templates & Packets available on the U.S. District Court for the Northern District of California's webpage (compiling forms for pro se litigants).

219. For additional information, see Bankruptcy Appeals outline by Judge Barry Russell (available on FJC website). The Bankruptcy Bar Association for the District of Maryland has also prepared a Bankruptcy Appeals Manual, available on the District of Maryland's website, that provides a useful overview of the procedures and substantive law for bankruptcy appeals.

Appeals may arise out of a main bankruptcy case or an adversary proceeding. Main bankruptcy cases[220] are commenced by the filing of a petition under a chapter of Title 11 of the U.S. Code:

- Chapter 7 cases are liquidation cases for either companies or individuals.
- Chapter 9 cases are filed to adjust the debts of a municipality.
- Chapter 11 cases are reorganization (or liquidation) cases for individuals or companies.
- Chapter 12 cases are filed to adjust the debts of family farmers or fishermen.
- Chapter 13 cases are filed to adjust the debts of individuals.
- Chapter 15 cases are international cross-border insolvency cases.

Within each type of case, lawsuits may be commenced. These lawsuits are filed as "Adversary Proceedings" under Fed. R. Bankr. P. 7001.

## 1. District court jurisdiction

Under 28 U.S.C. § 158(a), a district court has the jurisdiction to review final judgments, orders, and decrees from the bankruptcy court in its district. A circuit, however, may establish a bankruptcy appellate panel (BAP) composed of bankruptcy judges in the circuit that may hear and determine bankruptcy appeals with the parties' consent. 28 U.S.C. at § 158(b)(1). The First, Sixth, Eighth, Ninth, and Tenth Circuits have established BAPs. In those circuits, an appeal from the bankruptcy court automatically goes to the BAP unless the appellant (at the time of filing the notice of appeal) or any other party (within 30 days after service of the notice of appeal) elects to have the district court hear the case. 28 U.S.C. § 158(c)(1); Fed. R. Bankr. P. 8005(a).

In limited circumstances, a bankruptcy court ruling may be appealed directly to the court of appeals under 28 U.S.C. § 158(d)(2). Direct appeals, however, are at the discretion of the appellate court. The procedures for certifying a direct appeal are set forth in Fed. R. Bankr. P. 8006. The Fifth Circuit Court of Appeals has adopted its own procedure for the certification of a direct appeal under 28 U.S.C. § 158(d).

---

220. For a basic overview of each type of case and a glossary of bankruptcy terminology, consult the Bankruptcy page on uscourts.gov.

District courts and BAPs also have jurisdiction to review interlocutory orders and decrees issued by the bankruptcy court under 11 U.S.C. § 1121(d) increasing or reducing exclusivity time periods for the filing of a Chapter 11 plan, and other interlocutory orders with leave of court. 28 U.S.C. § 158(a)(2), (3).

## 2. Appeal procedure

To appeal a bankruptcy court's judgment, order, or decree, a party must file a notice of appeal with the bankruptcy court within 14 days after entry of the decision. Fed. R. Bankr. P. 8002(a). To appeal an interlocutory order of the bankruptcy court, a party must file a notice of appeal and a motion for leave to appeal in that court. Fed. R. Bankr. P. 8004.

In civil cases, orders ordinarily remain interlocutory until "an order resolves the entire case."[221] In contrast, orders in bankruptcy cases qualify as "final" when they definitively dispose of discrete disputes within the overarching bankruptcy case.[222] For example, an order denying relief from the automatic stay is final because it resolves the discrete dispute of whether the stay should be modified.[223] An appeal filed after the 14-day period will be dismissed as untimely.[224]

Within 14 days after filing the notice of appeal or, in the case of an interlocutory appeal, after entry of an order granting leave to appeal, the appellant must file with the bankruptcy clerk and serve on appellees: (1) a designation of items to be included in the record on appeal; and (2) a statement of issues on appeal. Fed. R. Bankr. P. 8009(a)(1). Within 14 days of service of the appellant's designation of record, an appellee may file a designation of additional items to be included in the record. Fed. R. Bankr. P. 8009(a)(2). Note that an appellee does not file a statement of issues on appeal unless the appellee has filed a cross-appeal.

The bankruptcy court clerk will transmit the notice of appeal, designation of record, and statement of issues to either the district court or the BAP, as appropriate. If the appeal is sent to the district court, the clerk will docket the appeal and notify the parties of the assigned judge. Bankruptcy Rules 8014–8018 set forth the requirements and timeline for briefing an appeal to the district court. Your district may have adopted local bankruptcy rules that supplement these rules. You may, by order in a particular case, modify the briefing schedule for good cause. A party may request that oral argument be held or not be held. Fed.

---

221. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020).

222. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015).

223. *Ritzen Grp.*, 140 S. Ct. at 592.

224. *Id.*

R. Bankr. P. 8019(a). There is a presumption that the matter will be set for oral argument, unless after examining the briefs, the district court determines that: (1) the appeal is frivolous; (2) the dipositive issue or issues have been authoritatively decided; or (3) the facts and legal arguments are adequately presented in the briefs and record and oral argument would not significantly assist you in reaching a decision. Fed. R. Bankr. P. 8019(b).

## 3.   Initial jurisdictional issues to examine

As with other civil cases, there are certain preliminary issues you should examine in each bankruptcy appeal. Even if not raised by the parties, you are required to raise jurisdictional issues sua sponte and dismiss the appeal if no valid basis for jurisdiction exists. The 14-day time limit prescribed by Rule of Bankruptcy Procedure 8002(a) is mandatory, and in the absence of a timely notice of appeal, the district court lacks jurisdiction to hear the appeal.[225] However, there are multiple ways in which the 14-day time limit may be extended. These include motions (which under Rule of Bankruptcy Procedure 8002(b) must be filed in the bankruptcy court within 14 days of entry of the order): (i) a motion to make additional findings filed under Rule of Bankruptcy Procedure Rule 7052; (ii) a motion to alter or amend the judgment filed under Rule of Bankruptcy Procedure 9023; or (iii) a motion for relief filed under Rule of Bankruptcy Procedure 9024. In addition, the bankruptcy court may order an extension of the 14-day period under Rule of Bankruptcy Procedure 8002(d).

You should also ensure that the appellant has standing to raise the issues on appeal. Note that, to appeal a bankruptcy court order, an appellant must be a "person aggrieved" by that order.[226]

Be aware that a bankruptcy appeal may be "equitably moot." This concept, which is different from traditional mootness rooted in Article III's live case or controversy requirement, recognizes the existence of a point beyond which the reviewing court cannot order fundamental changes in reorganization actions.[227]

---

225. *See, e.g., In re Sobczak-Slomczewski*, 826 F.3d 429, 431–32 (7th Cir. 2016).

226. *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 248–49 (3d Cir. 2000); *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983) (stating that to have standing to appeal, the appellant bore the burden of showing she was directly and adversely affected by the bankruptcy court's order).

227. *See, e.g., In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 408 (5th Cir. 2019); *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994) (Equitable mootness authorizes an appellate court to decline review of an otherwise viable appeal of a Chapter 11 reorganization plan, but only when the reorganization has progressed too far for the requested relief practicably to be granted.); *The Nancy Sue Davis Trust v. Davis Petrol. Corp.*, 402 B.R. 203, 207–08 (S.D. Tex. 2009).

However, at least one court of appeals has held that the concept should be treated as a "scalpel rather than an axe" and should not be used expansively.[228]

## 4.  Standards of review

Under Federal Rule of Bankruptcy Procedure 8014(a)(5), the appellant must state the appropriate standard of review in the opening brief. Generally, in a bankruptcy appeal, the district court reviews the bankruptcy court's decisions under the same standards employed by the courts of appeals. Accordingly, conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo.

## 5.  Withdrawal of the reference

Bankruptcy appeals should not be confused with the withdrawal of the reference in bankruptcy cases. Jurisdiction over all bankruptcy cases and adversary proceedings is established under 28 U.S.C. § 1334. With a few rare historical exceptions, every judicial district automatically refers all bankruptcy cases and adversary proceedings for consideration by the bankruptcy judges pursuant to authority granted by 28 U.S.C. § 157(a). This automatic referral of bankruptcy cases is revocable by the district court on a case-by-case (or even a portion of a case) basis.[229]

If the reference is withdrawn under § 157(d), the matter becomes pending before the district judge and the district judge becomes the trial judge for all purposes. Appeals of the district court rulings following the withdrawal of the reference are made to the courts of appeals.

The district court—having withdrawn the reference from the bankruptcy court—may subsequently determine to again refer the matter to the bankruptcy court. In that event, the bankruptcy court again becomes the trial court, and appeals of the decisions of the bankruptcy court are taken in the manner described above.

---

228.  *In re Sneed Shipbuilding, Inc.*, 916 F.3d at 409.

229.  28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.").

Civil Litigation Management Manual

## F.  Patent Cases

While the case management practices discussed throughout this manual also apply to patent cases, these cases often require special attention at the outset to address early discovery relating to claim construction, the timing and procedures for claim construction, and the need for a tutorial to educate you on the technology at issue. As a starting point, the FJC has developed a <u>Patent Law Resources</u> webpage, which compiles and provides links to numerous manuals and resource materials on both patent law and managing patent cases. In particular, *<u>Anatomy of a Patent Case, Third Edition</u>* offers a concise overview of each stage of patent litigation and highlights aspects that may differ from a standard civil case. The introductory chapter also explains the components of a patent and defines key terms used in patent litigation.

The *<u>MCL 4th</u>* also has a chapter on managing patent cases, including discussions of the statutory framework for patent law, setting and structuring claims construction (or "*Markman*" [230]) hearings, defining the issues in dispute, discovery, experts, and trial. For a more in-depth discussion on managing patent cases, you should consult *<u>Patent Case Management Judicial Guide, Third Edition</u>*. This resource also includes checklists for the initial Rule 16 case management conference and *Markman* hearings, as well as draft orders, model rules, and model patent jury instructions.

It is important to note that many districts have adopted local rules for patent cases prescribing specific timelines and procedures for discovery and *Markman* hearings. [231] If your district has not adopted such local rules, it may be helpful to consult another district's local rules for possible options for discovery schedules and structuring *Markman* hearings.

## G.  International child abduction cases under the Hague Convention

The <u>Hague Convention on the Civil Aspects of International Child Abduction</u> "was adopted in 1980 in response to the problem of international child abductions during domestic disputes [and] . . . seeks to secure the prompt return of children wrongfully removed or retained in any Contracting State and to ensure that rights of custody and access under the law of one Contracting State are

---

230.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

231.  Appendix D to the *<u>Patent Case Management Judicial Guide</u>*, *supra* note 183, lists courts that, as of 2016, have adopted patent local rules.

effectively respected in other Contracting States."[232] "The [C]onvention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply."[233] The substantive law and elements of a cause of action for return of a child are set forth in the Convention. The procedural framework for a case, including the applicable burdens of proof, scope of provisional remedies to protect the child's well-being, and assignment of costs and fees, is set forth in the International Child Abduction Remedies Act (ICARA).[234] These cases can require you to make difficult judgments in a very condensed period.

One of the challenges of managing a Hague Convention case is the expectation—expressed in Article 11 of the Convention—that the court shall handle the case "expeditiously." Under Article 11, if the court has not reached a decision within six weeks from the date of commencement of proceedings, the applicant or the designated Central Authority of the signatory country has the right to request a statement of the reasons for the delay. Accordingly, after you are assigned a Hague Convention case, you should promptly schedule a Rule 16 case management conference to both assess the child's current situation and set discovery deadlines, a briefing schedule, and a trial date.

The FJC has published a detailed monograph, *The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges, Second Edition*, which provides background on the adoption of the Convention, discusses relevant federal and state law, and offers practical suggestions for managing cases under the Convention. The FJC has also developed a special topic webpage compiling resource materials, including outlines addressing frequently asked questions arising in Hague Convention cases, a checklist of issues to consider during each phase of the case, sample orders, and recently decided cases.

Among the resources available on the webpage are succinct video tutorials on the following topics:

- Your First Hague Convention Case: covers the basic elements of a Hague Convention case, including the specific requirements of the Convention, the most common defenses and their applicable standards of proof, available sources of law, and the Central Authority.

- The Case in Chief: discusses the elements of a prima facie case for the return of a child under the Convention.

---

232. *Abbott v. Abbott*, 560 U.S. 1, 8 (2010) (internal quotation marks omitted).

233. *Id.* (citation and internal quotation marks omitted).

234. 22 U.S.C. §§ 9001–9011.

- Defenses to a Hague Convention Petition: discusses the five defenses to an action for return of a child under the Convention.

- Case Management Considerations: covers some of the unique challenges of Hague Convention litigation and case management strategies, including preliminary considerations relating to the safety of the child and the circumstances of the parties.

- The Central Authority: discusses the Central Authority, which is an entity that each signatory country must designate to assist in the administration of the Convention. [235]

You may also contact the FJC directly with Hague Convention questions via email at: 1980HagueConvention@fjc.gov.

In addition to these resources, the U.S. State Department has a webpage with resources for judges handling a Hague Convention child abduction case. One of the resources offered is the "International Network of Judges," which is comprised of judges from various countries who are experts in the Convention and other international family law issues. The Network Judges serve as a resource for judges in their home country and can facilitate communications between judges domestically and Network Judges internationally. To speak with a Network Judge, you may contact the U.S. State Department at: JudgesNetwork@state.gov.

---

235. In the United States, the Central Authority is the Office of Children's Issues within the U.S. State Department. The agency has a webpage providing information about key provisions of the Hague Convention, forms, and resources for parents.

8

# Personnel Resources in Litigation Management

A.  Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  145
B.  Chambers staff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  146
    1.  Law clerks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  147
    2.  Judicial assistant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  150
C.  Court staff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  151
    1.  Courtroom deputies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  151
    2.  Court reporters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  152
    3.  Pro se and death penalty law clerks. . . . . . . . . . . . . . . . . . . . .  153
D.  Magistrate judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  154
    1.  Referral of nondispositive matters. . . . . . . . . . . . . . . . . . . . . .  154
    2.  Referral of dispositive matters . . . . . . . . . . . . . . . . . . . . . . . . .  155
    3.  Referral of case for mediation. . . . . . . . . . . . . . . . . . . . . . . . . .  156
    4.  Consent to magistrate judge disposition or case
        responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  156
    5.  Other referrals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  157
    6.  Method for assigning matters to magistrate judges. . . . . . . .  158
E.  Workplace conduct and employee dispute resolution  . . . . . . . . .  159
F.  Special masters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  159
    1.  Authority to appoint a special master . . . . . . . . . . . . . . . . . . .  159
    2.  Reasons for appointing a special master. . . . . . . . . . . . . . . . .  160
    3.  Selecting and appointing a special master . . . . . . . . . . . . . . .  161
    4.  The special master's report . . . . . . . . . . . . . . . . . . . . . . . . . . . .  163
    5.  Compensating the special master. . . . . . . . . . . . . . . . . . . . . . .  163

## A. Overview

District judges work with numerous individuals within their court who play crucial roles in processing and managing civil cases, including chambers staff, clerk's

office staff, and pro se law clerks. Further, magistrate judges not only function as judicial officers who may preside over their own cases but also assist district judges with their civil and criminal cases. Understanding the roles of magistrate judges and court staff can help you determine when to use their services—and how to effectively engage them when you do—as part of your general case management approach and in specific phases of cases where more focused assistance may be helpful.

The following sections describe the general duties of these individuals. Generally, district and magistrate judges should consider delegating those tasks that may be performed by others consistent with federal law, federal rules, and their court's local rules and operating procedures, while retaining tasks that only a judge may perform. In deciding what to delegate and to whom, analyze each task, asking how it can be done most effectively, and whether it can be done by someone other than you subject to your review.

## B. Chambers staff

Judges hire their own chambers staff, which may include a combination of law clerks and a judicial assistant. Information and policies concerning chambers staff are available on the Chambers Staff page on JNet, and in Chapter 18 of the Judges Administrative Manual. Your court's human resources specialists, as well as the human resources specialists at the Administrative Office, can answer questions about judiciary hiring and employment policies. The FJC also regularly posts material on its website with tips on recruiting, interviewing, and training chambers staff.

Chambers staff serve at the pleasure of the hiring judge and their tenure depends on that of the judge. The number of chambers staff authorized for a judge depends on the office the judge holds.[236] An active district judge may hire three staff members, either two law clerks and a judicial assistant or three law clerks. A full-time magistrate judge may hire two staff members, either a law clerk and a judicial assistant or two law clerks. A judge may fill a single full-time staff position with multiple part-time staff members (e.g., a part-time law clerk and a part-time judicial assistant). Keep in mind that the composition of your staff is an important decision that can impact the division of duties and workload in chambers.

Historically, district judges hired two law clerks who focused on legal research and writing and a judicial assistant who handled administrative duties such as answering phone calls, maintaining the judge's calendar, and preparing

---

236. *See Guide to Judiciary Policy,* vol. 12, § 615.50; *Judges Administrative Manual,* ch. 18, § 1.

the judge's travel vouchers and financial reports. Many judges now opt to hire an additional law clerk in lieu of a judicial assistant. In those chambers, one law clerk may be designated as an administrative law clerk and is responsible for the administrative duties, as well as a share of the substantive legal duties. In other chambers, the law clerks rotate responsibility for administrative duties.

Under another approach to chambers staffing, two judges partner together to share a judicial assistant and an additional law clerk. In these arrangements, each judge employs one of the two shared staff members for administrative purposes, and the shared staff divide their time between the two chambers. While these arrangements can work to the benefit of both judges, allowing each judge to gain the benefits of a part-time judicial assistant and the help of a part-time law clerk on substantive case work, they can operate successfully only if the partnering judges are able to coordinate and communicate effectively with each other and set reasonable expectations for their shared staff.

In evaluating which approach will work best for you, consider your overall administrative needs (e.g., the ratio of your criminal and civil caseloads, as well as your committee or judicial council work), and the demands of your caseload (i.e., can two law clerks keep up with your pending caseload, or is a third law clerk necessary?).[237] Whether you designate one law clerk as an administrative law clerk or have law clerks rotate or divide administrative responsibilities, it is important to discuss this topic with prospective law clerks so they understand the administrative duties they will perform as part of your staff.

## 1.  Law clerks

The scope of duties assigned to law clerks varies by judge, depending on the number of law clerks on staff, the law clerk's appointment classification, and the law clerk's level of legal experience. For most district and magistrate judges, law clerks perform the bulk of the day-to-day civil case management responsibilities, including reviewing the CM/ECF docket activity report (DAR) for new filings; flagging matters that require immediate attention; monitoring deadlines in pending cases; reviewing Rule 26(f) reports or case management statements to identify issues that should be addressed at the initial Rule 16 scheduling conference; and tracking motions and cases that will need to be included on an upcoming CJRA report if not resolved. Law clerks typically are also responsible for conducting legal research, preparing draft orders and opinions, and assisting with bench and jury trials. Some judges have a law clerk assist with aspects

---

237. For policies applicable to chambers staff, including appointment authority and procedures, salaries, leave policies, and types of personnel actions, *see Judges Administrative Manual*, ch. 18.

of criminal cases, such as monitoring the docket, researching issues raised in motions or by objection, reviewing proposed jury instructions, and assisting with trials. In addition, many judges task law clerks with supervising judicial externs.

There are three appointment classifications for law clerks: career, term, or temporary.[238] Under Judicial Conference policy, judges are limited to one full-time equivalent career law clerk per chambers.[239] A term law clerk may serve for up to four years in the judiciary as a term law clerk. Note that this is an aggregate lifetime limit and is not pro-rated for part-time service.[240] It applies to all term clerkships even if the clerkships were completed for different judges and regardless of whether the term clerkship is in the chambers of a magistrate, district, or circuit judge. In limited situations, you may be authorized to appoint a temporary law clerk. For chambers law clerks, temporary positions are limited to temporary medical, maternity, and military leave replacements as well as temporary emergency fund appointments authorized by circuit judicial councils (e.g., to assist with a complex case or trial).[241]

There are several resources available to assist with hiring and training law clerks. For recruiting, the Online System for Clerkship Application and Review (OSCAR) allows you to create a profile with your hiring practices (e.g., number of law clerks on staff, length of terms), upcoming law clerk vacancies, and application materials you would like candidates to submit.[242] Some judges also post vacancy announcements on their court's website, under the "careers" tab on the judiciary's website (uscourts.gov), or on the federal government's official job site (usajobs.gov). The Federal Law Clerk Hiring Best Practices provide voluntary guidelines for judges when recruiting and hiring clerkship applicants. If you use OSCAR to announce openings and manage application materials, be sure to update or delete your postings as each position is filled.

When a law clerk begins employment, you should set aside time to discuss the goals of the clerkship and your general expectations of law clerks. In particular, you should emphasize the importance of keeping discussions relating to pending matters confidential. You should instruct them to conduct themselves

---

238. For more detail about the types of appointments for law clerks, including term limits and benefits eligibility, *see Guide to Judiciary Policy*, vol. 12, § 510.

239. *See Judges Administrative Manual*, ch. 18, § 6.4.

240. The 4-year term clerkship limit does not apply to clerkships with state judges or federal administrative law judges, and while term circuit staff attorney positions also do not count against the 4-year term clerkship cap, they are subject to their own 4-year term limit.

241. *See Guide to Judiciary Policy*, vol. 12, §§ 615.50.10, 615.50.20.

242. In 2017, the judiciary implemented a two-year pilot Law Clerk Hiring Plan, pursuant to which participating judges agreed to adhere to certain timeframes for hiring law student candidates. Information about the Law Clerk Hiring Plan is available on the OSCAR website.

professionally in chambers and the courtroom, as well as when interacting with other court staff, attorneys, and members of the public at the courthouse and in all other settings. You should also discuss the extent to which law clerks may communicate with counsel, and your chambers protocol for communicating with counsel on scheduling and administrative issues.

Some chambers have developed an internal "chambers manual" with basic information such as work schedule, dress code, and answers to recurring questions (e.g., how to handle calls from litigants or the media). Additionally, the Administrative Office and the FJC have developed materials to help new law clerks understand their role in chambers and their responsibilities as judicial employees. The FJC offers a two-part interactive orientation program for law clerks, which clerks can access via a secure online portal before their clerkship begins. The orientation program covers ethics, legal writing, and certain recurring legal issues, such as jurisdiction. The Law Clerk Handbook[243] discusses a law clerk's role in chambers, provides an overview of the various proceedings held in federal courts, and explains court governance and administration within the federal judiciary. You might also encourage your district to host an annual training session for new law clerks to orient them to the clerk's office operations and other procedures unique to your district, to introduce them to other chambers' staff, and to familiarize them with the other offices that work with your district and the court system. The Administrative Office also hosts an annual Chambers Staff Administrative Workshop (CSAW), which provides training on administrative, operational, and procedural matters that chambers staff typically encounter. Information and materials from the CSAW are available on the Chambers Staff webpage on JNet.

You should ensure that orientation for new law clerks includes a description of workplace conduct rules, available under the Policy & Guidance tab on JNet, and the protocol in your district for law clerks to bring up complaints or concerns. It is critical that law clerks understand the ethical obligations associated with their position. The FJC publishes an ethics pamphlet[244] for law clerks with a companion e-learning program available on its website. The pamphlet discusses the Code of Conduct for Judicial Employees, and other issues relating to confidentiality, conflicts of interest, outside professional and social activities (including the use of social media), and future employment.

---

243. *Law Clerk Handbook: A Handbook for Law Clerks to Federal Judges* (Fed. Judicial Ctr. 4th ed. 2020).

244. *Maintaining the Public Trust – Ethics for Federal Judicial Law Clerks* (Fed. Judicial Ctr. Rev. 4th ed. 2019).

Generally, the amount of time you spend supervising your law clerks will depend on how long they have been part of your staff, their experience with federal civil litigation, and their familiarity with your court's local rules and practices. Law clerks who have recently graduated from law school or who have not previously served as a judicial clerk or extern generally will have little or no relevant experience with CM/ECF, case management, discovery disputes, or drafting orders and opinions. At the beginning of their term, you will want to give them specific instructions about the tasks they are to perform, provide examples of how you would like work product presented (e.g., copies of recent orders or memoranda), set clear deadlines, and discuss how and when they should confer with you if they have questions or need direction. Law clerks who have practiced law or previously completed a clerkship may be familiar with litigation and your court's local rules but will need to familiarize themselves with your chambers procedures and writing style. Many law clerks must also become familiar with CM/ECF and the various reports available to assist them with case monitoring and management, including the CJRA report feature.[245]

While you should always be involved in overseeing their work, your law clerks should require less supervision as they become increasingly familiar with your judicial style and your chambers operating procedures. Chambers with a career law clerk or term law clerks with staggered terms can often assist with orientating new clerks and initially reviewing their work product. This may be something you wish to consider when setting the length and start dates of clerkships in your chambers.

## 2. Judicial assistant

Some judges prefer to have a judicial assistant, rather than law clerks, handle administrative duties. Examples of administrative duties include answering phone calls; responding to routine email messages; maintaining the judge's calendar; running the DAR on CM/ECF; maintaining chambers electronic records and physical files; making travel arrangements for the judge and submitting travel vouchers; and preparing required annual reports (e.g., non-case-related travel, financial disclosure report). In deciding whether to staff your chambers with a judicial assistant, you should consider the nature and volume of your caseload and the amount of administrative work that will generally need to be performed. Judges who regularly serve on judicial committees or councils or travel between court divisions may benefit from having a staff member who

---

245. For a detailed discussion about CM/ECF's report features, *see* Chapter 4, Section B.2, and Chapter 9, Section B.

can focus on administrative tasks and chambers management. Judges who have heavy caseloads, however, may benefit from hiring an additional law clerk in lieu of a judicial assistant, but should be mindful that the law clerks will also need to perform administrative duties.

## C. Court staff

### 1. Courtroom deputies

Courtroom deputies (sometimes referred to as case managers or case administrators) are members of the clerk's office who perform an array of case management functions, including scheduling and coordinating conferences, hearings, and trials; attending and logging court proceedings; monitoring filings in CM/ECF; drafting docket text orders, judgments, and minutes of court proceedings; and entering orders, minutes, judgments, and other court documents into CM/ECF. Depending on the court, courtroom deputies may be organized as a team that supports multiple judges, or each courtroom deputy may be assigned to an individual judge. A courtroom deputy's specific duties will also vary by court, with some courts emphasizing responsibility to chambers, and others placing greater emphasis on the work done in the clerk's office. Keep in mind that although a courtroom deputy may be assigned to you, the clerk of court is the courtroom deputy's supervisor.

*Consider*:

- Having the courtroom deputy monitor docket activity, as well as the status of pending cases, and notifying you when important deadlines are approaching or have elapsed, such as a dispositive motion deadline or deadline to request a pretrial conference. Your courtroom deputy may also monitor docket activity to ensure that parties have timely filed pre-conference statements (e.g., the parties' Rule 26(f) report or case management statement). They can also notify your law clerks when a motion has been fully briefed or the response deadline has passed, and they can provide you with regular copies of your CJRA report.

- Having the courtroom deputy manage your court and conference calendar. You should meet regularly with the courtroom deputy to go over the status of cases and to plan for upcoming conferences, hearings, and trials. Your instructions and preferences (e.g., on the length of a motions hearing or pretrial conferences) will guide the courtroom deputy in setting events on the calendar.

- Having the courtroom deputy prepare or supervise preparation of routine notices, docket text orders, and routine minute entry orders.

- As a jury trial approaches, having the courtroom deputy communicate with the jury administrator to ensure the orderly and efficient summonsing and use of prospective jurors.

- Designating the courtroom deputy as the exclusive communication channel between you and parties or members of the public on routine case-related matters such as upcoming hearing dates or filing deadlines. While some judges prefer to use their judicial assistant for this purpose, others use the courtroom deputy, who is not so close to the judge as to imply an improper ex parte communication. Using a single channel for communicating with the judge should also help avoid confusion.

- Encouraging the courtroom deputy to stay current on the latest courtroom technology, developments in CM/ECF, and other electronic organizational tools to facilitate document and exhibit handling and presentation, electronic calendaring, and electronic organization of case files and other documents. (*See* Chapter 9 for a discussion of using technology for case management.)

## 2. Court reporters

The Court Reporters Act[246] requires that each session of the court and every other proceeding designated by rule or order of the court be recorded verbatim by a court reporter or electronic sound recording. The statute also establishes the duties and conditions of employment of court reporters in the federal courts.

Court reporters and electronic court recorder operators (ECRO) are members of the clerk's office staff. They are neither employed by, nor are they part of, the personal staff of an individual judge. Under Judicial Conference policy, the court en banc appoints its court reporters and controls their assignments.[247] Accordingly, a court reporter is required to serve all judges, and the selection and retention of reporting staff should be addressed by the court as a whole. Each district court also has a designated court reporter supervisor and a Court Reporter Management Plan to carry out the requirements of the Judicial Conference and provide for the day-to-day management and supervision of court reporting services in the court For guidance on the use of court reporting and an

---

246. 28 U.S.C. § 753.

247. *Guide to Judiciary Policy*, vol. 6, § 220(b).

outline of court reporters' tasks and responsibilities, *see* Volume 6 of the *Guide to Judiciary Policy*.[248]

When preparing a written order after a hearing, it may be helpful to review statements made during oral argument. Keep in mind that you have options when requesting a hearing transcript. When requested, the court reporter who took the official record must provide a certified transcript of all or part of a proceeding without charge to the requesting judge.[249] You may, however, request that the court reporter produce a non-certified or unedited transcript for your use, which does not have to be filed with the clerk as part of the court record.[250]

## 3.  Pro se and death penalty law clerks

Although they are not part of chambers staff, pro se and death penalty law clerks play important roles in assisting judges with pro se prisoner and pro se non-prisoner litigation, including habeas corpus cases under 28 U.S.C. §§ 2241 and 2254, post-judgment motions filed under 28 U.S.C. § 2255, and pro se civil rights cases under 42 U.S.C. § 1983 and *Bivens*.[251] The allocation of pro se law clerks varies among the district courts and is determined based on a Judicial Conference-approved staffing formula that is tied to the number of prisoner cases (federal habeas corpus and civil rights) filed in a court. Similarly, death penalty law clerks are allocated based on a staffing formula that is tied to the number of pending, unstayed death penalty cases in a district.

The authority to appoint and supervise pro se and death penalty law clerks is vested in the chief district judge.[252] The chief judge, however, may delegate appointment authority to another judge or to the clerk of court, as appropriate. The chief judge may also delegate supervisory responsibilities for the district's pro se law clerk program and/or death penalty law clerk program to another judge, the clerk of court, or to a single pro se/death penalty law clerk, who then reports to the chief judge or to the chief judge's designee.[253]

The organization of and duties assigned to pro se and death penalty law clerks vary by district. In some districts, each pro se law clerk is assigned to one or more judges; in other districts, the pro se law clerks are pooled and handle

---

248. For additional information or questions about court reporters, contact the Administrative Office's Court Services Office at (202) 502–1500.

249. 28 U.S.C. § 753(b); *Guide to Judiciary Policy*, vol. 6, § 510.20(a).

250. *Guide to Judiciary Policy*, vol. 6, § 510.20(c).

251. *See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).

252. JCUS-SEP 94, p. 48; JCUS-SEP 95, p. 90.

253. JCUS-MAR 19, p. 15.

specific cases or particular filings for all judges. In many districts, pro se litigation—especially pro se prisoner litigation—comprises a significant portion of the civil docket. You therefore should be familiar with how your court utilizes its pro se and death penalty law clerks and communicate with the judge or lead pro se law clerk who supervises them if questions or issues arise.[254]

## D. Magistrate judges

The jurisdiction and powers of a magistrate judge are defined in 28 U.S.C. § 636 and 18 U.S.C. § 3401.[255] In addition to those statutory authorities, the district court may assign magistrate judges "such additional duties as are not inconsistent with the Constitution and laws of the United States."[256] To that end, the district court must "establish rules pursuant to which the magistrate judges shall discharge their duties."[257] Thus, a district judge's use of magistrate judges will be guided not only by statute, Federal Rules of Civil Procedure, and the district judge's own preferences, but also by the district court's decisions about their role. In making such decisions, a court may wish to consider advice from the Judicial Conference Committee on the Administration of the Magistrate Judges System, contained in the committee's *Suggestions for Utilization of Magistrate Judges*, available on the Magistrate Judges System JNet page.[258] An *Inventory of United States Magistrate Judge Duties* is also available, and provides a detailed list and description of duties that may be referred to magistrate judges.[259]

### 1. Referral of nondispositive matters

Any nondispositive pretrial matter may be referred to a magistrate judge for hearing and determination.[260] These matters include conducting Rule 16 case

254. For additional information about the pro se law clerk program, contact the Administrative Office's Court Services Office at (202) 502–1500.

255. *See also* Fed. R. Civ. P. 72, 73; Fed. R. Crim. P. 58, 59.

256. 28 U.S.C. § 636(b)(3).

257. 28 U.S.C. § 636(b)(4).

258. Additional materials on the authority of magistrate judges; magistrate judge utilization; magistrate judges' roles in court governance; policies and guidance relating to magistrate judges; and magistrate judge statistics are also available on the Magistrate Judges System JNet page. For additional assistance or questions, you may contact the Administrative Office's Judicial Services Office at (202) 502–1800.

259. For additional information about referrals to magistrate judges, *see MCL 4th*, *supra* note 22, § 11.53.

260. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Fed. R. Crim. P. 59(a).

management conferences, supervising discovery, resolving discovery disputes, and ruling on motions that do not dispose of claims or defenses (for examples of referral orders, *see* online [appendix](#)). Keep in mind, however, that a magistrate judge's decision on these matters is appealable to the district judge who referred the matter, which could result in delay and potentially give the parties two bites of the apple. Moreover, some district judges prefer to decide nondispositive matters themselves so that they can exercise greater oversight and better familiarize themselves with the parties, attorneys, and issues in the case.

The magistrate judge to whom a matter is referred is to conduct required proceedings promptly, and, when appropriate, issue a written order stating the decision.[261] Within 14 days after being served with a copy of the magistrate judge's order, the parties may serve and file objections to the order. The district judge who referred the matter "must consider timely objections" filed by a party and "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law."[262] If a district judge delegates such nondispositive pretrial matters, the judge should adhere strictly to this narrow standard of review. Routinely second-guessing the magistrate judges will reduce the time savings you might have gained and very likely will encourage future objections.

## 2. Referral of dispositive matters

District judges "may also designate a magistrate judge to conduct hearings, including evidentiary hearings," on dispositive matters.[263] These matters may include motions for injunctions, for judgment on the pleadings, for summary judgment, or for class certification, as well as social security appeals, petitions for habeas corpus, and civil rights cases. Unless the parties have consented to full jurisdiction by the magistrate judge, the magistrate judge is limited to making recommendations, including findings of fact when appropriate, after a hearing on the record or a review of the case file and motions.[264]

A party may file written objections within 14 days after service of the recommended disposition, and the opponent may respond within 14 days.[265] If you are the district judge receiving the objections, you must review de novo any part of the magistrate judge's disposition to which a proper objection has been made.[266]

---

261. Fed. R. Civ. P. 72(a); Fed. R. Crim. P. 59(a).

262. *Id.*

263. 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b)(1); Fed. R. Crim. P. 59(b).

264. 28 U.S.C. § 636(b)(1)(B), (C).

265. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Crim. P. 59(b)(2).

266. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). *See also* Fed. R. Crim. P. 59(b)(3).

The district judge may accept, reject, or modify the recommended disposition; receive additional evidence; or return the matter to the magistrate judge with instructions.[267]

Keep in mind that the list of dispositive matters in § 636(b)(1)(A) and (B) is not considered exhaustive and that other matters may be treated as dispositive or nondispositive based on the case law of your district and circuit.[268] You should exercise care in deciding which dispositive motions to assign to magistrate judges because the referral of dispositive motions can lead to wasteful duplication of judicial and attorney time and effort (given the parties' right to seek your review of the magistrate judge's recommendations), especially when the motions involve primarily questions of law.

## 3. Referral of case for mediation

In many districts, magistrate judges regularly conduct settlement conferences or serve as mediators in court-based ADR programs. In districts where magistrate judges conduct settlement conferences, they have become true experts, and you should consider referring cases to magistrate judges for settlement purposes as a matter of course. *See* Chapter 5, Section E for a detailed discussion of settlement conferences conducted by judges. Once a matter is referred to a magistrate judge for mediation, the substance of the mediation and the nature of negotiations are confidential between the magistrate judge and the parties and should not be discussed between the magistrate judge and the assigning judge.

## 4. Consent to magistrate judge disposition or case responsibility

With the parties' consent, a magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case" when "specially designated" to do so by the district court.[269] If the parties

---

267. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

268. *See, e.g., Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 946 (D.C. Cir. 2017); *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004); *Massey v. City of Ferndale*, 7 F.3d 506, 508 (6th Cir. 1993). *See also Inventory of United States Magistrate Judge Duties*, § 4 Non-Case-Dispositive Matters Under 28 U.S.C. § 636(b)(1)(A), and § 5 Case-Dispositive Matters Under 28 U.S.C. § 636(b)(1)(B), available on the Magistrate Judges System JNet page.

269. 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73(a). Every United States district court has designated its full-time magistrate judges to exercise this authority. Assignments of consent cases to part-time magistrate judges are subject to certain limitations. For additional guidance, contact the Administrative Office's Judicial Services Office at (202) 502–1800.

consent to the magistrate judge handling all aspects of the case, the magistrate judge may conduct all proceedings, including a jury or non-jury trial, if necessary. Alternatively, parties may consent to have a magistrate judge rule on a specific case-dispositive motion. Consent should be given in writing and can be recorded in several ways, including in the attorneys' Rule 26(f) report or case management statement, or on a specialized consent form. *See* online [appendix](#) for examples in the context of the Rule 26(f) report and for specialized consent forms. The parties' decisions on consent should be communicated to the clerk of court, and a district judge or magistrate judge should only be informed of a party's decision if all parties have consented to the referral.[270]

The clerk of court must notify parties, on the filing of a civil case, of the availability of magistrate judges to try cases by consent.[271] The district judge or magistrate judge handling the case may thereafter again advise the parties of this availability as well as of their right to withhold consent without adverse substantive consequences.[272] For example, at the initial Rule 16 conference you may ask the parties whether they are willing to consent to a final disposition, including trial, before a magistrate judge.

A number of districts place magistrate judges on the assignment wheel so that they are directly assigned as presiding judge to a portion of newly filed civil cases. In these districts, the parties are informed that their case will remain assigned to a magistrate judge for all proceedings if the parties consent. The parties usually are given a specified amount of time to consent to this assignment; if consent is not given, the case is reassigned to a district judge.[273]

## 5.  Other referrals

Section 636(b)(3) of Title 28 of the U.S. Code grants the courts broad authority to assign "additional duties" to magistrate judges not inconsistent with the Constitution and laws of the United States. For instance, magistrate judges may preside while a jury deliberates, receive jury verdicts, and conduct post-judgment proceedings. You also should consult district and circuit case law on the limits of the authority granted under § 636(b)(3).[274]

---

270. Fed. R. Civ. P. 73(b)(1).

271. 28 U.S.C. § 636(c)(2); Fed. R. Civ. P. 73(b)(1).

272. 28 U.S.C. § 636(c)(2); Fed. R. Civ. P. 73(b)(2).

273. For additional information about courts' direct assignment practices, contact the Administrative Office's Judicial Services Office at (202) 502–1800.

274. *See also* [Inventory of United States Magistrate Judge Duties](#), *supra* note 269.

Civil Litigation Management Manual

## 6.  Method for assigning matters to magistrate judges

In making referrals to magistrate judges, district judges need to take into account the assignment procedures of their district, which may include one or more of the following methods:

- *Referral pursuant to standing order or local rule.* A district's standing order or local rule may direct that certain pretrial matters or all pretrial matters (except dispositive motions) be handled by magistrate judges. The clerk's office will then direct all such matters to the court's magistrate judges, subject to adjustment from time to time.

- *Inclusion on the assignment wheel.* Some districts include magistrate judges on the case assignment wheel so that a portion of newly-filed cases is initially assigned to each magistrate judge. If the parties in an individual case do not consent to the magistrate judge conducting all proceedings—including final disposition—the case is reassigned to a district judge, although the magistrate judge may continue to handle some or all pretrial matters.

- *Referral by case.* District judges may refer individual cases to magistrate judges for some or all pretrial proceedings. Unless the referral is withdrawn, the magistrate judge conducts all matters up to a specified point, such as the final pretrial conference.

- *Pairing.* A magistrate judge may be paired with one or more district judges and will automatically conduct those judges' pretrial matters as designated.

- *Issue-by-issue assignment.* District judges may assign particular motions or matters to magistrate judges, but otherwise retain complete control over cases for all other matters.

- *Referral at the parties' request.* Parties may be given the opportunity, on a case-by-case basis, to consent to have the case heard by a magistrate judge. For example, in some districts with heavy criminal caseloads, parties in civil cases are given the opportunity to have their case heard by a magistrate judge to get more expeditious handling and an earlier or more certain trial date.

## E. Workplace conduct and employee dispute resolution

In September 2019, the Judicial Conference adopted an updated Model Employee Dispute Resolution (EDR) Plan. The Plan is built on the principles that:

> The Federal Judiciary is committed to a workplace of respect, civility, fairness, tolerance, and dignity, free of discrimination and harassment. These values are essential to the Judiciary, which holds its Judges and Employees to the highest standards. All Judges and Employees are expected to treat each other accordingly.

The Plan applies to all judges, current and former employees (including all law clerks; chambers employees; paid and unpaid interns, externs, and other volunteers; federal public defender employees; and probation and pretrial services employees), and applicants for employment who have been interviewed. It provides options for the reporting and resolution of allegations of wrongful conduct (discrimination; sexual, racial, or other discriminatory harassment; abusive conduct; and retaliation) in the workplace. Information about the Plan and other EDR resources are available on the Office of Judicial Integrity: Workplace Conduct page on JNet.

## F. Special masters

Special masters can be a critical asset in some cases. Appointment of masters is generally limited to large, complex cases and is therefore infrequent.[275] Because the use of masters is well covered in the MCL 4th, this section is limited to highlighting some basic issues, drawing from that publication.[276]

### 1. Authority to appoint a special master

Appointment of special masters is governed primarily by Federal Rule of Civil Procedure 53.[277] Unless provided otherwise by statute, a judge may appoint a special master only to: (1) perform duties by party consent; (2) conduct a non-jury trial in the event of an "exceptional condition," or a "need to perform an accounting or resolve a difficult computation of damages;" or (3) "address pretrial and

---

275. Thomas E. Willging, Laural L. Hooper, Marie Leary, Dean Miletich, Robert Timothy Reagan & John Shapard, *Special Masters' Incidence and Activity*, 15–21 (Fed. Judicial Ctr. 2000) [hereinafter *Special Masters Study*].

276. *See MCL 4th*, *supra* note 22, § 11.52. *See also Appointing Masters and Other Judicial Adjuncts, A Benchbook for Judges and Lawyers* (Academy of Court-Appointed Masters, 2020 ed.).

277. Inherent authority may also support appointment of special masters, and a number of statutes and rules touch on the subject. *See Special Masters Study*, *supra* note 276, at 31–35.

posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(A)-(C).

Pursuant to 42 U.S.C. § 2000e-5(f)(5), a judge may also appoint a master under Rule 53 to hear Title VII cases, without a showing of exceptional circumstances, if the case has not been set for trial within 120 days after issue has been joined (subject to the parties' right to a jury trial under the Civil Rights Act of 1991).

In the absence of consent by the parties, a district judge may designate a magistrate judge as special master pursuant to Rule 53 and 28 U.S.C. § 636(b)(2). When the parties consent to it, the district judge has authority to designate a magistrate judge as special master under 28 U.S.C. § 636(b)(2), bypassing the limitations of Rule 53(b).

Although judges have authority under Rule 53 to make an appointment sua sponte, most judges do so only after issuing a show cause order and prefer to act only with the parties' consent.[278]

## 2.  Reasons for appointing a special master

Special masters can be useful adjuncts for a variety of tasks in the management of complex or large-scale litigation: supervising discovery, finding facts in complicated controversies, performing accountings, organizing and coordinating mass tort litigation, mediating settlements, and monitoring compliance with complex remedial orders. The decision whether to appoint a special master involves weighing the potential benefits against the extra expense imposed on the parties. A master may be useful where "the financial stakes justify imposing the expense on the parties and where the amount of activity required would impose undue burdens on a [district or magistrate] judge."[279] Special masters are also relied upon if they have special expertise in a particular field such as patents or cases involving science, business, or technology.[280]

Judges have at times delegated extensive duties to masters, which, though subject to the court's de novo review, has generated controversy and raised questions about the extent of judicial referral authority. Unless the parties affirmatively seek

---

278.  *See id.* at 28–30.

279.  *MCL 4th*, *supra* note 22, at § 11.52.

280.  *Id.*; *see also* *Reference Manual on Scientific Evidence*, *supra* note 54, at 35, 489; Jay P. Kesan & Gwendolyn G. Ball, *A Study of the Role and Impact of Special Masters in Patent Cases* (Fed. Judicial Ctr. 2009).

an appointment and explicitly waive the limits of Rule 53, you should limit your appointments to exceptional cases or conditions.

Within that general guideline, *consider* appointment of a special master to:

- assist in pretrial proceedings, such as massive discovery requests, extensive ESI discovery disputes, claims of privilege, and factual determinations on the admissibility of expert evidence;

- develop a case management plan, under your supervision, when a case involves hundreds or thousands of claims;

- evaluate the extent and size of damages;

- facilitate settlement;

- administer a class settlement;

- provide recommendations regarding facts necessary to determine liability or damages;

- allocate damages to individual litigants; and

- frame or monitor remedial decrees.

## 3.  Selecting and appointing a special master

In selecting a special master, you will want to ensure that the master has two important qualifications: expertise in the matters for which you are appointing him or her and the full trust of you and the parties. There are a number of ways in which you can identify candidates to serve as masters.

*Consider* the following:

- asking the parties to nominate candidates, either individually or jointly;

- ordering the parties to submit a list of at least 3 agreed-upon candidates;

- appointing a magistrate judge;[281]

- appointing someone because of his or her service in another case; or

- asking someone else, such as another master or an outside agency, to recommend suitable candidates.

---

281. Magistrate judges not serving as special masters are properly and routinely referred duties that some courts might otherwise have assigned to a special master. These include managing the pretrial phase of civil cases, crafting and monitoring remedial decrees, and facilitating settlement.

The method most frequently used by federal judges is to ask the parties to nominate candidates for appointment.[282] If you use this method, you may want to ask the parties to provide information about the candidates' qualifications and, if appropriate, to discuss the candidates with you or to participate in your interviews with the candidates. To avoid later problems, you and the parties should make certain the master has no conflicts of interest.

An order appointing a master should specify what the master is to do and what the master's authority is. Under Rule 53(c), unless you direct otherwise, a master may "regulate all proceedings" and "take all appropriate measures to perform the assigned duties fairly and efficiently," including "conducting an evidentiary hearing" and "compel[ling], tak[ing], and record[ing] evidence." A master may also recommend contempt sanctions or impose non-contempt sanctions on a party under Rules 37 (discovery sanctions) or 45 (sanctions for issuing or serving a subpoena without taking reasonable steps to avoid imposing an undue burden or expense on person subject to subpoena).

Rule 53(b)(2) requires that the referral order "direct the master to proceed with all reasonable diligence," and to include several matters:

- the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);
- the circumstances, if any, in which the master may communicate ex parte with the court or a party;[283]
- the nature of the materials to be preserved and filed as the record of the master's activities;
- the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and
- the basis, terms, and procedure for fixing the master's compensation under Rule 53(g).

It is recommended that you also include the following in the referral order:

- procedures for the special master to obtain information from the parties;
- disclosure of conflicts of interest;
- periodic reporting and the timing and method of delivering reports of activity;

---

282. *See Special Masters Study*, *supra* note 276, at 35–40.

283. For a discussion of federal court experiences relating to ex parte communications between special masters and the parties or the judge, *see Special Masters Study*, *supra* note 276, at 46–52.

- duration of the appointment;
- allocation of costs among the parties; and
- liability and immunity of the special master.[284]

You may consider appointing a special master as early as the initial case management conference.[285]

## 4. The special master's report

Rule 53(e) requires special masters to prepare a report and, if required by the appointing judge, make findings of fact and conclusions of law. The master may submit a draft of the report to counsel for suggestions. In all cases, a party may serve objections to the report no later than 21 days after a copy is served, unless you set a different time. You review "de novo all objections to findings of fact" by the master, unless the parties stipulate, with your approval, that "the findings will be reviewed for clear error; or . . . will be final."[286] You may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit" the matter to the master with instructions.[287] In jury cases, the master's findings are admissible in evidence.[288]

## 5. Compensating the special master

Under Rule 53(g), compensation of special masters is to be set by the court. In practice, most judges rely on the parties and the master to negotiate the rate (usually an hourly rate) and determine whether and how the costs will be shared.[289] You will want to keep watch on the compensation paid to masters, as the costs can be quite high in some cases. Your referral order can set a timetable for periodic submission of bills (at least quarterly) and specify what information you would need to monitor the master's costs.

---

284. *See* Fed. R. Civ. P. 53(b)(2); *MCL 4th*, *supra* note 22, at § 11.52. For a summary of the contents of special master referral orders, *see Special Masters Study*, *supra* note 276, at 44–45.

285. Fed. R. Civ. P. 16(c)(2)(H).

286. Fed. R. Civ. P. 53(f)(2), (3).

287. Fed. R. Civ. P. 53(f)(1).

288. *See, e.g., Jackson v. Local Union 542, Int'l Union of Operating Engineers*, 155 F. Supp. 2d 332, 337–38 (E.D. Pa. 2001).

289. *See Special Masters Study*, *supra* note 276, at 42. If a special master is appointed in a case subject to the Prison Litigation Reform Act of 1995, compensation and costs are to be paid from funds appropriated to the judiciary. 18 U.S.C. § 3626(f)(4).

9

# Using Information Technology for Litigation Management

A.  Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  165
B.  Using CM/ECF to manage cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  165
    1.  Notice of Electronic Filing. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  166
    2.  Case management reports. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  167
    3.  Statistical and conflict checking reports. . . . . . . . . . . . . . . . .  169
    4.  Docket text entry orders and orders on motions using the
        gavel icon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  170
    5.  Next Generation CM/ECF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  170
C.  Working remotely and cybersecurity  . . . . . . . . . . . . . . . . . . . . . . . .  171
D.  Civil case and criminal defendant disposition dashboard . . . . . . .  171
E.  IT training and information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  172

## A.  Overview

Understanding and maximizing the use of available technology are essential to successful case management. This chapter reviews functions in CM/ECF that can assist with monitoring and managing case activity, technology for working remotely, and IT training and resources available to judges.[290]

## B.  Using CM/ECF to manage cases

The primary case management tool for federal judges is the CM/ECF system. It is used in every court by judges, court staff, attorneys, and the public to view information about cases and to file and download case-related documents. Significant features include:

---

290. The judiciary has been developing a newer version of the CM/ECF application, known as "Next Generation of CM/ECF," or "NextGen." The functionality discussed in this chapter applies to both legacy and NextGen CM/ECF.

- notices of electronic filings (NEFs), which alert judges, chambers staff, court staff, and case participants that a docket entry has been added or a document has been filed in a case (discussed in detail in Section B.1, below);

- up-to-the-minute reports, queries, and docket sheets for individual cases;

- electronic retrieval of case documents and dockets by the public and court users;[291] and

- electronic document management, storage, and security.

The CM/ECF system is updated regularly, largely based on suggestions from judges and court staff. The courts are provided regular software releases and informed about the modifications. Your court's CM/ECF administrator and clerk of court are your best resources for questions about CM/ECF. For more complex questions, you may also contact the Administrative Office's National Support Desk at (202) 536-5000 or online.

The following section provides an overview of functions in CM/ECF that can assist with managing cases and prioritizing your workload.

## 1. Notice of Electronic Filing

Notices of Electronic Filing (NEFs) are email notifications generated by docket activity in a case. Each NEF includes the case name, case number, a description of the docket activity event, its date and time of entry, and a list of recipients who received the electronic notification. If the docket activity event relates to a document being filed, the NEF will also include a link to that document. You can configure your CM/ECF settings to receive an NEF each time there is docket activity in one of your assigned cases, or as a daily summary email that lists all the filings for that day. You may also configure your settings so that you receive NEFs each time there is activity in certain cases but receive a summary notice for activity in all of your other cases. NEFs can be a helpful tool for monitoring case activity.[292] For example, you may review the summary notice at the end of the day and annotate filings that need immediate attention.

For assistance turning on and configuring your NEF settings, contact your court's CM/ECF administrator or the National Support Desk.

---

291. The Public Access to Electronic Court Records (PACER) system provides electronic access to case filings and docket sheets in CM/ECF, except those that are sealed or otherwise restricted.

292. For a discussion of using NEFs to manage pretrial motions, *see* Chapter 4, Section C.2.

## 2.  Case management reports

The CM/ECF system enables you to generate various case management reports, described below, that can be customized to display selected case information. An example of each report is included in the online appendix.

- *Docket Report:* The Docket Report allows you to view party information and all docket entries for a case. You may also limit the report to filings within a certain time or docket number range.

- *Abridged Docket Report:* This feature allows you to run the docket report, select certain docket entries, and save the selections so you can retrieve them later. When preparing for a pretrial conference, motion hearing, or trial, it may be helpful to generate an abridged docket report that includes only key filings and events in the case. To create an abridged docket report, select the "abridged docket report" box in the docket report selection criteria screen. The docket report output will contain checkboxes next to each docket entry. You may then select specific docket entries for inclusion on the abridged docket report. At the bottom of the docket report output, there are options to either save the abridged docket report (you may name it and set an expiration date), or to view it without saving it. To view and update an existing abridged docket report, enter the case number on the docket sheet screen, click "show case list," and select the previously-saved abridged docket report.

- *Docket Activity Report:* The Docket Activity Report (DAR) displays a list of all docketing events that occurred in your cases within a specified time range. You can configure your CM/ECF settings to run the DAR at a specific interval (e.g., daily, weekly) and have it emailed to you at the close of that period. Judges use the DAR in various ways to monitor motions and case activity. For example, some judges will review the DAR each morning to get a quick rundown of the previous day's filings and to discuss high-priority matters with their law clerks.[293]

- *Motions Report:* The Motions Report lists selected motions (pending, terminated, or both) by case number, office, presiding or referral judge, type of motion, filing date, or trial date. You can sort the report by motions that are ripe for ruling, or other criteria, such as the dates by which all pending motions should be fully briefed.

- *Case Management Report:* The Case Management Report feature allows you to communicate with your staff about a case or event (e.g., a pending

---

293.  For a discussion on using the DAR to manage motions, *see* Chapter 4, Section C.2.

motion) by creating electronic "sticky notes" and tasks. You and your staff also can add attachments in any format to the notes and tasks. The notes and tasks are saved privately within the CM/ECF system and are not available to the public. You can determine who is able to view your case and docket entry notes on a per-note basis. Whoever has access to view a note can also modify it, and a modification history appears on the bottom of the notes editing window.

- *Service and Answer Report:* The Service and Answer Report lists cases in which at least one defendant has not filed an answer, and those cases in which all defendants have answered, but no scheduling or pretrial order has been entered. Additionally, a 90-day rule report can be generated that lists cases in which one or more defendants have not been served a summons within 90 days of the filing of the case. This report can be helpful to identify cases for which you may need to issue an order to show cause for failure to complete service of process.

- *Trial Settings Report:* The Trial Settings Report shows all cases for which a jury or non-jury trial has been requested and can be sorted by whether a trial has been set.

- *Unscheduled Cases Report:* The Unscheduled Cases Report shows open cases in which a breakdown has occurred in scheduling and nothing is scheduled for the future.

- *Calendar:*
  - *Daily Report:* The Daily Report displays your calendar for a single day by location, case, and event (e.g., appointment, deadline, or hearing), and may contain links to related docket entries and filings.
  - *Monthly Report:* The Monthly Report displays your calendar for the selected month, listing scheduling information for each case.

- *Deadlines/Hearings Report:* The Deadlines/Hearings Report lists scheduled items for a single case, sorted according to your preference.

- *Civil Justice Reform Act (CJRA) Report:* To identify cases and motions that will need to be reported at the close of the next CJRA reporting period (either March 31 or September 30) if not disposed of, there is a "Run CJRA Report" option under the National Statistical Reports menu. You, your law clerks, or your courtroom deputy should periodically run the CJRA report to help prioritize motions, ensure that cases are not stalled on your docket, and maintain balance of the workload among

your chambers staff and law clerks. For a more detailed discussion of the CJRA report, *see infra* Section 3.[294]

## 3.  Statistical and conflict checking reports

The CM/ECF system also generates statistical reports that allow you to view the status of your case activities collected by the Administrative Office. Some data on your workload, described below, is also used in statistical tables published in *Judicial Business of the United States Courts*, which is publicly available on the uscourts.gov website.

- *Monthly Trials and Other Court Activity Report (former JS-10 Form):* The Monthly Trials and Other Court Activity Report collects information about time spent by all district judges and visiting district and circuit judges in trials, hearings, and other proceedings in which all parties participate. The information is used in a number of important ways, including to evaluate judgeship needs, develop new case weights, and determine the court's overall staffing allocation. Additional information on the report is available on JNet.

- *MJSTAR Reporting:* The District CM/ECF system includes a function, known as "MJSTAR" (Magistrate Judge Statistics Through Automated Records), for reporting magistrate judge workload statistics. MJSTAR extracts magistrate judge workload statistics directly from each court's case management system, and the data is submitted to the Administrative Office monthly. For more information, *see* The Guide to MJSTAR on JNet.

- *CJRA Reporting:* Under the CJRA and Judicial Conference reporting requirements, on March 31 and September 30 each year, courts must provide the Administrative Office with data by individual judge on motions that have been pending over six months, bench trials that have been submitted more than six months, bankruptcy appeals that have been pending over six months, social security appeals that have been pending over six months, and civil cases that have been pending more than three years.[295] The CM/ECF system allows judges to enter status codes explaining any causes for delay in the reportable motions or cases, then automatically sends the data to the Administrative Office for

---

294. For a discussion of the CJRA reporting requirements and using the CJRA report to prioritize motions, *see* Chapter 4, Section B.1.

295. *See Guide to Judiciary Policy*, vol. 18, § 540.

inclusion in the final report. The CJRA Report is available to the public under the Statistics & Reports menu on the uscourts.gov website. Note that the CJRA Report does not include sealed cases, sealed motions, or sealed bench trials.[296]

- *Conflict Checking Reports:* The Judicial Conference requires that judges use automated conflict-screening for each case they are assigned, and judges use the conflict checking software that has been added to the CM/ECF system to meet this requirement. The software is not a fail-safe, however, and should be used to supplement your regular review of cases to ensure that no conflicts of interest exist. More detailed information on this function is available on JNet.

## 4. Docket text entry orders and orders on motions using the gavel icon

While most motions will require a written order, for simple procedural motions that do not require analysis (such as motions for extensions of time), consider ruling on the motion by clicking on the gavel icon and creating a text entry order, or direct a member of your staff to do so. When you run a docket report for a case, pending motions will have a gavel icon to the left of the docket number. To rule on a pending motion, click on the gavel icon and follow the prompts to create a text entry order ruling on the motion. For detailed instructions on this process, *see* online appendix.

## 5. Next Generation CM/ECF

The judiciary has developed a new version of CM/ECF, known as the "Next Generation of CM/ECF" or "NextGen," that introduces new functionality for judges and chambers staff, including a feature that allows judges to create a virtual folder with all filings relating to any type of docket entry (e.g., a motion). Information on NextGen, including descriptions of its enhanced functionality and updates on its implementation, is available on the NextGen page on JNet.

---

296. For further discussion of the CJRA's "six-month report" on pending motions, *see* Chapter 4, Section B.1.

## C.  Working remotely and cybersecurity[297]

Technology and mobile devices allow you to work remotely and communicate with your staff while outside of the courthouse. Your court's IT department can assist with configuring your mobile devices, including your smartphone, tablet, and laptop so that you can use the judiciary's remote networking applications to access your email and documents saved on your court's server. A Telework Preparedness resource page with step-by-step instructions on how to launch the judiciary's various remote networking applications is available on JNet, as are brochures on securing your home network and teleworking securely. The Telework FAQs page, created during the disruptions caused by the COVID-19 pandemic, also provides information on remote access. The FJC also has manuals on using an iPad for judicial work, including instructions on downloading motions and briefs from CM/ECF, working with documents in various file formats (e.g., Word files and PDFs), and applying electronic signatures.

When working remotely and using mobile devices, you should be mindful of security risks. You should consult with your court's IT professionals to ensure that the appropriate security software and authentication applications are installed on your mobile devices. The Administrative Office has prepared brochures on how to manage risks related to laptop use, smartphone use, and public hotspots, as well as a comprehensive Compendium of Security Awareness Training Resources, that address a host of additional cybersecurity topics specific to remote work and otherwise. If you must work while outside of the country, you should review the International Travel Guidance page on JNet. Because this information changes rapidly, it is recommended that you also call the IT Security Office (ITSO) at (202) 502-2350 for the most current information and guidance.

## D.  Civil case and criminal defendant disposition dashboard

To help courts better understand how quickly they are disposing of civil cases and criminal defendants, as well as the composition of their civil and criminal caseloads, the FJC, in conjunction with the Judicial Conference's Court Administration and Case Management Committee, developed an interactive case disposition dashboard tool that is distributed annually to the chief judge of each district court. The dashboard compiles a court's civil and criminal termination statistics for the prior three calendar years and allows a court to see its overall disposition

---

297.  Because the software and procedures for working remotely are frequently updated, you should consult with your court's IT staff or your circuit's IT Security Officer for the latest information.

time on each nature of suit and offense category relative to the national average. The dashboard also allows the court to drill down to the underlying case information for each nature of suit and offense category. The dashboard tool is an easy way to get a comprehensive view of the types of cases your court is handling and which types of cases are taking longer than others to resolve. It also can be a great tool to facilitate discussions among judges in your district about case management practices, especially with cases that comprise a large portion of your filings or are taking longer to dispose of than the national average. Chief judges should consider distributing the dashboard to all judges in their district after it is transmitted from the FJC each year. Judges interested in seeing how their district is managing its civil and criminal dockets should ask their chief judge for access to the dashboard. Additional information on the case management dashboard is available on the FJC's website.

## E.  IT training and information

As an introduction to the software used in courts, the FJC has developed the Chambers Online Automation Training series, which is comprised of 13 courses covering fundamentals such as using CM/ECF, drafting orders and creating templates in Word, creating and editing PDFs using Adobe, and cybersecurity. The Administrative Office and the FJC also provide advanced training focused on using technology to improve case management and chambers operations. Information on upcoming FJC-hosted seminars, and video/audio recordings and handouts from past seminars, are available on the Educational Programs and Resources page on the FJC's website. The FJC also regularly incorporates discussions on technology into its orientations for new district and magistrate judges, and as part of its national workshops for district and magistrate judges. Materials from these sessions are available on the FJC's webpage.

For email, instant messaging, and collaboration platforms, the judiciary utilizes Microsoft's Government Community Cloud and related Microsoft Office 365 products, including Word, Excel, Teams, and Outlook. This cloud-based platform is available to court employees anytime and anywhere and provides reliable access to Microsoft applications currently used in the judiciary along with new capabilities, patches, and updates to enhance productivity and keep data secure.

Administrative Office of the United States Courts
Court Administration Policy Staff
One Columbus Circle, N.E.
Washington, DC 20544
uscourts.gov

Federal Judicial Center
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Washington, DC 20002-8003
fjc.dcn · fjc.gov